# EXHIBIT J



**FINNEGAN**
**HENDERSON**
**FARABOW**
**GARRETT &**
**DUNNER LLP**

901 New York Avenue, NW ■ Washington, DC 20001-4413 ■ 202.408.4000 ■ Fax 202.408.4400
www.finnegan.com

ERIC J. FUES
(202) 408-4245
eric.fues@finnegan.com

May 16, 2005

Eley O. Thompson, Esq.                                    VIA FACSIMILE & MAIL
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601-6780

   Re:   *Ciba Specialty Chem. Corp. v. Hercules Inc., et al.*
         Civil Action No. 04-293 (KAJ) (D. Del.)

Dear Eley:

   We disagree with the assertions in your May 11, 2005 letter to Joann Neth that Hercules and Ciba have "reached an impasse" regarding Hercules' responses to each of Ciba's Interrogatory Nos. 1, 2, 4, 5, 6, 11, 13, and 14, and further that Hercules' responses to Ciba's Interrogatory Nos. 7 and 8, in Ciba's opinion, lack the necessary specificity. This letter addresses each of these interrogatories and, like our prior correspondence on these issues, explains Hercules' positions.

Ciba's Interrogatory No. 1

   Ciba's Interrogatory No. 1 seeks all bases and evidence supporting defendants' allegations that they have not infringed the patents-in-suit through the use, sale, or offer for sale of the PerForm® products. Ciba bears the burden of proof on the issue of infringement, and to this day Ciba refuses to identify the claims of the patents-in-suit alleged to be infringed by any of Hercules' products. (*See* Letter from Joann Neth to Eley Thompson dated April 20, 2005, requesting this information.) Nevertheless, Hercules has explained in this interrogatory response and in correspondence why its PerForm® SP product does not infringe either patent-in-suit.

   With respect to claim 1 of the '766 patent-in-suit, Hercules' PerForm® SP product does not contain "an ionic, organic, cross-linked polymeric microbead, the microbead having an unswollen particle diameter of less than about 750 nanometers." Consequently, the use of Hercules' PerForm® SP product does not infringe claim 1, the only independent claim of the '766 patent. Since claim 1 is not infringed, none of the other claims of that patent can be infringed.

Eley O. Thompson, Esq.
Leydig, Voit & Mayer, Ltd.
May 16, 2005
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

As to claim 1 of the '808 patent, Hercules' PerForm® SP product does not contain "cross-linked anionic or amphoteric polymeric microparticles derived solely from the polymerization of an aqueous solution of at least of one monomer, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1 mPa.s, a cross-linking agent content of about 4 molar parts to about 4000 parts per million, based on the monomeric units present in the polymer." Accordingly, there can be no literal infringement of this or any other claim of the '808 patent. Hercules has also explained why neither patent-in-suit is infringed under the doctrine of equivalents, even though Ciba refuses to state whether it will invoke the doctrine of equivalents in this action. (*See* Letter from Eric Fues to Eley Thompson dated April 11, 2005, requesting this information.)

Ciba contends in an interrogatory response that certain Examples in a Hercules patent application (published as PCT/US02/39143 and US 2004/0102528 A1) infringe claims 1, 3, 5, 9, 11, 13, 17, 21, 23, and 25 of the '766 patent and claims 1, 6, 7, 8, 11, 13, 15, 17, and 21 of the '808 patent. (*See* Ciba's Response to Hercules' Interrogatory No. 3 at 16-25.) Ciba further contends that Hercules' PerForm® SP product is "made and used" in accordance with these publications (*see id.* at 9) and you repeat this assertion in your May 11th letter. Ciba relies on an unfounded assumption in making this assertion.

Hercules informed Ciba in early 2003 that the PerForm® SP product is "covered" by the Hercules patent application, not that the PerForm® SP product is "made" or "used" according to any particular Example of the patent application. (*See* Letter from Gary Samuels to Joann Villamizar dated March 11, 2003, attached hereto.) Ciba has propounded an interrogatory regarding products "covered" by the patents-in-suit, so Ciba should be familiar with this terminology. (*See* Ciba Interrogatory No. 14.) In any event, Ciba is wrong to assume that any particular Example or passage of text in the Hercules patent application describes the commercial PerForm® SP product or the method of making it. Information regarding the commercial PerForm® SP product and its manufacture is provided in the production documents of Hercules and Cytec.

Ciba's Interrogatory No. 2

Ciba's Interrogatory No. 2 seeks all bases and evidence concerning Hercules' allegation that the patents-in-suit are invalid. Your May 11th letter also alleges that assignor estoppel precludes Hercules from raising invalidity challenges to the '766 and '808 patents, even though Ciba has yet to explain its basis for this allegation.

Regarding its response to Interrogatory No. 2, Hercules noted that U.S. Patent Nos. 4,528,321 to Allen *et al.* ("the Allen '321 patent") and 4,720,346 to Flesher *et al.* ("the Flesher '346 patent") render invalid at least claim 1 of each patent-in-suit. Hercules has served document requests concerning this prior art to Ciba. (*See* Hercules' Document Request Nos. 39-43.) Ciba has objected to producing this discovery on the grounds of relevance even though

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Eley O. Thompson, Esq.
Leydig, Voit & Mayer, Ltd.
May 16, 2005
Page 3

information regarding the Allen '321 patent and the Flesher '346 patent is undeniably relevant for invalidity and claim construction purposes. Will Ciba produce the requested information?

To date Ciba has not identified the claims of the patents-in-suit that are asserted in this action against any commercial Hercules product. Ciba needs to provide this information before Hercules can explain its invalidity contentions in detail. Hercules will soon supplement its prior art invalidity contentions concerning claim 1 of both patents-in-suit, but there is no reason for Hercules to address the other patent claims absent an indication from Ciba that they are part of this case.

Ciba's Interrogatory No. 4

Ciba's Interrogatory No. 4 begins with an improper request--asking Hercules about "any assertion that either Defendant's infringement of the patents in suit has not been willful and deliberate"--and seeks information that rebuts this unfounded and untrue contention. As you know, Ciba bears the burden of proof on issues of infringement. Nevertheless, Hercules states in its response that if it has opinion(s) of counsel concerning the patents-in-suit, Hercules will identify it(them) on a withheld document log, to be provided when the parties exchange such logs. At this early stage of discovery, it is premature and inappropriate for Hercules to be required to make an election as to reliance on opinion(s) of counsel. And Ciba cites no legal support for its argument that such an election needs to be made at this time. If Hercules makes such an election, it will do so approximately two months before the close of discovery, so that Ciba may take its discovery. Accordingly, at the present time Hercules' answer to this interrogatory is complete.

Ciba's Interrogatory No. 5

Ciba's Interrogatory No. 5 asks for information "concerning the offer for sale **and** sale of the patents in suit prior to execution of such sale." Hercules was not a party to the "sale" since that transaction occurred between Ciba and Cytec. Hence, Hercules has no first-hand knowledge concerning that transaction. As noted in your letter, Hercules has produced documents concerning Cytec's offer to sell the patents-in-suit, but Ciba's interrogatory as written requires information concerning the actual sale of the patents. In any event, Hercules' answer is fully responsive to the interrogatory propounded by Ciba.

Ciba's Interrogatory No. 6

Your May 11th letter incorrectly describes the question Ciba asked in its Interrogatory No. 6. Ciba requested an identification of all communications between Hercules and Cytec concerning "infringement of the patents in suit" and patent invalidity, as well as detailed information concerning the content of these communications. Defendants share a community of interest, at least as to infringement issues, since they have both been sued on the same patents and over the same product. Consequently, Hercules responded to Ciba's Interrogatory No. 6 by

Eley O. Thompson, Esq.
Leydig, Voit & Mayer, Ltd.
May 16, 2005
Page 4

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

stating that any communications being withheld on the grounds of an applicable privilege or immunity and dated, prepared or received before the May 7, 2004 commencement of this lawsuit, will be identified on a withheld document log to be provided when the parties exchange such logs. Ciba has provided no explanation why this joint privilege should not apply, and absent this explanation, we have nothing to add to this interrogatory response.

Ciba's Interrogatory Nos. 7 & 8

These interrogatories seek detailed information regarding the structure, testing, characterization, raw materials, and manufacturing of the PerForm® SP Product. In response, Hercules first noted that "its PerForm® SP product(s) is/are not cross-linked and that no cross-linking agent is used in its/their production." (Hercules' Response to Ciba's Interrogatory No. 7 at 11.) In view of the vast breadth of these interrogatories, Hercules also responded that pursuant to Fed. R. Civ. P. 33(d), information regarding these issues could be found in Hercules' production documents. Ciba has similarly employed Fed. R. Civ. P. 33(d) in directing Hercules to Ciba's document production in responding to Hercules' Interrogatory Nos. 1, 3, 4, 5, 8, 9, 10, and 11. As to Ciba's request that Hercules provide additional specificity concerning specific document production ranges, Hercules is amenable to doing so once its document production is substantially complete and provided that Ciba will reciprocate.

Ciba's Interrogatory No. 11

Ciba's Interrogatory No. 11 concerns alleged assignor estoppel through privity as to Hercules. Contrary to the assertion in your May 11th letter, Hercules fully answered this interrogatory. In fact, Hercules provided the following detailed response:

**"OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 11**

Hercules objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege or immunity. Hercules also objects to Ciba's unfounded presumption in phrasing this interrogatory to improperly state "due to its privity with Cytec." Hercules further objects to this interrogatory as premature.

Subject to and without waiving these objections and its General Objections, Hercules responds that discovery has just begun and to date Ciba has neither explained its allegations of estoppel and privity, nor has it produced any documents supporting such allegations. Hercules nonetheless denies that estoppel would prevent Hercules from challenging the validity of the patents-in-suit because Hercules is not now, nor has it been, in privity with Cytec concerning the claimed subject matter of these patents.

Eley O. Thompson, Esq.
Leydig, Voit & Mayer, Ltd.
May 16, 2005
Page 5

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

  U.S. Patent No. 5,167,766 ("the '766 patent") issued on December 1, 1992 and claims priority to an application filed on June 11, 1990. U.S. Patent No. 5,171,808 ("the '808 patent") issued on December 15, 1992 and claims priority to another application filed on June 11, 1990. Both patents were initially assigned to American Cyanamid Company but were later transferred to Cytec Corporation.

  Hercules acquired the BetzDearborn Paper Process Group Inc. ("BetzDearborn") in 1998. At that time, BetzDearborn had a non-exclusive distributorship agreement with Cytec to sell a number of Polyflex® products, including Polyflex® CP3. Cytec and Hercules amended that agreement after the purchase of BetzDearborn, and BetzDearborn formally assigned its interest in the distributorship agreement to Hercules.

  Pursuant to this non-exclusive agreement, Hercules marketed and sold the Polyflex® products to paper mills that used them in the production of paper. This agreement did not include a license to Hercules under the '766 patent, '808 patent, or any other American Cyanamid or Cytec patent. In fact, the agreement did not require Hercules to mark any product with the '766 or '808 patent numbers, and indeed made no reference at all to these patents. Ciba also made Polyflex® products and sold them directly to end users, and Cytec had at least one other non-exclusive distributor of Polyflex® products that marketed and sold those products to end users. Hercules' non-exclusive distributorship agreement with Cytec lasted until December 31, 2002.

  Upon information and belief, in 2000 Cytec entered into an agreement to sell certain business assets to Ciba, including the patents-in-suit. Before the sale to Ciba, Hercules paid the contractually-specified prices for Polyflex® products to Cytec, and after the sale, Hercules made such payments to Ciba. Ciba and Hercules subsequently entered into an agreement that extended Hercules' non-exclusive distributorship of Polyflex® products for sales to certain customers; that agreement expired in November of 2003.

  When Hercules acquired BetzDearborn in 1998, BetzDearborn had an active research and development ("R&D") program that was looking into improved retention and drainage aid products for use in papermaking. Hercules continued these activities after the BetzDearborn acquisition and eventually developed a commercial product—PerForm® SP 9232—based on this R&D program. Cytec manufactures PerForm® SP 9232 for Hercules, and Hercules markets and sells this product.

  Under these facts, Ciba's allegation of privity must fail. To determine whether privity applies, courts "balance the equities" in light of the alleged act of infringement. *See Acushnet Co. v. Dunlop Maxfli Sports Corp.*, Civ. A. No. 98-717-SLR, 2000 U.S. Dist. LEXIS 10123, *7 (D. Del. Jun. 29, 2000) (quoting *Shamrock Techs., Inc. v. Medical Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990)). Courts evaluate all direct and indirect contacts between the assignor (Cytec) and the defendant with whom privity is alleged (Hercules). *See Acushnet*, 2000 U.S.

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Eley O. Thompson, Esq.
Leydig, Voit & Mayer, Ltd.
May 16, 2005
Page 6

Dist. LEXIS 10123 at *7-*8. "What is significant is whether the ultimate infringer availed itself of the inventor's 'knowledge and assistance' to conduct the infringement." *Id.* at *8 (quoting *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991)). Other factors courts consider include whether "the assignor has exercised substantial control over, and/or held considerable financial interest in, the defendant corporation." *Acushnet*, 2000 U.S. Dist. LEXIS 10123 at *8.

As set forth above, Hercules scientists developed the accused product, PerForm® SP 9232, long after the research activities that preceded the filing of the '766 and '808 patents, and they did so independently of American Cyanamid and Cytec. Hercules did not avail itself of the American Cyanamid (Cytec) inventors' knowledge and assistance in developing PerForm® SP 9232. Furthermore, Hercules marketed and sold Polyflex® products pursuant to an arms-length commercial arrangement with Cytec. Their non-exclusive distribution agreement does not indicate that Cytec, as assignor of the '766 and '808 patents to Ciba, exercised substantial control over Hercules. And Cytec has no substantial financial interest in Hercules. Finally, as explained below, the independently-developed PerForm® SP 9232 product does not infringe the claims of either patent-in-suit, either directly, contributorily, or by inducement. Consequently, Ciba has no basis to assert that privity would apply between Hercules and Cytec on the basis of this substantially different product."

(Hercules' Response to Interrogatory No. 11.) For Ciba to contend that Hercules did not fully answer this interrogatory is simply disingenuous. Nonetheless, if Ciba can identify specific addition information that it seeks from Hercules regarding this issue, Hercules will consider Ciba's request.

Ciba's Interrogatory No. 13

Ciba's Interrogatory No. 13 seeks information regarding all manufacturing differences between the PerForm® SP product and the Polyflex® products. As Ciba knows from its distribution agreement with Hercules, Hercules has never manufactured the Polyflex® products. As Ciba is likewise aware, Hercules does not manufacture PerForm® SP 9232. Accordingly, Hercules has little first-hand information that it can provide in response to this interrogatory. Nonetheless, since Hercules developed PerForm® SP 9232 (in contrast with the American Cyanamid-developed Polyflex® products), Hercules has produced or will produce the documents that it possesses regarding its manufacture. Additionally, Hercules pointed out in its interrogatory response that Hercules' PerForm® product is not cross-linked and that no cross-linking agent is used in its production. (*See* Hercules Response to Ciba's Interrogatory No. 13 at 7.) These represent obvious differences with the Polyflex® CP3 product, which Ciba alleges to be cross-linked.

Eley O. Thompson, Esq.
Leydig, Voit & Mayer, Ltd.
May 16, 2005
Page 7

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

### Ciba's Interrogatory No. 14

Ciba's Interrogatory No. 14 seeks information regarding "any products or processes that you have made, had made on your behalf, used, sold, or offered for sale that have been covered, licensed, or protected by either of the patents in suit." Hercules obviously disputes that its PerForm® SP product is covered by the patents-in-suit. Hercules also questions the relevance of Ciba's request that it identify products manufactured by other companies that are "covered, licensed, or protected by either of the patents in suit." We recognize that in responding to Hercules' Interrogatory No. 6, Ciba asserted that Polyflex® CP3 is covered by the '766 and '808 patents. But Hercules is not aware of Ciba having made this assertion outside the context of litigation. In fact, Ciba has repeatedly refused to answer Hercules' interrogatories and requests for admission regarding whether Ciba has marked its Polyflex® CP3 product with *any* patent number, let alone the numbers of the '766 or '808 patents.

### Confidentiality Designations

We obviously dispute that "vast amounts" of Hercules' document production have been improperly marked as confidential. And we consider it likely that certain public documents in Ciba's production have been improperly marked as well. To save both parties time in re-designating documents, we propose that the parties agree between themselves that if a document on its face reveals that it has been made public in its entirety, such as a newspaper article without any exogenous annotations, the non-producing party may treat the document as non-confidential pursuant to the Protective Order. Is Ciba willing to agree to this approach? Please let us know.

Sincerely,

Eric J. Fues

Enclosure

cc:  Thomas L. Creel, P.C. (via facsimile w/ enclosure)
     Richard L. Horwitz, Esq. (via facsimile w/enclosure)
     Chad M. Shandler, Esq. (via facsimile w/enclosure)

# ■HERCULES

Hercules Incorporated
Hercules Plaza
1313 North Market Street
Wilmington, DE 19894-0001
(302) 594-5000
www.herc.com

Writer's Direct Dial
Phone: (302) 594-6813
Fax: (302) 594-6998

March 11, 2003

VIA FACSIMILE & MAIL

JoAnn Villamizar, Esq.
Vice President – Patent Department
Ciba Specialty Chemicals Corporation
540 White Plains Road
P.O. Box 2005
Tarrytown, NY 10591-9005

Re:   CIBA/Hercules Patent Matter

Dear Ms. Villamizar:

You have proposed that Hercules provide information concerning its PerForm™ 9232 product to a third party for study and analysis regarding Ciba's U.S. Patent Nos. 6,310,157; 5,958,188; 5,171,808; and, 5,167,766. Hercules believes that it will be difficult and time consuming to work out a mutually acceptable procedure for the third-party approach that you propose. Hercules also believes the conclusions reached by any such third party may not satisfactorily resolve the matter.

Hercules believes a more satisfactory approach is for Ciba to evaluate the information found in Hercules' patent application covering PerForm™ 9232 which should publish about June 6, 2003. Additionally, PerForm™ 9232 is commercially available and if you do not already have a sample for analysis, we can supply a small amount to you. We believe the information so available will confirm the February 6, 2003 letter sent to you by our outside counsel Ford F. Farabow, Esq.

Sincerely,

Gary A. Samuels, Esq.
Chief Counsel
Intellectual Property

GAS:dal
c:\deb\Villamizar ltr