IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HERCULES, INC. and CYTEC INDUSTRIES, INC.,<br><br>Defendants. | C.A. No. 04-293 (KAJ)<br><br>**JURY TRIAL DEMANDED**<br><br>**REDACTED**<br><br>**PUBLIC VERSION** |

## EXPERT REPORT OF PROFESSOR NORMAN J. WAGNER, PHD

I have been retained by plaintiff Ciba Specialty Chemicals Corporation ("Ciba"), and its attorneys, as an expert consultant and potential testifying witness. This is my written report concerning issues about which I may be asked to testify and on which Ciba bears the burden of proof. I understand that I will have an opportunity to submit a further report in response to any expert reports offered on behalf of defendants. I specifically reserve the right to form and submit additional opinions regarding any additional information or discovery that is subsequently generated or produced. I refer in my report to various documents and information I have received. I have not, however, set forth every relevant fact or document about which I am aware and reserve the right to supplement if required. Likewise, I reserve the right to supplement my report to clarify possible ambiguities or to opine further based upon future court rulings, agreements between the parties, or any further testimony by either party either by deposition, at any hearing, or at trial. I further reserve the right to supplement my report upon further information being provided by defendants regarding, without limitation, such things as the

samples of the Hypermer® products, ingredients and PerForm® samples. I further reserve the right to supplement my report upon further information resulting from my interaction with others in the area of rheology and physical chemistry, as well as information resulting from additional tests and experiments that may be performed in the future on the various chemical species involved in the present matter. This report is divided into two main sections. The first is an overview of my credentials. The second addresses rheological tests that I understand will be involved in this case, including how these tests are carried out and what information these tests provided.

**Compensation**

I am being compensated at the rate of $1200 per day for my independent review in connection with this matter.

**EXPERT CREDENTIALS**

1. I have been a Professor in the Department of Chemical Engineering, Center for Molecular and Engineering Thermodynamics, at the University of Delaware since May, 1999.

2. I was a guest professor at the Institute for Polymer Physics, Swiss Federal Institute of Technology, Zurich, Switzerland in 1997.

3. I was a Fulbright Senior Scholar. I was a guest Professor at the University of Konstanz, Department of Physics, Konstanz, Germany from August, 1997 to January, 1998.

4. More recently, I was a Visiting Scholar at the University of Rome, Department of Physics, from June to December, 2004.

5. I am currently on the editorial boards of five professional journals, including the Journal of Rheology and the Journal of Polymer Science Part B: Polymer Physics.

6. I have over 100 publications in refereed journals.

7. A complete summary of my career experience and technical publications are given in my curriculum vitae, attached hereto as Exhibit A.

**RHEOLOGICAL TESTING**

8. In general rheology is the science of deformation and flow of matter. Accordingly, rheology involves the response of materials, such as polymers which are viscoelastic, to applied stress. In this section, I will discuss several rheological parameters and tests that I understand may be of issue in this case. In connection with the opinions expressed herein and the testimony I expect to provide, of which my investigation is ongoing, I have received the documents and materials listed in Exhibit B. I reserve the right to supplement my report as my involvement continues and additional information becomes available. In connection with the rheological information provided below, I have conferred with scientists from Ciba regarding testing and studies that have been performed and that are set forth herein.

9. I am familiar with intrinsic viscosity ("IV") that characterizes polymer molecules and provides physical insight into their structure. IV may be measured from the flow time of a solution through a simple glass capillary. It is generally measured using a suspended level or Ubbelohde viscometer, and conditions may include an aqueous solution with 1 M NaCl buffered to about 7 pH and a temperature of about 25 °C or 30 °C. The salted solution is provided so as to control electrolytic disturbances. In this regard, I may testify about the differences obtained when different amounts of NaCl are used as a buffering solution. Viscosity measurements of this nature typically measure the volume of polymer and solvent solution flow through the capillary as compared for the solvent solution alone. Flow time is proportional to viscosity. A specific viscosity relates to the fractional change in viscosity upon addition of polymer, which is a unit-

less ratio of the solution viscosity less the solvent viscosity against the solvent viscosity. The IV thus becomes the polymer property as the specific viscosity divided by the polymer concentration in the solvent is extrapolated to a zero polymer concentration using a series of measurements while polymer levels are decreased. IV has units of inverse concentration, typically expressed as dL/g or 100 ml per gram. As suggested by the units, IV represents essentially the volume occupied by a polymer per unit mass and can be used to analyze the shape of polymer molecules when analyzed along with their molecular weight ("MW"). The relationship between IV and MW is scaled according to parameters found by the Mark-Houwink Relationship to provide molecular shape in solution. The Huggins constant k' is determined from the slope of IV data and can provide information on molecular shape as well. I understand that the two shapes of general interest here are linear and structured. Based on the IV data, information can typically be gleaned regarding the structure of the polymer under study.

10. I am familiar with controlled stress rheometry that is performed on polymer solutions at concentrations of about 1.5 wt-% using a rotating cone platform with a flat plate and a shallow angle rendering a small gap of approximately 100 microns. The test may be conducted at constant shear rates independent of movement. The application of a certain shear force in such tests results in movement, the speed of which may be measured. In such studies shear may be controlled to avoid shear induced chain scission (or breaking up polymer structure). Thus, curves of viscosity versus shear can be generated across different shear rates sometimes ranging from about $1 \times 10^{-2}$ to 1000 sec$^{-1}$. Low shear can permit more chain entanglement and viscosity will increase, while higher shear may create disentanglement and reduced viscosity. Plateaus can arise at various shear rates that can be representative of maximum entanglement at lower shear rates and minimum entanglement at higher shear rates. These curves and the responses of the

polymer to such shear stresses can provide information regarding the structure of the polymer under study.

11. I am familiar with oscillation rheometry used to analyze viscoelastic behavior with a time dependant response to an applied force. Short times or high frequency oscillation may cause the polymer to exhibit hard or glassy properties, while longer times or low frequency can cause a material to flow and exhibit viscous properties. These tests may be performed on solutions at dilute concentrations, e.g., about 1.5 wt-% by weight of polymer. A frequency sweep of a rheometer operating in dynamic oscillation mode at a constant stress will provide additional characterization of polymeric material. Such sweeps may range from about .006 Hz up to about 10 Hz. Hercules apparently focused on the measurements taken at the frequency of 4.6 Hz, and I expect to provide testimony relating to such tests as compared to the sweeps identified. In conducting these studies, the polymer under study may exhibit different properties at different oscillation frequencies depending on its structure. Polymers may be both viscous and elastic. The oscillation test may reveal the components of the polymer that are of the different forms. The elastic component is typically referred to as the storage modulus or G', while the viscous component of the material is typically referred to as the loss modulus G''. I may provide testimony based upon information in the case pertaining to the nature of linear polymers to sometimes reveal lower elastic (G') properties at lower frequencies and higher elastic properties (G') at higher frequencies. I may explain why such properties may be observed and what would be the properties of a structured polymer. I will likely also provide testimony regarding the delayed response to the applied force as a ratio of the viscous and elastic responses of the substance in the form of the tan delta. Plateaus may be reached at varying frequencies which may be useful to illuminate entanglements.

12. I am familiar with creep and recovery methods of rheology involving measurement of distance of displacement of a polymer (such as in radians) when a small, controlled force is applied. The creep and recovery rate measured for a polymer can distinguish between linear and structured polymers. A structured polymer can show recovered energy when the polymer displacement comes back quickly with a direct response. A linear polymer, or truly soluble polymer, may see displacement continue through time, and instead of recovering, the displacement keeps moving at a low shear rate.

13. I am familiar with filtration studies utilizing a filter medium with very small orifices. The orifices may be of a size in the order of 0.2 microns and are formed in a solid polycarbonate matrix. The size of the orifices is such that the polymers cannot pass through the orifices unless they are permitted by their structure to re-confirm into a shape which fits through the orifices.

**REDACTED**

14. I am familiar with characterization of polymers including those involved in this case through the various methods I have identified above.

**REDACTED**

I anticipate that my investigation concerning the testing and rheological studies pertaining to the polymers at issue here will continue.

16. Additionally, I expect to testify about rheological tests and parameters that are described in the Hercules patent application which I understand concerns its commercial product in issue here (identified as US2004/0102528 A1), its PerForm® product. I understand that the Hercules patent application uses the oscillation rheometry method to measure G' that shows associative network junctions that are "either chemical or physical cross-links." (See US2004/0102528 A1 at paragraph [0067]).

17. Specifically, I expect to testify regarding the relationship of the storage modules of a polymer as a function of the network junction concentration as defined by the formula:

$$G_N = nRT$$

wherein $G_N$ is the plateau modulus, n is the concentration of network junctions, R is the gas constant, and T is temperature. I expect to go through how this formula can be utilized to calculate the number of network junctions.

18. The Hercules application also references the unitless Huggins' constant (k'), noting that increases in the k' value above that typical for linear polymers is indicative of an increase in the "structure" of a polymer, and that such increase can be attributable to a number of factors, including association or a crosslinked structure. I expect that I may be asked to testify regarding how the k' value is determined and what this means. In addition, I understand that Hercules contends that the associations in its PerForm® SP9232 product are solely hydrophobe-hydrophobe associations and that no covalent crosslinking is involved. I accordingly expect that I may be asked to testify about such associations and characteristics thereof.

19. I reserve the right to supplement this report relative to further rheological testing of samples of PerForm® SP9232 products and the surfactants used to make that product that I understand have recently been sent, or are being sent, by one of the defendants in this case to Ciba.

**Other Possible Testimony**

20. I understand that Hercules has also carried out rheological and related testing on various polymer systems, including its PerForm® SP9232 product, and I reserve the right to supplement this report by providing opinions and comments on such testing after I have been allowed access to such information that I understand Hercules has designated as being confidential under the protective order entered in this case.

21. I understand that Hercules' expert may provide a report characterizing the polymers involved in this case. In connection with such studies and above information, I may offer opinions regarding structures that are consistent with the various rheological testing. For example, I anticipate considering such information and providing my views as to whether such information is consistent with various structures.

22. Also, I reserve the right to supplement this report to respond to opinions taken by any experts retained by Hercules or Cytec relating to rheological and related testing.

Dated: July 22, 2005

_____
NORMAN J. WAGNER

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2005, I hand delivered the foregoing document to the following persons and electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Richard L. Horwitz, Esquire
David E. Moore, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE   19899-0951

I hereby certify that on August 1, 2005 I have Federal Expressed the foregoing document to the following non-registered participants:

Ford F. Farabow, Jr., Esquire
Joann M. Neth, Esquire
A. Neal Seth, Esquire
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, N.W.
Washington, DC  20001-4413

Thomas L. Creel, Esquire
Goodwin Proctor, LLP
599 Lexington Avenue
New York, NY  10022

Steven J. Fineman (#4025)