# EXHIBIT A

Westlaw.

1998 WL 125534                                                    Page 1
1998 WL 125534 (D.Del.)
**(Cite as: 1998 WL 125534 (D.Del.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
MOBILIFICIO SAN GIACOMO S.P.A., an Italian
Joint Stock Company, Plaintiff,
v.
Carlo Bargagli STOFFI, and Sangiacomo N.A., Ltd.,
a Delaware corporation,
Defendants.
**No. C.A. 96-415-SLR.**

Jan. 29, 1998.
Lawrence C. Ashby, Randall E. Robbins, Regina A.
Iorii, and John S. Grimm, of Ashby & Geddes,
Wilmington, Delaware, of counsel Francesco
Camilotti, Avv., and Allessandra Gioi Rolandi, Dott.
Proc., of Studio Legale Camilotti-Ceccon-Polettini,
Padova, Italy, for plaintiffs.

F.L. Peter Stone, of Trzuskowski, Kipp, Kelleher &
Pearce, Wilmington, Delaware, of counsel Melvin
Goldstein, of Goldstein & Assoc., P.C., Washington,
D.C.;    C. Robert Rhodes, of Rhodes Coats &
Bennett, L.L.P., Greensboro, North Carolina, for
defendants.

**MEMORANDUM OPINION**

ROBINSON, J.

**I. INTRODUCTION**

*1 Plaintiff Mobilificio San Giacomo S.p.A.
("MSG") filed this action on July 18, 1996 in the
Court of Chancery of the State of Delaware against
defendants SanGiacomo N.A., Ltd. ("SGNA") and
Carlo Bargagli-Stoffi ("Bargagli") seeking an
injunction against defendants' continued use of
MSG's "San Giacomo" trademark and money
damages arising out of the parties prior business
dealings. (D .I. 1, 31) The case was removed to this
court in August 1996. (D.I.1) Presently before this
court is defendants' motion to dismiss pursuant to
Fed.R.Civ.P. 12(b)(6), or in the alternative summary
judgement. (D.I.131) Defendants claim that Italy is
the proper forum for this lawsuit, basing their

argument on forum selection and/or arbitration
clauses in the various contracts at issue. (D.I.132)
For the reasons that follow, the court shall deny
defendants' motion to dismiss.

**II. BACKGROUND**

**A. Factual**

Plaintiff MSG is an Italian joint stock corporation,
principally owned by Luciano Biscontin and Gabriele
Piovesana, with principal place of business at Via
Gallopat, Italy. (D.I. 31 at ¶ 1) MSG is one of a
group of affiliated companies known as the San
Giacomo Group, all of which have been engaged in
the manufacture, design, and sale of furniture since
1968. (D.I. 31 at ¶ 1) Defendant SGNA is a
Delaware corporation engaged in the business of
selling and distributing in the United States furniture
supplied to it by Italian manufacturers, including
MSG. (D.I. 31 at ¶ 2) Defendant Bargagli, a New
Jersey resident, is a director and the sole stockholder
of SGNA as well as its chief executive officer. (D.I.
31 at ¶ 3) Prior to 1972, MSG's sales were limited to
Europe.    Beginning in 1982, MSG attempted to
establish itself as a supplier of Italian furniture under
the "San Giacomo" mark in the U.S.;    however,
initial attempts were unsuccessful. (D.I. 31 at ¶ ¶
12-13) In 1988 Biscontin began discussions with
Bargagli, who was in the export business, regarding a
joint venture for selling furniture in the United States.
(D.I. 31 at ¶ 13) Subsequently, SGNA was
incorporated in Delaware on December 5, 1988 as a
U.S. distributor of MSG. (D.I. 31 at ¶ 14)

On May 9, 1989, at a meeting with Biscontin,
Piovesana, and MSG's Italian attorney, Bargagli
signed a joint venture and shareholding agreement
("Joint Venture and Shareholding Agreement"), a
distribution agreement ("Distribution Agreement"),
and a management agreement. [FN1] (D.I. 31 at ¶ ¶
15-17) The Distribution Agreement provided in part:

> FN1. Bargagli signed the Distribution
> Agreement as president of "the Distributor,"
> and thus the agreement is between MSG and
> SGNA (D.I.132, Ex. I) However, the Joint
> Venture and Shareholding Agreement was
> signed by Bargagli individually, and thus the
> agreement is between MSG and Bargagli.
> (D.I.132, Ex. 2)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

This Agreement shall be governed and construed in accordance with the laws of Italy.

All disputes arising out of or in connection with the Agreement hereof shall be submitted to the jurisdiction and exclusive venue of the competent Courts of Milan, Italy.

(D.I. 132, Ex. I § § 14.1, 14.2) Similar provisions in the Joint Venture and Shareholding Agreement provided:

All disputes arising in connection with this Agreement shall be finally settled under the Rules of Arbitration and Conciliation of the International Chamber of Commerce by one or more Arbitrators appointed in accordance with the said Rules. Arbitration proceedings shall take place in Milan, in the English language and any expense in connection with the Arbitration proceedings (including reasonable attorneys' fees) shall be borne by the unprevailing Party/ies.

**\*2** This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, U.S.A.

(D.I. 132, Ex. 2 § § 7.1, 7.11)

In connection with the formation of SGNA, MSG applied on February 27, 1989 for federal registration of the mark "MSG Mobilificio San Giacomo" ("San Giacomo") in the United States. (D.I. 31 at ¶ 11) Registration of the trademark (Registration No. 1,587,857) became effective on March 20, 1990. (D.I. 31 at ¶ 11)

On May 5, 1993, Bargagli wrote to MSG, terminating the agreements which existed between SGNA and MSG effective December 21, 1993. (D.I. 31 at ¶ 39) The parties entered into a settlement agreement ("Settlement Agreement") that terminated any previous agreements and provided for a new exclusive distribution agreement and security agreement. (D.I. 31 at ¶ ¶ 40-42) The Settlement Agreement provided in pertinent part:

By undersigning the present Agreement the Parties give credit that every quasi-company agreement concluded or in the course of negotiation between the same, whether written or verbal, automatically ceases.

(D.I.146, Ex. H) The Settlement Agreement contained no forum selection or arbitration provision.

Although the Settlement Agreement set forth the scope of distribution and security agreements,

negotiations were unsuccessful and no further agreements were executed. (D.I. 31 at ¶ ¶ 43-45) Nevertheless, the parties continued to conduct business pursuant to the terms contemplated by the Settlement Agreement. (D.I. 31 at ¶ ¶ 43-45)

In February 1993, SGNA applied for federal registration of the name "San Giacomo" as its own trademark in the United States (Trademark Application Serial No. 74,638,241). (D.I. 31 at ¶ 47) The Patent and Trademark Office refused registration of the mark on August 3, 1995 because of the similarities between SGNA's proposed mark and the already registered MSG mark. On March 16, 1995, SGNA unsuccessfully petitioned the Trademark Trial and Appeal Board to cancel MSG's mark. (D.I. 31 at ¶ 47)

In July 1996, MSG provided notice to SGNA of termination of the distribution arrangement between the parties effective January 1997, requesting that SGNA change its name and cease all use of the "San Giacomo" trademark. (D.I. 31 at ¶ 59) Simultaneously, MSG commenced this litigation, filing suit in the Court of Chancery of the State of Delaware. (D.I.1) The case was removed to this court in August 1996. (D.I.1) In addition to the application at bar, currently pending before the court is plaintiff's motion filed on February 21, 1997 for partial summary judgment for amounts due on unpaid invoices and immediate entry of judgment with respect thereto. (D.I.74)

**B. Procedural History**

MSG filed the complaint in the Court of Chancery on July 18, 1996 alleging five separate causes of action against SGNA and Bargagli: (1) common law fraud; (2) breach of fiduciary duty; (3) breach of contract; (4) restitution; and (5) civil conspiracy. (D.I.1) On August 16, 1996, the case was removed to this court. (D.I.1) On August 23, 1996, Bargagli filed a motion to dismiss for lack of personal jurisdiction and insufficient service of process. (D.I.2) On the same day, SGNA filed an answering brief in which it asserted, *inter alia,* that the complaint failed to state a claim upon which relief could be granted. (D.I. 4 at ¶ 63) SGNA also asserted as its tenth affirmative defense that "[t]he United States Trademark Trial and Appeal Board, an administrative agency of the United States, ha[d] primary jurisdiction over the principal issues raised in the Complaint." (D.I. 4 at ¶ 74) SGNA's answering brief also contained four counterclaims--two trademark claims, a breach of contract claim, and a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1998 WL 125534
1998 WL 125534 (D.Del.)
(Cite as: 1998 WL 125534 (D.Del.))

tortious interference with business relationship claim. (D.I. 4 at ¶ ¶ 123-147)

*3 On September, 5, 1996, the then assigned judge issued his standing order Number 1 which: (1) dismissed Bargagli's motion to dismiss without prejudice; and (2) required that all future motions be filed only with the permission of the court. (D.I.6)

Bargagli subsequently filed a second motion to dismiss for lack of personal jurisdiction and insufficient service of process on September 20, 1996. (D.I.8) On October 29, 1996, in response to Bargagli's motion, the court dismissed all causes of action against Bargagli except for the breach of fiduciary duty claim. (D.I.14) On the same date, the court entered an order granting defendants permission to file a motion to dismiss all remaining counts for failure to state a cause of action. (D.I.17) In response, defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on November 12, 1996. (D.I.20) The opening brief filed in support of defendants' motion to dismiss alleged that the complaint was defective because (1) each cause of action alleged by MSG was barred by the statute of limitations, 6 Del.C. § 8106; and (2) MSG failed to allege the facts necessary to establish the existence of each legal claim. (D.I.21) This motion did not seek to enforce the forum selection clauses. The court denied defendants' motion to dismiss upon MSG's voluntary withdrawal of claim V of the complaint for civil conspiracy. (D.I.25)

Subsequently, MSG filed a motion to amend its complaint, which was denied on January 9, 1997, and MSG was ordered to reformulate the amended complaint. (D.I.29) On January 17, 1997, MSG submitted a revised version of its amended complaint, requesting the court's permission to file it. (D.I.31) The amended complaint differed significantly from the initial complaint, reciting new facts, stating different claims for relief, and adding six new causes of action. (D.I.31) The court granted MSG's request to amend its complaint and accepted the complaint for filing on March 6, 1997. (D .I. 41)

On February 21, 1997, MSG filed a motion seeking an order enjoining defendants' use of MSG's "San Giacomo" trademark and name and the return of all promotional and advertising material referring to the "San Giacomo" trademark. (D.I.79)

On March 17, 1997, SGNA filed an answering brief in which it again asserted, *inter alia,* that the complaint failed to state a claim upon which relief could be granted. (D.I. 46 at ¶ 99) SGNA also asserted again that "[t]he United States Trademark Trial and Appeal Board, an administrative agency of the United States, ha[d] primary jurisdiction over the principal issues raised in the Complaint." (D.I. 46 at ¶ 112) For the first time, SGNA asserted that this court did not have subject matter jurisdiction over MSG's claims or the jurisdiction to grant the relief requested. (D.I. 46 at ¶ 100) In addition to the counterclaims asserted in its initial answering brief, in its amended answer, SGNA added additional trademark and breach of contract claims as well as claims for unfair competition, fraud, and breach of implied covenant of good faith and fair dealing. (D.I.46)

*4 Also on March 17, 1997, Bargagli filed a motion to dismiss the amended complaint on personal jurisdiction grounds. (D.I.44) The court dismissed, without prejudice, Bargagli's motion on March 25, 1997. (D.I.50)

On March 19, 1997, in response to plaintiff's motion for a preliminary injunction (D.I.79), defendants filed an action seeking to enjoin MSG's use of the "San Giacomo" mark or "any confusingly similar mark" in connection with the sale of furniture. (D.I.85)

On April 15, 1997, defendants wrote to the court requesting permission to file a motion to dismiss certain causes of action in the amended complaint on the basis of the forum selection clauses in the contracts. (D.I. 148, Ex C) The defendants reiterated their request to file a motion to dismiss based on the forum selection clauses in a letter to the court dated April 23, 1997. Defendants raised the question again in a teleconference held with the court on April 30, 1997. (D.I.70) That same day, the then assigned judge denied defendants' request, directing that

defendants' motion to dismiss based on the forum selection clauses in various contracts [be] deferred until the time when all briefing is to be done on case dispositive motions. The status of this case with respect to the motion to dismiss [was] preserved as of the date of defendants['] request to file this motion was submitted to the court.

(D.I.71)

During a hearing regarding the parties' motions for preliminary injunction and MSG's motion for partial summary judgment held July 31, 1997, defendants again referred to their forum selection clause motion. (D.I.113) On September 24, 1997, the court granted MSG's motion for a preliminary injunction and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1998 WL 125534                                                    Page 4
1998 WL 125534 (D.Del.)
**(Cite as: 1998 WL 125534 (D.Del.))**

denied defendants' cross motion. (D.I.115) Accordingly, a preliminary injunction was entered by the court on October 7, 1997. (D.I.125)

On October 23, 1997, the court granted defendants' request to file a motion to dismiss based on the forum selection clauses in the various contracts. (D.I.129) On November 18, 1997, defendants filed a motion "to dismiss all claims stated against them in the Amended Complaint on the grounds that the Amended Complaint fails to state claims for which relief can be granted" pursuant to Fed.R.Civ.P. 12(b)(6). (D.I.131) Alternatively, defendants request that the court grant summary judgment in their favor on all causes of action on the basis of the forum selection clauses. (D.I.131)

### III. STANDARD OF REVIEW

Since the parties have referred to matters outside the pleadings, defendants' motion shall be treated as one for summary judgment. [FN2] *See* Fed.R.Civ.P. 12(b). Summary judgment should be granted only if the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a **genuine issue for trial.**'" *Id.* at 587 (emphasis in original) (quoting Fed.R.Civ.P. 56(e)). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (citations omitted). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This court,

however, must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995) (citation omitted).

> FN2. Rule 12(b) provides that
> [i]f, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
> Fed.R.Civ.P. 12(b).

### IV. DISCUSSION

#### A. The Enforceability of the Forum Selection Clause

**\*5** An initial concern in assessing the enforceability of a forum selection clause is what law, federal, state, or that designated in the contract (which with respect to the Distribution Agreement is Italian) governs the analysis. *See In re Diaz Contracting, Inc.,* 817 F.2d 1047, 1050 (3d Cir.1987). Within the Third Circuit, the enforceability of these provisions is determined by federal law:

> In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law. Because "[q] uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature," *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1991), federal law applies in diversity cases irrespective of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 877 (3d. Cir.1995). *But cf. General Eng'g Corp. v. Martin Marietta Alumina, Inc.,* 783 F.2d 352, 356 (3d Cir.1986) ("We must correct the assumption that federal courts are bound as a matter of federal common law to apply [a federal] standard to forum selection clauses.... [I]n a suit between private parties where federal common law is sought to be applied, 'normally the guiding principle is that a **significant conflict between some federal policy or interest and the use of state law in the premises must first be specifically shown.**" (citations omitted)); *Coastal*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

_Steel Corp. v. Tilghman Wheelabrator Ltd._, 709 F.2d 190, 201 (3d Cir.1983) ("It is not entirely clear why, absent a [federal] statute ... the enforceability of a contractual forum selection clause should properly be divorced from the law which in other respects governs the contract."). Thus, the determination whether the forum selection clauses at issue should be enforced is governed by the standard enunciated by the Supreme Court in _M/S Bremen V. Zapata Off-Shore Co.,_ 407 U.S. 1, 12, 15, 19, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). [FN3] _See In re Diaz,_ 817 F.2d at 1050.

> FN3. Even if the analysis were performed using state law, the conclusion would not be changed because the substantive law of the only jurisdictions who have an interest in the matter, Delaware and New Jersey, substantially conforms to the federal standard with respect to the enforceability of forum selection provisions. _See, e.g., Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.,_ 685 A.2d 724, 733 (Del.Super.1996); _McNeill v. Zoref,_ 297 N.J.Super. 213, 687 A.2d 1052, 1055 (N.J.Super.Ct.App.Div.1997).
> Since neither party has argued for the application of Italian law and both have applied _The Bremen_ standard, this court will forgo an analysis regarding the application of Italian law. _See Oglesby v. Penn Mutual Life Ins. Co.,_ 877 F.Supp. 872, 878 (D.Del.1994) (stating that a court may forgo an independent analysis if the contracting parties agree on what law governs).

The Supreme Court in _The Bremen_ announced a general rule that forum selection clauses are "_prima facie_ valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." _The Bremen,_ 407 U.S. at 10 (addressing whether a London forum selection clause contained in a commercial towage contract should be enforced). In _Stewart Org., Inc. v. Ricoh Corp.,_ 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), Justice Kennedy reiterated that "a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." _Stewart Org., Inc.,_ 487 U.S. at 83 (Kennedy, J., concurring). The Court in _The Bremen_ remanded the case in order to allow Zapata, the party opposing enforcement of the forum selection clause, the "opportunity to carry its heavy burden of showing not only that the balance of convenience is strongly in favor of trial in Tampa ... but also that a London

trial will be so manifestly and gravely inconvenient to Zapata that it will be effectively deprived of a meaningful day in court." _The Bremen,_ 407 U.S. at 19. Alternatively, the Supreme Court held that a party could resist imposition of a forum selection clause if it could demonstrate that the contract resulted from "fraud, undue influence, or overweening bargaining power," _id_ at 12, or that "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," _id_. at 15.

**\*6** Adopting this standard, the Third Circuit announced that

> a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

_Coastal Steel,_ 709 F.2d at 202. Because forum selection clauses are presumptively valid, the party objecting to enforcement of the clause bears the "heavy burden ... of proving 'that enforcement would be unreasonable and unjust.' " _In re Diaz,_ 817 F.2d at 1052 (quoting _The Bremen,_ 407 U.S. at 15).

In the instant action, SGNA and Bargagli contend that it is just and reasonable for the forum selection clauses to be enforced. (D.I.132) Accordingly, defendants argue that all of the claims in the amended complaint must be dismissed. (D.I. 132 at 2) In response, MSG argues that the forum selection clauses in the various contracts at issue are not enforceable under _The Bremen_ standard because enforcement would (1) contravene strong public policies of this forum; (2) be unjust and unreasonable; and (3) deprive MSG of its day in court. (D.I.146) The court will address each argument _in seriatim._

**1. Policy of the Forum [FN4]**

> FN4. MSG does not contend that the forum selection clauses were the result of fraud or overreaching. Thus, this court will address only the two other factors in _The Bremen_ analysis.

MSG argues that enforcement of the forum selection clauses would contravene strong public policies of

1998 WL 125534                                                    Page 6
1998 WL 125534 (D.Del.)
(Cite as: 1998 WL 125534 (D.Del.))

this forum. Specifically, MSG contends that (1) defendants' tardy advancement of the clauses undermines policies of conservation of judicial time and effort; and (2) proper enforcement of the preliminary injunction would be jeopardized if the forum selection clauses were enforced. [FN5] (D.I.146)

> FN5. Since SGNA and Bargagli have agreed to comply with the preliminary injunction pending a ruling by the Italian courts, MSG will suffer no prejudice in this respect through enforcement of the forum selection clauses.

The court recognizes that there exists a strict standard in favor of enforcement of forum selection clauses. The Supreme Court in _The Bremen_ stated that

in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside.

_The Bremen,_ 407 U.S. at 15. Accordingly, the Third Circuit has consistently enforced such provisions, finding to do otherwise "would be to revisit the 'parochialism' and 'provincialism' that the Supreme Court decried in _The Bremen._" _Hodes v. S.N.C. Achille Lauro ed Altri-Gestione,_ 858 F.2d 905, 915 (3d Cir.1988) (recognizing "the legitimate boundaries of American public policy" and refusing "to wield the trump of American public policy."), _cert. dismissed,_ 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149, _overruled on other grounds,_ 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). See, e.g., Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1297-98 (3d Cir.1996); General Eng'g Corp., 783 F.2d at 359-60; Coastal Steel, 709 F.2d at 201-04. However, in the instant action, the circumstances support finding the forum selection clauses at issue unenforceable.

*7 There is a strong policy in this court "against tardily raising defenses that go not to the merits of the case but to the legal adequacy of the initial steps taken by the plaintiff in his litigation." _Myers v. American Dental Ass'n,_ 695 F.2d 716, 721 (3d Cir.1982). Equally pervasive is a strong policy of conservation of judicial time and effort. Accordingly, it was incumbent upon defendants to present the forum selection clause for the court's consideration in a timely manner. _See Comitex Knitters Ltd. v. Lockton Indus., Inc.,_ No. 81-4769, 1982 U.S.Dist. LEXIS 13375, at *3-4 (S.D.N.Y. May 17, 1982). In the instant action, the record indicates

that defendants did not diligently press their forum selection clause position. Rather, they waited until April 1997, eight months into the litigation, before seeking permission to file a forum selection clause motion. By this point in time, defendants had filed four motions to dismiss, participated in extensive discovery, and sought a preliminary injunction. As a result, both the parties and the court have invested substantial resources and time in this action. Moreover, although defendants contend that their forum selection clause defense was maintained by assertion of a 12(b)(6) defense in their answering brief, [FN6] their 12(b)(6) motion to dismiss filed on November 12, 1996 (D.I.20) did not mention any objection to this court as the proper forum for litigation. In fact, in March 1995 SGNA initiated litigation before the Trademark Trial and Appeals Board rather than engage in litigation in the forum it now contends has jurisdiction. Under the circumstances, the court concludes that defendants cannot at this stage in the proceedings, and after the devotion of considerable judicial time and resources to this action, prevail in their attempt to enforce the forum selection clauses. See _Avant Petroleum, Inc. v. Banque Paribas,_ 652 F.Supp. 542, 545-46 (S.D.N.Y.1987) (finding that the right to enforce the forum selection clause was waived where the defense was asserted for the first time at oral argument on a motion, after the opposing party had already filed its responsive briefs, and five months after the party asserting the defense had filed its answer to the claim), _aff'd by_ 853 F.2d 140 (2d Cir.1988); _Schwartz v. Oberweis,_ No. 93-4054, 1994 U.S.App. LEXIS 16038, at *10-13 (7th Cir. June 23, 1994) (affirming trial court's refusal to compel arbitration where litigant "chose to submit the merits of this case to the district court, and it was only a year later, after an unfavorable ruling on his motion to dismiss, that he took any steps to enforce what he believed to be his rights to arbitration. As correctly noted by the district court, this behavior indicates the type of forum-shopping prohibited by this court....").

> FN6. Because this court concludes that the forum selection clauses are unenforceable under _The Bremen_ standard, this court need not determine whether defendants' 12(b)(6) motion to dismiss was the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause.

## 2. Unreasonableness Under the Circumstances

MSG maintains that enforcement of the forum selection clauses would be unreasonable, placing it at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

" 'substantial and unjustified disadvantage.' " (D.I. 146 at 21) Under *The Bremen* it is

> **\*8** incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.

*The Bremen*, 407 U.S. at 18. This standard is satisfied if a litigant can demonstrate that it "would face blatant prejudice in the foreign forum" or "if enforcement of the foreign forum selection would be **severely impractical.**" *Hodes*, 858 F.2d at 916 (emphasis added). According to MSG, it was "eminently reasonable" for it to bring this suit in the United States and that the case be resolved here since (1) the majority of witness, documents, and other evidence relevant to this suit are located in the United States; (2) SGNA is a Delaware corporation and Bargagli a resident of New Jersey; (3) the majority of the events that form the basis of the action occurred in the United States; and (4) most of the third-party witnesses would not be subject to compulsory process in Italy. The record reveals, however, that witnesses and documents relevant to this action are located in both Italy and the United States, that MSG's officers and employees live in Italy, and that Bargagli is an Italian citizen who spends a great deal of time in Italy. Moreover, a number of documents at issue in the litigation are written in Italian. Thus, although MSG might be inconvenienced by having to litigate in Italy, any inconvenience was easily foreseeable at the time of the contract and does not, standing alone, justify rendering the forum selection clauses unenforceable. *See, e.g., Hodes*, 858 F.2d at 916 (finding, despite the fact appellees bought their tickets in the United States, that the practicalities favored an Italian forum since Italy was where performance occurred and Italian would be the language of most of the witnesses); *General Eng'g Corp.*, 783 F.2d at 359-60 (finding that the deprivation of the opportunity to present live testimony did not render a forum selection clause unreasonable); *Coastal Steel*, 709 F.2d at 203-04 ("The availability of witnesses is a problem in either jurisdiction but an insurmountable problem in neither."). *But cf. Copperweld Steel Co. v. D emag-Mannesmann-Bohler*, 578 F.2d 953, 964-66 (3d Cir.1978) (affirming trial court's refusal to enforce a forum selection clause because, *inter alia*, the plant at issue was located in and had been constructed in the United States and would have to be inspected during trial).

MSG also contends that, if this court were to dismiss

the action, MSG would be deprived of its day in court because it would not be able to bring this action in Italy despite existence of the forum selection clauses. The Third Circuit has consistently held that "[a] substantive difference in the law is not sufficient reason to void a forum selection clause." *Nova Ribbon Prods., Inc. v. Lincoln Ribbon, Inc.*, No. 89-4340, 1992 WL 211544, at \*9 (E.D.Pa. Aug.24, 1992), *aff'd by* 995 F.2d 218 (3d Cir.1993). *See, e.g., Dayhoff Inc.*, 86 F.3d at 1297-98 (affirming the lower court's enforcement of the forum selection clause despite assertions that "complete, consistent, and meaningful relief" could only be obtained in the United States); *Hodes*, 858 F.2d at 915 (refusing "to wield the trump of American public policy" even though an Italian court might enforce contractual provision limiting liability). Thus, MSG's alleged inability to raise trademark, fraud, and fiduciary duty claims because under Italian law such claims do not arise out of or have *causa petendi* in the 1989 agreements (D .I. 146, Ex. A) is an insufficient basis on which to refuse enforcement of the forum selection clauses.

**\*9** However, where a party's ability to pursue its cause of action is impaired procedurally, rather than substantively, forum selection clauses have been rendered unenforceable. *See Nova Ribbon Prods., Inc.*, 1992 WL 211544 at \*9. According to Mr. Camilotti, MSG's Italian counsel, an Italian court would dismiss this action for lack of jurisdiction because the Distribution Agreement and the Joint Venture and Shareholding Agreement, which contain the forum and/or arbitration provisions, were terminated on September 1, 1993 and were replaced by the Settlement Agreement, which does not contain a forum selection or arbitration provision. [FN7] (D.I.146, Ex. A.¶ 3) Defendants do not refute this interpretation of Italian law, rather they argue that the Settlement Agreement does not prevent SGNA from enforcing the forum selection clause because (1) the Settlement Agreement was signed by MSG and Bargagli, not SGNA; (2) an unsigned, draft 1993 distribution agreement transmitted to SGNA by MSG subsequent to the execution of the Settlement Agreement required arbitration of "any controversy between the Parties" be conducted in Italy (D.I.148, Ex. F); and (3) MSG's course of conduct in 1996 and 1997 indicated that it was relying on either the Distribution Agreement or the 1993 draft distribution agreement to support its claims in this litigation.

> FN7. Defendants do not refute Mr. Camilotti's assessment of Italian law, rather they argue that Mr. Camilotti's affirmation is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1998 WL 125534                                                                    Page 8
1998 WL 125534 (D.Del.)
**(Cite as: 1998 WL 125534 (D.Del.))**

defective because it does not mimic the language set forth in 28 U.S.C. § 1746. Section 1746 requires an unsworn declaration executed outside the United States be:

subscribed by [the declarant] as true under penalty of perjury, and dated, **in substantially the following form:** ... I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

28 U.S.C. § 1746 (1997) (emphasis added). Despite the fact that the wording of Mr. Camilotti's affirmation differs from that set forth in section 1746, the court finds that the affirmation substantially conforms to the standard.

Defendants also argue that Mr. Camilotti's statement is defective because it refers only to actions before Italian courts, not the arbitration panels that are referred to in the 1989 Joint Venture and Shareholding Agreement. This omission does not render the affirmation defective, particularly since defendants' motion seeks dismissal based on the forum selection clause not the arbitration clause.

The record clearly indicates that the 1989 agreements that contain the forum selection and/or arbitration provisions were terminated in 1993. (D.I. 31 at ¶ 39) Bargagli himself sent a letter to MSG on May 5, 1993 terminating the agreements. (D.I.101, Ex. 13) This termination was recorded in the 1993 Settlement Agreement. (D.I. 146, Ex H) In fact, SGNA raised as its fifth affirmative defense in its answering brief that "[a]ll causes of action are barred by a Settlement Agreement entered into by the parties on or about September 1, 1993." (D.I. 46, 103; see also ¶ 114 "All causes of action are barred as a result of the termination or abandonment of any contractual arrangement which the parties might have concluded.") Thus, based upon Mr. Camilotti's affirmation, the court finds that were it to dismiss this matter MSG would be denied its day in court.

Even if the Italian courts had jurisdiction over MSG claims, enforcement of the forum selection clauses would be unreasonable. The Supreme Court in *The Bremen* clearly indicated that forum selection clauses should not be enforced when doing so would be " 'unreasonable' under the circumstances." *The Bremen*, 407 U.S. at 10. In the instant action, defendants seek enforcement of forum selection provisions in agreements which they themselves unequivocally terminated. In the absence of a contract, a party cannot be compelled to arbitrate because arbitration is premised on the existence of an unequivocal contractual promise to do so. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir.1996); *Par-knit Mills v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir.1980); *Dougherty v. Mieczkowski*, 661 F.Supp. 267, 274 (D.Del.1987). A dispute which arises after expiration of the contract need not be submitted to arbitration. *See Cincinnati Newspaper Guild, Local 9 v. Cincinnati Enquirer, Inc.*, 650 F.Supp. 26, 29 (S.D.Ohio 1986), *rev'd on other grounds*, 863 F.2d 439 (6th Cir.1988). Likewise, a forum selection clause in a contract terminates on the date the contract is terminated. *See Lockwood Corp. v. Black*, 501 F.Supp. 261, 663-64 (N.D.Tx.1980), *aff'd by* 669 F.2d 324 (5th Cir.1982). Here, by SGNA's own admission, the agreements containing the forum selection and/or arbitration clauses were terminated prior to MSG's cause of action. The court concludes that to dismiss this action on the basis of contractual provisions in contracts terminated by defendants three years prior to the initiation of this litigation would be unreasonable. [FN8]

> FN8. MSG advances two other reasons for denying defendants' motion for enforcement of the forum selection clauses: (1) Bargagli and SGNA cannot assert the forum selection clause and arbitration clauses, respectively, because they are nonsignatories to the respective contracts; and (2) MSG is entitled to waive the clauses because they were intended to benefit MSG. (D.I.146) However, because MSG has met its burden under *The Bremen* standard, this court need not address the validity of these arguments.

**V. CONCLUSION**

**\*10** For the reasons stated above, the court finds that MSG has successfully met its burden under *The Bremen* standard. Because the court concludes that the forum selection clauses at issue do not govern the instant action, this court remains the proper forum for the dispute. Accordingly, the court shall deny defendants' motion to dismiss the complaint. An appropriate order shall issue.

1998 WL 125534 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:96CV00415 (Docket)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1998 WL 125534
1998 WL 125534 (D.Del.)
**(Cite as: 1998 WL 125534 (D.Del.))**

(Aug. 16, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d
1999 WL 6364 (S.D.N.Y.), 1999 A.M.C. 889
(Cite as: 1999 WL 6364 (S.D.N.Y.))

Page 1

▷

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
In the Matter of the Complaint of: RATIONIS
ENTERPRISES, INC. OF PANAMA, as
Owner, and Mediterranean Shipping Co. S.A. of
Geneva, as Bareboat Charterer of
the M/V "MSC Carla" for Exoneration from or
Limitation of Liability,
**No. 97 CV 9052(RO).**

Jan. 7, 1999.

*MEMORANDUM AND ORDER*

OWEN, J.

*\*1* In November of 1997, the 289-meter *M/V MSC Carla* departed from Le Havre on a fully-laden westbound voyage to the United States. The ship had a cargo capacity of 2858 TEUs, [FN1] and her eight cargo holds carried more than sixteen hundred shipping containers--including such items as cheese, ceramic tile, razor blades, heavy machinery, beer, perfume, automobile parts, furniture, porcelain dishes, limestone and personal effects--destined for various ports and consignees. On November 24, 1997, the *Carla* hit heavy weather on the high seas and broke in two pieces north of the Azore Islands. Although both pieces initially remained afloat and salvage tugs began towing them, the bow section sank on November 30. The stern section was eventually towed to Las Palmas, Canary Islands. Experts and attorneys representing various interests inspected the remains of the vessel at Las Palmas in December of 1997, and again in January of 1998. The remains were then sold as salvage.

> FN1. A TEU is a twenty-foot equivalent unit of ocean container.

This case is a limitation proceeding under 46 U.S.C.App. §§ 181 *et seq.* That statute provides an admiralty procedure for all claims to be filed in a special limitation proceeding so that a single court may determine the facts and liability and possibly limit the shipowner's exposure to the salvage value of the vessel plus the amount of freight pending. *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law,* § 15-1 at 299 (2d ed.1994). The original statute was first enacted in 1851 "for the purpose of putting American shipping upon an equality with that of other maritime nations." *The Main v. Williams,* 152 U.S. 122, 128 (1894). In *Hartford Accident & Ind. Co. v. Southern Pacific Co. (The Bolikow),* 273 U.S. 207, 216 (1927), Chief Justice Taft described the limitation proceeding as being

> equitable in nature, partaking in a way of the features of a bill to enjoin a multiplicity of suits, a bill in the nature of an interpleader, and a creditor's bill. It looks to the complete and just disposition of a many-cornered controversy, and is applicable to proceedings in rem against the ship as well as to proceedings in personam against the owner, the limitation extending to the owner's property as well as to his person.

This case is nothing if not a "many-cornered controversy." I earlier established the filing deadline for claims in this limitation proceeding as December 1, 1998, and claims of more than $130 million [FN2] by hundreds of claimants. In addition, twenty-nine related cases have been filed.

> FN2. MSC uses a figure of $130 million in claims, while POL/ACL's figure is that the claims are in excess of $160 million.

On December 4, 1998, I held a conference regarding the Korean forum selection clause contained in Hyundai Merchant Marine Co. Ltd.'s ("Hyundai") bills of lading. Hyundai is a vessel-owner who contracts with a cargo owners to ship their cargoes under its bills of lading. Hyundai and Mediterranean Shipping Company ("MSC"), the owner of the *Carla,* are parties to a Vessel Sharing Agreement ("VSA") which allows competing carriers to ship cargo on each other's vessels in order to make more effective use of their separate services and allow a greater frequency of sailings of the parties' various vessels. Thus, each vessel operator accepts containerized cargo which is moving under various bills of lading, regardless of which VSA partner was the issuer. A consignor, therefore, will not necessarily know whose ship will actually carry its cargo. If cargo is damaged, the cargo owner may pursue the bill of lading issuer and/or the vessel operator. The VSA requires the bill of lading issuer to appear and defend the vessel operator so that each carrier deals with its own customers. Under the VSA, any subsequent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 6364 (S.D.N.Y.), 1999 A.M.C. 889
(Cite as: 1999 WL 6364 (S.D.N.Y.))

claims between the bill of lading issuer and the vessel operator is subject to arbitration in London. Hyundai has already agreed to submit all of its indemnity claims against MSC to London arbitration.

*2 Hyundai's bills of lading (its contracts with its cargo interests) contain a Korean forum clause providing that any disputes are to be adjudicated in court in Seoul, Korea. Hyundai here seeks to enforce this clause. However, cargo interests claim that Hyundai has waived this forum clause by appearing in this limitation proceeding--an action inconsistent with the Korean forum clause--and should therefore be subject to suit in this Court. The cargo claimants, not unreasonably, do not want to proceed in a Korean forum because of the substantial additional expense and inconvenience and arguable duplication, and prefer all the claims to be adjudicated in this proceeding in New York.

Our Supreme Court has observed that foreign forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Company,* 407 U.S. 1, 10 (1972); *New Moon Shipping Co. Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24 (2d Cir.1997). The burden is thus on the cargo interests to demonstrate that giving effect to the clause here is unreasonable. The Second Circuit has held that "a mandatory forum-selection clause does not 'oust the jurisdiction' of the court, but rather requires the court to determine whether the party resisting enforcement of the clause has shown the clause to be unreasonable or unfair under the circumstances." *Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.,* 145 F.3d 505, 510 (2d Cir.1998); *Allen v. Lloyd's of London,* 94 F.3d 923 (4th Cir.1996). A forum selection clause is "unreasonable" if:

(1) [its] incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party "will for all practical purposes be deprived of his day in court" due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

*Roby v. Lloyd's of London,* 996 F.2d 1353, 1363 (2d Cir.1993).

The first and third factors are not applicable here because there is no contention either that the forum selection clause was the result of fraud or overreaching or that some aspects of Korean law will deprive plaintiff of a remedy. Rather, the cargo interests argue that enforcement of the Korean forum clause here is unreasonable because: a) it would cause serious inconvenience by forcing all Hyundai's cargo claimants to litigate the same claims in two separate forums; b) because of the substantial additional costs involved to maintain a Korean lawsuit; c) because of the inequity in carving off certain claimants in a limitation proceeding of this size; and that in any event, d) Hyundai waived its forum clause by initially filing a claim in the limitation proceeding. [FN3]

> FN3. The cargo interests also argue that the Korean jurisdiction clause is part of a bill of lading, an "adhesion" contract. However, there "is no merit to the plaintiff's claim that the Court should invalidate the forum selection clause because the bill of lading in which it appears is a contract of adhesion. The Supreme Court upheld a foreign arbitration clause even though it appeared in a 'standard form bill of lading.' " *Silgan Plastics Corp. v. M/V Holland,* 1998 AMC 2163 (S.D.N.Y.1998) (citing *Sky Reefer,* 515 U.S. at 530).

At oral argument, counsel for the cargo interests argued that Hyundai has waived its forum enforcement clause by filing in the limitation proceeding and by taking advantage of this Court's discovery orders, so it is subject to cross claims. There is some confusion regarding Hyundai's filings within the limitation proceeding. A claim was filed in the limitation proceeding on behalf of Hyundai's cargo container underwriter on June 12, 1998. Papers to amend this claim were prepared by the attorneys on July 27, 1998, but they were inadvertently not filed with the Court. Subsequently, the attorneys, belatedly wishing to avoid the appearance of waiver, sent me an exparte Notice of Dismissal pursuant to Rule 41 of the Federal Rules of Civil Procedure--but addressed to the Amended Claim, which was attached as Exhibit A. On September 4, 1998, I signed it. The Dismissal did not address the original claim, and the cargo interests contend that they never received notice of either the Amended Claim or the Notice of Dismissal. In October, 1998, the first cross-claim was asserted against Hyundai within the limitation proceeding. The cargo interests maintain that since the Amended Claim was never filed, the Notice of Dismissal did not remove Hyundai from this action. I need not reach this issue, however, because Hyundai Merchant Marine (America) Inc.

Not Reported in F.Supp.2d
1999 WL 6364 (S.D.N.Y.), 1999 A.M.C. 889
**(Cite as: 1999 WL 6364 (S.D.N.Y.))**

Page 3

filed its own claim. *See* Rule F Statement, Claim # 604. [FN4] According to *In re Deleas Shipping Ltd.,* 1996 AMC 434 (W.D.Wash.1995), a "forum selection clause will be deemed waived if the party invoking it has taken actions inconsistent with it, or delayed its enforcement, and other parties would be prejudiced."

> FN4. Although a Stipulation dated June 12, 1998 notes that Hyundai's claim is "strictly without prejudice to the enforceability of the Korean foreign forum selection clause contained in its bill of lading as between HMM and ... any third parties," Hyundai has submitted itself to this Court's jurisdiction by filing within the limitation proceeding.

**\*3** Here, MSC has properly availed itself of the limitation proceeding in an attempt to control what has become more than $130 million in claims by hundreds of claimants. The unusual size and complexity of this matter render arguments of judicial economy and equity particularly strong in this case. "The purpose of a limitation proceeding is not merely to limit liability but to bring all claims into concourse and settle every dispute in one action." *The Quarrington Court,* 102 F.2d 916, 918 (2d Cir.1939). The Supreme Court has "given the statute a very broad and equitable construction for the purpose of carrying out its purpose, and for facilitating a settlement of the whole controversy [FN5] as are comprehended within it, and that all the ease with which rights can be adjusted in equity is intended to be given to the proceeding." *Hartford Accident & Ind. Co.,* 273 U.S. at 215-16. [FN6]

> FN5. [Footnote by this Court] Given the myriad global origins of the shipments of cargo, not every conceivable claim between various parties flowing from this sinking can be drawn into this proceeding. *See generally, Oceanic Steam Navigation Company Ltd. v. Mellor,* 233 U.S. 718, 732-33 (1914) *(The Titanic).* It is, however, manifestly the Supreme Court's preferential view, flowing as it does from a common-sense appraisal of the situation and the conservation of international judicial resources, that the goal of settling "the whole controversy" is to be pursued where possible.

> FN6. Hyundai cites *Afram Carriers, Inc. v. Moeykins,* 145 F.3d 298 (5th Cir.1998) in support of the proposition that the policy

behind a limitation proceeding does not overcome the right to enforcement of a foreign forum clause. That case involved a questioned out-of-court settlement of a wrongful death claim in Peru, and the Fifth Circuit found that the two policies behind a limitation proceeding--protecting American shipowners and equitable resolution of disputes--appeared to be "at loggerheads," 145 F.3d at 302, and therefore canceled each other out. I do not find that approach applicable here.

Hyundai argues, however, that *Vimar Seguros y Reaseguros S.A. v. M/V Sky Reefer,* 515 U.S. 528 (1995) mandates that this Court *must* enforce the forum clause. I do not, however, see *Sky Reefer* holding more than that "foreign *arbitration* clauses in bills of lading are not invalid under COGSA *in all circumstances."* 515 U.S. at 541 (emphasis added). The instant motion deals with a foreign jurisdiction clause, rather than a foreign arbitration clause. In her concurrence, Justice O'Connor specifically noted that "the District Court ... retained jurisdiction over [*Sky Reefer* ] while the arbitration proceeds, [so] any claim of lessening of liability that might arise out of the arbitrators' interpretation of the bill of lading's choice of law clause ... is premature." 515 U.S. 528 at 542; *see also Union Steel America Co. v. M/V Sanko Spruce,* 14 F.Supp.2d 682 (D.N.J.1998) (noting that "the crucial distinction between foreign arbitration clauses and foreign forum selection clauses" is what led the Supreme Court to dismiss petitioner's argument in *Sky Reefer* ). The safeguard of retained jurisdiction is therefore not applicable here because this case involves a foreign jurisdiction clause.

While Hyundai has enforced this very forum clause before other courts, [FN7] those cases did not involve limitation proceedings of this size and complexity. They, like *Fireman's Fund Insurance Company v. Cho Yang Shipping Co. Ltd.,* 1998 AMC 583 (9th Cir.1997), or *Bison Pulp & Paper Ltd. v. M/V Pergamos,* 1996 AMC 2022 (S.D.N.Y.1995), essentially involved simple breaches of contract or single claimants. Unjustifiably giving effect to all of the various forum clauses in a cargo situation of this complexity and global magnitude would fragment this case beyond recognition. [FN8] Furthermore, after filing its own claims in the limitation proceeding, Hyundai cannot now avoid the Court's jurisdiction. *See Oceanic Steam Navigation Company Ltd. v. Mellor (The Titanic),* 233 U.S. 718, 732-33 (1914) ("The question is not whether the owner of the Titanic by this proceeding can require all claimants to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 6364 (S.D.N.Y.), 1999 A.M.C. 889
(Cite as: 1999 WL 6364 (S.D.N.Y.))

come in, and can cut down rights vested under English law, as against, for instance, Englishmen living in England who do not appear. It is only whether those who do see fit to sue in this country are limited to their recovery irrespective of English law.").

FN7. See, e.g., *International Marine Underwriters CU v. M/V Kasif Kalkavan,* 989 F.Supp. 498 (S.D.N.Y.1998); *Hyundai Corp. (U.S.A.), Inc. v. M/V An Long Jiang,* 1998 AMC 854 (S.D.N.Y.1998); *TradeArbed, Inc. v. M/V Agia Sofia,* 1997 AMC 2838 (D.N.J.1997).

FN8. Indeed, to do so would be to act with the arbitrary despotism of Poseidon, rather than in accordance with the more thoughtful dictates of justice and equity.

*4 In sum, I decline to enforce Hyundai's Korean forum clause for the reasons set forth above.

The foregoing is so ordered.

1999 WL 6364 (S.D.N.Y.), 1999 A.M.C. 889

**Motions, Pleadings and Filings (Back to top)**

- 1:97cv09052    (Docket) (Dec. 09, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS      )
CORPORATION,                  )
                              )
          Plaintiff,          )        C. A. No. 04-293 (KAJ)
                              )
     v.                       )        **JURY TRIAL DEMANDED**
                              )
HERCULES, INC. and            )
CYTEC INDUSTRIES, INC.,       )
                              )
          Defendants.         )

## ANSWER AND COUNTERCLAIMS OF
## DEFENDANT CYTEC INDUSTRIES, INC.

Defendant Cytec Industries, Inc. ("Cytec") files this Answer and Counterclaims in response to the Complaint dated May 7, 2004 filed by Plaintiff Ciba Specialty Chemicals Corporation ("Ciba").

### ANSWER

### The Parties

1.      Upon information and belief, Cytec admits the allegations of paragraph 1 of the Complaint.

2.      Upon information and belief, Cytec admits the allegations of paragraph 2 of the Complaint.

3.      Cytec admits the allegations of paragraph 3 of the Complaint.

## Jurisdiction and Venue

4.      Cytec admits that Ciba alleges that Cytec infringes US Patent Nos. 5,167,766 (the "'766 patent") and 5,171,808 (the "'808 patent") and seeks relief under the patent laws of the United States. Cytec denies all remaining allegations of Paragraph 4.

5.      Cytec admits that, as to defendant Cytec, subject matter, personal jurisdiction and venue are proper in this Court. Cytec further admits that it is incorporated in the State of Delaware and is doing business in this district. As to the remaining allegations in paragraph 5 of the Complaint, Cytec has insufficient information to admit or deny them, and thus denies them.

## Patents in Suit

6.      Cytec admits that the '766 patent, entitled "Charged Organic Polymer Microbeads in Paper Making Process," was issued by the United States Patent and Trademark Office ("PTO") on December 1, 1992, and that a copy of the '766 patent was attached to the Complaint as Exhibit A. Since the scope of the patent claims as asserted by plaintiff in this action is unknown at this time, Cytec is without information or belief as to the remaining allegations of paragraph 6 of the Complaint, and therefore denies them.

7.      Cytec admits that the '808 patent, entitled "Cross-linked Anionic and Amphoteric Polymeric Microparticles," was issued by the United States Patent and Trademark Office ("PTO") on December 15, 1992, and that a copy of the '808 patent was attached to the Complaint as Exhibit B. Since the scope of the patent claims as asserted by plaintiff in this action is unknown at this time, Cytec is without information or belief

as to the remaining allegations of paragraph 7 of the Complaint, and therefore denies them.

8.    Upon information and belief, Cytec admits that, according to the records of the PTO, assignment of each of the '766 and '808 patents from Cytec to Ciba was recorded in the PTO on or about January 16, 2002; admits that it received a copy of a letter dated October 24, 2002 from Ciba to Hercules referring to a number of Ciba's patents, including the '808 and '766 patents; and admits it transferred the '766 and '808 patents to Ciba; but denies the remaining allegations of paragraph 8 of the Complaint.

### Patent Infringement

9.    Cytec denies the allegations of paragraph 9 of the Complaint.

10.    Cytec denies the allegations of paragraph 10 of the Complaint.

11.    Cytec denies the allegations of paragraph 11 of the Complaint.

### Plaintiff's Prayer For Relief

12.    Cytec denies that Ciba is entitled to the relief requested in any of paragraphs A-F of the Complaint or to any other relief.

### FIRST DEFENSE

13.    Cytec has not infringed and is not infringing (either directly, contributorily, or by inducement) any claim of the '766 patent either literally or under the doctrine of equivalents.

14.    The prosecution history of the '766 patent estops Ciba from asserting infringement of any claim of the '766 patent.

3

15.     Cytec has not infringed and is not infringing (either directly, contributorily, or by inducement) any claim of the '808 patent either literally or under the doctrine of equivalents.

16.     The prosecution history of the '808 patent estops Ciba from asserting infringement of any claim of the '808 patent.

## SECOND DEFENSE

17.     Ciba did not provide actual notice of infringement to Cytec prior to filing this lawsuit.

## THIRD DEFENSE

18.     Cytec is licensed under the '766 patent.

19.     Cytec is licensed under the '808 patent.

## RIGHT TO ASSERT ADDITIONAL DEFENSES

20.     Cytec' investigations into the allegations set forth in Ciba's Complaint are ongoing and discovery has not yet commenced.  Cytec expressly reserves the right to assert and pursue additional defenses.

## COUNTERCLAIMS

### Parties and Jurisdiction

1.     Cytec is a Delaware corporation having its principal place of business at 5 Garret Mountain Plaza, West Paterson, NJ 07424.

2.     On information and belief, Ciba is a New York corporation having its principal place of business at 540 White Plains Road, Tarrytown, New York 10591.

3.     This Court has jurisdiction over these Counterclaims pursuant to at least 28 U.S.C. §§ 1331, 1338, 1367, and 2201.

4

4.      Venue is proper in this district under at least 28 U.S.C. §§ 1391 and 1400(b).

5.      These counterclaims are for declaratory judgment relief arising under 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 101 et seq.

## Counterclaim I - Declaratory Judgment of Noninfringement of the '766 Patent

6.      Cytec has not infringed, contributorily infringed, or induced infringement of the '766 patent, either literally or under the doctrine of equivalents.

7.      The prosecution history of the '766 patent estops Ciba from asserting infringement of any claim of the '766 patent.

8.      Cytec is entitled to a declaratory judgment that it has not infringed, and is not infringing, the '766 patent.

## Counterclaim II - Declaratory Judgment of Noninfringement of the '808 Patent

9.      Cytec has not infringed, contributorily infringed, or induced infringement of the '808 patent, either literally or under the doctrine of equivalents.

10.      The prosecution history of the '808 patent estops Ciba from asserting infringement of any claim of the '808 patent.

11.      Cytec is entitled to a declaratory judgment that it has not infringed, and is not infringing, the '808 patent.

## Counterclaim III – License Under the '766 Patent

12.      Cytec is licensed under the '766 patent.

13.      Cytec is entitled to a declaratory judgment that it is licensed under the '766 patent.

## Counterclaim IV – License Under the '808 Patent

14.    Cytec is licensed under the '808 patent.

15.    Cytec is entitled to a declaratory judgment that it is licensed under the '808 patent.

## Right to Assert Additional Counterclaims

16.    Cytec' investigations into the allegations set forth by in Ciba's Complaint are ongoing and discovery has not yet commenced.  Cytec expressly reserves the right to assert and pursue additional counterclaims.

## Prayer for Relief

For the reasons set forth above, Cytec prays for the Court's entry of judgment for it and against Ciba as follows:

A.    Declaring that Cytec has not infringed, contributorily infringed or induced infringement of the '766 patent;

B.    Declaring that Cytec has not infringed, contributorily infringed or induced infringement of the '808 patent;

C.    Declaring that Cytec is licensed under the '766 patent.

D.    Declaring that Cytec is licensed under the '808 patent.

E.    Dismissing Ciba's Complaint with prejudice;

F.    Declaring that this case is exceptional pursuant to 35 U.S.C. § 285;

G.    Awarding to Cytec its costs, expenses, and reasonable attorney's fees incurred in defending against Ciba's claims in this action; and

H.    Awarding to Cytec such other and further relief as this Court deems just and proper.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Thomas L. Creel, P.C.
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800

Dated:  November 17, 2004

By: _____
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       P. O. Box 951
       Wilmington, DE  19899
       (302) 984-6000

*Attorneys for Defendant*
*Cytec Industries, Inc.*

658376

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS          )
CORPORATION,                      )
                                  )
           Plaintiff,             )
                                  )     C.A. No. 04-293 (KAJ)
      v.                          )
                                  )     JURY TRIAL DEMANDED
HERCULES INC. AND CYTEC           )
INDUSTRIES, INC.,                 )
                                  )
           Defendants.            )

**PLAINTIFF CIBA SPECIALTY CHEMICALS CORPORATION'S**
**REPLY TO THE COUNTERCLAIMS OF DEFENDANT CYTEC INDUSTRIES, INC.**

Plaintiff, Ciba Specialty Chemicals Corporation ("Ciba"), by and through its
undersigned attorneys, replies to the Counterclaims of Defendant Cytec Industries, Inc.
("Cytec") in like numbered paragraphs as follows:

**Parties And Jurisdiction**

    1.    Admitted.

    2.    Admitted.

    3.    Admitted.

    4.    Admitted.

    5.    Admitted.

**Counterclaim I – Declaratory Judgment of Noninfringement of the '766 Patent**

    6.    Denied.

    7.    Denied.

    8.    Denied.

## Counterclaim II – Declaratory Judgment of Noninfringement of the '808 Patent

9.     Denied.

10.    Denied.

11.    Denied.

### Counterclaim III – License Under the '766 Patent

12.    Ciba lacks sufficient knowledge or information with regard to what Cytec means by "licensed under" and the pleading is indefinite as to time; therefore, Ciba denies the allegations of paragraph 12 of the Counterclaims.

13.    Ciba lacks sufficient knowledge or information with regard to what Cytec means by "licensed under" and the pleading is indefinite as to time; therefore, Ciba denies the allegations of paragraph 13 of the Counterclaims.

### Counterclaim IV – License Under the '808 Patent

14.    Ciba lacks sufficient knowledge or information with regard to what Cytec means by "licensed under" and the pleading is indefinite as to time; therefore, Ciba denies the allegations of paragraph 14 of the Counterclaims.

15.    Ciba lacks sufficient knowledge or information with regard to what Cytec means by "licensed under" and the pleading is indefinite as to time; therefore, Ciba denies the allegations of paragraph 15 of the Counterclaims.

### Right to Assert Additional Counterclaims

16.    The Court's scheduling order and applicable law controls the amendment of pleadings, and therefore, Ciba denies the allegations of paragraph 16 of the Counterclaims.

2

### Defenses

17.    The '766 patent and the '808 patent are infringed.

18.    Cytec is not licensed under the '766 and '808 patents.

### Prayer For Relief

WHEREFORE, Ciba prays for the following relief:

A.    An order dismissing Cytec's Counterclaims with prejudice;

B.    A judgment declaring that the claims of the '766 and '808 patents are infringed and Cytec is not licensed under the '766 and '808 patents;

C.    A judgment finding this case is exceptional and an award to Ciba of its costs in defending Cytec's Counterclaims including an award to Ciba of its reasonable attorney fees as provided by 35 U.S.C. § 285; and

D.    Such other and further relief as the Court deems appropriate.

Frederick L. Cottrell III (#2555)
Jeffrey L. Moyer (# 3309)
Chad M. Shandler (#3796)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700
Attorneys for Plaintiff

*Of Counsel:*
Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601-6780

Dated:  December 7, 2004

3

RLF1-2816129-1

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C. A. No. 04-293 (KAJ) |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| HERCULES, INC. and CYTEC INDUSTRIES, INC., | ) ) ) ) ) | |

## DEFENDANT CYTEC INDUSTRIES, INC.'S
## INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)

Pursuant to Rule 26(a)(1), Fed. R. Civ. P., defendant Cytec Industries, Inc. ("Cytec")

makes the following disclosures to plaintiff Ciba Specialty Chemicals Corporation ("Ciba")

based upon information reasonably available at this time. Cytec reserves the right to amend and

supplement these disclosures, if necessary, based on its continuing investigations and discovery

regarding this case.

Individuals Likely To Have Discoverable Information – 26(a)(1)(A)

Pursuant to Rule 26(a)(1)(A), Fed. R. Civ. P., Cytec identifies the following individuals

who are likely to have discoverable, non-privileged information that Cytec may use to support its

defenses and under each individual, Cytec identifies the subjects of the information. In addition

to the individuals below, Cytec reserves the right to disclose additional individuals whom it may

use to support its defenses based upon information learned during the course of this litigation.

     (a)    Roderick Ryles, Ph.D.
              Senior Research Fellow
              Cytec Industries, Inc.
              (Non-infringement)

(b)    Claire Schultz, Esq.
Chief Patent Counsel
Cytec Industries, Inc.
(License and Non-willfulness)

(c)    Paul Waterman
Operations Technology Director
Cytec Industries, Inc.
(Non-infringement)

(d)    Zeb Morgan
Senior Developmental Chemist
Cytec Industries, Inc.
(Non-infringement)

(e)    Brian McCall
Business Analyst
Cytec Industries, Inc.
(Damages)

These persons are all employed by Cytec and no direct contact should be made to them.

If Ciba desires contact with any of them, Ciba should request this through Cytec's litigation

counsel.

Documents And Things – 26(a)(1)(B)

Pursuant to Rule 26(a)(1)(B), Fed. R. Civ. P., Cytec identifies the following categories of

documents, data compilations, and tangible things that it may use to support its defenses. All of

these documents are located at Cytec Industries, Inc.

- Hercules Inc. ("Hercules") and Cytec documents relating to the tolling
  arrangement regarding the PERFORM product;

- Documents relating to the manufacturing and production of the PERFORM
  product;

- Documents relating to the asset purchase agreement between Ciba and Cytec for the granting of a license;

- Documents relating to non-infringement of the product; and

- Financial records relating to sales to Hercules of the PERFORM product.

Cytec makes this disclosure without any admission as to relevance or admissibility and without any waiver of any attorney-client privilege or work product or other immunity. Cytec will produce copies of, or make available for inspection, the foregoing materials, to the extent that Cytec has custody or control of them and as long as they are not subject to appropriate objections such as attorney-client privilege or work product.

Other documents that are not immune from discovery and are responsive to non-objectionable document requests served by Ciba will also be produced in due course. Cytec reserves the right to rely upon such documents to support its contentions in this case.

Computation of Damages – 26(a)(1)(C)

Pursuant to Rule 26(a)(1)(C), Cytec is currently not making a claim for any damages against Ciba. Cytec reserves the right to amend and supplement its claims, if necessary, based on its continuing investigations and discovery regarding this case.

Insurance – 26(a)(1)(D)

Pursuant to Rule 26(a)(1)(D), Cytec is presently unaware of any insurance agreement under which any insurer might be liable to satisfy all or part of any judgment that might be rendered against Cytec in this action, or to indemnify or reimburse Cytec for payments made to satisfy any such judgment. Cytec reserves the right to supplement this disclosure if any pertinent insurance agreement is later identified.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Thomas L. Creel, P.C.
Marta E. Gross
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800

Dated:  January 14, 2005

By:  _____

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000

*Attorneys for Defendant*
*Cytec Industries, Inc.*

666494

4

# EXHIBIT F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS    )
CORPORATION,    )
    )
        Plaintiff,    )    C. A. No. 04-293 (KAJ)
    )
      v.    )    *JURY TRIAL DEMANDED*
    )
HERCULES, INC. and    )
CYTEC INDUSTRIES, INC.,    )
    )
        Defendants.    )

## CYTEC'S RESPONSES AND OBJECTIONS TO PLAINTIFF CIBA SPECIALTY CHEMICALS CORPORATION'S FIRST SET OF INTERROGATORIES (NOS. 1-9)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Cytec Industries, Inc. ("Cytec") hereby responds to the First Set of Interrogatories (Nos. 1-9) served by Plaintiff, Ciba Specialty Chemicals Corporation ("Ciba").

Cytec's responses to these interrogatories, including any documents to be produced, are based upon reasonable and diligent inquiry and the best knowledge or information known or readily available to Cytec as of the date of this response. Further investigation may reveal additional responsive information and documents. Cytec reserves the right to continue discovery and investigation into this matter and to present at trial or otherwise, in accordance with the Federal Rules of Civil Procedure, additional information discovered after the date of this response. Cytec therefore reserves the right to supplement, modify, change, amend, or alter these responses at any time between now and the pretrial order.

1

the Cytec product does not infringe any claim of the '808 patent under the doctrine of

equivalents.

Cytec will supplement this response after Ciba identifies the claims of the patents in suit

alleged to be infringed in this action, and Cytec reserves the right to modify and/or supplement

its response to this interrogatory.

## INTERROGATORY NO. 2

With respect to Hercules' allegation that the patents in suit are invalid including
Defendants' Answers alleging that the patents in suit are "invalid for failure to comply with the
conditions for patentability specified by 35 U.S.C. §§ 102, 103, and/or 112," state all bases and
evidence supporting such allegations, including all underlying facts, testimony, documents,
witnesses, etc. supporting such allegations or which may be relied upon by either of Defendants
at trial, separately addressing each element of each claim, provide claim charts for each claim
asserted to be invalid under 35 U.S.C. §§ 102 or 103 setting forth an element-by-element
application of each prior art disclosure to each claim of the patents in suit, including an
explanation of why each particular element is or is not met by each prior art disclosure, and state
the scope and content of the prior art, the similarities and differences between each prior art
disclosure and each claim, the level of ordinary skill in the art, and where specifically the
suggestion to combine the prior art may be found for any combination of prior art asserted by
either of Defendants.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 2

As this interrogatory is directed to allegations made by Hercules, no response by Cytec is

requested or required.

## INTERROGATORY NO. 3

With respect to Defendant Cytec's allegation in its Answer that it "is licensed under the
[patents in suit]", state all bases and evidence supporting such allegations, including all
underlying facts, testimony, documents, witnesses, etc. supporting such allegations or which may
be relied upon by either of Defendants at trial, separately addressing all terms of the alleged
license, the duration of the alleged license, any rights of sublicense, and termination of the
alleged license.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 3

Cytec objects to this interrogatory as seeking information outside of Cytec's possession,

custody, or control, to the extent it seeks information "which may be relied upon by either of

Defendants at trial." Cytec further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving these objections and its General Objections, Cytec responds that it has a license available to it as set forth in Section 1.01, "Transferred Intellectual Property," Subparagraph (a) of the Asset Purchase Agreement, dated as of August 31, 2000 among Cytec Industries, Inc., Cytec Technology Corp. and Ciba Specialty Chemicals Water Treatments, Inc. The terms and conditions of this license are there set forth and speak for themselves.

Cytec reserves the right to modify and/or supplement its response to this interrogatory.

## INTERROGATORY NO. 4

With respect to any assertion that either Defendant's infringement of the patents in suit has not been willful and deliberate, state all steps that were taken by each of the Defendants to avoid infringing the patents in suit or to comply with the duty to reasonably avoid infringement, including, but not limited to, identifying any opinions of counsel upon which either of Defendants intend to rely in an attempt to show that it acted reasonably.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4

Cytec objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege or immunity. Cytec also objects to this interrogatory as premature as fact discovery has just begun. At this point in the litigation Ciba has not identified which claims of the patents in suit it alleges to be infringed, nor has Ciba identified any facts supporting its allegations of infringement. Cytec further objects to Ciba's unfounded presumption in this Interrogatory in improperly stating "Defendant's infringement of the patents in suit." *See* Objections and Response to Interrogatory No. 1 above. Cytec further objects to this interrogatory to the extent it

information protected from discovery by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege or immunity. Cytec further objects to this interrogatory as overbroad, unduly burdensome, and not relevant to the claim or defense of any party in that it requires Cytec to broadly identify "all" persons "relating to any of Defendants' answers to any interrogatory" without any limits or definitions regarding time, extent of involvement, or type of involvement.

Subject to and without waiving these objections and its General Objections, Cytec responds that Roderick Ryles (Senior Research Fellow at Cytec), Claire Schultz (Chief Patent Counsel at Cytec), Paul Waterman (Operations Technology Director at Cytec), and Zeb Morgan (Senior Developmental Chemist at Cytec) are knowledgeable about certain of Cytec's answers to these interrogatories.

Cytec reserves the right to modify and/or supplement its response to this interrogatory.

As to objections,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Thomas L. Creel, P.C.
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800

Dated: March 2, 2005

By: _____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P. O. Box 951
    Wilmington, DE 19899
    (302) 984-6000

*Attorneys for Defendant*
*Cytec Industries, Inc.*

672348 / 28118

-12-

# EXHIBIT G

GOODWIN❘PROCTER

Marta E. Gross, Esq.
212.459.7499
mgross@goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
599 Lexington Avenue
New York, NY 10022
T: 212.813.8800
F: 212.355.3333

May 24, 2005

**By Facsimile**

Eley O. Thompson, Esq.
Leydig, Voit & Mayer
Two Prudential Plaza
Suite 4900
Chicago, IL 60601-6780

## Re: Ciba v. Hercules and Cytec

Dear Eley:

This is in response to your May 13, 2005 letter to Tom Creel. As an initial comment, we disagree with the position stated in your second paragraph regarding Cytec's "objection to a single format." But in any event we appreciate that Ciba has separated its discovery issues in its May 13 letter and made specific those issues it perceives with Cytec's discovery. I do note, however, that you have used the term "Defendants" in prefacing each interrogatory discussion. I would like to make clear that Cytec is speaking on behalf of Cytec only and does not have knowledge or authority to speak on behalf of Hercules.

## Ciba's Interrogatory No. 1

As I believe has been made clear in Cytec's interrogatory response, it is Cytec's understanding that the PerForm® product sold by Cytec to Hercules "does not contain an' ionic, organic, cross-linked polymeric microbead, the microbead having an unswollen particle diameter of less than about 750 nanometers'."

In light of Ciba's failure to substantively respond to the question of the basis for its assertion of crosslinking in the PerForm® product and the identity of the so-called "crosslinking agent," Cytec is unable to respond further to this interrogatory.

Cytec does not understand what Ciba is referring to by "Cytec has not provided any basis in its response challenging indirect infringement." As you are undoubtedly aware absent direct infringement there can be no indirect infringement. Furthermore, until Ciba specifies any act of Cytec which it believes is an act of indirect infringement, Cytec cannot further respond.

GOODWIN | PROCTER

Eley O. Thompson, Esq.
May 24, 2005
Page 2

### Ciba's Interrogatory No. 3

Cytec stands on its response in that it has a license available to it pursuant to the Asset Purchase Agreement between Ciba and Cytec dated August 31, 2000. The terms of the license are set forth in that agreement. Should any of the sales of the PerForm® product fall within the terms of this license than Cytec asserts those sales are covered by this license. No further answer is required.

### Ciba's Interrogatory No. 4

Cytec believes that it is premature to make a decision as to whether it will waive privilege. Hercules has proposed the date of two months before close of discovery by which it will make a decision of whether or not to waive privilege. Cytec agrees to this proposed date, and further believes this will provide Ciba with ample time to take any necessary discovery in the event that Cytec chooses to waive its privilege.

### Ciba's Interrogatory No. 5

Cytec stands on its response that this request seeks non-relevant information. Moreover, Ciba knows with whom at Cytec it negotiated the sale of the Polyflex® business, (of which the sale of the patents-in-suit was a part).

### Ciba's Interrogatory No. 6

Cytec stands on its response. The assertion of privilege is based on community of interest between Hercules and Cytec with regard to the patents-in-suit that arose when Ciba threatened infringement of those patents.

### Ciba's Interrogatory No. 7

Cytec stands on its response. Cytec understands that the PerForm® product it makes for Hercules does not use a cross linking agent and is not cross linked. Cytec has not conducted any test to characterize the PerForm® product. No further answer is required.

GOODWIN | PROCTER

Eley O. Thompson, Esq.
May 24, 2005
Page 3

### Ciba's Interrogatory No. 8

Cytec will provide the production numbers of documents sufficient to describe the process used for the PerForm® product that Cytec makes for Hercules. Cytec will do so at the time it makes its second wave of production.

### Ciba's Interrogatory No. 10

Cytec's response to Interrogatory No. 10 very clearly explains its position on assignor estoppel. Case law clearly shows that Cytec has the right to rely on prior art in the way there explained, whether assignor estoppel applies or not. *See, e.g.,* Westinghouse Electric & Manufacturing Company v. Formica Insulation Co., 266 U. S. 342, 351 (1924); Mentor Graphics Corp. et al v. Quickturn Design Systems, Inc., 150 F.3d 1374 (5 Fed. Cir. 1998) at 1379-1380; and Q.G. Products, Inc. et al v. Shortly, Inc., 992 F.2d 1211 (Fed. Cir. 1993) at 1213. No further answer is required.

### Ciba's Interrogatory No. 11

Interrogatory No. 11 is directed to whether Hercules is estopped from asserting an invalidity defense. Estoppel is an equitable defense based on all of the underlying facts and is unique to each defendant. It is improper for Ciba to ask Cytec contentions about a personal defense asserted by its co-defendant. Furthermore, since all of the facts are uniquely within the knowledge of Hercules and Ciba, Cytec cannot provide a position on this defense, in any event. No further answer is required.

### Ciba's Interrogatory No. 13

Ciba has misstated Cytec's response in its letter. Cytec has objected to this interrogatory as seeking information that is not relevant and that the burden of ascertaining the requested information is substantially the same for Ciba as for Cytec. Cytec stated in its response that it would provide documents that describe the manufacture of the PerForm® SP product that is toll manufactured by Cytec. Cytec has and will do so. Ciba is the owner of the Polyflex® technology and therefore has within its knowledge the Polyflex® manufacturing process. Thus, Ciba can ascertain for itself any additional difference between the PerForm® and Polyflex® manufacturing processes.

### Ciba's Interrogatory No. 14

Ciba's interrogatory states: "Identify any products or processes that you have made, had made on your behalf, used, sold or offered for sale that have been covered, licensed, or protected by either of the patents in suit." Cytec responded to this interrogatory. Ciba now is seeking

GOODWIN | PROCTER

Eley O. Thompson, Esq.
May 24, 2005
Page 4

additional information that was not requested in the original interrogatory.  No further answer is
required.

Very truly yours,

Marta E. Gross

cc:     Eric J. Fues, Esq. (via facsimile)
        Richard L. Horwitz, Esq. (via facsimile)
        Chad M. Shandler, Esq. (via facsimile)

# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS CORPORATION, )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )    C. A. No. 04-293 (KAJ)
                                      )
HERCULES INCORPORATED and             )    **JURY TRIAL DEMANDED**
CYTEC INDUSTRIES, INC.,               )
                                      )
                    Defendants.       )

## DEFENDANT HERCULES, INCORPORATED'S MOTION FOR LEAVE
## TO FILE AMENDED ANSWER AND COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 15(a), defendant Hercules,

Incorporated ("Hercules") hereby moves for leave to file an Amended Answer and

Counterclaims. As required by District Court of Delaware Local Rule 15.1, an original

and a copy of the proposed Amended Answer and Counterclaims are attached as Exhibits

1 and 2 to this motion. In addition, attached as Exhibit 3 is a black line copy of the

Amended Answer and Counterclaims.

Defendant Cytec Industries, Incorporated ("Cytec") does not oppose this motion.

Hercules has repeatedly asked Plaintiff Ciba Specialty Chemicals Corporation ("Ciba")

whether it will agree to entry of the proposed amended pleading but Ciba has deferred

making a decision and apparently opposes Hercules' motion to amend.

Hercules waives its opening brief and states as follows in support of its motion:

1.    Ciba filed this action for patent infringement on May 7, 2004 against

Hercules and Cytec.

2.    On November 17, 2004, Hercules filed its Answer and Counterclaims to

Ciba's Complaint.

3.    On November 17, 2004, Cytec likewise filed its Answer and Counterclaims to Ciba's Complaint.

4.    The Scheduling Order requires all motions to amend or supplement the pleadings to be filed by July 15, 2005 and sets the discovery cut-off for October 31, 2005. (D.I. 23). Trial is scheduled to begin on August 14, 2006.

5.    The Federal Rules of Civil Procedure state that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "The Supreme Court of the United States has cautioned that leave to amend should be freely granted unless there is an apparent reason for denying a request such as: undue delay, bad faith, dilatory motive, prejudice or futility of the claims." *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp.2d 484, 487 (D. Del. 2003) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962) and *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

6.    Hercules' initial Answer and Counterclaims set forth defenses concerning non-infringement, patent invalidity, and lack of actual notice of infringement, and counterclaims concerning non-infringement and patent invalidity. The proposed Amended Answer and Counterclaims (Exs. 1-2) additionally sets forth: (1) a marking defense; and (2) a defense and counterclaim alleging inequitable conduct in the procurement of the patents-in-suit.

7.    Hercules has not unduly delayed in asserting its marking defense or its defense and counterclaim alleging inequitable conduct in the procurement of the patents-in-suit. It is still early in the fact discovery process with no depositions having taken

2

place. Moreover, no case dispositive motions or other substantive issues, aside from one discovery dispute conference, have been presented to the Court.

8.      Hercules' proposed amendment will not prejudice Ciba because the case is still in its early stages. A trial date is not set until August 14, 2006--over 14 months from the filing of this motion. The parties are still exchanging written discovery and discovery documents, and no depositions have been noticed or taken place. Moreover, the discovery cut-off is not until October 31, 2005. Ciba will have ample time to prepare its defenses to Hercules' new counterclaim. Consequently, Ciba will not be unduly burdened or prejudiced by entry of Hercules' Amended Answer and Counterclaims.

9.      Pursuant to Local Rule 7.1.1, counsel for Hercules has conferred with counsel for Ciba several times regarding this motion. On May 17, 2005, Hercules wrote Ciba a letter providing a draft copy of the Amended Answer and Counterclaims and asked whether Ciba would oppose entry of the proposed pleading. Ciba did not respond to that letter. Hercules asked Ciba again at the May 27th technology tutorial whether Ciba would oppose Hercules amending its pleading and was told that Ciba would respond by June 3rd. On June 7th, Ciba belatedly responded with a voice mail message stating that it would let Hercules know of Ciba's position in "a day or two." Finally on June 8th, Hercules wrote another letter, informing Ciba that Hercules needed to have Ciba's answer by noon (EDT) on June 10th in order to make the appropriate representation to the Court in Hercules' Motion for Leave to Amend. After the noon deadline Ciba wrote to request more time to consider its position and requested amendment and supplementation of Hercules' proposed pleading. Through its course of conduct, Ciba thus appears to oppose entry of Hercules' proposed pleading.

3

WHEREFORE, Hercules respectfully requests that this Court:

(i)    Grant Hercules' Motion for Leave to File Amended Answer and

Counterclaims; and

(ii)    Deem Hercules' Amended Answer and Counterclaims, attached hereto, as

having been filed and served as of the date of this Court's decision to allow Hercules'

motion.

A proposed Order is attached hereto as Exhibit 4.

POTTER ANDERSON & CORROON LLP

By: _____

OF COUNSEL:

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
A. Neal Seth
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Dated:  June 10, 2005

686079 / 28118

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Hercules Incorporated*

4

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on June 10, 2005, the attached

document was hand-delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE  19899

I hereby certify that on June 10, 2005, I have Federal Expressed the

foregoing document(s) to the following non-registered participants:

Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601-6780

Thomas L. Creel, P.C.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY  10022

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
Telephone:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

672306