# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION

ONE RODNEY SQUARE

920 NORTH KING STREET

WILMINGTON, DELAWARE 19801

(302) 651-7700

FAX (302) 651-7701

WWW.RLF.COM

STEVEN J. FINEMAN

DIRECT DIAL NUMBER
302-651-7592
FINEMAN@RLF.COM

August 1, 2005

REDACTED - PUBLIC VERSION

**VIA E-FILE AND HAND DELIVERY**
The Honorable Kent A. Jordan
United States District Court
 for the District of Delaware
844 King Street
Wilmington, DE 19801

Re:   **Ciba Specialty Corporation v. Hercules Inc. et al.**
      **C.A. No. 04-293 (KAJ)**

Dear Judge Jordan:

I write with respect to the August 2, 2005 teleconference with the Court and in reply to Mr. Horwitz's July 27, 2005 letter.

At the July 13, 2005 hearing, Hercules argued for maintaining the current expert schedule, alleging that it did not know Ciba's position on infringement. (*See* July 13, 2005 transcript at 6; Exhibit A). As to this issue, the Court decided that, if Ciba had not yet disclosed its infringement position, then Ciba was to give Defendants its position in the expert reports. (*See id.* at 9).

On July 22, 2005, Ciba provided extensive reports of its five experts (totaling over 75 pages) including three (Drs. Gilbert, King and Wagner) relating to infringement. Hercules does not argue that these reports fail to provide Ciba's position regarding infringement, nor does Hercules "currently" object to the reports of Drs. Gilbert and King.[1] Instead, Hercules contends that the other three reports do not comply with Federal Rule 26(a)(2)(B), neither offering expert opinions, nor describing the basis for these conclusions.

As to Dr. Wagner, he is an expert, *inter alia*, concerning the use of rheology to confirm the characteristics of a polymer. One issue in this case is whether the polymer involved in the accused PerForm® SP9232 product is crosslinked. Dr. Wagner's report sets forth various

---

[1] Hercules attempts to reserve the right to challenge these reports "at the appropriate time" (*See* Mr. Horwitz's letter of July 27, 2005 at 1, n.1) – perhaps a response to Ciba's counsel's July 26 letter (Exhibit B), noting that there had been no objection to those two reports and attempting to resolve the issues.

The Honorable Kent A. Jordan
August 1, 2005
Page 2

rheological tests, and he is expected to testify on what is involved in these tests and how they can be interpreted. Dr. Wagner has reviewed results of these tests regarding the PerForm® products in issue and provides his opinion that the results of the tests are consistent with the polymer structure in the PerForm® products being covalently crosslinked. The documents relating to these tests are identified with the report, and Hercules' expert can certainly respond as to what such tests show, or do not show. Accordingly, identifying Dr. Wagner's report as a "place holder," is inaccurate. Certainly, Dr. Wagner may respond and supplement his report based upon positions, and whatever evidence, if any, Hercules' expert may rely upon in his expert report.

Further, as has been previously explained, there will certainly be supplementation, based upon discovery yet to be obtained from Hercules. By way of example, Ciba has pointed to two areas where Hercules' Rule 30(b)(6) witness was not prepared to testify, namely, surfactant studies supporting the conclusion that the PerForm® products include covalently crosslinked polymer and a memo from an as-yet-uncertified Hercules technical person quantifying the number of crosslinks.[2] (*See* Ciba's letter of July 22, 2005 to Hercules; Exhibit C).

The other issue on which Ciba bears the burden of proof regards damages stemming from sales by Hercules to various customers, some of which include allied products. Such damages necessarily reflect which of the Hercules customers of the Polyflex® products (during the time Hercules was authorized to sell Polyflex® products) were converted to the PerForm® product. This information is peculiarly within Hercules' possession and knowledge.

Well before Mr. Tate's (Ciba's damages expert) report was due, Ciba noticed a Rule 30(b)(6) deposition of Hercules concerning damages to take place on July 7, 2005. Hercules unilaterally changed the date of the deposition to July 21, 2005, the day before Mr. Tate's expert report was due. (*See* Hercules' letter of June 30, 2005; Exhibit D).

As demonstrated by Mr. Tate's expert report, he searched through hundreds of documents attempting to find complete and usable information. But, such discovery documents were not provided by Hercules. An example of such unintelligible documents provided by Hercules is attached as Exhibit E.[3]

Given this scenario, Hercules' assertion that Ciba has granted itself the extension of time the Court denied is inappropriate and inaccurate. At the hearing on July 13, 2005, the sole discussion about damages was Ciba's counsel's statement that Hercules "has not provided damages discovery basically at all." (July 13, 2005 transcript at 9; Exhibit A). Mr. Tate provided all the specifics that he could. While it is true that Ciba's damages expert needs

---

[2] Inasmuch as Hercules would not agree to the early depositions of two technical personnel believed to have information responsive to these two areas, Ciba has followed up with a specific Rule 30(b)(6) notice.

[3] Ciba continues to attempt to obtain proper documents from Hercules. (*See* Ciba's letter to Hercules of July 26, 2005; Exhibit F).

The Honorable Kent A. Jordan
August 1, 2005
Page 3

legitimate discovery from Hercules to provide his complete report, the same is not true for Defendants since they are in possession of the information.

As to the report of Ciba's patent expert, Mr. John Goolkasian, no report was required since he does not address any issue for which Ciba bears the burden of proof. Ciba provided this report because it addresses two areas that will be involved in resolving issues in this litigation, general/patent office practices and procedures, and specifically, the history of actions in the patent office leading to the patents specific to this case. His report reflects that this testimony would be limited so as not to provide any redundancy in view of the video the court uses, or even not to be included, if that was the Court's preference. As to the latter area, Hercules' new counterclaim alleges that the prior owner of the patents (American Cyanamid, now defendant Cytec) and its attorney Mr. Van Riet committed fraud on the Patent Office. (*See* Hercules' amended counterclaims; Exhibit G). Such claims are based on snapshots of the file history taken out of context. Mr. Goolkasian, who is eminently qualified, will provide testimony necessary to put the accused actions of Mr. Van Riet in context and relate them to the practices in place at the time.

In sum, there is no reasonable basis to strike any expert report provided by Ciba. Dr. Wagner's report provides ample information about his testimony and the opinions he has formed. While Mr. Tate's report requires further information from Hercules, the report provides as full as description as is reasonable given Hercules' failure to provide a Rule 30(b)(6) witness and complete documentation. As to Mr. Goolkasian, Ciba provided his report on subjects it did not bear the burden of proof, but his testimony is important to place the actions of Mr. Van Reit back into context. At this point, it is Defendants' turn to reveal their positions on infringement and damages.

Respectfully submitted,

*/s/ S.J.F./*

Steven J. Fineman (#4025)

SJF/lll

cc:  Thomas L. Creel, Esquire (By Federal Express)
     Ford F. Farabow, Jr., Esquire (By Federal Express)
     Joann M. Neth, Esquire (By Federal Express)
     Richard L. Horowitz, Esquire (By Hand Delivery)

RLF1-2905905-2