# EXHIBIT A

SHEET 1

```
                                              1

 1              IN THE UNITED STATES DISTRICT COURT

 2             IN AND FOR THE DISTRICT OF DELAWARE

 3                          - - -

 4    CIBA SPECIALTY CHEMICALS    :    CIVIL ACTION
      CORPORATION, INC ,          :
 5                                :
            Plaintiff and         :
 6          Counter-defendant     :
                                  :
 7              v                 :
                                  :
 8    HERCULES INC , and CYTEC    :
      INDUSTRIES INC .            :
 9                                :
            Defendants and        :    NO  04-293 (KAJ)
10          Counter-claimants     :

11                          - - -

12              Wilmington, Delaware
                Wednesday, July 13, 2005 at 11:00 a m
13              TELEPHONE CONFERENCE

14                          - - -

15    BEFORE:        HONORABLE KENT A  JORDAN, U S D C J

16                          - - -

17    APPEARANCES:

18              RICHARDS LAYTON & FINGER
                BY:  CHAD MICHAEL SHANDLER, ESQ
19
                      and
20
                LEYDIG, VOIT & MAYER, LTD.
21              BY:  ELEY O. THOMPSON, ESQ , and
                     GREGORY C  BAYS, ESQ
22                   (Chicago, Illinois)

23                   Counsel for Ciba Specialty
                     Chemicals Corporation
24

25                   Brian P. Gaffigan
                     Registered Merit Reporter
```

```
                                              2

 1    APPEARANCES: (Continued)

 2
                POTTER ANDERSON & CORROON, LLP
 3              BY:  RICHARD L  HORWITZ, ESQ

 4                    and

 5              FINNEGAN HENDERSON FARABOW GARRETT & DUNLAP, LLP
                BY:  FORD F. FARABOW, JR., ESQ ,
 6                   JOANN NETH, ESQ., and
                     ERIC J. FUES, ESQ.
 7                   (Washington, District of Columbia)

 8                   Counsel for Hercules Inc

 9                    and

10              GOODWIN PROCTOR, LLP
                BY:  THOMAS L  CREEL  ESQ , and
11                   MARTA E. GROSS, ESQ.
                     (New York, New York)

12                   Counsel for Cytec Industries Inc

13

14

15                   - oOo -

16              P R O C E E D I N G S

17    (REPORTER'S NOTE:  The following telephone

18    conference was held in chambers, beginning at 11:00 a m )

19              THE COURT:  Hi, this is Judge Jordan  Who do I

20    have on the line?

21         MR  SHANDLER:  Good morning, Your Honor   Chad

22    Shandler for the plaintiff from Richards Layton  With me is

23    Greg Bays and Eley Thompson from Leydig, Voit & Mayer

24         THE COURT:  All right

25         MR  HORWITZ:  Good morning, Your Honor   It's
```

```
                                              3

 1    Rich Horwitz from Potter Anderson on behalf of defendants

 2    And with me on the line for Hercules from Finnegan

 3    Henderson, we have Ford Farabow, JoAnn Neth and Eric Fues;

 4    and also for Cytec from Goodwin Procter, Tom Creel and Marta

 5    Gross

 6         THE COURT:  All right.

 7         MS  NETH:  Good morning, Your Honor

 8         THE COURT:  Good morning

 9         MR  CREEL:  Good morning

10         THE COURT:  I have the exchange of letters that

11    started on July 11th and concluded on July 12th and we'll

12    just go ahead and go through the issues that have been

13    raised, starting with one from plaintiff and then shifting

14    to one from Hercules

15         We'll start with the expert schedule  I assume

16    that is the first one you want to tee up  Am I right about

17    that, Mr Shandler or Mr Bays?

18         MR  SHANDLER: It's going to be Mr. Thompson I

19    believe for the plaintiffs

20         THE COURT:  Mr  Thompson.

21         MR  THOMPSON:  Yes, Your Honor  The expert

22    schedule would be fine from our perspective to address

23    initially

24         The overall schedule we laid out in our brief is

25    in the scheduling order of the case and it says basically
```

```
                                              4

 1    some dates that involve the Court much later in the year and

 2    going into 2006

 3         October 31st, we end the discovery phase  And

 4    the schedule, rather than backing the dates up to the

 5    conclusion of discovery, actually back when this was done,

 6    leaving open the possibility of discussions later, that is

 7    coming out as set forth there in July and then August, and

 8    we have proposed that it would be August and September which

 9    would allow for plenty of discovery and not change any other

10    dates in the schedule

11         THE COURT:  Let me ask you a question,

12    Mr Thompson  You noted in the letter that Mr Shandler

13    sent over that is now Docket Item 80 that you think this

14    wouldn't require any other changes in the schedule, but in

15    your last paragraph on this section on page two, you note

16    that there is also, if I'm reading this correctly, time

17    built into the schedule for later supplementation.  If I

18    make this shift you're suggesting, what happens to later

19    supplementation?  Is that something that you're prepared to

20    tell me is just not going to be an issue?

21         MR  THOMPSON:  What we were referring to there

22    is that the concept that if you have the expert reports now,

23    given that there has been an identification of significant

24    characterization testing that was done at Hercules that

25    quantified the number of cross-links that are in the
```

SHEET 2

**5**

1  products are the ones that are covalent and the ones by
2  association, the witness wasn't prepared to testify about
3  that and there is obviously an incomplete record, that that
4  was a hole in the expert reports  And apparently they have
5  some additional discovery that they also want that would
6  leave, if they went now, basically a -- I wouldn't say a
7  skeleton but not even complete from the first level of the
8  30(b)(6), and there would be I think undue supplementation
9  later on in one month  After we have the series of
10  depositions which will be scheduled in August, they will be
11  much more complete and we'll be able to answer hopefully
12  this question, this open area in the characterization work
13  that was done at Hercules and then it will be much more
14  complete  There will not be any -- whether there will be
15  any supplementation after that, I don't know, but it would
16  not nearly be of the order if you had them now where we
17  already know that there is major areas that are open
18      THE COURT: All right
19      MR THOMPSON: And by the way, they didn't deny
20  any of this in their responsive letter  They didn't deny
21  there was the other testing and they didn't deny their
22  witness wasn't able to testify about it
23      THE COURT: Right  I've read the letters,
24  Mr Thompson  Thanks
25      Mr Farabow, are you speaking on behalf of the

**6**

1  folks at Hercules here?
2      MR. FARABOW: Ms Neth will, Your Honor
3      THE COURT: All right  Ms Neth.
4      MS. NETH: Yes, Your Honor  We have read their
5  papers and I guess Hercules' position I think again is laid
6  out in the responsive letter that we provided you but in a
7  nutshell, we believe that there has been enough delay on
8  behalf of plaintiffs in this case in providing their
9  infringement position and this appears to us, in view of
10  some other things which I think will be discussed in a
11  minute vis-a-vis their inadequate discovery responses and
12  some information that came out in the 30(b)(6) deposition
13  last week  But again, we'll get to that I think in our
14  motion in a moment
15      We believe that there has been enough delay in
16  the plaintiff providing their infringement positions and
17  that what they're trying to do is merely put off disclosing
18  their positions in the initial expert reports which are due
19  July 22nd and we don't believe that that is justified and
20  Hercules frankly just wants to see what their positions are
21      THE COURT: Well, why don't you respond to
22  the specific assertion made by Mr Thompson that there's
23  scientific testing yet to be done and discovery yet to be
24  taken on that, if I understood him right.
25      MS NETH: I'm not sure that that is exactly

**7**

1  what he was saying  I believe what he is referring to --
2  and we, I don't think we agree with this -- is some
3  deposition testimony taken of a Hercules witness about two
4  weeks ago and they are claiming there were tests that he
5  identified or that weren't identified  I think we dispute
6  that  We produced documents to them.  They have those
7  tests  I don't know what further tests they're referring
8  to  The witness testified to the best of his recollection
9  and we don't agree that there are other tests that need to
10  be done  I think he is referring to some documents that
11  they claim that they have not gotten in discovery but,
12  again, I believe that those things have been produced
13      THE COURT: Okay  Maybe I misunderstood you,
14  Mr Thompson  Is it that the testing is completed but you
15  just don't think you got discovery at this point?
16      MR THOMPSON: Right  What the "it" was, that
17  was a 30(b)(6) deposition  In the history of the work that
18  Hercules did, there is documents that we asked the witness
19  about, about testing from the characterization group at
20  Hercules and there was a 30(b)(6) deposition on that topic
21  about the characterization, quantification that they did of
22  the cross-links that are in there  Let me give you an
23  example
24      THE COURT: Well, let me stop you before you
25  give me an example because I want to make sure I've got this

**8**

1  right
2      MR THOMPSON: Okay
3      THE COURT: I hear your opponent saying to me,
4  look, the folks at Ciba have everything they need to have in
5  order to give us a statement of their expert and to state
6  their position with respect to infringement and there is no
7  reason to put this off  I'm not sure, I thought I did but I
8  guess I don't, I'm not sure I have my handle on why you are
9  saying we ought not put our stake in the sand on this point
10  yet  If what you are saying to me is we shouldn't have to
11  put it in the sand because we want to know what Hercules
12  people say about cross-linking, that's one thing  If you
13  are telling me that you need more time to develop your own
14  position, I guess that is something different
15      What is it that you are telling me in that
16  regard?
17      MR THOMPSON: What I'm saying is that an
18  expert, of course, evaluates all available information and
19  scientists at Hercules ran certain tests and performed
20  certain calculations where Hercules itself identified the
21  cross linking that occurs here  Those tests, the witness
22  wasn't prepared to testify about and they admitted in their
23  letter  They even claim that the document didn't have an
24  author and couldn't testify
25      Our expert ought to have the full record because

SHEET 3

9

1  that information goes to the actual quantification  And so
2  if he doesn't have it, then he has opened up that hole in
3  his report and then he could be subject to later criticism
4  for not having that complete information  And that is the
5  information that we want to get to the bottom of
6        THE COURT:  Okay
7        MR THOMPSON:  In addition, by the way, in the
8  overall scheme of things, they also have said that they
9  wanted more information and they have not provided
10  experts -- excuse me  They have not provided damages
11  discovery basically at all
12        THE COURT:  All right  Well, we'll get to the
13  other issues, but we're putting this one to bed  I'm not
14  changing the dates
15        You have apparently a basis for saying why you
16  believe these folks infringe and if you haven't done it
17  already, you are going to give that to them and you will
18  have your expert report on the schedule that we've given
19  If there has got to be supplementation based on something
20  Hercules needs to give you, you can supplement, and I'm
21  confident that skilled lawyers will be able to blunt any
22  attempt to impeach an expert if the basis for supplement-
23  ation is information Hercules itself gave after the initial
24  expert report was required
25        So we're on a schedule  I don't see any basis,

11

1  what it was shown, what cross linked or didn't, et cetera,
2  et cetera, they're willing to give it to you  That's how I
3  read their document
4        And I'll give Mr Thompson, whoever for
5  plaintiff wants to weigh in on that in a minute a chance to
6  speak for themselves, but assume I've got it right  What is
7  your response to that?
8        MR FUES:  Actually, I dispute a little bit that
9  that is exactly their position
10        THE COURT:  Well, tell you what  Why don't we
11  save time  We'll ask them now  What is your position, Mr
12  Thompson?  Did I read you right or not?
13        MR THOMPSON:  That is exactly right, Your
14  Honor
15        THE COURT:  All right  Good enough  That is
16  your position
17        Answer it please, Mr Hughes
18        MR FUES:  Okay  Well, we have a couple of
19  things going on here  They have said on the record that
20  that document that they're withholding has facts and they
21  have the only facts about testing of our product  That
22  supposedly that document identifies the cross-linking agent
23  and its amount  Supposedly, that document identifies
24  additional testing for which they didn't produce any other
25  document  And supposedly, it talks about the results of

10

1  given what I have heard and read, to change it and it's
2  sticking
3        Let's turn to the next thing  Hercules, which
4  one do you want to raise first?
5        MS NETH:  Are you moving to our letter, Your
6  Honor?
7        THE COURT:  I am  Which one do you want to
8  address first
9        MS NETH:  My colleague Mr Fues is going to
10  deal with that, Your Honor
11        MR FUES:  Yes, Your Honor  I would like to
12  talk about the pre-suit testing and the discovery of that
13  we're seeking from Ciba
14        THE COURT:  All right
15        MR FUES:  We put forth our position in our
16  letter
17        THE COURT:  Right  I have read it and let me
18  cut through this by asking you to respond to their assertion
19  that you are really trying to get attorney-client privilege
20  matter that they are willing to and have given you
21  underlying facts  If I take them at their word and what it
22  appears to be their communicating to me, there is nothing
23  about their pre-suit testing that they aren't willing to
24  tell you about except what the communications were with
25  respect to that between lawyer and client  But the facts,

12

1  all that testing
2        Now, to reach your point, Your Honor, there has
3  been some discussion at the deposition, and there is quite a
4  bit of it, about interaction with counsel, in-house counsel
5  from Ciba involved with the sample preparation and involved
6  in how the tests were conducted at Ciba  The relevance of
7  that is, is that that information was obviously incorporated
8  in the results  The results of that testing are what Ciba
9  is relying on
10        So I guess my point is if they're preparing
11  samples according to what counsel has directed, and if
12  counsel is involved with the actual testing and they are
13  saying that they are relying on those tests, it seems to me
14  that we're entitled to that information
15        THE COURT:  All right
16        MR FUES:  Counsel actually interjected
17  themselves into the testing
18        THE COURT:  Well, we're going to move past this
19  one relatively quickly, too, because maybe this is harder
20  than it seems on its face, but I hope not
21        Ciba has got it right to this extent  The facts
22  are not protected and if you are not getting the facts, you
23  tell me you're not getting the facts  If there is something
24  about the testing that you believe you should know and don't
25  know, make me aware of that  But the facts being embedded

SHEET 4

---

**13**

1  in a letter between a lawyer and a client doesn't
2  automatically make that letter discoverable  Now, if you've
3  got a basis for saying that in-house counsel stepped out of
4  their role as lawyer and they were acting in the role of a
5  business person or a scientist and therefore their
6  communications aren't deserving of the attorney-client
7  privilege because of those communications weren't associated
8  with the seeking and the giving of legal advice, if we have
9  to have full blown briefing on it, I guess we'll have full
10  blown briefing on it  But
11      For right now, it sounds to me as if I have a
12  party saying we have given the factual information  And I'm
13  prepared to accept their representation unless you can
14  demonstrate to me, Mr  Hughes, that that is just not so
15  because we know there is this gap in factual information and
16  we're entitled to get it  For example, if there is testing
17  protocol and they're not telling you the testing protocol
18  and the reason they're not telling the testing protocol is
19  because they say their lawyer told us not to tell you what
20  is the testing protocol, I would agree it's not legal
21  advice, it's scientific information and they can't turn it
22  into attorney-client privilege by putting it in the mouth of
23  their lawyer first; but short of something like that, I'm
24  not stripping away the privilege  Do you have something
25  specific like that, sir?

---

**14**

1      MR FUES: Well, we have two things, Your Honor
2  First of all, there are no notebooks about the testing and
3  how it was performed specifically with respect to some of
4  the samples  And again, the witness was instructed not to
5  answer about the involvement of counsel in the preparation
6  of samples, why certain tests were run under some conditions
7  and not others  There were instructions that that was
8  attorney-client privilege  There were a number of
9  instructions we tried to detail in our letter about actual
10  involvement in technical matters that I have to assume
11  counsel was involved in because the witness was instructed
12  not to answer
13      So I would have to say, yes, we're not getting
14  full discovery  There are facts in that document, that's
15  the only document that lays forward these facts and we've
16  not been provided that information
17      THE COURT: Not in any other way? Not in
18  interrogatory response or in any other way, is what you're
19  telling me?
20      MR FARABOW: No, Your Honor  This is Ford
21  Farabow, Your Honor  They never wrote this down  This is
22  found stuff that showed up apparently only in this document
23  that was sent to counsel  It's the only test they have that
24  they claim shows hypermers cross linking and its written
25  down in only one place and that document was sent to counsel

---

**15**

1  and they're withholding it as privilege for that reason
2      THE COURT: All right  I can't have double
3  teaming here, though, Mr  Farabow --
4      MR FARABOW: I'm sorry
5      THE COURT: -- if Mr  Hughes is on this issue
6      MR FARABOW: I beg your pardon, Your Honor
7      THE COURT: All right?  Who is speaking to
8  this?
9      MR THOMPSON: I will speak to this
10      What they're saying is not true  We have
11  followed that procedure 100 percent  Any information that
12  relates to testing we have not treated as privileged  The
13  deposition that they took, the witness answered every
14  question they had about the procedures that the tests were
15  done under, about the results of the tests
16      What they seem to focus on is that there were
17  communications with counsel and they want the documents
18  that are those communications with counsel that related to
19  formulation of the present lawsuit
20      THE COURT: Okay  Hold up for just --
21      MR THOMPSON: We're not holding back  He
22  didn't hold back anything
23      THE COURT: Hold on just a second, Mr  Thompson
24  Whoa  Do you have me on speakerphone, Mr  Thompson?
25      MR. THOMPSON: I do

---

**16**

1      THE COURT: Okay  You may have to pick up, I'm
2  not sure, because sometimes the way just technically these
3  things work, people can't hear when I'm trying to break in,
4  and although I'm not trying to be impolite, I need to be
5  able to break in on counsel at times in order to make the
6  discussion function the way that it's most helpful for me in
7  trying to help you guys resolve your issues
8      So hold up for just a second and let me ask Mr
9  Fues something; okay?
10      Mr Fues, I apologize  I think I was calling
11  you Hughes as opposed to Fues a minute or two ago
12      MR FUES: I have been before, Your Honor
13      THE COURT: I apologize for mispronouncing your
14  name
15      Mr Thompson is saying you had an opportunity
16  and did in fact explore fully the testing that went on in
17  the questioning and that that was laid out for you in the
18  deposition  That's the testing protocol, the technical
19  information you are allowed to ask about and you were given
20  full information on  What is your response?
21      MR FUES: I disagree with that, Your Honor
22  We, in our letter on the bottom of page two and the top of
23  page three, list specific instances where we asked questions
24  about the testing protocol and the witness was instructed
25  not to answer questions about that

---

## 17

1  THE COURT: All right. Be specific. Now, I'm
2  on page two of Docket Item 81.
3  MR. FUES: Okay.
4  THE COURT: And I have this letter in front of
5  me and Mr. Thompson, I assume you have it in front of you,
6  too. Let's get specific. You give me your best example;
7  all right, Mr. Fues?
8  MR. FUES: All right. One, Your Honor, is at,
9  as we indicated, page 81, 14, to page 82, 21. And I'm
10 flipping through the transcript right now.
11  Let's see, 82, 21. "Why did you prepare the
12 sample at 1 percent polymer and one molar NaCl?"
13  THE COURT: Okay. Hold on just a moment.
14  MR. FUES: That is on page 82, Your Honor.
15  THE COURT: This is page 82? Okay.
16  MR. FUES: That is at lines eight and nine.
17  THE COURT: Right.
18  MR. FUES: Why did you prepare the sample under
19 those conditions?
20  And then again I asked that at line 18.
21  The instruction was: "Object. Calls for
22 attorney-client privileged information. Instruct the
23 witness not to answer the question."
24  THE COURT: All right. Mr. Thompson?
25  MR. THOMPSON: Okay. Looking at this, the

## 18

1  protocol that he is asking about is actually set forth in
2  Defendants' Exhibit No. 3 which was a document that was
3  sitting in front of them at the time. So the protocol is
4  not only in a document, he was ready to talk about exactly
5  how it was done. As a matter of fact, if you look at the
6  further testimony, because he went through the protocol in
7  detail, the protocol as set forth in Defendants' Exhibit
8  No. 3 is set forth at page 75.
9  THE COURT: All right. I'm having a hard time,
10 though, with your answer here. What is it about the
11 question: "Why did you decide to prepare the sample at 1
12 percent polymer and one molar NaCl?" What protocol or
13 basis? Why did you decide to approach it in that fashion?
14 What is it about that that is attorney-client privilege?
15  MR. THOMPSON: The objection was form. First of
16 all, I want to make sure we got the predicate right. The
17 protocol itself, what was done was explained in detail so I
18 don't think their claim is they didn't get that. The
19 question is "why?" And as a time frame, they were working
20 with counsel to develop tests to formulate this lawsuit and
21 the part of that is what they're saying here is that they
22 came from discussions with counsel about the recommendation.
23 Those communications which they're trying to get at through
24 this "why" is, is it privileged communication? Is it
25 between attorney and client? It's about the formulation of

## 19

1  the lawsuit and tests that would be done.
2  THE COURT: All right.
3  MR. THOMPSON: Didn't hold back any information
4  about the tests.
5  THE COURT: All right.
6  MR. THOMPSON: None whatsoever.
7  THE COURT: Now, Mr. Fues, your objection or
8  your comment at the deposition was "the experimental
9  conditions that you undertook to test the sample are not
10 privileged." I hear Mr. Thompson saying the experimental
11 conditions were revealed to you. What were you trying to
12 get at with the question?
13  MR. FUES: Well, there is that and other
14 questions, but we're trying to understand why they chose
15 certain conditions and they used -- I mean those were the
16 conditions to prepare the samples upon which they decided we
17 had a cross-linking agent.
18  THE COURT: All right. And what I understand
19 your opponent to be saying, we told you what we did, we told
20 you how we did it, we don't have to tell you why we did it
21 because that bears on our development of a legal strategy.
22 Where is the flaw in that reasoning? That you can know the
23 "what," you can know the "how," you can know the "when," but
24 "why" we chose to do what we did bears on the development of
25 our legal strategy and you are not allowed to get at that?

## 20

1  MR. FUES: Well, Your Honor, okay. There were a
2  series of questions about why weren't samples prepared a
3  certain way? Why weren't they done under the conditions of
4  the patent? Things like that. I guess what my response is,
5  again if counsel is interjecting itself into the testing
6  protocol and they're getting results that they're using
7  affirmatively to assert infringement against us, it's like
8  they're using privilege as a sword but using the results as
9  a shield.
10  And I also think that the fact that counsel has
11 actually gotten involved with sample preparation and things
12 like that and now sample results from that testing, based
13 upon what counsel has talked about, is something that is at
14 issue in this lawsuit. They relied upon their pre-suit
15 testing in answering at least a half dozen interrogatories.
16 In this case, the witness testified they're relying upon
17 that testing to say that hypermers are a cross-linking
18 agent, for instance, and I guess that I don't think you can
19 slice the salami that thin. I don't think counsel, on the
20 one hand, can get involved in the testing but, on the other
21 hand, say, wait a minute, why we did things, you are not
22 entitled to know that.
23  THE COURT: Okay.
24  MR. FUES: And the other point, Your Honor, is
25 none of this is written down in notebooks so we're asking a

SHEET 6

21

1  witness to sit there by memory and talk about details of the
2  tests  He doesn't remember the details of the test, and we
3  think it is in this document or at least some of that
4  information is in this document that they're withholding
5       THE COURT: All right  Well, here is how this
6  is going come out  I'm going to take a look at this
7  specific document in camera and I'm going to take your
8  positions in no more than five pages, double spaced, on
9  whether there is privilege attaching to the "why "
10      MR FUES: Your Honor, can I interject real
11 quickly? I think there might be more than one document  It
12 wasn't clear from the testimony
13      THE COURT: Well, I'm responding to you, Mr
14 Fues  You said it's in this document  If you have some
15 proof that it's in something else, you tell me, but I'm not
16 going to start asking for bankers boxes of documents here
17 So you've got a document in mind, that's the one I'm looking
18 at  If you have something else in mind, you be specific and
19 we'll deal with it now but I'm not turning myself into a
20 discovery screen here
21      MR. FUES: Okay  The only point -- I
22 understand, Your Honor  I appreciate that.
23      THE COURT: All right
24      MR FUES: I just want to say there is some
25 testimony on page 260 of the deposition where I say: Let me

22

1  understand, let me make sure  The information that Ciba is
2  relying upon to say hypermer is a cross-linking agent and in
3  a certain molar range is embodied in a document Ciba asserts
4  is privileged; is that right?  And counsel interjects and
5  says he has testified that is one of the places where it's
6  embodied  It was also embodied, he testified about,
7  earlier  And the witness agrees with my question and says
8  yes  So I guess the point is I want the information about
9  hypermer and being a cross-linking agent, the document that
10 it's in
11      THE COURT: Well, I want you to have the
12 information, too  Whether you get the document or not is
13 another issue  I don't think anybody is disagreeing, Mr
14 Fues, that you and your client are entitled to the
15 scientific information associated with the assertion that
16 there is cross linking  That is not what people are taking
17 time about here  The question is are you entitled to a
18 specific document that went between an attorney and a client
19 that contains that information?
20      I hear you folks telling me from the Hercules
21 side it wasn't written down anyplace else  This is the
22 only place it was and, therefore, even if we got it through
23 some other means, deposition, et cetera  That we should be
24 entitled to see this because of, I guess, the credibility of
25 the assertions being made outside the context of this

23

1  document about what happened
2       I'm prepared to take a look at the document and
3  see if I agree with you that there is nothing else that
4  happened that gave you this information and that this was
5  the only memorialization and so that in effect the lawyers
6  so limited the record and inserted themselves into the
7  scientific side of this that they should be viewed as having
8  forfeited any right to say this is really attorney-client
9  privilege stuff and it's essentially a substitution for lab
10 notebook  I'll take a look at the document and see if I
11 agree with what I take your argument to be in this regard.
12      MR FUES: Thank you very much, Your Honor
13      THE COURT: And I'll take a look at it  And I
14 encourage you, Mr Thompson, to make sure that you submit to
15 me what you say, based on the quote I have just heard from
16 Mr Fues, is the other place or places where this same
17 information is memorialized
18      In other words, you've heard what I take their
19 argument to be, you have a rebuttal for it on a factual
20 basis, i e , it's just not so that this is the only place
21 it was memorialized, then you make me aware of that, too
22 But I expect to see something from you folks within a week,
23 cross submissions  I don't need any cross replies  Give
24 me your position, five pages double spaced  And I'm
25 particularly interested in any precedent that either of you

24

1  have that bears on the question of whether the "why" of
2  testing is a matter that is typically required to be
3  produced in connection with discovery in a patent case  It
4  doesn't even have to be limited to a patent case -- in
5  relation to what is going on in the case  You'd have to
6  point out to me what is relevant and how it's relevant that
7  you get at the "why "  I'm not saying it's not, I'm just
8  saying I want to see your precedent if you've got it that
9  takes it to that level, okay?
10      MR FUES: Okay  Thank you, Your Honor.
11      THE COURT: I'll look to get that to you from
12 folks on Wednesday the 20th
13      All right  Next  Mr Thompson, the next issue
14 is yours
15      MR THOMPSON: Our next issue I suppose is a
16 fairly straightforward one  We've asked the defendants to
17 tell us if they're going to rely upon advice of counsel in
18 connection with the defense of willfulness, an issue which
19 comes up all the time; and it's always a timing issue, it's
20 always the thing on the table  We're moving into the phase
21 of a lot of depositions in August and we don't want to have
22 to do them twice so we've asked that the time be set by,
23 say, August 1st or something, I don't know what day of the
24 week that is, but August 1st for them to make that decision.
25 They say oh, no, we want to wait until the depositions have

United States District Court for the District of Delaware
Before the Honorable Kent A  Jordan

25

1  occurred  Now we want August 30th  We think it's more
2  appropriate to be August 1st
3        THE COURT: All right  Who is speaking to this
4  issue for Hercules?
5        MS NETH: Yes, I will, Your Honor  Joann Neth
6  Well, first of all, Your Honor, I don't think we
7  said we were going to wait  We didn't say anything about
8  depositions and waiting for depositions, so I'm not quite
9  sure where that came from but our view basically is that we
10  offered several months ago to make an election by the end of
11  August  We offered that to plaintiff's counsel and they
12  never responded  We think that is an appropriate time
13  frame  It gives two months before the close of discovery
14  and that they never responded to that proposal  We just
15  think that we need a little more time to consider the issue
16  and that it is appropriate that it takes place toward the
17  end of discovery
18        THE COURT: Well, I tend to agree with that, but
19  you think 30 days is going to make a big difference, do you?
20  I have some sympathy for their practical issue, which is if
21  you are going to be deposing people through the month of
22  August and the same people are going to be the folks who
23  would be asked questions with respect to attorney-client
24  privilege issues, if you waive the privilege, why should
25  folks go to that expense twice to give you another?  I mean

26

1  what is it about the 1st as opposed to the 30th that makes
2  it sensible to go through depositions twice?
3        MS NETH: Well, Your Honor, I'm not exactly
4  sure which witnesses they're even talking about  They've
5  not noticed any depositions of any witnesses so I'm really
6  not sure who it is they're intending to depose and whether
7  they would need to come back twice or not
8        THE COURT: I don't either, so here is what
9  we'll do  I'll put the risk on you  I'll go ahead and give
10  you the 30th of August but if it turns out that the people
11  who are significant in this attorney-client privilege issue
12  are people who have already been deposed in August, you guys
13  will pay the freight  You will pay their counsel fees
14  associated with deposing the guys twice if that is what
15  happens  Because I don't see that extra four weeks giving
16  you a significant benefit and I see that as a practical
17  matter it does put a burden on the plaintiff to have to do
18  this twice if they don't have to  So if you think that
19  extra four weeks is going to be meaningful to you and you
20  want to pay the costs associated with it, I'll give you that
21  30 days  How do you want to play that?
22        MS NETH: Well, Your Honor, I guess I'm sort of
23  on the fence about it and Mr Thompson said something about
24  August 1st  I think we could back the date up to August
25  1st, if that would accommodate both sides of the fence here.

27

1        THE COURT: Done  August 1st it is
2        MS NETH: Thank you, Your Honor
3        THE COURT: All right  Next, Ms Neth, this one
4  is for you or for one of your colleagues  Which one do you
5  want to bring up next?
6        MR FUES: Your Honor, that would be myself
7  again
8        THE COURT: Okay.
9        MR FUES: Other than the pre-suit testing, the
10  other issues that we had again are supplementation of
11  interrogatory answers  That's on page three of our letter
12        THE COURT: Right
13        MR FUES: There is a couple things going on
14  here  First of all, we want to make sure that we know which
15  are the asserted claims rather than just this, I think I saw
16  it in their letter about representative claims
17        The second thing is we want to know how their
18  pre-suit testing or any testing that they've done
19  specifically ties into the claim limitation rather than just
20  a blanket statement they did rheological testing and
21  therefore they know the claim limitations are met  This was
22  subject to discussion at the May 27th discovery hearing and
23  we understood the parties to be directed to be specific and
24  to try to identify the asserted claims
25        THE COURT: Yes  Let me ask you a question, Mr

28

1  Fues.  Am I correct that you're telling me that you still
2  don't know because they haven't told you what their position
3  is with respect to specific cross-linking agents and your
4  product?  Did I get it right?
5        MR. FUES: Well, yes, Your Honor  This is a
6  difficult case in the sense that rheological testing is
7  an indirect way to identify certain characteristics of
8  molecules and you have to add a couple of these tests
9  together and use judgment and decide whether or not that
10  identifies the cross-linking agent  So it is really
11  important to know which rheological tests you are talking
12  about when you make assertions against different limitations
13  of the claims in suit
14        THE COURT: I guess I ought to ask you the
15  question this way  Maybe this will be a better way to try
16  to flesh this out
17        What is it that would be the ideal response,
18  interrogatory response in your view other than one that said
19  we admit you don't infringe?  Let's leave that one aside
20        MR FUES: That would be a good one
21        THE COURT: Yes  What would be the ideal
22  response to this that would give you the information that
23  you believe you need and are entitled to and don't have?
24        MR FUES: Okay  For instance, in the
25  cross-linking agent content, if they said that Ciba has

SHEET 8

**29**

1 conducted tests on test A, B and C, those tests each show or
2 those tests show that the cross-linking agent content in
3 your product is between X and Y, not the whole range of the
4 claim like is currently in the claim charts but is between X
5 and Y, and if they gave some minimal explanation of why they
6 claim that rather than just a conclusion
7    MR CREEL: Your Honor, excuse me   Tom Creel
8 for Cytec  Of course, we also have an interest in this so I
9 wanted to comment on your question  The other issue that I
10 would be interested in is what is the cross-linking agent
11 that supposedly has this content from four to 4,000
12    THE COURT: All right  Mr Thompson, are you
13 carrying the water on this one as well, sir?
14    MR THOMPSON: I am
15    THE COURT: Okay  What is it about what
16 they're asking for that you think is inappropriate or that
17 you have already given?  Give me your response, if you
18 would
19    MR THOMPSON: I think you touched on it at
20 the end there  We have given them this information  We
21 told it to the Court at the tutorial  You recall the
22 slides  We supplemented and told them there, let's just
23 put a name on it  It's hypermer  Okay?  They know this
24 They've known it from before  It's a special surfactant
25 system and it's hypermer and Mr  Heard testified for seven

**30**

1 hours about this  He testified about how much is there and
2 how you convert that to molar parts per million, which is
3 this calculation they're talking about  He testified about
4 the reactivity of hypermer, the nature  Let me see  It's
5 listed  It's actually in our brief, Your Honor  Our letter
6 July 12th, we went through it
7    He testified about the cross linking  And the
8 citations in the deposition: Reactivity of hypermer, 54 to
9 59  The test showing cross linking, that is 74 to 87, 90 to
10 99, so on and so forth  They're details of the mechanism
11 by which a hypermer cross links in the PerForm, that is 115
12 to 122  The calculation of the amount of hypermer, the
13 cross-linker that is in there  And they ask, well, are you
14 saying that all of this is reacting?  And his answer is yes
15 And that is on page 194
16    The way you get the parts per million -- and
17 this is something they know how to do as well  They did ask
18 him to calculate, although he testified what he believed if
19 he had gone through the calculation, he could put an answer
20 on that  They didn't do that  He takes a weight, which is
21 in this, it's in these procedures, you multiply it by the
22 molecular weight and convert it to molar parts and it's just
23 a ratio  So all of the information -- and he would have
24 done that if they would have asked  It's all there
25    THE COURT: All right

**31**

1    MR THOMPSON: Your Honor, there is not a thing
2 we haven't told them  The problem is they can't accept it.
3 And if you look and --
4    THE COURT: Well, good enough  I got your
5 position, Mr Thompson  Let me get Mr  Fues back on the
6 line here.
7    MR FUES: All right  Your Honor, two points
8 quickly  First of all, we want the information in an
9 interrogatory response, just the way they were directed to
10 at the May hearing to provide that information which they
11 haven't done  And they were also directed at the May
12 hearing to tell us whether or not they had identified
13 hypermer as a cross-linking agent in their pre-suit testing
14 That is at the very end of the transcript  They agreed to
15 supplement their interrogatory to tell us that  They didn't
16 do that either  That is why, to kind of close the loop,
17 that is why the pre-suit testing is an important issue for
18 us
19    THE COURT: Well, pre-suit testing, I guess
20 we'll get into that later  Right now, I'm trying to deal
21 with the specific question of do you know their infringement
22 position?  And what I hear them saying is they've got it,
23 they got it at length in the deposition and now what I hear
24 you saying is not that you didn't get it but that you want
25 it reduced to writing in an interrogatory  Have I

**32**

1 understood that correctly?
2    MR FUES: Well, Your Honor, that is part of it.
3 But the other part of it is there are at least I would say
4 15 claims at issue in this case and just because they talked
5 about hypermer at a deposition doesn't mean they went to the
6 limitations of all those other 14 dependent claims or
7 however many there are and gave us information on that in an
8 interrogatory response, too
9    THE COURT: Well, I think this one is actually
10 again not as hard as we're making this out to be  You will,
11 on the plaintiff's side, answer the contention interrog-
12 atories with respect to the claims that are at issue  It
13 will not be sufficient for you to make a generalized
14 statement, unless you want to be limited to specific lines
15 in a deposition and you want to recite it by line  I guess
16 you could incorporate by reference, but give them a response
17 to the specific contention interrogatory and then, at that
18 point, if there is still some complaint that you don't know
19 what their position is, then I guess at that juncture, I'll
20 either have to have some court appointed expert come in to
21 me and explain to me how it is that the information provided
22 could not have explained it, and I certainly hope we don't
23 get to that point, or we'll look for some other remedy
24    What I tried to express during the earlier
25 discussion on this point is there is a reason why I

33

1  encourage contention interrogatories  I know parties are
2  reluctant to commit themselves to print  They don't want to
3  have it waved under their nose in some later proceeding or
4  at the trial and told, well, you agreed that it was X, Y and
5  Z and be pinned down  I am not attempting to make your life
6  unduly challenging on the plaintiff's side here.
7        However, if it is as you say, that you've had
8  somebody explain this, then the additional work to reduce
9  it to write in response to contention interrogatory is
10 relatively minimal and I would like for you to do that, and
11 they are correct on the defense side that they're entitled
12 to know the position as to each of the claims that you are
13 asserting  So please provide that to them  And how long
14 will it take to you get that done, Mr Thompson?
15       MR THOMPSON: Well, considering that a lot of
16 what you said is right and we have already done most of it,
17 I would ask for maybe August 1st, a couple of weeks?
18       THE COURT: Done
19       Okay  Now the next issue is yours, Mr
20 Thompson
21       MR THOMPSON: Well, Your Honor, may I raise one
22 related --
23       (Phone rings )
24       MR THOMPSON: May I --
25       THE COURT: You may, but somebody has got to get

34

1  their phone to stop ringing because I can't hear you
2        MS NETH: I'm sorry, Your Honor  That is my
3  phone ringing
4        THE COURT: Okay
5        MR THOMPSON: I just want to raise one related
6  issue  When it comes to these responses to this, they're
7  asking for our infringement position  We've asked for their
8  noninfringement position and we noted in our brief  We
9  attached their supplemental response on this very topic
10 And the point of it is that they claim very broadly but
11 never put in their interrogatory responses anything about
12 this alleged association and, for example, if they contend
13 the associative cross-links are broken in use or how, you
14 know, what happens with those cross-links that would come,
15 somehow make it that there would not be infringement, and I
16 direct your attention to page six which is Exhibit E  The
17 supplemental response, the total of what they say about why
18 they don't infringe relative to their product is that the
19 PerForm product is not formed with a cross-linking agent,
20 and that is it  They don't talk about these alleged
21 associations or how if they're present the cross-links
22 they're not cross-linked, or, you know, if they're claiming
23 perhaps that they do break apart and it wouldn't be a
24 microbead  The fact of it is we believe that those cross
25 links are there the whole time and that is how they keep the

35

1  structure  And I think if we're going to have this
2  specificity level on this contention that they ought to
3  also abide by the same kind of rule
4        THE COURT: Mr Fues
5        MR FUES: Your Honor, a couple points  First
6  of all, I don't know if you have our interrogatory response
7  in front of you.
8        THE COURT: I do  I'm looking at page six
9        MR FUES: All right  There is a definition in
10 both of the patents in suit about what is a cross-linking
11 agent, and it has specific information about: Does it have
12 two double bonds? Does it have a double bond and a reactive
13 group or two reactive groups?  That is the definition in
14 both patents for a cross-linking agent  We say that our
15 product is not formed with anything that has in that
16 structure  That is information about the structure
17       We also, on pages six, seven and eight, in
18 contrast to what counsel has said, also indicate that our
19 product does not have a microbead particle or microbead
20 as claimed in the patents in suit  That is the second
21 noninfringement argument that counsel has not directed
22 your attention to
23       I guess the third point is that with respect to
24 covalent bonding, which is what the patent seems to imply is
25 required for a cross-linking structure, we say that our

36

1  product also does not have that, so it's not cross linked
2        THE COURT: All right  Well --
3        MR THOMPSON: Your Honor, remember how the
4  discussion went when they wanted information from us  They
5  wanted the tests to test explanation of reactivity, et
6  cetera, et cetera, which we have provided to them  I'm
7  asking that on the microbead particle, microbead and the
8  associations, that they explain all that and why it that
9  doesn't form infringement.
10       THE COURT: Well, have you asked that question?
11       MR THOMPSON: Well, that is the exact same
12 These are interrogatories which are the same  Yes, we've
13 asked to the same extent they asked it  We want to know why
14 those are not infringement
15       THE COURT: All right
16       MR THOMPSON: That is what this interrogatory
17 asks for
18       THE COURT: Well, the short answer is I will
19 expect the same behavior out of both sides  Now, I'm not
20 going to spend the time on this call to try to read and
21 compare people's answers  I do expect all sides to behave
22 with that principle of parity in mind  All right?
23       So if you think there is some specific piece of
24 information that you asked for before and didn't get, Mr
25 Thompson, you make them aware of it

37

1    And, Mr Fues, I'm confident that if you're
2 expecting specificity from the plaintiff, you folks at
3 Hercules will be willing to give it in response  Am I
4 correct?
5    MR FUES: Yes, Your Honor  Thank you
6    THE COURT: Okay  Good enough
7    MR THOMPSON: Can I just ask? As far as
8 timing, we're going to do this by August 1st  I presume
9 that the time for them would be same, August 1st
10    THE COURT: I'll tell you what  Why don't you
11 have that discussion about what it is you think you've asked
12 for and haven't gotten but everybody should understand that
13 the clock is ticking here, so the short answer is no, I'm
14 not answering that question for you because that is not
15 something that is teed up and in front of me and I feel like
16 I can't hold them to a short leash on because I don't know
17 what specificity you asked for before
18    So you guys talk about it  It seems to me that
19 two weeks would be a fair turnaround if in fact you've asked
20 for this information before and you haven't gotten it  But
21 I'm not going there right now because I haven't read what
22 you -- I haven't read these things side by side to give the
23 kind of ruling that you are looking for, Mr Thompson, which
24 is you asked exactly the same kind of questions that they're
25 demanding that you answer now  So without that, I'm not

38

1 prepared to say two weeks will do it  But, Mr Fues, what
2 would do it?  What could you do?
3    MR FUES: I would say two weeks  We can try,
4 Your Honor
5    THE COURT: That's great  Then you've got it
6 taken care of by agreement
7    All right  Let's turn to your next issue, Mr
8 Thompson
9    MR THOMPSON: Yes, I believe that this is -- I
10 could be wrong but I think this is the last one  It's the
11 indemnity agreement that was between -- you know, before I
12 forget, Your Honor, we had this discussion at the last
13 hearing and my understanding was defendants were supposed to
14 supplement on that and we got something from Hercules, we've
15 never received anything from Cytec
16    THE COURT: On what?  What are you speaking
17 about?
18    MR THOMPSON: On any of this infringement
19 stuff, only the first responses didn't have much of anything
20 in it  We've never gotten any of this detail  I just want
21 to make sure we don't lose Cytec in any of this
22    THE COURT: Mr Creel
23    MR CREEL: Sure  Your Honor, let me comment on
24 this generally  It may have been overlooked but let me tell
25 you why it was overlooked if it was overlooked  The problem

39

1 with this is Ciba -- and I have complained about this for
2 months  It writes letters saying defendants have done this
3 and defendants have done that  I can't tell whether he is
4 talking about Ciba -- I'm sorry -- whether he is talking
5 about Cytec or Hercules and it costs a lot of money for
6 everybody
7    I have written to Mr Thompson  I said if you
8 have a problem with our responses, please write to me and
9 tell me what the problem is with our responses  Don't send
10 a letter to defendants where I can't tell whether you're
11 talking about Hercules or me or what you are doing
12    So I'll be glad to supplement and we'll go back
13 and do it but that is the problem  And I would like a
14 direction to Ciba: If it's got a problem with Hercules,
15 write to Hercules  If it has a problem with me, write to
16 me
17    THE COURT: All right  Well, that's --
18    MR CREEL: That's the way every case I have
19 ever been in -- I've been in it a long time -- has always
20 worked except for this one
21    MR THOMPSON: I guess that is an agreement by
22 August 1st is not an issue
23    MR CREEL: Right
24    THE COURT: It sounds to me like there is an
25 agreement to supplement and Mr Creel, you should get that

40

1 done  I'm a little surprised  That I thought there was a
2 discussion but I haven't gone back and re-read the
3 transcript  Is that something you can accomplish in the
4 next two weeks, sir?
5    MR CREEL: Sure  We'll meet whatever everybody
6 else does
7    THE COURT: Good  August 1st
8    And, Mr Thompson, Mr Creel's point is well
9 taken  If you have specific requests for Cytec, don't --
10 you know, I hear them saying don't lump us in with Hercules
11 because our interests are different and our positions are
12 different
13    Do I understand you right on that, Mr Creel?
14    MR CREEL: That's correct, Your Honor
15    THE COURT: All right  Then, Mr Thompson,
16 direct them in different spots  Of course, that raises an
17 interesting issue with respect to these indemnity
18 agreements
19    Mr Fues, are you speaking in response to this?
20    MS NETH: I guess I am, Your Honor  And Mr
21 Fues, I don't know if he has any ideas, but I'll speak
22    I think in fact Cytec and Hercules do have
23 interests in common  We have interests in common in
24 defending this lawsuit and certain aspects of the lawsuit
25 infringement, most notably, and we certainly do have

SHEET 11

41

1  interests in common
2      I think what Mr. Creel is trying to point out,
3  we're acting independently in conduct in term of discovery
4  and responding to the lawsuit. I think that was his point
5  but I do believe we have interests in common with regard
6  to joint defense in the lawsuit and the parties have,
7  defendants have certain understanding between them with
8  respect to the joint defense of the lawsuit. And to the
9  extent there exists any kind of indemnity agreement and the
10 like, it is wrapped up in those joint defense understandings
11 and our position is for one, we don't really know why it
12 is Mr. Thompson is alleging this is somehow related to a
13 privity issue in the case. For one, he has never explained
14 that, and what it has to do with joint liability, I don't
15 know either because as joint tort-feasors we would be both
16 jointly and severally liable so I don't think that adds
17 anything to the equation
18     And then lastly, as I was discussing initially,
19 we believe that in any event, since we have a common
20 interest privilege and joint defense going on here, they're
21 not entitled to discovery of anything
22     THE COURT: All right. With respect to the
23 issue of privity, Mr. Thompson, how is privity relevant
24 here? Give me that real quick, if you would
25     MR. THOMPSON: Privity relative to the

42

1  indemnification agreement relates to the nature of the
2  agreement, who motivated whom. They worked together, and
3  we know this from the recent depositions they worked very
4  closely together on the scientific level to develop the
5  PerForm product. We learned that at the deposition, I think
6  it was last week, of Cytec.
7      This agreement goes to that relationship between
8  the companies and I'll just note there is a lot of legal
9  precedent that says agreements like this show induced
10 infringement, which our position is they're co-infringers
11 and that this will reflect upon how they set up that
12 arrangement. And so it goes to a number of issues in the
13 case, and that is just for the relevance side. And I can go
14 into privilege, but I think you wanted to hear that first.
15     THE COURT: Right
16     Okay. Ms. Neth
17     MS. NETH: Yes, Your Honor. First of all,
18 plaintiffs haven't pled inducement of infringement on the
19 part of Hercules vis-a-vis Cytec or vice versa, so that is
20 not in the case. And second of all, I think Mr. Thompson
21 has not correctly laid out the facts correctly here
22 PerForm, the product was developed by Hercules independently
23 well prior to 2001 which is when the Cytec sold their
24 business to Ciba and part of the patents. The work was well
25 under way before that time and the product was not being

43

1  totally manufactured by Cytec. The total manufacture
2  by Cytec didn't occur until 2002 and so Cytec had no
3  involvement in the actual development of the product
4  Hercules application was filed in 2001, prior to that time,
5  so I don't think the facts bear that out
6      THE COURT: This raises -- look, I have
7  certainly seen indemnification agreements come up in these
8  cases before and I've understood their relevance in other
9  context but I'm at sea here because I hear the defendants
10 telling me there is no question about joint and several
11 liability. Did I hear you right on that, Ms. Neth?
12     MS. NETH: I believe so, Your Honor. If we're
13 patent infringers, I think the law says we're joint tort
14 feasors
15     THE COURT: There you go. And that if there is
16 no inducement issue here, how is it relevant to the case?
17 How is it relevant to the case, Mr. Thompson?
18     MR. THOMPSON: You mean -- did I understand they
19 stipulate they're joint infringers?
20     THE COURT: I hear you saying --
21     MS. NETH: We didn't say that, Your Honor
22     THE COURT: What I hear them saying is if
23 they're -- that they're joint. Did you say you're
24 acknowledging that you are jointly and severally liable?
25     MS. NETH: No, Your Honor

44

1      THE COURT: What am I --
2      MS. NETH: I'm not saying that
3      THE COURT: What am I hearing you say? If they
4  prove infringement against both of us, then we're jointly
5  liable?
6      MS. NETH: Yes, Your Honor. That is all I'm
7  saying
8      THE COURT: All right. Well, you know what?
9  The general notion that the indemnity agreement is
10 irrelevant then I reject because there is a question about
11 the two of you folks acting in concert in some fashion. If
12 I got the facts right, I understand you to be telling me
13 that Hercules developed this and at some point Cytec came on
14 board and there is a relationship between the parties that
15 is sufficient for you folks to have agreed that you've got a
16 joint defense, which I'm not going to let them get into the
17 details of, but also that one side or the other or both is
18 agreeing to indemnify each other
19     Now, it may be that you want for some reason to
20 take that issue out of the case, that is, whether or not you
21 folks are so tied at the hip that if one goes down you both
22 go down, but the notion that there is such an agreement and
23 the general contours of it, that strikes me as reasonably
24 calculated to lead to admissible evidence and, therefore,
25 within the very broad framework of relevance that the

SHEET 12

45

1  federal rules provide  That says nothing about any specific
2  document because I don't know what those things are
3       So I don't know if I'm being terribly helpful,
4  but the notion that, hey, don't talk about our indemnity
5  agreement because that is off limits, I reject that  The
6  specifics about what they might be entitled to and what is
7  privileged and isn't is not before me and I'm not going to
8  get into that until you folks put a finer point on it
9       Does everybody understand what I have tried to
10  do to move that ball ahead a little bit? Ms Neth?
11       MS. NETH: Yes, Your Honor
12       THE COURT: Mr Thompson?
13       MR THOMPSON: Yes, but they're just refusing
14  They'll just refuse to give it under that condition
15       THE COURT: Well, I don't know whether they will
16  or not  Why don't you guys have a discussion  If they have
17  some attorney-client privilege basis and you think you have
18  a basis for penetrating it, then you make me that argument
19  But I'm not going to have on-the-fly oral briefing and
20  argument on an issue that isn't before me
21       I'm ruling on a specific point which is they've
22  said that they're not going to give it to us because it's
23  not relevant  And on that, you win  I'm not prepared to
24  say it's irrelevant  And, therefore, the topic is not off
25  limits  Now you take the ball forward and do what you can

46

1  to work it out. And if you can't work it out, I guess we'll
2  be back here again but I certainly hope not
3       MR THOMPSON: Your Honor, you know, the first
4  step in that is for them to explain the basis of privilege
5  on it item by item  You know, this is a regular standard
6  thing  Could we just set a time when they will provide that
7  explanation?
8       THE COURT: Why don't you share with us what you
9  think is going to be an appropriate way to deal with that,
10  Ms Neth? Do you agree? Well, no, no  Stop  Stop
11       Here is the right thing to do  I'm going to
12  stop talking about this subject because what really needs to
13  happen is you folks need to take this off-line  If you have
14  a specific request, Mr Thompson, for this information, take
15  it off-line, talk about how to address the issue  If you
16  don't get something and we have to be on the phone in a week
17  or less, we'll do it  But I'm hoping that discussion
18  between the parties will lead to some sensible resolution
19  And if it doesn't, that when you bring it back to me, there
20  will be a point on it, but I'm not going to start setting
21  deadlines for stuff when you haven't even had the beginnings
22  of a discussion  So you have your discussion
23       Okay  The last issue for Hercules or Cytec, I
24  think  Who is speaking? Was there another issue teed up?
25       MR FUES: Your Honor, that covers our issues

47

1       THE COURT: All right  And, Mr Thompson, I
2  think we covered all yours; correct?
3       MR THOMPSON: That is right  Thank you, Your
4  Honor
5       THE COURT: All right  Well, I hope you get it
6  worked out, the things you need to get worked out  I'll
7  look to get something for you, from you in a week, five
8  pages, double-spaced cross submissions, along with at a
9  minimum the document that the plaintiff is claiming
10  attorney-client privilege on with respect to the testing,
11  pre-suit testing  Okay?
12       MS NETH: Thank you, Your Honor
13       THE COURT: Thanks for your time today  I'll
14  look forward to getting your submissions
15       (The attorneys respond, "Thank you, Your
16  Honor ")
17       (Telephone conference ends at 12:07 p m.)
18
19
20
21
22
23
24
25

1

**0**

04-293 [1] - 1:9

**1**

1 [2] - 17:12, 18:11
100 [1] - 15:11
115 [1] - 30:11
11:00 [2] - 1:12, 2:18
11th [1] - 3:11
122 [1] - 30:12
12:07 [1] - 47:17
12th [2] - 3:11, 30:6
13 [1] - 1:12
14 [2] - 17:9, 32:6
15 [1] - 32:4
18 [1] - 17:20
194 [1] - 30:15
1st [12] - 24:23, 24:24,
    25:2, 26:1, 26:24,
    26:25, 27:1, 33:17,
    37:8, 37:9, 39:22,
    40:7

**2**

2001 [2] - 42:23, 43:4
2002 [1] - 43:2
2005 [1] - 1:12
2006 [1] - 4:2
20th [1] - 24:12
21 [2] - 17:9, 17:11
22nd [1] - 6:19
260 [1] - 21:25
27th [1] - 27:22

**3**

3 [2] - 18:2, 18:8
30 [2] - 25:19, 26:21
30(b)(6) [4] - 5:8, 6:12,
    7:17, 7:20
30th [3] - 25:1, 26:1,
    26:10
31st [1] - 4:3

**4**

4,000 [1] - 29:11

**5**

54 [1] - 30:8
59 [1] - 30:9

**7**

74 [1] - 30:9

**8**

80 [1] - 4:13
81 [2] - 17:2, 17:9
82 [4] - 17:9, 17:11,
    17:14, 17:15
87 [1] - 30:9

**9**

90 [1] - 30:9
99 [1] - 30:10

**A**

abide [1] - 35:3
able [4] - 5:11, 5:22,
    9:21, 16:5
accept [2] - 13:13,
    31:2
accommodate [1] -
    26:25
accomplish [1] - 40:3
according [1] - 12:11
acknowledging [1] -
    43:24
acting [3] - 13:4, 41:3,
    44:11
Action [1] - 1:4
actual [4] - 9:1, 12:12,
    14:9, 43:3
add [1] - 28:8
addition [1] - 9:7
additional [2] - 5:5,
    11:24, 33:8
address [3] - 3:22,
    10:8, 46:15
adds [1] - 41:16
admissible [1] - 44:24
admit [1] - 28:19
admitted [1] - 8:22
advice [3] - 13:8,
    13:21, 24:17
affirmatively [1] - 20:7
agent [13] - 11:22,
    19:17, 20:18, 22:2,
    22:9, 28:10, 28:25,
    29:2, 29:10, 31:13,
    34:19, 35:11, 35:14
agents [1] - 28:3
ago [3] - 7:4, 16:11,
    25:10
agree [7] - 7:2, 7:9,
    13:20, 23:3, 23:11,
    25:18, 46:10
agreed [3] - 31:14,
    33:4, 44:15

agreeing [1] - 44:18
agreement [11] - 38:6,
    38:11, 39:21, 39:25,
    41:9, 42:1, 42:2,
    42:7, 44:9, 44:22,
    45:5
agreements [3] -
    40:18, 42:9, 43:7
agrees [1] - 22:7
ahead [3] - 3:12, 26:9,
    45:10
alleged [2] - 34:12,
    34:20
alleging [1] - 41:12
allow [1] - 4:9
allowed [2] - 16:19,
    19:25
amount [2] - 11:23,
    30:12
Anderson [2] - 2:2, 3:1
answer [12] - 5:11,
    14:5, 14:12, 16:25,
    17:23, 18:10, 30:14,
    30:19, 32:11, 36:18,
    37:13, 37:25
Answer [1] - 11:17
answered [1] - 15:13
answering [2] - 20:15,
    37:14
answers [2] - 27:11,
    36:21
anyplace [1] - 22:21
apart [1] - 34:23
apologize [2] - 16:10,
    16:13
Appearances [2] -
    1:16, 2:1
application [1] - 43:4
appointed [1] - 32:20
appreciate [1] - 21:22
approach [1] - 18:13
appropriate [4] - 25:2,
    25:12, 25:16, 46:9
area [1] - 5:12
areas [1] - 5:17
argument [5] - 23:11,
    23:19, 35:21, 45:18,
    45:20
arrangement [1] -
    42:12
aside [1] - 28:19
aspects [1] - 40:24
assert [1] - 20:7
asserted [2] - 27:15,
    27:24
asserting [1] - 33:13
assertion [3] - 6:22,
    10:18, 22:15
assertions [2] - 22:25,
    28:12

asserts [1] - 22:3
associated [4] - 13:7,
    22:15, 26:14, 26:20
association [2] - 5:2,
    34:12
associations [2] -
    34:21, 36:8
associative [1] - 34:13
assume [4] - 3:15,
    11:6, 14:10, 17:5
ation [1] - 9:23
atories [1] - 32:12
attached [1] - 34:9
attaching [1] - 21:9
attempt [1] - 9:22
attempting [1] - 33:5
attention [2] - 34:16,
    35:22
attorney [13] - 10:19,
    13:6, 13:22, 14:8,
    17:22, 18:14, 18:25,
    22:18, 23:8, 25:23,
    26:11, 45:17, 47:10
attorney-client [11] -
    10:19, 13:6, 13:22,
    14:8, 17:22, 18:14,
    23:8, 25:23, 26:11,
    45:17, 47:10
attorneys [1] - 47:15
August [20] - 4:7, 4:8,
    5:10, 24:21, 24:23,
    24:24, 25:1, 25:2,
    25:11, 25:22, 26:10,
    26:12, 26:24, 27:1,
    33:17, 37:8, 37:9,
    39:22, 40:7
author [1] - 8:24
automatically [1] -
    13:2
available [1] - 8:18
aware [2] - 12:25,
    23:21, 36:25

**B**

backing [1] - 4:4
ball [2] - 45:10, 45:25
bankers [1] - 21:16
based [3] - 9:19,
    20:12, 23:15
basis [9] - 9:15, 9:22,
    9:25, 13:3, 18:13,
    23:20, 45:17, 45:18,
    46:4
Bays [3] - 1:21, 2:23,
    3:17
bear [1] - 43:5
bears [3] - 19:21,
    19:24, 24:1
bed [1] - 9:13

beg [1] - 15:6
beginning [1] - 2:18
beginnings [1] - 46:21
behalf [3] - 3:1, 5:25,
    6:8
behave [1] - 36:21
behavior [1] - 36:19
benefit [1] - 26:16
best [2] - 7:8, 17:6
better [1] - 28:15
between [11] - 10:25,
    13:1, 18:25, 22:18,
    29:3, 29:4, 36:11,
    41:7, 42:7, 44:14,
    46:18
big [1] - 25:19
bit [3] - 11:8, 12:4,
    45:10
blanket [1] - 27:20
blown [2] - 13:9, 13:10
blunt [1] - 9:21
board [1] - 44:14
bond [1] - 35:12
bonding [1] - 35:24
bonds [1] - 35:12
bottom [2] - 9:5, 16:22
boxes [1] - 21:16
break [3] - 16:3, 16:5,
    34:23
Brian [1] - 1:25
brief [3] - 3:24, 30:5,
    34:8
briefing [3] - 13:9,
    13:10, 45:19
bring [2] - 27:5, 46:19
broad [1] - 44:25
broadly [1] - 34:10
broken [1] - 34:13
built [1] - 4:17
burden [1] - 26:17
business [2] - 13:5,
    42:24

**C**

calculate [1] - 30:18
calculated [1] - 44:24
calculation [3] - 30:3,
    30:12, 30:19
calculations [1] - 8:20
camera [1] - 21:7
care [1] - 38:6
carrying [1] - 29:13
case [15] - 3:25, 6:8,
    20:16, 24:3, 24:4,
    24:5, 28:6, 32:4,
    39:18, 41:13, 42:13,
    42:20, 43:16, 43:17,
    44:20

cases [1] - 43:8
certain [9] - 8:19, 8:20. 14:6, 19:15, 20:3, 22:3, 28:7, 40:24. 41:7
certainly [4] - 32:22, 40:25, 43:7. 46:2
cetera [5] - 11:1  11:2  22:23  36:6
Chad [2] - 1:18, 2:21
challenging [1] - 33:6
chambers [1] - 2:18
chance [1] - 11:5
change [2] - 4:9, 10:1
changes [1] - 4:14
changing [1] - 9:14
characteristics [1] - 28:7
characterization [4] - 4:24, 5:12, 7:19. 7:21
charts [1] - 29:4
Chemicals [2] - 1:4, 1:23
Chicago [1] - 1:22
chose [2] - 19:14, 19:24
Ciba [15] - 1:4, 1:23, 8:4, 10:13. 12:5, 12:6, 12:8. 12:21. 22:1, 22:3, 28:25, 39:1, 39:4. 39:14. 42:24
citations [1] - 30:8
Civil [1] - 1:4
claim [10] - 7:11. 8:23, 14:24. 18:18, 27:19, 27:21  29:4. 29:6, 34:10
claimants [1] - 1:10
claimed [1] - 35:20
claiming [3] - 7:4, 34:22, 47:9
claims [8] - 27:15, 27:16, 27:24. 28:13, 32:4  32:6  32:12. 33:12
clear [1] - 21:12
client [16] - 10:19, 10:25, 13:1, 13:6, 13:22, 14:8, 17:22. 18:14. 18:25, 22:14. 22:18  23:8  25:23. 26:11, 45:17, 47:10
clock [1] - 37:13
close [2] - 25:13, 31:16
closely [1] - 42:4
co [1] - 42:10
co-infringers [1] -

42:10
colleague [1] - 10:9
colleagues [1] - 27:4
Columbia [1] - 2:7
coming [1] - 4:7
comment [3] - 19:8  29:9, 38:23
commit [1] - 33:2
common [5] - 40:23, 41:1  41:5  41:19
communicating [1] - 10:22
communication [1] - 18:24
communications [6] - 10:24, 13:6, 13:7, 15:17  15:18, 18:23
companies [1] - 42:8
compare [1] - 36:21
complained [1] - 39:1
complaint [1] - 32:18
complete [4] - 5:7. 5:11  5:14. 9:4
completed [1] - 7:14
concept [1] - 4:22
concert [1] - 44:11
concluded [1] - 3:11
conclusion [2] - 4:5, 29:6
condition [1] - 45:14
conditions [7] - 14:6, 17:19, 19:9. 19:11, 19:15, 19:16. 20:3
conduct [1] - 41:3
conducted [2] - 12:6  29:1
conference [2] - 2:18  47:17
Conference [1] - 1:13
confident [2] - 9:21. 37:1
connection [2] - 24:3, 24:18
consider [1] - 25:15
considering [1] - 33:15
contains [1] - 22:19
contend [1] - 34:12
content [3] - 28:25  29:2. 29:11
contention [5] - 32:11. 32:17  33:1. 33:9. 35:2
context [2] - 22:25, 43:9
Continued [1] - 2:1
contours [1] - 44:23
contrast [1] - 35:18
convert [2] - 30:2. 30:22

Corporation [2] - 1:4, 1:23
correct [5] - 28:1, 33:11, 37:4  40:14. 47:2
correctly [4] - 4:16, 32:1, 42:21
Corroon [1] - 2:2
costs [2] - 26:20  29:5
counsel [24] - 12:4. 12:11, 12:12, 13:3, 14:5, 14:11, 14:23  14:25, 15:17, 15:18. 16:5. 18:20, 18:22, 20:5, 20:10, 20:13, 20:19  22:4  24:17  25:11, 26:13, 35:18, 35:21
Counsel [4] - 1:23, 2:8, 2:12  12:16
Counter [2] - 1:6  1:10
Counter-claimants [1] - 1:10
Counter-defendant [1] - 1:6
couple [5] - 11:18. 27:13. 28:8. 33:17, 35:5
course [3] - 8:18, 29:8, 40:16
Court [101] - 1:1, 2:19. 2:24, 3:6  3:8. 3:10, 3:20, 4:1, 4:11, 5:18. 5:23, 6:3, 6:21. 7:13, 7:24. 8:3. 9:6. 9:12, 10:7. 10:14  10:17  11:10  11:15. 12:15  12:18. 14:17, 15:2. 15:5, 15:7  15:20, 15:23. 16:1, 16:13. 17:1, 17:4, 17:13, 17:15, 17:17, 17:24. 18:9, 19:2, 19:5. 19:7. 19:18, 20:23. 21:5, 21:13, 21:23, 22:11. 23:13, 24:11. 25:3, 25:18, 26:8. 27:1. 27:3  27:8  27:12, 27:25, 28:14, 28:21, 29:12, 29:15  29:21. 30:25, 31:4. 31:19  32:9. 33:18, 33:25, 34:4, 35:4, 35:8, 36:2  36:10. 36:15, 36:18, 37:6, 37:10  38:5. 38:16, 38:22, 39:17, 39:24, 40:7, 40:15. 41:22, 42:15  43:6  43:15  43:20, 43:22. 44:1,

44:3, 44:8, 45:12, 45:15. 46:8, 47:1  47:5, 47:13
court [1] - 32:20
covalent [2] - 5:1  35:24
covered [1] - 47:2
covers [1] - 46:25
credibility [1] - 22:24
Creef [14] - 2:10  3:4  3:9, 29:7. 38:22, 38:23  39:18. 39:23, 39:25, 40:5. 40:13. 40:14  41:2
Creefs [1] - 40:8
criticism [1] - 9:3
cross [34] - 4:25  7:22, 8:12, 8:21. 11:1, 11:22, 14:24, 19:17. 20:17, 22:2. 22:9  22:16  23:23, 28:3  28:10, 28:25  29:2  29:10. 30:7, 30:9, 30:11, 30:13, 31:13. 34:13  34:14, 34:19, 34:22, 34:24. 35:10, 35:14  35:25  36:1  47:8
cross-linked [1] - 34:22
cross-linker [1] - 30:13
cross-linking [16] - 8:12, 11:22. 19:17. 20:17, 22:2, 22:9  28:3, 28:10, 28:25, 29:2. 29:10  31:13  34:19, 35:10. 35:14, 35:25
cross-links [4] - 4:25, 7:22, 34:13, 34:14
cut [1] - 10:18
Cytec [17] - 1:8  2:12  3:4, 29:8, 38:15  38:21, 39:5. 40:9. 40:22  42:6  42:19  42:23, 43:1. 43:2, 44:13. 46:23

**D**

damages [1] - 9:10
date [1] - 26:24
dates [4] - 4:1. 4:4  4:10. 9:14
days [2] - 25:19  26:21
deadlines [1] - 46:21
deal [4] - 10:10. 21:19, 31:20, 46:9
decide [3] - 18:11.

18:13  28:9
decided [1] - 19:16
decision [1] - 24:24
defendant [1] - 1:6
defendants [8] - 3:1, 24:16. 38:13  39:2  39:3, 39:10. 41:7. 43:9
Defendants [1] - 1:9
Defendants' [2] - 18:2. 18:7
defending [1] - 40:24
defense [7] - 24:18. 33:11. 41:6, 41:8, 41:10. 41:20  44:16
definition [2] - 35:9  35:13
Delaware [2] - 1:2, 1:12
delay [2] - 6:7, 6:15
demanding [1] - 37:25
demonstrate [1] - 13:14
deny [3] - 5:19  5:20  5:21
dependent [1] - 32:6
depose [1] - 26:6
deposed [1] - 26:12
deposing [2] - 25:21, 26:14
deposition [15] - 6:12, 7:3. 7:17, 7:20. 12:3. 15:13, 16:18, 19:8, 21:25, 22:23, 30:8, 31:23  32:5, 32:15  42:5
depositions [8] - 5:10, 24:21, 24:25, 25:8. 26:2. 26:5  42:3
deserving [1] - 13:6
detail [4] - 14:9. 18:7  18:17, 38:20
details [4] - 21:1. 21:2, 30:10, 44:17
develop [3] - 8:13  18:20, 42:4
developed [2] - 42:22. 44:13
development [3] - 19:21, 19:24. 43:3
difference [1] - 25:19
different [5] - 8:14, 28:12. 40:11  40:12. 40:16
difficult [1] - 28:6
direct [2] - 34:16. 40:16
directed [5] - 12:11. 27:23. 31:9, 31:11, 35:21

direction [1] - 39:14
disagree [1] - 16:21
disagreeing [1] - 22:13
disclosing [1] - 6:17
discoverable [1] - 13:2
discovery [18] - 4:3, 4:5, 4:9, 5:5, 6:11, 6:23, 7:11, 7:15, 9:11, 10:12, 14:14, 21:20, 24:3, 25:13, 25:17, 27:22, 41:3, 41:21
discussed [1] - 6:10
discussing [1] - 41:18
discussion [12] - 12:3, 16:6, 27:22, 32:25, 36:4, 37:11, 38:12, 40:2, 45:16, 46:17, 46:22
discussions [2] - 4:6, 18:22
dispute [2] - 7:5, 11:8
District [3] - 1:1, 1:2, 2:7
Docket [2] - 4:13, 17:2
document [27] - 8:23, 11:3, 11:20, 11:22, 11:23, 11:25, 14:14, 14:15, 14:22, 14:25, 18:2, 18:4, 21:3, 21:4, 21:7, 21:11, 21:14, 21:17, 22:3, 22:9, 22:12, 22:18, 23:1, 23:2, 23:10, 45:2, 47:9
documents [5] - 7:6, 7:10, 7:18, 15:17, 21:16
Done [2] - 27:1, 33:18
done [19] - 4:5, 4:24, 5:13, 6:23, 7:10, 9:16, 15:15, 18:5, 18:17, 19:1, 20:3, 27:18, 30:24, 31:11, 33:14, 33:16, 39:2, 39:3, 40:1
double [6] - 15:2, 21:8, 23:24, 35:12, 47:8
double-spaced [1] - 47:8
down [7] - 14:21, 14:25, 20:25, 22:21, 33:5, 44:21, 44:22
dozen [1] - 20:15
due [1] - 6:18
Dunlap [1] - 2:5
during [1] - 32:24

E

effect [1] - 23:5
eight [2] - 17:16, 35:17
either [5] - 23:25, 26:8, 31:16, 32:20, 41:15
election [1] - 25:10
Eley [2] - 1:21, 2:23
embedded [1] - 12:25
embodied [3] - 22:3, 22:6
encourage [2] - 23:14, 33:1
end [5] - 4:3, 25:10, 25:17, 29:20, 31:14
ends [1] - 47:17
entitled [10] - 12:14, 13:16, 20:22, 22:14, 22:17, 22:24, 28:23, 33:11, 41:21, 45:6
equation [1] - 41:17
Eric [2] - 2:6, 3:3
Esq [9] - 1:18, 1:21, 1:21, 2:3, 2:5, 2:6, 2:6, 2:10, 2:11
essentially [1] - 23:9
et [5] - 11:1, 11:2, 22:23, 36:5, 36:6
evaluates [1] - 8:18
event [1] - 41:19
evidence [1] - 44:24
exact [1] - 19:11
exactly [6] - 6:25, 11:9, 11:13, 18:4, 26:3, 37:24
example [5] - 7:23, 7:25, 13:16, 17:6, 34:12
except [2] - 10:24, 39:20
exchange [1] - 3:10
excuse [2] - 9:10, 29:7
Exhibit [3] - 18:2, 18:7, 34:16
exists [1] - 41:9
expect [3] - 23:22, 36:19, 36:21
expecting [1] - 37:2
expense [1] - 25:25
experimental [2] - 19:8, 19:10
expert [12] - 3:15, 3:21, 4:22, 5:4, 6:18, 8:5, 8:18, 8:25, 9:18, 9:22, 9:24, 32:20
experts [1] - 9:10
explain [4] - 32:21, 33:8, 36:8, 46:4

explained [3] - 18:17, 32:22, 41:13
explanation [3] - 29:5, 36:5, 46:7
explore [1] - 16:16
express [1] - 32:24
extent [3] - 12:21, 36:13, 41:9
extra [2] - 26:15, 26:19

F

face [1] - 12:20
fact [6] - 16:16, 18:5, 20:10, 34:24, 37:19, 40:22
facts [13] - 10:21, 10:25, 11:20, 11:21, 12:21, 12:22, 12:23, 12:25, 14:14, 14:15, 42:21, 43:5, 44:12
factual [3] - 13:12, 13:15, 23:19
fair [1] - 37:19
fairly [1] - 24:16
far [1] - 37:7
Farabow [10] - 2:5, 2:5, 3:3, 5:25, 6:2, 14:20, 14:21, 15:3, 15:4, 15:6
fashion [2] - 18:13, 44:11
feasors [2] - 41:15, 43:14
federal [1] - 45:1
fees [1] - 26:13
fence [2] - 26:23, 26:25
filed [1] - 43:4
fine [1] - 3:22
finer [1] - 45:8
Finger [1] - 1:18
Finnegan [2] - 2:5, 3:2
First [6] - 14:2, 18:15, 27:14, 31:8, 35:5, 42:17
first [9] - 3:16, 5:7, 10:4, 10:8, 13:23, 25:6, 38:19, 42:14, 46:3
five [3] - 21:8, 23:24, 47:7
flaw [1] - 19:22
flesh [1] - 28:16
flipping [1] - 17:10
fly [1] - 45:19
focus [1] - 15:16
folks [14] - 6:1, 8:4, 9:16, 22:20, 23:22, 24:12, 25:22, 25:25

37:2, 44:11, 44:15, 44:21, 45:8, 46:13
followed [1] - 15:11
following [1] - 2:17
Ford [3] - 2:5, 3:3, 14:20
forfeited [1] - 23:8
forget [1] - 38:12
form [2] - 18:15, 36:9
formed [2] - 34:19, 35:15
formulate [1] - 18:20
formulation [2] - 15:19, 18:25
forth [6] - 4:7, 10:15, 18:1, 18:7, 18:8, 30:10
forward [3] - 14:15, 45:25, 47:14
four [3] - 26:15, 26:19, 29:11
frame [2] - 18:19, 25:13
framework [1] - 44:25
frankly [1] - 6:20
freight [1] - 26:13
front [5] - 17:4, 17:5, 18:3, 35:7, 37:15
Fues [52] - 2:3, 3:3, 10:9, 10:11, 10:15, 11:8, 11:18, 12:16, 14:1, 16:9, 16:10, 16:11, 16:12, 16:21, 17:3, 17:7, 17:8, 17:14, 17:16, 17:18, 19:7, 19:13, 20:1, 20:24, 21:10, 21:14, 21:21, 21:24, 22:14, 23:12, 23:16, 24:10, 27:6, 27:9, 27:13, 28:1, 28:5, 28:20, 28:24, 31:5, 31:7, 32:2, 35:4, 35:5, 35:9, 37:1, 37:5, 38:1, 38:3, 40:19, 40:21, 46:25
full [5] - 8:25, 13:9, 14:14, 16:20
fully [1] - 16:16
function [1] - 16:6

G

Gaffigan [1] - 1:25
gap [1] - 13:15
Garrett [1] - 2:5
general [2] - 44:9, 44:23
generalized [1] - 32:13

generally [1] - 38:24
given [8] - 4:23, 9:18, 10:1, 10:20, 13:12, 16:19, 29:17, 29:20
glad [1] - 39:12
Goodwin [2] - 2:10, 3:4
great [1] - 38:5
Greg [1] - 2:23
Gregory [1] - 1:21
Gross [2] - 2:11, 3:5
group [2] - 7:19, 35:13
groups [1] - 35:13
guess [10] - 6:5, 8:8, 8:14, 12:10, 13:9, 20:4, 20:18, 22:8, 22:24, 26:22, 28:14, 31:19, 32:15, 32:19, 35:23, 39:21, 40:20, 46:1
guys [5] - 16:7, 26:12, 26:14, 37:18, 45:16

H

half [1] - 20:15
hand [2] - 20:20, 20:21
handle [1] - 8:8
hard [2] - 18:9, 32:10
harder [1] - 12:19
hear [13] - 8:3, 16:3, 19:10, 22:20, 31:22, 31:23, 34:1, 40:10, 42:14, 43:9, 43:11, 43:20, 43:22
Heard [1] - 29:25
heard [3] - 10:1, 23:15, 23:18
hearing [5] - 27:22, 31:10, 31:12, 38:13, 44:3
held [1] - 2:18
help [1] - 16:7
helpful [2] - 16:6, 45:3
Henderson [2] - 2:5, 3:3
Hercules [32] - 1:8, 2:8, 3:2, 3:14, 4:24, 5:13, 6:1, 6:20, 7:3, 7:18, 7:20, 8:11, 8:19, 8:20, 9:20, 9:23, 10:3, 22:20, 25:4, 37:3, 38:14, 39:5, 39:11, 39:14, 39:15, 40:10, 40:22, 42:19, 42:22, 43:4, 44:13, 46:23
Hercules' [1] - 6:5
Hi [1] - 2:19

hip [1] - 44:21
history [1] - 7:17
Hold[3] - 15:20, 15:23. 17:13
hold [4] - 15:22, 16:8, 19:3, 37:16
holding [1] - 15:21
hole [2] - 5:4 9:2
Honor[59] - 2:21, 2:25. 3:7. 3:21, 6:2. 6:4, 10:6. 10:10, 10:11, 11:14, 12:2, 14:1, 14:20. 14:21. 15:6 16:12 16:21. 17:8. 17:14. 20:1, 20:24, 21:10. 21:22, 23:12. 24:10, 25:5. 25:6. 26:3, 26:22, 27:2. 27:6. 28:5, 29:7. 30:5, 31:1. 31:7. 32:2, 33:21, 34:2. 35:5, 36:3, 37:5. 38:4 38:12. 38:23, 40:14, 40:20, 42:17, 43:12. 43:21, 43:25. 44:6 45:11. 46:3, 46:25. 47:4, 47:12 47:16
Honorable[1] - 1:15
hope [4] - 12:20, 32:22, 46:2, 47:5
hopefully [1] - 5:11
hoping [1] - 46:17
Horwitz[3] - 2:3, 2:25, 3:1
hours [1] - 30:1
house [2] - 12:4, 13:3
Hughes[4] - 11:17, 13:14, 15:5, 16:11
hypermer[10] - 22:2, 22:9 29:23 29:25. 30:4. 30:8, 30:11, 30:12, 31:13. 32:5
hypermers [2] - 14:24, 20:17

## I

ideal [2] - 28:17, 28:21
ideas [1] - 40:21
identification [1] - 4:23
identified [4] - 7:5. 8:20, 31:12
identifies [3] - 11:22 11:23 28:10
Identify [1] - 27:24. 28:7
Illinois [1] - 1:22
impeach [1] - 9:22

imply [1] - 35:24
impolite [1] - 16:4
important [2] - 28:11, 31:17
in-house [2] - 12:4, 13:3
inadequate [1] - 6:11
inappropriate [1] - 29:16
Inc [5] - 1:4. 1:8. 1:8, 2:8, 2:12
incomplete [1] - 5:3
incorporate [1] - 32:16
incorporated [1] - 12:7
indemnification [2] - 42:1, 43:7
indemnify [1] - 44:18
indemnity [5] - 38:11. 40:17. 41:9. 44:9, 45:4
independently [2] - 41:3, 42:22
indicate [1] - 35:16
indicated [1] - 17:9
indirect [1] - 28:7
induced [1] - 42:9
inducement [2] - 42:18, 43:16
Industries [2] - 1:8, 2:12
information [39] - 6:12, 8:18, 9:1, 9:4, 9:5, 9:9. 9:23, 12:7, 12:14, 13:12, 13:15. 13:21, 14:16, 15:11. 16:19 16:20. 17:22, 19:3 21:4 22:1 22:8, 22:12, 22:15, 22:19 23:4 23:17. 28:22. 29:20. 30:23, 31:8, 31:10, 32:7. 32:21, 35:11, 35:16. 36:4. 36:24. 37:20, 46:14
infringe [3] - 9:16 28:19, 34:18
infringement [14] - 6:9, 6:16. 8:6. 20:7. 31:21, 34:7 34:15, 36:9 36:14 38:18, 40:25. 42:10, 42:18, 44:4
infringers [3] - 42:10, 43:13, 43:19
Initial [2] - 6:18, 9:23
inserted [1] - 23:6
instance [2] - 20:18. 28:24

instances [1] - 16:23
Instruct [1] - 17:22
instructed [3] - 14:4 14:11 16:24
instruction [1] - 17:21
instructions [2] - 14:7, 14:9
intending [1] - 26:6
interaction [1] - 12:4
interest [2] - 29:8. 41:20
interested [2] - 23:25, 29:10
interesting [1] - 40:17
interests [5] - 40:11, 40:23, 41:1, 41:5
interject [1] - 21:10
interjected [1] - 12:16
interjecting [1] - 20:5
interjects [1] - 32:11
interrog [1] - 32:11
interrogatories [3] - 20:15, 33:1, 36:12
Interrogatory [12] - 14:18, 27:11, 28:18. 31:9, 31:15, 31:25. 32:8, 32:17, 33:9, 34:11, 35:6. 36:16
involve [1] - 4:1
Involved [6] - 12:5, 12:12, 14:11 20:11. 20:20
involvement [3] - 14:5, 14:10. 43:3
irrelevant [2] - 44:10. 45:24
issue [29] - 4:20. 15:5. 20:14, 22:13. 24:13, 24:15. 24:18. 24:19, 25:4, 25:15 25:20 26:11, 29:9, 31:17, 32:4, 32:12 33:19. 34:6, 38:7, 39:22, 40:17, 41:13, 41:23. 43:16, 44:20, 45:20, 46:15, 46:23, 46:24
Issues [7] - 3:12. 9:13, 16:7, 25:24 27:10. 42:12, 46:25
item [2] - 46:5
Item [2] - 4:13. 17:2
itself [4] - 8:20, 9:23, 18:17, 20:5

## J

Joann[3] - 2:6 3:3. 25:5
Joint [2] - 41:6. 41:8, 41:10, 41:14, 41:15,

41:20 43:10 43:13. 43:19, 43:23, 44:16
jointly [3] - 41:16. 43:24, 44:4
Jordan[2] - 1:15, 2:19
Jr[1] - 2:5
Judge[1] - 2:19
judgment [1] - 28:9
July[6] - 1:12. 3:11. 4:7, 6:19, 30:6
juncture [1] - 32:19
justified [1] - 6:19

## K

Kaji[1] - 1:9
keep [1] - 34:25
Kent[1] - 1:15
kind [5] - 31:16 35:3. 37:23, 37:24. 41:9
known [1] - 29:24

## L

lab [1] - 23:9
laid [4] - 3:24, 6:5, 16:17 42:21
last [6] - 4:15. 6:13 38:10. 38:12, 42:6, 46:23
lastly [1] - 41:18
law [1] - 43:13
lawsuit [1] - 15:19 18:20 19:1, 20:14 40:24. 41:4, 41:6. 41:8
lawyer[5] - 10:25. 13:1 13:4 13:19 13:23
lawyers [2] - 9:21. 23:5
lays [1] - 14:15
Layton[2] - 1:18, 2:22
lead [2] - 44:24. 46:18
learned [1] - 42:5
leash [1] - 37:16
least [3] - 20:15, 21:3, 32:3
leave [2] - 5:6 28:19
leaving [1] - 4:6
legal [5] - 13:8 13:20, 19:21. 19:25, 42:8
length [1] - 31:23
less [1] - 46:17
letter [15] - 4:12, 5:20, 6:6 8:23, 10:5, 10:16, 13:1, 13:2, 14:9, 16:22. 17:4. 27:11. 27:16. 30:5,

39:10
letters [3] - 3:10, 5:23. 39:2
level [4] - 5:7 24:9 35:2, 42:4
Leydig[2] - 1:20, 2:23
liability [2] - 41:14. 43:11
liable [3] - 41:16, 43:24. 44:5
life [1] - 33:5
limitation [1] - 27:19
limitations [3] - 27:21, 28:12. 32:6
limited [3] - 23:6, 24:4. 32:14
limits [2] - 45:5. 45:25
line [7] - 2:20, 3:2, 17:20, 31:6. 32:15, 46:13, 46:15
lines [2] - 17:16. 32:14
linked [3] - 11:1 34:22. 36:1
linker [1] - 30:13
linking [21] - 8:12, 8:21. 11:22, 14:24, 19:17, 20:17, 22:2, 22:9. 22:16 28:3, 28:10 28:25. 29:2 29:10. 30:7, 30:9, 31:13, 34:19. 35:10, 35:14, 35:25
links [6] - 4:25, 7:22, 30:11. 34:13, 34:14, 34:25
list [1] - 16:23
listed [1] - 30:5
Llp[3] - 2:2, 2:5. 2:10
look [12] - 8:4, 18:5. 21:6. 23:2 23:10 23:13, 24:11, 31:3. 32:23. 43:6, 47:7, 47:14
Looking[1] - 17:25
looking [3] - 21:17 35:8, 37:23
loop [1] - 31:16
lose [1] - 38:21
Ltd[1] - 1:20
lump [1] - 40:10

## M

major [1] - 5:17
manufacture [1] - 43:1
manufactured [1] - 43:1
Marta [2] - 2:11, 3:4
matter [4] - 10:20. 18:5 24:2, 26:17

matters [1] - 14:10
Mayer [2] - 1:20, 2:23
mean [4] - 19:15,
25:25, 32:5, 43:18
meaningful [1] - 26:19
means [1] - 22:23
mechanism [1] -
30:10
meet [1] - 40:5
memorialization [1] -
23:5
memorialized [2] -
23:17, 23:21
memory [1] - 21:1
merely [1] - 6:17
Merit [1] - 1:25
met [1] - 27:21
Michael [1] - 1:18
microbead [6] - 34:24,
35:19, 36:7
might [2] - 21:11, 45:6
million [2] - 30:2,
30:16
mind [3] - 21:17,
21:18, 36:22
minimal [2] - 29:5,
33:10
minimum [1] - 47:9
minute [4] - 6:11,
11:5, 16:11, 20:21
mispronouncing [1] -
16:13
misunderstood [1] -
7:13
molar [5] - 17:12,
18:12, 22:3, 30:2,
30:22
molecular [1] - 30:22
molecules [1] - 28:8
moment [2] - 6:14,
17:13
money [1] - 39:5
month [2] - 5:9, 25:21
months [2] - 25:10,
25:13, 39:2
morning [5] - 2:21,
2:25, 3:7, 3:8, 3:9
most [3] - 16:5, 33:16,
40:25
motion [1] - 6:14
motivated [1] - 42:2
mouth [1] - 13:22
move [2] - 12:18,
45:10
moving [2] - 10:5,
24:20
multiply [1] - 30:21

**N**

Nacl [2] - 17:12, 18:12
name [1] - 16:14,
29:23
nature [1] - 30:4, 42:1
nearly [1] - 5:16
need [10] - 7:9, 8:4,
8:13, 16:4, 23:23,
25:15, 26:7, 28:23,
46:13, 47:6
needs [2] - 9:20, 46:12
Neth [29] - 2:6, 3:3,
3:7, 6:2, 6:3, 6:4,
6:25, 10:5, 10:9,
25:5, 26:3, 26:22,
27:2, 27:3, 34:2,
40:20, 42:16, 42:17,
43:11, 43:12, 43:21,
43:25, 44:2, 44:6,
45:10, 45:11, 46:10,
47:12
never [2] - 14:21,
25:12, 25:14, 34:11
38:15, 38:20, 41:13
New [2] - 2:11
Next [2] - 24:13, 27:3
next [7] - 10:3, 24:13,
24:15, 27:5, 33:19,
38:7, 40:4
nine [1] - 17:16
None [1] - 19:6
none [1] - 20:25
noninfringement [2] -
34:8, 35:21
nose [1] - 33:3
notably [1] - 40:25
note [2] - 4:15, 42:8
Note [1] - 2:17
notebook [1] - 23:10
notebooks [2] - 14:2
20:25
noted [2] - 4:12, 34:8
nothing [3] - 10:22,
23:3, 45:1
noticed [1] - 26:5
notion [3] - 44:9
44:22, 45:4
number [3] - 4:25,
14:8, 42:12
nutshell [1] - 6:7

**O**

Object [1] - 17:21
objection [2] - 18:15,
19:7
obviously [2] - 5:3,
12:7
occur [1] - 43:2

occurred [1] - 25:1
occurs [1] - 8:21
October [1] - 4:3
off-line [2] - 46:13,
46:15
offered [2] - 25:10,
25:11
on-the-fly [1] - 45:19
one [33] - 3:13, 3:14,
3:16, 5:9, 8:12, 9:13,
10:4, 10:7, 12:19,
14:25, 17:12, 18:12
20:20, 21:11, 21:17,
22:5, 24:16, 27:3
27:4, 28:18, 28:19,
28:20, 29:13, 32:9,
33:21, 34:5, 38:10,
39:20, 41:11, 41:13
44:17, 44:21
One [1] - 17:8
ones [2] - 5:1
ooo [1] - 2:15
open [3] - 4:6, 5:12,
5:17
opened [1] - 9:2
opponent [2] - 8:3
19:19
opportunity [1] -
16:15
opposed [2] - 16:11,
26:1
oral [1] - 45:19
order [4] - 3:25, 5:16
8:5, 16:5
ought [4] - 8:9, 8:25
28:14, 35:2
outside [1] - 22:25
overall [2] - 3:24, 9:8
overlooked [3] -
38:24, 38:25
own [1] - 8:13

**P**

page [14] - 4:15,
16:22, 16:23, 17:2,
17:9, 17:14, 17:15,
18:8, 21:25, 27:11,
30:15, 34:16, 35:8
pages [4] - 21:8,
23:24, 35:17, 47:8
papers [1] - 6:5
paragraph [1] - 4:15
pardon [1] - 15:6
parity [1] - 36:22
part [5] - 18:21, 32:2,
32:3, 42:19, 42:24
particle [2] - 35:19,
36:7
particularly [1] - 23:25

parties [5] - 27:23
33:1, 41:6, 44:14,
46:18
parts [3] - 30:2, 30:16
30:22
party [1] - 13:12
past [1] - 12:18
patent [5] - 20:4, 24:3,
24:4, 35:24, 43:13
patents [5] - 35:10,
35:14, 35:20, 42:24
pay [3] - 26:13, 26:20
penetrating [1] -
45:18
people [7] - 8:12
16:3, 22:16, 25:21,
25:22, 26:10, 26:12
people's [1] - 36:21
per [1] - 30:2, 30:16
percent [3] - 15:11
17:12, 18:12
Perform [4] - 30:11,
34:19, 42:5, 42:22
performed [2] - 8:19,
14:3
perhaps [1] - 34:23
person [1] - 13:5
perspective [1] - 3:22
phase [2] - 4:3, 24:20
Phone [1] - 33:23
phone [3] - 34:1, 34:3
46:16
pick [1] - 16:1
piece [1] - 36:23
pinned [1] - 33:5
place [5] - 14:25,
22:22, 23:16, 23:20,
25:16
places [1] - 22:5,
23:16
plaintiff [7] - 2:22,
3:13, 6:16, 11:5,
26:17, 37:2, 47:9
Plaintiff [1] - 1:5
plaintiff's [3] - 25:11,
32:11, 33:6
plaintiffs [3] - 3:19,
6:8, 42:18
play [1] - 26:21
pled [1] - 42:18
plenty [1] - 4:9
Pm [1] - 47:17
point [20] - 7:15, 8:9,
12:2, 12:10, 20:24
21:21, 22:8, 24:6,
32:18, 32:23, 32:25,
34:10, 35:23, 40:8,
41:2, 41:4, 44:13,
45:8, 45:21, 46:20
points [2] - 31:7, 35:5

polymer [2] - 17:12,
18:12
position [18] - 6:5,
6:9, 8:6, 8:14, 10:15,
11:9, 11:11, 11:16,
23:24, 28:2, 31:5,
31:22, 32:19, 33:12,
34:7, 34:8, 41:11
42:10
positions [5] - 6:16,
6:18, 6:20, 21:8
40:11
possibility [1] - 4:6
Potter [2] - 2:2, 3:1
practical [2] - 25:20,
26:16
pre [9] - 10:12, 10:23,
20:14, 27:9, 27:18,
31:13, 31:17, 31:19,
47:11
pre-suit [9] - 10:12
10:23, 20:14, 27:9,
27:18, 31:13, 31:17,
31:19, 47:11
precedent [3] - 23:25,
24:8, 42:9
predicate [1] - 18:16
preparation [3] - 12:5
14:5, 20:11
prepare [4] - 17:11,
17:18, 18:11, 19:16
prepared [8] - 4:19,
5:2, 8:22, 13:13,
20:2, 23:2, 38:1,
45:23
preparing [1] - 12:10
present [2] - 15:19,
34:21
presume [1] - 37:8
principle [1] - 36:22
print [1] - 33:2
privilege [10] - 10:19,
13:7, 13:22, 13:24,
14:8, 15:1, 18:14,
20:8, 21:9, 23:9,
25:24, 26:11, 41:20,
42:14, 45:17, 46:4,
47:10
privileged [6] - 15:12,
17:22, 18:24, 19:10,
22:4, 45:7
privity [3] - 41:13
41:23
Privity [1] - 41:25
problem [7] - 31:2,
38:25, 39:8, 39:9,
39:13, 39:14, 39:15
procedure [1] - 15:11
procedures [2] -
15:14, 30:21

proceeding [1] - 33:3
Procter [1] - 3:4
Proctor [1] - 2:10
produce [1] - 11:24
produced [3] - 7:6,
7:12 24:3
product [12] - 11:21,
28:4. 29:3, 34:18.
34:19, 35:15, 35:19.
36:1, 42:5, 42:22,
42:25, 43:3
products [1] - 5:1
proof [1] - 21:15
proposal [1] - 25:14
proposed [1] - 4:8
protected [1] - 12:22
protocol [13] - 13:17.
13:18, 13:20, 16:18.
16:24. 18:1, 18:3.
18:6, 18:7. 18:12,
18:17, 20:6
prove [1] - 44:4
provide [4] - 31:10.
33:13, 45:1. 46:6
provided [6] - 6:6. 9:9,
9:10, 14:16 32:21,
36:6
providing [2] - 6:8,
6:16
put [11] - 6:17. 8:7,
8:9, 8:11, 10:15.
26:9, 26:17, 29:23,
30:19. 34:11, 45:8
putting [2] - 9:13,
13:22

Q

quantification [2] -
7:21, 9:1
quantified [1] - 4:25
questioning [1] -
16:17
questions [6] - 16:23,
16:25 19:14 20:2.
25:23, 37:24
quick [1] - 41:24
quickly [3] - 12:19
21:11. 31:8
quite [2] - 12:3, 25:8
quote [1] - 23:15

R

raise [3] - 10:4. 33:21,
34:5
raised [1] - 3:13
raises [2] - 40:16, 43:6
ran [1] - 8:19

range [2] - 22:3. 29:3
rather [4] - 4:4. 27:15.
27:19. 29:6
ratio [1] - 30:23
re [1] - 40:2
re-read [1] - 40:2
reach [1] - 12:2
reacting [1] - 30:14
reactive [2] - 35:12.
35:13
reactivity [2] - 30:4,
36:5
Reactivity [1] - 30:8
read [10] - 5:23, 6:4,
10:1, 10:17 11:3,
11:12, 36:20, 37:21,
37:22 40:2
reading [1] - 4:16
ready [1] - 18:4
real [2] - 21:10, 41:24
really [6] - 10:19, 23:8,
26:5, 28:10, 41:11,
46:12
reason [5] - 8:7,
13:18, 15:1. 32:25,
44:19
reasonably [1] - 44:23
reasoning [1] - 19:22
rebuttal [1] - 23:19
received [1] - 38:15
recent [1] - 42:3
recite [1] - 32:15
recollection [1] - 7:8
recommendation [1] -
18:22
record [4] - 5:3 8:25.
11:19 23:6
reduce [1] - 33:8
reduced [1] - 31:25
reference [1] - 32:16
referring [4] - 4:21,
7:1, 7:7, 7:10
reflect [1] - 42:11
refuse [1] - 45:14
refusing [1] - 45:13
regard [3] - 8:16,
23:11. 41:5
Registered [1] - 1:25
regular [1] - 46:5
reject [2] - 44:10, 45:5
related [4] - 15:18,
33:22, 34:5 41:12
relates [2] - 15:12.
42:1
relation [1] - 24:5
relationship [2] - 42:7
44:14
relative [2] - 34:18.
41:25

relatively [2] - 12:19
33:10
relevance [4] - 12:6.
42:13, 43:8. 44:25
relevant [6] - 24:6.
41:23, 43:16, 43:17
45:23
relied [1] - 20:14
reluctant [1] - 33:2
rely [1] - 24:17
relying [4] - 12:9.
12:13, 20:16, 22:2
remedy [1] - 32:23
remember [2] - 21:2,
36:3
replies [1] - 23:23
report [3] - 9:3. 9:18,
9:24
Reporter [1] - 1:25
Reporters [2] - 2:17
reports [3] - 4:22, 5:4,
6:18
representation [1] -
13:13
representative [1] -
27:16
request [1] - 46:14
requests [1] - 40:9
require [1] - 4:14
required [3] - 9:24.
24:2, 35:25
resolution [1] - 46:18
resolve [1] - 16:7
respect [5] - 8:6,
10:25, 14:3, 25:23,
28:3. 32:12, 35:23,
40:17, 41:8. 41:22.
47:10
respond [3] - 6:21.
10:18. 47:15
responded [2] - 25:12,
25:14
responding [1] -
21:13, 41:4
response [17] - 11:7,
14:18. 16:20, 20:4,
28:17, 28:18 28:22,
29:17, 31:9. 32:8
32:16. 33:9, 34:9,
34:17, 35:6. 37:3,
40:19
responses [6] - 6:11
34:6, 34:11. 38:19.
39:8, 39:9
responsive [2] - 5:20,
6:6
results [7] - 11:25,
12:8, 15:15. 20:6,
20:8, 20:12
revealed [1] - 19:11

rheological [3] -
27:20 28:6, 28:11
Rich [1] - 3:1
Richard [1] - 2:3
Richards [2] - 1:18
2:22
ringing [2] - 34:1, 34:3
rings [1] - 33:23
risk [1] - 26:9
role [2] - 13:4
rule [1] - 35:3
rules [1] - 45:1
ruling [2] - 37:23,
45:21
run [1] - 14:6

S

salami [1] - 20:19
sample [7] - 12:5.
17:12 17:18 18:11,
19:9. 20:11, 20:12
samples [5] - 12:11,
14:4. 14:6, 19:16.
20:2
sand [2] - 8:9. 8:11
save [1] - 11:11
saw [1] - 27:15
schedule [9] - 3:15.
3:22. 3:24, 4:4, 4:10.
4:14, 4:17, 9:18.
9:25
scheduled [1] - 5:10
scheduling [1] - 3:25
scheme [1] - 9:8
scientific [5] - 6:23
13:21, 22:15. 23:7,
42:4
scientist [1] - 13:5
scientists [1] - 8:19
screen [1] - 21:20
sea [1] - 43:9
second [5] - 15:23,
16:8 27:17, 35:20.
42:20
section [1] - 4:15
see [11] - 6:20. 9:25,
17:11, 22:24 23:3.
23:10, 23:22, 24:8.
26:15, 26:16. 30:4
seeking [2] - 10:13.
13:8
seem [1] - 15:16
send [1] - 39:9
sense [1] - 28:6
sensible [2] - 26:2.
46:18
sent [3] - 4:13, 14:23.
14:25

September [1] - 4:8
series [2] - 5:9. 20:2
set [7] - 4:7, 18:1,
18:7, 18:8, 24:22.
42:11. 46:6
setting [1] - 46:20
seven [2] - 29:25,
35:17
several [2] - 25:10
43:10
severally [2] - 41:16.
43:24
Shandler [6] - 1:18
2:21, 2:22, 3:17,
3:18. 4:12
share [1] - 45:8
shield [1] - 20:9
shift [1] - 4:18
shifting [1] - 3:13
short [4] - 13:23.
36:18, 37:13, 37:16
show [3] - 29:1, 29:2.
42:9
showed [1] - 14:22
showing [1] - 30:9
shown [1] - 11:1
shows [1] - 14:24
side [9] - 22:21. 23:7.
32:11, 33:6, 33:11,
37:22, 42:13 44:17
sides [3] - 26:25,
36:19, 36:21
significant [3] - 4:23.
26:11, 26:16
sit [1] - 21:1
sitting [1] - 18:3
six [3] - 34:16, 35:8,
35:17
skeleton [1] - 5:7
skilled [1] - 9:21
slice [1] - 20:19
slides [1] - 29:22
sold [1] - 42:23
sometimes [1] - 16:2
sorry [5] - 15:4, 34:2,
39:4
sort [1] - 26:22
sounds [2] - 13:11.
39:24
spaced [3] - 21:8
23:24. 47:8
speakerphone [1] -
15:24
speaking [6] - 5:25.
15:7, 25:3. 38:16
40:19, 46:24
special [1] - 29:24
Specialty [2] - 1:4,
1:23
specific [19] - 6:22,

13:25. 16:23, 17:1,
  17:6, 21:7, 21:18,
  22:18. 27:23  28:3
  31:21  32:14  32:17.
  35:11. 36:23. 40:9.
  45:1  45:21, 46:14
specifically [2] - 14:3,
  27:19
specificity [1] - 35:2,
  37:2, 37:17
specifics [1] - 45:6
spend [1] - 36:20
spots [1] - 40:16
stake [1] - 8:9
standard [1] - 46:5
start [3] - 3:15, 21:16,
  46:20
started [1] - 3:11
startling [1] - 3:13
state [1] - 8:5
statement [3] - 8:5.
  27:20. 32:14
States [1] - 1:1
step [1] - 46:4
stepped [1] - 13:3
sticking [1] - 10:2
still [2] - 28:1, 32:18
stipulate [1] - 43:19
stop [3] - 7:24, 34:1.
  46:12
Stop [2] - 46:10
straightforward [1] -
  24:16
strategy [2] - 19:21,
  19:25
strikes [1] - 44:23
stripping [1] - 13:24
structure [4] - 35:1,
  35:16  35:25
stuff [4] - 14:22, 23:9,
  38:19, 46:21
subject [3] - 9:3,
  27:22. 46:12
submissions [3] -
  23:23, 47:8. 47:14
submit [1] - 23:14
substitution [1] - 23:9
sufficient [2] - 32:13,
  44:15
suggesting [1] - 4:18
suit [12] - 10:12,
  10:23, 20:14, 27:9,
  27:18, 28:13, 31:13,
  31:17. 31:19, 35:10.
  35:20, 47:11
supplement [6] - 9:20.
  9:22, 31:15, 38:14.
  39:12. 39:25
supplemental [2] -
  34:9, 34:17

supplementation [6] -
  4:17. 4:19  5:8. 5:15,
  9:19, 27:10
supplemented [1] -
  29:22
suppose [1] - 24:15
supposed [1] - 38:13
supposedly [3] -
  11:22, 11:25, 29:11
Supposedly [1] -
  11:23
surfactant [1] - 29:24
surprised [1] - 40:1
sword [1] - 20:8
sympathy [1] - 25:20
system [1] - 29:25

T

table [1] - 24:20
talks [1] - 11:25
teaming [1] - 15:3
technical [2] - 14:10,
  16:18
technically [1] - 16:2
tee [1] - 3:16
teed [2] - 37:15, 46:24
Telephone [2] - 1:13,
  47:17
telephone [1] - 2:17
tend [1] - 25:18
term [1] - 41:3
terribly [1] - 45:3
test [5] - 14:23, 19:9
  21:2, 29:1  30:9.
  36:5
testified [9] - 7:8,
  20:16, 22:5  22:6,
  29:25, 30:1, 30:3,
  30:7. 30:18
testify [4] - 5:2. 5:22
  8:22  8:24
testimony [4] - 7:3,
  18:6, 21:12. 21:25
testing [39] - 4:24.
  5:21, 6:23. 7:14,
  7:19, 10:12, 10:23,
  11:21. 11:24. 12:1.
  12:8, 12:12  12:17,
  12:24. 13:16, 13:17,
  13:18, 13:20, 14:2,
  15:12, 16:16, 16:18,
  16:24, 20:5  20:12,
  20:15, 20:17, 20:20,
  24:2. 27:9  27:18,
  27:20. 28:6. 31:13.
  31:17. 31:19. 47:10,
  47:11
tests [21] - 7:4, 7:7.
  7:9, 8:19  8:21. 12:6.

12:13  14:6  15:14
  15:15, 18:20, 19:1,
  19:4  21:2  28:8
  28:11  29:2, 29:2,
  36:5
themselves [4] - 11:6,
  12:17, 23:6, 33:2
therefore [3] - 13:5.
  22:22, 27:21, 44:24.
  45:24
They've [2] - 26:4,
  29:24
they've [3] - 27:18,
  31:22, 45:21
thin [1] - 20:19
third [1] - 35:23
Thomas [1] - 2:10
Thompson [71] - 1:21,
  2:23  3:18  3:20.
  3:21, 4:12. 4:21,
  5:19, 5:24, 6:22,
  7:14. 7:16, 8:2, 8:17,
  9:7, 11:4, 11:12.
  11:13, 15:9. 15:21,
  15:23, 15:24, 15:25.
  16:15, 17:5. 17:24
  17:25  18:15, 19:3,
  19:6, 19:10, 23:14,
  24:13. 24:15  26:23.
  29:12, 29:14, 29:19.
  31:1, 31:5, 33:14,
  33:15, 33:20, 33:21
  33:24  34:5, 36:3,
  36:11, 36:16, 36:25
  37:7, 37:23, 38:8,
  38:9, 38:18, 39:7,
  39:21, 40:8. 40:15,
  41:12. 41:23  41:25
  42:20, 43:17, 43:18,
  45:12. 45:13, 46:3.
  46:14, 47:1. 47:3
three [2] - 16:23,
  27:11
ticking [1] - 37:13
tied [1] - 44:21
ties [1] - 27:19
timing [2] - 24:19,
  37:8
today [1] - 47:13
together [3] - 28:9,
  42:2, 42:4
Tom [2] - 3:4. 29:7
took [1] - 15:13
top [1] - 16:22
topic [3] - 7:20, 34:9.
  45:24
tort [2] - 41:15, 43:13
tort-feasors [1] -
  41:15
total [2] - 34:17, 43:1

totally [1] - 43:1
touched [1] - 29:19
toward [1] - 25:16
transcript [3] - 17:10
  31:14  40:3
treated [1] - 15:12
trial [1] - 33:4
tried [3] - 14:9. 32:24
  45:9
true [1] - 15:10
try [1] - 27:24. 28:15,
  36:20, 38:3
trying [10] - 6:17,
  10:19  16:3  16:4
  16:7, 18:23. 19:11.
  19:14. 31:20. 41:2
turn [3] - 10:3  13:21
  38:7
turnaround [1] - 37:19
turning [1] - 21:19
turns [1] - 26:10
tutorial [1] - 29:21
twice [6] - 24:22,
  25:25, 26:2, 26:7
  26:14, 26:18
two [15] - 4:15. 7:3,
  14:1. 16:11, 16:22,
  17:2. 25:13  31:7
  35:12. 35:13  37:19.
  38:1. 38:3. 40:4
  44:11
typically [1] - 24:2

U

under [7] - 14:6.
  15:15, 17:18, 20:3.
  33:3. 42:25. 45:14
underlying [1] - 10:21
understandings [1] -
  41:10
understood [4] - 6:24,
  27:23. 32:1, 43:8
undertook [1] - 19:9
undue [1] - 5:8
unduly [1] - 33:6
United [1] - 1:1
unless [3] - 13:13,
  32:14
up [15] - 3:16, 4:4. 9:2.
  14:22, 15:20. 16:1.
  16:8, 24:19, 26:24.
  27:5, 37:15. 41:10.
  42:11. 43:7, 46:24
Usdcj [1] - 1:15

V

versa [1] - 42:19

vice [1] - 42:19
view [3] - 6:9. 25:9.
  28:18
viewed [1] - 23:7
vis [3] - 6:11. 42:19
vis-a-vis [2] - 6:11
  42:19
Volt [2] - 1:20. 2:23

W

wait [3] - 20:21. 24:25,
  25:7
waiting [1] - 25:8
waive [1] - 25:24
wants [2] - 6:20  11:5
Washington [1] - 2:7
water [1] - 29:13
waved [1] - 33:3
Wednesday [2] - 1:12.
  24:12
week [6] - 6:13, 23:22.
  24:24. 42:6, 46:16,
  47:7
weeks [8] - 7:4. 26:15,
  26:19, 33:17, 37:19.
  38:1, 38:3. 40:4
weigh [1] - 11:5
weight [2] - 30:20
  30:22
whatsoever [1] - 19:6
Whoa [1] - 15:24
whole [3] - 29:3.
  34:21, 34:25
willfulness [1] - 24:18
willing [4] - 10:20
  10:23. 11:2, 37:3
Wilmington [1] - 1:12
win [1] - 45:23
withholding [3] -
  11:20  15:1. 21:4
witness [14] - 5:2,
  5:22, 7:3, 7:8. 7:18.
  8:21. 14:4, 14:11
  15:13, 16:24. 17:23.
  20:16  21:1  22:7
witnesses [2] - 26:4,
  26:5
word [1] - 10:21
words [1] - 23:18
wrapped [1] - 41:10
write [4] - 33:9. 39:8,
  39:15
writes [1] - 39:2
writing [1] - 31:25
written [4] - 14:24.
  20:25. 22:21, 39:7
wrote [1] - 14:21

## Y

year[1] - 4:1
York[2] - 2:11

# EXHIBIT B

LAW OFFICES

# LEYDIG, VOIT & MAYER, LTD.

A PROFESSIONAL CORPORATION

JAMES B. MUSKAL
DENNIS R. SCHLEMMER
GORDON R. COONS
JOHN W KOZAK
MARK E. PHELPS
H. MICHAEL HARTMANN
BRUCE M GAGALA
CHARLES H. MOTTIER
JOHN KILYK, JR.
ROBERT F. GREEN
JOHN B. CONKLIN
JAMES D. ZALEWA
MARK J. LISS
JOHN M BELZ*
BRETT A. HESTERBERG
JEFFREY A WYAND*
PAUL J. KORNICZKY
PAMELA J RUSCHAU
STEVEN P. PETERSEN
JOHN M. AUGUSTYN
CHRISTOPHER T GRIFFITH
WESLEY O MUELLER
JEREMY M JAY*
LYNN A. SULLIVAN
JEFFREY B. BURGAN
ELEY O THOMPSON
MARK JOY
DAVID M. AIRAN
XAVIER PILLAI
Y KURT CHANG
GREGORY C. BAYS
STEVEN H SKLAR
TAMARA A MILLER
M. DANIEL HEFNER
SALIM A. HASAN
ROGER D WYLIE***

KENNETH P. SPINA
PHILLIP M. PIPPENGER
ANNE E. NAFFZIGER***
VLADAN M. VASILJEVIC
CLAUDIA W STANGLE
PAUL J FILBIN
JOHN L. GASE
JEREMY C. LOWE
JOHN T. BRETSCHER
ROBERT T WITTMANN
SHANNON D. SCHEMEL*
ANDREW M. ALUL
J. KARL GROSS
SETH A. ROSE
SAUMIL S MEHTA
JASON T MURATA
SCOTT H SCHULHOF
VICTOR L SONG
AARON R. FEIGELSON
A. WESLEY FERREBEE*
L. SCOTT BEALL
LISA K KELLY
STEPHEN R. AUTEN
MARK A. NIEDS
CAROLINE L STEVENS
DOUGLAS A. ROBINSON
NANCY J GETTEL
PETER H DOMER
JEFFREY N. TURNER
SUSAN L. STEELE
STEPHANIE M. LAWLEY**
KURT T. BUECHLE
KEVIN C PARKS
THOMAS K McBRIDE JR
JENNIFER M. DUK
MARCOS P RIVAS**

TWO PRUDENTIAL PLAZA, SUITE 4900
CHICAGO, ILLINOIS 60601-6780

—————

(312) 616-5600
FACSIMILE: (312) 616-5700
WWW.LEYDIG.COM

WASHINGTON OFFICE
700 THIRTEENTH STREET, N.W., SUITE 300
WASHINGTON, D C. 20005-3960
(202) 737-6770
FACSIMILE: (202) 737-6776

ROCKFORD OFFICE
6815 WEAVER ROAD SUITE 300
ROCKFORD ILLINOIS 61114-8018
(815) 963-7661
FACSIMILE: (815) 963-7664

SEATTLE OFFICE
1420 FIFTH AVENUE, SUITE 2200
SEATTLE WASHINGTON 98101-1346
(206) 521-5985
FACSIMILE: (206) 224-3557

OF COUNSEL

C. FREDERICK LEYDIG
THEODORE W. ANDERSON     JOHN E. ROSENQUIST
JOHN P. BUNDOCK, JR.*     CHARLES S. OSLAKOVIC*
BERTON SCOTT SHEPPARD     JOHN D FOSTER*

TECHNICAL ADVISORS

HEATHER R. KISSLING     KRISTI A. CALVERT
KRISTEN J HARRELL     DEREK W. BARNETT
MELISSA E. KOLOM     KATHLEEN H HELM-BYCHOWSKI
CARYN C BORG-BREEN     FRANCIS J KOSZYK
RACHEL L. MEJDRICH     ELIZABETH M CROMPTON
JULIE J. HONG     JASON A. MILLER
RICHARD P DODSON***

ALL RESIDENT IN CHICAGO EXCEPT AS NOTED
*RESIDENT IN WASHINGTON OFFICE     *ADMITTED IN VIRGINIA ONLY
**RESIDENT IN ROCKFORD OFFICE     **ADMITTED IN MASSACHUSETTS ONLY
***RESIDENT IN SEATTLE OFFICE

July 26, 2005

*VIA FACSIMILE
CONFIRMATION BY
FIRST CLASS MAIL*

Joann M. Neth, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

> Re:   **Ciba Specialty Corporation v. Hercules Inc. et al.
> C.A. No. 04-293 (KAJ)**

Dear Joann:

Hercules requested that Ciba respond today to Hercules' inquiry about three of Ciba's five expert reports. Hercules does not complain about the expert reports of Drs. Gilbert and King. Such reports provide details about the chemistry and nature of the PerForm® product demonstrating infringement. Indeed, as has been addressed with you on several occasions and before the Court, Ciba expects that further discovery will further establish infringement and the fact that defendants knew they were infringing all along.

As regards the expert report of Michael Tate, we remind you that defendants chose to delay the Rule 30(b)(6) depositions on damages until after expert reports were prepared. Further, as explained in the letter specifically to damages also being sent today, the information provided by Hercules thus far in discovery does not appear to fully comply with Ciba's document requests. Indeed, the documents provide no intelligible information on the damages issue. Damages calculations necessarily involve information from defendants; and, in the present situation, defendants have not provided adequate information. As such information is revealed in discovery and as provided by the Court, Mr. Tate will of course supplement his report.

Joann M. Neth, Esq.
July 26, 2005
Page 2

As regards Professor Wagner, we have again reviewed his report with an eye towards its substance, opinions, outlines of testimony and conclusions expressed therein. After our review, we are uncertain as to your assertions that the report is "wholly inadequate." Perhaps you could provide us with more specificity, so that we may address any specific issues you may have with Professor Wagner's report. Right now, we are uncertain of your concerns though we certainly will work with you to address any legitimate concerns.

Mr. Goolkasian's report is broken into two sections. The first part deals with patent office procedures generally, and the second part deals with specific communications of Cytec to and from the patent office, and the implications of such activities. Given that Hercules has added inequitable conduct to this case in addition to its validity positions, the second half of Mr. Goolkasian's report is specific to such issues and would not be covered by general presentations regarding patent procedure akin to the Court's presentation. While defendants' wish to strike down the very patents sold to Ciba for obvious reasons, Ciba should be entitled to protect its investment. In this regard, an understanding of what was before the examiner, what was said by Cytec and how it was evaluated are important to a complete understanding of Hercules' assertions of invalidity and unenforceability.

Given that Hercules strenuously asserted that the expert reports had to be provided at this early time before any substantial deposition discovery has been provided, it seems inappropriate for Hercules to be asserting now that Ciba's expert reports must be absolutely complete and cannot be supplemented as discovery progresses, which is what your argument comes down to in substance. We do not believe that the court envisioned a series of motions being filed challenging the completeness of the expert reports when virtually no depositions have taken place yet. Indeed, the schedule provides for a time to make similar types of objections to the expert reports after the close of discovery.

Ciba is certainly willing to address any concerns you may have regarding the expert reports, either through supplementation or through some other means, but we need you to be more specific in the first instance. As it stands now, we are uncertain of your specific complaints.

We look forward to hearing from you.

Very truly yours,

LEYDIG, VOIT & MAYER, LTD.

By: _____
        Eley O. Thompson

Joann M. Neth, Esq.
July 26, 2005
Page 3


cc:    Thomas L. Creel, P.C.
       Richard L. Horowitz, Esq.
       Chad M. Shandler, Esq.

# EXHIBIT C

LAW OFFICES

# LEYDIG, VOIT & MAYER, LTD.

A PROFESSIONAL CORPORATION

JAMES B. MUSKAL
DENNIS R. SCHLEMMER
GORDON R. COONS
JOHN W KOZAK
MARK E. PHELPS
H. MICHAEL HARTMANN
BRUCE M GAGALA
CHARLES H HOTTIER
JOHN KILYK, JR.
ROBERT F. GREEN
JOHN B. CONKLIN
JAMES D. ZALEWA
MARK J. LISS
JOHN M BELZ*
BRETT A. HESTERBERG
JEFFREY A WYAND*
PAUL J. KORNICZKY
PAMELA J RUSCHAU
STEVEN P. PETERSEN
JOHN M. AUGUSTYN
CHRISTOPHER T GRIFFITH
WESLEY O MUELLER
JEREMY M JAY*
LYNN A. SULLIVAN
JEFFREY B. BURGAN
ELEY O THOMPSON
MARK JOY
DAVID M. AIRAN
XAVIER PILLAI
Y KURT CHANG
GREGORY C. BAYS
STEVEN H SKLAR
TAMARA A MILLER
M. DANIEL HEFNER
SALIM A. HASAN
ROGER D WYLIE***

KENNETH P. SPINA
PHILLIP M FIPPENGER
ANNE E NAFFZIGER***
VLADAN M. VASILJEVIC
CLAUDIA W STANGLE
PAUL J FILBIN
JOHN L. GASE
JEREMY C. LOWE
JOHN T. BRETSCHER
ROBERT T WITTMANN
SHANNON D. SCHEMEL*
ANDREW M. ALUL
J. KARL GROSS
SETH A ROSE
SAUMIL S MEHTA
JASON T MURATA
SCOTT H SCHULHOF
VICTOR L SONG
AARON R. FEIGELSON
A WESLEY FERREBEE*
L SCOTT BEALL
LISA K KELLY
STEPHEN R. AUTEN
MARK A. NIEDS
CAROLINE L STEVENS
DOUGLAS A. ROBINSON
NANCY J GETTEL
PETER H. DOMER
JEFFREY N. TURNER
SUSAN L. STEELE
STEPHANIE M. LAWLEY*+
KURT T. BUECHLE
KEVIN C PARKS
THOMAS K McBRIDE JR
JENNIFER M. DUK
MARCOS P RIVAS**

TWO PRUDENTIAL PLAZA, SUITE 4900

CHICAGO, ILLINOIS 60601-6780

———

(312) 616-5600

FACSIMILE: (312) 616-5700

WWW.LEYDIG.COM

July 22, 2005

*VIA FACSIMILE*
*CONFIRMATION BY*
*FEDERAL EXPRESS*

WASHINGTON OFFICE
700 THIRTEENTH STREET, N.W., SUITE 300
WASHINGTON, D.C. 20005-3960
(202) 737-6770
FACSIMILE: (202) 737-6776

ROCKFORD OFFICE
6815 WEAVER ROAD SUITE 300
ROCKFORD ILLINOIS 61114-8018
(815) 963-7661
FACSIMILE: (815) 963-7664

SEATTLE OFFICE
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WASHINGTON 98101-1346
(206) 521-5985
FACSIMILE: (206) 224-3557

OF COUNSEL
C. FREDERICK LEYDIG
THEODORE W. ANDERSON      JOHN E. ROSENQUIST
JOHN P. BUNDOCK. JR*      CHARLES S. OSLAKOVIC™
BERTON SCOTT SHEPPARD     JOHN D. FOSTER*

TECHNICAL ADVISORS
HEATHER R KISSLING       KRISTI A. CALVERT
KRISTEN J HARRELL        DEREK W. BARNETT
MELISSA E. KOLOM         KATHLEEN H HELM-BYCHOWSKI
CARYN C BORG-BREEN       FRANCIS J KOSZYK
RACHEL J. MEJDRICH       ELIZABETH M CROMPTON
JULIE J. HONG            JASON A. MILLER
RICHARD P DODSON™™

ALL RESIDENT IN CHICAGO EXCEPT AS NOTED
*RESIDENT IN WASHINGTON OFFICE    *ADMITTED IN VIRGINIA ONLY
**RESIDENT IN ROCKFORD OFFICE     **ADMITTED IN MASSACHUSETTS ONLY
™RESIDENT IN SEATTLE OFFICE

Joann M. Neth, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

> **Re:** **Ciba Specialty Corporation v. Hercules Inc. et al.**
> **C.A. No. 04-293 (KAJ)**

Dear Joann:

This is in response to you letter of July 20, 2005.

Having argued so strenuously to maintain the expert schedule as regards obtaining Ciba's position, it is disingenuous – given our discovery schedule – to push back the depositions of the Hercules technical personnel (i.e., Messrs. Brady and Harrington). Ciba needs to promptly develop: (1) a full understanding of the extensive, unsuccessful, and then discontinued efforts to support Hercules' position that its PerForm® 9232 product only has junctions resulting from hydrophobe-hydrophobe associations (i.e., the studies that are identified in Ciba's Dep. Ex. 28); and (2) the quantifications of the covalent crosslinks in its product, (referenced in Ciba's Dep. Ex. 27). These are the areas about which Dr. Gelman could not testify.

Simply to make our position clear, we are issuing, and attach hereto, a Rule 30(b)(6) deposition notice covering these subjects. We are willing to stick to our proposed schedule for Messrs. Brady and Harrington (as these two seem to have been involved in these subjects). However, the 30(b)(6) noticed is intended to hopefully facilitate, for both parties, Ciba's obtaining this important information. The documents identified are those that we have also separately requested.

CONFIDENTIAL

Joann M. Neth, Esq.
July 22, 2005
Page 2

     We are willing to work with you on the specific date(s) for the deposition(s), but postponing these until very late in August is inappropriate. We need to resolve this soon, and Ciba accordingly needs your final position no later than July 25. In the interim, we stand ready to discuss this situation by telephone. These are the sort of things that counsel should be able to work out together.

     As regards the remainder of your letter, Ciba asks that Hercules provide proposed dates for all of the witnesses and depositions so that the schedule can be addressed as a whole.

Very truly yours,

LEYDIG, VOIT & MAYER, LTD.

By: _____

Eley O. Thompson

cc:   Thomas L. Creel, P.C.
      Richard L. Horowitz, Esq.
      Chad M. Shandler, Esq.

**CONFIDENTIAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS  )
CORPORATION,              )
                          )
            Plaintiff,    )
                          )
        v.                )          C.A. No. 04-293 (KAJ)
                          )
HERCULES, INC. and        )
CYTEC INDUSTRIES, INC.,   )
                          )
            Defendants.   )

## Notice of Deposition of Hercules, Inc. Under Rule 30(b)(6)

Please take notice that pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiff Ciba Specialty Chemical Corporation ("Ciba") will take the deposition of

Defendant Hercules, Inc. ("Hercules") commencing at 9:00 a.m. on August 3, 2005, at the

offices of Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, DE

19899, or at another time and place to be agreed upon by counsel. The deposition shall continue

from day-to-day until complete and be recorded by stenographic and/or videotape means.

Pursuant to Rule 30(b)(6), Fed.R.Civ.P., Hercules is directed to designate a person or

persons to testify as to the matters set forth in the Areas of Examination stated below.

Furthermore, Hercules is directed to produce to Leydig, Voit & Mayer, Ltd., Two Prudential

Plaza, 180 N. Stetson Ave., Suite 4900, Chicago, Illinois 60601 at least four (4) business days

before August 3, 2005 all documents and things previously requested that relate to the Areas of

Examination set forth herein and that have not already been provided.

You are invited to attend the deposition and to cross-examine the witness(es).

CONFIDENTIAL

Respectfully submitted,

Dated: July 22, 2005

Frederick L. Cottrell III (#2555)
Jeffrey L. Moyer (# 3309)
Chad M. Shandler (#3796)
Richards, Layton & Finger, P.A.
P.O. Box 551
One Rodney Square
Wilmington, Delaware 19899-0551

Gordon R, Coons
Eley O. Thompson
Gregory C. Bays
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601

Attorneys for Plaintiff

CONFIDENTIAL

## Areas of Examination

The following Areas of Examination should be read in accordance with the terms and definitions set forth in Ciba's earlier discovery requests, including Ciba's First Request for Production of Documents and Things, served on January 14, 2005:

1. Any efforts to break-up hydrophobe-hydrophobe associations in AEM 232, PerForm® 9232, or acrylic acid-acrylamide polymers modified by lauryl acrylate, including any such efforts involving the use of surfactants, elevated temperatures in combination with surfactant, and co-solvents, including those referenced in Plaintiff's Dep. Ex. 28 at HER 0040646.

2. Any determination and/or calculation involving the plateau modulus of or the number of network junctions or associations in AEM 232, PerForm® 9232, or acrylic acid-acrylamide polymers modified by lauryl acrylate, including those junctions or associations due to crosslinking, and any testing relating thereto, including the work set forth in Plaintiff's Deposition Ex. 27.

CONFIDENTIAL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 22, 2005, I caused copies of Plaintiff Ciba Specialty

Chemicals Corporation's Notice of Deposition of Hercules, Inc. Under Rule 30(b)(6) to be

served on the following attorneys of record at the address and in the manner indicated:

### VIA FACSIMILE AND FEDERAL EXPRESS:

Richard L. Horwitz, Esq.
David E. Moore, Esq.
POTTER ANDERSON & CORROON, LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899

Ford F. Farabow, Jr.
Joann M. Neth
A. Neal Seth
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413

Thomas L. Creel, P.C.
GOODWIN PROCTOR LLP
599 Lexington Avenue
New York, NY 10022

CONFIDENTIAL