# EXHIBIT D



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER**LLP

901 New York Avenue, NW ▪ Washington, DC  20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

FORD F. FARABOW
202-408-4044
ford.farabow@finnegan.com

June 30, 2005

Eley O. Thompson, Esq.                                    *Via Facsimile*
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza
Suite 4900
Chicago, IL 60601-6780

Re:   Ciba Specialty Chemicals Corporation v. Hercules Inc. et al.
      C.A. No. 04-293 (KAJ)

Dear Eley:

In response to your letter of June 28, 2005, to Joann Neth, Hercules will produce a Rule 30(b)(6) witness on July 21, 2005, in Wilmington, Delaware.  This is in response to Ciba's Rule 30(b)(6) notice dated June 21, 2005.

Hercules does not believe it appropriate to defer the expert report schedule set by the Court.

Best regards,

Sincerely,

Ford F. Farabow

FFF/cav
cc:   Thomas L. Creel, P.C.
      Joann M. Neth, Esq.

# EXHIBIT E

**REDACTED**

# EXHIBIT F

LAW OFFICES

# LEYDIG, VOIT & MAYER, LTD.

A PROFESSIONAL CORPORATION

JAMES B. MUSKAL
DENNIS R. SCHLEMMER
GORDON R. COONS
JOHN W. KOZAK
MARK E. PHELPS
H. MICHAEL HARTMANN
BRUCE M. GAGALA
CHARLES H. MOTTIER
JOHN KILYK, JR.
ROBERT F. GREEN
JOHN B. CONKLIN
JAMES D. ZALEWA
MARK J. LISS
JOHN M. BELZ*
BRETT A. HESTERBERG
JEFFREY A. WYAND*
PAUL J. KORNICZKY
PAMELA J. RUSCHAU
STEVEN P. PETERSEN
CHRISTOPHER T. GRIFFITH
WESLEY O. MUELLER
JEREMY M. JAY*
LYNN A. SULLIVAN
JEFFREY B. BURGAN
ELEY O. THOMPSON
MARK JOY
DAVID M. AIRAN
XAVIER PILLAI
Y KURT CHANG
GREGORY C. BAYS
STEVEN H. SKLAR
TAMARA A. MILLER
M. DANIEL HEFNER
SALIM A. HASAN
ROGER D WYLIE***

KENNETH F. SPINA
PHILLIP M. PIPPENGER
ANNE E. NAFFZIGER***
VLADAN M. VASILJEVIC
CLAUDIA W. STANGLE
PAUL J. FILBIN
JOHN L. GASE
JEREMY C. LOWE
JOHN T. BRETSCHER
ROBERT T WITTMANN
SHANNON D. SCHEMEL*
ANDREW M. ALUL
J. KARL GROSS
SETH A. ROSE
SAUMIL S. MEHTA
JASON T MURATA
SCOTT H. SCHULHOF
VICTOR L. SONG
AARON R. FEIGELSON
A. WESLEY FERREBEE*
L. SCOTT BEALL
LISA K. KELLY
STEPHEN R. AUTEN
MARK A. NIEDS
CAROLINE L. STEVENS
DOUGLAS A. ROBINSON
NANCY J. GETTEL
PETER H DOMER
JEFFREY N. TURNER
SUSAN L. STEELE
STEPHANIE M. LAWLEY*+
KURT T. BUECHLE
KEVIN C. PARKS
THOMAS K. McBRIDE JR
JENNIFER M. DUK
MARCOS F. RIVAS++

TWO PRUDENTIAL PLAZA, SUITE 4900

CHICAGO, ILLINOIS 60601-6780

———

(312) 616-5600

FACSIMILE: (312) 616-5700

WWW.LEYDIG.COM

WASHINGTON OFFICE
700 THIRTEENTH STREET, N.W. SUITE 300
WASHINGTON, D.C. 20005-3960
(202) 737-6770
FACSIMILE: (202) 737-6776

ROCKFORD OFFICE
6815 WEAVER ROAD SUITE 300
ROCKFORD, ILLINOIS 61114-8018
(815) 963-7661
FACSIMILE: (815) 963-7664

SEATTLE OFFICE
1420 FIFTH AVENUE, SUITE 2200
SEATTLE WASHINGTON 98101-1346
(206) 521-5985
FACSIMILE: (206) 224-3557

OF COUNSEL
C. FREDERICK LEYDIG
THEODORE W. ANDERSON     JOHN E. ROSENQUIST
JOHN P. BUNDOCK JR.*     CHARLES S. OSLAKOVIC**
BERTON SCOTT SHEPPARD    JOHN D FOSTER*

TECHNICAL ADVISORS
HEATHER R KISSLING      KRISTI A. CALVERT
KRISTEN J HARRELL       DEREK W. BARNETT
MELISSA E. KOLOM        KATHLEEN M HELM-BYCHOWSKI
CARYN C BORG-BREEN      FRANCIS J KOSZYK
RACHEL J. MEJDRICH      ELIZABETH M CROMPTON
JULIE J. HONG           JASON A. MILLER
RICHARD P DODSON***

ALL RESIDENT IN CHICAGO EXCEPT AS NOTED
*RESIDENT IN WASHINGTON OFFICE       °ADMITTED IN VIRGINIA ONLY
**RESIDENT IN ROCKFORD OFFICE       ++ADMITTED IN MASSACHUSETTS ONLY
***RESIDENT IN SEATTLE OFFICE

July 26, 2005

*VIA FACSIMILE*
*CONFIRMATION BY*
*FIRST CLASS MAIL*

Joann M. Neth, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

Re:     **Ciba Specialty Corporation v. Hercules Inc. et al.**
        **C.A. No. 04-293 (KAJ)**

Dear Joann:

This letter relates to Ciba's concern over Hercules' production of financial information relating to the PerForm® and Polyflex® CP3 products.

Specifically, Ciba believes that Hercules has not provided complete production relating to financial information regarding the PerForm® products as requested in such requests as nos. 58, 59, 60, 61, 65, 66, 106, etc. Ciba further believes that Hercules has not provided complete production relating to financial information for the Polyflex® products as requested in such requests as nos. 62, 63, 64, 67, etc. These requests include documents concerning the Polyflex® CP3 product that were compelled by the Court.

The requested documents include documents demonstrating the sales, profits and net profits of the PerForm® products by customer on a monthly, quarterly and annual basis. They also seek information relating to pricing of the products and how much PerForm® product has been sold to Hercules by Cytec. This information is necessary to have an efficient damages deposition.

Joann M. Neth, Esq.
July 26, 2005
Page 2


We note that Hercules has proposed a damages deposition for August 4, 2005. Ciba needs to have the underlying documents before such deposition can take place. We would like to work out scheduling with you, but we need to know when such documents will be available. Further, if you would like to discuss exchanging electronic records of such information, we may be able to work out a mutual exchange. In this regard, we note that documents produced by Hercules as HERC 19347-19405, 19406-20740, 20741-20938 and 21983-22100 are not intelligible in the form produced and, thus, Ciba requests that they be produced in intelligible form, as can be seen from reviewing such documents. We can be more specific about this aspect of the documents, if you would like to discuss the matter further.

For the sake of clarity in developing the deposition schedule, we reiterate that Ciba cannot proceed with the damages Rule 30(b)(6) deposition until the document issues are resolved. Thus, the sooner we reach resolution on this matter, the sooner the deposition can be scheduled.


                              Very truly yours,

                              LEYDIG, VOIT & MAYER, LTD.

                    By:       Eley O. Thompson


cc:    Thomas L. Creel, P.C.
       Richard L. Horowitz, Esq.
       Chad M. Shandler, Esq.

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C. A. No. 04-293 (KAJ) |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| HERCULES, INC. and CYTEC INDUSTRIES, INC., | ) ) ) ) | |
| Defendants. | ) | |

## AMENDED ANSWER AND COUNTERCLAIMS
## OF DEFENDANT HERCULES, INCORPORATED

Defendant Hercules, Incorporated ("Hercules") files this Amended Answer and

Counterclaims in response to the Complaint dated May 7, 2004 filed by Plaintiff Ciba

Specialty Chemicals Corporation ("Ciba").

### AMENDED ANSWER

### The Parties

1.    Upon information and belief, Hercules admits the allegations of paragraph

1 of the Complaint.

2.    Hercules admits the allegations of paragraph 2 of the Complaint.

3.    Upon information and belief, Hercules admits the allegations of paragraph

3 of the Complaint.

### Jurisdiction and Venue

4.    Hercules admits that Ciba alleges that Hercules infringes U.S. Patent Nos.

5,167,766 (the "'766 patent") and 5,171,808 (the "'808 patent") and seeks relief under

the patent laws of the United States. Hercules denies all remaining allegations of Paragraph 4.

5.      Hercules admits that, as to defendant Hercules, subject matter, personal jurisdiction and venue are proper in this Court. Hercules further admits that it is incorporated in the State of Delaware and is doing business in this district. As to the remaining allegations in paragraph 5 of the Complaint, Hercules has insufficient information to admit or deny them, and thus denies them.

### Patents in Suit

6.      Hercules admits that the '766 patent, entitled "Charged Organic Polymer Microbeads in Paper Making Process," was issued by the United States Patent and Trademark Office ("PTO") on December 1, 1992, and that a copy of the '766 patent was attached to the Complaint as Exhibit A. Hercules denies the remaining allegations of paragraph 6 of the Complaint, and specifically denies that the '766 patent was duly and legally issued by the PTO.

7.      Hercules admits that the '808 patent, entitled "Cross-linked Anionic and Amphoteric Polymeric Microparticles," was issued by the PTO on December 15, 1992, and that a copy of the '808 patent was attached to the Complaint as Exhibit B. Hercules denies the remaining allegations of paragraph 7 of the Complaint, and specifically denies that the '808 patent was duly and legally issued by the PTO.

8.      Upon information and belief, Hercules admits that, according to the records of the PTO, assignment of each of the '766 and '808 patents from Cytec to Ciba was recorded in the PTO on or about January 16, 2002. Hercules further admits that on or about October 24, 2002 it received a letter from Ciba referring Hercules to a number of

Ciba's patents, including the '808 and '766 patents, but specifically denies that Hercules received notice of alleged infringement of these patents. Hercules also denies the remaining allegations of paragraph 8 of the Complaint.

### Patent Infringement

9. Hercules denies the allegations of paragraph 9 of the Complaint.

10. Hercules denies the allegations of paragraph 10 of the Complaint.

11. Hercules denies the allegations of paragraph 11 of the Complaint.

### Plaintiff's Prayer For Relief

12. Hercules denies that Ciba is entitled to the relief requested in any of paragraphs A-F of the Complaint or to any other relief.

### FIRST DEFENSE

13. Hercules has not infringed and is not infringing (either directly, contributorily, or by inducement) any claim of the '766 patent either literally or under the doctrine of equivalents.

14. The prosecution history of the '766 patent estops Ciba from asserting infringement of any claim of the '766 patent.

15. Hercules has not infringed and is not infringing (either directly, contributorily, or by inducement) any claim of the '808 patent either literally or under the doctrine of equivalents.

16. The prosecution history of the '808 patent estops Ciba from asserting infringement of any claim of the '808 patent.

## SECOND DEFENSE

17.    The '766 patent is invalid for failure to comply with the conditions for patentability specified by 35 U.S.C. §§ 102, 103, and/or 112.

18.    The '808 patent is invalid for failure to comply with the conditions for patentability specified by 35 U.S.C. §§ 102, 103, and/or 112.

## THIRD DEFENSE

19.    Ciba did not provide actual notice of infringement to Hercules prior to filing this lawsuit.

## FOURTH DEFENSE

20.    Upon information and belief, Ciba, Cytec Industries, Inc., and/or their licensees failed to comply with 35 U.S.C. § 287 in connection with the making, offering for sale, or selling of products covered by the patents-in-suit by failing to mark those products with the numbers of the patents-in-suit.

## FIFTH DEFENSE

21.    On information and belief, all claims of the patents-in-suit are unenforceable as a matter of law because persons owing a duty of candor to the PTO withheld from the PTO and misrepresented to the PTO highly material prior art during prosecution of the '766 and '808 patents. Such intentional acts were material to patentability under PTO Rule 1.56. The facts currently known on which Hercules will rely in support of this defense are set forth with particularity in paragraphs 16 to 78 of the Amended Counterclaims and are incorporated herein by reference.

4

### RIGHT TO ASSERT ADDITIONAL DEFENSES

22.    Hercules' investigations into the allegations set forth in Ciba's Complaint are ongoing and discovery has not been completed. Hercules expressly reserves the right to assert and pursue additional defenses.

### AMENDED COUNTERCLAIMS

#### Parties and Jurisdiction

1.    Hercules is a Delaware corporation having its principal place of business at 1313 North Market Street, Wilmington, Delaware 19894.

2.    On information and belief, Ciba is a New York corporation having its principal place of business at 540 White Plains Road, Tarrytown, New York 10591.

3.    This Court has jurisdiction over these Counterclaims pursuant to at least 28 U.S.C. §§ 1331, 1338, 1367, and 2201.

4.    Venue is proper in this district under at least 28 U.S.C. §§ 1391 and 1400(b).

5.    These counterclaims are for declaratory judgment relief arising under 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 101 et seq.

#### Counterclaim I - Declaratory Judgment of Noninfringement of the '766 Patent

6.    Hercules has not infringed, contributorily infringed, or induced infringement of the '766 patent, either literally or under the doctrine of equivalents.

7.    The prosecution history of the '766 patent estops Ciba from asserting infringement of any claim of the '766 patent.

5

8.    Hercules is entitled to a declaratory judgment that it has not infringed, and is not infringing, the '766 patent.

## Counterclaim II - Declaratory Judgment of Noninfringement of the '808 Patent

9.    Hercules has not infringed, contributorily infringed, or induced infringement of the '808 patent, either literally or under the doctrine of equivalents.

10.    The prosecution history of the '808 patent estops Ciba from asserting infringement of any claim of the '808 patent.

11.    Hercules is entitled to a declaratory judgment that it has not infringed, and is not infringing, the '808 patent.

## Counterclaim III - Declaratory Judgment of Invalidity of the '766 Patent

12.    The '766 patent is invalid for failure to comply with the conditions for patentability specified by 35 U.S.C. §§ 102, 103, and/or 112.

13.    Hercules is entitled to a declaratory judgment that the '766 patent is invalid.

## Counterclaim IV - Declaratory Judgment of Invalidity of the '808 Patent

14.    The '808 patent is invalid for failure to comply with the conditions for patentability specified by 35 U.S.C. §§ 102, 103, and/or 112.

15.    Hercules is entitled to a declaratory judgment that the '808 patent is invalid.

## Counterclaim V - Declaratory Judgment of Unenforceability of the '766 and '808 Patents

16.    Persons owing a duty of candor to the PTO during prosecution of the '766 and '808 patents did not disclose highly material prior art to the PTO, including U.S. Patent No. 4,720,346 to Flesher et al. ("the Flesher '346 patent") and U.S. Patent No.

6

4,528,321 to Allen *et al.* ("the Allen '321 patent"). Their inequitable conduct during prosecution of the '766 and '808 patents renders unenforceable all claims of these patents.

17.    Like claim 1 of the '766 patent, the Flesher '346 patent discloses adding ionic, organic polymeric particles to an aqueous cellulosic suspension in a paper making process. ('346 patent, col. 5, lines 35-65; col. 8, lines 40-55.)

18.    The Flesher '346 patent teaches that these ionic, organic polymeric particles may be cross-linked. (*See id.* at col. 6, lines 52-57; col. 7, lines 51-54; Examples 2, 3, and 12.)

19.    The polymer particles of the Flesher '346 patent meet the particle size limitation of claim 1 of the '766 patent. (*See id.* at col. 6, lines 25-26 (stating that the polymeric material in suspension "should preferably be a microdispersion") and 31-33 (stating that its polymeric particles "are preferably below 2μm" in size); *see also* Examples 2, 3, and 12.)

20.    During prosecution of a patent application that was co-pending at the PTO with the '766 and '808 patents, the assignee of that application (American Cyanamid Corporation - "American Cyanamid") and persons at American Cyanamid owing a duty of candor to the PTO in connection with the prosecution of the '766 and '808 patents, including at least patent attorney Frank Van Riet, conceded that the polymer particles of the Flesher '346 patent would have sizes in the range of 0.2 to 2.0 microns:

> Further support for Appellants' position is found at col. 9,
> lines 21-24 of [the Flesher '346 patent] wherein EP No.
> 0126528 is disclosed as including details of the type of
> polymerization used in [the Flesher '346 patent]. As
> mentioned, macroemulsion technology produces polymer
> particles averaging about one (1) micron in diameter.

> *Reference to U.S. Patent No. 4,528,321, copy attached,*
> *which is an equivalent of the above-identified EP patent,*
> *shows the production of polymers having an average*
> *particle size range of from 0.2-2.0, see Example 1, line 50.*
> Thus, it is clear that [the Flesher '346 patent's] polymer
> particles, which are <u>all</u> above 0.2 micron and average 1.1
> micron, are far larger than claimed by Appellants i.e. all are
> below 0.1 micron, not an average.

(U.S. Application Serial No. 07/552,958, Appeal Brief on Behalf of Appellants dated

Sept. 13, 1991, at 8 (emphasis added; underlining in original).)

      21.    The polymeric particles in the Flesher '346 patent meet the ionicity

limitation of claim 1 of the '766 patent of at least 1% (*see* '346 patent at col. 9, lines 56-

61; Examples 2, 3), or at least 5% if anionic and used alone (*see id.* at Example 12.)

      22.    Additionally, a person of skill in the art would have known to add the

polymeric particles of the Flesher '346 patent to the aqueous paper furnish in the amount

required by claim 1 of the '766 patent (of about 0.05 to 20 lbs/ton).

      23.    The Flesher '346 patent discloses adding between 0.2 and 60 lbs/ton of

polymeric particles to achieve optimum floc stability:  "[s]uitable doses are in the range

of 0.01 to 3%, often 0.5 to 3%, by weight polymer based on dry solids." ('346 patent,

col. 11, lines 9-11; *see also* Example 14 (disclosing adding a polymer dose of about

6 kg/ton, which equals 13.2 lbs/ton).)

      24.    The Flesher '346 patent thus anticipates at least claim 1 of the '766 patent.

      25.    Like claim 1 of the '808 patent, the Flesher '346 patent discloses a

composition comprising anionic polymeric particles derived from the reverse phase

polymerization of an aqueous solution of at least one monomer. (*See id.* at col. 5, lines

63-64; col. 6, lines 45-47; col. 7, lines 45-54; col. 8, lines 40-46; Example 12.)

26.   The Flesher '346 patent teaches that these anionic polymeric particles may be cross-linked. (*See id.* at col. 6, lines 52-57; col. 7, lines 51-54; Example 12.)

27.   A cross-linking agent (methylene bis acrylamide - "MBA") is present in the Flesher '346 patent in the amount required by claim 1 of the '808 patent. (*See id.* at Example 12.)

28.   The cross-linked polymeric particles of the Flesher '346 patent meet the particle size limitation of claim 1 of the '808 patent. (*See id.* at col. 6, lines 25-26 and 31-33; Example 12; *see also* U.S. Application Serial No. 07/552,958, Appeal Brief on Behalf of Appellants dated Sept. 13, 1991, at 8.)

29.   The polymeric particles of Example 12 of the Flesher '346 patent also satisfy the ionicity limitation of claim 1. (*See id.* at Example 12.)

30.   The composition of Example 12 of the Flesher '346 patent meets the solution viscosity limitation of claim 1 of the '808 patent. (*See* '346 patent, Example 12; '808 patent, Table 1.)

31.   The Flesher '346 patent thus anticipates at least claim 1 of the '808 patent.

32.   Like claim 1 of the '808 patent, the Allen '321 patent discloses a composition comprising anionic polymeric particles derived from the reverse phase polymerization of an aqueous solution of at least one monomer. (*See* '321 patent, col. 4, lines 22-26, 43-48; Example 7.)

33.   The Allen '321 patent teaches that these anionic polymeric particles may be cross-linked. (*See id.* at col. 4, lines 59-69; Example 7.)

34.   A cross-linking agent (MBA) is present in the amount required by claim 1 of the '808 patent. (*See id.* at Example 7.)

9

35.     The cross-linked polymeric particles of the Allen '321 patent meet the particle size limitation of claim 1 of the '808 patent. (*See id.* at col. 5, lines 61-63; Example 7; *see also* U.S. Application Serial No. 07/552,958, Appeal Brief on Behalf of Appellants dated Sept. 13, 1991, at 8.)

36.     The polymeric particles of Example 7 of the Allen '321 patent also satisfy the ionicity limitation of claim 1. (*See* '321 patent, Example 7.)

37.     The composition of Example 7 of the Allen '321 patent meets the solution viscosity limitation of claim 1 of the '808 patent. (*See* '321 patent, Example 7.)

38.     The Allen '321 patent thus anticipates at least claim 1 of the '808 patent.

39.     The combination of the Flesher '346 patent and the prior art, including at least the Allen '321 patent, would have rendered obvious at least claims 1-6 of the '808 patent.

40.     The combination of the Flesher '346 patent and the prior art, including at least the Allen '321 patent and/or U.S. Patent No. 5,180,473 to Akune *et al.*, would have rendered obvious at least claims 1-3 of the '766 patent.

41.     PTO Rule 1.56 requires "[e]ach individual associated with the filing and prosecution of a patent application . . . to disclose to the Office all information known to that individual to be material to patentability as defined in this section." 37 C.F.R. § 1.56(a).

42.     Effective March 16, 1992, the PTO Rules provided the following amended definition for information to be considered "material to patentability":

> (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

10

(1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatantability relied on by the Office, or

(ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b).

43.    The Flesher '346 patent and the Allen '321 patent were more material than other prior art before the PTO during prosecution of the '766 and '808 patents.

44.    Had they been considered, the Flesher '346 patent and the Allen '321 patent would have supplied deficiencies in the other references cited during prosecution of the '766 and '808 patents.

45.    Had they been considered, the Flesher '346 patent and the Allen '321 patent would have refuted arguments for patentability urged by American Cyanamid and those involved in the prosecution of the '766 and '808 patents.

46.    During prosecution of the '766 patent, American Cyanamid argued that their claims would not have been obvious over U.S. Patent No. 4,659,431 to Probst *et al.* ("the Probst '431 patent") because this patent allegedly failed to teach (a) ionic polymeric particles, (b) that are cross-linked, and (c) that are added to the paper furnish, rather than the paper sheet itself, during the papermaking process:

"Thus, Probst fails to meet Applicants' claims because:

1.    The microbeads are preferably added to the paper rather than the furnish;

2.    The microbeads are not ionic and

    3.     The microbeads are not cross-linked."

(U.S. Application Serial No. 07/540,667, Amendment dated Sept. 23, 1991 at 6-7; *see also* U.S. Application Serial No. 07/540,667, Amendment dated Mar. 16, 1992 at 1-5 (repeating these arguments).)

    47.     In contrast to the Probst '431 patent, the Flesher '346 patent teaches the use of ionic polymeric particles that are cross-linked.

    48.     In contrast to the Probst '431 patent, the Flesher '346 patent also teaches adding ionic, cross-linked polymeric particles to the paper furnish during the papermaking process.

    49.     During prosecution of the '808 patent, American Cyanamid argued that U.S. Patent No. 4,147,688 to Makhlouf *et al.* ("the Makhlouf '688 patent") would not have rendered their claims obvious because this prior art allegedly failed to teach (a) preparing the polymeric particles solely from water-soluble monomers, and (b) using a cross-linking agent in the range of about 4 molar parts to about 4000 molar parts per million, instead of a higher range:

> "Thus, Appellants have clearly shown the unexpected
> superiority of the instant compositions produced by the
> claimed novel process.  Therefore, since Makhlouf et al.
> fail to teach the necessity of using only water-soluble
> monomers and fail to teach the claimed, *critical range of
> cross-linking agent*, it is respectfully submitted that the
> rejection based thereon is erroneous and should be
> reversed."

(U.S. Application Serial No. 07/803,120, Brief for Appellants dated Apr. 27, 1992, at 6 (emphasis added).)

50.    In contrast to the Makhlouf '688 patent, the Flesher '346 patent and the Allen '321 patent both contain Examples of compositions of polymeric particles prepared only from water-soluble monomers.

51.    In contrast to the Makhlouf '688 patent, the Flesher '346 patent and the Allen '321 patent both contain Examples of compositions of polymeric particles that use cross-linking agents in the claimed range of about 4 molar parts to about 4000 molar parts per million.

52.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least the in-house patent attorney who prosecuted the '766 patent, Mr. Frank Van Riet, were aware of the Flesher '346 patent during prosecution of the '766 patent.

53.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, who also prosecuted the '808 patent, were aware of the Flesher '346 patent during prosecution of the '808 patent.

54.    The Flesher '346 patent was not cited to the PTO or considered by the PTO during prosecution of either the '766 or '808 patents.

55.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, were aware of the Allen '321 patent during prosecution of the '808 patent.

56.    The Allen '321 patent was not cited to the PTO or considered by the PTO during prosecution of the '808 patent.

57.    Claim 1 of the '808 patent recites "[a] composition comprising cross-linked anionic or amphoteric polymeric microparticles."

13

58.    The specification of the '808 patent misrepresents that the European counterpart to the Flesher '346 patent, EP 0,202,780, "describes the preparation of polymeric, crosslinked, *cationic* acrylamide polymer beads by *conventional* inverse emulsion polymerization techniques." ('808 patent, col. 1, lines 23-25 (emphasis added).)

59.    The specification of the '766 patent contains a similarly misleading statement describing EP 0,202,780 as being limited to "cationic" polyacrylamide beads prepared by "conventional" polymerization techniques. (*See* '766 patent, col. 2, lines 47-49.)

60.    The Flesher '346 patent describes the preparation of polymeric, crosslinked, anionic acrylamide polymer particles in addition to cationic ones. (*See* '346 patent, Example 12; *see also* col. 5, lines 63-64 (stating that when forming paper and paper products "the flocculant polymer is preferably an anionic polyacrylamide.").)

61.    Instead of describing polymeric particles formed by "conventional" processes, the polymeric particles of the Flesher '346 patent are ionic, organic, cross-linked particles meeting the limitations of claim 1 of both the '766 and '808 patents. (*See* '346 patent, Example 12.)

62.    The Flesher '346 patent and the Allen '321 patent were brought to the attention of persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, many times prior to issuance of the '766 and '808 patents.

63.    For instance, the Flesher '346 patent was cited during the prosecution of U.S. Patent Nos. 5,132,023 and 5,104,552, both of which were prosecuted by Mr. Van Riet and both of which issued before the '766 and '808 patents.

14

64.    Mr. Van Riet also had knowledge of the Flesher '346 patent because it had been cited during prosecution of other American Cyanamid patent applications that were pending at the PTO before or during prosecution of the '766 and '808 patents. These include U.S. Application Serial Nos. 07/286,015, 07/409,366, 07/285,940, 07/864,243, 07/643,309, and 07/552,958.

65.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, were also aware of the Flesher '346 patent, or its European equivalent, by virtue of having identified EP 0,202,780 in the specifications of the '766 and '808 patents.

66.    Furthermore, during an appeal to the PTO Board of Patent Appeals and Interferences during prosecution of U.S. Application Serial No. 07/552,958, Mr. Van Riet argued that the Allen '321 patent disclosed that the polymeric particles of the Flesher '346 patent would have sizes in the range of 0.2 to 2.0 microns. (*See* U.S. Application Serial No. 07/552,958, Appeal Brief on Behalf of Appellants dated Sept. 13, 1991, at 8 (quoted in paragraph 20 above).)

67.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, were further aware of the Allen '321 patent because they cited this prior art during prosecution of U.S. Application Serial No. 07/922,885. This citation of the Allen '321 patent also occurred before issuance of the '766 and '808 patents.

68.    Prior to issuance of the '766 and '808 patents, Allied Colloids Ltd. sued American Cyanamid Company and Cyanamid of Great Britain for infringement of EP 0,202,780.

15

69.    Prior to issuance of the '766 and '808 patents, Allied Colloids Ltd. and its U.S. licensee, Allied Colloids Inc. (collectively "Allied Colloids"), also sued American Cyanamid for infringement of the Flesher '346 patent.

70.    Allied Colloids' complaint averred that American Cyanamid's infringement of the Flesher '346 patent was willful and had occurred "with knowledge of" that patent.

71.    Upon information and belief, persons at American Cyanamid involved with the prosecution of the '766 and '808 patents had such prior knowledge of the Flesher '346 patent.

72.    In spite of all the above instances where the Flesher '346 patent and the Allen '321 patent were brought to the attention of persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, this prior art was not brought to the attention of the PTO during prosecution of the '808 patent.

73.    After the PTO mailed a Notice of Allowance for the '766 patent on March 23, 1992, American Cyanamid and Mr. Van Riet waited until April 27, 1992 and then cited EP 0,202,780 to the PTO along with 15 other references.

74.    At the time when American Cyanamid and Mr. Van Riet cited EP 0,202,780, the PTO's Rules precluded it from considering additional references and the PTO therefore refused to consider this European counterpart to the Flesher '346 patent.

75.    Upon information and belief, at least Mr. Van Riet knew or should have known that the citation of references including EP 0,202,780 was not timely and that the references could not be considered by the PTO.

16

76.    American Cyanamid and Mr. Van Riet could have withdrawn the '766 patent from issuance and properly cited EP 0,202,780 or the Flesher '346 patent for consideration by the PTO but did not do so.

77.    By their course of conduct, persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, purposefully prevented the PTO from considering the most pertinent prior art, the Flesher '346 patent and the Allen '321 patent, during prosecution of the '766 and '808 patents.

78.    Such purposeful conduct along with the high materiality of these prior art references is sufficient to establish an intent to mislead the PTO into wrongfully allowing the '766 and '808 patents to issue.

## Right to Assert Additional Counterclaims

79.    Hercules' investigations into the allegations set forth by in Ciba's Complaint are ongoing and discovery has not been completed. Hercules expressly reserves the right to assert and pursue additional counterclaims.

## Prayer for Relief

For the reasons set forth above, Hercules prays for the Court's entry of judgment for it and against Ciba as follows:

    A.    Declaring the '766 patent to be invalid;

    B.    Declaring the '808 patent to be invalid;

    C.    Declaring that Hercules has not infringed, contributorily infringed or induced infringement of the '766 patent;

    D.    Declaring that Hercules has not infringed, contributorily infringed or induced infringement of the '808 patent;

E.     Declaring the '766 patent to be unenforceable;

F.     Declaring the '808 patent to be unenforceable;

G.     Dismissing Ciba's Complaint with prejudice;

H.     Declaring that this case is exceptional pursuant to 35 U.S.C. § 285;

I.     Awarding to Hercules its costs, expenses, and reasonable

attorney's fees incurred in defending against Ciba's claims in this action; and

J.     Awarding to Hercules such other and further relief as this Court

deems just and proper.


POTTER ANDERSON & CORROON LLP


By: _____

OF COUNSEL:

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
Neal Seth
FINNEGAN, HENDERSON, FARABOW,
     GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001-4413
(202) 408-4000

Dated:

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Hercules, Inc.*


18

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on June 10, 2005, the attached

document was hand-delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE 19899

I hereby certify that on June 10, 2005, I have Federal Expressed the

foregoing document(s) to the following non-registered participants:

Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601-6780

Thomas L. Creel, P.C.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

672306