# Exhibit A

**Westlaw.**

Slip Copy                                                                                                                   Page 1
Slip Copy, 2005 WL 1242158
(Cite as: Slip Copy)

Slip Copy, 2005 WL 1242158
Briefs and Other Related Documents
Only the Westlaw citation is currently available
United States District Court,D. Delaware.
Patricia VANDENBRAAK, et al., Plaintiffs,
v.
Anthony ALFIERI, et al., Defendants.
No. Civ.A. 01-482KAJ, Civ.A. 01-492 KAJ.

May 25, 2005.

John C. Phillips, Jr., Phillips, Goldman & Spence, P.A., Joseph J. Rhoades, Law Office Of Joseph Rhoades, Esq., Wilmington, DE, for Plaintiffs.
Gilbert F. Shelsby, Morgan, Shelsby & Leoni, Newark, DE, for Defendants.

*MEMORANDUM ORDER*

JORDAN, J.

Introduction

*1 Before me is the defendants' motion *in limine* (Docket Item ["D.I."] 116; the "Motion") FN1 seeking to prevent the plaintiffs from introducing testimony at trial from one of the experts that the defendants retained to testify in this matter but whom the defendants have now determined that they will not call to the stand. For the reasons that follow, the Motion is granted in part and denied in part. FN2 It is granted to the extent that the plaintiffs will not be permitted to enforce a subpoena against the expert to compel his appearance and live testimony at trial. It is denied in all other respects, so that the plaintiffs will be permitted to read into the record during their rebuttal case pertinent portions of the expert's deposition testimony that are not otherwise objectionable, and the plaintiffs will be permitted to place before the jury evidence demonstrating that Dr. Fortuin was hired by the defendants as an expert witness.

FN1. Unless otherwise noted, references to Docket items are to those items listed in the consolidated docket sheets for C.A. No. 01-482-KAJ and C.A. No. 01-492-KAJ.

FN2. The plaintiffs have also filed a motion for leave to file a sur-reply with respect to the pending Motion. (D.I.123.) That is denied. No argument beyond the standard briefing is necessary or appropriate in this instance. The plaintiffs have also requested oral argument (D.I.124), which will not be granted because it would not be of assistance in resolving this matter and, given that jury selection is due to begin in three days, is impracticable to schedule at this point.

Background FN3

FN3. This background information sets forth the parties' positions and does not constitute findings of fact.

In these consolidated medical malpractice actions, brought in this court because of diversity of citizenship (*see* C.A. No. 01-482-KAJ D.I. 1 at ¶ 7; C.A. No. 01-492-KAJ D.I. 1 at ¶ 5), the defendants are Dr. Anthony Alfieri, a cardiologist, and Delaware Cardiovascular Associates, P.A., the medical group with which Dr. Alfieri practices. (C.A. No. 01-482-KAJ D.I. 1 at ¶¶ 4-5.) The plaintiffs in one of the cases are Zachary Vandenbraak, the minor son of the alleged victim of the defendants' malpractice, and Patricia Vandenbraak, individually, and as the administratrix of the estate of the alleged victim, her husband, and as the next friend for her minor son, Zachary (*Id.* at ¶¶ 1-3.) In the other case, the plaintiff is Jacquelyn Vandenbraak, the decedent's daughter. (*See* C.A. No. 01-492-KAJ at ¶ 6.)

Without going into a full description of the facts, it suffices for purposes of ruling on this Motion to say that the deceased husband and father, James Vandenbraak, went to Dr. Alfieri in July of 1999, complaining of chest pain. (C.A. No. 01-482-KAJ D.I. 1 at ¶¶ 10-11.) Dr. Alfieri examined Mr. Vandenbraak and sent him home, rather than having him admitted to the hospital. (*Id.* at ¶ 12.) Two days later, Mr. Vandenbraak had a heart attack and died. (*Id.* at ¶ 13.) The plaintiffs allege that Dr. Alfieri's actions and inaction were negligent and caused them damage (*See id.* at ¶¶ 14-26.) The defendants, of course, deny that there was any negligence in the treatment and advice given to Mr. Vandenbraak. (*See*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy   Page 2
Slip Copy, 2005 WL 1242158
(Cite as: Slip Copy)

C.A. No. 01-482-KAJ D.I. 7 at ¶¶ 14-26; C.A. No. 01-492-KAJ D.I. 6 at ¶¶ 13-17.)

The defendants retained at least three expert witnesses, one of whom, Dr. Nicholas J. Fortuin, is the subject of the present Motion. The defendants designated Dr. Fortuin as a testifying expert, and provided to the plaintiffs an expert report from him, pursuant to the obligations imposed by Federal Rule of Civil Procedure 26(a)(2)(B). (See D.I. 118 at Ex. A.) For reasons not relevant here, the trial date in this matter was continued, so that a form of pretrial order was first submitted by the parties on December 14, 2004 (D.I. 84) and another form of pretrial order was later submitted on April 26, 2005 (D.I. 110). In both of those proposed orders, the defendants listed Dr. Fortuin as a testifying expert. (See D.I. 84 at sec. V.B.2.; D.I. 110 at sec. V.B.) FN4 The defendants stated that Dr. Fortuin would "testify regarding the standard of care of a practicing cardiologist" and "opine that the patient [Mr. Vandenbraak] was properly evaluated by Dr. Alfieri during the July 22, 1999 visit." (Id.) In both of the proposed pretrial orders, the plaintiffs noted that they "reserve[d] the right to call any and all witnesses identified by the defendants ..., including ... Nicholas Fortuin, M.D. ..." (Id at sec. V.A.)

> FN4. The parties have inexplicably failed to number the pages of the proposed pretrial orders (a deficiency earlier called to their attention, see 12/20/04 pretrial conf. transcript at 5), so citations to those proposed orders are to the outline sections within which the noted text occurs.

*2 At the first pretrial conference held on December 20, 2004, defense counsel expressly noted that the plaintiffs had "reserved the right to call ... [the defense's] other two [expert witnesses,]" which included Dr. Fortuin (12/20/04 pretrial conf. transcript at 7; see also id. at 19 (defense counsel characterizing the plaintiffs' position as an effort "to call Dr. Fortuin on a causation issue and some other aspects").) Plaintiffs' counsel FN5 also stated, "[w]e have reserved the right to call Dr. Fortuin ..." (Id. at 11.) Plaintiffs' counsel went on to note that Dr. Fortuin had been the subject of expert disclosure by the defense, that the doctor had been deposed as an expert, and that he had, in the plaintiffs' view, "offered an opinion that if the decedent had been advised to go to the Emergency Room and received proper medical care, he would have in fact been alive today to a reasonable degree of medical probability."

(Id. at 11-12.) Defense counsel responded, "if they want to call Dr. Fortuin in their case and call him as their witness, I have no objection to them doing that whatsoever, but I would, however, object to them simply reading his deposition transcript. In other words, if they want to call Dr. Fortuin in their case-in-chief, then they could call him as a witness." (Id. at 12-13.) That position was consistent with the first proposed pretrial order, which did not identify any objection with respect to the plaintiffs calling Dr. Fortuin as a witness. But people change their minds. In the second proposed pretrial order, the defendants shifted their position, stating that they objected to Dr. Fortuin being called as an expert on behalf of the plaintiffs. FN6 (D.I. 110 at sec. V.B.2.)

> FN5. I use the designation "plaintiffs' counsel" loosely, because Patricia and Zachary Vandenbraak are represented by one set of counsel, and Jacquelyn Vandenbraak is separately represented. The comments quoted above are by counsel representing Patricia and Zachary Vandenbraak.

> FN6. The defendants' changed position was not memorialized in a motion in limine, however, until after the second pretrial conference. The second form of pretrial order actually stated, "[t]here are no motions in limine other than those previously submitted and decided by the Court at the December 20, 2004 Pretrial Conference." (D.I. 110 at sec. IX.)

Standard

Motions to admit or exclude evidence are entrusted to the sound discretion of the court. United States v. Saada, 212 F.3d 210, 220 (3d Cir.2000). Of course, that discretion must be exercised within the context of an appropriate interpretation of the rule of evidence or procedure at issue. See id. ("We ... review a ruling to admit or exclude evidence, if based on a permissible interpretation of [the rules of evidence], for an abuse of discretion.")

Discussion

In the present Motion, the defendants strongly object to what they had said five months ago they had no objection to "whatsoever," namely to any effort by the plaintiffs to call Dr. Fortuin as a witness. More

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1242158
(Cite as: Slip Copy)

Page 3

specifically, the defendants argue, first, that the plaintiffs cannot call Dr. Fortuin because they did not identify him as an expert during discovery (D.I. 116 at 2); second, that "Delaware case law precludes the Plaintiffs from calling defense experts as their own witnesses under the facts of this case" (*id.* at 3); third, that it would be improper to allow the plaintiffs to read into the record any of the discovery testimony of Dr. Fortuin because it would be hearsay and because it was a "discovery deposition" rather than a "videotaped deposition[ ] ... prepared in anticipation of trial" (*id.* at 3-4); and, fourth, if the plaintiffs are permitted to call Dr. Fortuin or to read into the record any of his deposition testimony, that the plaintiffs should not be permitted to refer to Dr. Fortuin as an expert retained by the defense, because that would be unduly prejudicial (*id.* at 4).

*3 As to the defendants' first argument, it is based on the spurious notion that Federal Rule of Civil Procedure 26(a)(2)(B) is intended to protect litigants from themselves. It is not. It is intended to protect opposing parties from unfair surprise and to allow such parties an opportunity to develop evidence to meet the expert testimony being proferred by the party that hired the expert. *See* Advisory Committee Notes to 1993 Amendments to Rule 26 ("The information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness."). There is nothing contrary to the spirit or letter of Rule 26(a)(2)(B) in allowing an opposing party to use as substantive evidence an opinion propounded by the sponsoring party's expert, whether or not the latter has come to rue it. The defendants in this case can claim no surprise from the plaintiffs' effort to put before the jury portions of Dr. Fortuin's deposition testimony. On the contrary, the defendants have been expressly on notice of that effort for months and, indeed, explicitly noted their lack of opposition to it at the first pretrial conference. It would be an unwarranted twist on the Rule generally and in this case in particular to allow the defendants to invoke Rule 26(a)(2)(B) to block evidence generated by their own expert.

The defendants' second argument, that Delaware law precludes the plaintiffs from using testimony from an opposing expert, is likewise rejected. The dispute here involves fundamentally a point of procedural and evidentiary law, not a matter of substantive law. FN7 There is no Delaware statute nor is there any Delaware Supreme Court authority cited by the defendants for the proposition that Delaware has made the policy choice to forbid plaintiffs in medical malpractice actions from relying on evidence generated by a defendant's expert witness. On the contrary, Delaware Supreme Court precedent tends to demonstrate that unduly restricting a plaintiff's ability to rely on a defense expert's statements is reversible error. *See* Green v. Alfred A.I. DuPont Institute, 759 A.2d 1060, 1065 (Del.2000) (trial court abused its discretion when it denied plaintiff the opportunity to rely upon defense expert's deposition in rebuttal). FN8 And the Delaware Superior Court has ruled in circumstances bearing a striking resemblance to the case at bar that "the interest of fairness" can permit a plaintiff to call a defense expert. *See* Winchester v. Hertrich, 658 A.2d 1016, 1022 (Del.Super.1995) (when defendant had in two separate pretrial stipulations listed a doctor as a trial witness, the "interest of fairness" led court "to conclude that the plaintiffs can call [the doctor] as their witness."); *cf.* Fitzpatrick v. Holiday Inns, Inc., 507 F.Supp. 979, 979-80 (E.D.Pa.1981) (ruling in the "interest of fairness" that plaintiff could compel the testimony of defense medical expert but would be required to pay doctor's fees for testimony). Thus, the defendants' argument that certain Delaware Superior Court procedural rulings bind me to grant their Motion *in limine* is unfounded.

> FN7. While it is true that "the applicability of state law to diversity suits should ultimately depend not on the distinction between substance and procedure but on the policies underlying the Erie doctrine [,]" Stoner v. Presbyterian University Hospital, 609 F.2d 109, 111 (3d Cir.1979), those labels still bear meaning that can be of significant assistance in understanding how to approach the "federal law versus state law" issue in a particular context. *Cf.* In re Kaplan, 143 F.3d 807, 815 (3d Cir.1998) (noting in the context of a bankruptcy case that it is accepted reasoning that "preclusion rules are procedural rather than substantive, and therefore the Erie doctrine does not require federal courts to apply state law"). A state court's interpretations of its rules of procedure ought not override the Federal Rules of Civil Procedure and the Federal Rules of Evidence when, as in this instance, there is no clearly articulated state substantive law that is contravened by the application of the federal rules. *Cf.* 19 C.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 4
Slip Copy, 2005 WL 1242158
(Cite as: Slip Copy)

Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4512 at 405 (2d ed. 1996) ("Of all the procedural and quasi-procedural rules that are applied in federal courts, the Federal Rules of Evidence are the least affected by the doctrine announced in Erie Railroad Company v. Tompkins."). The *Erie* doctrine would entirely swallow the carefully crafted federal rules, if interpreted as broadly as implied in the defendants' argument. Rather, "[t]he nub of the policy that underlies *Erie R. Co v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result ..." *Edelson v. Soricelli*, 610 F.2d 131, 134 (3d Cir.1979) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109-10, 65 S.Ct. 1464, 89 L.Ed. 2079 (1944)) My decision on this issue is in full fidelity with that policy.

FN8. The *Green* opinion, while distinguishing Delaware Superior Court precedent, does, however, emphasize the particular factual circumstances of that case, wherein there had been an understanding between the parties that the deposition testimony would be freely available for use by both parties at the trial. 759 A.2d at 1065

*4 This does not end the inquiry, however. Whether binding or not, the precedent cited by the defendants is persuasive to this extent: it would indeed be impractical and an unfair burden on Dr. Fortuin to require that he appear at trial in response to a subpoena. The doctor is not a fact witness. The only testimony he can offer is the opinion testimony that he already gave when the defendants made him available for a deposition. That testimony is preserved and available for both parties' use. To enforce a subpoena for live and largely, if not entirely, duplicative testimony at this juncture would be in gross disregard of Dr. Fortuin's own busy schedule and his right to be treated fairly by the court. It could, in other words, implicate concerns that need not be implicated. *See Pinkett v. Brittingham*, 567 A.2d 858, 860 (Del.1989) (noting that permitting a party to compel the testimony of an opposing party's expert witness may in some situations raise concerns involving the attorney-client privilege and involuntary servitude and ethical dilemmas for the subpoenaed expert). Since the plaintiffs' own position has been that they are prepared to proceed by reading the doctor's deposition testimony in during their rebuttal case (*see* 5/2/05 pretrial conf. transcript at 5), they are not disadvantaged in any significant degree by this ruling.

The defendants' fourth argument is focused not on the question of whether any evidence given by the doctor is admissible but rather on whether the doctor's deposition testimony specifically is admissible under the Federal Rules of Evidence. According to the defendants, the deposition testimony is hearsay and, beyond that, it would be unfair to the defendants to allow plaintiffs to use the deposition testimony because it was taken for discovery purposes, not to preserve testimony for trial, and allowing it to be read would be contrary to the defendants' expectation that they need not have questioned their own witness during the deposition. (*See* D.I. 116 at 3-4.)

The hearsay objection simply does not bear scrutiny. Federal Rule of Civil Procedure 32(a) provides in pertinent part that

At the trial ..., any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions: ... (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

*5 Under either subdivision (3)(D) or (3)(E) of the rule, the use of the deposition as substantive evidence is proper in this case. I have determined, as the defendants themselves requested, that the plaintiffs may not procure Dr. Fortuin's testimony by subpoena, hence Rule 32(a)(3)(D) applies. Even if it did not, however, Rule 32(a)(3)(E) would allow use of the deposition. The plaintiffs put the defendants and the court on notice at least as early as the filing of the first proposed pretrial order that they wanted to put Dr. Fortuin's deposition testimony before the jury. (*See* 12/20/04 pretrial conf. transcript at 12 ("We are asking permission to either call [Dr. Fortuin] ...

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy
Slip Copy, 2005 WL 1242158
(Cite as: Slip Copy)

Page 5

and/or read in [his] deposition testimony...") ) Given that in both the first and the second proposed pretrial orders the defendants listed Dr. Fortuin as a witness that they intended to call at trial, and that they are only now taking the position that they do not want his testimony before the jury in any form or fashion, this case presents exceptional circumstances making it desirable in the interest of justice to permit the deposition to be used. FN9

> FN9. The defendants rely on Kirk v. Raymark Indus., Inc., 61 F.3d 147 (3d Cir.1995) as support for their argument that the rule against hearsay forbids use of Dr. Fortuin's deposition. That case is entirely inapposite. It involved a party's use at trial of testimony given by a witness in a different case, and therefore the opinion in Kirk did not involve or even mention the import of Federal Rule of Civil Procedure 32, which is the basis of decision here.

Rule 32 makes no distinction between "discovery depositions" and "trial depositions." The defendants were present at the deposition of their expert and were at liberty to ask any questions necessary to correct the record or make sure that his opinions were not otherwise inaccurately reflected. There was apparently no agreement between counsel that any procedural or evidentiary rules would be waived. Thus, If the defendants chose not to ask questions, they must live with that choice. They cannot now be heard to complain about living with the record they had a hand in creating. Cf. ONTI, Inc. v. Integra Bank, Civ. A. No. 14514, 1998 WL 671263 at *3 (Del.Ch. Aug.25, 1998) ("[E]ach of the parties was free to select and present the testimony of the experts of their choosing, and neither party claims that the testimony in the present case falls outside the scope of the Experts' expertise. Therefore, the designated depositions and other testimony should be admitted.")

The defendants' final argument is that, if testimony from Dr. Fortuin is presented to the jury, the jury should not be told that he was retained by the defendants. Their assertion is that it would be "inherently prejudicial to the defense" for the jury to know who had hired the doctor. (D.I. 116 at 4.) The defendants' assertion, however, is no more than that. They do not explain how, under the balancing required by Federal Rule of Evidence 403, the identification of Dr. Fortuin as a defense expert would be so unfairly prejudicial or confusing as to substantially outweigh the probative value of that information. I conclude that the balancing does not favor exclusion of evidence of that fact. On the contrary, a fact finder must judge the weight and credibility of expert testimony, In re Unisys Savings Plan Litigation, 173 F.3d 145, 157 (3d Cir.1999), which naturally should include an understanding of the influences brought to bear on the expert. See Fenlon v. Thayer, 127 N.H. 702, 506 A.2d 319, 323 (N.H.1986) (trial court's order forbidding plaintiff from eliciting testimony that a doctor was originally hired by the defense "was erroneous because [his] status as a consultant pertains to the weight and credibility of his testimony"); cf. ONTI, Inc., 1998 WL 671263, at *2 (noting "that experts are more often than not hired hands, brought in by a party in order to propose the truth as that party sees it, or authorized by that party to represent the experts' own opinions as they conform to the party's position"). I will therefore permit the plaintiffs to place before the jury evidence that advises the jury that Dr. Fortuin was hired by the defendants.

Conclusion

*6 Based upon the foregoing reasons and authorities, it is hereby ORDERED that the defendants' Motion (D.I.116) is GRANTED to the extent that the trial subpoena served on Dr. Fortuin by the plaintiffs will not be enforced; in all other respects the Motion is DENIED.

D.Del.,2005.
Vandenbraak v. Alfieri
Slip Copy, 2005 WL 1242158

Briefs and Other Related Documents (Back to top)

• 1:01CV00492 (Docket) (Jul. 19, 2001)
• 1:01CV00482 (Docket) (Jul. 16, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.