IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION,<br>       Plaintiff,<br><br>                              v.<br><br>HERCULES INC. AND CYTEC INDUSTRIES, INC.,<br>       Defendants. | C.A. No. 04-293<br><br>REDACTED - PUBLIC VERSION |

## EXPERT REPORT OF MICHAEL E. TATE

My name is Michael E. Tate. I am the same Michael E. Tate who submitted the Preliminary Report of Michael E. Tate dated July 22, 2005 on behalf of Ciba Specialty Chemicals Corporation ("Ciba").

The following report sets forth my opinions as to the amount of financial harm suffered by Ciba as a result of Hercules Inc.'s ("Hercules") and Cytec Industries, Inc.'s ("Cytec") (collectively, "the defendants") infringement of Ciba's U.S. Patent Nos. 5,167,766 ("the '766 patent") and 5,171,808 ("the '808 patent") (collectively "the Ciba patents" or "the patents-in-suit"). For the purpose of completeness, portions of my preliminary expert report are repeated in this report.

This report is based upon information currently known to me. I understand that discovery in this matter is ongoing and, as a result, I reserve the right to rely upon any additional information that becomes available to me after the date of this report as well as to amend or modify this report to reflect such information or if further research or analysis warrants. Attached to this report are exhibits summarizing and supporting my opinions.

Highly Sensitive Confidential – Subject to Protective Order

## PROFESSIONAL AND EDUCATIONAL BACKGROUND

I am a Vice President of CRA International, Inc. ("CRA") in its Chicago office. CRA is an international business consulting firm focusing on, among other things, intellectual property matters in the context of strategy, licensing, valuation and litigation consulting. CRA is a leading provider of expert damage analysis and testimony for complex intellectual property litigation matters.

I obtained a Bachelor of Business Administration degree, with a concentration in finance, from the University of Houston in Houston, Texas. Thereafter, I obtained a Master of Science degree in Industrial Administration from Purdue University in West Lafayette, Indiana.

I have served as a consultant to a wide variety of business and industrial clients and governmental agencies on matters involving financial and statistical analysis and modeling for the purpose of interpreting and projecting data and evaluating the economic impact of business decisions, transactions and economic events. I have served as an expert witness or consultant in a wide range of litigation matters, including patent, copyright, trademark and trade secret infringement litigation. Although the issues have varied from case to case, most included an analysis and evaluation of financial data for the purpose of determining the extent of financial damages. I have also advised clients on strategic and valuation issues relating to intellectual property and license negotiations.

My curriculum vitae is attached hereto at Tab 1. A list of the cases in which I have testified at trial or by deposition is attached hereto at Tab 2.

CRA is being compensated on a rate times hours basis for the work my staff and I perform. My current rate is $440 per hour. CRA's compensation does not depend in any way on the outcome of this litigation.

Highly Sensitive Confidential – Subject to Protective Order

## SUMMARY OF CONCLUSIONS

For purpose of my analysis I was asked to assume that the PerForm® SP9232 product and its use in paper making applications will be found to infringe the '766 and '808 patents, and that the '766 and '808 patents will not be found invalid. Based on these assumptions and my analysis of the economic harm suffered by Ciba as a result of Hercules' and Cytec's infringement, I have reached the following conclusions:[1]

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

– 4 –

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

## ANALYSES AND CONCLUSIONS

Based on my review of information gathered during the course of work on this matter to date, my expert opinions regarding the economic impact on Ciba resulting from Cytec's and Hercules' infringement of the '766 and '808 patents are as follows:

A. **Ciba's Lost Profits on Hercules' Sales of Infringing and Associated Products**

A lost profits damage award requires a showing that, to a reasonable probability, the patent owner would have made the infringer's sales, but for the infringement. Courts often consider the following four factors, set forth in the *Panduit*[15] case, as a starting point for determining the appropriateness of a lost profit award:

- Demand for the patented invention;

- Absence of acceptable non-infringing substitutes;

- Manufacturing and marketing capability to meet the demand; and,

- Quantification of lost profits the patent owner would have made from sales lost as a result of the infringement.



---

[15] *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc*, 575 F 2d 1152, 1156 (6th Cir. 1978)

– 6 –

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

— 13 —

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

– 15 –

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

.

**B.    A Determination of Reasonable Royalty Damages**

If the defendants are found to have infringed the patents-in-suit, Ciba is entitled to damages adequate to compensate for that infringement, but in no event less than a reasonable royalty.

I determined a reasonable royalty rate for the defendants' infringing activity that should be applied to any of the infringing sales for which the Court determines an award of lost profits should not be awarded.

**1.    Determination of a Reasonable Royalty Rate for Hercules' and Cytec's Use of the Patents-In-Suit**

A reasonable royalty is the rate that a willing licensor (the patentee) and a willing



Highly Sensitive Confidential – Subject to Protective Order

licensee (the infringer) would have agreed to if both had been reasonably and voluntarily trying to reach an agreement. The agreement is often characterized as arising from a "hypothetical negotiation" between the parties on the eve of the infringement, or about the time the infringement began. The analysis presumes that the parties to the negotiation would have access to the same information, including the knowledge that the patent was valid and would be infringed by the prospective licensee's product unless the licensee obtained a license.

In order to determine the reasonable royalty rate that is appropriate for the defendants' use of the patents-in-suit, I conducted an analysis of information that would be considered by the parties to the hypothetical negotiation, including an income or profit apportionment analysis and an analysis of the factors set forth in the *Georgia-Pacific*[69] case, a commonly used guideline for determining a reasonable royalty in the context of litigation. The results of my analyses are as follows:

a.     **Profit Apportionment Analysis**

The profit apportionment analysis is based on the premise that a prospective licensee would be willing to pay the patent owner a royalty representing a portion of the profits it expected to earn from the use of the licensed technology.

A common rule of thumb in determining a "starting point" profit split is referred to as the "25% rule". The 25% rule is a simplified approach which, as a starting point, provides for the licensor to get one quarter of the licensee's actual or anticipated operating profit generated by the patent. The resulting figure is typically adjusted upward or downward based on the specific circumstances of the transaction.

REDACTED

---

[69] *Georgia-Pacific Corp. v. United States Plywood Corp*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Highly Sensitive Confidential – Subject to Protective Order

In order to make a determination of the royalty amount that would be reasonable for the defendants to pay Ciba for use of the patents-in-suit using the 25% rule, I determined the amount of profits that the defendants earned or expected to earn from sales of the accused product.

In order to make a determination of the royalty rate that would be reasonable for the defendants to pay Ciba for use of the patents-in-suit using the 25% rule, it is first necessary to determine the amount of profits that Hercules and Cytec earned or expected to earn from sales of the accused PerForm® SP9232. Accordingly, I prepared an analysis to determine the operating profit that the defendants earned or expected to earn on sales of products that infringe the patents-in-suit.

REDACTED

b.    *Georgia-Pacific* **Analysis**

The *Georgia-Pacific* case reflects commonly used guidelines set forth by a court for determining a reasonable royalty in a litigation context. Often, a reasonable royalty is determined by evaluating these factors in the context of a hypothetical negotiation between the patent owner (the licensor) and the accused infringer (the licensee) in which both parties are assumed to have access to the same information and be willing to enter into a license agreement. I considered the effects these factors would have on a hypothetical negotiation to determine a reasonable royalty in this case. I



Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order



– 29 –

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Highly Sensitive Confidential – Subject to Protective Order

REDACTED

Respectfully submitted:

Michael E. Tate
Vice President
CRA International, Inc.
August 25, 2005



Highly Sensitive Confidential – Subject to Protective Order

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2005, I hand delivered the foregoing document to the following persons and electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Richard L. Horwitz, Esquire
David E. Moore, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE   19899-0951

I hereby certify that on September 1, 2005, I have Federal Expressed the foregoing document to the following non-registered participants:

Ford F. Farabow, Jr., Esquire
Joann M. Neth, Esquire
A. Neal Seth, Esquire
Finnegan, Henderson, Farabow, Garrett &
Dunner, LLP
901 New York Avenue, N.W.
Washington, DC 20001-4413

Thomas L. Creel, Esquire
Goodwin Proctor, LLP
599 Lexington Avenue
New York, NY 10022

Chad M. Shandler (#3796)
Shandler@rlf.com