# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ALLIED COLLOIDS INC.          )
2301 Willroy Road             )
Suffolk, Virginia 23434,      )
                              )
        and                   )
                              )
ALLIED COLLOIDS LIMITED       )
Low Moor, Bradford  BD12  OJZ )
Yorkshire, United Kingdom,    )
                              )
            Plaintiffs,       )
                              )
        v.                    )     Civil Action No. 92-1658-A
                              )
AMERICAN CYANAMID COMPANY     )     TRIAL BY JURY DEMANDED
12701 Fair Lakes Circle       )
Fairfax, Virginia 22031,      )
                              )
            Defendant.        )
                              )
                              )

NOV 2 5 1992

CLERK, U.S. ... COURT
ALEX ... ...

## COMPLAINT

## THE PARTIES

1.     Plaintiff Allied Colloids Inc. is a New York Corporation with its principal offices at 2301 Willroy Road, Suffolk, Virginia 23434.  Allied Colloids Inc. resides and does business in this Judicial District.

2.     Plaintiff Allied Colloids Limited is a United Kingdom Corporation with its principal offices at Low Moor, Bradford, Yorkshire, United Kingdom, BD12 OJZ.

3.     Upon information and belief, Defendant American Cyanamid Company is a Maine Corporation with its headquarters at

One Cyanamid Plaza, Wayne, New Jersey 07470 and which maintains a place of business at 12701 Fair Lakes Circle, Fairfax, Virginia 22031. Defendant resides and does business in this Judicial District.

<u>BACKGROUND</u>

4.     Allied Colloids Inc. is involved in the marketing and sales from this District and elsewhere in the United States of polymeric flocculant materials manufactured by Allied Colloids Inc. and by Allied Colloids Limited.

5.     On January 19, 1988, United States Letters Patent Number 4,720,346, entitled "Flocculation Processes," was duly and legally issued to Allied Colloids Limited as assignee of Peter Flesher, David Farrar, and John R. Field, and since that date Allied Colloids Limited is and has been the sole owner of title to that United States Letters Patent.  A copy of said Patent is attached as Exhibit A.

6.     On July 24, 1990, United States Letters Patent Number 4,943,378, entitled "Flocculation Processes," was duly and legally issued to Plaintiff Allied Colloids Limited as assignee of Peter Flesher, David Farrar, and John R. Field, and since that date Allied Colloids Limited is and has been the sole owner of title to that United States Letters Patent.  A copy of said Patent is attached as Exhibit B.

7.     Allied Colloids Limited, as owner of United States Letters Patents Numbers 4,943,378 and 4,720,346, has granted an exclusive

- 2 -

license for both of the aforementioned Patents to Allied Colloids
Inc., thereby conferring to Allied Colloids Inc. the exclusive
right to make, have made, use, sell and/or lease products or
processes under the aforementioned United States Letters Patents
along with the right of enforcement of such United States Letters
Patents.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under
the patent laws of the United States (Title 35, United States
Code).  Jurisdiction is conferred on this Court by 28 U.S.C.
§ 1338(a).  Venue within this District is proper under 28 U.S.C. §
1400(b) and § 1391(c).

## FIRST COUNT
### DIRECT PATENT INFRINGEMENT

9.      Upon information and belief, Defendant American Cyanamid
Company, with knowledge of United States Letters Patents Numbers
4,720,346 (hereafter called the "'346 patent") and 4,943,378
(hereafter called the "'378 patent"), has been and is now
infringing these Letters Patents by using and/or participating in
the use within the United States of polymeric flocculant
materials, including, but not limited to, certain products
marketed under the names Magnifloc and Excel, in processes that
embody the inventions of these Letters Patents, without authority
or license from Allied Colloids Inc. or Allied Colloids Limited.

- 3 -

10.     Upon information and belief, Defendant's infringement of
said '346 and '378 patents has been willful and deliberate and
Defendant will continue its infringing activities unless enjoined
by this Court.

11.     Upon information and belief, Defendant has profited by its
infringing activities; Plaintiffs have been damaged by Defendant's
infringing activities and will be irreparably injured unless such
infringing activities are enjoined by this Court.

<div align="center">

SECOND COUNT

CONTRIBUTORY PATENT INFRINGEMENT

</div>

12.     Plaintiffs repeat paragraphs 1-11 as if set forth fully
herein.

13.     Upon information and belief, Defendant American Cyanamid
Company, with knowledge of United States Letters Patents Numbers
4,720,346 and 4,943,378, has been and is now contributing to
infringement of both of these Letters Patents by selling polymeric
flocculant materials for use in the United States in the methods
of the '378 and '346 patents, and with knowledge that such
polymeric flocculant materials are made specifically for use in
the methods of the '378 and '346 patents and are not staple
articles of commerce, all without authority or license from Allied
Colloids Inc. or Allied Colloids Limited.

14.     Upon information and belief, Defendant's contributory
infringement of the '378 and '346 patents has been willful and

deliberate and Defendant will continue its infringing activities unless enjoined by this Court.

15.    Upon information and belief, Defendant has profited by its infringing activities; Plaintiffs have been damaged by Defendant's infringing activities and will be irreparably injured unless such infringing activities are enjoined by this Court

THIRD COUNT

INDUCING PATENT INFRINGEMENT

16.    Plaintiffs repeat paragraphs 1-15 as if set forth fully herein.

17.    Defendant American Cyanamid Company, with knowledge of United States Letters Patents Numbers 4,720,346 and 4,943,378, has been and is now inducing infringement of these Letters Patents by selling and purposefully inducing others to use polymeric flocculant materials in methods that embody the inventions of the '378 and '346 patents, within the United States, all without authority or license from Allied Colloids Inc. or Allied Colloids Limited.

18.    Upon information and belief, Defendant's inducing infringement of said '346 and '378 patents has been willful and deliberate and Defendant will continue its infringing activities unless enjoined by this Court.

19.    Upon information and belief, Defendant has profited by its infringing activities; Plaintiffs have been damaged by Defendant's

- 5 -

infringing activities and will be irreparably injured unless such infringing activities are enjoined by this Court.

<div align="center">PRAYER FOR RELIEF</div>

WHEREFORE, as to Counts I-III, Plaintiffs pray:

a.    That judgment be entered against Defendant holding that Defendant has infringed, contributorily infringed and/or induced infringement of United States Letters Patents Numbers 4,720,346 and 4,943,378;

b.    That preliminary and permanent injunctions be issued enjoining Defendant, its officers, agents, servants, and employees and all persons in active concert or participation with any of them, from further infringement of said United States Letters Patents;

c.    That Plaintiffs be awarded all damages they have suffered arising out and/or as a result of Defendant's infringement, reasonable royalties for Defendant's infringement and all other relief provided for under 35 U.S.C. § 284;

d.    That Plaintiffs be awarded an assessment of interests, including prejudgment interests, and costs;

e.    That there be a finding that this case is exceptional and Plaintiffs be awarded their attorney's fees in this action;

f.    That Plaintiffs be awarded their costs and expenses in this action;

g.    That Plaintiffs be awarded a trebling of any and all damages and other relief awarded; and

h.    That this Court grant such further relief as the Court may deem necessary or proper.

A trial by jury on all matters is hereby demanded.


Dated:    November 25, 1992

_____
Gary M. Hoffman
Virginia Bar No. 12181
DICKSTEIN, SHAPIRO & MORIN
2101 L Street, N.W.
Washington, D.C.  20037
(202) 785-9700


OF COUNSEL:                          Attorneys for Plaintiffs Allied
                                     Colloids Inc. and Allied Colloids
James W. Brady, Jr.                  Limited
Alisa A. Harbin
DICKSTEIN, SHAPIRO & MORIN
2101 L Street, N.W.
Washington, D.C.  20037
(202) 785-9700


- 7 -

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C. A. No. 04-293 (KAJ) |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| HERCULES, INC. and CYTEC INDUSTRIES, INC., | ) ) ) ) | |
| Defendants. | ) | |

## AMENDED ANSWER AND COUNTERCLAIMS OF DEFENDANT HERCULES, INCORPORATED

Defendant Hercules, Incorporated ("Hercules") files this Amended Answer and Counterclaims in response to the Complaint dated May 7, 2004 filed by Plaintiff Ciba Specialty Chemicals Corporation ("Ciba").

### AMENDED ANSWER

### The Parties

1.   Upon information and belief, Hercules admits the allegations of paragraph 1 of the Complaint.

2.   Hercules admits the allegations of paragraph 2 of the Complaint.

3.   Upon information and belief, Hercules admits the allegations of paragraph 3 of the Complaint.

### Jurisdiction and Venue

4.   Hercules admits that Ciba alleges that Hercules infringes U.S. Patent Nos. 5,167,766 (the "'766 patent") and 5,171,808 (the "'808 patent") and seeks relief under

the patent laws of the United States. Hercules denies all remaining allegations of Paragraph 4.

5.    Hercules admits that, as to defendant Hercules, subject matter, personal jurisdiction and venue are proper in this Court. Hercules further admits that it is incorporated in the State of Delaware and is doing business in this district. As to the remaining allegations in paragraph 5 of the Complaint, Hercules has insufficient information to admit or deny them, and thus denies them.

### Patents in Suit

6.    Hercules admits that the '766 patent, entitled "Charged Organic Polymer Microbeads in Paper Making Process," was issued by the United States Patent and Trademark Office ("PTO") on December 1, 1992, and that a copy of the '766 patent was attached to the Complaint as Exhibit A. Hercules denies the remaining allegations of paragraph 6 of the Complaint, and specifically denies that the '766 patent was duly and legally issued by the PTO.

7.    Hercules admits that the '808 patent, entitled "Cross-linked Anionic and Amphoteric Polymeric Microparticles," was issued by the PTO on December 15, 1992, and that a copy of the '808 patent was attached to the Complaint as Exhibit B. Hercules denies the remaining allegations of paragraph 7 of the Complaint, and specifically denies that the '808 patent was duly and legally issued by the PTO.

8.    Upon information and belief, Hercules admits that, according to the records of the PTO, assignment of each of the '766 and '808 patents from Cytec to Ciba was recorded in the PTO on or about January 16, 2002. Hercules further admits that on or about October 24, 2002 it received a letter from Ciba referring Hercules to a number of

2

Ciba's patents, including the '808 and '766 patents, but specifically denies that Hercules received notice of alleged infringement of these patents. Hercules also denies the remaining allegations of paragraph 8 of the Complaint.

<div align="center">

**Patent Infringement**

</div>

9.     Hercules denies the allegations of paragraph 9 of the Complaint.

10.    Hercules denies the allegations of paragraph 10 of the Complaint.

11.    Hercules denies the allegations of paragraph 11 of the Complaint.

<div align="center">

**Plaintiff's Prayer For Relief**

</div>

12.    Hercules denies that Ciba is entitled to the relief requested in any of paragraphs A-F of the Complaint or to any other relief.

<div align="center">

**FIRST DEFENSE**

</div>

13.    Hercules has not infringed and is not infringing (either directly, contributorily, or by inducement) any claim of the '766 patent either literally or under the doctrine of equivalents.

14.    The prosecution history of the '766 patent estops Ciba from asserting infringement of any claim of the '766 patent.

15.    Hercules has not infringed and is not infringing (either directly, contributorily, or by inducement) any claim of the '808 patent either literally or under the doctrine of equivalents.

16.    The prosecution history of the '808 patent estops Ciba from asserting infringement of any claim of the '808 patent.

<div align="center">

3

</div>

## SECOND DEFENSE

17.    The '766 patent is invalid for failure to comply with the conditions for patentability specified by 35 U.S.C. §§ 102, 103, and/or 112.

18.    The '808 patent is invalid for failure to comply with the conditions for patentability specified by 35 U.S.C. §§ 102, 103, and/or 112.

## THIRD DEFENSE

19.    Ciba did not provide actual notice of infringement to Hercules prior to filing this lawsuit.

## FOURTH DEFENSE

20.    Upon information and belief, Ciba, Cytec Industries, Inc., and/or their licensees failed to comply with 35 U.S.C. § 287 in connection with the making, offering for sale, or selling of products covered by the patents-in-suit by failing to mark those products with the numbers of the patents-in-suit.

## FIFTH DEFENSE

21.    On information and belief, all claims of the patents-in-suit are unenforceable as a matter of law because persons owing a duty of candor to the PTO withheld from the PTO and misrepresented to the PTO highly material prior art during prosecution of the '766 and '808 patents.  Such intentional acts were material to patentability under PTO Rule 1.56.  The facts currently known on which Hercules will rely in support of this defense are set forth with particularity in paragraphs 16 to 78 of the Amended Counterclaims and are incorporated herein by reference.

4

## RIGHT TO ASSERT ADDITIONAL DEFENSES

22.     Hercules' investigations into the allegations set forth in Ciba's Complaint are ongoing and discovery has not been completed. Hercules expressly reserves the right to assert and pursue additional defenses.

## AMENDED COUNTERCLAIMS

### Parties and Jurisdiction

1.     Hercules is a Delaware corporation having its principal place of business at 1313 North Market Street, Wilmington, Delaware 19894.

2.     On information and belief, Ciba is a New York corporation having its principal place of business at 540 White Plains Road, Tarrytown, New York 10591.

3.     This Court has jurisdiction over these Counterclaims pursuant to at least 28 U.S.C. §§ 1331, 1338, 1367, and 2201.

4.     Venue is proper in this district under at least 28 U.S.C. §§ 1391 and 1400(b).

5.     These counterclaims are for declaratory judgment relief arising under 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 101 et seq.

### Counterclaim I - Declaratory Judgment of Noninfringement of the '766 Patent

6.     Hercules has not infringed, contributorily infringed, or induced infringement of the '766 patent, either literally or under the doctrine of equivalents.

7.     The prosecution history of the '766 patent estops Ciba from asserting infringement of any claim of the '766 patent.

5

8.     Hercules is entitled to a declaratory judgment that it has not infringed, and is not infringing, the '766 patent.

## Counterclaim II - Declaratory Judgment of Noninfringement of the '808 Patent

9.     Hercules has not infringed, contributorily infringed, or induced infringement of the '808 patent, either literally or under the doctrine of equivalents.

10.     The prosecution history of the '808 patent estops Ciba from asserting infringement of any claim of the '808 patent.

11.     Hercules is entitled to a declaratory judgment that it has not infringed, and is not infringing, the '808 patent.

## Counterclaim III - Declaratory Judgment of Invalidity of the '766 Patent

12.     The '766 patent is invalid for failure to comply with the conditions for patentability specified by 35 U.S.C. §§ 102, 103, and/or 112.

13.     Hercules is entitled to a declaratory judgment that the '766 patent is invalid.

## Counterclaim IV - Declaratory Judgment of Invalidity of the '808 Patent

14.     The '808 patent is invalid for failure to comply with the conditions for patentability specified by 35 U.S.C. §§ 102, 103, and/or 112.

15.     Hercules is entitled to a declaratory judgment that the '808 patent is invalid.

## Counterclaim V - Declaratory Judgment of Unenforceability of the '766 and '808 Patents

16.     Persons owing a duty of candor to the PTO during prosecution of the '766 and '808 patents did not disclose highly material prior art to the PTO, including U.S. Patent No. 4,720,346 to Flesher *et al* ("the Flesher '346 patent") and U.S. Patent No.

6

4,528,321 to Allen *et al.* ("the Allen '321 patent"). Their inequitable conduct during prosecution of the '766 and '808 patents renders unenforceable all claims of these patents.

17.    Like claim 1 of the '766 patent, the Flesher '346 patent discloses adding ionic, organic polymeric particles to an aqueous cellulosic suspension in a paper making process. ('346 patent, col. 5, lines 35-65; col. 8, lines 40-55.)

18.    The Flesher '346 patent teaches that these ionic, organic polymeric particles may be cross-linked. (*See id.* at col. 6, lines 52-57; col. 7, lines 51-54; Examples 2, 3, and 12.)

19.    The polymer particles of the Flesher '346 patent meet the particle size limitation of claim 1 of the '766 patent. (*See id.* at col. 6, lines 25-26 (stating that the polymeric material in suspension "should preferably be a microdispersion") and 31-33 (stating that its polymeric particles "are preferably below 2µm" in size); *see also* Examples 2, 3, and 12.)

20.    During prosecution of a patent application that was co-pending at the PTO with the '766 and '808 patents, the assignee of that application (American Cyanamid Corporation – "American Cyanamid") and persons at American Cyanamid owing a duty of candor to the PTO in connection with the prosecution of the '766 and '808 patents, including at least patent attorney Frank Van Riet, conceded that the polymer particles of the Flesher '346 patent would have sizes in the range of 0.2 to 2.0 microns:

> Further support for Appellants' position is found at col. 9,
> lines 21-24 of [the Flesher '346 patent] wherein EP No.
> 0126528 is disclosed as including details of the type of
> polymerization used in [the Flesher '346 patent]. As
> mentioned, macroemulsion technology produces polymer
> particles averaging about one (1) micron in diameter.

7

> *Reference to U.S. Patent No. 4,528,321, copy attached,*
> *which is an equivalent of the above-identified EP patent,*
> *shows the production of polymers having an average*
> *particle size range of from 0.2-2.0, see Example 1, line 50.*
> Thus, it is clear that [the Flesher '346 patent's] polymer
> particles, which are <u>all</u> above 0.2 micron and average 1.1
> micron, are far larger than claimed by Appellants i.e. all are
> below 0.1 micron, not an average.

(U.S. Application Serial No. 07/552,958, Appeal Brief on Behalf of Appellants dated

Sept. 13, 1991, at 8 (emphasis added; underlining in original).)

21.    The polymeric particles in the Flesher '346 patent meet the ionicity

limitation of claim 1 of the '766 patent of at least 1% (*see* '346 patent at col. 9, lines 56-

61; Examples 2, 3), or at least 5% if anionic and used alone (*see id.* at Example 12.)

22.    Additionally, a person of skill in the art would have known to add the

polymeric particles of the Flesher '346 patent to the aqueous paper furnish in the amount

required by claim 1 of the '766 patent (of about 0.05 to 20 lbs/ton).

23.    The Flesher '346 patent discloses adding between 0.2 and 60 lbs/ton of

polymeric particles to achieve optimum floc stability: "[s]uitable doses are in the range

of 0.01 to 3%, often 0.5 to 3%, by weight polymer based on dry solids." ('346 patent,

col. 11, lines 9-11; *see also* Example 14 (disclosing adding a polymer dose of about

6 kg/ton, which equals 13.2 lbs/ton).)

24.    The Flesher '346 patent thus anticipates at least claim 1 of the '766 patent.

25.    Like claim 1 of the '808 patent, the Flesher '346 patent discloses a

composition comprising anionic polymeric particles derived from the reverse phase

polymerization of an aqueous solution of at least one monomer. (*See id.* at col. 5, lines

63-64; col. 6, lines 45-47; col. 7, lines 45-54; col. 8, lines 40-46; Example 12.)

8

26.    The Flesher '346 patent teaches that these anionic polymeric particles may be cross-linked. (*See id.* at col. 6, lines 52-57; col. 7, lines 51-54; Example 12.)

27.    A cross-linking agent (methylene bis acrylamide - "MBA") is present in the Flesher '346 patent in the amount required by claim 1 of the '808 patent. (*See id.* at Example 12.)

28.    The cross-linked polymeric particles of the Flesher '346 patent meet the particle size limitation of claim 1 of the '808 patent. (*See id.* at col. 6, lines 25-26 and 31-33; Example 12; *see also* U.S. Application Serial No. 07/552,958, Appeal Brief on Behalf of Appellants dated Sept. 13, 1991, at 8.)

29.    The polymeric particles of Example 12 of the Flesher '346 patent also satisfy the ionicity limitation of claim 1. (*See id.* at Example 12.)

30.    The composition of Example 12 of the Flesher '346 patent meets the solution viscosity limitation of claim 1 of the '808 patent. (*See* '346 patent, Example 12; '808 patent, Table 1.)

31.    The Flesher '346 patent thus anticipates at least claim 1 of the '808 patent.

32.    Like claim 1 of the '808 patent, the Allen '321 patent discloses a composition comprising anionic polymeric particles derived from the reverse phase polymerization of an aqueous solution of at least one monomer. (*See* '321 patent, col. 4, lines 22-26, 43-48; Example 7.)

33.    The Allen '321 patent teaches that these anionic polymeric particles may be cross-linked. (*See id.* at col. 4, lines 59-69; Example 7.)

34.    A cross-linking agent (MBA) is present in the amount required by claim 1 of the '808 patent. (*See id.* at Example 7.)

9

35.    The cross-linked polymeric particles of the Allen '321 patent meet the particle size limitation of claim 1 of the '808 patent. (*See id.* at col. 5, lines 61-63; Example 7; *see also* U.S. Application Serial No. 07/552,958, Appeal Brief on Behalf of Appellants dated Sept. 13, 1991, at 8.)

36.    The polymeric particles of Example 7 of the Allen '321 patent also satisfy the ionicity limitation of claim 1. (*See* '321 patent, Example 7.)

37.    The composition of Example 7 of the Allen '321 patent meets the solution viscosity limitation of claim 1 of the '808 patent. (*See* '321 patent, Example 7.)

38.    The Allen '321 patent thus anticipates at least claim 1 of the '808 patent.

39.    The combination of the Flesher '346 patent and the prior art, including at least the Allen '321 patent, would have rendered obvious at least claims 1-6 of the '808 patent.

40.    The combination of the Flesher '346 patent and the prior art, including at least the Allen '321 patent and/or U.S. Patent No. 5,180,473 to Akune *et al.*, would have rendered obvious at least claims 1-3 of the '766 patent.

41.    PTO Rule 1.56 requires "[e]ach individual associated with the filing and prosecution of a patent application . . . to disclose to the Office all information known to that individual to be material to patentability as defined in this section." 37 C.F.R. § 1.56(a).

42.    Effective March 16, 1992, the PTO Rules provided the following amended definition for information to be considered "material to patentability":

> (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

10

(1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatantability relied on by the Office, or

(ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b).

43.     The Flesher '346 patent and the Allen '321 patent were more material than other prior art before the PTO during prosecution of the '766 and '808 patents.

44.     Had they been considered, the Flesher '346 patent and the Allen '321 patent would have supplied deficiencies in the other references cited during prosecution of the '766 and '808 patents.

45.     Had they been considered, the Flesher '346 patent and the Allen '321 patent would have refuted arguments for patentability urged by American Cyanamid and those involved in the prosecution of the '766 and '808 patents.

46.     During prosecution of the '766 patent, American Cyanamid argued that their claims would not have been obvious over U.S. Patent No. 4,659,431 to Probst *et al.* ("the Probst '431 patent") because this patent allegedly failed to teach (a) ionic polymeric particles, (b) that are cross-linked, and (c) that are added to the paper furnish, rather than the paper sheet itself, during the papermaking process:

"Thus, Probst fails to meet Applicants' claims because:

1.     The microbeads are preferably added to the paper rather than the furnish;

2.     The microbeads are not ionic and

11

> 3.    The microbeads are not cross-linked."

(U.S. Application Serial No. 07/540,667, Amendment dated Sept. 23, 1991 at 6-7; *see also* U.S. Application Serial No. 07/540,667, Amendment dated Mar. 16, 1992 at 1-5 (repeating these arguments).)

47.    In contrast to the Probst '431 patent, the Flesher '346 patent teaches the use of ionic polymeric particles that are cross-linked.

48.    In contrast to the Probst '431 patent, the Flesher '346 patent also teaches adding ionic, cross-linked polymeric particles to the paper furnish during the papermaking process.

49.    During prosecution of the '808 patent, American Cyanamid argued that U.S. Patent No. 4,147,688 to Makhlouf *et al.* ("the Makhlouf '688 patent") would not have rendered their claims obvious because this prior art allegedly failed to teach (a) preparing the polymeric particles solely from water-soluble monomers, and (b) using a cross-linking agent in the range of about 4 molar parts to about 4000 molar parts per million, instead of a higher range:

> "Thus, Appellants have clearly shown the unexpected superiority of the instant compositions produced by the claimed novel process. Therefore, since Makhlouf et al. fail to teach the necessity of using only water-soluble monomers and fail to teach the claimed, ***critical range of cross-linking agent***, it is respectfully submitted that the rejection based thereon is erroneous and should be reversed."

(U.S. Application Serial No. 07/803,120, Brief for Appellants dated Apr. 27, 1992, at 6 (emphasis added).)

12

50.    In contrast to the Makhlouf '688 patent, the Flesher '346 patent and the Allen '321 patent both contain Examples of compositions of polymeric particles prepared only from water-soluble monomers.

51.    In contrast to the Makhlouf '688 patent, the Flesher '346 patent and the Allen '321 patent both contain Examples of compositions of polymeric particles that use cross-linking agents in the claimed range of about 4 molar parts to about 4000 molar parts per million.

52.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least the in-house patent attorney who prosecuted the '766 patent, Mr. Frank Van Riet, were aware of the Flesher '346 patent during prosecution of the '766 patent.

53.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, who also prosecuted the '808 patent, were aware of the Flesher '346 patent during prosecution of the '808 patent.

54.    The Flesher '346 patent was not cited to the PTO or considered by the PTO during prosecution of either the '766 or '808 patents.

55.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, were aware of the Allen '321 patent during prosecution of the '808 patent.

56.    The Allen '321 patent was not cited to the PTO or considered by the PTO during prosecution of the '808 patent.

57.    Claim 1 of the '808 patent recites "[a] composition comprising cross-linked anionic or amphoteric polymeric microparticles."

13

58.    The specification of the '808 patent misrepresents that the European counterpart to the Flesher '346 patent, EP 0,202,780, "describes the preparation of polymeric, crosslinked, *cationic* acrylamide polymer beads by *conventional* inverse emulsion polymerization techniques." ('808 patent, col. 1, lines 23-25 (emphasis added).)

59.    The specification of the '766 patent contains a similarly misleading statement describing EP 0,202,780 as being limited to "cationic" polyacrylamide beads prepared by "conventional" polymerization techniques. (*See* '766 patent, col. 2, lines 47-49.)

60.    The Flesher '346 patent describes the preparation of polymeric, crosslinked, anionic acrylamide polymer particles in addition to cationic ones. (*See* '346 patent, Example 12; *see also* col. 5, lines 63-64 (stating that when forming paper and paper products "the flocculant polymer is preferably an anionic polyacrylamide.").)

61.    Instead of describing polymeric particles formed by "conventional" processes, the polymeric particles of the Flesher '346 patent are ionic, organic, cross-linked particles meeting the limitations of claim 1 of both the '766 and '808 patents. (*See* '346 patent, Example 12.)

62.    The Flesher '346 patent and the Allen '321 patent were brought to the attention of persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, many times prior to issuance of the '766 and '808 patents.

63.    For instance, the Flesher '346 patent was cited during the prosecution of U.S. Patent Nos. 5,132,023 and 5,104,552, both of which were prosecuted by Mr. Van Riet and both of which issued before the '766 and '808 patents.

14

64.    Mr. Van Riet also had knowledge of the Flesher '346 patent because it had been cited during prosecution of other American Cyanamid patent applications that were pending at the PTO before or during prosecution of the '766 and '808 patents. These include U.S. Application Serial Nos. 07/286,015, 07/409,366, 07/285,940, 07/864,243, 07/643,309, and 07/552,958.

65.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, were also aware of the Flesher '346 patent, or its European equivalent, by virtue of having identified EP 0,202,780 in the specifications of the '766 and '808 patents.

66.    Furthermore, during an appeal to the PTO Board of Patent Appeals and Interferences during prosecution of U.S. Application Serial No. 07/552,958, Mr. Van Riet argued that the Allen '321 patent disclosed that the polymeric particles of the Flesher '346 patent would have sizes in the range of 0.2 to 2.0 microns. (*See* U.S. Application Serial No. 07/552,958, Appeal Brief on Behalf of Appellants dated Sept. 13, 1991, at 8 (quoted in paragraph 20 above).)

67.    Persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, were further aware of the Allen '321 patent because they cited this prior art during prosecution of U.S. Application Serial No. 07/922,885. This citation of the Allen '321 patent also occurred before issuance of the '766 and '808 patents.

68.    Prior to issuance of the '766 and '808 patents, Allied Colloids Ltd. sued American Cyanamid Company and Cyanamid of Great Britain for infringement of EP 0,202,780.

15

69.     Prior to issuance of the '766 and '808 patents, Allied Colloids Ltd. and its U.S. licensee, Allied Colloids Inc. (collectively "Allied Colloids"), also sued American Cyanamid for infringement of the Flesher '346 patent.

70.     Allied Colloids' complaint averred that American Cyanamid's infringement of the Flesher '346 patent was willful and had occurred "with knowledge of" that patent.

71.     Upon information and belief, persons at American Cyanamid involved with the prosecution of the '766 and '808 patents had such prior knowledge of the Flesher '346 patent.

72.     In spite of all the above instances where the Flesher '346 patent and the Allen '321 patent were brought to the attention of persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, this prior art was not brought to the attention of the PTO during prosecution of the '808 patent.

73.     After the PTO mailed a Notice of Allowance for the '766 patent on March 23, 1992, American Cyanamid and Mr. Van Riet waited until April 27, 1992 and then cited EP 0,202,780 to the PTO along with 15 other references.

74.     At the time when American Cyanamid and Mr. Van Riet cited EP 0,202,780, the PTO's Rules precluded it from considering additional references and the PTO therefore refused to consider this European counterpart to the Flesher '346 patent.

75.     Upon information and belief, at least Mr. Van Riet knew or should have known that the citation of references including EP 0,202,780 was not timely and that the references could not be considered by the PTO.

16

76.     American Cyanamid and Mr. Van Riet could have withdrawn the '766 patent from issuance and properly cited EP 0,202,780 or the Flesher '346 patent for consideration by the PTO but did not do so.

77.     By their course of conduct, persons at American Cyanamid owing a duty of candor to the PTO, including at least Mr. Van Riet, purposefully prevented the PTO from considering the most pertinent prior art, the Flesher '346 patent and the Allen '321 patent, during prosecution of the '766 and '808 patents.

78.     Such purposeful conduct along with the high materiality of these prior art references is sufficient to establish an intent to mislead the PTO into wrongfully allowing the '766 and '808 patents to issue.

### Right to Assert Additional Counterclaims

79.     Hercules' investigations into the allegations set forth by in Ciba's Complaint are ongoing and discovery has not been completed. Hercules expressly reserves the right to assert and pursue additional counterclaims.

### Prayer for Relief

For the reasons set forth above, Hercules prays for the Court's entry of judgment for it and against Ciba as follows:

A.     Declaring the '766 patent to be invalid;

B.     Declaring the '808 patent to be invalid;

C.     Declaring that Hercules has not infringed, contributorily infringed or induced infringement of the '766 patent;

D.     Declaring that Hercules has not infringed, contributorily infringed or induced infringement of the '808 patent;

17

E        Declaring the '766 patent to be unenforceable;

F.        Declaring the '808 patent to be unenforceable;

G        Dismissing Ciba's Complaint with prejudice;

H.        Declaring that this case is exceptional pursuant to 35 U.S.C. § 285;

I.        Awarding to Hercules its costs, expenses, and reasonable

attorney's fees incurred in defending against Ciba's claims in this action; and

J.        Awarding to Hercules such other and further relief as this Court

deems just and proper.


POTTER ANDERSON & CORROON LLP


By: _____

OF COUNSEL:                     Richard L. Horwitz (#2246)
                                David E. Moore (#3983)
Ford F. Farabow, Jr.            Hercules Plaza, 6th Floor
Joann M. Neth                   1313 N. Market Street
Eric J. Fues                    P. O. Box 951
Neal Seth                       Wilmington, DE  19899-0951
FINNEGAN, HENDERSON, FARABOW,   (302) 984-6000
    GARRETT & DUNNER, L.L.P.     rhorwitz@potteranderson.com
901 New York Avenue, N.W.       dmoore@potteranderson.com
Washington, DC  20001-4413
(202) 408-4000                  *Attorneys for Defendant*
                                *Hercules, Inc.*

Dated:


.

18

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C. A. No. 04-293 (KAJ) |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| HERCULES, INC. and CYTEC INDUSTRIES, INC., | ) ) ) | |
| Defendants. | ) ) | |

### HERCULES'S FIRST SET OF REQUESTS (NOS. 1-60) TO CIBA FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Hercules, Inc. ("Hercules") requests that Plaintiff Ciba Specialty Chemicals Corporation ("Ciba") produce for inspection and copying all documents and things requested herein within thirty (30) days of service in accordance with the definitions and instructions set forth below. Production of these documents and things shall be at the office of Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., 901 New York Avenue, NW, Washington, D.C. 20001-4413, or at another time and place as may be mutually agreed upon by counsel for the parties.

### DEFINITIONS OF TERMS

The following definitions apply to all of Hercules's discovery requests in this case as well as to Ciba's discovery responses:

**DOCUMENT REQUEST NO. 2.**

All documents and things relating to Ciba's acquisition of the '766 patent.

**DOCUMENT REQUEST NO. 3.**

All documents and things relating to Ciba's acquisition of the '808 patent.

**DOCUMENT REQUEST NO. 4.**

All documents and things related to the prosecution of the '766 patent.

**DOCUMENT REQUEST NO. 5.**

All documents and things relating to any analysis, including opinions of counsel, performed by or for Ciba relating to the '766 patent.

**DOCUMENT REQUEST NO. 6.**

All documents and things related to the prosecution of the '808 patent.

**DOCUMENT REQUEST NO. 7.**

All documents and things relating to any analysis, including opinions of counsel, performed by or for Ciba relating to the '808 patent.

**DOCUMENT REQUEST NO. 8.**

All documents and things relating to any Hercules PerForm® product, including but not limited to PerForm® SP9232.

**DOCUMENT REQUEST NO. 9.**

All documents and things relating to any test or analysis performed by or for Ciba or any Ciba or Hercules customer, on any Hercules PerForm® product, including all reports, studies, chemical analyses, test data or results, competitive analyses or summaries, market analyses or summaries, reports to management, and other documents and things relating to any Hercules

-6-

PerForm® product or formulation anywhere in the world (whether or not commercial), including but not limited to PerForm® SP9232.

**DOCUMENT REQUEST NO. 10.**

All documents and things relating to the development of any Ciba product, or the use thereof, that Ciba alleges is or was encompassed by the claims of the '766 patent or the '808 patent.

**DOCUMENT REQUEST NO. 11.**

Representative 16 oz. samples of each of the raw materials used in the process or processes of manufacturing any Ciba product, or the use thereof, that Ciba alleges is or was encompassed by the claims of the '766 patent or the '808 patent. Such samples should be labeled to indicate the identity of each of the sampled raw materials and the names used by Ciba to identify the product or products produced using the raw materials.

**DOCUMENT REQUEST NO. 12.**

Representative 16 oz. samples of any of the emulsions produced during the process or processes used to manufacture any Ciba product, or the use thereof, that Ciba alleges is or was encompassed by the claims of the '766 patent or the '808 patent.

**DOCUMENT REQUEST NO. 13.**

Representative 16 oz. samples of each Ciba product, or the use thereof, that Ciba alleges is or was encompassed by the claims of the '766 patent or the '808 patent.

**DOCUMENT REQUEST NO. 14.**

All documents and things relating to Hercules Patent Publication No. US 2004/0102528A1, published May 27, 2004, and/or any related U.S. or foreign patent application

**DOCUMENT REQUEST NO. 27.**

All documents and things relating to the preparation, filing, prosecution, opposition, enforcement, or proposed enforcement of any foreign patent application or patent, or any U.S. patent, related to the '766 patent or '808 patent.

**DOCUMENT REQUEST NO. 28.**

All legal opinions relating to the '766 patent, '808 patent, or any related U.S. or foreign patent application or patent.

**DOCUMENT REQUEST NO. 29.**

All agreements or proposed agreements, including but not limited to license agreements, relating to the '766 patent, the '808 patent, or any related U.S. or foreign patent application or patent.

**DOCUMENT REQUEST NO. 30.**

All search reports, novelty reports, or prior art reports or summaries relating to the '766 patent, the '808 patent, or any related U.S. or foreign patent application or patent, whether prepared by a governmental agency or any other person.

**DOCUMENT REQUEST NO. 31.**

All press releases, press statements, articles, reports to Ciba management or shareholders, internal memoranda, or other documents and things relating to the acquisition of LPM Technologies, Inc.

**DOCUMENT REQUEST NO. 32.**

All documents and things relating to the PROFORM product manufactured by LPM Technologies, Inc.

**DOCUMENT REQUEST NO. 37.**

All documents and things relating to the characterization of any Ciba product, or the use thereof, that Ciba alleges is or was encompassed by the claims of the '766 patent or the '808 patent.

**DOCUMENT REQUEST NO. 38.**

All agreements or proposed agreements, including but not limited to license agreements, relating to Ciba's Telioform™ System and/or product(s), including, but not limited to, Polyflex®, Particol®, Hydrocol®, Percol®, and Alcofix®.

**DOCUMENT REQUEST NO. 39.**

All documents and things relating to U.S. Patent No. 4,720,346.

**DOCUMENT REQUEST NO. 40.**

All documents and things relating to a litigation between Allied Colloids Inc., et al. and American Cyanamid Co., in the Eastern District of Virginia, Civil Docket 92-CV-1658, including but not limited to, U.S. Patent No. 4,720,346.

**DOCUMENT REQUEST NO. 41.**

All documents and things relating to Appeal No. 95-3682 before the U.S. Board of Patent Appeals and Interferences, including but not limited to, U.S. Patent No. 4,720,346.

**DOCUMENT REQUEST NO. 42.**

All documents and things relating to knowledge of U.S. Patent No. 4,528,321 by any person owing a duty of candor to the USPTO during prosecution of the '766 patent or the '808 patent, or related applications or patents, including when such parson(s) first became aware of U.S. Patent No. 4,528,321.

**DOCUMENT REQUEST NO. 43.**

All documents and things relating to knowledge of U.S. Patent No. 4,720,346 by any person owing a duty of candor to the USPTO during prosecution of the '766 patent or the '808 patent, or related applications or patents, including when such parson(s) first became aware of U.S. Patent No. 4,720,346.

**DOCUMENT REQUEST NO. 44.**

All documents concerning the organization of Ciba's divisions, departments, units, or subdivisions, including organizational charts sufficient to show reporting relationships among the authors and recipients of Ciba's internal documents produced in response to Hercules' requests.

**DOCUMENT REQUEST NO. 45.**

All documents relating to any Ciba document retention policy or program, past or present, that covers any document responsive to these requests.

**DOCUMENT REQUEST NO. 46.**

All documents provided to or received from any expert or other consultant retained by Ciba in connection with this action.

**DOCUMENT REQUEST NO. 47.**

All documents concerning any settlement of litigation, conflict, interference, opposition, nullity, or revocation proceeding or action involving the '766 patent, the '808 patent, or any related U.S. or foreign patent.

-13-

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
A. Neal Seth
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

By: _____
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000

Dated:  January 19, 2005

*Attorneys for Defendant*
*Hercules, Inc.*

666987

-17-

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 19, 2005, true and correct

copies of the within document were caused to be served on the attorney of record at the

following addresses as indicated:

### VIA HAND DELIVERY

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE 19899

### VIA FEDERAL EXPRESS

Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601-6780

Thomas L. Creel, P.C.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022


_____
David E. Moore

666520

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS CORPORATION,  )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )    C. A. No. 04-293 (KAJ)
                                        )
HERCULES INCORPORATED and               )
CYTEC INDUSTRIES, INC.,                 )
                                        )
            Defendants.                 )

## HERCULES' FOURTH SET OF REQUESTS (NOS. 78-88) TO CIBA FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Hercules Incorporated ("Hercules") requests that Plaintiff Ciba Specialty Chemicals Corporation ("Ciba") produce for inspection and copying all documents and things requested herein within thirty (30) days of service in accordance with the definitions and instructions set forth below. Production of these documents and things shall be at the office of Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., 901 New York Avenue, NW, Washington, D.C. 20001-4413, or at another time and place as may be mutually agreed upon by counsel for the parties.

## DEFINITIONS AND INSTRUCTIONS

Hercules hereby incorporates by reference, as if set forth fully herein, the Definitions of Terms and Instructions set forth in Hercules' First Set of Requests (Nos. 1-60) to Ciba for the Production of Documents and Things, served on January 19, 2005.

## DOCUMENT REQUESTS

## DOCUMENT REQUEST NO. 78

All documents and things referring or relating to Hypermer.

<u>DOCUMENT REQUEST NO. 79</u>

All documents and things referring or relating to Hypermer B246.

<u>DOCUMENT REQUEST NO. 80</u>

All documents and things referring or relating to Hypermer B246SF.

<u>DOCUMENT REQUEST NO. 81</u>

All documents and things concerning any review by American Cyanamid, Cytec or Ciba of United States Patent Nos.4,720,346 (to Flesher et al.) and/or 4,528,321 (to Allen et al.), including any analysis of their disclosures and/or claims.

<u>DOCUMENT REQUEST NO. 82</u>

All documents and things Ciba will rely on at trial to assert that the Hypermer B246SF in Hercules' PerForm® SP 9232 product acts as a crosslinking agent in that product.

<u>DOCUMENT REQUEST NO. 83</u>

All documents and things Ciba reviewed, considered, or relied upon in connection with its assertion at the May 27, 2005 Technology Tutorial that the Hypermer B246SF and/or sorbitan monooleate in Hercules' PerForm® SP9232 product causes crosslinking in that product.

<u>DOCUMENT REQUEST NO. 84</u>

All documents and things Ciba reviewed, considered, or relied upon in connection with its assertion that the Hypermer B246SF and/or sorbitan monooleate in Hercules' PerForm® SP9232 product causes crosslinking in that product.

<u>DOCUMENT REQUEST NO. 85</u>

All documents and things concerning the properties, reactivity, or use in any emulsion process of Hypermer B246SF.

2

<u>DOCUMENT REQUEST NO. 86</u>

All documents and things concerning the properties, reactivity, or use in any emulsion process of Atlas G-946.

<u>DOCUMENT REQUEST NO. 87</u>

All documents and things concerning the properties, reactivity, or use in any emulsion process of Arlacel 80AC.

<u>DOCUMENT REQUEST NO. 88</u>

All documents and things concerning hydrophobe/hydrophobe associations in polymer networks or emulsion polymerization.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
A. Neal Seth
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

By: _____
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     P.O. Box 951
     Wilmington, DE 19899-0951
     Tel: (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

Dated: June 15, 2005

*Attorneys for Defendant*
*Hercules Incorporated*

686670

3

<u>CERTIFICATE OF SERVICE</u>

I, David E. Moore, hereby certify that on June 15, 2005, true and correct copies of

the within document were caused to be served on the attorney of record at the following

addresses as indicated:

<u>VIA HAND DELIVERY</u>

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE  19899

<u>VIA FEDERAL EXPRESS</u>

Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601-6780

Thomas L. Creel, P.C.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022

_____
David E. Moore

666520

# Exhibit
# E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS           )
CORPORATION,                       )
                                   )
             Plaintiff,            )
                                   )     C. A. No. 04-293 (KAJ)
        v.                         )
                                   )
HERCULES INCORPORATED and          )
CYTEC INDUSTRIES, INC.,            )
                                   )
             Defendants.           )

## HERCULES' SIXTH SET OF REQUESTS (NOS. 99-115) TO
## CIBA FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Hercules

Incorporated ("Hercules") requests that Plaintiff Ciba Specialty Chemicals Corporation ("Ciba")

produce for inspection and copying all documents and things requested herein within thirty (30)

days of service in accordance with the definitions and instructions set forth below. Production of

these documents and things shall be at the office of Finnegan, Henderson, Farabow, Garrett &

Dunner, L.L.P., 901 New York Avenue, NW, Washington, D.C. 20001-4413, or at another time

and place as may be mutually agreed upon by counsel for the parties.

## DEFINITIONS AND INSTRUCTIONS

Hercules hereby incorporates by reference, as if set forth fully herein, the Definitions of

Terms and Instructions set forth in Hercules' First Set of Requests (Nos. 1-60) to Ciba for the

Production of Documents and Things, served on January 19, 2005. The following Terms shall

additionally apply to these requests for production of documents and things:

1.    The term "the '346 patent" shall refer to U.S. Patent No. 4,720,346 (to Flesher *et al.*).

2.    The term "the '321 patent" shall refer to U.S. Patent No. 4,528,321 (to Allen *et al.*).

3.    The term "any related U.S. or foreign patent application or patent" with respect to the '346 patent shall include any patent application that claims priority from the '346 patent, any patent application (including foreign application(s)) from which a claim of priority has been made in the '346 patent, any divisional, continuation, CIP, reissue or reexamination of the '346 patent, any foreign counterpart application, and any patent issuing from any of the foregoing.

4.    The term "any related U.S. or foreign patent application or patent" with respect to the '321 patent shall include any patent application that claims priority from the '321 patent, any patent application (including foreign application(s)) from which a claim of priority has been made in the '321 patent, any divisional, continuation, CIP, reissue or reexamination of the '321 patent, any foreign counterpart application, and any patent issuing from any of the foregoing.

## DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 99

All correspondence, notebooks, research reports, data sets, and data compilations concerning the '346 patent and/or any related U.S. or foreign patent application or patent, including any particle size data and measurements.

### DOCUMENT REQUEST NO. 100

All correspondence, notebooks, research reports, data sets, and data compilations concerning the '321 patent and/or any related U.S. or foreign patent application or patent, including any particle size data and measurements.

## DOCUMENT REQUEST NO. 101

All documents and things referring or relating to the European opposition proceeding involving EP-B-0202780 or any counterpart thereof, including all documents concerning the intervention of Cyanamid of Great Britain Limited into that proceeding.

## DOCUMENT REQUEST NO. 102

All documents and things referring or relating to the U.K. infringement litigation between Allied Colloids Limited, American Cyanamid Company, and Cyanamid of Great Britain Limited involving United Kingdom Patent number EP-202780-B1 that discuss, characterize or interpret the disclosure of the '346 patent and/or any related U.S. or foreign patent application or patent.

## DOCUMENT REQUEST NO. 103

All documents and things referring or relating to any testing, analysis, or characterization by American Cyanamid, Cytec, Allied Colloids, or Ciba of the chemical structure, constituents, reactivity, or feedstock make-up of sorbitan monooleate, Atlas G-946, Arlacel 80AC, and/or Span 80.

## DOCUMENT REQUEST NO. 104

All documents and things referring or relating to any testing, analysis, or characterization by American Cyanamid, Cytec, Allied Colloids, or Ciba of the chemical structure, constituents, reactivity, or feedstock make-up of sorbitan sesquioleate and/or Arlacel 83, including any analysis of the monoester or diesters thereof.

## DOCUMENT REQUEST NO. 105

All documents and things referring or relating to any testing, analysis, or characterization by American Cyanamid, Cytec, Allied Colloids, or Ciba of the chemical structure, constituents, reactivity, or feedstock make-up of sorbitan trioleate.

## DOCUMENT REQUEST NO. 106

All documents and things referring or relating to any testing, analysis, or characterization by American Cyanamid, Cytec, Allied Colloids, or Ciba of the chemical structure, constituents, reactivity, or feedstock make-up of polyoxyethylene (20) sorbitan trioleate.

## DOCUMENT REQUEST NO. 107

All documents and things referring or relating to any testing, analysis, or characterization by American Cyanamid, Cytec, Allied Colloids, or Ciba of the chemical structure, constituents, reactivity, or feedstock make-up of polyoxyethylene sorbitol hexaoleate, polyoxyethylene (40) sorbitol hexaoleate, and/or Atlas G-1086.

## DOCUMENT REQUEST NO. 108

All documents and things referring or relating to any testing, analysis, or characterization by American Cyanamid, Cytec, Allied Colloids, or Ciba of the chemical structure, constituents, or feedstock make-up of Hypermer B246SF, Rapisol B246, and/or "polyhydroxy stearic acid-polyethylene glycol condensates" as that term is used in col. 5, lines 14-15 of the '321 patent.

## DOCUMENT REQUEST NO. 109

All documents and things in Ciba's possession, custody or control that concern the reactivity of Hypermer B246SF, Rapisol B246, and/or "polyhydroxy stearic acid-polyethylene glycol condensates" as that term is used in col. 5, lines 14-15 of the '321 patent, including all documents supporting or refuting Ciba's contention that Hypermer B246SF is a reactive surfactant.

<u>DOCUMENT REQUEST NO. 110</u>

All correspondence, pleadings, motion papers, expert reports, deposition transcripts, deposition exhibits, and trial exhibits concerning *Allied Colloids Inc v American Cyanamid Co.*, No. 92-CV-1658 (E.D.Va.) in Ciba's possession, custody or control that discuss, characterize or interpret the disclosure of the '346 patent and/or any related U.S. or foreign patent application or patent.

<u>DOCUMENT REQUEST NO. 111</u>

All correspondence, pleadings, motion papers, expert reports, deposition transcripts, deposition exhibits, and trial exhibits concerning *Allied Colloids Inc v American Cyanamid Co*, No. 92-CV-1658 (E.D.Va.) in Ciba's possession, custody or control that discuss, characterize or interpret the disclosure of the '321 patent and/or any related U.S. or foreign patent application or patent.

<u>DOCUMENT REQUEST NO. 112</u>

All correspondence, filings, briefs, and appendix documents in Ciba's possession, custody or control concerning Appeal No. 93-1407 to the United States Court of Appeals for the Federal Circuit.

<u>DOCUMENT REQUEST NO. 113</u>

All documents concerning any assignment of the '346 patent and/or any related U.S. or foreign patent application or patent to Allied Colloids or Ciba.

<u>DOCUMENT REQUEST NO. 114</u>

All documents concerning any assignment of the '321 patent and/or any related U.S. or foreign patent application or patent to Allied Colloids or Ciba.

## DOCUMENT REQUEST NO. 115

All documents in Ciba's possession, custody or control that comprise communications between or among American Cyanamid, Cytec, and Allied Colloids that occurred prior to November 25, 1992.

POTTER ANDERSON & CORROON LLP

By: _____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

OF COUNSEL:

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
A. Neal Seth
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Defendant,*
*Hercules Incorporated*

Dated: July 19, 2005

691230

-6-

<u>CERTIFICATE OF SERVICE</u>

I, David E. Moore, hereby certify that on July 19, 2005, true and correct copies of

the within document were caused to be served on the attorney of record at the following

addresses as indicated:

<u>VIA HAND DELIVERY</u>

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE  19899

<u>VIA FEDERAL EXPRESS</u>

Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601-6780

Thomas L. Creel, P.C.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022

_____
David E. Moore

666520

# Exhibit F

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit G

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit H

As Filed with the Securities and Exchange Commission on February 1, 2005

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

# FORM 20-F

**(Mark One)**

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR 12(g) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2004**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15 (d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from __________ to __________**

# Ciba Specialty Chemicals Holding Inc.

*(Exact name of Registrant as specified in its charter)*

**Switzerland**
*(Jurisdiction of incorporation or organization)*

**Klybeckstrasse 141**
**4002 Basel**
**Switzerland**
*(Address of principal executive offices)*

Securities registered or to be registered pursuant to Section 12(b) of the Act.

| Title of each class | Name of each exchange on which registered |
|---|---|
| American Depositary shares, Each representing one half of one ordinary share, nominal value CHF 3 per share | New York Stock Exchange |
| Ordinary shares, par value CHF 3 per share* | |

*Not for trading but only in connection with the registration of the American Depositary Shares pursuant to the requirements of tl Securities and Exchange Commission.

H 1

Securities registered or to be registered pursuant to Section 12(g) of the Act.

None

(Title of Class)

Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act.

None

(Title of Class)

Indicate the number of outstanding shares of each of the issuer's classes of capital or common stock as of the close of the period covered by the annual report, December 31, 2004.

70 826 617 Registered Shares

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

Yes ☑          No ☐

Indicate by check mark which financial statement item the registrant has elected to follow.

Item 17 ☐          Item 18 ☑

H 2

**Introduction**

**Currency Translation**

**Cautionary Statement Regarding Forward-Looking Statements**

**PART I**
    Item 1. Identity of Directors, Senior Management and Advisors (N/A)
    Item 2. Offer Statistics and Expected Timetable (N/A)
    Item 3. Key Information
    Item 4. Information on the Company
    Item 5. Operating and Financial Review and Prospects
    Item 6. Directors, Senior Management and Employees
    Item 7. Major Shareholders and Related Party Transactions
    Item 8. Financial Information
    Item 9. The Offer and Listing
    Item 10. Additional Information
    Item 11. Quantitative and Qualitative Disclosures About Market Risk
    Item 12. Description of Securities Other than Equity Securities (N/A)

**PART II**
    Item 13. Defaults, Dividend Arrearages and Delinquencies
    Item 14. Material Modifications to the Rights of Security Holders and Use of Proceeds
    Item 15. Controls and Procedures
    Item 16. [Reserved]
    Item 16A. Audit Committee Financial Expert
    Item 16B. Code of Ethics
    Item 16C. Principal Accountant Fees and Services
    Item 16D. Exemptions from the Listing Standards for Audit Committees (N/A)
    Item 16E  Purchases of Equity Securities by the Company

**PART III**
    Item 17. Financial Statements
    Item 18. Financial Statements
    Item 19. Exhibits

**Signature**

H 3

**Water & Paper Treatment**

Water & Paper Treatment is one of the leading global suppliers to the paper industry, the municipal and industrial water treatment industries and the detergents and hygiene industries, and is managed as an integrated global business. The markets in which the Segment is present have been affected by increasing environmental and safety regulations that govern the industries of the Company's customers. These regulations have resulted in an increased demand for more innovative products with lower environmental impact.

Water & Paper Treatment products and services for the paper and board industry increase the speed, run-ability and quality of the paper making process (retention and drainage aids, deposit control aids). Furthermore, they improve the visual appearance, optical properties and printability of the paper (paper whiteners, paper coloration, starch and latex binders, coating additives and surface modifiers), impart water, oil and grease resistance (barrier effects and sizing), and provide stable images on carbonless and thermal papers. The Segment's newly acquired Technical Centers in Finland further enhance our position as a total solution provider to the paper industry.

The products and services offered in the area of water treatment improve the separation of solids from liquids, purify water, dewater sludge for disposal and enhance dredging applications. In extractive and process technologies, the Segment's products improve the efficiency of all extraction and mineral processing. The Segment also serves a number of niche markets including soil additives where products improve plant nutrition and soil fertility, and performance intermediates where high purity specialty monomers are supplied by the Segment for various applications (e.g. rubbers and adhesives). The Segment's activities in industrial water management aim to bring a service oriented approach by providing customers with complete solutions that meet all their industrial water treatment needs. Strong, local support is available through a network of partners, each providing expertise and industry leading Ciba® IRGATREAT™ product technology, equipment and services.

In the area of detergents and hygiene, the Segment's products and services are used in the home and fabric care industries as well as the personal care market. Whiteners, used in detergents, enhance the whiteness and brightness of textiles while antimicrobial solutions are used in personal care products and promote good health, prevent infections and contribute to the personal well being.

The table below sets forth certain historical combined financial information and the percentage contribution to the consolidated Company net sales from continuing operations for Water & Paper Treatment for the years ended December 31, 2004, 2003 and 2002.

| Amounts in CHF millions, except percentages | 2004 | 2003 | 2002 |
|---|---|---|---|
| Total Segment net sales | 2 014 | 1 616 | 1 718 |
| Operating income | 126 | 130 | 173 |
| Capital expenditures | 81 | 55 | 45 |
| Research and development expenditures | 42 | 33 | 33 |
| Contribution to the consolidated Company net sales from continuing operations, in % | 28.7% | 24.3% | 24.2% |

*Products*

In the paper industry, there is an ongoing demand for more efficient production processes and this is where Ciba' patented technologies such as the Ciba® TELIOFORM® retention and drainage aid system and Ciba® PERGAFAST™ Color Developer for the Color Former market bring value to customer. At the same time, consumers are demanding more innovative paper products and here the Company's range of effect chemicals – whiteners, colors, color formers, barrier effects and coating and surface solutions - allow the Company to be a leading innovator in meeting consumer requirements. The rapid change of technology, the globalization of the customer base and the growing importance of emerging economies are likely to shape the future direction of these markets. Of particular importance are the growing environmental regulations, which are expected to contribute to a growth in chemical demand in excess of that of the paper and board industry.

The Segment develops, produces and sells the following products to the water treatments market segment: Ciba® ZETAG®, Ciba® MAGNAFLOC® and Ciba® MAGNASOL® polyacrylamide polymers, organic coagulants, and poly acrylic acid polymers. The main usage of these products is as flocculants for the separation of solid particles from water. The recently launched Ciba® KRYSALIS® products for the dredging industry enhance solid liquid separation and the separation of contaminants from the dredging sediment. Ciba® RHEOMAX™ tailings management products for the mining industry allow minimalization of water consumption and maximization of water recovery, thereby reducing disposal areas and hence generating cost savings in waste disposal. The water treatments product range also includes Ciba® IRGATREAT™ specialty formulations for the full range of water purification and conditioning applications, dispersants to reduce the viscosity and to increase the performance of inorganic pigments and fillers in water systems, monomers as building blocks used in water treatment, adhesives, synthetic fibers and antistatic finishes as well as Ciba® LIBFER® iron chelate to correct deficiencies in crops grown intensively.

The leading product lines in detergents and hygiene include Ciba® TINOPAL® whiteners for detergents and Ciba® IRGASAN®, Ciba® IRGACARE® and Ciba® TINOSAN® antimicrobials providing hygiene effects for personal care products. Whiteners are supplied to the detergents industry. In detergents, the demand for whiteners has stagnated in the European, United States and Japanese markets, while the

H 4

emerging markets of Asia and South America continue to show signs of growth. Hygiene effects are high value-adding antimicrobial ingredients supplied to the personal care and home and fabric care industries. Main applications include soaps, deodorants, toothpastes, dishwashing liquids, detergents and disinfectants for hospitals and medical purposes. The Segment's antimicrobial solutions continue to be recognized as the industry standard for efficiency, performance and safety by key customers.

H5

this has been evaluated by the Company. EPA and other U.S. agencies have also become increasingly active in the area of global chemical control and are taking the lead on many issues of global concern within the OECD. The Company actively supports these initiatives for more globally harmonized requirements and the effort being applied to minimize resource and cost for both industry and government.

The Company continues to actively seek approvals for their products within certain specially controlled applications. Within the U.S., the Foo and Drug Administration ("FDA"), oversee the approval of specialty chemicals that will come in contact with food. For many years, the Company has been a leader in this area and is diligent in maintaining its expertise. The EPA's Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") controls the use of such applications as material preservation and microbial control for the manufacture of polymeric, plastics and textile products together with the protection of the finished article itself. The Company, through its expertise, regularly gains approval for its products in the area and is also supporting other companies in achieving approval for these exacting requirements.

**Agreements with Novartis in Connection with the Spin-off**

Novartis and the Company entered into a Master Spin-off Agreement ("MSA") dated December 20, 1996, which governed the separation of the specialty chemicals business from Novartis. In addition, this agreement, together with certain ancillary agreements, established various interim and ongoing relationships between Novartis and the Company.

Pursuant to the MSA, Novartis and the Company provide each other with chemical products and intermediates and certain services, such as provision of utilities, waste handling and security at shared production sites. Such products and intermediates are provided at market prices or in the absence of market prices, at full cost, and such services are provided at the lower of market price or full cost. In addition, pursuant to th MSA, the Company and Novartis agreed on the allocation of taxes relating to the transaction and past operations of the businesses. The Company is responsible for taxes relating to the past operations of entities engaged exclusively in the specialty chemicals business and Novartis is responsible for transaction related taxes and taxes relating to the past operations of entities other than those engaged exclusively ir the specialty chemicals business.

Pursuant to the "Agreement Regarding Use of Ciba as Corporate Name", the Company is permitted to use "Ciba Specialty Chemicals" as par of its registered corporate name, while Novartis may continue to use the name "Ciba" in the Ciba Vision Group and in certain other cases. See "Intellectual Property".

Novartis and the Company have also entered into certain arrangements with respect to the responsibility for environmental liabilities associate with operation of the specialty chemicals business prior to the Spin-off. See "Environmental Matters."

**Insurance**

Management is of the opinion that the Company's insurance arrangements regarding property, liability and marine are adequate and sufficien

**Organizational Structure**

Ciba Specialty Chemicals Holding Inc. is the ultimate holding company of the Ciba Specialty Chemicals group. Its Shares are listed on the Swiss Exchange, traded on virt-x, and its ADSs trade on the New York Stock Exchange (see Item 9 – The Offer and Listing).

H6

The following table identifies the Company's significant subsidiaries, their jurisdiction of incorporation or residence, the Company's ownership interest in each subsidiary and the principal function of the subsidiary.

| | Group Holdings in % | Principal Function of Company | | | |
|---|---|---|---|---|---|
| | | Selling | Manufacturing | Research | Service, Financ |
| **AMERICAS** | | | | | |
| **Argentina** | | | | | |
| Ciba Especialidades Químicas S.A., Buenos Aires | 100 | • | | | |
| **Bermuda** | | | | | |
| Chemical Insurance Company Ltd., Hamilton | 100 | | | | • |
| Ciba Specialty Chemicals Eurofinance Ltd., Hamilton | 100 | | | | • |
| Ciba Specialty Chemicals International Finance Ltd., Hamilton | 100 | | | | • |
| Ciba Specialty Chemicals Investment Ltd., Hamilton | 100 | | | | • |
| **Brazil** | | | | | |
| Ciba Especialidades Químicas Ltda., São Paulo | 100 | • | • | | |
| Latexia Brazil Ltda., São Paulo | 100 | • | • | | |
| **Canada** | | | | | |
| Ciba Specialty Chemicals Canada Inc., Mississauga | 100 | • | | | |
| **Chile** | | | | | |
| Ciba Especialidades Químicas Ltda., Santiago de Chile | 100 | • | • | | |
| **Colombia** | | | | | |
| Ciba Especialidades Químicas S.A., Bogotà | 100 | • | • | | |
| Raisio Química Andina S.A., Medellin | 96 | • | • | | |
| **Guatemala** | | | | | |
| Ciba Especialidades Químicas, S.A. (ACC), Guatemala | 100 | • | • | | |
| **Mexico** | | | | | |
| Ciba Especialidades Químicas Mexico S.A. de C.V., Mexico | 100 | • | • | | |
| **Panama** | | | | | |
| Ciba Especialidades Químicas Colon S.A., Colon | 100 | • | | | |
| **United States of America** | | | | | |
| Ciba Specialty Chemicals Corporation, Tarrytown, NY | 100 | • | • | • | |
| | | | | | |
| **ASIA PACIFIC** | | | | | |
| **Australia** | | | | | |
| Ciba Specialty Chemicals Pty. Ltd., Thomastown | 100 | • | • | | |
| **Bahrain** | | | | | |
| Ciba Specialty Chemicals Middle East W.L.L., Manama (Al Seef District) | 100 | • | | | |
| **China** | | | | | |
| Ciba Specialty Chemicals (China) Ltd., Shanghai | 100 | • | | | • |
| Ciba Specialty Chemicals (Hong Kong) Ltd., Hong Kong | 100 | • | | | |
| Ciba Specialty Chemicals (Shanghai) Ltd., Shanghai | 100 | • | | | |
| Guangdong Ciba Specialty Chemicals Co. Ltd., Panyu, Guangdong | 95 | • | • | | |
| Guangzhou Ciba Specialty Chemicals Co. Ltd., Guangzhou | 80 | • | • | | |
| Qingdao Ciba Dyes Co. Ltd., Qingdao | 94 | • | • | | |
| Qingdao Ciba Pigments Co. Ltd., Qingdao | 91 | • | • | | |
| Raisio Chemicals (Shanghai) Co. Ltd., Shanghai | 100 | • | | | |
| Raisio Tianma Chemicals (Suzhou) Co. Ltd., Suzhou, Jiangsu | 100 | • | • | | |
| Shanghai Ciba Gao-Qiao Chemical Co. Ltd., Shanghai | 75 | • | • | | |
| Shenzhen Ciba Specialty Chemicals Co. Ltd., Shenzhen | 85 | • | • | | |
| Xiangtan Chemicals & Pigments Co. Ltd., Xiangtan | 49 | • | • | | |
| **India** | | | | | |
| Ciba India Private Ltd., Mumbai | 100 | | | • | • |
| Ciba Specialty Chemicals (India) Ltd., Mumbai [1] | 69 | • | • | | |
| Diamond Dye-Chem Ltd., Mumbai [2] | 69 | • | • | | |
| **Indonesia** | | | | | |
| P.T. Ciba Specialty Chemicals Indonesia, Jakarta | 80 | • | • | | |
| PT Intercipta Kimia Pratama, Jakarta | 60 | • | • | | |
| PT Latexia Indonesia, Jakarta | 100 | • | • | | |
| **Japan** | | | | | |
| Chemipro Fine Chemical Kaisha Ltd., Kobe | 51 | • | • | | |
| Ciba Specialty Chemicals K.K., Osaka | 100 | • | | • | |
| Musashino-Geigy Company Ltd., Kitaibaraki (Ibaraki) | 60 | • | • | | |
| Nippon Alkyl Phenol Co. Ltd., Tokyo | 46 | • | • | | |
| **Republic of Korea (South Korea)** | | | | | |
| Ciba Specialty Chemicals Korea Ltd., Seoul | 100 | • | • | | |
| Daihan Swiss Chemical Corporation, Seoul | 100 | • | • | • | |
| Doobon Fine Chemical Co., Ltd., Chongwon-kun | 63 | • | • | | |
| Raisio Chemicals Korea Inc., Chonan | 51 | • | • | | |

H7

| | | | | | |
|---|---|---|---|---|---|
| Malaysia | | | | | |
| Ciba Specialty Chemicals (Malaysia) SDN BHD, Klang | 70 | • | • | | |
| New Zealand | | | | | |
| Ciba Specialty Chemicals N.Z. Ltd., Auckland | 100 | • | • | | |
| Singapore | | | | | |
| Ciba Specialty Chemicals (Singapore) Pte. Ltd., Singapore | 100 | • | | | |
| South Africa | | | | | |
| Ciba Specialty Chemicals (Pty) Ltd., Spartan | 100 | • | | | |
| Taiwan | | | | | |
| Ciba Specialty Chemicals (Taiwan) Ltd., Kaohsiung | 100 | • | • | | |
| Thailand | | | | | |
| Ciba Specialty Chemicals (Thailand) Ltd., Bangkok | 100 | • | • | | |

H 8

| | Group Holdings in % | Principal Function of Company | | | |
|---|---|---|---|---|---|
| | | Selling | Manufacturing | Research | Service, Financ |
| **EUROPE** | | | | | |
| **Austria** | | | | | |
| Ciba Spezialitätenchemie GmbH, Hard | 100 | • | | | |
| Latexia Österreich GmbH, Pischelsdorf/Zwentendorf | 100 | • | • | | |
| **Belgium** | | | | | |
| Ciba Specialty Chemicals N.V., Groot-Bijgaarden | 100 | • | | | |
| Latexia S.A., Veurne | 100 | | | | • |
| Raisio Belgium N.V., Veurne | 100 | • | • | | |
| **Finland** | | | | | |
| Ciba Specialty Chemicals Finland OY, Helsinki | 100 | • | | | |
| Ciba Specialty Chemicals Oy, Raisio | 100 | • | • | • | • |
| Finnamyl Oy, Raisio | 100 | • | • | | |
| Latexia SB Oy, Raisio | 100 | • | • | | |
| Latexia Suomi Oy, Raisio | 100 | • | • | • | |
| Oy Kationi Ab, Raisio | 100 | • | • | | |
| **France** | | | | | |
| Ciba Spécialités Chimiques SA, Saint Fons | 100 | • | • | | |
| Ciba Specialty Chemicals Masterbatch SA, Saint Jeoire en Faucigny | 100 | • | • | • | |
| **Germany** | | | | | |
| Ciba Spezialitätenchemie Grenzach GmbH, Grenzach-Wyhlen | 100 | | • | • | |
| Ciba Spezialitätenchemie Holding Deutschland GmbH, Lampertheim | 100 | | | | • |
| Ciba Spezialitätenchemie Lampertheim GmbH, Lampertheim | 100 | • | • | • | |
| Ciba Spezialitätenchemie Pfersee GmbH, Langweid/Lech | 100 | • | • | • | |
| **Greece** | | | | | |
| Ciba Specialty Chemicals Hellas ABEE, Thessaloniki | 100 | • | | | |
| **Hungary** | | | | | |
| Ciba Specialty Chemicals Magyarorszag Kft., Budapest | 100 | • | | | |
| **Italy** | | | | | |
| Ciba Specialty Chemicals S.p.A., Sasso Marconi (Bologna) | 100 | • | • | • | |
| Magenta Master Fibers S.r.l., Milano | 60 | • | • | • | |
| **Luxembourg** | | | | | |
| Ciba Specialty Chemicals Finance Luxembourg S.A., Luxembourg | 100 | | | | • |
| **Netherlands** | | | | | |
| Ciba Specialty Chemicals International Nederland B.V., Maastricht | 100 | | | | • |
| Ciba Specialty Chemicals (Maastricht) B.V., Maastricht | 100 | • | • | • | |
| EFKA Additives B.V., Heerenveen | 100 | • | • | • | |
| **Portugal** | | | | | |
| Ciba Especialidades Químicas Lda., Porto | 100 | • | | | |
| Raisio Portugal-Produtos Químicos, Lda., Nogueira Maia | 51 | • | | | |
| **Spain** | | | | | |
| Ciba Especialidades Químicas S.L., Barcelona | 100 | • | | | |
| Latexia Iberia, S.L., Madrid | 100 | • | • | | |
| Raisio Echeveste, S.A., Tolosa | 51 | • | • | | |
| **Sweden** | | | | | |
| Ciba Specialty Chemicals Sweden AB, Göteborg | 100 | • | | | |
| AB CDM, Västra Frölunda | 100 | • | | | |
| Raisio Svenska AB, Gothenburg | 100 | • | | | |
| **Switzerland** | | | | | |
| Ciba Specialty Chemicals Holding Inc., Basel [3] | | | | | • |
| Ciba Spécialités Chimiques Monthey SA, Monthey | 100 | | • | | |
| Ciba Spezialitätenchemie AG, Basel | 100 | • | • | • | |
| Ciba Spezialitätenchemie Finanz AG, Basel | 100 | | | | • |
| Ciba Spezialitätenchemie International AG, Basel | 100 | | | | • |
| Ciba Spezialitätenchemie Kaisten AG, Kaisten | 100 | | • | | |
| Ciba Spezialitätenchemie Schweizerhalle AG, Muttenz | 100 | | • | | |
| Ciba Spezialitätenchemie Services AG, Basel | 100 | | | | • |
| CIMO Compagnie Industrielle de Monthey SA, Monthey | 50 | | | | • |
| **Turkey** | | | | | |
| Ciba Özel Kimyevi Ürünler Sanayi ve Ticaret Ltd., Istanbul | 100 | • | | | |
| **United Kingdom** | | | | | |
| Ciba Specialty Chemicals PLC, Macclesfield | 100 | • | • | • | |
| Ciba Specialty Chemicals Investment PLC, Macclesfield | 100 | | | | • |
| Ciba Specialty Chemicals Water Treatments Ltd., Bradford | 100 | • | • | • | |
| Pira International Limited, Leatherhead | 100 | • | | • | |
| Raisio Chemicals UK Limited, Blackburn | 100 | • | • | | |

H9

# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS CORPORATION, )
                                              )
         Plaintiff,              )
                                                )
     v.                        )    C. A. No. 04-293 (KAJ)
                                                )
HERCULES INCORPORATED and         )
CYTEC INDUSTRIES, INC.,            )
                                              )
         Defendants.           )

## HERCULES' THIRD SET OF REQUESTS (NO. 77) TO
## CIBA FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Hercules

Incorporated ("Hercules") requests that Plaintiff Ciba Specialty Chemicals Corporation ("Ciba")

produce for inspection and copying all documents and things requested herein within thirty (30)

days of service in accordance with the definitions and instructions set forth below.  Production of

these documents and things shall be at the office of Finnegan, Henderson, Farabow, Garrett &

Dunner, L.L.P., 901 New York Avenue, NW, Washington, D.C. 20001-4413, or at another time

and place as may be mutually agreed upon by counsel for the parties.

### DEFINITIONS AND INSTRUCTIONS

Hercules hereby incorporates by reference, as if set forth fully herein, the Definitions of

Terms and Instructions set forth in Hercules' First Set of Requests (Nos. 1-60) to Ciba for the

Production of Documents and Things, served on January 19, 2005.

## DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 77

All documents and things relating to the testing of Hercules' PerForm® product, as

disclosed in Ciba's response to Hercules' Interrogatory Nos. 1 and 3.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: _____

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
A. Neal Seth
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Hercules Incorporated*

Dated: March 29, 2005

675844 / 28118

2

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 29, 2005, true and correct copies

of the within document were caused to be served on the attorney of record at the

following addresses as indicated:

### VIA HAND DELIVERY

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE 19899

### VIA FEDERAL EXPRESS

Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601-6780

Thomas L. Creel, P.C.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022

_____
David E. Moore

666520