# EXHIBIT 3

# ABANDONED

## JUMBO

| SERIAL NUMBER (Series of 1970) 07/535,626 | PATENT DATE | PATENT NUMBER |
|---|---|---|

| SERIAL NUMBER 07/535,626 | FILING DATE 06/11/90 | CLASS 524 | SUBCLASS 2 in 1 | GROUP ART UNIT 155 | EXAMINER / |
|---|---|---|---|---|---|

**APPLICANTS**

RODERICK G. RYLES, MILFORD, CT; DAN S. HONIG, NEW CANAAN, CT; ELIETH W. HARRIS, BRIDGEPORT, CT; ROGER E. NEFF, STAMFORD, CT.

```
**CONTINUING DATA*********************
    VERIFIED
        WCC
```

```
**FOREIGN/PCT APPLICATIONS***********
    VERIFIED
        WCC
```

FOREIGN FILING LICENSE GRANTED 06/29/90

| Foreign priority claimed 35 USC 119 conditions met ☐ yes ☒ no ☐ yes ☒ no Verified and Acknowledged Examiner's Initials | AS FILED → | STATE OR COUNTRY CT | SHEETS DRWG 0 | TOTAL CLAIMS 22 | INDEP CLAIMS 1 | FILING FEE RECEIVED $ 394.00 | ATTORNEY'S DOCKET NO. 31,320 |
|---|---|---|---|---|---|---|---|

**ADDRESS**

FRANK M. VAN RIET
C/O AMERICAN CYANAMID CO.
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

**TITLE**

CROSS-LINKED ANIONIC AND AMPHOTERIC POLYMERIC MICROPARTICLES

U.S. DEPT. of COMM.-Pat. & TM Office-PTO-436L(rev. 10-78)

---

PARTS OF APPLICATION
FILED SEPARATELY

| NOTICE OF ALLOWANCE MAILED | PREPARED FOR ISSUE | | CLAIMS ALLOWED | |
|---|---|---|---|---|
| | Assistant Examiner | Docket Clerk | Total Claims | Print Claim |
| **ISSUE FEE** | | | **DRAWING** | |
| Amount Due | Date Paid | | Sheets Drwg. | Figs. Drwg. | Print Fig. |
| | | Primary Examiner | | |
| | **ISSUE CLASSIFICATION** | | ISSUE BATCH NUMBER | |
| Label Area | Class | Subclass | | |

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A (Rev. 5/88)

DEFENDANT'S EXHIBIT
Van Riet
10/25/05 SC
PERIGO 800-631-6989

CIBA 000474

**ABANDONED**

07/335626

APPROVED FOR LICENSE ☐

INITIALS JUL 1 8 4 034

| Entered or Counted | CONTENTS | Received or Mailed RECEIVED JUL 1 2 1990 |
|---|---|---|
| | 1. Application _____ papers. | |
| Jo 08/06 | 2. Reg 3 mos _____ | 1 6 AUG 14 GROUP 150 |
| | 3. Ext. of. time (2 mos) | Jan 10 1991 |
| | 4. Ext. a | Jan 10, 1991 |
| | 5. F. Rev (3 mos) | 5/19/91 |
| | 6. Ext. of time (1 mo) | Aug. 22 1991 |
| | 7. Abandonment (notice) | Nov. 19, 1991 |
| | 8. Power to Inspect | Dec 11 1991 |
| | 9. Request of copy | 4/29/96 |
| | 10. Request for access | 10/8/96 |
| | 11. Request for access | 1/21/99 |
| | 12. Request for access | 10/30/02 |
| | 13. | |
| | 14. | |
| | 15. | |
| | 16. | |
| | 17. | |
| | 18. | |
| | 19. | |
| | 20. | |
| | 21. | |
| | 22. | |
| | 23. | |
| | 24. | |
| | 25. | |
| | 26. | |
| | 27. | |
| | 28. | |
| | 29. | |
| | 30. | |
| | 31. | |
| | 32. | |

CIBA 000475



## SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| 526 | 264 | 7-27-90 | WCC |
| 526 | 266 | 8-2-90 | " |
| 526 | 321 | " | " |
| 526 | 240 | " | " |
| 526 | 292.95 | " | " |
| 526 | 292.2 | " | " |
| 524 | 801 | 8-3-90 | " |
| 524 | 815 | " | " |
| 524 | 922 | " | " |
| 526 | 306 | 8-6-90 | " |

## SEARCH NOTES

| | Date | Exmr. |
|---|---|---|
| APS searched | 7-27-90 | WCC |
| APS searched | 4-3-91 | WCC |
| Orbit (Inpadoc) searched | 4-4-91 | WCC |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| | | | |

CIBA 000476

Staple Issue Slip Here

| POSITION | INIT. | DATE |
|---|---|---|
| CLASSIFIER | VdR | 6-18-70 |
| EXAMINER | | |
| VERIFIER | | |
| TYPIST | | |
| CORPS CORR. | | |
| SPEC. HAND. | | |
| FILE MAINT. | | |

## INDEX OF CLAIMS

| Claim | | Date |
|---|---|---|
| 1 | ✓ | |
| 2 | ✓ | |
| 3 | | |
| 4 | | |
| 5 | O | |
| 6 | | |
| 7 | | |
| 8 | O | |
| 9 | | |
| 10 | O | |
| 11 | | |
| 12 | O | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |
| 36 | | |
| 37 | | |
| 38 | | |
| 39 | | |
| 40 | | |
| 41 | | |
| 42 | | |
| 43 | | |
| 44 | | |
| 45 | | |
| 46 | | |
| 47 | | |
| 48 | | |
| 49 | | |
| 50 | | |

| Claim | Date |
|---|---|
| 51 | |
| 52 | |
| 53 | |
| 54 | |
| 55 | |
| 56 | |
| 57 | |
| 58 | |
| 59 | |
| 60 | |
| 61 | |
| 62 | |
| 63 | |
| 64 | |
| 65 | |
| 66 | |
| 67 | |
| 68 | |
| 69 | |
| 70 | |
| 71 | |
| 72 | |
| 73 | |
| 74 | |
| 75 | |
| 76 | |
| 77 | |
| 78 | |
| 79 | |
| 80 | |
| 81 | |
| 82 | |
| 83 | |
| 84 | |
| 85 | |
| 86 | |
| 87 | |
| 88 | |
| 89 | |
| 90 | |
| 91 | |
| 92 | |
| 93 | |
| 94 | |
| 95 | |
| 96 | |
| 97 | |
| 98 | |
| 99 | |
| 100 | |

SYMBOLS
√............Rejected
–............Allowed
(Through numeral) Cancelled
+............Restricted
‡............Non-elected
I............Interference
A............Appeal
O............Objected

CIBA 000477

07535626

PATENT APPLICATION SERIAL NO._____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

Bassaway
7-19-90

P 30610  06/14/90  07535626     01-1300  030  101     394.00CH  31.320

PTO-1556
(5/87)

CIBA 000478



## TITLE OF THE INVENTION

## CROSS-LINKED ANIONIC AND AMPHOTERIC POLYMERIC MICROPARTICLES

## ABSTRACT OF THE INVENTION

Novel compositions comprising anionic and/or amphoteric organic polymeric microparticles are disclosed, along with a method for their production. The products are useful in flocculating a wide variety of dispersions of suspended solids and in paper-making.

CIBA 000479

0/ 〃753! 26 A



MAIL ROOM
JUN 11 1990

31,320

- 1 -

<u>CROSS-LINKED ANIONIC AND AMPHOTERIC</u>
<u>POLYMERIC MICROPARTICLES</u>

5      The present invention relates to structured anionic and
amphoteric polymeric microparticles and a method for their
preparation.

BACKGROUND OF THE INVENTION

10      Cross-linked anionic and amphoteric, organic polymeric
compositions are known to those skilled in the art and are
useful in a variety of solid-liquid separation applications,
particularly in the flocculation of various dispersions of
suspended solids, such as sewage sludge, and in the

15      thickening of cellulosic paper pulp suspensions. Modern
concerns about environmental pollution and the increasing
cost of materials have made it highly desirable to produce
flocculating agents which cause higher degrees of separation
at lower dosage levels.

20      EP 0,202,780 describes the preparation of
polymeric, crosslinked, cationic acrylamide polymer beads by
conventional inverse emulsion polymerization techniques.
Crosslinking is accomplished by the incorporation of a
difunctional monomer, such as methylenebisacrylamide, into

25      the polymer. This crosslinking technology is well known in
the art. The patentee teaches that the crosslinked beads
are useful as flocculants.

      Typically, the particle size of polymers prepared
by conventional inverse water-in-oil emulsion polymerization

30      processes are limited to a range of about 1-5 microns, since
no particular advantage in reducing the particle size has
hitherto been apparent. The precise particle size which is
achievable in inverse emulsions is determined by the
concentration and activity of the surfactant(s) employed and

35      these are customarily chosen on the basis of emulsion
stability and economic factors.

CIBA 000480

- 2 -

Leong, et al., in _Inverse Microemulsion Polymerization_, J. of Phys. Chem., Vol. 86, No. 23, 6-24-82, pp 2271-3, discloses polymerization of acrylamide in an inverse microemulsion. The author also discloses having prepared crosslinked polyacrylamide latices or microgels by using a 100:1 mixture of acrylamide-methylenebisacrylamide. No anionic or amphoteric monomers are mentioned or is their use as a flocculating agent or paper-making additive.

EPO 0173605 teaches the production of microbeads having a diameter ranging from about 49-87 nm and produced from terpolymers of vinyl acetate (84.6), ethyl acrylate (65.4) and acrylic acid (4.5) or methacrylonitrile (85), butyl acrylate (65) and acrylic acid (3). These polymeric beads are disclosed as added to an LBKP pulp slurry in order to evaluate the resultant paper for sizing degree, paper force enhancement and disintegratability. These polymer beads fall outside the scope of those claimed in the present invention in that the ionic content thereof is too small to impart any appreciable improvement during usage.

Additionally, U.S. Patent No. 4,681,912 discloses the production of microparticles of acrylamide and acrylic acid, for example, utilizing a microemulsion process. The patent, however, fails to teach the cross-linking of the particles so as to render them water-insoluble or their use in paper-making.

## SUMMARY OF THE INVENTION

According to the present invention, there are provided compositions comprising crosslinked, anionic and/or amphoteric, organic, polymeric, microparticles, having an unswollen number average particle size diameter of less than about 0.75 micron, preferably less than about 0.5 micron, a solution viscosity of at least 1.1, preferably from about 1.1 to about 2.0, mPa.s, a crosslinking agent content of above about 4 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about 5%.

CIBA 000481

- 1 -

The preferred anionic monomers for use in the practice
of the present invention comprises acrylic acid, methacrylic
acid, ethacrylic acid, 2-acrylamido-2-alkylsulfonic acids
where the alkyl group contains 1 to 6 carbon atoms, such as
2-acrylamido-2-propane-sulfonic acid or mixtures of any of
5    the foregoing and their alkaline salts. Especially
preferred are the sodium salts of acrylic acid, methacrylic
acid, and 2-acrylamido-2-methylpropane sulfonic acid.

The preferred amphoteric polymers for the use in the
practice of the present invention comprise copolymers of one
10   or more of the foregoing anionic monomers and one or more of
the following cationic ethylenically unsaturated monomers
selected from, from example, acryloxyethyltrimethylammonium
chloride; diallydimethylammonium chloride; 3-(meth)acryl-
amidopropyltrimethylammonium chloride; 3-acrylamidopropyl-
15   trimethylammonium-2-hydroxypropylacrylate methosulfate;
trimethylammoniumethyl methacrylate methosulfate;
1-trimethylammonium-2-hydroxypropylmethacrylate
methosulfate; methacryloxyethyltrimethylammonium chloride;
or mixtures of any of the foregoing.
20        The preferred ethylenically unsaturated non-ionic
monomers for use in the practice of the present invention
are selected from acrylamide; methacrylamide; N,N-dialkyl-
acrylamides; N-alkylacrylamides; N-vinylmethacetamide;
N-vinyl methylformamide; vinyl acetate; N-vinyl pyrrolidone
25   and mixtures thereof. Especially preferred is acrylamide.

The preferred compositions encompassed by the present
invention are 1) anionic monomers alone or 2) a mixture of
anionic and cationic monomers, each copolymerized with the
ethylenically unsaturated non-ionic monomers disclosed
30   above. Especially preferred is acrylamide copolymerized
with sodium acrylate.

Also, according to the present invention, there is
provided a process for the preparation of compositions as
defined above, the process comprising:
35        (a)  admixing

CIBA 000482

- 4 -

       (i)   an aqueous solution comprising at least one
ethylenically unsaturated anionic monomer
alone or in admixture with a cationic monomer
and at least one crosslinking agent and,
optionally, at least one ethylenically
unsaturated non-ionic monomer;

      (ii)  an oily phase comprising at least one
hydrocarbon liquid; and

    (iii)  an effective amount of surfactant
or surfactant mixture, so as to form an
inverse emulsion which, when subjected to
polymerization conditions, results in a
polymer having a particle size of less than
about 0.75 micron in unswollen diameter; and

(b) subjecting the inverse emulsion obtained in step

(a) to polymerization conditions.

    A preferred feature of the present invention, comprises
a process employing an aqueous solution comprising sodium
acrylate as the anionic monomer, N,N-methylenebisacrylamide
as the crosslinking agent and acrylamide as the non-ionic
monomer; an oily phase comprising a saturated hydrocarbon;
and an effective amount of a surfactant mixture comprising
polyoxyethylene (20) sorbitan monooleate and polyoxyethylene
sorbitol hexaoleate, sufficient to produce particles of less
than about 0.75 micron in unswollen number average particle
size diameter.

    Polymerization of the inverse emulsion may be carried
out by adding a polymerization initiator, such as sodium
metabisulfite or tert-butyl hydroperoxide, or by subjecting
the inverse emulsion to ultraviolet irradiation. Also
contemplated by the present invention is adding an effective
amount of chain-transfer agent to the aqueous solution of
the inverse emulsion, such as an alcohol, mercaptan,
phosphite, sulfite or mixture of any of the foregoing. The
process of the present invention may also comprise a step
for recovering the composition from the inverse emulsion.

CIBA 000483

~ 5 ~

The resultant organic polymeric particles are useful in
a method of making paper from an aqueous suspension of
cellulose fibers, whereby the drainage properties of the
suspension are improved by including in the suspension 0.1
5  to 20 lbs/ton, based on the dry weight of paper furnish
solids, of the anionic or amphoteric cross-linked organic
polymer microbead having an unswollen number average
particle size diameter of less than about 0.75 micron, a
solution viscosity of at least about 1.1, preferably about
1.1 to about 2.0 mPa.s, a cross-linking agent content of
10  above about 4 molar parts per million, based on the
monomeric units present in the polymer, and at least 5%
ionicity, preferably in the presence of a molecular weight
cationic polymer, as described in copending application,
Serial No. ~~Attorney Docket No. 31043), filed concurrently~~
15  ~~herewith.~~

## DETAILED DESCRIPTION OF THE INVENTION

Cross-linked, anionic or amphoteric, organic polymeric
microbeads having an unswollen number average particle size
20  diameter of less than about 0.75 micron, a solution
viscosity of from about 1.1 to about 1.5 mPa.s, a
crosslinking agent content of above about 4 molar parts per
million, based on the monomeric units present in the
polymer, and an ionicity of at least about 5% mole percent, are generally
25  formed by the polymerization of at least 5% of an
ethylenically unsaturated anionic monomer and, for
amphoteric microparticles, at least about 5% of one cationic
monomer, and, optionally at least one non-ionic comonomer in
the presence of a crosslinking agent in a water-in-oil
30  inverse emulsion employing an effective amount of surfactant
or surfactant mixture to produce microbeads of less than
about 0.75 micron.

The amphoteric polymers for the use in the practice of
the present invention comprise copolymers of one or more of
35  the foregoing anionic monomers and one or more of the
following cationic ethylenically unsaturated monomers

CIBA 000484

- 6 -

(meth)acrylates of dialkylaminoalkyl compounds, and salts
and quaternaries thereof and in particular monomers of
N,N-dialkylaminoalkyl(meth)acrylamides, and salts and
quaternaries thereof, such as N,N-dimethylaminoethy-
acrylamides; and the acid or quaternary salts thereof and
the like. Cationic monomers which may be used herein are of
the following general formulae:

$$
\text{( I )}\quad CH_2 = C - C - X - A\ N^+ - R_3\ .\ Z^-
$$

where $R_1$ is hydrogen or methyl, $R_2$ is hydrogen or lower
alkyl of 1-4 carbon atoms, $R_3$ and/or $R_4$ are hydrogen, alkyl
of 1-12 carbon atoms, aryl, or hydroxyethyl and $R_2$ and $R_3$,
or $R_3$ and $R_4$, can combine to form a cyclic ring containing
one or more hetero atoms, and Z is the conjugate base of an
acid; X is oxygen or $-NR_1$, wherein $R_1$ is as defined above,
and A is an alkylene group of 1-12 carbon atoms, or



$$
\text{( II )}
$$

where $R_5$ and $R_6$ are hydrogen or methyl, $R_7$ is hydrogen or
alkyl of 1-12 carbon atoms, and $R_8$ is hydrogen, alkyl of
1-12 carbon atoms, benzyl or hydroxyethyl; and Z is as
defined above.

These ethylenically unsaturated anionic, cationic and
non-ionic monomers may be copolymerized to produce anionic
and amphoteric copolymers. Preferably, acrylamide is
copolymerized with a anionic monomer. Anionic copolymers

CIBA 000485

- 7 -

useful in the practice of this invention comprise from about
0 to about 95 parts, by weight of non-ionic monomer and
about 5 to about 100 parts, by weight, of anionic monomer,
based on the total polymer weight. Amphoteric polymers may
be produced from about 1-99 parts, by weight, same basis, of
anionic monomer and from about 99-1 parts, by weight, of
cationic monomer, optionally with from about 0-75 parts, by
weight, of a non-ionic monomer, the total weight of the
anionic monomer and cationic monomer being at least 5%.
Polymerization of the monomers is conducted in the presence
of a polyfunctional crosslinking agent to form the
crosslinked composition. The polyfunctional crosslinking
agent comprises molecules having either at least two double
bonds, a double bond and a reactive group, or two reactive
groups. Illustrative of those containing at least two
double bonds are N,N-methylenebisacrylamide,
N,N-methylenebismethacrylamide, polyethyleneglycol
diacrylate, polyethyleneglycol dimethacrylate, N-vinyl
acrylamide, divinylbenzene, triallylammonium salts,
N-methylallylacrylamide and the like. Polyfunctional
branching agents containing at least one double bond and at
least one reactive group include, glycidyl acrylate,
acrolein, methylolacrylamide and the like. Polyfunctional
branching agents containing at least two reactive groups
include aldehydes such as glyoxal, diepoxy compounds,
epichlorohydrin and the like.

Crosslinking agents are to be used in sufficient
quantities to assure a crosslinked composition. Preferably
at least about 4 molar parts per million of crosslinking
agent, based on the monomeric units present, are employed to
induce sufficient crosslinking and preferred is a
crosslinking agent content of from about 4 to about 6000
molar parts per million, more preferably about 20-4000 and
most preferably about 50-2000 molar parts per million.

One method of obtaining the polymeric microparticles of
this invention is to polymerize the monomers in a
microemulsion. Polymerization in microemulsions and inverse

CIBA 000486

- 8 -

microemulsions is known to those skilled in this art. P.
Speiser reported in 1976 and 1977 a process for making
spherical "nanoparticles" with diameters less than 800A by
(1) solubilization of polymerizable molecules, e.g.
acrylamide and methylenebisacrylamide and other materials,
e.g. drugs, in micelles and (2) polymerizing the monomers in
the micelles. J. Pharm. Sa., 65(12), 1763 (1976) and United
States Patent No. 4,021,364. Both inverse water-in-oil and
oil-in-water "nanoparticles" were prepared by this process.
While not specifically called microemulsion polymerization
by the author, this process does contain all the features
which are currently used to define microemulsion
polymerization. These reports also constitute the first
examples of polymerization or acrylamide in a microemulsion.
Since then, numerous publications reporting polymerization
of hydrophobic polymers in the oil phase of microemulsions
have appeared. See, for example, Stoffer and Bone, J.
Dispersion Sci. and Tech., 1(1), 37, 1980 and Atik and
Thomas, J. Am. Chem. Soc'y, 103(14), 4279 (1981); and GB
2161492A.

The ionic and amphoteric microemulsion polymerization
process may be conducted by (i) preparing a monomer
microemulsion by adding an aqueous solution of the monomers
to a hydrocarbon liquid containing appropriate surfactant or
surfactant mixture to form an inverse monomer microemulsion
consisting of small aqueous droplets which, when
polymerized, result in polymer particles of less than 0.75
micron in size, dispersed in the continuous oil phase and
(ii) subjecting the monomer microemulsion to free radical
polymerization.

In order to obtain an inverse microemulsion, it is
generally necessary to use particular conditions whose main
parameters are as follows: surfactant concentration, HLB of
surfactant or surfactant mixture, temperature, nature of the
organic phase and composition of the aqueous phase.

The aqueous phase comprises an aqueous mixture of the
monomers, anionic or a mixture of anionic and cationic and

CIBA 000487

- 9 -

optionally non-ionic, and the crosslinking agent, as defined
above. The aqueous monomer mixture may also comprise such
conventional additives as are desired. For example, the
mixture may contain chelating agents to remove
polymerization inhibitors, pH adjusters, initiators and
5  other conventional additives.

Essential to the formation of the microemulsion, which
may be defined as a swollen, transparent and
thermodynamically stable micelle solution without agitation,
comprising two liquids insoluble in each other and a
10  surfactant, in which the micelles are much smaller than in
an emulsion, is the selection of appropriate organic phase
and surfactant.

The selection of the organic phase has a substantial
effect on the minimum surfactant concentration necessary to
15  obtain the inverse microemulsion. This organic phase may
comprise of a hydrocarbon or hydrocarbon mixture. Saturated
hydrocarbons or mixtures thereof are the most suitable in
order to obtain inexpensive formulations (lower surfactant
content) of inverse microemulsions. Typically, the organic
20  phase will comprise benzene, toluene, fuel oil, kerosene,
odorless mineral spirits and mixtures of any of the
foregoing.

The ratio by weight of the amounts of aqueous and
hydrocarbon phases is chosen as high as possible, so as to
25  obtain, after polymerization, a microemulsion of high
polymer content. Practically, this ratio may range, for
example from about 0.5 to about 3:1, and usually is about
2:1.

The one or more surfactants are selected in order to
30  obtain an HLB (Hydrophilic Lipophilic Balance) value ranging
from about 8 to about 11. In addition to the appropriate
HLB value, the concentration of surfactant must also be
optimized, i.e. sufficient to form an inverse emulsion
having the correct particle size. Typical surfactants
35  useful in the practice of this invention, in addition to
those specifically discussed above, may be anionic, cationic

CIBA 000488

- 10 -

or non-ionic and are selected from polyoxyethylene (20) sorbitan trioleate, sorbitan trioleate, sodium di-2-ethylhexylsulfosuccinate, oleamidopropyldimethylamine; sodium isostearyl-2-lactate and the like.

5      Polymerization of the emulsion may be carried out in any manner known to those skilled in the art.  Initiation may be effected with a variety of thermal and redox free-radical initiators including azo compounds, such as azobisisobutyronitrile; peroxides, such as t-butyl peroxide;

*a*

10     organic compounds, such as potassium persulfate and redox couples, such as ferrous ammonium sulfate/ammonium persulfate.  Polymerization may also be effected by photochemical irradiation processes, irradiation, or by ionizing radiation with a 60 Co source.  Preparation of an aqueous product from the emulsion may be effected by

15     inversion by adding it to water which may contain a breaker surfactant.  Optionally, the polymer may be recovered from the emulsion by stripping or by adding the emulsion to a solvent which precipitates the polymer, e.g. isopropanol, filtering off the resultant solids, drying and redispersing

20     in water.

The product of this invention is useful in facilitating a wide range of solid-liquid separation operations.  The products of this invention may be used to dewater biologically treated suspensions, such as sewage and other

25     municipal or industrial sludges; the drainage of cellulosic suspension, such as those found in paper production, e.g. paper waste; and the settling and dewatering of various inorganic suspensions, e.g. refinery waste, coal waste, etc.

30     DESCRIPTION OF THE PREFERRED EMBODIMENTS

The following examples illustrate the present invention.  They are not be construed as limitations on the present invention except as set forth in the appended claims.

35

CIBA 000489

- 11 -

### Examples 1 - 5
### Procedure for the Preparation of
### Anionic Microemulsion

The master batch of aqueous phase is made by mixing
acrylic acid (AA), as the sodium salt, 200 parts deionized

5    water, 56.5% sodium hydroxide, crystal acrylamide (AMD), 0.3
part 10% pentasodium diethylenetriaminepentaacetate, 39.0
parts additional deionized water, and 1.5 parts of 0.518%
copper sulfate pentahydrate together. To 110.2 parts of
this aqueous phase solution, 6.5 parts deionized water, 0.25

10   part 1% t-butyl hydroperoxide and N,N-methylene
bisacrylamide (MBA) are added. This aqueous phase is mixed
with an oil phase containing 77.8 parts of low odor paraffin
oil, 3.6 parts sorbitan sesquioleate and 21.4 parts
polyoxyethylene sorbitol hexaoleate.

15       This emulsion is deaerated with nitrogen for 20
minutes. The polymerization is then initiated with gaseous
$SO_2$. The polymerization is then allowed to exotherm to $40^{\circ}C$
and is controlled at $40^{\circ}C$ ($+ 5^{\circ}C$) with ice water. The ice
water is removed when cooling is no longer required. The

20   nitrogen is continued for one hours. The total
polymerization time is 2.5 hours.

If desired, the polymer may be recovered from the
emulsion by stripping or by adding the emulsion to a solvent
which precipitates the polymer, e.g. isopropanol, filtering

25   off the resultant solids, drying and redispersing in water.

At the time of use e.g. as a paper-making additive, the
recovered polymer may be dispersed in water. The emulsion,
microbeads may also be directly dispersed in water.
Depending on the surfactant and levels used in the emulsion

30   dispersion may require using high a hydrophilic lipophilic
balance (HLB) inverting surfactant such as an ethoxylated
alcohol; polyoxyethyllated sorbitol hexaoleate;
diethanolamine oleate; ethoxylated laurel sulfate etc. as in
known in the art.

35       The procedure for preparing amphoteric emulsions e.g.
15AA/60AMD/25 dimethylaminoethylacrylate (DMEA) /349 ppm

CIBA 000490

- 12 -

MBA, is repeated for the preparation of the anionic
emulsions with the exception that the concentration of the
individual monomers employed are adjusted accordingly.

Various monomers are polymerized in accordance with the
above procedure. The results are set forth in Table I,
5   below.

10

15

20

25

30

35

CIBA 000491

- 13 -

Table I

Preparation of Anionic Microbeads

| Example | Copolymer Compositions (Mole %) | | | MBA PPM | PS NM | SV mPa.S |
|---------|------|------|-------|---------|-------|----------|
| | AMD | AA | NaAPS | | | |
| 1 | 70 | 30 | --- | 349 | 130 | 1.19 |
| 2 | 40 | 60 | --- | 1381 | 120 | 1.10 |
| 3 | 0 | 100 | --- | 1985 | 80 | 1.35 |
| 4 | 70 | --- | 30 | 995 | --- | 1.37 |
| 5 | 70 | --- | 30 | 10,086 | --- | 1.15 |
| 6 | 70 | 30 | --- | 1000 | 464 | --- |
| 7 | 70 | 30 | --- | 1000 | 149 | 1.02 |
| 8 | 70 | 30 | --- | 1000 | 106 | 1.06 |

NaAPS = Sodium 2-Acrylamido-2-methylpropane Sulfonic Acid

PS = Number Average Particle Size in Nanometers

SV = Solution Viscosity (0.1% polymer in N NaCl, 25°C using a Brookfield UL adapter at 60 rpm

CIBA 000492

- 14 -

Example 9

In paper making processes it is found that the addition of anionic microbeads, preferably with a high molecular weight cationic polymer to a conventional paper making stock increases the drainage rate of water from the paper. The
5   following examples illustrate this utility but are not to be construed to limit the invention in any manner whatsoever.

A 70/30 hardwood/softwood bleached kraft pulp is used containing 25% $CaCO_3$ for alkaline papermaking at a pH of 8.0 Drainage is a measure of the time required for a certain
10   volume of water to drain through the paper and is here measured as a10X drainage. (K. Britt, TAPPI 63(4) p67 (1980). Hand sheet are prepared on a Noble and Wood sheet machine. In the test examples, the linear cationic copolymer is a 10 mole % of acryloxyethyltrimethylammonium
15   chloride (AETMAC) and 90 mole % of acrylamide (AMD) of 5,000,000 to 10,000,000 mol. wt. with a charge density of 1.2 meg./g. and SV-4.0 cps. The anionic microbeads in Table II are added separately to the thin paper stock. The cationic polymer is added to the test furnish in a "Vaned
20   Britt Jar" and subjected to 800 rpm stirring for 30 seconds. The anionic microbead is then added and subjected to 800 rpm stirring for 30 seconds and then drainage times are measured. The results of testing are set forth in Table II, below.
25

30

35

CIBA 000493

– 15 –

Table II

Drainage Aid Test Data

| Example | Cationic Polymer | Dosage (lb/ton) | Anionic Polymer Microbead of Example No. | Dosage (lb/ton) | Drainage Time (Sec) |
|---------|------------------|-----------------|-------------------------------------------|-----------------|---------------------|
| 6  | –0–              |   | ---  |       | 161.1 |
| 7  | 10 AETKAC/ 90 AMD | 2 |      |       | 116.9 |
| 8  | do               | 2 | –1–  | (0.5) | 75.8  |
| 9  | do               | 2 | –1–  | (1.0) | 72.1  |
| 10 | do               | 2 | –1–  | (2.0) | 84.3  |
| 11 | do               | 2 | –2–  | (0.5) | 66.3  |
| 12 | do               | 2 | –2–  | (1.0) | 72.4  |
| 13 | do               | 2 | –2–  | (2.0) | 74.7  |
| 14 | do               | 2 | –3–  | (0.5) | 78.8  |
| 15 | do               | 2 | –3–  | (1.0) | 74.1  |
| 16 | do               | 2 | –3–  | (2.0) | 80.2  |
| 17 | do               | 2 | –4–  | (0.5) | 95.0  |
| 18 | do               | 2 | –4–  | (1.0) | 86.6  |
| 19 | do               | 2 | –4–  | (2.0) | 95.5  |
| 20 | do               | 2 | –5–  | (0.5) | 119.7 |
| 21 | do               | 2 | –5–  | (1.0) | 121.8 |
| 22 | do               | 2 | –5–  | (2.0) | 111.4 |

CIBA 000494

- 16 -

The drainage time for the untreated alkaline paper
stock is 161.1 seconds. Addition of the linear, cationic
polymer, 10 AETMAC/90 AMD, at a level of 2 lbs/ton decreases
the drainage time to 116.9. Further decreases in drainage
time are obtained by the joint addition of the anionic
5   microbeads of this invention of doses of 0,5, 1.0 and 2.0
lbs/ton with the 2 lbs/ton of the cationic polymer. The
microbead 70 AMD/30 Na AMPS/10,086 ppm MBA has little effect
on drainage due to the excessively high degree of
cross-linking and is outside the scope of this invention.
10  The higher degree anionicity of 2 microbeads (40 AMD/60
AA/1381 ppm MBA-120nm and 100AA/1985 ppm MBA-80 nm) improves
drainage time over those of the lower degree of anionicity
microbeads 70 AMD/30 NaAPS/995 ppm MBA. The 1.0 lb/ton
dosage of anionic microbead gives better drainage times than
15  either the 0.5 or 2.0 lbs/ton dosage. The only exception is
with the microbead 40AMD/60 AA/1,381 ppm MBA where the 0.5
lb/ton dosage is the most desirable.

### Examples 23 - 27

20  Anionic microbeads of 5 and 10 mole percent of anionic
charge and amphoteric microbeads with a 5 mole % higher
anionic charge than cationic charge are made by the
procedure of Example 1 and are shown in Table III. The
microbeads have a particle size under 0.5 micron in Examples
25  23-27.

30

35

CIBA 000495

- 17 -

Table III

Preparation of Anionic and
Amphoteric Microbeads

| | Copolymer Compositions (Mole %) | | | | MBA | PS | SV |
|---|---|---|---|---|---|---|---|
| Example | AMD | NaAc | NaAPS | DMEA | ppm | NM | mPa.S |
| 23 | 90 | 10 | -- | -- | 496 | -- | 1.34 |
| 24 | 95 | 5 | -- | -- | 97 | -- | 1.89 |
| 25 | 85 | -- | 10 | 5 | 1026 | -- | 1.40 |
| 26 | 55 | -- | 25 | 20 | 5101 | -- | 1.59 |
| 27 | 60 | -- | -- | 40 | 100 | 100 | -- |

DMEA = Acryloxyethyltrimethyl-
        ammonium Chloride

See Table I for other legends

CIBA 000496

- 18 -

### Example 28

The anionic and amphoteric microbeads of Table III are used in the paper making process described in Example 2. The results are substantially the same.

### Examples 29-33

The procedure of Example 1 is again followed except that different monomers are employed in the preparation of the microbead. The results are set forth in Table IV, below.

#### Table IV

| Example | Non-Ionic Monomer (%) | Anionic Monomer (%) | MBA PPM |
|---|---|---|---|
| 29 | AM-50 | MAA-50 | 117 |
| 30 | AM-65 | VSA-35 | 226 |
| 31 | AM-75 | DADM-25 | 198 |
| 32 | --- | NaAPS-100 | 316 |
| 33 | MAM-90 | AA-10 | 441 |

MAM = methacrylamide
MAA = methacrylic acid
VSA = vinylsulfonic acid
DADM = diallydimethylammonium chloride

The above mentioned patents and publications are incorporated herein by reference.

Many variations of the present invention will suggest themselves to those skilled in this art in light of the above detailed description. Chain-transfer agents may be optionally added to the monomer solution. Also contemplated are all methods of polymerization and dewatering processes.

All such obvious modifications are within the full intended scope of the appended claims.

CIBA 000497

- 19 -

31,320

WE CLAIM:

1.  A composition comprising cross-linked anionic or amphoteric organic polymeric microparticles, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1 mPa.s and a crosslinking agent content of above about 4 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about 5.0%.

2.  A composition as defined in Claim 1 wherein said crosslinking agent content ranges from about 4 to about 6,000 molar parts per million.

3.  A composition as defined in Claim 2 wherein said crosslinking agent content is from about 20 to about 4,000 molar parts per million.

4.  A composition as defined in Claim 2 wherein said crosslinking agent content is from about 50 to about 2,000 molar parts per million.

5.  A composition as defined in Claim 1 wherein said crosslinking agent is a difunctional monomer selected from N,N'-methylenebisacrylamide, N,N'-methylenebismethacryl-amide, polyethyleneglycol dimethacrylate, polyethyeneglycol diacrylate, N-vinyl acrylamide, glycidyl acrylate, divinylbenzene, acrolein, aldehydes, glyoxal, diepoxy compounds, epichlorohydrin and mixtures of the foregoing.

6.  A composition as defined in Claim 5 wherein said crosslinking agent comprises N,N'-methylenebisacrylamide.

CIBA 000498

- 20 -

7. A composition as defined in Claim 1 wherein said said unswollen diameter is less than 0.5 micron.

8. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one ethylenically unsaturated non-ionic monomer.

9. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one anionic monomer selected from acrylic acid, methacrylic acid, ethacrylic acid, 2-acrylamido-2-methylpropane-sulfonic acid or mixtures or salts thereof.

10. A composition as defined in Claim 9 wherein said anionic monomer comprises sodium acrylate, sodium methacrylate, sodium ethylacrylate or sodium 2-acrylamido-2-methylpropanesulfonate.

11. A composition as defined in Claim 1 wherein the organic polymer microparticle is amphoteric and is composed of from 1% to 99% of an anionic monomer selected from acrylic acid, methacrylic acid, ethacrylic acid, 2-acrylamido-2-methylpropane sulfonic acid or salts thereof and from 99% to 1% of a cationic monomer selected from acryloxyethyltrimethylammonium chloride, methacrylamidopropyltrimethylammonium chloride, diallyldimethylammonium chloride and mixtures thereof.

12. A composition as defined in Claim 8 wherein said non-ionic ethylenically unsaturated monomer is selected from acrylamide; methacrylamide;N,N-dialkylacrylamides; N-alkylacrylamides; N-vinylmethacetamide; N-vinyl methylformamide; vinyl acetate; N-vinyl pyrrolidone and mixtures thereof.

13. A composition as defined in Claim 1 wherein said organic polymer microbead is composed of sodium acrylate and acrylamide.

CIBA 000499

- 21 -

14. A process for the preparation of a composition as defined in Claim 1, said process comprising:

    (a) admixing

        (i) an aqueous solution comprising at least one ethylenically unsaturated anionic monomer alone or in admixture with a cationic monomer, and at least one crosslinking agent and, optionally, at least one ethylenically unsaturated non-ionic monomer;

        (ii) an oily phase comprising at least one hydrocarbon liquid;

        (iii) an effective amount of surfactant or surfactant mixture, so as to form an inverse emulsion; and

    (b) subjecting the inverse emulsion obtained in step (a) to polymerization conditions.

15. A process as defined in Claim 14 wherein said monomer solution of step (a)(i) comprises sodium acrylate as said anionic monomer, N,N-methylenebisacrylamide as said crosslinking agent and acrylamide as said non-ionic monomer.

16. A process as defined in Claim 14 wherein said oily phase of step (a)(ii) comprises a saturated hydrocarbon.

17. A process as defined in Claim 14 wherein said surfactant or surfactant mixture of step (a)(iii) comprises polyoxythylene sorbitol hexaoleate or a mixture thereof with sorbitan sesquioleate.

18. A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise adding a polymerization initiator.

CIBA 000500

- 22 -

19. A process as defined in Claim 18 wherein said polymerization initiator comprises sodium metabisulfite or tertiary-butyl hydroperoxide.

20. A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise subjecting said inverse emulsion to ultraviolet irradiation.

21. A process as defined in Claim 14 wherein said aqueous solution of step (a)(i) additionally contains an effective amount of a chain-transfer agent selected from an alcohol, mercaptan, phosphite, sulfite, or a mixture thereof.

22. A process as defined in Claim 14 which also includes step (c), comprising recovering the composition from the emulsion.

CIBA 000501

[REV.4Apr89/MB1-1]                     Docket No. 31,320

                                              PATENT

<u>COMBINED DECLARATION AND POWER OF ATTORNEY</u>
(Original,Design,Supplemental,Divisional,Continuation,CIP)

As the below named inventor, I hereby declare that:
                    TYPE OF DECLARATION
This declaration is of the following type:

    [ X ] original
    [   ] design
    [   ] supplemental
    [   ] divisional
    [   ] continuation
    [   ] continuation-in-part (CIP)
                 INVENTORSHIP IDENTIFICATION
My residence, post office address and citizenship are as stated
below next to my name. I believe I am the original, first and
sole inventor (if only one name is listed below) or an original,
first and joint inventor (if plural named are listed below) of
the subject matter which is claimed for, for which a patent is
sought on the invention entitled:
                    TITLE OF INVENTION
Cross-Linked Anionic and Amphoteric Polymeric Microparticles
_____

_____

                 SPECIFICATION IDENTIFICATION
the specification of which: (complete (a), (b), or (c))
    (a) [ X ] is attached hereto.
    (b) [   ] was filed on _____ as
        [   ] Serial Number  /
        [   ] Express Mail No., as Serial Number not
             yet known
    (c) [   ] was described and claimed in PCT International
           Application No. _____ filed on
           _____ and as amended under PCT
           Article 19 on _____ (if any).

CIBA 000502

[REV.4Apr89/MB1-1]          -2-

ACKNOWLEDGEMENT OF REVIEW OF PAPERS AND DUTY OF CANDOR

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37 CFR 1.97.

PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate or of any PCT International application(s) designating at least one country other than the United States of America listed below and have also identified below any foreign application(s) for patent or inventor's certificate of any PCT International application(s) designating at least one country other than the United States of America filed by me on the same subject matter having a filing date before that of the application(s) of which priority is claimed.

(d) [ X ] no such applications have been filed.

(e) [   ] such applications have been filed as follows.

Note: Where item (c) is entered above and the International Application which designated the U.S. claimed priority check item (e), enter the details below and make the priority claim.

Earliest Foreign Application(s), if any, filed within 12 months (6 months for Design) prior to this U.S. Application

| COUNTRY | APPLICATION NUMBER | DATE OF FILING (DAY,MONTH,YEAR) | PRIORITY CLAIMED 35 USC 119 |
|---------|--------------------|---------------------------------|------------------------------|
|         |                    |                                 |                              |
|         |                    |                                 |                              |
|         |                    |                                 |                              |
|         |                    |                                 |                              |

CIBA 000503

[REV.4Apr89/MB1-1]          -3-

All Foreign Application(s), if any, Filed More Than 12 Months
(6 Months for Design) Prior to This U.S. Application

_____

_____

_____

### POWER OF ATTORNEY

As a named inventor, I hereby appoint the following
attorney(s) and/or agent(s) to prosecute this application and
transact all business in the Patent and Trademark Office
connected therewith.

*301*

| Frank M. Van Riet | 19933 |
| (Name) | (Reg. No.) |

| Gordon L. Hart | 20191 |
| (Name) | (Reg. No.) |

| Roger S. Benjamin | 27025 |
| (Name) | (Reg. No.) |

| Michael J. Kelly | 27910 |
| (Name) | (Reg. No.) |

| Steven H. Flynn | 29639 |

[  ]   Attached as part of this declaration and power of
       attorney is the authorization of the above-named
       attorney(s) to accept and follow instructions from my
       representative(s).

--------------------------------------------------

SEND CORRESPONDENCE AND TELEPHONE CALLS TO:

*601* Frank M. Van Riet

*602* c/o American Cyanamid Company

*701* 1937 West Main Street

*702* Stamford, CT  06904-0060

Telephone No. (203) 321-2614

--------------------------------------------------

CIBA 000504

[REV.4Apr89/MB1-1]          -4-

<u>DECLARATION</u>

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

<u>SIGNATURE(S)</u>

Full name of <u>SOLE OR FIRST</u> INVENTOR <u>Roderick Glynn Ryles</u>

Inventor's signature _Roderick Glynn Ryles_
Date _7th June 1990_
Country of Citizenship <u>British</u>
Residence <u>96 Wendy Road, Milford, CT</u> _CT._
Post Office Address <u>Same</u>

Full name of <u>SECOND JOINT INVENTOR</u>, if any <u>Dan S. Honig</u>

Inventor's signature _Dan S. Honig_
Date _June 7, 1990_
Country of Citizenship <u>United States</u>
Residence <u>12 Conrad Road, New Canaan, CT  06840</u> _CT_
Post Office Address <u>Same</u>

Full name of <u>THIRD JOINT INVENTOR</u>, if any <u>Elieth W. Harris</u>

Inventor's signature _Elieth W. Harris_
Date _June 7, 1990_
Country of Citizenship <u>Antigua</u>
Residence <u>484 Colorado Avenue, Bridgeport, CT  06605</u> _CT_
Post Office Address <u>Same</u>

→ over

CIBA 000505

[REV.4Apr89/MB1-1]          -5-

<u>THE FOLLOWING 'ADDED PAGES' FORM A PART OF THIS DECLARATION</u>

[ X ] Signature for fourth and subsequent joint inventors on
      ADDED PAGES.
[    ] ADDED PAGES TO COMBINED DECLARATION, POWER OF ATTORNEY
      for divisional, continuation, or continuation-in-part (CIP)
      application.
      [    ] Number of ADDED PAGES: _____
      [    ] Declaration ends with this page.

CIBA 000506

[REV.4Apr89/MB1-1]          -6-

ADDED PAGE TO COMBINED DECLARATION AND POWER OF ATTORNEY FOR
SIGNATURE BY FOURTH AND SUBSEQUENT INVENTORS

Full name of FOURTH JOINT INVENTOR, if any  Roger E. Neff

Inventor's signature  _Roger E. Neff_
Date  6/7/90
Country of Citizenship  United States
Residence  66 Woodridge Drive, Stamford, CT   CT
Post Office Address  _____


Full name of FIFTH JOINT INVENTOR, if any  _____

Inventor's signature  _____
Date  _____
Country of Citizenship  _____
Residence  _____
Post Office Address  _____


Full name of SIXTH JOINT INVENTOR, if any  _____

Inventor's signature  _____
Date  _____
Country of Citizenship  _____
Residence  _____
Post Office Address  _____


Full name of SEVENTH JOINT INVENTOR, if any  _____

Inventor's signature  _____
Date  _____
Country of Citizenship  _____
Residence  _____
Post Office Address  _____


CIBA 000507

07535626

NEW APPLICATION (Original)                    Docket No. 21.320
[REV.4Apr89/MB4-1]                                              PATENT

Commissioner of Patents and Trademarks
Washington, D.C. 20231

<u>NEW APPLICATION TRANSMITTAL</u>

Transmitted herewith for filing is the patent application of
the following Inventor(s): <u>Roderick Glynn Ryles; Dan S. Honig</u> ,
<u>Elieth W. Harris and Roger E. Neff</u>; For: <u>Cross-Linked Anionic and</u>
<u>Amphoteric Polymeric Microparticles</u>                    .

This new filing is for an ORIGINAL application.

1.    Papers enclosed which are required for filing date under 35
      CFR 1.53(b):
      [ X ] _22_Pages of specification
      [ X ] _4_Pages of claims
      [ X ] _1_Pages of abstract
      [   ] ____Sheets of drawing
                 [   ] Formal
                 [   ] Informal (in triplicate)
2.    Additional papers enclosed
      [   ] Information Disclosure Statement
      [   ] Form PTO-1449
      [   ] Citations
      [   ] Declaration of Biological Deposit
      [   ] Other: _____

CERTIFICATION UNDER 37 CFR 1.10
      I hereby certify that this New Application Transmittal and the
documents referred to as enclosed therein are being deposited with
the United States Postal Service on this date _____
in an envelope as "Express Mail Post Office to Addressee" Mailing
Label Number _____ addressed to the: Commissioner of
Patents and Trademarks, Washington, D.C 20231.

_____
(name of person mailing paper)

_____
(Signature of person mailing paper)

CIBA 000508

NEW APPLICATION (Original)    -2-
[REV.4Apr89/HB4-1]

3.    Declaration
    [ X ] Enclosed and executed by all inventor(s)
    [   ] Not enclosed or not executed by all inventor(s)
4.    Assignment
    [   ] An assignment of the invention to:
                American Cyanamid Company
                1937 West Main Street
                P.O. Box 60
                Stamford, CT 06904-0060
        [   ] is attached.
        [   ] will follow.
5.    Fee Calculation

| | CLAIMS AS FILED | | | |
|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) |
| FOR | NUMBER FILED | NUMBER EXTRA | RATE | BASIC FEE ($370.00) |
| TOTAL CLAIMS | 22 - 20 = | | X $12.00 | 24.00 |
| INDEP. CLAIMS | 2 - 3 = | | X $36.00 | |
| MULTIPLE DEPENDENCY FEE | | | $ 120.00 | |
| RECORDING OF ASSIGNMENT | | | $ 8.00 | 8.00 |
| | | | TOTAL FILING FEE | $402.00 |

6.    Fee Payment being made at this time
    [ X ] filing fee                     $  394.00
    [ X ] recording assignment           $    8.00
                            TOTAL $  402.00
7.    Method of Payment of Fees:
    Charge Deposit Account No. 01-1300 in the amount of
    $402.00   .
      A duplicate of this transmittal is attached.
8.    Instructions as to Overpayment:
    Credit any overpayment to Deposit Account No. 01-1300.

CIBA 000509

NEW APPLICATION (Original)    -3-
[REV.4Apr89/MB4-1]

9.    Authorization to Charge Additional Fees

    [ X ] The Commissioner is hereby authorized to charge the
        following additional fees by this paper and during the
        entire pendency of this application to Deposit Account
        No. 01-1300:

        [ X ] 37 CFR 1.16(a),(f),or (g) filing fees

        [ X ] 37 CFR 1.16(b),(c), and (d) presentation of
            extra claims

        [   ] 37 CFR 1.16(e) surcharge for filing the basic
            filing fee and/or declaration on a date later
            than the filing date of the application

        [   ] 37 CFR 1.17 application processing fees

                                (Signature of Attorney)

Reg. No. 19933            Frank M. Van Riet
                            (Type name of Attorney)

Tel. No. (203) 321-2614        American Cyanamid Company
                            1937 West Main Street
                            P.O. Box 60
                            Stamford, CT 06904-0060

CIBA 000510



**UNITED STA... DEPARTMENT OF COMMERCE**
Patent and Tra...mark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/535,626 | 06/11/90 | RYLES | R | 31,320 |

| | EXAMINER |
|---|---|
| | CHENG, W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 155 | 2 |

FRANK M. VAN RIET
C/O AMERICAN CYANAMID CO.
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

DATE MAILED: 08/16/90

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined   ☐ Responsive to communication filed on _____   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☒ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims _1 to 22_ are pending in the application.
   Of the above, claims _14 to 22_ are withdrawn from consideration.
   have been cancelled.
2. ☐ Claims _____ are allowed.
3. ☐ Claims _____ are rejected.
4. ☒ Claims _1 to 13_ am objected to.
5. ☒ Claims _5, 8, 10, and 12_ are subject to restriction or election requirement.
6. ☐ Claims _____

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**CIBA 000511**

EXAMINER'S ACTION

PTOL-326 (Rev. 9-67)

Serial No. 535,626                    -2-

Art Unit   155


15.

    Restriction to one of the following inventions is required

under 35 U.S.C. § 121:

    I.   Claims 1 to 13, drawn to polymers, are classified in Class

526, subclass 264.

    II.   Claims 14 to 22, drawn to process, are classified in Class

522, subclass 184.

    Inventions I and II are related as process of making and

product made.  The inventions are distinct if either or both of

the following can be shown: (1) that the process as claimed can

be used to make other and materially different product or (2)

that the product as claimed can be made by another and materially

different process (M.P.E.P. § 806.05(f)).  In the instant case

the process as claimed can be used to make a materially different

product such as polymer dispersion stabilizer.

    Because these inventions are distinct for the reasons given

above and have acquired a separate status in the art as shown by

their different classification, restriction for examination

purposes as indicated is proper.

    During a telephone conversation with Mr. Frank M. Van Riet

on July 30, 1990 a provisional election was made with traverse to

prosecute the invention of I, claims 1 to 13.  Affirmation of

this election must be made by applicant in responding to this

Office action.  Claims 14 to 22 are withdrawn from further

CIBA 000512

Serial No. 535,626                    -3-

Art Unit   155

consideration by the Examiner, 37 C.F.R. § 1.142(b), as being

drawn to a non-elected invention.

16. The following is a quotation of the first paragraph of 35

U.S.C. § 112:

> The specification shall contain a written description of the
> invention, and of the manner and process of making and using
> it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains,
> or with which it is most nearly connected, to make and use
> the same and shall set forth the best mode contemplated by
> the inventor of carrying out his invention.

The specification is objected to under 35 U.S.C. § 112,

first paragraph, as failing to provide an adequate written

description of the invention.

Claim 5 is rejected under 35 U.S.C. § 112, first paragraph,

for the reasons set forth in the objection to the specification.

This claim contains the term "aldehydes" which is generic

and the terms "acrolein" and "glyoxal" which are species.  It is

suggested to delete the term "aldehydes", since all the other

compounds are species.

Claim 10 is rejected under 35 U.S.C. § 112, first paragraph,

for the reasons set forth in the objection to the specification.

Does this claim involve a cationic or an anionic monomer?

The compounds listed contain anionic organic monomers.

Claims 8 and 12 are rejected under 35 U.S.C. § 112, first

paragraph, for the reasons set forth in the objection to the

specification.

CIBA 000513

Serial No. 535,626                                    -4-

Art Unit  155

These two claims involve non-ionic organic monomers.  How
can they be expected to produce polymers with ionicity of at
least about 5.0%?

17.

Claims 1 to 13 are rejected under 35 U.S.C. § 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention.

The term "ionicity" is not defined, making the claims vague
and indefinite.  When "percentage" is mentioned, does it mean
"percentage by weight based on the total polymer or on the
ionizable monomer"?

18.

The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

A person shall be entitled to a patent unless --

(b) the invention was patented or described in a printed
publication in this or a foreign country or in public use or
on sale in this country, more than one year prior to the
date of application for patent in the United States.

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

A patent may not be obtained though the invention is not
identically disclosed or described as set forth in section
102 of this title, if the differences between the subject
matter sought to be patented and the prior art are such that
the subject matter as a whole would have been obvious at the
time the invention was made to a person having ordinary
skill in the art to which said subject matter pertains.

CIBA 000514

Serial No. 535,626                          -5-

Art Unit   155

    Patentability shall not be negatived by the manner in which
the invention was made.

    Subject matter developed by another person, which qualifies
as prior art only under subsection (f) or (g) of section 102
of this title, shall not preclude patentability under this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

    Claims 1 to 4, 7 to 10, and 12 to 13 are rejected under 35

U.S.C. § 102(b) as anticipated by or, in the alternative, under

35 U.S.C. § 103 as obvious over Durand et al.

    In Example 1, Durand et al. disclosed anionic organic

polymeric microparticles by polymerizing sodium acrylate (or

acrylic acid plus sodium hydroxide) and acrylamide in the

presence of poly-oxyethylene sorbitol hexaoleate and sorbitan

sesquioleate.  Since oleate contains a double bond, it is

reasonable to expect these oleates functioning to some degree as

a cross-linking agent in addition to being a surfactant.  Example

2 reported the viscosity of the acrylamide-sodium acrylate in

aqueous solution to be 1.30 $mm^2/s$.  Line 67 in column 3 mentioned

that particles' radius was of the order of 20-40 nanometers (or

0.02-0.04 microns).  Since 20.7g of acrylic acid was used to

produce 82.0g of the copolymer (i.e. 61.3g acrylamide plus 20.7g

acrylic acid), the weight percentage of acrylate ion in the

copolymer was about 25%.

19.

    Claims 1 to 5, 7 to 9, and 12 are rejected under 35 U.S.C.

CIBA 000515

Serial No. 535,626                        -6-

Art Unit   155

§ 102(b) as anticipated by or, in the alternative, under 35
U.S.C. § 103 as obvious over Makhlouf et al.

In the abstract, Makhlouf et al. disclosed a composition
comprising cross-linked organic polymeric micro particles having
particle sizes of from 0.1 to 10 microns. At least one
monoethylenically unsaturated monomer and a cross-linking agent
were used.

From line 64 in column 2 to line 6 in column 3, the cross-
linking agent was disclosed to be an epoxy-group-containing
compound like glycidyl acrylate or glycidyl methacrylate.

From lines 29 to 63 in column 2, the monoethylenically
unsaturated monomers were disclosed to include acrylic acid,
methacrylic acid, ethacrylic acid, vinyl acetate, and others.
20.

Claims 1 to 4, 7, 9 to 11, and 13 are rejected under 35
U.S.C. § 102(b) as anticipated by or, in the alternative, under
35 U.S.C. § 103 as obvious over Silver.

In the abstract, Silver disclosed acrylate copolymer
microspheres. At least one alkyl acrylate ester and one ionic
monomer or maleic anhydride were used. From line 1 to line 40 in
column 3, ionic monomers on the list included both anionic
monomer and cationic monomers.

The lower limit of these microspheres was one micron which
was very close to (or within experimental error of) the claimed

CIBA 000516

Serial No. 535,626                          -7-

Art Unit   155

particle size of 0.75 micron.

21.

    Claim 5 is rejected under 35 U.S.C. § 102(b) as anticipated

by or, in the alternative, under 35 U.S.C. § 103 as obvious over

Leong *et al.*

    From lines 8 to 10 in the left column on page 2270, Leong et

al. disclosed cross-linked polyacrylamide lattices or microgels

which were prepared by using a mixture of acrylamide and

methylene bisacrylamide.

    The sizes of the inverse lattices were disclosed in the

abstract to be less than 500 Å in diameter.

*WCC*
W.C. Cheng:jp
August 09, 1990

JOSEPH L. SCHOFER
SUPERVISORY PATENT EXAMINER
ART UNIT 155

CIBA 000517

TO SEPARATE, HO  D TOP AND BOTTOM EDGES, SNAP-APART AND  3CARD CARBON

| FORM PTO-892<br>(REV. 3-78) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | SERIAL NO.<br>07/535626 | GROUP ART UNIT<br>155 | ATTACHMENT<br>TO<br>PAPER<br>NUMBER |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S)<br>R. G. Ryles, D. S. Honig, E. W. Harris,<br>and R. E. Neff | | |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4 6 8 1 9 1 2 | 7-21-87 | Durand et al. | 524 | 827 | |
| | B | 4 1 4 7 6 8 8 | 4-3-79 | Makhlouf et al. | 526 | 273 | |
| | C | 3 6 9 1 1 4 0 | 9-12-72 | Silver | 524 | 815 | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT<br>SHTS DWG | PP SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | |
|---|---|
| R | Y. S. Leong and F. Candau, Inverse Microemulsion Polymerization, Journal of Physical Chemistry 86, 2269, 1982. |
| S | |
| T | |
| U | |

| EXAMINER<br>CHENG, W. C. | DATE<br>8-6-90 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

CIBA 000518

/SC·    RECEIVED    CB-155

[REV. Apr89/MB11-2]    JAN 2 2 1991    Docket No. _31,320_____

                        GROUP 150                              PATENT
          IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
In re Application of:                   Date: January 7, 1991
RODERICK GLYN RYLES
DAN S. HONIG                                    #3
ELIETH W. HARRIS
ROGER E. NEFF

Serial No.: 07/535,626              Group No. 155
Filed:    February 12, 1990        Examiner: W. Cheng
For:    CROSS-LINKED ANIONIC AND
        AMPHOTERIC POLYMERIC MICRO-
        PARTICLES

Commissioner of Patents and Trademarks
Washington, D. C.  20231

          PETITION FOR EXTENSION OF TIME (37 CFR 1.36(a))

1.  This is a petition for an extension of the time for a total
    period of _2_ month(s) to respond to the Office Letter
    mailed on _August 16, 1990_ for _filing an amendment___.

2.  A response in connection with the matter for which this
    extension is requested:

    [ X ] is filed herewith

    [   ] has been filed

            (complete the following if applicable)

    [   ] the response is the filing of a continuation
          application having an express abandonment conditioned
          on the granting of a filing date to the continuing
          application.

----------------------------------------------------------

              CERTIFICATE OF MAILING (37 CFR 1.8(a))

    I hereby certify that this paper (along with any referred to as
    being attached or enclosed) is being deposited with the United
    States Postal Service on the date shown below with sufficient
    postage as first class mail in an envelope addressed to the:
    Commissioner of Patents and Trademarks, Washington, D.C. 20231.

    Date: 04238  01/17/91  07535626
                              (Signature of person mailing paper)

CIBA 000519

[REV.4Apr89/MB11-2]          -2-

3.   Calculation of extension fee (37 CFR 1.17(a)-(d):
     [   ] One Month.    Fee in the amount of $100.00
     [ X ] Two Months.   Fee in the amount of $300.00
     [   ] Three Months. Fee in the amount of $730.00
     [   ] Four Months.  Fee in the amount of $1,150.00
                                        FEE $ 300.00

If an additional extension of time is required, please consider
this a petition therefor.

          (check and complete the next item, if applicable)
     [   ] An extension for ____ months has already been secured
           and the fee paid therefor of $_____ is deducted
           from the total fee due for the total months of
           extension now requested.

               Extension fee due with this request $ 300.00

4.   FEE PAYMENT
     [ X ] Charge fee to Account No. 01-1300 and this is a
           request to charge for any additional extension and/or
           fee required or credit for any excess fee paid. A
           duplicate of this petition is attached.

                              _____
                              (Signature of Attorney)

Reg. No. 19933               Frank M. Van Riet
                              (Type name of Attorney)

Tel. No. (203) 321-2614       American Cyanamid Company
                              1937 West Main Street
                              P.O. Box 60
                              Stamford, CT 06904-0060

CIBA 000520

RECEIVED

JAN 2 2 1991

GROUP 150

Docket No.: 31,320

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Serial No.:   07/535,626
Filed: June 11, 1990
For:  CROSS-LINKED ANIONIC
       AND AMPHOTERIC POLYMERIC
       MICROPARTICLES

Commissioner of Patents
 and Trademarks

Washington, D.C.  20231

Group Art Unit:  155

Examiner:  W. Cheng

January 4, 1991

Amendment

        In response to the Office Action of August 16, 1990,

please amend the instant application as follows:

In the Specification

        Page 5, lines 14 and 15, cancel the words "Attorney

Docket No. 31,043), filed concurrently herewith" and substitute

therefor the words  --07/536,382 filed June 11, 1990, now

abandoned and refiled as Serial No. 07/540,667, filed June 18,

1990 as a continuation-in-part--.

        Page 5, line 24, cancel the term "5%" and substitute

therefor --5 mole percent--.

        Page 10, line 8, please correct the spelling of

"azobisisobutyronitrile".

        Page 11, line 16, cancel the word "initialed" and

substitute therefor the word --initiated--.

        Page 18, line 8, cancel the word "micorbead" and

substitute therefor the word --microbead--.

In the Claims:

Please rewrite Claim 1 as follows:

- 1 -

CIBA 000521

--1. (Amended)  A composition comprising cross-linked anionic or amphoteric polymeric microparticles derived solely from water-soluble monomers, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1. mPa.s, [and] a cross-linking agent content of above about 4 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about [5%] 5 mole percent--.

Claim 5, line 6, cancel the word "aldehydes".

Claim 10, line 2, cancel the word "cationic" and substitute therefor the word --anionic--.

## Remarks

The Examiner has required restriction to one of the following inventions under 35 USC 121:

Group I, claims 1-13, drawn to polymers and classified in Class 526; Subclass 264.

Group II, Claims 14-22 drawn to a process and classified in Class 522; Subclass 184.

Inventions I and II are related as process of making and product made, the Examiner explains, and are distinct if either or both of the following can be shown:  (1) that the process, as claimed, can be used to make another and materially different product or (2) that the product, as claimed, can be made by another and materially different process.  In the instant case, the Examiner contends, the process, as claimed, can be used to make a materially different product such as polymer dispersion stabilizer.

Because the Inventions are therefore distinct, and have acquired a separate status in the art as shown by their different

- 2 -

CIBA 000522

classification, the restriction for examination purposes has been indicated as proper.

The requirement for restriction is strenuously urged as improper. Contrary to the Examiner's contention, it is not seen how the process of Invention II can be used to make a materially different product than represented by Invention I in that the process, of necessity, must make a polymer and the polymer, of necessity, must be that of Invention I. The fact that the polymer may be a polymer dispersion stabilizer is irrelevant. It will still be the polymer represented by Claims 1-13 and thus will not be a materially different product.

Additionally, ex parte Cos 1889 CD 191 and U.S. ex rel. Steinmetz v. Allen 1904 CD 703 clearly establish that a separation of classification is not determinative of the separateness of invention. Reconsideration of the requirement for restriction is therefore earnestly solicited.

In order to comply with the requirement, however, Applicants hereby acknowledge their previous telephonic election of Invention I i.e. Claims. 1-13. Retention of non-elected Claims 14-22, withdrawn from further consideration, in the application for the purpose of filing a subsequent divisional application or appeal is respectfully requested.

The specification has been objected to under 35 USC 112, first paragraph, as failing to provide an adequate written description of the invention.

This objection is not understood in that the Examiner has not expressed any reasons why the specification is insufficient. Applicants have carefully considered the specification and find no reason why it does not contain such full, clear, concise and exact terms as to enable any person

- 3 -

CIBA 000523

skilled in the art to which it pertains to make and use the same. Clarification of this objection is respectfully requested.

Claim 5 has been rejected under 35 USC 112, first paragraph, the Examiner stating that the claim contains the term "aldehydes" which is generic to the terms "acrolein" and "glyoxal" which are species.

This rejection has been overcome by the instant amendment, as suggested by the Examiner, by cancellation of the term "aldehydes", which compounds, however, are still clearly included in the generic claims as a possible cross-linking agent.

Claim 10 has been rejected under 35 USC 112, first paragraph, the Examiner questioning whether the claim involves a cationic or an anionic monomer, the compounds listed being anionic.

This ground of rejection has been overcome by the instant amendment in that the term "cationic" has been replaced by the term --anionic--, as obviously intended. The error is regretted.

Claims 8 and 12 have also been rejected under 35 USC 112, first paragraph, in that they involve non-ionic monomers, the Examiner questioning how they can be expected to produce polymers with an ionicity of at least about 5 mole percent.

This ground of rejection is respectfully traversed. All that is required by Claims 8 and 12 is that a non-ionic monomer be present in the final polymer composition. Since Claims 8 and 12 are dependant upon Claim 1 and Claim 1 requires that the polymer composition have an ionicity of at least about 5 mole percent, it is believed to be clear that the polymer must also be additionally composed of either anionic or anionic and cationic monomer(s). Thus, Claims 8 and 12 cover anionic or

- 4 -

CIBA 000524

amphoteric polymer compositions which are also produced from a
non-ionic monomer, e.g. acrylamide, see Example 1 vis-a-vis
Example 3. Reconsideration of this rejection is earnestly
solicited.

Claims 1-13 have been rejected under 35 USC 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which Applicants
regard as the invention, the Examiner stating that the term
"ionicity" is not defined, thus making the claims vague and
indefinite since when "percentage" is mentioned, there is no
designation of the basis therefor.

This ground of rejection has been overcome by the
instant amendment whereby the ionicity of the polymer
composition, both in the specification at page 5 and the claims,
has been indicated as a "mole percentage". Basis for this
limitation can be found in Table I, page 13, and Table III, page
17, see, for example, Example 25. Withdrawal of this ground of
rejection is respectfully requested.

Claims 1-4, 7-10, 12 and 13 have been rejected under 35
USC 102(b) as anticipated by or, in the alternative, under 35 USC
103, as obvious over, Durand etal, the Examiner stating that
Durand etal, in Example 1, discloses anionic, organic, polymeric
microparticles by polymerizing sodium acrylate and acrylamide in
the presence of polyoxyethylene sorbitol hexaoleate and sorbitan
sesquioleate. Since the oleate contains a double bond, the
Examiner argues that it is reasonable to expect the oleate to
function to some degree as a cross-linking agent in addition to
being a surfactant. Specifically, the Examiner continues,
Example 2 reports the viscosity of the polymer to be 1.30 $mm^2$/s
while col. 3, line 67 mentions that particles of a radius of
20-40 nanometers result. Since 20.7g of acrylic acid was used to

- 5 -

CIBA 000525

produce 82.0g of copolymer, the Examiner indicates that the weight percent of acrylate ion was about 25%.

This ground of rejection is respectfully traversed. The Durand etal, reference has been carefully considered but is not seen to teach, disclose or suggest the instant invention. Durand etal fail to indicate the incorporation of a cross-linking agent into the polymer produced therein. Only sodium acrylate and acrylamide are used. The Examiner apparently recognizes the deficiency of Durand etal in that he points out that the oleate surfactants of Durand etal contain an unsaturated group and thus would reasonably be expected to function as a cross-linker. This assumption is erroneous in that the oleates of Durand etal are monounsaturated and if any reaction thereof with the acrylamide and/or acrylate were to occur it would occur linearly because a cross-linking agent must contain two functional groups to act as such, see page 7, lines 11-26 of the instant specification. Thus, the particulate polymer compositions produced by Durand etal clearly do not anticipate the instant claims in the sense of 35 USC 102.

Durand etal also fails to render the instant invention obvious in that the particles of Durand etal clearly would not function as do the instant compositions. In this regard, the Examiner's attention is respectfully directed to Table II of the instant specification. As can be seen, Example 7 is representative of a polymer produced in the absence of cross-linking agent i.e. it is linear, see page 16, line 2, as is that of Durand etal. The cross-linked polymer compositions, while beneficial, are clearly outclassed by the Applicants' compositions as represented by Examples 8-19. It is Applicants' position that it would not be expected from a perusal of the Durand etal application that the use of a cross-linking agent in

- 6 -

CIBA 000526

the preparation of the instant compositions would result in compositions which function in a manner unexpectedly superior to those produced in the absence of a cross-linking agent. Reconsideration of this ground of rejection is earnestly solicited.

Claims 1-5, 7-9 and 12 have been rejected under 35 USC 102(b) as anticipated by, or, in the alternative, under 35 USC 103, as obvious over, Maklhouf etal, the Examiner stating that Maklhouf etal discloses a composition comprising cross-linked, organic, polymeric microparticles having particle sizes of from 0.1-10 microns, at least one monomethylenically unsaturated monomer and a cross-linking agent being used. The cross-linking agent can be an epoxy-group containing compound like glycidyl methacrylate, the Examiner continues, and the unsaturated monomers include acrylic acid.

This ground of rejection has been overcome the instant amendment whereby Claim 1 has been rewritten to include the limitation that the polymers hereof are produced solely from water-soluble monomers. Basis for this limitation can be found in the specification at page 3, line 1 et seq. and all the Examples wherein, it can be seen, only water-soluble monomers are disclosed. The polymers of Maklhouf etal contain only 0.5-15% of water-soluble monomer, the remaining 70-99% being water-insoluble monomer, see col 2, linear 41-63. Furthermore, although Maklhouf etal disclose a particle diameter range which overlaps the maximum particle size diameter of Applicants, it is strenuously urged that Maklhouf etal do not produce particles where the number average particle size is only below 0.75 microns. The compositions of Maklhouf etal are particles of all diameters from 0.1-10 microns as is recognized in the art where this type of dispersion polymerization is used in the polymer production. All

- 7 -

CIBA 000527

of Applicants' particles fall within the claimed range whereas only some of the composition of Maklhouf etal fall within said range.

Furthermore, as discussed above, the compositions of the instant invention have been shown to be unexpectedly superior to closely related compositions and thus, are clearly unobvious over the teachings of Maklhouf etal.

Claims 1-4,7, 9-11 and 13 have also been rejected under 35 USC 102(b), as anticipated by, or, in the alternative, under 35 USC 103, as obvious over, Silver, the Examiner stating that Silver discloses acrylate copolymer microspheres of at least one alkyl acrylate ester and one ionic monomer or maleic anhydride. Ionic monomers listed include both anionics and cationics, the Examiner continues, the lower limit of the particle size being one micron which is very close to, or within experimental error, of the claimed 0.75 micron maximum.

This ground of rejection has also been overcome by the instant amendment whereby Claim 1 has been limited to polymer compositions produced solely from water-soluble monomers. The arguments applied to Maklhouf etal above also apply to Silver which also fails to teach the use of water-soluble monomers alone and produces polymer particles of a range too large to fall within those claimed herein, a 25% differential in size being considered more than within experimental error. Silver, in fact, indicates that a smaller particle size is undesirable, see col 4, lines 23-27. From 90-99.5% of the Silver compositions are made from water-insoluble monomers, see col 1, lines 45-52. Additionally, no cross-linking agent is employed and no suggestion can be found that the unexpected results, shown in Table II hereof, can be achieved. Accordingly, reconsideration of this ground of rejection is also strenuously urged.

– 8 –

CIBA 000528

Claim 5 has been rejected under 35 USC 102(b), as anticipated by, or, in the alternative, under 35 USC 103, as obvious over, Leong etal, the Examiner stating that Leong etal disclose cross-linked polyacrylamide latices or microgels which are prepared using a mixture of acrylamide and ethylene bisacrylamide, the sizes of the latices being less than 500A in diameter.

This ground of rejection is also respectfully traversed. Leong etal is acknowledged in Applicants' specification as prior art over which the instant invention is a patentable improvement. Leong etal fails to include an ionic monomer in the polymerization taught therein and thus, the polymer compositions produced therein do not contain the 5 mole percent ionicity required by the instant claims. Nor are the instant claims obvious therefrom in view of the unexpectedly superior results achieved as shown in Applicants' specification. Withdrawal of this ground of rejection is also earnestly solicited.

It is noted that the Examiner failed to include Claim 6 in any of the above-discussed rejections. It is therefore assumed that Claim 6 contains allowable subject matter. Confirmation of this assumption is hereby requested from the Examiner.

In view of the above Remarks, this Application is believed to be in condition for allowance and such action is earnestly requested at an early date.

Respectfully submitted,

*Frank M [signature]*

Attorney for Applicants
Frank M. Van Riet
Registration# 19933

I hereby certify that this correspondence
is being deposited with the United States
Postal Service as first class mail in an
envelope addressed to: Commissioner of
Patents and Trademarks, Washington, D.C.
20231, on _____January  7, 1991_____
(Date of Deposit)

FRANK M. VAN RIET
Name of Applicant, Assignee, or
Registered Representative

*Frank M [signature]*

Signature
_1 - 7 - 91_
Date of Signature

oc/
AM-31320

- 9 -

CIBA 000529



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/535.626 | 06/11/90 | RYLES | R | 31,320 |

|  | EXAMINER |
|---|---|
|  | CHENG, W |

FRANK M. VAN RIET
C/O AMERICAN CYANAMID CO.
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

| ART UNIT | PAPER NUMBER |
|---|---|
| 155 | |

DATE MAILED: 04/11/91

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined   ☒ Responsive to communication filed on _1-10-91_   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _3_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I** THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II** SUMMARY OF ACTION

1. ☒ Claims _1 - 22_ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1 - 22_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev. 9-81)

EXAMINER'S ACTION

CIBA 000530

( )

Serial No. 535,626                              -2-

Art. Unit   155

15.

    Applicants' arguments, filed on January 10, 1991, have been
carefully considered.

16.

    The restriction requirement is withdrawn in view of the
arguments.

17.

    The corrections in claims 5 and 10 are noted.  The rejection
under 35 U.S.C. 112, first paragraph, has been overcome.

18.

    The rejection of claims 8 and 12 under 35 U.S.C. 112, first
paragraph, is withdrawn in view of arguments.

19.

    The rejection of claims 1-13 under 35 U.S.C. 112, second
paragraph, has been overcome by the amendment.

20.

    The rejection of claims 1-5, 7-9, and 12 under 35 U.S.C.
102(b) or under 35 U.S.C. 103 over Makhlouf et al on record is
repeated.

    On page 7 of the amendment, the applicants argued that the
polymers of Markhouf et al contain 70-99% water-insoluble
monomer.  The list of monomers in lines 41-63 column 2 of the
reference included vinyl acetate which is soluble in water.

CIBA 000531

Serial No. 535,626                                    -3-

Art Unit   155

There is also a statement that essentially any copolymerizable

mono ethylenic monomer may be utilized.

21.

    The rejection on record of claims 1-4, 7-10, 12 and 13 under
*see Durand et al.*

35 U.S.C. 102(b) or 35 U.S.C. 103 is withdrawn in view of the

arguments.

22.

    The rejection on record of claims 1-4, 7, 9-11 and 13 under
*see Silver*

35 U.S.C. 102(b) or 35 U.S.C. 103 has been overcome by the

amendment.

23.

    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

    A patent may not be obtained though the invention is not
identically disclosed or described as set forth in section
102 of this title, if the differences between the subject
matter sought to be patented and the prior art are such that
the subject matter as a whole would have been obvious at the
time the invention was made to a person having ordinary
skill in the art to which said subject matter pertains.
Patentability shall not be negatived by the manner in which
the invention was made.

    Subject matter developed by another person, which qualifies
as prior art only under subsection (f) or (g) of section 102
of this title, shall not preclude patentability under this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

CIBA 000532

Serial No. 535,626                    -4-

Art Unit   155


Claims 1-13 are rejected under 35 U.S.C. § 103 as being

unpatentable over Neff et al (U.S. 4,968,435) in view of

Whittaker.

In the primary reference, Neff et al disclosed crosslinked

cationic polymeric microparticles and its method of preparation.

Whittaker taught the use of cationic, anionic, and/or

amphoteric polymers as flocculating agents for different types of

dispersions.

Thus it would be obvious because crosslinked anionic (and/or

amphoteric) polymeric microparticles would be expected to

flocculate that type of dispersions which Whittaker's anionic

(and/or amphoteric) polymers will flocculate.

24.

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

A patent may not be obtained though the invention is not
identically disclosed or described as set forth in section
102 of this title, if the differences between the subject
matter sought to be patented and the prior art are such that
the subject matter as a whole would have been obvious at the
time the invention was made to a person having ordinary
skill in the art to which said subject matter pertains.
Patentability shall not be negatived by the manner in which
the invention was made.

Subject matter developed by another person, which qualifies
as prior art only under subsection (f) or (g) of section 102
of this title, shall not preclude patentability under this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

CIBA 000533

Serial No. 535,626                         -5-

Art Unit  155


Claims 14-22 are rejected under 35 U.S.C. § 103 as being
unpatentable over Neff et al (U.S. 4,968,435) in view of Durand
et al.

Neff et al disclosed the method of preparing crosslinked
cationic polymeric microparticles.

Durand et al showed that anionic monomers are polymerizable
under the inverse emulsion polymerization conditions of Neff.
Thus it would be obvious.

25.

Applicant's amendment necessitated the new grounds of
rejection. Accordingly, THIS ACTION IS MADE FINAL.  See M.P.E.P.
§ 706.07(a).  Applicant is reminded of the extension of time
policy as set forth in 37 C.F.R. § 1.136(a).


A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.


W. Cheng:smw
April 09, 1991
703-308-2351

April 09, 1991

                              JOSEPH L. SCHOFER
                          SUPERVISORY PATENT EXAMINER
                                ART UNIT 156

                         CIBA 000534

TO SEPARATE, H__ ? TOP AND BOTTOM EDGES, SNAP—APART AND __?CARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/535 626 | GROUP ART UNIT 1.55 | ATTACHMENT TO PAPER NUMBER | 5 |
|---|---|---|---|---|---|

NOTICE OF REFERENCES CITED

APPLICANT(S)
R. G. Ryles, D. S. Honig, E. W. Harris, and R. E. Neff

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 4 7 0 5 6 4 0 | 11-10-87 | Whittaker | 210 | 733 | |
| B | | 4 9 6 8 4 3 5 | 11-6-90 | Neff et al. | 210 | 734 | |
| C | | | | (effective filing date was 12-19-88) | | | |
| D | | 4 6 8 1 9 1 2 | 7-21-87 | Durand et al. | 524 | 827 | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| R | |
|---|---|
| S | |
| T | |
| U | |

| EXAMINER CHENG, W. C. | DATE 4-4-91 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

CIBA 000535

155
152 81991
150 1 chug 155

[Apr89/MB11-2]                    Docket No. 31,320-00
                                                        PATENT

MAIL ROOM
JUL 22 1991
IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    Date: July 18, 1991
RODERICK GLYN RYLES                          155   7730/91
DAN S. HONIG                                 152   001 chug, UU
ELIETH W. HARRIS
ROGER E. NEFF                            RECEIVED

Serial No.: 07/535,626                   JUL 2 0 1991
Filed:  June 11, 1990                    GROUP 150
For:    CROSS-LINKED ANIONIC AND
        AMPHOTERIC POLYMERIC
        MICROPARTICLES

Commissioner of Patents and Trademarks
Washington, D. C.  20231

                PETITION FOR EXTENSION OF TIME (37 CFR 1.36(a))

1.  This is a petition for an extension of the time for a total
    period of  1  month(s) to respond to the Office Letter
    mailed on April 11, 1991    by  filing a continuation
    application.

2.  A response in connection with the matter for which this
    extension is requested:  /

    [  ] is filed herewith

    [  ] has been filed
         (complete the following if applicable)

    [  ] the response is the filing of a continuation
         application having an express abandonment conditioned
         on the granting of a filing date to the continuing
         application.

---

                CERTIFICATE OF MAILING [37 CFR 1.8(a)]

    I hereby certify that this paper (along with any referred to as
    being attached or enclosed) is being deposited with the United
    States Postal Service on the date shown below with sufficient
    postage as first class mail in an envelope addressed to the:
    Commissioner of Patents and Trademarks, Washington, D.C. 20231.

    DS20155  07/24/91  07535626      01-1300  020  115    100.00CH

    Date: _____

                        (Signature of person mailing paper)

---

CIBA 000536

[REV.4Apr89/MB11-2]          -2-

3.   Calculation of extension fee (37 CFR 1.17(a)-(d):
     [ X ] One Month.    Fee in the amount of $100.00
     [   ] Two Months.   Fee in the amount of $300.00
     [   ] Three Months. Fee in the amount of $730.00
     [   ] Four Months.  Fee in the amount of $1,150.00
                                         FEE $ 100.00

If an additional extension of time is required, please consider
this a petition therefor.

          (check and complete the next item, if applicable)
     [   ] An extension for ____ months has already been secured
           and the fee paid therefor of $_____ is deducted
           from the total fee due for the total months of
           extension now requested.

               Extension fee due with this request $ 100.00

4.   FEE PAYMENT
     [ X ] Charge fee to Account No. 01-1300 and this is a
           request to charge for any additional extension and/or
           fee required or credit for any excess fee paid. A
           duplicate of this petition is attached.

                         _____
                         (Signature of Attorney)

Reg. No. 19933           Frank M. Van Riet
                         (Type name of Attorney)

Tel. No. (203) 321-2614  American Cyanamid Company
                         1937 West Main Street
                         P.O. Box 60
                         Stamford, CT 06904-0060

                                        CIBA 000537



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/535,626 | 06/11/90 | RYLES | R  31,220 |

FRANK M. VAN RIET
C/O AMERICAN CYANAMID CO.
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

| EXAMINER |
|---|
| CHENG, W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1505 | |

DATE MAILED: 11/19/91

### NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ☒ Applicant's failure to respond to the Office letter, mailed _4—11—91_ .

2. ☐ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138.

3. ☐ Applicant's failure to timely file the response received _____ within the period set in the Office letter.

4. ☐ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of _____ of the Notice of Allowance.

   ☐ The issue fee was received on _____ ,

   ☐ The issue fee has not been received in Allowed Files Branch as of _____ .

   In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, in the amount specified by 37 C.F.R. 1.17 (i), and a verified showing as to the causes of the delay.

   If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc. v. Schuyler, 172 U.S.P.Q. 513.

5. ☐ Applicant's failure to timely correct the drawings and/or submit new or substitute formal drawings by _____ as required in the last Office action.
   ☐ The corrected and/or substitute drawings were received on _____ .

6. ☐ The reason(s) below.

EDWARD J. SMITH -
PRIMARY EXAMINER
ART UNIT 155

PTO-1432 (REV. 8-82)

CIBA 000538

#8

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF:                )
                                     )
APPLICANT:    RYLES                  )
                                     )
SERIAL NO:    535,626                )
                                     )
FILED:        June 11, 1991          )
                                     )
                                     )
                                     )
                                     )

POWER TO INSPECT AND MAKE COPIES

HONORABLE COMMISSIONER OF PATENTS
    AND TRADEMARKS
WASHINGTON, D.C.  20231

SIR:

        The undersigned is the attorney of record in the subject

application, and therefore grants the power to inspect and make copies

to Rita M. Stark, of Landon & Stark Associates, Inc.

                            Respectfully submitted,

                            Frank M. Van Riet
                            Registration No. 19933

DATED:  December 6, 1991

AMERICAN CYANAMID COMPANY
1937 West Main Street
P. O. BOX 60
STAMFORD,  CT  06904-0060

TEL.: (203) 348-7331

CIBA 000539

9

paper number

### REQUEST FOR ACCESS

Date:            A-22-96

Serial Number:   535 626

Filing Date:     6-11-90

Applicants:      Ryle

Sir.

Request is hereby respectfully made for access to the file history of the following

abandoned application referred to in U.S. patent number  51.71808 or printed

application number _____

Respectfully submitted.

Chris Bennett

OFFICIAL USE ONLY

PROCESSED BY
APR 22 1996

FILE INFORMATION UNIT

CIBA 000540

$\underline{\phantom{10}}\ 10$
_paper number_

### REQUEST FOR ACCESS

Date: _10-9-96_

Serial Number: _535626_

Filing Date: _6-11-90_

Applicants: _Ryles et al_

Sir:

Request is hereby respectfully made for access to the file history of the following abandoned application referred to in U.S. patent number _5171808_ or printed application number _____.

Respectfully submitted.

_Cindy Hilliard_

_____

**OFFICIAL USE ONLY**

_____

PROCESSED BY

OCT 1 0 1996

**FIU**
_____
initials

_FILE INFORMATION UNIT_

_____

CIBA 000541

PTO/SB/68 (11-98)
Approved for use through 10/31/99. OMB 0651-0031
Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

**PROCESSED BY**

JAN 21 1999

FIW

In re Application of

| Application Number | Filed |
|---|---|
| 535626 | JUN 11 1996 |

| Group Art Unit | Examiner |
|---|---|
| | R. Yes et al. |

Paper No. #11

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

___ (A) referred to in United States Patent Number _____, column _____.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. _____, filed _____, on page _____ of paper number _____.

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. _____, filed _____, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

_____

_____

_____

_ADRIN_
Signature

1-28-99
Date

Typed or printed name

CIBA 000542

FOR PTO USE ONLY
Approved by: _____
Unit: _____

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

PTO/SB/68 (04-01)
Approved for use through 10/31/2002, OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## REQUEST FOR ACCESS TO AN APPLICATION UNDER 37 CFR 1.14(e)

In re Application of

**RECEIVED**
**OCT 3 0 2002**
File Information Unit

| Application Number 07-535626 | Filed 6-11-90 |
|---|---|
| Art Unit | Examiner |

Paper No. ___

Assistant Commissioner for Patents
Washington, DC 20231

1. ☐ I hereby request access under 37 CFR 1.14(e)(2) to the application file record of the above-identified ABANDONED Application, which is not within the file jacket of a pending Continued Prosecution Application (CPA) (37 CFR 1.53(d)) and is: (CHECK ONE)

☐ (A) referred to in:

United States Patent Application Publication No. _5/7/ 80 8_, page ____, line____.

United States Patent Number_____, column _____, line _____, or

an International Application which was filed on or after November 29, 2000 and which

designates the United States, WIPO Pub. No. _____, page ____, line ____.

☐ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11(b) or

. 1.14(e)(2)(i), i.e., Application No._____, paper No. _____; page _____, line ____.

2. ☐ I hereby request access under 37 CFR 1.14(e)(1) to an application in which the applicant has filed an authorization to lay open the complete application to the public.

_____
Signature

_____
Typed or printed name
ADRIAN

_10-30-02_
Date

Burden Hour Statement: This form is estimated to take 0.1 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

CIBA 000543