-49-

TABLE XXXII

| Cationic Potato Starch lbs/Ton | Alum* lbs/Ton | Anionic Microparticle lbs/Ton | First Pass Retention % |
|---|---|---|---|
| -0- | -0- | -0- | 25 % |
| 15 - Starch | -0- | 3.0 - Silica 5 nm | 31.7 % |
| 15 - Starch | 2.5 | 0.5 - 30 AA/70 AMD/ 349 ppm MBA- 130 nm | 37.4% |
| 15 - Starch | 2.5 | 1.0 - 30 AA/70 AMD/ 349 ppm MBA - 130 nm | 46.6% |

* Alum is added immediately before the addition of cationic potato starch.

The retention values of starch and 3.0 lbs/ton of silica are surpassed by replacing the silica with 2.5 lbs/ton alum and either 0.5 lbs/ton of microbead or 1.0 lb/ton of microbeads. The process of the instant invention results in a 15.25% and a 34.1% improvement in retention values, respectively, over silica.

EXAMPLE 33

Retention values using silica and the organic anionic microbead of Table XXXIII are compared in a pilot Fourdrinier papermaking machine. The paper stock consists of pulp made from 70% hardwood and 30% softwood containing 25% calcium carbonate and 5 lbs/ton of cationic starch. The cationic potato starch is added immediately before the fan pump. The anionic microbeads and alum are added as in Example 18.

TABLE XXXIII

| Cationic Potato Starch lbs/Ton | Alum lbs/Ton | Anionic Microbead lbs/Ton | Ash Retention % |
|---|---|---|---|
| -0- | -0- | -0- | 34.4 |
| 20 | -0- | 3.0 - Silica 5 nm | 49.2 |
| 20 | 5.0 | 3.0 - Silica 5 nm | 66.3% |
| 20 | 5.0 | 1.0 - 30 AA/70 AMD 349 ppm MBA - 150 nm SV-1.32 | 68.7% |

HERC0075956

-50-

Alum improves the retention values of silica and the alum/silica system retention of 66.3% is slightly less than that of the alum/organic anionic microbead system of 68.7% (3.5% improvement) with 1/3 the concentration of microbead.

### EXAMPLE 34

A comparison of drainage times between the anionic, organic, microbead system and the silica system is made using the paper stock described in Example 13. It is noted that this stock contains 16 lbs/ton of cationic potato starch and 6 lbs/ton of alum. The additives of the Table XXXIV are added in successive runs.

### TABLE XXXIV

| Cationic Potato Starch lbs/Ton | Alum* lbs/Ton | Anionic Microparticle lbs/Ton | Drainage Seconds |
|---|---|---|---|
| 15* | -0- | 3.0 - Silica 5 nm | 42.5 |
| 15* | -0- | 3.0 - Silica 5 nm | 55.6 |
| 15 | 2.5 | 1.0 - 30 AA/70 AMD/ 349 ppm MBA -130 nm | 28.7 |

** Alum is added immediately before the addition of cationic potato starch.
(*Reverse addition of silica before starch)

The silica/starch system is inferior in drainage time to that of the organic microbead system (1.0 lb and 2.5 lbs alum).

### EXAMPLE 35

With the same stock as in Example 34, organic, anionic, microbead and silica systems, using a anionic polymer added to the furnish, are compared as to drainage times as in said Example. Alum and cationic starch are added where indicated and the furnish is stirred at 800 r.p.m. for 30 seconds. The anionic

HERC0075957

-51-

acrylamide copolymers and, if added, silica or
microbeads are added together to the furnish and stirred
for a further 30 seconds at 800 r.p.m. before the
drainage rate is measured. See Table XXXV.

5

TABLE XXXV

| Anionic Polymer Retention Aid lbs/Ton | Alum* lbs/Ton | Anionic Microbead lbs/Ton | Drainage Seconds |
|---|---|---|---|
| -0- | -0- | -0- | 92.4 |
| 0.3 - 30 AA/70 AMD | -0- | -0- | 62.1 |
| 0.3 - 30 AA/70 AMD | 5.0 | -0- | 59.4 |
| 0.3 - 30 AA/70 AMD | -0- | 0.5 - Silica-5 nm | 50.4 |
| 0.3 - 30 AA/70 AMD | -0- | 1.0 - Silica-5 nm | 47.5 |
| 0.3 - 30 AA/70 AMD | 5.0 | 0.5 - 30 AA/70 AMD/ 349 ppm MBA - 130 nm | 42.2 |
| 0.3 - 30 AA/70 AMD and 10 - additional cationic starch | -0- | 1.0 - Silica-5 nm | 41.3 |
| 0.3 - 30 AA/70 AMD and 10 additional cationic starch | 5.0 | 0.5 - 30 AA/70 AMD/ 349 ppm MBA-130 nm | 28.4 |

10

15

* Alum is added immediately before the addition of cationic potato
  starch, where both one used.

20         Silica improves drainage times when compared
to the anionic acrylamide polymer alone; however, the
anionic organic microbeads, in replacing the silica,
give even better drainage times with alum.  Additional
cationic potato starch in the furnish allows the
25 microbead system to produce even faster drainage times.


EXAMPLE 36
        Comparative retention values are determined
for an organic anionic microbead versus a silica system
30 using an anionic polymer and the paper stock of Example
13.  The additives, as specified in Table XXXVI, are
added as in Example 35.


35

HERC0075958

-52-

TABLE XXXVI

| Anionic Polymer lbs/Ton | Alum lbs/Ton | Anionic Microbead lbs/Ton | First Pass Retention % |
|---|---|---|---|
| 0.3 - 30 AA/70 AMD | -0- | -0- | 34.3 |
| 0.3 - 30 AA/70 AMD | 5.0 | -0- | 37.3 |
| 0.3 - 30 AA/70 AMD | -0- | 1.0 - Silica-5 nm | 34.0 |
| 0.3 - 30 AA/70 AMD | -0- | 0.5 - 30 AA/70 AMD/ 349 ppm MBA-130 nm | 40.3 |
| 0.3 - 30 AA/70 AMD | 5.0 | 0.5 - 30 AA/70 AMD 349 ppm MBA-130 nm | 52.6 |

Retention values with 0.3 lb/ton of anionic polymer, with and without silica, are identical at 34% and addition of 5.0 lbs/ton of alum and no silica actually increases retention to 37.3%.

Anionic polymers, in combination with organic anionic microbeads however, give better retention values without (40.3%) and with alum (52.6%) when compared to the silica system (34%). This retention when combined with the faster drainage rates of the organic anionic microbeads shown in Table XXXV, makes them preferable to either the silica or bentonite systems usually used commercially.

EXAMPLE 37

The effect of cationic organic, microbeads is now examined. To an alkaline furnish containing 25% calcium carbonate, 15 lbs. of cationic starch and 5 lbs. of alum and of a pH of 8.0, the ingredients of Table XXXVII are added. The anionic polymer is added first and the cationic, organic microbead is added second.

HERC0075959

-53-

TABLE XXXVII

| Anionic Polymer (Linear) lbs/Ton | Cationic Microbead or Polymer lbs/Ton | Drainage Seconds |
|---|---|---|
| -0- | -0- | 142.7 |
| 0.5 - 30 AA/70 AMD | -0- | 118.5 |
| 0.5 - 30 AA/70 AMD | 0.5 - 40 AETMAC/60 AMD/ 100 ppm MBA- 100 nm | 93.3 |
| 0.5 - 30 AA/70 AMD | 0.5 - 40 AETMAC/60 AMD/ 100 ppm MBA - 1,000 nm | 113.9 |
| 0.5 - 30 AA/70 AMD | 0.5 - 40 AETMAC/60 AMD/ linear Polymer (not a microbead) | 98.7 |

The addition of 0.5 lb/ton of cross-linked cationic microbead - 100 nm results a drainage time reduction of 25.2%. Addition of 0.5 lb/ton of linear cationic polymer causes a drainage time reduction but is not as effective as the cationic microbeads of the present invention.

EXAMPLE 38

To an acid paper stock made from 2/3 chemical pulp, 1/3 ground wood fiber and 15% clay are added 20 lbs/ton of alum. Half the stock is adjusted to pH 4.5 and remainder is adjusted to pH 5.5. The ingredients shown in Table XXXVIII are added in the same order as Example 37.

HERC0075960

## TABLE XXXVIII

| Anionic Polymer lbs/ton | Cationic Polymer lbs/ton | Cationic Microbead lbs/ton | Drainage Time in Seconds pH 4.5 | pH 5.5 |
|---|---|---|---|---|
| -0- | -0- | -0- | 101.4 | - |
| 0.5 - 7 AV/93 AND | -0- | -0- | 88.4 | 59.8 |
| 0.5 - 10 AF5/90 AND | -0- | -0- | 95.0 | 59.7 |
| -0- | 0.5 - 10 AETPAC/90 AND | -0- | 69.5 | 73.3 |
| -0- | 0.5 - 40 AETPAC/60 AND | -0- | 72.9 | 69.4 |
| -0- | -0- | 0.5 - 40 AETPAC/60 AND/ 100 ppm MBA-100 nm | 74.0 | 74.7 |
| -0- | -0- | 0.5 - 40 AETPAC/60 AND/ 100 ppm MBA-1,000 nm | 94.6 | 92.8 |
| 0.5 - 7 AV/93 AND | 0.5 - 40 AETPAC/60 AND | -0- | 65.2 | 56.0 |
| 0.5 - 7 AV/93 AND | -0- | 0.5 - 40 AETPAC/60 AND/ 100 ppm MBA-100 nm | 70.5 | 53.4 |
| 0.5 - 7 AV/93 AND | -0- | 0.5 - 40 AETPAC/60 AND/ 100 ppm MBA-1,000 nm | 92.7 | 62.8 |
| 0.5 - 10 AF5/90 AND | 0.5 - 40 AETPAC/60 AND | -0- | 72.3 | 55.4 |
| 0.5 - 10 AF5/90 AND | -0- | 0.5 - 40 AETPAC/60 AND/ 100 ppm MBA-100 nm | 74.9 | 54.5 |
| 0.5 - 10 AF5/90 AND | -0- | 0.5 - 40 AETPAC/60 AND/ 100 ppm MBA-1,000 nm | 99.7 | 70.7 |

-54-

HERC0075961

-55-

## Examples 39-45

Following the procedure of Example 2, various microbeads, high molecular weight (HMW) polymers and polysaccharides are added to paper-making stock as described therein. In each instance, similar results are observed.

| Example No. | Microbead | Polysaccharide | HMW Polymer |
|---|---|---|---|
| 39 | AM/MAA (50/50) | Cationic Guar | AM/DADM (70/30) |
| 40 | AM/VSA (65/35) | -- | Mannich PAM |
| 41 | Mannich PAM | CMC | AM/AA (80/20) |
| 42 | AM/DADM (75/25) | -- | PAA |
| 43 | P(DMAEA) | -- | -- |
| 44 | P(AA) | Cationic Guar | AM/ DMAEA |
| 45 | AM/AA (25/75) | Cationic Guar | AM/AA (70/30) |

AM        =  Acrylamide
MAA       =  Methacrylic acid
VSA       =  Vinyl Sulfonic acid
DADM      =  Diallydimethylammonium chloride
P(AA)     =  Polyacrylic acid
P(DMAEA)  =  Poly(dimethylaminoethylacrylate) quaternary
CMC       =  Carboxymethyl cellulose
Mannich   =  Polyacrylamide reacted with formaldehyde and
PAM          diemthyl amine

HERC0075962

—56—

31,043-01

WE CLAIM:

1. A method of making paper which comprises adding to an aqueous paper furnish from about 0.05 to about 20 lbs/ton, based on the dry weight of the paper furnish solids, of an ionic, organic, polymeric microbead, the microbead being less than about 750 nanometers in diameter if cross-linked and less than 60 nanometers in diameter if non-cross-linked and water-insoluble, the ionicity of said microbead being at least 1%, but at least 5%, if cross-linked, anionic and used alone.

3. A method according to Claim 1 wherein from about 0.05 to about 20 lbs/ton, same basis, of a high molecular weight, ionic polymer is added to said furnish in conjunction with said microbead.

11. A method according to Claim 1 wherein from about 1.0 to about 50 lbs/ton, same basis, of an ionic polysaccharide is added to said furnish in conjunction with said microbead.

5. A method according to Claim 3 wherein the microbead and the high molecular weight ionic polymer have opposite charges.

9. A method according to Claim 3 wherein said ionic polymer is cationic.

7. A method according to Claim 3 wherein said ionic polymer is anionic.

19. A method according to Claim 1 wherein said microbead is a polymer of acrylamide.

HERC0075963

-57-

13.  A method according to Claim 11 wherein said
polysaccharide is cationic.

15.  A method according to Claim 11 wherein said
polysaccharide is anionic.

21.  A method according to Claim 1 wherein the
furnish contains a size, a strength additive a promotor,
a polymeric coagulant, a dye fixative or a mixture
thereof.

23.  A method according to Claim 1 wherein from
about 0.1 to about 20 pounds of an active, soluble
aluminum species is also added per ton of paper furnish
solids to the furnish.

25.  A method according to Claim 23 wherein the
species is alum, polyhydroxyaluminum chloride and/or
sulfate or mixtures thereof.

13.  A method according to Claim 1 wherein the
microbead is cross-linked.

17.  A method according to Claim 11 wherein the
polysaccharide is starch.

15.  A composition of matter comprising a mixture of
A) an ionic, organic, polymer microbead being less than
about 750 nanometers in diameter if cross-linked and
less than about 60 nanometers in diameter if
non-cross-linked and water-insoluble, the ionicity of
the microbead being at least about 1% and either B) a
high molecular weight ionic polymer, the ratio of A:B
ranging from about 1:400 to about 400:1, respectively,

HERC0075964

-58-

or C) in ionic polysaccharide, the ratio of A:C ranging
from about 20:1 to about 1:1000 or B and C together, the
ratio if A:B and C together ranging from about 400:1 to
about 1:1000.

16. A composition according to Claim 15 wherein A
and B have opposite charges.

17. A composition according to Claim 15 wherein
said ionic polymer is cationic.

18. A composition according to Claim 15 wherein
said ionic polymer is anionic.

19. A composition according to Claim 15 wherein
said microbead is a polymer of acrylamide.

20. A composition according to Claim 15 wherein
said polysaccharide is starch.

21. A composition according to Claim 20 wherein
said starch is cationic.

22. A composition according to Claim 15 wherein
said starch is anionic.

23. A composition according to Claim 15
containing, in addition, an active, soluble aluminum
species.

24. A composition according to Claim 23 wherein
said active species is alum, polyhydroxyaluminum
chloride and/or sulfate or mixtures thereof.

25. A composition according to Claim 15 wherein
the microbead is cross-linked.

HERC0075965

[REV.4Apr89/MB1-ᴌ]                    Docket No. <u>31,043-01</u>
                                                        PATENT

<u>COMBINED DECLARATION AND POWER OF ATTORNEY</u>
    (Original,Design,Supplemental,Divisional,Continuation,CIP)

As the below-named inventor, I hereby declare that:
                    <u>TYPE OF DECLARATION</u>
This declaration is of the following type:
        [ · ] original
        [   ] design
        [   ] supplemental
        [   ] divisional
        [   ] continuation
        [ x ] continuation-in-part (CIP)
                    <u>INVENTORSHIP IDENTIFICATION</u>
My residence, post office address and citizenship are as stated
below next to my name, I believe I am the original, first and
sole inventor (if only one name is listed below) or an original,
first and joint inventor (if plural named are listed below) of
the subject matter which is claimed for, for which a patent is
sought on the invention entitled:
                    <u>TITLE OF INVENTION</u>
<u>Charged Organic Polymer Microbeads in Paper-Making Process</u>
_____
_____

                <u>SPECIFICATION IDENTIFICATION</u>
the specification of which: (complete (a), (b), or (c))
    (a) [ X ] is attached hereto.
    (b) [   ] was filed on _____ as
            [   ] Serial Number   /
            [   ] Express Mail No., as Serial Number not
                  yet known
    (c) [   ] was described and claimed in PCT International
            Application No. _____ filed on
            _____ and as amended under PCT
            Article 19 on _____ (if any).

HERC0075966

[REV.4Apr89/MB1-1]          -2-

ACKNOWLEDGEMENT OF REVIEW OF PAPERS AND DUTY OF CANDOR

    I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

    I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37 CFR 1.97.

### PRIORITY CLAIM

    I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate or of any PCT International application(s) designating at least one country other than the United States of America listed below and have also identified below any foreign application(s) for patent or inventor's certificate of any PCT International application(s) designating at least one country other than the United States of America filed by me on the same subject matter having a filing date before that of the application(s) of which priority is claimed.

    (d) [ X ] no such applications have been filed.

    (e) [    ] such applications have been filed as follows.

Note: Where item (c) is entered above and the International Application which designated the U.S. claimed priority check item (e), enter the details below and make the priority claim.

Earliest Foreign Application(s), if any, filed within 12 months (6 months for Design) prior to this U.S. Application

| COUNTRY | APPLICATION NUMBER | DATE OF FILING (DAY,MONTH,YEAR) | PRIORITY CLAIMED 35 USC 119 |
|---------|--------------------|---------------------------------|------------------------------|
|         |                    |                                 |                              |
|         |                    |                                 |                              |
|         |                    |                                 |                              |
|         |                    |                                 |                              |

HERC0075967

[REV.4Apr89/HB1-1]          -3-

All Foreign Application(s), if any, Filed More Than 12 Months
(6 Months for Design) Prior to This U.S. Application

_____

_____
_____

_____

## POWER OF ATTORNEY

As a named inventor, I hereby appoint the following
attorney(s) and/or agent(s) to prosecute this application and
transact all business in the Patent and Trademark Office
connected therewith.

Frank M. Van Riet                    19933
        (Name)                          (Reg. No.)

Gordon L. Hart                       20191
        (Name)                          (Reg. No.)

Roger S. Benjamin                    27025
        (Name)                          (Reg. No.)

Michael J. Kelly                     27910
        (Name)                          (Reg. No.)

Steven H. Flynn                      29639

[  ]  Attached as part of this declaration and power of
      attorney is the authorization of the above-named
      attorney(s) to accept and follow instructions from my
      representative(s).

------------------------------------------------

SEND CORRESPONDENCE AND TELEPHONE CALLS TO:

Frank M. Van Riet
C/O American Cyanamid Company
1937 West Main Street
Stamford, CT  06904-0060
Telephone No. (203) 321-2614

------------------------------------------------

HERC0075968

[REV.4Apr89/MB1-1]          -4-

## DECLARATION

    I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

SIGNATURE(S)

Full name of SOLE OR FIRST INVENTOR Dan S. Honig

Inventor's signature

Date    June 15, 1990

Country of Citizenship United States

Residence 12 Conrad Road, New Canaan, CT  06840

Post Office Address Same

Full name of SECOND JOINT INVENTOR, if any Elieth Harris

Inventor's signature

Date    June 15, 1990

Country of Citizenship Antigua

Residence 484 Colorado Avenue, Bridgeport, CT  06605

Post Office Address Same

Full name of THIRD JOINT INVENTOR, if any _____

Inventor's signature _____

Date _____

Country of Citizenship _____

Residence _____

Post Office Address _____

HERC0075969

[REV.4Apr89/MB1~1]          -5-

<u>THE FOLLOWING 'ADDED PAGES' FORM A PART OF THIS DECLARATION</u>

[   ] Signature for fourth and subsequent joint inventors on
      ADDED PAGES.
[ X ] ADDED PAGES TO COMBINED DECLARATION, POWER OF ATTORNEY
      for divisional, continuation, or continuation-in-part (CIP)
      application.
      [ X ] Number of ADDED PAGES: 1_____
      [   ] Declaration ends with this page.

HERC0075970

[REV.4Apr89/MB1-1]

ADDED PAGE TO COMBINED DECLARATION AND POWER OF ATTORNEY FOR
DIVISIONAL, CONTINUATION OR CIP APPLICATION

(complete this only if this is a divisional,
continuation or CIP application)

CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)
UNDER 35 U.S.C. 120

I hereby claim the benefit under Title 35, United States
Code, Section 120 of any United States application(s) or PCT
International application(s) designating the United States of
America that is/are listed below and, insofar as the subject
matter of each of the claims of this application is not disclosed
in that/those prior application(s) in the manner provided by the
first paragraph of Title 35, United States Code, Section 112, I
acknowledge the duty to disclose material information as defined
in Title 37, Code of Federal Regulations, Section 1.56(a) which
occurred between the filing date of the prior application(s) and
the national or PCT International filing date of this
application.

| PRIOR U.S. APPLICATIONS OR PCT INTERNATIONAL APPLICATIONS DESIGNATING THE U.S. FOR BENEFIT UNDER 35 USC 120 | | | | | |
|---|---|---|---|---|---|
| U.S. APPLICATIONS | | | STATUS (check one) | | |
| U.S. APPLICATIONS | U.S. FILING DATE | | patented | pending | abandoned |
| 1. Attorney Docket No. 31,043 | | | | X | |
| 2.   / | | | | | |
| 3.   / | | | | | |
| PCT APPLICATIONS DESIGNATING U.S. | | | | | |
| PCT APPLN. NO. | PCT FILING DATE | U.S. SERIAL NOS ASSIGNED (if any) | | | |
| 4. | | / | | | |
| 5. | | / | | | |
| 6. | | / | | | |

HERC0075971

UNITED STATES PATENT & TRADEMARK OFFICE
Washington, D.C. 20231

| REQUEST FOR PATENT FEE REFUND | | | | |
|---|---|---|---|---|
| Date of Request: 7/2/90 | | Serial/Patent #: 540667 | | |
| Please refund the following fee(s): | PAPER NUMBER | DATE FILED | AMOUNT | |
| Filing | | 6/18/90 | $ 204.00 | |
| Amendment | | | $ | |
| Extension of Time | | | $ | |
| Notice of Appeal/Appeal | | | $ | |
| Petition | | | $ | |
| Issue | | | $ | |
| Cert of Correction/Terminal Disc. | | | $ | |
| Maintenance | | | $ | |
| Assignment | | | $ | |
| Other | | | $ | |

| | TOTAL AMOUNT OF REFUND | $ 204.00 |
|---|---|---|

TO BE REFUNDED BY:

Treasury Check

✓ Credit Deposit A/C #:

| 0 | 1 | - | 1 | 3 | 0 | 0 |
|---|---|---|---|---|---|---|

REASON:

✓ Overpayment

Duplicate Payment

No Fee Due (Explanation):

REFUND REQUESTED BY:

TYPED/PRINTED NAME: C.H. SPEARS        TITLE: ADMIN. EXAM.

SIGNATURE: C.H. Spears        PHONE: 557 3764

OFFICE: PTO / APPL. BR.

************************************************************

THIS SPACE RESERVED FOR FINANCE USE ONLY:

APPROVED: C. Twyman        DATE: Aug 1, 1990

Upon completion of this form, attach original and one copy to the file and mail or hand-carry to:

Office of Finance
Refund Branch
Crystal Park One, Room 802B

FORM PTO 1577
(10/89)

HERC0075972

2

HERC0075973

MAIL ROOM OCT 22 1990 PAT. & TRADEMARK OFFICE

RECEIVED 1990 OCT 25 AM 9 59 GROUP 130

#2 A/Bm/33 10/31/90

Docket No.: 31,043-01

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
DAN S. HONIG
ELIETH W. HARRIS

Serial No.: 07/540,667
Filed: June 18, 1990
For: Charged Organic Polymer Microbeads In Paper Making Process

Group Art Unit: 133

Examiner:

Commissioner of Patent and Trademarks

Washington, D.C. 20231

Date: October 18, 1990

Preliminary Amendment

Preliminary to the examination of the above-identified application, please amend said application as follows:

In the Claims:

Please add the following new Claims:

---

2. ~~26~~. Paper produced by the method of Claim 1.

14. ~~27~~. Paper produced by the method of Claim 3 ~~2~~.

12. ~~28~~. Paper produced by the method of Claim 11 ~~3~~.

6. ~~29~~. Paper produced by the method of Claim 5 ~~5~~.

10. ~~30~~. Paper produced by the method of Claim 9 ~~8~~.

8. ~~31~~. Paper produced by the method of Claim 7 ~~6~~.

20. ~~32~~. Paper produced by the method of Claim 19 ~~7~~.

14. ~~33~~. Paper produced by the method of Claim 13 ~~8~~.

16. ~~34~~. Paper produced by the method of Claim 15 ~~9~~.

22. ~~35~~. Paper produced by the method of Claim 21 ~~10~~.

24. ~~36~~. Paper produced by the method of Claim 23 ~~11~~.

26. ~~37~~. Paper produced by the method of Claim 25 ~~12~~.

38. Paper produced by the method of Claim 13.

25. Paper produced by the method of Claim 14.

26. A method according to Claim 1 wherein bentonite or silica is added in conjunction with the microbead.

~~41. A composition according to Claim 15 containing, in addition, bentonite or silica.~~

28. Paper produced by the method of Claim 26.

## Remarks

Upon receipt by Applicants of a telephonic request from the Examiner for restriction in the instant application, it was discovered that Claims 26-42 of the application, as filed, were missing from the copy filed with the USPTO.

Accordingly, the purpose of this Preliminary Amendment is to enter said claims prior to the issuance of the first Office Action.

Entrance of this Amendment is respectfully requested.

Respectfully submitted,

Attorney for Applicants
Frank M. Van Riet
Registration# 19933

oc/
A-310431

HERC0075975

3

HERC0075976

07/540,667    06/18/90

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

FRANK M. VAN RIET
C/O AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

| | EXAMINER |
|---|---|
| | 11/21/90 |
| ART UNIT | PAPER NUMBER |
| | 3 |

RECEIVED
NOV 2 9 1990
F.M. VAN RIET

RECEIVED
NOV 2 6 1990
PATENT LAW DEPT.

MAIL ROOM
DEC 10 1990

DATE MAILED:

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

PLEASE ADD TO SCHEDULE
Feb. 21, 1991

☑ This application has been examined  ☐ Responsive to communication filed on _____  ☐ This action is made final.

shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**
1. ☑ Notice of References Cited by Examiner, PTO-892.     2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.          4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474  6. ☐ _____

**Part II  SUMMARY OF ACTION**
1. ☑ Claims _1-42_ are pending in the application.
   Of the above, claims _____ are withdrawn from consideration.
2. ☐ Claims _____ have been cancelled.
3. ☐ Claims _____ are allowed.
4. ☑ Claims _1-14, 26-40, and 42_ are rejected.
5. ☐ Claims _____ are objected to.
6. ☑ Claims _1-42_ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).
10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

PTOL-326 (Rev. 7-82)          EXAMINER'S ACTION

HERC0075977

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 540 667 | GROUP ART UNIT 133 | ATTACHMENT PAPER NUMBER | 3 |
|---|---|---|---|---|---|
| NOTICE OF REFERENCES CITED | | APPLICANT(S) Honig etal | 1999 DEC 11  AM 11:30 | | |

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | A | 4 9 2 5 5 3 0 | 5/90 | Sinclair etal | 162 | 164.6 | 7-20-88 |
| ✓ | B | 4 6 4 3 8 0 1 | 2/87 | Johnson | 162 | 164.6 | |
| ✓ | C | 4 7 5 9 8 5 6 | 7/88 | Farrer etal | 162 | 168.3 | |
| ✓ | D | 4 7 5 3 7 1 0 | 6/88 | Langley etal | 162 | 164.3 | |
| ✓ | E | 4 8 2 4 5 2 3 | 4/89 | Wagberg etal | 162 | 164.6 | |
| ✓ | F | 4 7 9 8 6 5 3 | 1/89 | Rushmere | 162 | 168.3 | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG. | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER Charles H. Fried | DATE 11-15-90 | |
|---|---|---|

\* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

HERC0075978



**4**

HERC0075979

07/540,667   06/18/90

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

FRANK M. VAN RIET
C/O AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

| | EXAMINER |
|---|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| | 3 & 4 |

DATE MAILED:

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

MAILED
DEC 26 1990

GROUP 130

☑ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire **3** month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**
1. ☑ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice to Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449    4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _1-42_ _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _1-14, 26-40, and 42_ _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☑ Claims _1-42_ _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).

10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev. 7- 82)                    EXAMINER'S ACTION

HERC0075980

Serial No. 07/540667                    -2-

Art Unit  133


    Restriction to one of the following inventions is required
under 35 U.S.C. § 121:

    I.   Claims 1-14 and 40, drawn to a method of making paper,
classified in Class 162, subclass 168.3.

    II.  Claims 15-25 and 41, drawn to a composition of matter,
classified in Class 252, subclass 351.

    The inventions are distinct, each from the other because of
the following reasons:

    Inventions Group I and Group II are related as process of
making and product made.  The inventions are distinct if either
or both of the following can be shown: (1) that the process as
claimed can be used to make other and materially different
product or (2) that the product as claimed can be made by another
and materially different process (M.P.E.P. § 806.05(f)).  In the
instant case the product as claimed can be made by a materially
different process such as one that does not require papermaking,
e.g. making cement.

    Because these inventions are distinct for the reasons given
above and have acquired a separate status in the art as shown by
their different classification and because of their recognized
divergent subject matter restriction for examination purposes as
indicated is proper.

    During a telephone conversation with Mr. Van Reit on October

HERC0075981

Serial No. 07/540667                          -3-
Art Unit   133

17, 1990 a provisional election was made with traverse to
prosecute the invention of Group I, claims 1-14 and 40.
Affirmation of this election must be made by applicant in
responding to this Office action.  Claims 15-25 and 41 are
withdrawn from further consideration by the Examiner, 37 C.F.R.
§ 1.142(b), as being drawn to a non-elected invention.

     Product by process claims 26-39 and 42 are examinable with
Group I, which has been elected.

     Applicant is reminded that upon the cancellation of claims
to a non-elected invention, the inventorship must be amended in
compliance with 37 C.F.R. § 1.48(b) if one or more of the
currently named inventors is no longer an inventor of at least
one claim remaining in the application.  Any amendment of
inventorship must be accompanied by a diligently-filed petition
under 37 C.F.R. § 1.48(b) and by the fee required under 37 C.F.R.
§ 1.17(h).

     Applicant has not complied with one or more conditions for
receiving the benefit of an earlier filing date under 35 U.S.C.
§ 120 as follows:

     The continuing application must contain a specific reference
to the parent application(s) in the specification.
The serial number and the filing date of the earlier application
(attorney docket number 31,043) need to be provided.

     The oath or declaration is defective.  A new oath or
declaration in compliance with 37 C.F.R. § 1.67(a) identifying

HERC0075982

Serial No. 07/540667                    -4-

Art Unit  133

this application by its Serial Number and filing date is

required.  See M.P.E.P. §§ 602.01 and 602.02.

    The oath or declaration is defective because:

    It does not state the application number and filing date of
the parent application (attorney docket 31,043).

    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

    A patent may not be obtained though the invention is not
    identically disclosed or described as set forth in section
    102 of this title, if the differences between the subject
    matter sought to be patented and the prior art are such that
    the subject matter as a whole would have been obvious at the
    time the invention was made to a person having ordinary
    skill in the art to which said subject matter pertains.
    Patentability shall not be negatived by the manner in which
    the invention was made.

    Subject matter developed by another person, which qualifies
    as prior art only under subsection (f) or (g) of section 102
    of this title, shall not preclude patentability under this
    section where the subject matter and the claimed invention
    were, at the time the invention was made, owned by the same
    person or subject to an obligation of assignment to the same
    person.

    This application currently names joint inventors.  In
considering patentability of the claims under 35 U.S.C. § 103,
the examiner presumes that the subject matter of the various
claims was commonly owned at the time any inventions covered
therein were made absent any evidence to the contrary.  Applicant
is advised of the obligation under 37 C.F.R. § 1.56 to point out
the inventor and invention dates of each claim that was not
commonly owned at the time a later invention was made in order
for the examiner to consider the applicability of potential 35
U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

    Claims 1, 13, 26, and 38 are rejected under 35 U.S.C. § 103
as being unpatentable over Farrar etal.

    Farrar teaches that adding to the papermaking stock a cross-

HERC0075983

Serial No. 07/540667                    -5-

Art Unit  133

linked anionic or cationic acrylamide of particle size less than
2 microns improves retention and dewatering properties of paper
(column 3, lines 42-43, column 5, lines 7-14, column 6,line 62,
and column 9, line 52). Farrar also teaches, at columns 9 and
10, that the additive can be copolymerized with 0-95% acrylamide;
thus, it would have been obvious to one of ordinary skill in the
art that the additive polymer can have a 0-95% ionicity. At
column 14, line 58 Farrar teaches that 6 kg/ton of polymer are
added to the paper. This amount taught by Farrar is in the range
of polymer additive claimed by the applicant. Further, addition
of the claimed amount of polymer is conventional to enhance
drainage and retention properties.

     Claims 1-5, 7, 8, 10-14, 26-30, 32, 33, 35-40, and 42 are
rejected under 35 U.S.C. § 103 as being unpatentable over Farrar
in view of Johnson etal or vice versa.

     Johnson teaches improving retention and dewatering
properties of paper by adding .1-.15% of a binder of a cationic
starch (a high molecular weight ionic polymer), an anionic
polymer of acrylamide and a dispersed silica to the headbox of a
papermaking machine (column 1, lines 15-16 and 41, column 2,
lines 15-24,and column 3, lines 50-52). At Figures 3 and 4
Johnson teaches the use of all components within the range of the
presently claimed amounts. The use of alum is shown to increase
drainage and retention (shown in Figure 4 as decreased

HERC0075984

Serial No. 07/540667                    -6-

Art Unit  133

turbidity). The degree of substitution, i.e. ionicity, of the
acrylamide is taught by Johnson as being from 1 to 40% (column 2,
lines 5-15).

When Farrar is taken in light of Johnson, it would have been
obvious to one of ordinary skill in the art to add cationic
starch and alum in the claimed amounts to the anionic acrylamide
of Farrar to further improve the drainage and retention
properties.

The teachings not provided by Johnson in reference to the
above claims are the particle size of the acrylamide and that it
is cross-linked. As noted above Farrar teaches a particle size
of less than 2 microns and that the acrylamide is cross-linked.

When Johnson is taken in view of Farrar, it would have been
obvious to one of ordinary skill in the art to utilize a cross-
linked acrylamide of particle size less than 2 microns, e.g. in
the claimed amounts, in the process of Johnson because Farrar
teaches that the addition of these particles to the papermaking
furnish improves retention and dewatering properties. Further,
the skilled artisan would have found it obvious to use acrylamide
in this small particle range to increase the surface area, i.e.
reactivity, of the acrylamide relative to the amount used.
Rejection of the method claims necessarily precludes
ppatentability of the product claims. Compare in re Thorpe, 227
USPQ 964 (CAFC 1985).

HERC0075985

Serial No. 07/540667                          -7-

Art Unit  133

    Claims 6, 9, 31, and 34 are rejected under 35 U.S.C. § 103 as being unpatentable over Farrar in view of Johnson or vice versa as applied to claims immediately above, and further in view of Sinclair etal.

    To further support the above noted teachings of a high molecular weight polymer of opposite charge to the microbead, it is noted that Sinclair teaches starches as the cationic polymer in a process to provide paper with improved properties.  Sinclair teaches that starch (polysaccharide) or another polymer can be used as either a cationic or anionic polymer and acrylamide can be selected in either ionicity such that the two polymers have opposite charges (see column 8, lines 24-44).

    It would have been obvious to the skilled artisan to use either anionic or cationic starch (high molecular weight polymer) of opposite charge in the process of Farrar and Johnson because Sinclair teaches such as conventional in improving retention and dewatering properties.  Further, the selection being merely a matter of choice, the skilled artisan would have found it obvious to choose the additives based on economy and availability.  It is noted, as above, that rejections of the paper product claims necessarily follow from the rejection of the process claims.

    The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

    Langley etal teaches the addition of bentonite to improve

HERC0075986

Serial No. 07/540667                    -8-

Art Unit  133

drainage and retention (see especially Table 4).

    Wagberg etal teaches treating paper in a three-stage process
to improve retention properties. Wagberg teaches a cationic
starch followed by an anionic polymer and a cationic polymer in
the amounts claimed in the instant application. Wagberg also
teaches that either the anionic or the cationic polymer can be a
polymer of acrylamide (see entire document).

    Rushmere teaches anionic polyacrylamide as a drainage and
retention aid in papermaking. Rushmere teaches that the
polyacrylamide has an anionicity of between 1 and 10%, column 4,
lines 34-36.

    Any inquiry concerning this communication should be directed
to Charles Friedman at telephone number (703) 308-0477.

RICHARD V. FISHER
SUPERVISORY PATENT EXAMINER
ART UNIT 136

11-16-90

Charles Friedman
November 15, 1990

HERC0075987

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | | SERIAL NO. 540 667 | GROUP ART UNIT 133 | ATTACHMENT TO PAPER NUMBER 3 |
|---|---|---|---|---|

NOTICE OF REFERENCES CITED

APPLICANT(S) Honig etal

**U.S. PATENT DOCUMENTS**

| | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 4 9 2 5 5 3 0 | 5/90 | Sinclair etal. | 162 | 164.6 | 7-20-88 |
| B | | 4 6 4 3 8 0 1 | 2/87 | Johnson | 162 | 164.6 | |
| C | | 4 7 5 9 8 5 6 | 7/88 | Farrar etal. | 162 | 168.3 | |
| D | | 4 7 5 3 7 1 0 | 6/88 | Langley etal. | 162 | 164.3 | |
| E | | 4 8 2 4 5 2 3 | 4/89 | Wagborg etal. | 162 | 164.6 | |
| F | | 4 7 9 8 6 5 3 | 1/89 | Rushmore | 162 | 168.3 | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER Charles K. Friend | DATE 11-15-90 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

HERC0075988

*133*

Docket No.: 31,043-01

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
Dan S. Honig
Elieth W. Harris

Serial No.: 07/540,667
Filed:  June 18, 1990
For:  Charged Organic Polymer
      Microbeads In Paper
      Making Process

Commissioner of Patents
  and Trademarks Office

Washington, D.C.  20231                    December 5, 1990

RECEIVED
1990 DEC 11 AM 11:30
GROUP 130

                           Letter

        The attached copies are of papers received on November
28, 1990 in the above-identified application.  Please note that
no Office Action accompanied them.  Accordingly, please remit
said Office Action and readjust the Statutory Period for response
thereto.

                              Respectfully submitted,

                              Attorney for Applicants
                              Frank M. Van Riet
                              Registration# 19933

cc/
AM-310431

HERC0075989

5

HERC0075990

Docket No.: 31,043-01

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
Dan S. Honig
Elieth Harris

Serial No: 07/540,667     Group Art Unit: 133
Filed: June 18, 1990
For: Charged Organic Polymer    Examiner: C. Friedman
     Microbeads In Paper
     Making Process

Commissioner of Patents
  and Trademarks

Washington, D.C. 20231     March 25, 1991

AMENDMENT

In response to the Office Action mailed December 26, 1990, please amend the instant application as follows:

In The Specification:

On the title page, last two lines, cancel the words "(Attorney Docket No. 31043 filed" and substitute therefor the words --7/536,382, filed June 11, 1990--.

Page 12, line 1, cancel "(Attorney Docket 31320)" and substitute therefor --07/535,626, filed June 11, 1990--.

Page 20, line 14, after the word "is" insert the words --defined and used herein as that--.

Page 20, line 15, after the word "(QELS)" insert the words --as carried out on the polymer emulsion, microemulsion or dispersion--.

Remarks

The specification has been amended so as to clarify how the particle size of the polymeric microbeads used in the instant invention is measured in that the QELS is carried out on the polymer emulsion, microemulsion or dispersion rather than the dry polymer. This amendment is

- 1 -

HERC0075991

not considered to be new matter in that it constitutes a clarification so as to prevent any misunderstanding rather than a completely new definition. Entrance of the amendment is respectfully requested.

The Examiner has required restriction to one of the following inventions under 35 USC 121:

I.   Claims 1-14 and 40 drawn to a method of making paper and classified in Class 162; Sublclass 168.3 and

II.  Claims 15-25 and 41 drawn to a composition of matter and classified in Class 252; Subclass 351.

The inventions are distinct, each from the other, the Examiner continues, because Inventions I and II are related as process of making and product made and the inventions are distinct if either or both of the following can be shown: 1) that the process, as claimed, can be used to make another and materially different product or 2) that the product, as claimed, can be made by another and materially different process, citing M.P.E.P. 806.05(f). In the instant case, the Examiner explains, the product, as claimed, can be made by a materially different process such as one that does not require papermaking, e.g. making cement.

Because the inventions are therefore distinct and have acquired a separate status in the art as shown by their different classification and because of their recognized divergent subject matter, restriction for examination purposes is indicated as proper by the Examiner.

This requirement for restriction is respectfully traversed. It is respectfully submitted that the Examiner is in error with regard to the relationship of the

- 2 -

HERC0075992

inventions in question. The inventions are not related as process of making and product made. The process of making of Groups I is a process of making paper whereas the products of Group II are used in the process of making paper. Thus, if anything, the inventions are related as product and process of using. The Group I process does not make the Group II compositions.

Furthermore, ex parte Coe, 1889 CD 191, and U.S. ex rel Steinmetz v Allen, 1904 CD 703, establish that a separation of classification is not determinative of the separateness of invention. Accordingly, withdrawal of the restriction requirement is earnestly solicited.

Applicants, however, hereby affirm the provisional election of Group I, i.e. Claims 1-14 and 40. Retention of the non-elected Claims 15-25 and 41 in the application for the purpose of filing a subsequent divisional application or appeal is respectfully requested.

It is understood that product-by-process Claims 26-39 and 42 will be examined with the invention represented by elected Group I.

The Title page of the instant specification has been amended so as to provide a specific reference to the parent application as required by the Examiner.

A new declaration is provided herewith identifying the parent application by its Serial Number and filing date as required by the Examiner.

Claims 1, 13, 26 and 38 have been rejected under 35 USC 103 as being unpatentable over Farrar et. al., the Examiner stating that Farrar et. al. teaches that adding to the paper-making stock a cross-linked anionic or cationic acrylamide of particle size less than 2 microns improves retention and dewatering properties of paper, citing col. 3,

- 3 -

HERC0075993

lines 42-43; Col. 5, lines 7-14; col. 6, lines 62 and col.
9, line 52. Farrar et. al. also teaches, at columns 9 and
10, the Examiner continues, that the additive can be
copolymerized with 0-95% of acrylamide and thus, it would
have been obvious to one of ordinary skill in the art that
the additive polymer can have 0-95% ionicity. At col. 14,
line 58, Farrar et. al. teaches that 6 kg/ton of polymer are
added to the paper i.e. in the range of polymer additive
claimed, the Examiner concludes, and further, addition of
the claimed amount of polymer is conventional to enhance
drainage and retention properties.

        This ground of rejection is respectfully
traversed. The Farrar et. al. patent is representative of
the prior art over which the instant process is a patentable
improvement. Farrar et. al. disclose the use of sheared
polymers as retention or dewatering aids in the production
of paper. The sheared polymers are made by shearing
polymers made by reverse phase or emulsion polymerization
(col. 6, line 63), the particles having a size below about 2
microns. The Examiner has apparently taken the position
that the disclosure of Farrar et. al. with regard to the
particle size is such as to include that of Applicants'
claims i.e. , < 750 nanometers if the particles are
cross-linked and < 60 nanometers if they are water-insoluble
but not cross-linked. This position is strenuously urged as
erroneous in that the disclosure of Farrar et. al. regarding
the polymer particle sizes is that representative of typical
emulsion polymerization procedures. That is to say, normal
macroemulsion polymerization procedures result in polymers
having particle sizes above about 1 micron i.e. 1000
nanometers. This type of polymerization has been known for
many years e.g. see U.S. Patent No. 3,979,348. However,

- 4 -

HERC0075994

microemulsion polymerization technology is more recent and produces polymer particles having diameters below 1000 nanometers. It is these polymers to which the instant claims are directed and it is these polymers which have been shown by Applicants to be superior to those produced using conventional emulsion polymerization techniques such as taught by Farrar et. al. In this regard, the Examiner's attention is respectfully directed to Tables 25, 37 and 38 of the instant specification. As can be seen in Table 25, page 43, the use of an anionic microbead having a particle size of 1000-2000 nanometers (i.e. as in Farrar et. al.) results in Drainage values of 98.9 secs. and 103.6 secs. whereas the microbeads of the present invention having sizes of 200 nanometers and 130 nanometers result in Drainage values of 71.7 secs. and 72.2 secs., respectively. Similarly, in Table 37, page 53, the 100 nanometer particle diameter microbeads of the instant invention result in a Drainage value of 93.3 seconds whereas the 1000 nanometer particles of Farrar et. al. result in a Drainage value of 113.9 secs. which is even worse that a linear polymer which is not a microbead i.e. 98.7 secs. Similarly, on page 54, Table 38 makes a direct comparison of polymers having a particle size of 100 nanometers to those having a particle size of 1000 nanometers and in each instance, regardless of pH, the smaller particle polymers of the present invention surpass the larger particle polymers of Farrar et. al.

Thus, the unexpected results shown by the instant examples are respectfully submitted as representative of a patentable improvement over the cited Farrar et. al. reference. Reconsideration and withdrawal of this ground of rejection are therefore earnestly solicited.

Claims 1-5, 7, 8 10-14, 26-30, 32, 33, 35-40 and

- 5 -

HERC0075995

42 have been rejected under 35 USC 103 as unpatentable over
Farrar et. al. in view of Johnson et. al. or vice versa, the
Examiner stating that Johnson et. al. teaches improving
retention and dewatering of paper by adding 0.1-.15% of a
binder of a cationic starch (a high molecular weight ionic
polymer), an anionic polymer of acrylamide and a dispersed
silica to the headbox of a papermaking machine, citing col.
1, lines 15-16 and 41; col. 2, lines 15-24 and col. 3, lines
50-52. At Figures 3 and 4, the Examiner continues, Johnson
et. al. teaches the use of all components within the range of
the presently claimed amounts. The use of alum is shown to
increase drainage and retention (shown in Figure 4 as
decreased turbidity), the Examiner explains, the degree of
ionicity being 1-40%, col. 2, lines 5-15.

When Farrar et. al. is taken in light of Johnson
et. al., the Examiner indicates that it would have been
obvious to one of ordinary skill in the art to add cationic
starch and alum in the claimed amounts to the anionic
acrylamide of Farrar et. al. to further improve the drainage
and retention.

The teachings not provided by Johnson et. al. are
the particle size of the polymer and that it is
cross-linked, the Examiner states, however, notes that
Farrar et. al. teaches a particle size of less than 2
microns and that the acrylamide is cross-linked.

When Johnson et. al. is taken in view of Farrar
et. al., the Examiner explains that it would have been
obvious to one of ordinary skill in the art to utilize a
cross-linked acrylamide of particle size less than 2 microns
in the process of Johnson et. al. because Farrar et. al.
teaches that the addition of these particles to the
papermaking furnish improves retention and dewatering

- 6 -

HERC0075996

properties. Further, the Examiner concludes, the skilled artisan would have found it obvious to use acrylamide in this small particle range to increase the surface area i.e. reactivity, of the acrylamide relative to the amount used. Rejection of the method claims necessarily precludes the patentability of the product-by-process claims, the Examiner concludes, citing in re Thorpe 227 USPQ964.

These grounds of rejection are also respectfully traversed. The arguments presented hereinabove with regard to Farrar et. al. apply equally to this rejection. The Examiner has admitted that Johnson et. al. fails to teach the particle size polymers employed in the instant claims and in view of the unexpected results of the smaller particle size polymers of Applicants vis-a-vis the larger particle size polymers of Farrar et. al., the use of cationic starch, anionic acrylamide polymer and dispersed silica of Johnson et. al., and their quantities, in the Farrar et. al. process still will not result in the process of the instant invention. The large particle size polymers of Farrar et. al. have been shown to be inferior and the inclusion of the additives of Johnson et. al. therewith will not overcome that inferiority.

Similarly, the use of the large particle size polymer of Farrar et. al. in the Johnson et. al. process will not anticipate Applicants' process because the resultant process will still result in the inferior drainage values shown by Applicants in Tables 25, 37 ad 38 of the instant specification, as discussed above. Accordingly, reconsideration and withdrawal of these grounds of rejection are respectfully urged as warranted.

Claim 6, 9, 31 and 32 have been rejected under 35 USC 103 as patentable over Farrar et. al. in view of Johnson et. al. or vice versa and further in view of Sinclair et.

- 7 -

HERC0075997

al., the Examiner noting that Sinclair et. al. teaches starches as the cationic polymer in a process to provide paper with improved properties. Sinclair et. al. teaches that starch or another polymer can be used as either a cationic or anionic polymer and acrylamide can be selected in either ionicity such that the two polymers have opposite charges, the Examiner explains, and therefore it would have been obvious to the skilled artisan to use either anionic or cationic starch of opposite charge in the process of Farrar et. al. and Johnson et. al. because Sinclair et. al. teaches such as conventional in improving retention and dewatering properties. Further, the selection merely being a matter of choice, the artisan would have found it obvious to choose the additives based on economy and availability.

This ground of rejection is also respectfully traversed. The Sinclair et. al. reference fails to overcome the deficiencies of Farrar et. al. and Johnson et. al. discussed above. Sinclair et. al. does not teach, disclose or suggest the use of polymer particles having diameters of less than 750 nanometers and, as a result, the combination process would still be devoid of such polymers because those of Farrar et. al. are understood by those skilled in the art to be far greater than 1000 nanometers. In view of the unexpected results shown by the smaller particles, which are clearly far better than one skilled in the art would expect merely as a result of any increased surface area or reactivity, the reference combination is respectfully submitted as failing to teach, disclose or suggest the instant invention. Reconsideration of this ground of rejection is earnestly solicited.

The Langley et. al. Wagberg et. al. and Rushmere references, cited as pertinent to Applicants' disclosure, have been carefully considered but are not seen to

HERC0075998

anticipate the invention represented by the instant claims.
Since these references were not cited against the claims
under consideration, further discussion thereof at this time
is not deemed to be necessary.

     In view of the above Remarks, this application is
believed to be in condition for allowance and such action is
earnestly requested at an early date.

                  Respectfully submitted,

                  Frank M. Van Riet
                  Attorney for Applicants
                  Registration# 19933

oc/
A-310431

I hereby certify that this correspondence
is being deposited with the United States
Postal Service as first class mail in an
envelope addressed to: Commissioner of
Patents and Trademarks, Washington, D.C.
20231, on _March 26, 1981_
         (Date of Deposit)

_FRANK M. VAN RIET_
Name of Applicant, Assignee, or
Registered Representative

      Signature
      3-26-91
    Date of Signature

- 9 -

HERC0075999

**6**

HERC0076000

#6/4-2-91

[REV.4Apr89/MB1-1]                              Docket No. 31,043-01
                                                                PATENT

COMBINED DECLARATION AND POWER OF ATTORNEY
(Original,Design,Supplemental,Divisional,Continuation,CIP)

As the below named inventor, I hereby declare that:

TYPE OF DECLARATION

This declaration is of the following type:

    [  ] original
    [  ] design
    [  ] supplemental
    [  ] divisional
    [  ] continuation
    [ X ] continuation-in-part (CIP)

INVENTORSHIP IDENTIFICATION

My residence, post office address and citizenship are as stated
below next to my name, I believe I am the original, first and
sole inventor (if only one name is listed below) or an original,
first and joint inventor (if plural named are listed below) of
the subject matter which is claimed for, for which a patent is
sought on the invention entitled:

TITLE OF INVENTION

Charged Organic Polymer Microbeads in Paper-Making Process

_____

_____

SPECIFICATION IDENTIFICATION

the specification of which: (complete (a), (b), or (c))

    (a) [  ] is attached hereto.

    (b) [ X ] was filed on June 18, 1990 ___ as

        [ X ] Serial Number 07/540,667

        [  ] Express Mail No., as Serial Number not
            yet known

    (c) [  ] was described and claimed in PCT International
        Application No. _____ filed on
        _____ and as amended under PCT
        Article 19 on _____ (if any).

HERC0076001

[REV.4Apr89/MB1-1]          -2-

ACKNOWLEDGEMENT OF REVIEW OF PAPERS AND DUTY OF CANDOR

    I hereby state that I have reviewed and understand the
contents of the above identified specification, including the
claims, as amended by any amendment referred to above.

    I acknowledge the duty to disclose information which is
material to the examination of this application in accordance
with Title 37 CFR 1.97.

                    PRIORITY CLAIM

    I hereby claim foreign priority benefits under Title 35,
United States Code, Section 119 of any foreign application(s) for
patent or inventor's certificate or of any PCT International
application(s) designating at least one country other than the
United States of America listed below and have also identified
below any foreign application(s) for patent or inventor's
certificate of any PCT International application(s) designating
at least one country other than the United States of America
filed by me on the same subject matter having a filing date
before that of the application(s) of which priority is claimed.

    (d) [ X ] no such applications have been filed.

    (e) [   ] such applications have been filed as follows.
Note: Where item (c) is entered above and the International
Application which designated the U.S. claimed priority check item
(e), enter the details below and make the priority claim.

Earliest Foreign Application(s), if any, filed within 12 months
    (6 months for Design) prior to this U.S. Application

| COUNTRY | APPLICATION NUMBER | DATE OF FILING (DAY,MONTH,YEAR) | PRIORITY CLAIMED 35 USC 119 |
|---------|--------------------|----------------------------------|------------------------------|
|         |                    |                                  |                              |
|         |                    |                                  |                              |
|         |                    |                                  |                              |
|         |                    |                                  |                              |

HERC0076002

[REV.4Apr89/HB1-1]          -3-

All Foreign Application(s), if any, Filed More Than 12 Months
    (6 Months for Design) Prior to This U.S. Application

_____

_____

_____

POWER OF ATTORNEY

    As a named inventor, I hereby appoint the following
attorney(s) and/or agent(s) to prosecute this application and
transact all business in the Patent and Trademark Office
connected therewith.

Frank M. Van Riet_____          19933_____
        (Name)                          (Reg. No.)

Roger S. Benjamin_____          27025_____
        (Name)                              (Reg. No.)

Michael J. Kelly_____          27910_____
        (Name)                              (Reg. No.)

Steven H. Flynn_____          29639_____
[ X ]      Attached as part of this declaration and power of
           attorney is the authorization of the above-named
           attorney(s) to accept and follow instructions from my
           representative(s).

----------------------------------------------------

SEND CORRESPONDENCE AND TELEPHONE CALLS TO:
Frank M. Van Riet_____
American Cyanamid Company_____
1937 West Main Street_____
Stamford, CT  06904-0060_____
Telephone No. (203) 321-2614

----------------------------------------------------

HERC0076003

[REV.4Apr89/MB1-1]         -4-

## DECLARATION

I hereby declare that all statements made herein of my own
knowledge are true and that all statements made on information
and belief are believed to be true; and further that these
statements were made with the knowledge that willful false
statements and the like so made are punishable by fine or
imprisonment, or both, under Section 1001 of Title 18 of the
United States Code, and that such willful false statements may
jeopardize the validity of the application or any patent issued
thereon.

### SIGNATURE(S)

Full name of SOLE OR FIRST INVENTOR Dan S. Honig

Inventor's signature _____
Date 3/26/91
Country of Citizenship United States
Residence 12 Conrad Road, New Canaan, CT 06840
Post Office Address Same

Full name of SECOND JOINT INVENTOR, if any Elieth Harris

Inventor's signature _____
Date 3 26 91
Country of Citizenship Antigua
Residence 484 Colorado Avenue, Bridgeport, CT 06605
Post Office Address Same

Full name of THIRD JOINT INVENTOR, if any _____

Inventor's signature _____
Date _____
Country of Citizenship _____
Residence _____
Post Office Address _____

HERC0076004

[REV.4Apr89/MB1-1]                -5-

THE FOLLOWING 'ADDED PAGES' FORM A PART OF THIS DECLARATION

[ X ] Signature for fourth and subsequent joint inventors on
      ADDED PAGES.
[   ] ADDED PAGES TO COMBINED DECLARATION, POWER OF ATTORNEY
      for divisional, continuation, or continuation-in-part (CIP)
      application.
      [ X ] Number of ADDED PAGES: ___1___
      [   ] Declaration ends with this page.

HERC0076005

[REV.4Apr89/MB1-1]          -7-

ADDED PAGE TO COMBINED DECLARATION AND POWER OF ATTORNEY FOR
DIVISIONAL, CONTINUATION OR CIP APPLICATION

(complete this only if this is a divisional,
continuation or CIP application)

CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)
UNDER 35 U.S.C. 120

I hereby claim the benefit under Title 35, United States
Code, Section 120 of any United States application(s) or PCT
International application(s) designating the United States of
America that is/are listed below and, insofar as the subject
matter of each of the claims of this application is not disclosed
in that/those prior application(s) in the manner provided by the
first paragraph of Title 35, United States Code, Section 112, I
acknowledge the duty to disclose material information as defined
in Title 37, Code of Federal Regulations, Section 1.56(a) which
occurred between the filing date of the prior application(s) and
the national or PCT International filing date of this
application.

| PRIOR U.S. APPLICATIONS OR PCT INTERNATIONAL APPLICATIONS DESIGNATING THE U.S. FOR BENEFIT UNDER 35 USC 120 | | | | | |
|---|---|---|---|---|---|
| U.S. APPLICATIONS | | | STATUS (check one) | | |
| U.S. APPLICATIONS | U.S. FILING DATE | | patented | pending | abandoned |
| 1. Serial Number 07/536,382 | June 11, 1990 | | | | X |
| 2.   / | | | | | |
| 3.   / | | | | | |
| PCT APPLICATIONS DESIGNATING U.S. | | | | | |
| PCT APPLN. NO. | PCT FILING DATE | U.S. SERIAL NOS ASSIGNED (if any) | | | |
| 4. | | / | | | |
| 5. | | / | | | |
| 6. | | / | | | |

HERC0076006

7

HERC0076007



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/540-667 | 06/18/90 | HONIG | 31-043-01 |

EXAMINER
FRIEDMAN. C

FRANK M. VAN RIET
C/O AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
STAMFORD. CT 06904-0060

| ART UNIT | PAPER NUMBER |
|---|---|
| 133 | 7 |

DATE MAILED:    06/26/91

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

[X] This application has been examined  [X] Responsive to communication filed on _3-28-71 (Amd 18)_  [ ] This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I** THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [X] Notice of References Cited by Examiner, PTO-892.    2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449.    4. [ ] Notice of Informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474.    6. [ ] _____

**Part II** SUMMARY OF ACTION

1. [X] Claims _1-42_ are pending in the application.

   Of the above, claims _15-25 and 41_ are withdrawn from consideration.

2. [ ] Claims _____ have been cancelled.

3. [ ] Claims _____ are allowed.

4. [X] Claims _1-14, 26-40, and 42_ are rejected.

5. [ ] Claims _____ are objected to.

6. [ ] Claims _____ are subject to restriction or election requirement.

7. [ ] This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. [ ] Formal drawings are required in response to this Office action.

9. [ ] The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are [ ] acceptable; [ ] not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. [ ] The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been [ ] approved by the
    examiner; [ ] disapproved by the examiner (see explanation).

11. [ ] The proposed drawing correction, filed _____, has been [ ] approved; [ ] disapproved (see explanation).

12. [ ] Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has [ ] been received [ ] not been received
    [ ] been filed in parent application, serial no. _____; filed on _____.

13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. [ ] Other _____

**EXAMINER'S ACTION**

HERC0076008

Serial No. 07/540667                    -2-

Art Unit   133

    Restriction to one of the following inventions is required
under 35 U.S.C. § 121:

    I.    Claims 1-14 and 40, drawn to a method of making paper,
classified in Class 162, subclass 168.3.

    II.   Claims 15-25 and 41, drawn to a composition of matter,
i.e. microheads, classified in Class 252, subclass 351.

    The inventions are distinct, each from the other because of
the following reasons:

    Inventions Group II and Group I are related as product and
process of use.  The inventions can be shown to be distinct if
either or both of the following can be shown: (1) the process for
using the product as claimed can be practiced with another
materially different product or (2) the product as claimed can be
used in a materially different process of using that product
(M.P.E.P. § 806.05(h)).  In the instant case the product as
claimed can be used in a materially different process such as one
that does not require papermaking, e.g. making cement.

    Because these inventions are distinct for the reasons given
above and have acquired a separate status in the art as shown by
their different classification and because of their recognized
divergent subject matter restriction for examination purposes as
indicated is proper.

    It is noted that the applicant has elected to prosecute the
invention of Group I, along with which product by process claims

HERC0076009

Serial No. 07/540667                    -3-

Art Unit   133

26-39 and 42 are examinable.

Applicant correctly points out that different classifications do not alone establish separate and restrictable inventions; however, the different classifications demonstrate the burden on the examiner of searching the composition along with the method of using it.

Claims 12 and 37 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

There is no antecedent basis for "species" as recited in claim 12.

Applicant's argument that the references cited in the previous office action do not teach the critical limitation of the particle size of the microbead is noted. Accordingly, the 35 U.S.C. § 103 rejections in the previous action have been reconsidered and new rejections formulated.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which

HERC0076010

Serial No. 07/540667                    -4-

Art. Unit   133

the invention was made.

Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. § 103, the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 C.F.R. § 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of potential 35 U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

Claims 1-3, 5, 7, 8, 10-14, 26-28, 30, 32, 33, 35-40, and 42 are rejected under 35 U.S.C. § 103 as being unpatentable over Probst etal either alone or in view of Johnson etal.

Probst teaches a cationic polymer for addition to paper as a sizing agent. He teaches that the polymers, i.e. microbeads are 20-150 nm (column 5, lines 2-6). Probst does not teach if the microbead is cross-linked; however, it would have been an obvious matter of choice based on the availability, cost, and effectiveness of cross-linked versus non-cross-linked microbeads. At column 8, lines 58-62 Probst teaches mixing a solution of starch (a cationic polymer) with the sizing agent. The addition of the claimed amounts of microbeads and starch (cationic polymer) is conventional to enhance drainage and retention properties, and it would have been obvious for one to utilize the

HERC0076011

Serial No. 07/540667                     -5-

Art Unit   133

claimed amounts to achieve such.  Finally, it would have been
obvious to add a size or strength additive to the paper furnish
to increase the desirability of the final product.

      To further support the above discussion, the teachings of
Johnson are considered.  Johnson teaches improving retention and
dewatering properties of paper by adding .1-.15% of a binder of a
cationic starch (a high molecular weight ionic polymer), an
anionic polymer of acrylamide and a dispersed silica to the
headbox of a papermaking machine (column 1, lines 15-16 and 41,
column 2, lines 15-24,and column 3, lines 50-52).  At Figures 3
and 4 Johnson teaches the use of all components within the range
of the presently claimed amounts.  The use of alum is shown to
increase drainage and retention (shown in Figure 4 as decreased
turbidity).  It would have been obvious to one of ordinary skill
in the art to add cationic starch and alum in the claimed amounts
to the microbeads of Probst to further improve the drainage and
retention properties because Johnson teaches that such improves
drainage.

      Rejection of the method claims necessarily precludes
patentability of the product by process claims.  Compare in re
Thorne, 227 USPQ 964 (CAFC 1985).

      Claims 4, 6, 9, 29, 31, and 34 are rejected under 35 U.S.C.
§ 103 as being unpatentable over Probst etal either alone or in
view of Johnson as applied to claims above, and further in view

HERC0076012

Serial No. 07/540667         -6-

Art Unit 133

of Sinclair etal.

    To further support the above noted teachings of a high molecular weight polymer, it is noted that Sinclair teaches starches as the cationic polymer in a process to provide paper with improved properties. Sinclair teaches that starch (polysaccharide) or another polymer can be used as either a cationic or anionic polymer and the acrylamide, i.e. microbead, can be selected in either ionicity such that the two polymers have opposite charges (see column 8, lines 24-44).

    It would have been obvious to the skilled artisan to use either anionic or cationic starch (high molecular weight polymer) of opposite charge in the process of Probst either alone or taken with Johnson because Sinclair teaches such as conventional in improving retention and dewatering properties. Further, the selection being merely a matter of choice, the skilled artisan would have found it obvious to choose the additives based on economy and availability. It is noted, as above, that rejections of the paper product claims necessarily follow from the rejection of the process claims.

    Any inquiry concerning this communication should be directed to Charles Friedman at telephone number (703) 308-0477.

*CKF*
Charles K. Friedman

June 11, 1991

RICHARD V. FISHER
SUPERVISORY PATENT EXAMINER
ART UNIT 133
6-26-91

HERC0076013

AND BOTTOM EDGES, SNAP—APART AND DISC-RD CARBON

| FORM PTO-892 (REV. 3-78) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE NOTICE OF REFERENCES CITED | SERIAL NO. 540 667 | GROUP ART UNIT 135 | ATTACHMENT TO PAPER NUMBER 7 |
| | APPLICANT(S) | | |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4 6 5 9 4 3 1 | 4/87 | Probst et al. | 162 | 168.2 | |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS- PP. DWG SPEC. |
|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | |
| | M | | | | | | | |
| | N | | | | | | | |
| | O | | | | | | | |
| | P | | | | | | | |
| | Q | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | R | |
| | S | |
| | T | |
| | U | |

| EXAMINER Charles K. Frick | DATE 6-11-91 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

HERC0076014

**8**

HERC0076015



Docket No: 31,043-

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of: GROU, ISO
DAN S. HONIG
ELIETH HARRIS

Serial No: 07/540,667          Group Art Unit: 133
Filed: June 18, 1990
For: CHARGED ORGANIC          Examiner: C. Friedman
      POLYMER MICROBEADS
      IN PAPER-MAKING PROCESS

Commissioner of Patents
and Trademarks

Washington, D.C. 20231

## AMENDMENT

In response to the Office Action of June 26, 1991,
please amend the above-identified application as follows:

### In The Claims:

Claim 12, line 2, please cancel the numeral "10"
and substitute therefore the numeral --11--.

Please cancel Claims 17 and 18.

Please rewrite Claim 1 as follows:

--1. (Amended)  A  method  of  making  paper  which
comprises adding to an aqueous paper furnish from about 0.05
to  about  20  lbs./ton,  based  on  the  dry  weight  of  paper
furnish  solids,  of  an  ionic,  organic,  cross-linked,
polymeric microbead, the microbead being less than about 750
nanometers in diameter [if cross-linked and less than 60
nanometers   in   diameter   of   non-cross-linked   and
water-insoluble] and the ionicity of said microbead being at
least 1%, but at least 5%, if [cross-linked] anionic and
used alone--.

### Remarks

The Examiner has again required restriction to one
of the following inventions under 35 USC 121:

- 1 -

HERC0076016

I.   Claims 1-14 and 40 drawn to a method of
     making paper and classified in Class 162;
     Subclass 168.3 and

II.  Claims 15-25 and 41 drawn to a composition of
     matter and classified in Class 252; Subclass
     351.

The inventions are distinct, each from the other,
the Examiner continues, because Inventions II and I are
related as product and process of use and the inventions are
distinct if either or both of the following can be shown: 1)
that the process for using the product, as claimed, can be
practiced with another and materially different product or
2) that the product, as claimed, can be used in a materially
different process of using that product, citing M.P.E.P.
806.05(h). In the instant case, the Examiner explains, the
product, as claimed, can be used in a materially different
process such as one that does not require papermaking, e.g.
making cement.

Because the inventions are therefore distinct and
have acquired a separate status in the art as shown by their
different classification and because of their recognized
divergent subject matter, restriction for examination
purposes is indicated as proper by the Examiner.

This requirement for restriction is again
respectfully traversed.

This requirement is respectfully submitted as
unfounded and based on speculation and conjecture. The
Examiner has cited no authority or documentation in support
of his statement that the instantly claimed products can be
used in making cement. This concept is not taught in
Applicants' disclosure or in any reference cited by the

- 2 -

HERC0076017

Examiner and therefore the requirement is clearly erroneous.
Withdrawal thereof is earnestly solicited.

Applicants, however, again affirm the previous
provisional election of Group I, i.e. Claims 1-14 and 40 and
respectfully request retention of the non-elected claims
i.e. Claims 15-25 and 41, in the application for purposes of
filing a subsequent divisional application or appeal.

Claims 12 and 37 have been rejected under 35 USC
112, second paragraph, as being indefinite for failing to
particularly point out and distinctly claim the subject
matter which Applicants regard as the invention in that
there is no antecedent basis for the word "species" as
recited in Claim 12.

This ground of rejection has been overcome by the
instant amendment whereby Claim 12 has been amended to
render it dependent upon Claim 11 rather than Claim 10, as
obviously intended.  The error is sincerely regretted.

Claims 1-3,5,7,8, 10-14, 26-28, 30, 32,33, 35-40
and 42 have been rejected under 35 USC 103 as being
unpatentable over Probst etal, alone, or in view of Johnson
the Examiner stating that Probst teaches a cationic polymer
for addition to paper as a sizing agent and that the
polymers i.e. microbeads, are 20-150 nm, citing col. 5,
lines 2-6.  Probst does not teach if the microbead is
cross-linked, the Examiner continues, however, it would have
been an obvious matter of choice based on the availability,
cost   and   effectiveness   of   cross-linked   versus
non-cross-linked microbeads.  At col. 8, lines 58-62, the
Examiner explains, Probst teaches mixing a solution of
starch (a cationic polymer) with the sizing agent.  The
addition of the claimed amounts of microbeads and starch
(cationic polymer) is conventional to enhance drainage and

HERC0076018

retention properties, the Examiner argues, and therefore it would have been obvious for one to utilize the claimed amounts to achieve such and to add a size or strength additive to the paper furnish to increase the desirability of the final product.

To further support the above discussion, the Examiner refers to the teaching of Johnson which, the Examiner explains, teaches improving retention and dewatering properties of paper by adding 0.1-0.15% of a binder of a cationic starch (a high molecular weight ionic polymer), an anionic polymer of acrylamide and a dispersed silica to the headbox of a paper-making machine, citing col. 1, lines 15-16 and 41; col. 2; lines 15-24 and col. 3, lines 50-52. At Figures 3 and 4, the Examiner points out, Johnson teaches the use of all components within the range of the presently claimed amounts, while alum is shown to increase drainage and retention (shown, the Examiner contends, in Figure 4 as decreased turbidity). Thus, the Examiner concludes, it would have been obvious to one of ordinary skill in the art to add cationic starch and alum in the claimed amounts to the microbeads of Probst to further improve drainage and retention properties because Johnson teaches that such improves drainage.

Rejection of the method claims necessarily precludes patentability of the product-by-process claims, the Examiner explains, citing In re Thorpe 227 USPQ 964.

This ground of rejection is respectfully traversed. It is strenuously urged that Probst does not teach, disclose or suggest the instant invention especially in view of the amendment made to Claim 1 herein. Probst is directed to a sizing agent comprising an emulsion of a copolymer of 0-90% of (meth)acrylonitrile, 5-95% of styrene

- 4 -

HERC0076019

and 5-95% of (meth)acrylates. The sizing agent is disclosed as in the form of a colloidal solution wherein the copolymer is present in the form of particles having a size between 15 and 200 nm. The reference indicates that starch may be used in a 5% solution as a sizing liquor.

Applicants' claims require that the organic, polymeric microbeads be _ionic_ Probst employs ionic group containing emulsifiers in order to create dispersion stability in the solution. The ionic groups remain part of the emulsifier and are not chemically bonded to the hydrophobic copolymers. The Probst product, therefore, is a _nonionic_ hydrophobic polymer mixture stabilized by cationic surfactants.

Applicants' invention resides in the use of the polymer microbead having an ionic charge covalently bonded to the polymer, whereas, in Probst, the only ionic charge present is on a different molecule i.e. a surfactant which can dissolve out of and/or migrate from the polymer microbeads. Applicants' microbead does not require the use of an emulsifier. It is an integral unit which can be separated from any emulsifier present if made in emulsion form.

Probst indicates that for effective sizing, the polymer microbeads must be film-formers, see col. 3, line 67 to col. 4, line 8. The Examiner argues that it would be obvious to cross-link the Probst polymers, however, such is diametrically opposite that which Probst describes because cross-linking the Probst polymer would substantially reduce or even prevent its film-forming ability. That is to say, if the Probst sizing agent were to be cross-linked as the Examiner indicates, and then applied to paper, the intended performance thereof, i.e. sizing, would be reduced or

- 5 -

HERC0076020

eliminated because of the failure of the cross-linked polymer to act as a film-former. Additionally, the stability of the Probst dispersions would be greatly reduced by cross-linking the polymer. What is generally desired in sizing is the ability of the sizing molecules to spread out on the paper surface in order to impart their maximum efficiency. Cross-linking prevents this.

In retention and drainage, however, the polymer must be strongly absorbed on a fiber, fine and/or filler surface and be able to also be strongly absorbed onto another fiber, filler of fine surface under the high shear conditions of the paper-making process. The retention and drainage aid links fiber, fines and filler suspended solids to one another. By contrast, a sizing agent is absorbed onto fiber, fines and filler but is not then absorbed onto more fiber, fines and filler so as to "cover" the agent. If it is covered, it is not able to exercise its sizing action. Retention requires adsorption strength and integrity of the aid under conditions of high shear and stress.

Thus, it can be readily appreciated that Applicants' claims, especially as newly presented wherein the microparticles must be cross-linked, are not in any way anticipated by the Probst disclosure especially since Applicants' claims require the microparticles to be added to the paper-making furnish i.e to the slurry of paper-making fibers, fines, fillers etc. which are used to form the paper sheet per se whereas all the examples of Probst show that the Probst composition is added to the paper sheet in the size press after it is already formed, although Probst does suggest engine sizing at col. 5, line 32. Thus, Probst fails to meet Applicants' claims because:

- 5 -

HERC0076021

1.  The microbeads are preferably added to the
    paper rather than the furnish;

2.  The microbeads are not ionic and

3.  The microbeads are not cross-linked.

These deficiencies in the Probst disclosure are not overcome by the teachings of Johnson which is directed to a retention aid comprising a cationic starch and a dispersed silica. Johnson does not teach the use of polymeric microbeads and, as such, it is representative of the type of retention aid over which Applicants' invention is an improvement. In fact, Johnson is acknowledged in Applicants' specification at page 1, line 26. While Johnson may recognize the benefits of adding starch, anionic acrylamide and alum, the reference fails to recognize that the silica used therein can be replaced, in whole or in part, by Applicants' microbeads and, as such, the fact that Johnson teaches the amounts of these additives which may be added with a retention aid is irrelevant with respect to the instant claims. To add the additives of Johnson in their disclosed amounts to the composition of Probst will still not result in Applicants' invention because there still will be no ionic, cross-linked, organic polymeric microbeads present. For these reasons, reconsideration and withdrawal of this ground of rejection is earnestly solicited.

Claims 4,6,9,29, 31 and 34 have been rejected under 35 USC 103 as unpatentable over Probst etal, either alone or in view of Johnson as applied above, and further in view of Sinclair etal, the Examiner noting that Sinclair etal teaches starches as the cationic polymer in a process to provide paper of improved properties. Sinclair etal teaches that starch (polysaccharide) or another polymer can be used as either a cationic or anionic polymer and the acrylamide i.e. microbead, can be selected in either

- 7 -

HERC0076022