# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS
CORPORATION,

              Plaintiff,

          v.

HERCULES, INC. and CYTEC INDUSTRIES,
INC.,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)

C.A. No.:  04-293 (KAJ)

**REDACTED - PUBLIC VERSION**

---

## CIBA'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE ACCUSED PERFORM® SYSTEM INFRINGES U.S. PATENT NOS. 5,167,766 AND 5,171,808

*Of Counsel*:

Gordon R. Coons, Esq.
Eley O. Thompson, Esq.
Gregory C. Bays, Esq.
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601-6780

Frederick L. Cottrell, III (#2555)
(Cottrell@rlf.com)
Jeffrey L. Moyer (#3309)
(Moyer@rlf.com)
Chad M. Shandler (#3796)
(Shandler@rlf.com)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700
Attorneys for Plaintiff

Dated:  January 9, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION .................................................................................................. 1

II.  NATURE AND STAGE OF PROCEEDINGS ....................................................... 1

III. SUMMARY OF THE ARGUMENT ...................................................................... 2

IV. STATEMENT OF FACTS ....................................................................................... 4

    A.  Background of the Ownership and Use of the Patents ...................................... 4

    B.  Background of the Polyflex® System ............................................................... 5

    C.  Background of the Perform® System ............................................................... 12

V.  ARGUMENT .......................................................................................................... 16

    A.  To Determine Infringement, The Court Must Construe The Claims and Then Compare Them With The Accused Products and Methods ............................................. 17

    B.  The Defendants Literally Infringe The '766 Patent .......................................... 17

        (1) The Perform® product is cross-linked ........................................................ 18
        (2) The Perform® product is added in the required amount ............................. 18
        (3) The Perform® product has the required average size .................................. 19
        (4) The Perform® product has the required ionicity ......................................... 19

    C.  The Defendants Infringe The '766 Patent Under The Doctrine Of Equivalents ............... 19

    D.  Defendants Literally Infringe Claim 1 of the '808 Patent ................................. 20

    E.  Defendants Infringe The '808 Patent Under The Doctrine Of Equivalents ....................... 23

VI. CONCLUSION ........................................................................................................ 24

RLF1-2964490-1

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 17

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002)(citation omitted) ........... 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................... 16

*Corning Glass Works v. Sumitomo Elec. USA, Inc.*, 868 F.2d 1251 (Fed. Cir. 1989) ................. 20

*E. I. DuPont de Nemours Co. v. Monsanto Co.*, 903 F.Supp. 680, 733–35 (D. Del. 1995),
 *affd.*, 92 F3d 1208 (Fed. Cir. 1996) (unpublished) .................................................................. 17

*McDermott v. Omid Int'l*, 723 F. Supp. 1228 (S.D. Oh. 1998), *affd.*, 883 F.2d 1026
 (Fed. Cir. 1989) (unpublished) .............................................................................................. 17

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 2002 U.S. Dist. LEXIS 25096,
 at *6 (D. Del. Dec. 19, 2002)(citation omitted) ........................................................................ 17

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) ...................................... 20

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................................ 16

RLF1-2964490-1

## I.    INTRODUCTION

Pursuant to the Court's scheduling order, Ciba Specialty Chemicals Corporation ("Ciba")

submits this brief in support of its motion for partial summary judgment of infringement of each

of the patents-in-suit, i.e., U.S. Patents 5,167,766 and 5,171,808, by the Defendants Cytec

Industries, Inc. ("Cytec") and Hercules, Inc. ("Hercules").  This brief is being submitted

concurrently with the briefs relating to claim construction.

## II.    NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement case involving U.S. Patents 5,167,766 (the '766 patent) and

5,171,808 (the '808 patent), which were originally issued to Defendant Cytec (at that time,

American Cyanamid).  The patents generally relate to a commercial product and method referred

to as the Polyflex® system.

REDACTED Cytec put the Polyflex® business up for sale in 2000.

The '766 and '808 patents and the Polyflex® business were

sold to Ciba in late 2000.

The original complaint in this case was filed on May 7, 2004, and was answered by

Defendants on November 17, 2004.  This case was filed after Defendants jointly introduced an

infringing system they called Perform®

The Perform® system is marketed as a substitute for Polyflex® system and

REDACTED

- 1 -

The Court's scheduling order provided for the parties to submit briefs on claim construction and motions for summary judgment concurrently. (Exh. 1,[1] ¶ 12.) Opening briefs were due by December 30, 2005. The Court set March 17, 2006, for hearings on the motions and on claim construction. (Id., ¶ 13.)

## III.    SUMMARY OF THE ARGUMENT

Ciba seeks summary judgment of infringement because there are no material facts in dispute that should prevent this Court from finding that the Perform® system infringes the asserted patents.

The first prong of Defendants' noninfringement defense is an unduly narrow construction of the term "cross-linked" in the '766 and '808 claims. In particular, Defendants argue that the claims should be limited to covalent cross-linking and covalent cross-linking agents, although the term "covalent" is not present in the claims. As discussed in Ciba's concurrently-filed claim construction brief, the plain language of claim 1 of each of the patents-in-suit includes only the term "cross-linked." Cross-linking was well known at the time. The Cytec inventors referred to cross-linking generally, as their invention was not about developing a new form of crosslinking. Thus, there is no reason to limit the patent claims to one particular cross-linking mechanism, i.e., covalent cross-linking agents.

The second prong of Defendants' noninfringement argument relates to the origin of the cross-linking present in the Perform® product. Specifically,

REDACTED

While the evidence in this case shows that the Perform® product is both covalently and hydrophobically cross-linked, the origin of the cross-links need not be resolved to

---

[1] Hereinafter, "Exh. ____" refers to the Exhibits attached to the Declaration of L. Scott Beall dated December 30, 2005, filed herewith.

- 2 -

grant summary judgment of infringement. It cannot be contested that the Perform® product is constrained by cross-linking of one form or another, i.e. covalent or hydrophobic cross-links. Moreover, it cannot be contested that those cross-links are the result of an added chemical agent called Hypermer® B246SF, which was substituted for the preferred chemical agent MBA (methylene bis-acrylamide).

REDACTED

As to the remaining requirements of the claims, Defendants have not raised any substantive dispute. The Perform® product has the required number average diameter of less than 750 nanometers. Defendants do not contest that the Perform® product has the required ionicity or that the product is used in the same way as Polyflex® when used in the papermaking process.

Accordingly, given Ciba's proposed claim construction, literal infringement should be found. The Perform® product is "cross-linked," irrespective of whether that cross-linking results from covalent cross-linking, hydrophobic cross-linking            REDACTED            , or both. If Defendants' proposed limited construction of "cross-linked" is adopted, then infringement under the doctrine of equivalents can still be found on summary judgment

- 3 -

REDACTED The Perform® product is a direct substitute for the patented Polyflex® product and functions substantially identically as a retention and drainage aid.

Thus, as further explained below, this Court may enter partial summary judgment of infringement and narrow the issues in the case.

## IV.    STATEMENT OF FACTS

### A.    Background of the Ownership and Use of the Patents

The patented technology was developed by Defendant Cytec. Two separate patent applications were filed in 1990 that ultimately led to separate patents being issued. The '766 patent relates to a new product that showed surprising benefits in facilitating the manufacture of paper and the '808 patent relates to the product itself. This so-called Polyflex® system permitted paper mills to make paper better and faster.

REDACTED

The Polyflex® system permitted the Defendants to establish a customer base for such products.  In 2000, the Polyflex® business and the patents were sold to Ciba.

REDACTED

 Such infringement of the '766 and '808 patents

led to this suit.

### B.    Background of the Polyflex® System

Pursuant to the Court's scheduling order, the parties presented a tutorial on the

technology involved in this case on May 27, 2005.  Ciba provided this Court with a slide

presentation at that time which is attached hereto for the Court's convenient reference.  (Exh. 6.)

The following discussion covers some of the salient points of the tutorial.  If the Court wishes a

more detailed discussion, Ciba invites the Court's attention to the transcript of the tutorial, which

is also attached hereto.[2]  (Exh. 7.)

As explained in the tutorial, the papermaking process involves removing water from a

slurry (or furnish) of paper making fibers and other constituent parts, while maintaining good

and even formation of the final paper product.  (Exh. 7, Hearing Trans. at 5–7.)  A schematic

flow chart of a typical paper mill is presented below:



RLF1-2964490-1



(Exh. 6, slide 6; Exh. 7, Hearing Trans. at 7–9.) As depicted, a furnish of paper fibers and fines is treated with additives and then formed on a paper forming machine called a Fourdrinier. The Fourdrinier machine includes a large belt formed of a screen mesh. The screen permits water to be drained from the slurry or paper furnish that is on the water surface. When the water is removed, the fibers and other constituents left behind become the final paper product.

The objective of the Polyflex® system is to permit fast and controlled drainage of the water, while maintaining good formation and retention of chemical additives and other constituent parts. In practicing the invention, a series of preparation steps are performed on the paper furnish in many instances. As depicted in the following photomicrograph, a paper slurry generally includes wood fiber, fines and fillers (as well as, often, other materials):

- 6 -



(Exh. 6, slide 17; Exh. 7, Hearing Trans. at 7–8.) The fibers, fillers and other materials are often anionic in nature. This means that they carry a negative electrostatic charge.[3] Thus, when a cationic material is added, the fibers and other components tend to floc or bond together, something generally referred to as flocculation. The initial flocculation is typically instituted by a cationic polymer that is linear.[4] The linear cationic polymer tends to bond together all of the materials into large and dense flocs. These flocks do not drain very efficiently and also provide poor formation. A depiction and photomicrograph of such large floc formation is as follows:

---

[3] This charge is much like the static charge that can be imparted to a balloon, which then can attract dust particles of the opposite charge. Often times, people rub the balloon to generate the charge and then observe as the balloon attracts other objects.

[4] A polymer is a chain of chemical units called monomers. The word polymer means "poly" or multiple (mono)mers. In the present case, the polymers are made of acrylic acid monomers and acrylamide monomers. A linear polymer is a chain of monomers where the monomers are bonded end to end like a chain of pearls.



(Exh. 6, slide 22; Exh. 7, Hearing Trans. at 13–15.)  The large flocs are sheared to make small

flocs:



(Exh. 6, slide 24; Exh. 7, Hearing Trans. at 15–16.)

RLF1-2964490-1

Because the larger flocs were treated with cationic chemicals, their surface charge is substantially cationic, even after shearing. As depicted in the following, the Polyflex® product operates to bind the smaller flocs together without reforming the larger flocs:



(Exh. 6, slide 28; Exh. 7, Hearing Trans. at 16–17.) Surprisingly good drainage and retention can be obtained if the particulates are kept small. The patents-in-suit reflect this quality in the claims specifying that the number average particle size of the product is less than 750 nanometers. (Exh. 9, '766 patent, Claim 1; Exh. 10, '808 patent, Claim 1.) The patents-in-suit also recognize that the inventive microparticles need to be ionic (Exh. 9, '766 patent, Col. 6, line 29 *et seq.*) and constrained in size by cross-linking (Exh. 9, '766 patent, Col. 3, lines 58–61). The ionicity is provided by acrylic acid, one of the chemicals used to make Polyflex®.

The Polyflex® product is formed by polymerization to make chains of the constituent chemicals (called monomers). These polymer chains are constrained together by cross-linking as opposed to having an open linear structure as follows:

- 9 -



(Exh. 6, slide 35; Exh. 6, Hearing Trans. at 18–19.)

Although Defendants have made cross-linking their central issue in this case, the patents-in-suit were not based on discovering a new form of cross-linking. To the contrary, the patents-in-suit do not place any particular importance on any specific form of cross-linking. At the time of the patent applications, more than one form of cross-linking was known in the art, including covalent and ionic cross-linking. (See Exh. 11, '780 patent, Col. 9, lines 19–27.) Covalent cross-linking refers to a subset of cross-linking where covalent bonding is involved. Ionic cross-linking refers to another subset where ionic associations are involved, and there are no covalent bonds. Ionic cross-linking is depicted in one college text as follows:

RLF1-2964490-1



*Figure 7.3 Schematic diagram of clusters in an ionomer.*

(Exh. 12, at CIBA 037951.)  Here, ionic domains constituted by ionic associations make clusters that form cross-links among the polymer chains.



RLF1-2964490-1

As noted above, the particular form of cross-linking is not germane to this motion for summary judgment since Hercules cannot contest that either covalent or hydrophobic cross-linking (or both) are present in the Perform® product.

### C.    Background of the Perform® System



Later in 2000, Cytec publicly offered the Polyflex® business and patents, which Ciba purchased.





REDACTED

---

[5] Hypermer is an ABA triblock surfactant where the B block is polyethylene oxide or PEO.

- 13 -

REDACTED

- 14 -

REDACTED

- 15 -

REDACTED

## V.    **ARGUMENT**

Summary judgment in favor of the party bearing the burden at trial is proper under Rule

56 of the Federal Rules of Civil Procedure, unless the non-moving party can point to specific

facts showing there are genuine issues for trial. *See* FED. R. CIV. P. 56; *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986). Any facts raised by the non-movant must be material to the

issue at hand in order to avoid summary judgment. The law requires the parties resisting

- 16 -

summary judgment – in this case Hercules and Cytec – to present more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–51 (1986). "This standard is applicable to all types of cases, including patent cases." *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 2002 U.S. Dist. LEXIS 25096, at *6 (D. Del. Dec. 19, 2002)(citation omitted) (attached as Exh. 45.)

### A.    To Determine Infringement, The Court Must Construe The Claims and Then Compare Them With The Accused Products and Methods

"Patent infringement requires a two-step analysis." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002) (citation omitted). "First, a court must determine as a matter of law the correct scope and meaning of a disputed claim term." *Id.* "Second, the analysis requires a comparison of the properly construed claims to the accused device, to see whether the device contains all of the limitations." *Id.*

The proper construction of the claims, and the reasons therefor, are set forth in Ciba's opening brief on claim construction, which is being filed concurrently herewith. Ciba incorporates by reference its brief on claim construction.

### B.    The Defendants Literally Infringe The '766 Patent

REDACTED

A method patent is literally infringed by the execution of the steps. Defendants are jointly liable when they induce the execution of the steps of a method patent. *E. I. DuPont de Nemours Co. v. Monsanto Co.*, 903 F.Supp. 680, 733–35 (D. Del. 1995), *affd.*, 92 F3d 1208 (Fed. Cir. 1996) (unpublished); *see also, McDermott v. Omid Int'l*, 723 F. Supp. 1228 (S.D. Oh. 1998), *affd.*, 883 F.2d 1026 (Fed. Cir. 1989) (unpublished).

– 17 –

Claim 1 of the '766 patent provides as follows:

A method of making paper which comprises adding to an aqueous paper furnish from about 0.05 to about 20 lbs/ton, based on dry weight of paper furnish solids, of an ionic, organic, **cross-linked** polymeric microbead, the microbead having an unswollen particle diameter of less than about 750 nanometers and an ionicity of at least 1%, but at least 5%, if anionic and used alone.

(Exh. 9, '766 patent, Claim 1, emphasis added.)  As mentioned above, Defendants have focused their noninfringement defense on the highlighted word "cross-linked."  In that the Perform® product is substituted for Polyflex®, Defendants have not meaningfully contested the other parameters of claim 1.  While Ciba has asserted additional claims from the '766 patent and believes that those claims are also infringed, Ciba limits this motion to claim 1 for the purposes of brevity.

### (1)    The Perform® product is cross-linked

REDACTED

### (2)    The Perform® product is added in the required amount

Claim 1 requires "adding to an aqueous paper furnish from about 0.05 to about 20 lbs/ton, based on dry weight of paper furnish solids."   REDACTED

- 18 -

REDACTED

### (3)    The Perform® product has the required average size

Claim 1 of the '766 patent requires that the product have "an unswollen particle diameter of less than about 750 nanometers." Such limitation is "defined and used herein [in the '766 patent]" as referring to the number average size measured using quasi-elastic light scattering spectroscopy (QELS).

REDACTED

### (4)    The Perform® product has the required ionicity

Claim 1 of the '766 patent requires "an ionicity of at least 1%, but at least 5%, if anionic and used alone."

REDACTED

### C.    The Defendants Infringe The '766 Patent Under The Doctrine Of Equivalents

A product or system that does not literally infringe a patent claim may nonetheless infringe under the doctrine of equivalents if there is "equivalence" between each limitation of the

claim and a corresponding element in the accused product or system. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

REDACTED

∴ Where a component of a larger system is substituted with another that is equivalent, then the Court should find infringement. *Corning Glass Works v. Sumitomo Elec. USA, Inc.*, 868 F.2d 1251 (Fed. Cir. 1989).

REDACTED

**D.     Defendants Literally Infringe Claim 1 of the '808 Patent**

Claim 1 of the '808 patent recites the following:

A composition comprising cross-linked anionic or amphoteric polymeric microparticles derived solely from the polymerization of an aqueous solution of at least of one monomer, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1 mPa.s, a cross-linking agent content of about 4 molar parts to about 4000 parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about 5 mole percent.

- 20 -

(Exh. 10, '808 patent, Claim 1.)  As with the '766 patent, Defendants have focused their noninfringement defense on "cross-linked" and "cross-linking agent."  Ciba limits this motion to claim 1, though it believes that several other claims are infringed.

(a)     <u>**The Perform® product is cross-linked by a cross-linking agent**</u>

There are separate limitations in this claim relating to cross-linking.  One limitation merely requires that the product is "cross-linked."  The other requires a "cross-linking agent content of about 4 molar parts to about 4000 parts per million, based on the monomeric units present in the polymer."

REDACTED

REDACTED

**(b)    The Perform® product has the required average size**

Claim 1 of the '808 patent provides that the product has "an unswollen number average particle size diameter of less than about 0.75 micron."

REDACTED

**(c)    The Perform® product is made from water soluble monomers**

Claim 1 of the '808 patent requires that there be at least one water soluble monomer stating that is "derived solely from the polymerization of an aqueous solution of at least of one monomer." The meaning of this phrase, as made evident by its origin and the prosecution history of the '808 patent, is set forth in Ciba's claim construction brief. The point of the language is that the polymerization must include a water soluble monomer. In the present case, there is no dispute that the monomers acrylic acid and acrylamide are water soluble. These are the exact monomers used in the commercial Polyflex® product.

**(d)    Satisfaction of the remaining elements is not contested**

REDACTED

- 22 -

E.    Defendants Infringe The '808 Patent Under The Doctrine Of Equivalents

REDACTED

- 23 -

## VI.    CONCLUSION

For the foregoing reasons, this Court should enter partial summary judgment that claim 1

of the '766 patent and claim 1 of the '808 patent are infringed, either literally or under the

doctrine of equivalents.

Frederick L. Cottrell III (#2555)
Cottrell@rlf.com
Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Chad M. Shandler (#3796)
Shandler@rlf.com
Richards, Layton & Finger, P.A.
P.O. Box 551
One Rodney Square
Wilmington, Delaware 19899-0551
Attorneys for Plaintiff
(302) 651-7700

Of Counsel:
Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601

Dated:  December 30, 2005

- 24 -

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2005, I hand delivered the foregoing document to

the following persons and electronically filed the foregoing document with the Clerk of Court

using CM/ECF which will send notification of such filing to the following:

Richard L. Horwitz, Esquire
David E. Moore, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE   19899-0951

I hereby certify that on December 30, 2005, I have Federal Expressed the foregoing

document to the following non-registered participants:

Ford F. Farabow, Jr., Esquire             Thomas L. Creel, Esquire
Joann M. Neth, Esquire                    Goodwin Proctor, LLP
A. Neal Seth, Esquire                     599 Lexington Avenue
Finnegan, Henderson, Farabow, Garrett &   New York, NY  10022
Dunner, LLP
901 New York Avenue, N.W.
Washington, DC  20001-4413

Chad M. Shandler (#3796)

# CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2006, I hand delivered the foregoing document to the following persons and electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Richard L. Horwitz, Esquire
David E. Moore, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE   19899-0951

I hereby certify that on January 9, 2006, I have Federal Expressed the foregoing document to the following non-registered participants:

Ford F. Farabow, Jr., Esquire
Joann M. Neth, Esquire
A. Neal Seth, Esquire
Finnegan, Henderson, Farabow, Garrett &
Dunner, LLP
901 New York Avenue, N.W.
Washington, DC  20001-4413

Thomas L. Creel, Esquire
Goodwin Proctor, LLP
599 Lexington Avenue
New York, NY  10022


Chad M. Shandler (#3796)