| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 540 667 | GROUP ART UNIT 133 | ATTACHMENT TO PAPER NUMBER 3 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) Honig etal | 1990 DEC 11 | |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | A | 4 9 2 5 5 3 0 | 5/90 | Sinclair etal | 162 | 164.6 | 7-20-88 |
| ✓ | B | 4 6 4 3 8 0 1 | 2/87 | Johnson | 162 | 164.6 | |
| ✓ | C | 4 7 5 9 8 5 6 | 7/88 | Farrar etal | 162 | 168.3 | |
| ✓ | D | 4 7 5 3 7 1 0 | 6/88 | Langley etal | 162 | 164.3 | |
| ✓ | E | 4 8 2 4 5 2 3 | 4/89 | Wagberg etal | 162 | 164.6 | |
| ✓ | F | 4 7 9 8 6 5 3 | 1/89 | Rushmere | 162 | 168.3 | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER Charles N. Fried | DATE 11-15-90 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

077540-002    08/18/90



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**    07-043-01

Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| | | | |

FRANK M. VAN RIET
C/O AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

| | EXAMINER |
|---|---|
| | 11/21/90 |
| ART UNIT | PAPER NUMBER |
| 3 | 24 |

DATE MAILED:

**MAILED**

**DEC 26 1990**

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

**GROUP 130**

☑ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _3_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.    35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449    4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _1-42_ _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _1-14, 26-40, and 42_ _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☑ Claims _1-42_ _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable;
   ☐ not acceptable (see explanation).

10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev. 7 - 82)    EXAMINER'S ACTION

Serial No. 07/540667                           -2-

Art Unit    133


Restriction to one of the following inventions is required
under 35 U.S.C. § 121:

I.    Claims 1-14 and 40, drawn to a method of making paper,
classified in Class 162, subclass 168.3.

II.    Claims 15-25 and 41, drawn to a composition of matter,
classified in Class 252, subclass 351.

The inventions are distinct, each from the other because of
the following reasons:

Inventions Group I and Group II are related as process of
making and product made. The inventions are distinct if either
or both of the following can be shown: (1) that the process as
claimed can be used to make other and materially different
product or (2) that the product as claimed can be made by another
and materially different process (M.P.E.P. § 806.05(f)). In the
instant case the product as claimed can be made by a materially
different process such as one that does not require papermaking,
e.g. making cement.

Because these inventions are distinct for the reasons given
above and have acquired a separate status in the art as shown by
their different classification and because of their recognized
divergent subject matter restriction for examination purposes as
indicated is proper.

During a telephone conversation with Mr. Van Reit on October

Serial No. 07/540667                    -3-

Art Unit  133

17, 1990 a provisional election was made with traverse to
prosecute the invention of Group I, claims 1-14 and 40.
Affirmation of this election must be made by applicant in
responding to this Office action.  Claims 15-25 and 41 are
withdrawn from further consideration by the Examiner, 37 C.F.R.
§ 1.142(b), as being drawn to a non-elected invention.

Product by process claims 26-39 and 42 are examinable with
Group I, which has been elected.

Applicant is reminded that upon the cancellation of claims
to a non-elected invention, the inventorship must be amended in
compliance with 37 C.F.R. § 1.48(b) if one or more of the
currently named inventors is no longer an inventor of at least
one claim remaining in the application.  Any amendment of
inventorship must be accompanied by a diligently-filed petition
under 37 C.F.R. § 1.48(b) and by the fee required under 37 C.F.R.
§ 1.17(h).

Applicant has not complied with one or more conditions for
receiving the benefit of an earlier filing date under 35 U.S.C.
§ 120 as follows:

The continuing application must contain a specific reference
to the parent application(s) in the specification.
The serial number and the filing date of the earlier application
(attorney docket number 31,043) need to be provided.

The oath or declaration is defective.  A new oath or
declaration in compliance with 37 C.F.R. § 1.67(a) identifying

Serial No. 07/540667                               -4-

Art Unit   133


this application by its Serial Number and filing date is

required.   See M.P.E.P. §§ 602.01 and 602.02.

The oath or declaration is defective because:

It does not state the application number and filing date of
the parent application (attorney docket 31,043).

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.

> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

This application currently names joint inventors.   In
considering patentability of the claims under 35 U.S.C. § 103,
the examiner presumes that the subject matter of the various
claims was commonly owned at the time any inventions covered
therein were made absent any evidence to the contrary.   Applicant
is advised of the obligation under 37 C.F.R. § 1.56 to point out
the inventor and invention dates of each claim that was not
commonly owned at the time a later invention was made in order
for the examiner to consider the applicability of potential 35
U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

Claims 1, 13, 26, and 38 are rejected under 35 U.S.C. § 103

as being unpatentable over Farrar etal.

Farrar teaches that adding to the papermaking stock a cross-

-5-

Serial No. 07/540667

Art Unit  133

linked anionic or cationic acrylamide of particle size less than 2 microns improves retention and dewatering properties of paper (column 3, lines 42-43, column 5, lines 7-14, column 6, line 62, and column 9, line 52). Farrar also teaches, at columns 9 and 10, that the additive can be copolymerized with 0-95% acrylamide; thus, it would have been obvious to one of ordinary skill in the art that the additive polymer can have a 0-95% ionicity. At column 14, line 58 Farrar teaches that 6 kg/ton of polymer are added to the paper. This amount taught by Farrar is in the range of polymer additive claimed by the applicant. Further, addition of the claimed amount of polymer is conventional to enhance drainage and retention properties.

Claims 1-5, 7, 8, 10-14, 26-30, 32, 33, 35-40, and 42 are rejected under 35 U.S.C. § 103 as being unpatentable over Farrar in view of Johnson etal or vice versa.

Johnson teaches improving retention and dewatering properties of paper by adding .1-.15% of a binder of a cationic starch (a high molecular weight ionic polymer), an anionic polymer of acrylamide and a dispersed silica to the headbox of a papermaking machine (column 1, lines 15-16 and 41, column 2, lines 15-24, and column 3, lines 50-52). At Figures 3 and 4 Johnson teaches the use of all components within the range of the presently claimed amounts. The use of alum is shown to increase drainage and retention (shown in Figure 4 as decreased

Serial No. 07/540667                    -6-

Art Unit   133

turbidity).  The degree of substitution, i.e. ionicity, of the
acrylamide is taught by Johnson as being from 1 to 40% (column 2,
lines 5-15).

When Farrar is taken in light of Johnson, it would have been
obvious to one of ordinary skill in the art to add cationic
starch and alum in the claimed amounts to the anionic acrylamide
of Farrar to further improve the drainage and retention
properties.

The teachings not provided by Johnson in reference to the
above claims are the particle size of the acrylamide and that it
is cross-linked.  As noted above Farrar teaches a particle size
of less than 2 microns and that the acrylamide is cross-linked.

When Johnson is taken in view of Farrar, it would have been
obvious to one of ordinary skill in the art to utilize a cross-
linked acrylamide of particle size less than 2 microns, e.g. in
the claimed amounts, in the process of Johnson because Farrar
teaches that the addition of these particles to the papermaking
furnish improves retention and dewatering properties.  Further,
the skilled artisan would have found it obvious to use acrylamide
in this small particle range to increase the surface area, i.e.
reactivity, of the acrylamide relative to the amount used.
Rejection of the method claims necessarily precludes
patentability of the product by process claims.  Compare in re Thorpe, 227
USPQ 964 (CAFC 1985).

Serial No. 07/540667                                    -7-

Art Unit   133

Claims 6, 9, 31, and 34 are rejected under 35 U.S.C. § 103 as being unpatentable over Farrar in view of Johnson or vice versa as applied to claims immediately above, and further in view of Sinclair etal.

To further support the above noted teachings of a high molecular weight polymer of opposite charge to the microbead, it is noted that Sinclair teaches starches as the cationic polymer in a process to provide paper with improved properties.  Sinclair teaches that starch (polysaccharide) or another polymer can be used as either a cationic or anionic polymer and acrylamide can be selected in either ionicity such that the two polymers have opposite charges (see column 8, lines 24-44).

It would have been obvious to the skilled artisan to use either anionic or cationic starch (high molecular weight polymer) of opposite charge in the process of Farrar and Johnson because Sinclair teaches such as conventional in improving retention and dewatering properties.  Further, the selection being merely a matter of choice, the skilled artisan would have found it obvious to choose the additives based on economy and availability.  It is noted, as above, that rejections of the paper product claims necessarily follow from the rejection of the process claims.

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Langley etal teaches the addition of bentonite to improve

Serial No. 07/540667                                    -8-

Art Unit   133

drainage and retention (see especially Table 4).

    Wagberg etal teaches treating paper in a three-stage process
to improve retention properties.  Wagberg teaches a cationic
starch followed by an anionic polymer and a cationic polymer in
the amounts claimed in the instant application.  Wagberg also
teaches that either the anionic or the cationic polymer can be a
polymer of acrylamide (see entire document).

    Rushmere teaches anionic polyacrylamide as a drainage and
retention aid in papermaking.  Rushmere teaches that the
polyacrylamide has an anionicity of between 1 and 10%, column 4,
lines 34-36.

    Any inquiry concerning this communication should be directed
to Charles Friedman at telephone number (703) 308-0477.

RICHARD V. FISHER
SUPERVISORY PATENT EXAMINER
ART UNIT 136

11-16-90

Charles Friedman
November 15, 1990

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 540 667 | GROUP ART UNIT 133 | ATTACHMENT TO PAPER NUMBER 3 |
|---|---|---|---|---|
| NOTICE OF REFERENCES CITED | | APPLICANT(S) Honig etal | | |

### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| A | 4 9 2 5 5 3 0 | 5/90 | Sinclair etal. | 162 | 164.6 | 7-20-88 |
| B | 4 6 4 3 8 0 1 | 2/87 | Johnson | 162 | 164.6 | |
| C | 4 7 5 9 8 5 6 | -7/88 | Farrar etal. | 162 | 168.3 | |
| D | 4 7 5 3 7 1 0 | 6/88 | Langley etal. | 162 | 164.3 | |
| E | 4 8 2 4 5 2 3 | 4/89 | Wayberg etal. | 162 | 164.6 | |
| F | 4 7 9 8 6 5 3 | 1/89 | Rushmere | 162 | 168.3 | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | |
| M | | | | | | | | |
| N | | | | | | | | |
| O | | | | | | | | |
| P | | | | | | | | |
| Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER | DATE |
|---|---|
| *Charles H. Friend* | 11-15-90 |

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)



Docket No.: <u>31,043-01</u>

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

In re Application of:
Dan S. Honig
Elieth Harris

Serial No: 07/540,667          Group Art Unit: 133
Filed:  June 18, 1990
For:  Charged Organic Polymer          Examiner: C. Friedman
        Microbeads In Paper
        Making Process

Commissioner of Patents
  and Trademarks

Washington, D.C.  20231          March 25, 1991


<u>AMENDMENT</u>

In response to the Office Action mailed December 26, 1990, please amend the instant application as follows:


<u>In The Specification</u>:

On the title page, last two lines, cancel the words "(Attorney Docket No. 31043 filed" and substitute therefor the words --7/536,382, filed June 11, 1990--.

Page 12, line 1, cancel "(Attorney Docket 31320)" and substitute therefor --07/535,626, filed June 11, 1990--.

Page 20, line 14, after the word "is" insert the words --defined and used herein as that--.

Page 20, line 15, after the word "(QELS)" insert the words --as carried out on the polymer emulsion, microemulsion or dispersion--.


<u>Remarks</u>

The specification has been amended so as to clarify how the particle size of the polymeric microbeads used in the instant invention is measured in that the QELS is carried out on the polymer emulsion, microemulsion or dispersion rather than the dry polymer. This amendment is

- 1 -

not considered to be new matter in that it constitutes a clarification so as to prevent any misunderstanding rather than a completely new definition.  Entrance of the amendment is respectfully requested.

The Examiner has required restriction to one of the following inventions under 35 USC 121:

      I.   Claims 1-14 and 40 drawn to a method of making paper and classified in Class 162; Sublcass 168.3 and

      II.  Claims 15-25 and 41 drawn to a composition of matter and classified in Class 252; Subclass 351.

The inventions are distinct, each from the other, the Examiner continues, because Inventions I and II are related as process of making and product made and the inventions are distinct if either or both of the following can be shown: 1) that the process, as claimed, can be used to make another and materially different product or 2) that the product, as claimed, can be made by another and materially different process, citing M.P.E.P. 806.05(f).  In the instant case, the Examiner explains, the product, as claimed, can be made by a materially different process such as one that does not require papermaking, e.g. making cement.

Because the inventions are therefore distinct and have acquired a separate status in the art as shown by their different classification and because of their recognized divergent subject matter, restriction for examination purposes is indicated as proper by the Examiner.

This requirement for restriction is respectfully traversed.  It is respectfully submitted that the Examiner is in error with regard to the relationship of the

inventions in question. The inventions are not related as process of making and product made. The process of making of Groups I is a process of making paper whereas the products of Group II are used in the process of making paper. Thus, if anything, the inventions are related as product and process of using. The Group I process does not make the Group II compositions.

Furthermore, ex parte Coe, 1889 CD 191, and U.S. ex rel Steinmetz v Allen, 1904 CD 703, establish that a separation of classification is not determinative of the separateness of invention. Accordingly, withdrawal of the restriction requirement is earnestly solicited.

Applicants, however, hereby affirm the provisional election of Group I, i.e. Claims 1-14 and 40. Retention of the non-elected Claims 15-25 and 41 in the application for the purpose of filing a subsequent divisional application or appeal is respectfully requested.

It is understood that product-by-process Claims 26-39 and 42 will be examined with the invention represented by elected Group I.

The Title page of the instant specification has been amended so as to provide a specific reference to the parent application as required by the Examiner.

A new declaration is provided herewith identifying the parent application by its Serial Number and filing date as required by the Examiner.

Claims 1, 13, 26 and 38 have been rejected under 35 USC 103 as being unpatentable over Farrar et. al., the Examiner stating that Farrar et. al. teaches that adding to the paper-making stock a cross-linked anionic or cationic acrylamide of particle size less than 2 microns improves retention and dewatering properties of paper, citing col. 3,

- 3 -

lines 42-43; Col. 5, lines 7-14; col. 6, lines 62 and col. 9, line 52. Farrar et. al. also teaches, at columns 9 and 10, the Examiner continues, that the additive can be copolymerized with 0-95% of acrylamide and thus, it would have been obvious to one of ordinary skill in the art that the additive polymer can have 0-95% ionicity. At col. 14, line 58, Farrar et. al. teaches that 6 kg/ton of polymer are added to the paper i.e. in the range of polymer additive claimed, the Examiner concludes, and further, addition of the claimed amount of polymer is conventional to enhance drainage and retention properties.

This ground of rejection is respectfully traversed. The Farrar et. al. patent is representative of the prior art over which the instant process is a patentable improvement. Farrar et. al. disclose the use of sheared polymers as retention or dewatering aids in the production of paper. The sheared polymers are made by shearing polymers made by reverse phase or emulsion polymerization (col. 6, line 63), the particles having a size below about 2 microns. The Examiner has apparently taken the position that the disclosure of Farrar et. al. with regard to the particle size is such as to include that of Applicants' claims i.e. , < 750 nanometers if the particles are cross-linked and < 60 nanometers if they are water-insoluble but not cross-linked. This position is strenuously urged as erroneous in that the disclosure of Farrar et. al. regarding the polymer particle sizes is that representative of typical emulsion polymerization procedures. That is to say, normal macroemulsion polymerization procedures result in polymers having particle sizes above about 1 micron i.e. 1000 nanometers. This type of polymerization has been known for many years e.g. see U.S. Patent No. 3,979,348. However,

- 4 -

microemulsion polymerization technology is more recent and produces polymer particles having diameters below 1000 nanometers. It is these polymers to which the instant claims are directed and it is these polymers which have been shown by Applicants to be superior to those produced using conventional emulsion polymerization techniques such as taught by Farrar et. al. In this regard, the Examiner's attention is respectfully directed to Tables 25, 37 and 38 of the instant specification. As can be seen in Table 25, page 43, the use of an anionic microbead having a particle size of 1000-2000 nanometers (i.e. as in Farrar et. al.) results in Drainage values of 98.9 secs. and 103.6 secs. whereas the microbeads of the present invention having sizes of 200 nanometers and 130 nanometers result in Drainage values of 71.7 secs. and 72.2 secs., respectively. Similarly, in Table 37, page 53, the 100 nanometer particle diameter microbeads of the instant invention result in a Drainage value of 93.3 seconds whereas the 1000 nanometer particles of Farrar et. al. result in a Drainage value of 113.9 secs. which is even worse that a linear polymer which is not a microbead i.e. 98.7 secs. Similarly, on page 54, Table 38 makes a direct comparison of polymers having a particle size of 100 nanometers to those having a particle size of 1000 nanometers and in each instance, regardless of pH, the smaller particle polymers of the present invention surpass the larger particle polymers of Farrar et. al.

Thus, the unexpected results shown by the instant examples are respectfully submitted as representative of a patentable improvement over the cited Farrar et. al. reference. Reconsideration and withdrawal of this ground of rejection are therefore earnestly solicited.

Claims 1-5, 7, 8 10-14, 26-30, 32, 33, 35-40 and

- 5 -

42 have been rejected under 35 USC 103 as unpatentable over Farrar et. al. in view of Johnson et. al. or vice versa, the Examiner stating that Johnson et. al. teaches improving retention and dewatering of paper by adding 0.1-.15% of a binder of a cationic starch (a high molecular weight ionic polymer), an anionic polymer of acrylamide and a dispersed silica to the headbox of a papermaking machine, citing col. 1, lines 15-16 and 41; col. 2, lines 15-24 and col. 3, lines 50-52. At Figures 3 and 4, the Examiner continues, Johnson et. al. teaches the use of all components within the range of the presently claimed amounts. The use of alum is shown to increase drainage and retention (shown in Figure 4 as decreased turbidity), the Examiner explains, the degree of ionicity being 1-40%, col. 2, lines 5-15.

When Farrar et. al. is taken in light of Johnson et. al., the Examiner indicates that it would have been obvious to one of ordinary skill in the art to add cationic starch and alum in the claimed amounts to the anionic acrylamide of Farrar et. al. to further improve the drainage and retention.

The teachings not provided by Johnson et. al. are the particle size of the polymer and that it is cross-linked, the Examiner states, however, notes that Farrar et. al. teaches a particle size of less than 2 microns and that the acrylamide is cross-linked.

When Johnson et. al. is taken in view of Farrar et. al., the Examiner explains that it would have been obvious to one of ordinary skill in the art to utilize a cross-linked acrylamide of particle size less than 2 microns in the process of Johnson et. al. because Farrar et. al. teaches that the addition of these particles to the papermaking furnish improves retention and dewatering

- 6 -

properties. Further, the Examiner concludes, the skilled artisan would have found it obvious to use acrylamide in this small particle range to increase the surface area i.e. reactivity, of the acrylamide relative to the amount used. Rejection of the method claims necessarily precludes the patentability of the product-by-process claims, the Examiner concludes, citing in re Thorpe 227 USPQ964.

These grounds of rejection are also respectfully traversed. The arguments presented hereinabove with regard to Farrar et. al. apply equally to this rejection. The Examiner has admitted that Johnson et. al. fails to teach the particle size polymers employed in the instant claims and in view of the unexpected results of the smaller particle size polymers of Applicants vis-a-vis the larger particle size polymers of Farrar et. al., the use of cationic starch, anionic acrylamide polymer and dispersed silica of Johnson et. al., and their quantities, in the Farrar et. al. process still will not result in the process of the instant invention. The large particle size polymers of Farrar et. al. have been shown to be inferior and the inclusion of the additives of Johnson et. al. therewith will not overcome that inferiority.

Similarly, the use of the large particle size polymer of Farrar et. al. in the Johnson et. al. process will not anticipate Applicants' process because the resultant process will still result in the inferior drainage values shown by Applicants in Tables 25, 37 ad 38 of the instant specification, as discussed above. Accordingly, reconsideration and withdrawal of these grounds of rejection are respectfully urged as warranted.

Claim 6, 9, 31 and 32 have been rejected under 35 USC 103 as patentable over Farrar et. al. in view of Johnson et. al. or vice versa and further in view of Sinclair et.

- 7 -

al., the Examiner noting that Sinclair et. al. teaches starches as the cationic polymer in a process to provide paper with improved properties. Sinclair et. al. teaches that starch or another polymer can be used as either a cationic or anionic polymer and acrylamide can be selected in either ionicity such that the two polymers have opposite charges, the Examiner explains, and therefore it would have been obvious to the skilled artisan to use either anionic or cationic starch of opposite charge in the process of Farrar et. al. and Johnson et. al. because Sinclair et. al. teaches such as conventional in improving retention and dewatering properties. Further, the selection merely being a matter of choice, the artisan would have found it obvious to choose the additives based on economy and availability.

This ground of rejection is also respectfully traversed. The Sinclair et. al. reference fails to overcome the deficiencies of Farrar et. al. and Johnson et. al. discussed above. Sinclair et. al. does not teach, disclose or suggest the use of polymer particles having diameters of less than 750 nanometers and, as a result, the combination process would still be devoid of such polymers because those of Farrar et. al. are understood by those skilled in the art to be far greater than 1000 nanometers. In view of the unexpected results shown by the smaller particles, which are clearly far better than one skilled in the art would expect merely as a result of any increased surface area or reactivity, the reference combination is respectfully submitted as failing to teach, disclose or suggest the instant invention. Reconsideration of this ground of rejection is earnestly solicited.

The Langley et. al. Wagberg et. al. and Rushmere references, cited as pertinent to Applicants' disclosure, have been carefully considered but are not seen to

anticipate the invention represented by the instant claims. Since these references were not cited against the claims under consideration, further discussion thereof at this time is not deemed to be necessary.

In view of the above Remarks, this application is believed to be in condition for allowance and such action is earnestly requested at an early date.

Respectfully submitted,

Frank M. Van Riet
Attorney for Applicants
Registration# 19933

oc/
A-310431

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on _March 26, 1991_
            (Date of Deposit)

FRANK  M.  VAN  RIET
Name of ~~Applicant, Assignee, or~~
Registered Representative

Signature
3 - 26 - 91
Date of Signature

- 9 -

#6/4-2-91

[REV.4Apr89/MB1-1]

Docket No. 31,043-01

PATENT

MAIL ROOM
MAR 28 1991
TRADEMARK

### COMBINED DECLARATION AND POWER OF ATTORNEY
(Original,Design,Supplemental,Divisional,Continuation,CIP)

As the below named inventor, I hereby declare that:

#### TYPE OF DECLARATION

This declaration is of the following type:

    [  ] original
    [  ] design
    [  ] supplemental
    [  ] divisional
    [  ] continuation
    [ X ] continuation-in-part (CIP)

#### INVENTORSHIP IDENTIFICATION

My residence, post office address and citizenship are as stated below next to my name, I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural named are listed below) of the subject matter which is claimed for, for which a patent is sought on the invention entitled:

#### TITLE OF INVENTION

Charged Organic Polymer Microbeads in Paper-Making Process

#### SPECIFICATION IDENTIFICATION

the specification of which: (complete (a), (b), or (c))

    (a) [  ] is attached hereto.
    (b) [ X ] was filed on June 18, 1990    as
            [ X ]  Serial Number 07/540,667
            [   ]  Express Mail No., as Serial Number not
                   yet known
    (c) [   ] was described and claimed in PCT International
            Application No. _____ filed on
            _____ and as amended under PCT
            Article 19 on _____ (if any).

[REV.4Apr89/MB1-1]          -2-

ACKNOWLEDGEMENT OF REVIEW OF PAPERS AND DUTY OF CANDOR
    I hereby state that I have reviewed and understand the
contents of the above identified specification, including the
claims, as amended by any amendment referred to above.
    I acknowledge the duty to disclose information which is
material to the examination of this application in accordance
with Title 37 CFR 1.97.

PRIORITY CLAIM
    I hereby claim foreign priority benefits under Title 35,
United States Code, Section 119 of any foreign application(s) for
patent or inventor's certificate or of any PCT International
application(s) designating at least one country other than the
United States of America listed below and have also identified
below any foreign application(s) for patent or inventor's
certificate of any PCT International application(s) designating
at least one country other than the United States of America
filed by me on the same subject matter having a filing date
before that of the application(s) of which priority is claimed.
    (d) [ X ] no such applications have been filed.
    (e) [    ] such applications have been filed as follows.
Note: Where item (c) is entered above and the International
Application which designated the U.S. claimed priority check item
(e), enter the details below and make the priority claim.

Earliest Foreign Application(s), if any, filed within 12 months
    (6 months for Design) prior to this U.S. Application

| COUNTRY | APPLICATION NUMBER | DATE OF FILING (DAY,MONTH,YEAR) | PRIORITY CLAIMED 35 USC 119 |
|---------|-------------------|--------------------------------|------------------------------|
|         |                   |                                |                              |
|         |                   |                                |                              |
|         |                   |                                |                              |
|         |                   |                                |                              |

[REV.4Apr89/MB1-1]          -3-

All Foreign Application(s), if any, Filed More Than 12 Months.
(6 Months for Design) Prior to This U.S. Application

_____

_____

_____

POWER OF ATTORNEY

As a named inventor, I hereby appoint the following
attorney(s) and/or agent(s) to prosecute this application and
transact all business in the Patent and Trademark Office
connected therewith.

Frank M. Van Riet                    19933
        (Name)                           (Reg. No.)

Roger S. Benjamin                    27025
        (Name)                           (Reg. No.)

Michael J. Kelly                     27910
        (Name)                           (Reg. No.)

Steven H. Flynn                      29639

[ X ]   Attached as part of this declaration and power of
        attorney is the authorization of the above-named
        attorney(s) to accept and follow instructions from my
        representative(s).

-----------------------------------------------------------------

SEND CORRESPONDENCE AND TELEPHONE CALLS TO:
Frank M. Van Riet
American Cyanamid Company
1937 West Main Street
Stamford, CT  06904-0060
Telephone No. (203) 321-2614
-----------------------------------------------------------------

[REV.4Apr89/MB1-1]            -4-

## DECLARATION

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

## SIGNATURE(S)

Full name of SOLE OR FIRST INVENTOR Dan S. Honig

Inventor's signature _Dan S. Honig_
Date _3/26/91_
Country of Citizenship United States
Residence 12 Conrad Road, New Canaan, CT 06840
Post Office Address Same

Full name of SECOND JOINT INVENTOR, if any Elieth Harris

Inventor's signature _Elieth Harris_
Date _3 26 91_
Country of Citizenship Antigua
Residence 484 Colorado Avenue, Bridgeport, CT 06605
Post Office Address Same

Full name of THIRD JOINT INVENTOR, if any _____

Inventor's signature _____
Date _____
Country of Citizenship _____
Residence _____
Post Office Address _____

[REV.4Apr89/MB1-1]                    -5-

THE FOLLOWING 'ADDED PAGES' FORM A PART OF THIS DECLARATION

[ X ] Signature for fourth and subsequent joint inventors on
      ADDED PAGES.
[   ] ADDED PAGES TO COMBINED DECLARATION, POWER OF ATTORNEY
      for divisional, continuation, or continuation-in-part (CIP)
      application.
      [ X ] Number of ADDED PAGES: ___1___
      [   ] Declaration ends with this page.

[REV.4Apr89/MB1-1]          -7-

## ADDED PAGE TO COMBINED DECLARATION AND POWER OF ATTORNEY FOR DIVISIONAL, CONTINUATION OR CIP APPLICATION

(complete this only if this is a divisional,
continuation or CIP application)

### CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S) UNDER 35 U.S.C. 120

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) or PCT International application(s) designating the United States of America that is/are listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in that/those prior application(s) in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application(s) and the national or PCT International filing date of this application.

| PRIOR U.S. APPLICATIONS OR PCT INTERNATIONAL APPLICATIONS DESIGNATING THE U.S. FOR BENEFIT UNDER 35 USC 120 | | | | | |
|---|---|---|---|---|---|
| U.S. APPLICATIONS | | | STATUS (check one) | | |
| U.S. APPLICATIONS | U.S. FILING DATE | | patented | pending | abandoned |
| 1. Serial Number 07/536,382 | June 11, 1990 | | | | X |
| 2.    / | | | | | |
| 3.    / | | | | | |
| PCT APPLICATIONS DESIGNATING U.S. | | | | | |
| PCT APPLN. NO. | PCT FILING DATE | U.S. SERIAL NOS ASSIGNED (if any) | | | |
| 4. | | / | | | |
| 5. | | / | | | |
| 6. | | / | | | |



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/540,667 | 06/18/90 | HONIG | D | 31-043-01 |

| | EXAMINER |
|---|---|
| | FRIEDMAN, C |

FRANK M. VAN RIET
C/O AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

| ART UNIT | PAPER NUMBER |
|---|---|
| 133 | 7 |

DATE MAILED: 06/28/91

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined ☑ Responsive to communication filed on **3-28-91 (Amdt)** ☑ This action is made final.

A shortened statutory period for response to this action is set to expire **3** month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

## Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☑ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form  PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

## Part II  SUMMARY OF ACTION

1. ☑ Claims **1-42** _____ are pending in the application.

   Of the above, claims **15-25 and 41** _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims **1-14, 26-40, and 42** _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appppears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

Serial No. 07/540667                                    -2-

Art Unit   133

Restriction to one of the following inventions is required
under 35 U.S.C. § 121:

I.    Claims 1-14 and 40, drawn to a method of making paper,
classified in Class 162, subclass 168.3.

II.   Claims 15-25 and 41, drawn to a composition of matter,
i.e. microbeads, classified in Class 252, subclass 351.

The inventions are distinct, each from the other because of
the following reasons:

Inventions Group II and Group I are related as product and
process of use.  The inventions can be shown to be distinct if
either or both of the following can be shown: (1) the process for
using the product as claimed can be practiced with another
materially different product or (2) the product as claimed can be
used in a materially different process of using that product
(M.P.E.P. § 806.05(h)).  In the instant case the product as
claimed can be used in a materially different process such as one
that does not require papermaking, e.g. making cement.

Because these inventions are distinct for the reasons given
above and have acquired a separate status in the art as shown by
their different classification and because of their recognized
divergent subject matter restriction for examination purposes as
indicated is proper.

It is noted that the applicant has elected to prosecute the
invention of Group I, along with which product by process claims

Serial No. 07/540667                          -3-

Art Unit   133

26-39 and 42 are examinable.

Applicant correctly points out that different
classifications do not alone establish separate and restrictable
inventions; however, the different classifications demonstrate
the burden on the examiner of searching the composition along
with the method of using it.

Claims 12 and 37 are rejected under 35 U.S.C. § 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention.

There is no antecedent basis for "species" as recited in
claim 12.

Applicant's argument that the references cited in the
previous office action do not teach the critical limitation of
the particle size of the microbead is noted. Accordingly, the 35
U.S.C. § 103 rejections in the previous action have been
reconsidered and new rejections formulated.

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which

Serial No. 07/540667                    -4-

Art Unit   133

   the invention was made.

   Subject matter developed by another person, which qualifies
as prior art only under subsection (f) or (g) of section 102
of this title, shall not preclude patentability of this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

   This application currently names joint inventors.  In
considering patentability of the claims under 35 U.S.C. § 103,
the examiner presumes that the subject matter of the various
claims was commonly owned at the time any inventions covered
therein were made absent any evidence to the contrary.  Applicant
is advised of the obligation under 37 C.F.R. § 1.56 to point out
the inventor and invention dates of each claim that was not
commonly owned at the time a later invention was made in order
for the examiner to consider the applicability of potential 35
U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

   Claims 1-3, 5, 7, 8, 10-14, 26-28, 30, 32, 33, 35-40, and 42
are rejected under 35 U.S.C. § 103 as being unpatentable over
Probst etal either alone or in view of Johnson etal.

   Probst teaches a cationic polymer for addition to paper as a
sizing agent.  He teaches that the polymers, i.e. microbeads are
20-150 nm (column 5, lines 2-6).  Probst does not teach if  the
microbead is cross-linked; however, it would have been an obvious
matter of choice based on the availability, cost, and
effectiveness of cross-linked versus non-cross-linked microbeads.
At column 8, lines 58-62 Probst teaches mixing a solution of
starch (a cationic polymer) with the sizing agent.  The addition
of the claimed amounts of microbeads and starch (cationic
polymer) is conventional to enhance drainage and retention
properties, and it would have been obvious for one to utilize the

Serial No. 07/540667                              -5-

Art Unit    133

claimed amounts to achieve such.  Finally, it would have been

obvious to add a size or strength additive to the paper furnish

to increase the desirability of the final product.

   To further support the above discussion, the teachings of

Johnson are considered.  Johnson teaches improving retention and

dewatering properties of paper by adding .1-.15% of a binder of a

cationic starch (a high molecular weight ionic polymer), an

anionic polymer of acrylamide and a dispersed silica to the

headbox of a papermaking machine (column 1, lines 15-16 and 41,

column 2, lines 15-24,and column 3, lines 50-52).  At Figures 3

and 4 Johnson teaches the use of all components within the range

of the presently claimed amounts.  The use of alum is shown to

increase drainage and retention (shown in Figure 4 as decreased

turbidity).  It would have been obvious to one of ordinary skill

in the art to add cationic starch and alum in the claimed amounts

to the microbeads of Probst to further improve the drainage and

retention properties because Johnson teaches that such improves

drainage.

   Rejection of the method claims necessarily precludes

patentability of the product by process claims.  Compare in re

Thorpe, 227 USPQ 964 (CAFC 1985).

   Claims 4, 6, 9, 29, 31, and 34 are rejected under 35 U.S.C.

§ 103 as being unpatentable over Probst etal either alone or in

view of Johnson as applied to claims above, and further in view

Serial No. 07/540667                              -6-

Art Unit   133

of Sinclair etal.

To further support the above noted teachings of a high molecular weight polymer, it is noted that Sinclair teaches starches as the cationic polymer in a process to provide paper with improved properties.  Sinclair teaches that starch (polysaccharide) or another polymer can be used as either a cationic or anionic polymer and the acrylamide, i.e. microbead, can be selected in either ionicity such that the two polymers have opposite charges (see column 8, lines 24-44).

It would have been obvious to the skilled artisan to use either anionic or cationic starch (high molecular weight polymer) of opposite charge in the process of Probst either alone or taken with Johnson because Sinclair teaches such as conventional in improving retention and dewatering properties.  Further, the selection being merely a matter of choice, the skilled artisan would have found it obvious to choose the additives based on economy and availability.  It is noted, as above, that rejections of the paper product claims necessarily follow from the rejection of the process claims.

Any inquiry concerning this communication should be directed to Charles Friedman at telephone number (703) 308-0477.

eH f
Charles K. Friedman

June 11, 1991

R.w. Fisher
RICHARD V. FISHER
SUPERVISORY PATENT EXAMINER
ART UNIT 133
6-26-91

AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PTO-892<br>(REV. 3-78) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | SERIAL NO.<br>540667 | GROUP ART UNIT<br>133 | ATTACHMENT<br>TO<br>PAPER<br>NUMBER | 7 |
|---|---|---|---|---|---|
| | **NOTICE OF REFERENCES CITED** | APPLICANT(S) | | | |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4 6 5 9 4 3 1 | 4/87 | Probst et al. | 162 | 168.2 | |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS-DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER<br>Charles K. Friedman | DATE<br>6-11-91 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)



Docket No:   31,043-

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
DAN S. HONIG
ELIETH HARRIS

Serial No: 07/540,667                    Group Art Unit: 133
Filed: June 18, 1990
For: CHARGED ORGANIC                     Examiner:  C. Friedman
     POLYMER MICROBEADS
     IN PAPER-MAKING PROCESS

Commissioner of Patents
 and Trademarks

Washington, D.C.  20231

## AMENDMENT

In response to the Office Action of June 26, 1991, please amend the above-identified application as follows:

### In The Claims:

Claim 12, line 1, please cancel the numeral "10" and substitute therefore the numeral --11--.

Please cancel Claims 13 and 18.

Please rewrite Claim 1 as follows:

--1. (Amended)    A  method  of  making  paper  which comprises adding to an aqueous paper furnish from about 0.05 to about 20 lbs./ton, based on the dry weight of paper furnish  solids,  of  an  ionic,  organic,  cross-linked, polymeric microbead, the microbead being less than about 750 nanometers in diameter [if cross-linked and less than 60 nanometers  in  diameter  of  non-cross-linked  and water-insoluble] and the ionicity of said microbead being at least 1%, but at least 5%, if [cross-linked] anionic and used alone--.

### Remarks

The Examiner has again required restriction to one of the following inventions under 35 USC 121:

- 1 -

I.  Claims 1-14 and 40 drawn to a method of
making paper and classified in Class 162;
Subclass 168.3 and

II. Claims 15-25 and 41 drawn to a composition of
matter and classified in Class 252; Subclass
351.

The inventions are distinct, each from the other,
the Examiner continues, because Inventions II and I are
related as product and process of use and the inventions are
distinct if either or both of the following can be shown: 1)
that the process for using the product, as claimed, can be
practiced with another and materially different product or
2) that the product, as claimed, can be used in a materially
different process of using that product, citing M.P.E.P.
806.05(h). In the instant case, the Examiner explains, the
product, as claimed, can be used in a materially different
process such as one that does not require papermaking, e.g.
making cement.

Because the inventions are therefore distinct and
have acquired a separate status in the art as shown by their
different classification and because of their recognized
divergent subject matter, restriction for examination
purposes is indicated as proper by the Examiner.

This requirement for restriction is again
respectfully traversed.

This requirement is respectfully submitted as
unfounded and based on speculation and conjecture. The
Examiner has cited no authority or documentation in support
of his statement that the instantly claimed products can be
used in making cement. This concept is not taught in
Applicants' disclosure or in any reference cited by the

Examiner and therefore the requirement is clearly erroneous. Withdrawal thereof is earnestly solicited.

Applicants, however, again affirm the previous provisional election of Group I, i.e. Claims 1-14 and 40 and respectfully request retention of the non-elected claims i.e. Claims 15-25 and 41, in the application for purposes of filing a subsequent divisional application or appeal.

Claims 12 and 37 have been rejected under 35 USC 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicants regard as the invention in that there is no antecedent basis for the word "species" as recited in Claim 12.

This ground of rejection has been overcome by the instant amendment whereby Claim 12 has been amended to render it dependent upon Claim 11 rather than Claim 10, as obviously intended. The error is sincerely regretted.

Claims 1-3,5,7,8, 10-14, 26-28, 30, 32,33, 35-40 and 42 have been rejected under 35 USC 103 as being unpatentable over Probst etal, alone, or in view of Johnson the Examiner stating that Probst teaches a cationic polymer for addition to paper as a sizing agent and that the polymers i.e. microbeads, are 20-150 nm, citing col. 5, lines 2-6. Probst does not teach if the microbead is cross-linked, the Examiner continues, however, it would have been an obvious matter of choice based on the availability, cost and effectiveness of cross-linked versus non-cross-linked microbeads. At col. 8, lines 58-62, the Examiner explains, Probst teaches mixing a solution of starch (a cationic polymer) with the sizing agent. The addition of the claimed amounts of microbeads and starch (cationic polymer) is conventional to enhance drainage and

- 3 -

retention properties, the Examiner argues, and therefore it would have been obvious for one to utilize the claimed amounts to achieve such and to add a size or strength additive to the paper furnish to increase the desirability of the final product.

To further support the above discussion, the Examiner refers to the teaching of Johnson which, the Examiner explains, teaches improving retention and dewatering properties of paper by adding 0.1-0.15% of a binder of a cationic starch (a high molecular weight ionic polymer), an anionic polymer of acrylamide and a dispersed silica to the headbox of a paper-making machine, citing col. 1, lines 15-16 and 41; col. 2, lines 15-24 and col. 3, lines 50-52. At Figures 3 and 4, the Examiner points out, Johnson teaches the use of all components within the range of the presently claimed amounts, while alum is shown to increase drainage and retention (shown, the Examiner contends, in Figure 4 as decreased turbidity). Thus, the Examiner concludes, it would have been obvious to one of ordinary skill in the art to add cationic starch and alum in the claimed amounts to the microbeads of Probst to further improve drainage and retention properties because Johnson teaches that such improves drainage.

Rejection of the method claims necessarily precludes patentability of the product-by-process claims, the Examiner explains, citing in re Thorpe 227 USPQ 964.

This ground of rejection is respectfully traversed. It is strenuously urged that Probst does not teach, disclose or suggest the instant invention especially in view of the amendment made to Claim 1 herein. Probst is directed to a sizing agent comprising an emulsion of a copolymer of 0-90% of (meth)acrylonitrile, 5-95% of styrene

- 4 -