Serial No. 535,626                    -2-

Art Unit  155

15.

    Restriction to one of the following inventions is required under 35 U.S.C. § 121:

    I.  Claims 1 to 13, drawn to polymers, are classified in Class 526, subclass 264.

    II.  Claims 14 to 22, drawn to process, are classified in Class 522, subclass 184.

    Inventions I and II are related as process of making and product made. The inventions are distinct if either or both of the following can be shown: (1) that the process as claimed can be used to make other and materially different product or (2) that the product as claimed can be made by another and materially different process (M.P.E.P. § 806.05(f)). In the instant case the process as claimed can be used to make a materially different product such as polymer dispersion stabilizer.

    Because these inventions are distinct for the reasons given above and have acquired a separate status in the art as shown by their different classification, restriction for examination purposes as indicated is proper.

    During a telephone conversation with Mr. Frank M. Van Riet on July 30, 1990 a provisional election was made with traverse to prosecute the invention of I, claims 1 to 13. Affirmation of this election must be made by applicant in responding to this Office action. Claims 14 to 22 are withdrawn from further

Serial No. 535,626 -3-

Art Unit   155

consideration by the Examiner, 37 C.F.R. § 1.142(b), as being drawn to a non-elected invention.

16.  The following is a quotation of the first paragraph of 35 U.S.C. § 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification is objected to under 35 U.S.C. § 112, first paragraph, as failing to provide an adequate written description of the invention.

Claim 5 is rejected under 35 U.S.C. § 112, first paragraph, for the reasons set forth in the objection to the specification.

This claim contains the term "aldehydes" which is generic and the terms "acrolein" and "glyoxal" which are species.  It is suggested to delete the term "aldehydes", since all the other compounds are species.

Claim 10 is rejected under 35 U.S.C. § 112, first paragraph, for the reasons set forth in the objection to the specification.

Does this claim involve a cationic or an anionic monomer? The compounds listed contain anionic organic monomers.

Claims 8 and 12 are rejected under 35 U.S.C. § 112, first paragraph, for the reasons set forth in the objection to the specification.

Serial No. 535,626                                    -4-

Art Unit   155


These two claims involve non-ionic organic monomers. How can they be expected to produce polymers with ionicity of at least about 5.0%?

17.

Claims 1 to 13 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The term "ionicity" is not defined, making the claims vague and indefinite. When "percentage" is mentioned, does it mean "percentage by weight based on the total polymer or on the ionizable monomer"?

18.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. § 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless --

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Serial No. 535,626                                          -5-

Art Unit   155

> Patentability shall not be negatived by the manner in which
> the invention was made.
>
> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

Claims 1 to 4, 7 to 10, and 12 to 13 are rejected under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over Durand et al.

In Example 1, Durand et al. disclosed anionic organic polymeric microparticles by polymerizing sodium acrylate (or acrylic acid plus sodium hydroxide) and acrylamide in the presence of poly-oxyethylene sorbitol hexaoleate and sorbitan sesquioleate. Since oleate contains a double bond, it is reasonable to expect these oleates functioning to some degree as a cross-linking agent in addition to being a surfactant. Example 2 reported the viscosity of the acrylamide-sodium acrylate in aqueous solution to be 1.30 $mm^2/s$. Line 67 in column 3 mentioned that particles' radius was of the order of 20-40 nanometers (or 0.02-0.04 microns). Since 20.7g of acrylic acid was used to produce 82.0g of the copolymer (i.e. 61.3g acrylamide plus 20.7g acrylic acid), the weight percentage of acrylate ion in the copolymer was about 25%.

19.

Claims 1 to 5, 7 to 9, and 12 are rejected under 35 U.S.C.

Serial No. 535,626  -6-
Art Unit  155

§ 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over Makhlouf et al.

In the abstract, Makhlouf et al. disclosed a composition comprising cross-linked organic polymeric micro particles having particle sizes of from 0.1 to 10 microns. At least one monoethylenically unsaturated monomer and a cross-linking agent were used.

From line 64 in column 2 to line 6 in column 3, the cross-linking agent was disclosed to be an epoxy-group-containing compound like glycidyl acrylate or glycidyl methacrylate.

From lines 29 to 63 in column 2, the monoethylenically unsaturated monomers were disclosed to include acrylic acid, methacrylic acid, ethacrylic acid, vinyl acetate, and others.

20.

Claims 1 to 4, 7, 9 to 11, and 13 are rejected under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over Silver.

In the abstract, Silver disclosed acrylate copolymer microspheres. At least one alkyl acrylate ester and one ionic monomer or maleic anhydride were used. From line 1 to line 40 in column 3, ionic monomers on the list included both anionic monomer and cationic monomers.

The lower limit of these microspheres was one micron which was very close to (or within experimental error of) the claimed

Serial No. 535,626 -7-

Art Unit   155

particle size of 0.75 micron.

21.

Claim 5 is rejected under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over Leong et al.

From lines 8 to 10 in the left column on page 2270, Leong et al. disclosed cross-linked polyacrylamide lattices or microgels which were prepared by using a mixture of acrylamide and methylene bisacrylamide.

The sizes of the inverse lattices were disclosed in the abstract to be less than 500 Å in diameter.

*wcc*
W.C. Cheng:jp
August 09, 1990

*Joseph L. Schofer*

JOSEPH L. SCHOFER
SUPERVISORY PATENT EXAMINER
ART UNIT 155

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/535626 | GROUP ART UNIT 155 | ATTACHMENT TO PAPER NUMBER |
|---|---|---|---|---|
| NOTICE OF REFERENCES CITED | | APPLICANT(S) R. G. Ryles, D. S. Honig, E. W. Harris, and R. E. Neff | | |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4681912 | 7-21-87 | Durand et al. | 524 | 827 | |
| | B | 4147688 | 4-3-79 | Makhlouf et al. | 526 | 273 | |
| | C | 3691140 | 9-12-72 | Silver | 524 | 815 | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG / PP. SPEC. |
|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | |
| | M | | | | | | | |
| | N | | | | | | | |
| | O | | | | | | | |
| | P | | | | | | | |
| | Q | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| R | Y. S. Leong and F. Candau, Inverse Microemulsion Polymerization, Journal of Physical Chemistry 86, 2269, 1982. |
|---|---|
| S | |
| T | |
| U | |

| EXAMINER CHENG, W. C. | DATE 8-6-90 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

/5C

RECEIVED

G8-155

[REV. Apr89/MB11-2]

JAN 2 2 1991

Docket No. **31,320**

PATENT

GROUP 150

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:     Date: January 7, 1991
RODERICK GLYN RYLES
DAN S. HONIG                              #3
ELIETH W. HARRIS
ROGER E. NEFF

Serial No.: 07/535,626
Filed: February 12, 1990          Group No. 155
For: CROSS-LINKED ANIONIC AND      Examiner: W. Cheng
     AMPHOTHERIC POLYMERIC MICRO-
     PARTICLES

Commissioner of Patents and Trademarks
Washington, D. C. 20231

PETITION FOR EXTENSION OF TIME (37 CFR 1.36(a))

1. This is a petition for an extension of the time for a total period of **2** month(s) to respond to the Office Letter mailed on **August 16, 1990** for **filing an amendment**.

2. A response in connection with the matter for which this extension is requested:

   [ X ] is filed herewith
   [   ] has been filed
         (complete the following if applicable)
   [   ] the response is the filing of a continuation application having an express abandonment conditioned on the granting of a filing date to the continuing application.

---

CERTIFICATE OF MAILING [37 CFR 1.8(a)]

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Date: _____     _____
                          (Signature of person mailing paper)

[REV.4Apr89/MB11-2]              -2-

3.  Calculation of extension fee (37 CFR 1.17(a)-(d)):
    [   ] One Month.    Fee in the amount of $100.00
    [ X ] Two Months.   Fee in the amount of $300.00
    [   ] Three Months. Fee in the amount of $730.00
    [   ] Four Months.  Fee in the amount of $1,150.00
                                            FEE $ 300.00

If an additional extension of time is required, please consider this a petition therefor.

    (check and complete the next item, if applicable)
    [   ] An extension for ____ months has already been secured
          and the fee paid therefor of $_____ is deducted
          from the total fee due for the total months of
          extension now requested.

          Extension fee due with this request $ 300.00

4.  FEE PAYMENT
    [ X ] Charge fee to Account No. 01-1300 and this is a
          request to charge for any additional extension and/or
          fee required or credit for any excess fee paid. A
          duplicate of this petition is attached.

                                    _____
                                    (Signature of Attorney)

Reg. No. 19933               Frank M. Van Riet
                             (Type name of Attorney)

Tel. No. (203) 321-2614      American Cyanamid Company
                             1937 West Main Street
                             P.O. Box 60
                             Stamford, CT 06904-0060

RECEIVED
JAN 2 2 1991
GROUP 150

Docket No.: 31,320

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Serial No.:   07/535,626             Group Art Unit: 155
Filed: June 11, 1990
For:  CROSS-LINKED ANIONIC          Examiner: W. Cheng
      AND AMPHOTERIC POLYMERIC
      MICROPARTICLES

Commissioner of Patents
  and Trademarks

Washington, D.C.  20231              January 4, 1991

## Amendment

In response to the Office Action of August 16, 1990, please amend the instant application as follows:

### In the Specification

Page 5, lines 14 and 15, cancel the words "Attorney Docket No. 31,043), filed concurrently hereiwth" and substitute therefor the words --07/536,382 filed June 11, 1990, now abandoned and refiled as Serial No. 07/540,667, filed June 18, 1990 as a continuation-in-part--.

Page 5, line 24, cancel the term "5%" and substitute therefor --5 mole percent--.

Page 10, line 9, please correct the spelling of "azobisisobutyronitrile".

Page 11, line 16, cancel the word "initialed" and substitute therefor the word --initiated--.

Page 18, line 8, cancel the word "micorbead" and substitute therefor the word --microbead--.

### In the Claims:

Please rewrite Claim 1 as follows:

- 1 -

--1. (Amended)  A composition comprising cross-linked anionic or amphoteric polymeric microparticles <u>derived solely from water-soluble monomers</u>, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1. mPa.s, [and] a cross-linking agent content of above about 4 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about [5%] <u>5 mole percent</u>--.

Claim 5, line 6, cancel the word "aldehydes".

Claim 10, line 2, cancel the word "cationic" and substitute therefor the word --anionic--.

### Remarks

The Examiner has required restriction to one of the following inventions under 35 USC 121:

Group I, claims 1-13, drawn to polymers and classified in Class 526; Subclass 264.

Group II, Claims 14-22 drawn to a process and classified in Class 522; Subclass 184.

Inventions I and II are related as process of making and product made, the Examiner explains, and are distinct if either or both of the following can be shown:  (1) that the process, as claimed, can be used to make another and materially different product or (2) that the product, as claimed, can be made by another and materially different process.  In the instant case, the Examiner contends, the process, as claimed, can be used to make a materially different product such as polymer dispersion stabilizer.

Because the Inventions are therefore distinct, and have acquired a separate status in the art as shown by their different