classification, the restriction for examination purposes has been indicated as proper.

The requirement for restriction is strenuously urged as improper. Contrary to the Examiner's contention, it is not seen how the process of Invention II can be used to make a materially different product than represented by Invention I in that the process, of necessity, must make a polymer and the polymer, of necessity, must be that of Invention I. The fact that the polymer may be a polymer dispersion stabilizer is irrelevant. It will still be the polymer represented by Claims 1-13 and thus will not be a materially different product.

Additionally, ex parte Coe 1889 CD 191 and U.S. ex rel. Steinmetz v. Allen 1904 CD 703 clearly establish that a separation of classification is not determinative of the separateness of invention. Reconsideration of the requirement for restriction is therefore earnestly solicited.

In order to comply with the requirement, however, Applicants hereby acknowledge their previous telephonic election of Invention I i.e. Claims. 1-13. Retention of non-elected Claims 14-22, withdrawn from further consideration, in the application for the purpose of filing a subsequent divisional application or appeal is respectfully requested.

The specification has been objected to under 35 USC 112, first paragraph, as failing to provide an adequate written description of the invention.

This objection is not understood in that the Examiner has not expressed any reasons why the specification is insufficient. Applicants have carefully considered the specification and find no reason why it does not contain such full, clear, concise and exact terms as to enable any person

- 3 -

skilled in the art to which it pertains to make and use the same. Clarification of this objection is respectfully requested.

Claim 5 has been rejected under 35 USC 112, first paragraph, the Examiner stating that the claim contains the term "aldehydes" which is generic to the terms "acrolein" and "glyoxal" which are species.

This rejection has been overcome by the instant amendment, as suggested by the Examiner, by cancellation of the term "aldehydes", which compounds, however, are still clearly included in the generic claims as a possible cross-linking agent.

Claim 10 has been rejected under 35 USC 112, first paragraph, the Examiner questioning whether the claim involves a cationic or an anionic monomer, the compounds listed being anionic.

This ground of rejection has been overcome by the instant amendment in that the term "cationic" has been replaced by the term --anionic--, as obviously intended. The error is regretted.

Claims 8 and 12 have also been rejected under 35 USC 112, first paragraph, in that they involve non-ionic monomers, the Examiner questioning how they can be expected to produce polymers with an ionicity of at least about 5 mole percent.

This ground of rejection is respectfully traversed. All that is required by Claims 8 and 12 is that a non-ionic monomer be present in the final polymer composition. Since Claims 8 and 12 are dependent upon Claim 1 and Claim 1 requires that the polymer composition have an ionicity of at least about 5 mole percent, it is believed to be clear that the polymer must also be additionally composed of either anionic or anionic and cationic monomer(s). Thus, Claims 8 and 12 cover anionic or

- 4 -

amphoteric polymer compositions which are also produced from a non-ionic monomer, e.g. acrylamide, see Example 1 vis-a-vis Example 3. Reconsideration of this rejection is earnestly solicited.

Claims 1-13 have been rejected under 35 USC 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicants regard as the invention, the Examiner stating that the term "ionicity" is not defined, thus making the claims vague and indefinite since when "percentage" is mentioned, there is no designation of the basis therefor.

This ground of rejection has been overcome by the instant amendment whereby the ionicity of the polymer composition, both in the specification at page 5 and the claims, has been indicated as a "mole percentage". Basis for this limitation can be found in Table I, page 13, and Table III, page 17, see, for example, Example 25. Withdrawal of this ground of rejection is respectfully requested.

Claims 1-4, 7-10, 12 and 13 have been rejected under 35 USC 102(b) as anticipated by or, in the alternative, under 35 USC 103, as obvious over, Durand etal, the Examiner stating that Durand etal, in Example 1, discloses anionic, organic, polymeric microparticles by polymerizing sodium acrylate and acrylamide in the presence of polyoxyethylene sorbitol hexaoleate and sorbitan sesquioleate. Since the oleate contains a double bond, the Examiner argues that it is reasonable to expect the oleate to function to some degree as a cross-linking agent in addition to being a surfactant. Specifically, the Examiner continues, Example 2 reports the viscosity of the polymer to be 1.30 $mm^2/s$ while col. 3, line 67 mentions that particles of a radius of 20-40 nanometers result. Since 20.7g of acrylic acid was used to

produce 82.0g of copolymer, the Examiner indicates that the weight percent of acrylate ion was about 25%.

This ground of rejection is respectfully traversed. The Durand etal, reference has been carefully considered but is not seen to teach, disclose or suggest the instant invention. Durand etal fail to indicate the incorporation of a cross-linking agent into the polymer produced therein. Only sodium acrylate and acrylamide are used. The Examiner apparently recognizes the deficiency of Durand etal in that he points out that the oleate surfactants of Durand etal contain an unsaturated group and thus would reasonably be expected to function as a cross-linker. This assumption is erroneous in that the oleates of Durand etal are monounsaturated and if any reaction thereof with the acrylamide and/or acrylate were to occur it would occur linearly because a cross-linking agent must contain <u>two</u> functional groups to act as such, see page 7, lines 11-26 of the instant specification. Thus, the particulate polymer compositions produced by Durand etal clearly do not anticipate the instant claims in the sense of 35 USC 102.

Durand etal also fails to render the instant invention obvious in that the particles of Durand etal clearly would not function as do the instant compositions. In this regard, the Examiner's attention is respectfully directed to Table II of the instant specification. As can be seen, Example 7 is representative of a polymer produced in the absence of cross-linking agent i.e. it is linear, see page 16, line 2, as is that of Durand etal. The cross-linked polymer compositions, while beneficial, are clearly outclassed by the Applicants' compositions as represented by Examples 8-19. It is Applicants' position that it would not be expected from a perusal of the Durand etal application that the use of a cross-linking agent in

- 6 -

the preparation of the instant compositions would result in compositions which function in a manner unexpectedly superior to those produced in the absence of a cross-linking agent. Reconsideration of this ground of rejection is earnestly solicited.

Claims 1-5, 7-9 and 12 have been rejected under 35 USC 102(b) as anticipated by, or, in the alternative, under 35 USC 103, as obvious over, Maklhouf etal, the Examiner stating that Maklhouf etal discloses a composition comprising cross-linked, organic, polymeric microparticles having particle sizes of from 0.1-10 microns, at least one monomethylenically unsaturated monomer and a cross-linking agent being used. The cross-linking agent can be an epoxy-group containing compound like glycidyl methacrylate, the Examiner continues, and the unsaturated monomers include acrylic acid.

This ground of rejection has been overcome the instant amendment whereby Claim 1 has been rewritten to include the limitation that the polymers hereof <u>are produced solely from water-soluble monomers</u>. Basis for this limitation can be found in the specification at page 3, line 1 et seq. and all the Examples wherein, it can be seen, only water-soluble monomers are disclosed. The polymers of Maklhouf etal contain only 0.5-15% of water-soluble monomer, the remaining 70-99% being water-insoluble monomer, see col 2, linear 41-63. Furthermore, although Maklhouf etal disclose a particle diameter range which overlaps the maximum particle size diameter of Applicants, it is strenuously urged that Maklhouf etal do not produce particles where the number average particle size is only below 0.75 microns. The compositions of Maklhouf etal are particles of all diameters from 0.1-10 microns as is recognized in the art where this type of dispersion polymerization is used in the polymer production. All

- 7 -

of Applicants' particles fall within the claimed range whereas only some of the composition of Maklhouf etal fall within said range.

Furthermore, as discussed above, the compositions of the instant invention have been shown to be unexpectedly superior to closely related compositions and thus, are clearly unobvious over the teachings of Maklhouf etal.

Claims 1-4,7, 9-11 and 13 have also been rejected under 35 USC 102(b), as anticipated by, or, in the alternative, under 35 USC 103, as obvious over, Silver, the Examiner stating that Silver discloses acrylate copolymer microspheres of at least one alkyl acrylate ester and one ionic monomer or maleic anhydride. Ionic monomers listed include both anionics and cationics, the Examiner continues, the lower limit of the particle size being one micron which is very close to, or within experimental error, of the claimed 0.75 micron maximum.

This ground of rejection has also been overcome by the instant amendment whereby Claim 1 has been limited to polymer compositions produced solely from water-soluble monomers. The arguments applied to Maklhouf etal above also apply to Silver which also fails to teach the use of water-soluble monomers alone and produces polymer particles of a range too large to fall within those claimed herein, a 25% differential in size being considered more than within experimental error. Silver, in fact, indicates that a smaller particle size is undesirable, see col 4, lines 23-27. From 90-99.5% of the Silver compositions are made from water-insoluble monomers, see col 1, lines 45-52. Additionally, no cross-linking agent is employed and no suggestion can be found that the unexpected results, shown in Table II hereof, can be achieved. Accordingly, reconsideration of this ground of rejection is also strenuously urged.

- 8 -

Claim 5 has been rejected under 35 USC 102(b), as anticipated by, or, in the alternative, under 35 USC 103, as obvious over, Leong etal, the Examiner stating that Leong etal disclose cross-linked polyacrylamide latices or microgels which are prepared using a mixture of acrylamide and ethylene bisacrylamide, the sizes of the latices being less than 500A in diameter.

This ground of rejection is also respectfully traversed. Leong etal is acknowledged in Applicants' specification as prior art over which the instant invention is a patentable improvement. Leong etal fails to include an ionic monomer in the polymerization taught therein and thus, the polymer compositions produced therein do not contain the 5 mole percent ionicity required by the instant claims. Nor are the instant claims obvious therefrom in view of the unexpectedly superior results achieved as shown in Applicants' specification. Withdrawal of this ground of rejection is also earnestly solicited.

It is noted that the Examiner failed to include Claim 6 in any of the above-discussed rejections. It is therefore assumed that Claim 6 contains allowable subject matter. Confirmation of this assumption is hereby requested from the Examiner.

In view of the above Remarks, this Application is believed to be in condition for allowance and such action is earnestly requested at an early date.

Respectfully submitted,

Attorney for Applicants
Frank M. Van Riet
Registration# 19933

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on _January 7, 1991_
(Date of Deposit)

FRANK M. VAN RIET
Name of Applicant, Assignee, or
Registered Representative

Signature
1-7-91
Date of Signature

oc/
AM-31320

- 9 -





**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/535,626 | 06/11/90 | RYLES | R | 31,320 |

| | EXAMINER |
|---|---|
| | CHENG,M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 155 | |

FRANK H. VAN RIET
C/O AMERICAN CYANAMID CO.
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

**DATE MAILED:** 04/11/91

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined   ☒ Responsive to communication filed on _1-10-91_   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _3_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.   2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.   4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims _1 - 22_ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1 - 22_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

( )

Serial No. 535,626                              -2-

Art Unit   155


15.

    Applicants' arguments, filed on January 10, 1991, have been
carefully considered.

16.

    The restriction requirement is withdrawn in view of the
arguments.

17.

    The corrections in claims 5 and 10 are noted.  The rejection
under 35 U.S.C. 112, first paragraph, has been overcome.

18.

    The rejection of claims 8 and 12 under 35 U.S.C. 112, first
paragraph, is withdrawn in view of arguments.

19.

    The rejection of claims 1-13 under 35 U.S.C. 112, second
paragraph, has been overcome by the amendment.

20.

    The rejection of claims 1-5, 7-9, and 12 under 35 U.S.C.
102(b) or under 35 U.S.C. 103 over Makhlouf et al on record is
repeated.

    On page 7 of the amendment, the applicants argued that the
polymers of Markhouf et al contain 70-99% water-insoluble
monomer.  The list of monomers in lines 41-63 column 2 of the
reference included vinyl acetate which is soluble in water.

Serial No. 535,626                           -3-

Art Unit   155


There is also a statement that essentially any copolymerizable

mono ethylenic monomer may be utilized.

21.

    The rejection on record of claims 1-4, 7-10, 12 and 13 under
                                   *over Durand et al.*
35 U.S.C. 102(b) or 35 U.S.C. 103 is withdrawn in view of the

arguments.

22.

    The rejection on record of claims 1-4, 7, 9-11 and 13 under
                                   *over Silver*
35 U.S.C. 102(b) or 35 U.S.C. 103 has been overcome by the

amendment.

23.

    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

    A patent may not be obtained though the invention is not
    identically disclosed or described as set forth in section
    102 of this title, if the differences between the subject
    matter sought to be patented and the prior art are such that
    the subject matter as a whole would have been obvious at the
    time the invention was made to a person having ordinary
    skill in the art to which said subject matter pertains.
    Patentability shall not be negatived by the manner in which
    the invention was made.

    Subject matter developed by another person, which qualifies
    as prior art only under subsection (f) or (g) of section 102
    of this title, shall not preclude patentability under this
    section where the subject matter and the claimed invention
    were, at the time the invention was made, owned by the same
    person or subject to an obligation of assignment to the same
    person.

Serial No. 535,626                              -4-

Art Unit    155


Claims 1-13 are rejected under 35 U.S.C. § 103 as being

unpatentable over Neff et al (U.S. 4,968,435) in view of

Whittaker.

In the primary reference, Neff et al disclosed crosslinked

cationic polymeric microparticles and its method of preparation.

Whittaker taught the use of cationic, anionic, and/or

amphoteric polymers as flocculating agents for different types of

dispersions.

Thus it would be obvious because crosslinked anionic (and/or

amphoteric) polymeric microparticles would be expected to

flocculate that type of dispersions which Whittaker's anionic

(and/or amphoteric) polymers will flocculate.

24.

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.

> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

Serial No. 535,626                          -5-

Art Unit   155


    Claims 14-22 are rejected under 35 U.S.C. § 103 as being

unpatentable over Neff et al (U.S. 4,968,435) in view of Durand

et al.

    Neff et al disclosed the method of preparing crosslinked

cationic polymeric microparticles.

    Durand et al showed that anionic monomers are polymerizable

under the inverse emulsion polymerization conditions of Neff.

Thus it would be obvious.

25.

    Applicant's amendment necessitated the new grounds of

rejection.  Accordingly, THIS ACTION IS MADE FINAL.  See M.P.E.P.

§ 706.07(a).  Applicant is reminded of the extension of time

policy as set forth in 37 C.F.R. § 1.136(a).


    A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

W. Cheng:amw
April 09, 1991
703-308-2351

April 09, 1991

                                    JOSEPH L. SCHOFER
                                SUPERVISORY PATENT EXAMINER
                                      ART UNIT 155

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/535 626 | GROUP ART UNIT 155 | ATTACHMENT TO PAPER NUMBER | 5 |
|---|---|---|---|---|---|
| | **NOTICE OF REFERENCES CITED** | APPLICANT(S) R. G. Ryles, D. S. Honig, E. W. Harris, and R. E. Neff | | | |

### U.S. PATENT DOCUMENTS

| • | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4 7 0 5 6 4 0 | 11-10-87 | Whittaker | 210 | 733 | |
| | B | 4 9 6 8 4 3 5 | 11-6-90 | Neff et al. | 210 | 734 | |
| | C | | | (effective filing date was 12-19-88) | | | |
| | D | 4 6 8 1 9 1 2 | 7-21-87 | Durand et al. | 524 | 827 | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| • | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER CHENG, W. C. | DATE 4-4-91 | |
|---|---|---|

\* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)