- 8 -

microemulsions is known to those skilled in this art.  P.
Speiser reported in 1976 and 1977 a process for making
spherical "nanoparticles" with diameters less than 800A by
(1) solubilization of polymerizable molecules, e.g.
acrylamide and methylenebisacrylamide and other materials,
e.g. drugs, in micelles and (2) polymerizing the monomers in
the micelles.  J. Pharm. Sa., 65(12), 1763 (1976) and United
States Patent No. 4,021,364.  Both inverse water-in-oil and
oil-in-water "nanoparticles" were prepared by this process.
While not specifically called microemulsion polymerization
by the author, this process does contain all the features
which are currently used to define microemulsion
polymerization.  These reports also constitute the first
examples of polymerization or acrylamide in a microemulsion.
Since then, numerous publications reporting polymerization
of hydrophobic polymers in the oil phase of microemulsions
have appeared.  See, for example, Stoffer and Bone, J.
Dispersion Sci. and Tech., 1(1), 37, 1980 and Atik and
Thomas, J. Am. Chem. Soc'y, 103(14), 4279 (1981); and GB
2161492A.

The ionic and amphoteric microemulsion polymerization
process may be conducted by (i) preparing a monomer
microemulsion by adding an aqueous solution of the monomers
to a hydrocarbon liquid containing appropriate surfactant or
surfactant mixture to form an inverse monomer microemulsion
consisting of small aqueous droplets which, when
polymerized, result in polymer particles of less than 0.75
micron in size, dispersed in the continuous oil phase and
(ii) subjecting the monomer microemulsion to free radical
polymerization.

In order to obtain an inverse microemulsion, it is
generally necessary to use particular conditions whose main
parameters are as follows:  surfactant concentration, HLB of
surfactant or surfactant mixture, temperature, nature of the
organic phase and composition of the aqueous phase.

The aqueous phase comprises an aqueous mixture of the
monomers, anionic or a mixture of anionic and cationic and

- 9 -

optionally non-ionic, and the crosslinking agent, as defined
above.  The aqueous monomer mixture may also comprise such
conventional additives as are desired.  For example, the
mixture may contain chelating agents to remove
polymerization inhibitors, pH adjusters, initiators and
5    other conventional additives.

Essential to the formation of the microemulsion, which
may be defined as a swollen, transparent and
thermodynamically stable micelle solution without agitation,
comprising two liquids insoluble in each other and a
10   surfactant, in which the micelles are much smaller than in
an emulsion, is the selection of appropriate organic phase
and surfactant.

The selection of the organic phase has a substantial
effect on the minimum surfactant concentration necessary to
15   obtain the inverse microemulsion.  This organic phase may
comprise of a hydrocarbon or hydrocarbon mixture.  Saturated
hydrocarbons or mixtures thereof are the most suitable in
order to obtain inexpensive formulations (lower surfactant
content) of inverse microemulsions.  Typically, the organic
20   phase will comprise benzene, toluene, fuel oil, kerosene,
odorless mineral spirits and mixtures of any of the
foregoing.

The ratio by weight of the amounts of aqueous and
hydrocarbon phases is chosen as high as possible, so as to
25   obtain, after polymerization, a microemulsion of high
polymer content.  Practically, this ratio may range, for
example from about 0.5 to about 3:1, and usually is about
2:1.

The one or more surfactants are selected in order to
30   obtain an HLB (Hydrophilic Lipophilic Balance) value ranging
from about 8 to about 11.  In addition to the appropriate
HLB value, the concentration of surfactant must also be
optimized, i.e. sufficient to form an inverse emulsion
having the correct particle size.  Typical surfactants
35   useful in the practice of this invention, in addition to
those specifically discussed above, may be anionic, cationic

- 10 -

or non-ionic and are selected from polyoxyethylene (20) sorbitan trioleate, sorbitan trioleate, sodium di-2-ethylhexylsulfosuccinate, oleamidopropyldimethylamine; sodium isostearyl-2-lactate and the like.

5      Polymerization of the emulsion may be carried out in any manner known to those skilled in the art. Initiation may be effected with a variety of thermal and redox free-radical initiators including azo compounds, such as

*b      azo isobutyronitrile*
~~azobisisobutyronitrile~~; peroxides, such as t-butyl peroxide;

10     organic compounds, such as potassium persulfate and redox couples, such as ferrous ammonium sulfate/ammonium persulfate. Polymerization may also be effected by photochemical irradiation processes, irradiation, or by ionizing radiation with a 60 Co source. Preparation of an

15     aqueous product from the emulsion may be effected by inversion by adding it to water which may contain a breaker surfactant. Optionally, the polymer may be recovered from the emulsion by stripping or by adding the emulsion to a solvent which precipitates the polymer, e.g. isopropanol,

20     filtering off the resultant solids, drying and redispersing in water.

       The product of this invention is useful in facilitating a wide range of solid-liquid separation operations. The products of this invention may be used to dewater

25     biologically treated suspensions, such as sewage and other municipal or industrial sludges; the drainage of cellulosic suspension, such as those found in paper production, e.g. paper waste; and the settling and dewatering of various inorganic suspensions, e.g. refinery waste, coal waste, etc.

30              DESCRIPTION OF THE PREFERRED EMBODIMENTS

       The following examples illustrate the present invention. They are not be construed as limitations on the present invention except as set forth in the appended claims.

35

- 11 -

## Examples 1 - 5
### Procedure for the Preparation of
### Anionic Microemulsion

The master batch of aqueous phase is made by mixing acrylic acid (AA), as the sodium salt,  200 parts deionized
5   water, 56.5% sodium hydroxide, crystal acrylamide (AMD), 0.3 part 10% pentasodium diethylenetriaminepentaacetate, 39.0 parts additional deionized water, and 1.5 parts of 0.518% copper sulfate pentahydrate together.  To 110.2 parts of this aqueous phase solution, 6.5 parts deionized water, 0.25
10  part 1% t-butyl hydroperoxide and N,N-methylene bisacrylamide (MBA) are added.  This aqueous phase is mixed with an oil phase containing 77.8 parts of low odor paraffin oil, 3.6 parts sorbitan sesquioleate and 21.4 parts polyoxyethylene sorbitol hexaoleate.

15      This emulsion is deaerated with nitrogen for 20
ₓ   minutes.  The polymerization is then initiated with gaseous
$SO_2$.  The polymerization is then allowed to exotherm to 40$^o$C and is controlled at 40$^o$C (+ 5$^o$C) with ice water.  The ice water is removed when cooling is no longer required.  The
20  nitrogen is continued for one hours.  The total polymerization time is 2.5 hours.

If desired, the polymer may be recovered from the emulsion by stripping or by adding the emulsion to a solvent which precipitates the polymer, e.g. isopropanol, filtering
25  off the resultant solids, drying and redispersing in water.

At the time of use e.g. as a paper-making additive, the recovered polymer may be dispersed in water.  The emulsion, microbeads may also be directly dispersed in water. Depending on the surfactant and levels used in the emulsion
30  dispersion may require using high a hydrophilic lipophilic balance (HLB) inverting surfactant such as an ethoxylated alcohol; polyoxyethyllated sorbitol hexaoleate; diethanolamine oleate; ethoxylated laurel sulfate etc. as in known in the art.

35      The procedure for preparing amphoteric emulsions e.g. 15AA/60AMD/25 dimethylaminoethylacrylate (DMEA) /349 ppm

- 12 -

MBA, is repeated for the preparation of the anionic
emulsions with the exception that the concentration of the
individual monomers employed are adjusted accordingly.

Various monomers are polymerized in accordance with the
above procedure.  The results are set forth in Table I,
below.

5

10

15

20

25

30

35

- 13 -

Table I

Preparation of Anionic Microbeads

| Example | Copolymer Compositions (Mole %) | | | MBA PPM | PS NM | SV mPa.S |
|---------|------|------|-------|------|------|------|
| | AMD | AA | NaAPS | | | |
| 1 | 70 | 30 | -- | 349 | 130 | 1.19 |
| 2 | 40 | 60 | -- | 1381 | 120 | 1.10 |
| 3 | 0 | 100 | -- | 1985 | 80 | 1.35 |
| 4 | 70 | -- | 30 | 995 | -- | 1.37 |
| 5 | 70 | -- | 30 | 10,086 | -- | 1.15 |
| 6 | 70 | 30 | -- | 1000 | 464 | -- |
| 7 | 70 | 30 | -- | 1000 | 149 | 1.02 |
| 8 | 70 | 30 | -- | 1000 | 106 | 1.06 |

NaAPS  =  Sodium 2-Acrylamido-2-
          methylpropane Sulfonic Acid

PS     =  Number Average Particle Size in Nanometers

SV     =  Solution Viscosity (0.1% polymer in M NaCl, 25°C
          using a Brookfield UL adapter at 60 rpm

- 14 -

### Example 9

In paper making processes it is found that the addition
of anionic microbeads, preferably with a high molecular
weight cationic polymer to a conventional paper making stock
increases the drainage rate of water from the paper. The
5   following examples illustrate this utility but are not to be
construed to limit the invention in any manner whatsoever.

A 70/30 hardwood/softwood bleached kraft pulp is used
containing 25% $CaCO_3$ for alkaline papermaking at a pH of 8.0
10   Drainage is a measure of the time required for a certain
volume of water to drain through the paper and is here
measured as a10X drainage. (K. Britt, TAPPI 63(4) p67
(1980). Hand sheet are prepared on a Noble and Wood sheet
machine. In the test examples, the linear cationic
copolymer is a 10 mole % of acryloxyethyltrimethylammonium
15   chloride (AETMAC) and 90 mole % of acrylamide (AMD) of
5,000,000 to 10,000,000 mol. wt. with a charge density of
1.2 meg./g. and SV-4.0 cps. The anionic microbeads in Table
II are added separately to the thin paper stock. The
cationic polymer is added to the test furnish in a "Vaned
20   Britt Jar" and subjected to 800 rpm stirring for 30 seconds.
The anionic microbead is then added and subjected to 800 rpm
stirring for 30 seconds and then drainage times are
measured. The results of testing are set forth in Table II,
below.
25

30

35

- 15 -

Table II

Drainage Aid Test Data

| Example | Cationic Polymer | Dosage (lb/ton) | Anionic Polymer Microbead of Example No. | Dosage (lb/ton) | Drainage Time (Sec) |
|---------|------------------|-----------------|------------------------------------------|-----------------|---------------------|
| 6 | -0- | | -- | | 161.1 |
| 7 | 10 AETMAC/ 90 AMD | 2 | | | 116.9 |
| 8 | do | 2 | -1- | (0.5) | 75.8 |
| 9 | do | 2 | -1- | (1.0) | 72.1 |
| 10 | do | 2 | -1- | (2.0) | 84.3 |
| 11 | do | 2 | -2- | (0.5) | 66.3 |
| 12 | do | 2 | -2- | (1.0) | 72.4 |
| 13 | do | 2 | -2- | (2.0) | 74.7 |
| 14 | do | 2 | -3- | (0.5) | 78.8 |
| 15 | do | 2 | -3- | (1.0) | 74.1 |
| 16 | do | 2 | -3- | (2.0) | 80.2 |
| 17 | do | 2 | -4- | (0.5) | 95.0 |
| 18 | do | 2 | -4- | (1.0) | 86.6 |
| 19 | do | 2 | -4- | (2.0) | 95.5 |
| 20 | do | 2 | -5- | (0.5) | 119.7 |
| 21 | do | 2 | -5- | (1.0) | 121.8 |
| 22 | do | 2 | -5- | (2.0) | 111.4 |

- 16 -

The drainage time for the untreated alkaline paper
stock is 161.1 seconds.  Addition of the linear, cationic
polymer, 10 AETMAC/90 AMD, at a level of 2 lbs/ton decreases
the drainage time to 116.9.  Further decreases in drainage
time are obtained by the joint addition of the anionic
5   microbeads of this invention of doses of 0,5, 1.0 and 2.0
lbs/ton with the 2 lbs/ton of the cationic polymer.  The
microbead 70 AMD/30 Na AMPS/10,086 ppm MBA has little effect
on drainage due to the excessively high degree of
cross-linking and is outside the scope of this invention.
10   The higher degree anionicity of 2 microbeads (40 AMD/60
AA/1381 ppm MBA-120nm and 100AA/1985 ppm MBA-80 nm) improves
drainage time over those of the lower degree of anionicity
microbeads 70 AMD/30 NaAPS/995 ppm MBA.  The 1.0 lb/ton
dosage of anionic microbead gives better drainage times than
15   either the 0.5 or 2.0 lbs/ton dosage.  The only exception is
with the microbead 40AMD/60 AA/1,381 ppm MBA where the 0.5
lb/ton dosage is the most desirable.

### Examples 23 - 27

Anionic microbeads of 5 and 10 mole percent of anionic
20   charge and amphoteric microbeads with a 5 mole % higher
anionic charge than cationic charge are made by the
procedure of Example 1 and are shown in Table III.  The
microbeads have a particle size under 0.5 micron in Examples
25   23-27.

30

35

- 17 -

### Table III

### Preparation of Anionic and Amphoteric Microbeads

| Example | Copolymer Compositions (Mole %) | | | | MBA | PS | SV |
| | AMD | NaAc | NaAPS | DMEA | ppm | NM | mPa.S |
|---|---|---|---|---|---|---|---|
| 23 | 90 | 10 | -- | -- | 496 | -- | 1.34 |
| 24 | 95 | 5 | -- | -- | 97 | -- | 1.89 |
| 25 | 85 | -- | 10 | 5 | 1026 | -- | 1.40 |
| 26 | 55 | -- | 25 | 20 | 5101 | -- | 1.59 |
| 27 | 60 | -- | -- | 40 | 100 | 100 | -- |

DMEA = Acryloxylethyltrimethyl-
ammonium Chloride

See Table I for other legends

- 18 -

### Example 28

The anionic and amphoteric microbeads of Table III are used in the paper making process described in Example 2. The results are substantially the same.

5

### Examples 29-33

The procedure of Example 1 is again followed except that different monomers are employed in the preparation of the microbead. The results are set forth in Table IV, below.

10

#### Table IV

| Example | Non-Ionic Monomer (%) | Anionic Monomer (%) | MBA PPM |
|---------|-----------------------|---------------------|---------|
| 29 | AM-50 | MMA-50 | 117 |
| 30 | AM-65 | VSA-35 | 226 |
| 31 | AM-75 | DADM-25 | 198 |
| 32 | -- | NaAPS-100 | 316 |
| 33 | MAM-90 | AA-10 | 441 |

20

MAM  = methacrylamide
MMA  = methacrylic acid
VSA  = vinylsulfonic acid
DADM = diallydimethylammonium chloride

The above mentioned patents and publications are
25 incorporated herein by reference.

Many variations of the present invention will suggest themselves to those skilled in this art in light of the above detailed description. Chain-transfer agents may be optionally added to the monomer solution. Also contemplated
30 are all methods of polymerization and dewatering processes.

All such obvious modifications are within the full intended scope of the appended claims.

35

- 19 -

31,320

WE CLAIM:

1. A composition comprising cross-linked anionic or amphoteric, organic polymeric microparticles, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1 mPa.s and a crosslinking agent content of above about 4 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about 5.0%.

2. A composition as defined in Claim 1 wherein said crosslinking agent content ranges from about 4 to about 6,000 molar parts per million.

2⅗. A composition as defined in Claim 1 wherein said crosslinking agent content is from about 20 to about 4,000 molar parts per million.

3⅘. A composition as defined in Claim 1 wherein said crosslinking agent content is from about 50 to about 2,000 molar parts per million.

4⅚. A composition as defined in Claim 1 wherein said crosslinking agent is a difunctional monomer selected from N,N'-methylenebisacrylamide, N,N'-methylenebismethacryl-amide, polyethyleneglycol dimethacrylate, polyethyeneglycol diacrylate, N-vinyl acrylamide, glycidyl acrylate, divinylbenzene, acrolein, aldehydes, glyoxal, diepoxy compounds, epichlorohydrin and mixtures of the foregoing.

5⅞. A composition as defined in Claim 4 wherein said crosslinking agent comprises N,N'-methylenebisacrylamide.

- 20 -

6
7. A composition as defined in Claim 1 wherein said said unswollen diameter is less than 0.5 micron.

7
8. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one ethylenically unsaturated non-ionic monomer.

8
9. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one anionic monomer selected from acrylic acid, methylacrylic acid, ethylacrylic acid, 2-acrylamido-2-methylpropane-sulfonic acid or mixtures or salts thereof.

9
anionic
10. A composition as defined in Claim 8 wherein said cationic monomer comprises sodium acrylate, sodium methylacrylate, sodium ethylacrylate or sodium 2-acrylamido-2-methylpropanesulfonate.

10
11. A composition as defined in Claim 1 wherein the organic polymer microparticle is amphoteric and is composed of from 1% to 99% of an anionic monomer selected from acrylic acid, methacrylic acid, ethacrylic acid, 2-acrylamido-2-methylpropane sulfonic acid or salts thereof and from 99% to 1% of a cationic monomer selected from acryloxyethyltrimethylammonium chloride, 3-methyacrylamidopropyltrimethylammonium chloride, diallydimethylammonium chloride and mixtures thereof.

11                                               7
12. A composition as defined in Claim 8 wherein said non-ionic ethylenically unsaturated monomer is selected from acrylamide; methacrylamide;N,N-dialkylacrylamides: N-alkylacrylamides; N-vinylmethacetamide; N-vinyl methylformamide; vinyl acetate; N-vinyl pyrrolidone and mixtures thereof.

12
13. A composition as defined in Claim 1 wherein said organic polymer microbead is composed of sodium acrylate and acrylamide.

- 21 -

13
14. A process for the preparation of a composition as
defined in Claim 1, said process comprising:

    (a) admixing

        (i) an aqueous solution comprising at least
one ethylenically unsaturated anionic
monomer alone or in admixture with a
cationic monomer, and at least one
crosslinking agent and, optionally, at
least one ethylenically unsaturated
non-ionic monomer;

        (ii) an oily phase comprising at least one
hydrocarbon liquid;

        (iii) an effective amount of surfactant
or surfactant mixture, so as to form an
inverse emulsion; and

    (b) subjecting the inverse emulsion obtained in
step (a) to polymerization conditions.

14
15. A process as defined in Claim 14 wherein said
monomer solution of step (a)(i) comprises sodium acrylate as
said anionic monomer, N,N-methylenebisacrylamide as said
crosslinking agent and acrylamide as said non-ionic monomer.

15
16. A process as defined in Claim 14 wherein said oily
phase of step (a)(ii) comprises a saturated hydrocarbon.

16
17. A process as defined in Claim 14 wherein said
surfactant or surfactant mixture of step (a)(iii) comprises
polyoxyethylene sorbitol hexaoleate or a mixture thereof with
sorbitan sesquioleate.

17
18. A process as defined in Claim 14 wherein said
polymerization conditions of step (b) comprise adding a
polymerization initiator.

- 22 -

18.  A process as defined in Claim 17 wherein said
polymerization initiator comprises sodium metabisulfite or
tertiary-butyl hydroperoxide.

19.  A process as defined in Claim 13 wherein said
polymerization conditions of step (b) comprise subjecting
said inverse emulsion to ultraviolet irradiation.

20.  A process as defined in Claim 13 wherein said
aqueous solution of step (a)(i) additionally contains an
effective amount of a chain-transfer agent selected from an
alcohol, mercaptan, phosphite, sulfite, or a mixture
thereof.

21.  A process as defined in Claim 13 which also
includes step (c), comprising recovering the composition
from the emulsion.

[REV.4Apr89/MB1-1]                          Docket No. <u>31,320</u>

PATENT

<u>COMBINED DECLARATION AND POWER OF ATTORNEY</u>
(Original,Design,Supplemental,Divisional,Continuation,CIP)

As the below-named inventor, I hereby declare that:
TYPE OF DECLARATION
This declaration is of the following type:

     [ X ] original

     [   ] design

     [   ] supplemental

     [   ] divisional

     [   ] continuation

     [   ] continuation-in-part (CIP)
INVENTORSHIP IDENTIFICATION
My residence, post office address and citizenship are as stated
below next to my name, I believe I am the original, first and
sole inventor (if only one name is listed below) or an original,
first and joint inventor (if plural named are listed below) of
the subject matter which is claimed for, for which a patent is
sought on the invention entitled:
TITLE OF INVENTION
<u>Cross-Linked Anionic and Amphoteric Polymeric Microparticles</u>

_____

_____

SPECIFICATION IDENTIFICATION
the specification of which: (complete (a), (b), or (c))

   (a) [ X ] is attached hereto.

   (b) [   ] was filed on _____ as

        [   ] Serial Number   /

        [   ] Express Mail No., as Serial Number not
            yet known

   (c) [   ] was described and claimed in PCT International
        Application No. _____ filed on
        _____ and as amended under PCT
        Article 19 on _____ (if any).

[REV.4Apr89/MB1-1]            -2-

### ACKNOWLEDGEMENT OF REVIEW OF PAPERS AND DUTY OF CANDOR

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37 CFR 1.97.

### PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate or of any PCT International application(s) designating at least one country other than the United States of America listed below and have also identified below any foreign application(s) for patent or inventor's certificate of any PCT International application(s) designating at least one country other than the United States of America filed by me on the same subject matter having a filing date before that of the application(s) of which priority is claimed.

(d) [ X ] no such applications have been filed.

(e) [    ] such applications have been filed as follows.

Note: Where item (c) is entered above and the International Application which designated the U.S. claimed priority check item (e), enter the details below and make the priority claim.

Earliest Foreign Application(s), if any, filed within 12 months (6 months for Design) prior to this U.S. Application

| COUNTRY | APPLICATION NUMBER | DATE OF FILING (DAY,MONTH,YEAR) | PRIORITY CLAIMED 35 USC 119 |
|---------|--------------------|---------------------------------|------------------------------|
|         |                    |                                 |                              |
|         |                    |                                 |                              |
|         |                    |                                 |                              |
|         |                    |                                 |                              |

[REV.4Apr89/MB1–1]          –3–

All Foreign Application(s), if any, Filed More Than 12 Months
(6 Months for Design) Prior to This U.S. Application

_____

_____

_____

## POWER OF ATTORNEY

As a named inventor, I hereby appoint the following
attorney(s) and/or agent(s) to prosecute this application and
transact all business in the Patent and Trademark Office
connected therewith.

Frank M. Van Riet                          19933
        (Name)                         (Reg. No.)

Gordon L. Hart                           20191
        (Name)
                                     (Reg. No.)

Roger S. Benjamin                        27025
        (Name)
                                     (Reg. No.)

Michael J. Kelly                         27910
        (Name)
                                     (Reg. No.)

Steven H. Flynn                          29639

[   ]     Attached as part of this declaration and power of
          attorney is the authorization of the above-named
          attorney(s) to accept and follow instructions from my
          representative(s).

------------------------------------------------------------

SEND CORRESPONDENCE AND TELEPHONE CALLS TO:
Frank M. Van Riet
C/O American Cyanamid Company
1937 West Main Street
Stamford, CT  06904-0060
Telephone No. (203) 321-2614
------------------------------------------------------------

[REV. 4Apr89/MB1-1]          -4-

## DECLARATION

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

SIGNATURE(S)

Full name of SOLE OR FIRST INVENTOR Roderick Glynn Ryles

Inventor's signature _____
Date _7th June 1990_
Country of Citizenship British
Residence 96 Wendy Road, Milford, CT
Post Office Address Same

Full name of SECOND JOINT INVENTOR, if any Dan S. Honig

Inventor's signature _____
Date _June 7, 1990_
Country of Citizenship United States
Residence 12 Conrad Road, New Canaan, CT 06840
Post Office Address Same

Full name of THIRD JOINT INVENTOR, if any Elieth W. Harris

Inventor's signature _____
Date _June 7, 1990_
Country of Citizenship Antigua
Residence 484 Colorado Avenue, Bridgeport, CT 06605
Post Office Address Same

[REV.4Apr89/MB1-1]                    -5-


<u>THE FOLLOWING 'ADDED PAGES' FORM A PART OF THIS DECLARATION</u>

[ X ] Signature for fourth and subsequent joint inventors on
      ADDED PAGES.
[    ] ADDED PAGES TO COMBINED DECLARATION, POWER OF ATTORNEY
      for divisional, continuation, or continuation-in-part (CIP)
      application.
          [    ] Number of ADDED PAGES: _____
          [    ] Declaration ends with this page.

[REV.4Apr89/MB1-1]            -6-

### ADDED PAGE TO COMBINED DECLARATION AND POWER OF ATTORNEY FOR SIGNATURE BY FOURTH AND SUBSEQUENT INVENTORS

Full name of FOURTH JOINT INVENTOR, if any Roger E. Neff

Inventor's signature _Roger E. Neff_
Date __6/7/90__
Country of Citizenship United States
Residence 66 Woodridge Drive, Stamford, CT
Post Office Address _____

Full name of FIFTH JOINT INVENTOR, if any _____

Inventor's signature _____
Date _____
Country of Citizenship _____
Residence _____
Post Office Address _____

Full name of SIXTH JOINT INVENTOR, if any _____

Inventor's signature _____
Date _____
Country of Citizenship _____
Residence _____
Post Office Address _____

Full name of SEVENTH JOINT INVENTOR, if any _____

Inventor's signature _____
Date _____
Country of Citizenship _____
Residence _____
Post Office Address _____

[REV.4Apr89/MB16-3]                    Docket No. <u>31,320</u>

                                                        PATENT

For: [  ] U.S. and/or [  ] Foreign Rights
For: [ X] U.S. Application or [  ] U.S. Patent
For: [  ] Inventor(s) or [  ] Present Owner

<u>ASSIGNMENT OF INVENTION</u>

    In consideration of the payment by ASSIGNEE to ASSIGNOR of
the sum of One Dollar ($1.00), the receipt of which is hereby
acknowledged, and for other good and valuable consideration,

ASSIGNOR:

(1)   Full Name of Inventor: <u>Roderick Glynn Ryles</u>
      Residence: <u>96 Wendy Road, Milford, CT</u>
      Citizenship: <u>British</u>

(2)   Full Name of Inventor: <u>Dan S. Honig</u>
      Residence: <u>12 Conrad Road, New Canaan, CT   06840</u>
      Citizenship: <u>United States</u>

(3)   Full Name of Inventor: <u>Elieth W. Harris</u>
      Residence: <u>484 Colorado Avenue, Bridgeport, CT   06605</u>
      Citizenship: <u>Antigua</u>

(4)   Full Name of Inventor: <u>Roger E. Neff</u>
      Residence: <u>66 Woodridge Drive, Stamford, CT</u>
      Citizenship: <u>United States</u>

(5)   Full Name of Inventor: _____
      Residence: _____
      Citizenship: _____

(if assignment is by person or entity to whom invention was
previously assigned and this was recorded in PTO, add the follow-
ing):

Page 1 of 4 pages

[REV.4Apr89/MB16-3]

Docket No. 31,320

Recorded on _____

    Reel _____

    Frame _____

hereby sells, assigns and transfers to
ASSIGNEE:

                      AMERICAN CYANAMID COMPANY

                      1937 WEST MAIN STREET

                      P.O. BOX 60

                      STAMFORD, CT 06904-0060

and the successors, assigns and legal representatives of the
ASSIGNEE the entire right, title and interest for the United
States and its territorial possessions and in all foreign coun-
tries, including all rights to claim priority, in and to any and
all improvements which are disclosed in the invention entitled:
Cross-Linked Anionic and Amphoteric Polymeric Microparticles

           [check and complete (a), (b), (c) or (d)]
and which is found in

    (a) [ X ] U.S. patent application executed on even date
          herewith
    (b) [  ] U.S. patent application executed on _____
    (c) [  ] U.S. application Serial No.  /     filed on
        _____.

    (d) [  ] U.S. Patent No. _____ issued _____
(also check (e) if foreign application(s) is also being assigned)
    (e) [  ] and any legal equivalent thereof in a foreign
         country, including the right to claim priority
and in and to all Letters Patent to be obtained for said inven-
tion by the above application or any continuation, division,
renewal, or substitute thereof, and as to letters patent any
reissue or re-examination thereof.

    ASSIGNOR hereby covenants that no assignment, sale, agree-
ment or encumbrance has been or will be made or entered into
which would conflict with this assignment;

[REV.4Apr89/MB16-3]

Docket No. 31,320

ASSIGNOR authorizes ASSIGNEE to make applications for and to receive Letters Patent for said invention in any of said countries in its own name, or in my name, at its election.

ASSIGNOR covenants and agrees to execute or procure any further necessary assurance of the title to said invention and any Letters Patent which may issue therefor and to, at any time, upon the request and at the expense of ASSIGNEE deliver any testimony in any interference, litigation or proceeding related thereto and execute all papers that may be necessary or desirable to perfect the title to said invention or any Letters Patent which may be granted therefor in ASSIGNEE, its successors, assigns or other legal representatives, and that to, at any time, upon the request and at the expense of ASSIGNEE execute any continuations, continuations-in-part, divisional, renewal or substitute thereof, and as to Letters Patent and reissue or re-examination thereof, or any other additional applications for Letters Patent for said invention or any part or parts thereof, all of which applications and any Letters Patent issuing thereon are hereby assigned to ASSIGNEE, and will make all rightful oaths or declarations, and do all lawful acts requisite for procuring the same therein, without further compensation, but at the expense of ASSIGNEE, its successors, assigns or other legal representatives.

Page 3 of 4 pages

[REV.4Apr89/MB16-3]

Docket No. 31,320

ASSIGNOR authorizes and requests the Commissioner of Patents to issue any and all Letters Patent of the United States for said invention, resulting from any of the aforesaid applications to said AMERICAN CYANAMID COMPANY, as sole ASSIGNEE.

WITNESS my hand and seal this 7th day of June, 1990.

_Roderick Glynn Ryles_ L.S.          _Elieth W Harris_ L.S.  EWH
Roderick Glynn Ryles                    Elieth Harris

_Dan S. Honig_ L.S.          _Roger E. Neff_ L.S.
Dan S. Honig                            Roger E. Neff

-------------------------------------------------------------------------

ACKNOWLEDGEMENT

State of _Connecticut_        )
County of _Fairfield_         ) ss:

On this 7th day of _June_, 1990, personally appeared before me RODERICK GLYNN RYLES; DAN S. HONIG; ELIETH W. HARRIS AND ROGER E. NEFF, to me known, and known by me to be the same person(s) described in and who executed the foregoing instrument, and acknowledged that they executed the same, of their own free will and for the purposes set forth.

_Gloria A. Sheehan_
Notary Public

My Commission Expires March 31, 1995

Page 4 of 4 pages

07/803120

(Rule 60) [REV.4Apr89/MB4-3]                 Docket No. 31,320-01

PATENT

*[Mail Room stamp: JUL 22 1991 PAT. & TRADEMARK]*

Commissioner of Patents and Trademarks
Washington, D.C. 20231

### FILING UNDER 37 CFR 1.60(b)

This is a request for filing a

    [ X ] Continuation

    [   ] Divisional

application under 37 CFR 1.60, of pending application Serial
Number 07/535,626  filed on <u>June 11, 1990</u>        of
                         (date)

<u>Roderick Glyn Ryles; Dan S. Honig; Elieth W. Harris;</u>
<u>Roger E. Neff</u>

     (inventors)

<u>Cross-Linked Anionic and Amphoteric Polymeric Microparticles</u>

     (Title)

1.  Copy of Prior Application as Filed Which is Attached

    [ X ] I hereby verify that the attached papers are a true
          copy of what is shown in my records to be the above
          identified prior application, including the
          declaration originally filed (37 CFR 1.60).

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

CERTIFICATION UNDER 37 CFR 1.10

    I hereby certify that this New Application Transmittal and the
documents referred to as enclosed therein are being deposited with
the United States Postal Service on this date _____
in an envelope as "Express Mail Post Office to Addressee" Mailing
Label Number _____ addressed to the: Commissioner of
Patents and Trademarks, Washington, D.C 20231.

                           _____
                           (name of person mailing paper)

                           _____
                           (Signature of person mailing paper)

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

(Rule 60) [REV.4Apr89/MB4-3]   -2-

The copy of the papers of prior application as filed which
are attached are as follows:

[ X ] _18_ page(s) of specification
[ X ] _4_ page(s) of claims
[ X ] _1_ page(s) of abstract
[ ] ____ sheet(s) of drawing
[ ] ____ copy of pages of declaration and power
        of attorney showing applicant's signature

2.  Amendments

[ X ]Cancel in this application original claims
        __Claim 2_____
        of the prior application before calculating the filing
        fee. (At least one original independent claim is
        retained for filing purposes.)

[ X ] A preliminary amendment is enclosed. (Claims added by
        this amendment have been properly numbered
        consecutively beginning with the number next following
        with the highest numbered original claim in the prior
        application.)

3.  Petition for Suspension of Prosecution for the Time Necessary
    to File an Amendment

[ ] Provided herewith is a Petition To Suspend Prosecution
        for the Time Necessary to File An Amendment (New
        Application Filed Concurrently)

4.  Fee Calculation

| CLAIMS AS FILED | | | | |
|---|---|---|---|---|
| (1) FOR | (2) NUMBER FILED | (3) NUMBER EXTRA | (4) RATE | (5) BASIC FEE ($630.00) |
| TOTAL CLAIMS | 21 - 20 = | | X $20.00 | 20.00 |
| INDEP. CLAIMS | 2 - 3 = | | X $60.00 | |
| MULTIPLE DEPENDENCY FEE | | | $ 200.00 | |
| RECORDING OF ASSIGNMENT | | | $ 8.00 | |
| | | | TOTAL FILING FEE | $ 650.00 |

(Rule 60) [REV.4Apr89/MB4-3]   -3-

5.  Drawings

    [   ] Transfer the following sheet(s) of drawing from the prior application to this application:

    _____

    [   ] A copy of the amendment cancelling these sheets of drawing in the prior application is attached.

    [   ] New drawings are enclosed

        [   ] formal

        [   ] informal

6.  Relate Back - 35 U.S.C. 120

    [ X ] Amend the specification by inserting before the first line the sentence:

    "This is a

    [ X ] continuation

    [   ] divisional

    of co-pending application, Serial No. 07/535,626, filed June 11, 1990. *now abandoned*

7.  Inventorship Statement

    (a)    With respect to the prior copending U.S. application from which this application claims benefit under 35 USC 120, the inventor(s) in this application is (are):

        [ X ] the same

        [   ] less than those named in the prior application and it is requested that the following inventor(s) identified above for the prior application be deleted:

        _____

    (b)    The inventorship for all the claims in this application are

        [ X ] the same

        [   ] not the same, and an explanation, including the ownership of the various claims at the time the last claimed invention was made, is submitted.

(Rule 60) [REV.4Apr89/MB4-3]    -4-

8.  Assignment
    [ X ] The prior application is assigned of record to
             American Cyanamid Company
             1937 West Main Street
             P.O. Box 60
             Stamford, CT 06904-0060
    [    ] An assignment of the invention is attached.
9.  Fee Payment being made at this time
    [ X ] filing fee                    $  650.00
    [    ] recording assignment         $ _____
                              TOTAL  $  650.00
10. Method of Payment of Fees:
    Charge Deposit Account No. 01-1300 in the amount of $ 650.00
    A duplicate of this transmittal is attached.
11. Instructions as to Overpayment:
    Credit any overpayment to Deposit Account No. 01-1300.
12. Power of Attorney
    [ X ] The Power of Attorney in the prior application is to

| Attorney | Reg. No. |
|---|---|
| Frank M. Van Riet | 19933 |
| (Attorney) | (Reg. No.) |
| Roger S. Benjamin | 27025 |
| (Attorney) | (Reg. No.) |
| Michael J. Kelly | 27910 |
| (Attorney) | (Reg. No.) |
| William H. Calnan | 29520 |
| (Attorney) | (Reg. No.) |

        a. [ X ] The power appears in the original papers in
                 the prior application
        b. [    ] Since the power does not appear in the
                  original papers, a copy of the power in the
                  prior application is enclosed.
        c. [    ] A new power has been executed and is
                  attached.

(Rule 60) [REV.4Apr89/MB4-3]    -5-

    d. [ X ] Address all future communications to:

           Frank M. Van Riet

           c/o American Cyanamid Company

13. Maintenance of Copendency of Prior Application

    [ X ] A petition, fee and response has been filed to extend
        the term in the pending application until:
        August 11, 1991    .

    [   ] A copy of the petition for extension of time in the
        prior application is attached.

14. Conditional Petition for Extension of Time in Prior
    Application (Complete this item and file conditional
    petition in the prior application if previous item not
    applicable.)

    [   ] A conditional petition for extension of time is being
        filed in the pending patent application.

    [   ] A copy of the conditional petition for extension of
        time in the prior application is attached.

15. [   ] A certified copy of the priority document has been
       filed in Serial Number _____

                      (Signature of Attorney)

Reg. No.  19933                    Frank M. Van Riet
                              (Type name of Attorney)

Tel. No. (203) 321-2614            American Cyanamid Company
                              1937 West Main Street
                              P.O. Box 60
                              Stamford, CT 06904-0060

Assignment recorded in PTO on December 19, 1988    .

Reel 4986        Frame 0906

Docket No:  31,320-01

## IN THE UNITED PATENT AND TRADEMARK OFFICE

In re Application of:                    Date:  July 18, 1991
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Continuation of _Does not belong in this case_
Serial No.: 07/535,626
Filed:  June 11, 1990
For:  CROSS-LINKED ANIONIC AND          RECEIVED
      AMPHOTERIC POLYMERIC
      MICROPARTICLES                     JUL 2 4 1991

Commissioner of Patents                  GROUP 150
 and Trademarks Office

Washington, D.C.  20231

### PRELIMINARY AMENDMENT

Preliminary to the issuance of the first Office
Action in this continuation application, please amend the
continuation application as follows:

#### In the Specifications:

Page 3, line 24, please cancel the words "vinyl
acetate".

Page 5, lines 14 and 15, cancel the words
"Attorney Docket No. 31,043), filed concurrently herewith"
and substitute therefor the words --07/536,382 filed June
11, 1990, now abandoned and refiled as Serial No.
07/540,667, filed June 18, 1990 as a continuation-in-part--.

Page 5, line 24, cancel the term "5%" and
substitute therefor --5 mole percent--.

Page 10, line 8 please correct the spelling of
"azobisisobutyronitrile".

Page 11, line 16, cancel the word "initialed" and
substitute therefor the word --initiated--.

Page 18, line 8, cancel the word "micorbead" and substitute therefor the word --microbead--.

## In the Claims:

Please rewrite Claim 1 as follows:

~~1~~. (Amended) A composition comprising cross-linked anionic or amphoteric polymeric microparticles derived solely from ~~water-soluble monomers~~, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1. mPa.s, [and] a cross-linking agent content of [above] about 4 molar parts to about 4000 parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about [5%] 5 mole percent.

Claim 5, line 6, cancel the word "aldehydes".

Claim 10, line 2, cancel the word "cationic" and substitute therefore the word --anionic--.

## Remarks

This Amendment is being filed in response to the Office Action mailed April 11, 1991 in Applicants' parent application identified above. In said Office Action, the Examiner had:

1.  Withdrawn the restriction requirement.

2.  Indicated that the rejection of Claims 5 and 10 under 35 USC 112, first paragraph, had been overcome.

3.  Indicated that the rejection of Claims 8 and 12 under 35 USC 112, first paragraph, was withdrawn.

4.  Indicated that the rejection of Claims 1-13 under 35 USC 112, second paragraph had been overcome.

The amendments made to the parent application have been repeated hereby and therefore all rejections previously made by the Examiner based on 35 USC 112 are also obviated in the instant continuation application.

In the parent application, the Examiner had rejected Claims 1-5, 7-9 and 12 under 35 USC 102(b) or under 35 USC 103 over Makhlouf etal stating that Applicants had previously argued that the polymers of Makhlouf etal contain 70-99% water-insoluble monomer however, the list of monomers in lines 41-63, col.2, of the reference includes vinyl acetate which is soluble in water. There is also a statement that essentially any copolymerizable monoethylenic monomer may be use, the Examiner concludes.

This ground of rejection has been overcome by the instant amendment whereby Claim 1 has been amended so as to indicate that the cross-linking agent content ranges from about 4 to about 4000 parts per million. This limitation clearly distinguishes the instant compositions over those of Makhlouf etal in that the patentee indicates at col. 4, lines 17-20 that the cross-linking monomer content is at least 0.5% i.e. 5000 parts per million. With regard to the listing of vinyl acetate in col. 2, lines 41-63 of Makhlouf etal., it is respectfully submitted that vinyl acetate is generally accepted as a water-insoluble monomer in that its solubility in 1000 parts of water is limited to 2 parts at $20^{\circ}C$. In fact, U.S. Patent No. 4,485,209, at col. 3, line 3, lists vinyl acetate in a listing of hydrophobic monomers, see attached copy. It is therefor strenuously urged that Applicants have clearly distinguished the instant claims over the Makhlouf etal reference by the limitation of the cross-linking monomer concentration to about 4-4000 ppm and the monomers to those which are water-soluble. Reconsideration of this ground of rejection is earnestly solicited.

In the Office Action of April 11, 1991 in Applicants' parent application, the Examiner had also indicated that the rejection under 35 USC 202(b) or 35 USC 103 over Durand and over Silver had also been overcome by Applicants' previous arguments and amendments.

Claims 1-13 had also been rejected under 35 USC 103 as unpatentable over Neff etal in view of Whittaker, the Examiner indicating that the primary reference discloses cross-linked, cationic, polymeric microparticles and a method for their preparation while Whittaker teaches the use of cationic, anionic, and/or amphoteric polymers as flocculating agents for different types of dispersions. It is therefore the Examiner's opinion that it would be obvious because cross-linked anionic and/or amphoteric polymeric microparticles would be expected to flocculate the type of dispersions which Whittaker's anionic and/or amphoteric polymers will flocculate.

This ground of rejection is respectfully traversed. Although the rejection does not so indicate, it is believed that the Examiner is of the opinion that because Whittaker equates anionic, cationic and/or amphoteric polymers as flocculating agents and because Neff etal teach cationic microparticles as flocculants, it would be expected that Applicants' anionic and/or amphoteric microparticles would also be useful as flocculants. It is strenuously urged that Applicants' microparticles have been shown to be superior to anionic and/amphoteric polymers made from excessive amounts of cross-linking agent, see Table 1, Example 20-22 wherein a cross-linked particle made using 10,086 ppm of methylenebisacrylamide cross-linker (Example 5) is clearly an ineffective drainage aid. Whittaker does not recognize the need to incorporate cross-linking agent into the polymer in a critical amount. Whittaker at col. 6, line 23-26 indicates that the polymer must be water-soluble

and the monomers are preferably free of cross-linking agent. Thus, Whittaker merely teaches that anionic, cationic and amphoteric polymers can be made more effective as flocculating agents by shearing them. Whittaker adds nothing to Neff but the fact that anionic and amphoteric polymers can be used as flocculants. It is not clear from either of the references what effect cross-linking with 4-4000 ppm of cross-linker would have on anionic and amphoteric microparticles when they are used as retention aids in paper-making. There is nothing in either Neff etal or Whittaker which would teach one skilled in the art that the unexpectedly superior results shown in Table I of the instant specification could or would be achieved by such microparticles. Nothing in Neff etal relates to anionic or amphoteric polymers or would lend the skilled artisan to the instant compositions especially since retention in paper-making requires the addition of far lesser amounts of additive than required in the sludge dewatering shown in Neff etal's examples, note the dosage in Table I of Neff etal i.e. 11-56 lbs/ton versus that of Table II of Applicants i.e. 2 lbs/ton. Applicants agree that one skilled in the art might expect Applicants' compositions to flocculate but one skilled in the art would not expect the extraordinary drainage results shown in Table II of the instant disclosure. This is the stuff inventions are made of! Reconsideration and withdrawal of this ground of rejection is earnestly solicited.

Claims 14-22 have been rejected under 35 USC 113 as unpatentable over Neff etal in view of Durand etal, the Examiner stating that Neff etal disclose a method of preparing cross-linked, cationic, polymeric microparticles while Durand etal show that anionic monomers are polymerizable under the inverse emulsion polymerization conditions of Neff etal and thus it would be obvious.