This ground of rejection is also respectfully traversed. Again the Examiner does not indicate _what_ would be obvious but it is assumed he meant to indicate that it would be obvious to polymerize the anionic monomers of Durand etal via the process of Neff etal. It is strenuously urged that Durand etal fails to include a cross-linking agent in the process taught therein. The inclusion of such an agent materially affects the product produced. It is not apparent from Durand etal if the use of an anionic monomer with a cross-linking agent would even be possible when using the Neff etal process. Merely because a monomer acts one way alone does not mean it will act as expected with other materials such as cross-linkers. Furthermore, there is nothing in the cited references which would indicate that, even if the anionic monomer would act with a cross-linker like it did alone in Durand etal's system, the resultant polymer would be unexpectedly superior as a paper-making retention aid. Reconsideration of this ground of rejection is also strenuously urged.

In view of the above Remarks, this application is believed to be in consideration for allowance and such action is earnestly requested at an early date.

Respectfully submitted,

Attorney for Applicants
Frank M. Van Riet
Registration# 19933

oc/
A-313201



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO |
|---|---|---|---|---|
| | FILING DATE/91 | RYLES | R | 31,320-01 |

AMERICAN CYANAMID CO.,
1937 W. MAIN ST.,
P. O. BOX 60
STAMFORD, CT 06904-0060

| CHENG, W EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| 1505 | |

DATE MAILED: 02/10/92

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined  ☐ Responsive to communication filed on_____  ☒ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s),_____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.      2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.           4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.  6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims ___1 and 3 -22___ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims ___1 and 3 -22___ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

Serial No. 803,120                                    -2-

Art Unit    1505


15.

    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.

> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

    Claims 1 and 3-22 are rejected under 35 U.S.C. § 103 as

being unpatentable over Makhlouf et al (US 4,147,688).

    In the abstract of the reference, Makhlouf et al disclosed a

composition comprising cross-linked organic polymeric

microparticles having particle sizes from 0.1 to 10 microns.  At

least one monoethylenically unsaturated monomer and a

crosslinking agent were used.

    From column 2 line 64 to column 3 line 6 of the reference,

the cross-linking agent was disclosed to be an epoxy-group

containing compound like glycidyl acrylate or glycidyl

methacrylate.  In column 2 lines 29 to 63, it was mentioned that

essentially any copolymerizable monoethylenic monomer may be

Serial No. 803,120                    -3-

Art Unit    1505

utilized.  The list of suitable monomers include acrylic acid,
methacrylic acid, vinyl acetate and others.  These three monomers
are soluble in water as shown in the Merck Index, 11th ed., 1989,
pages 21, 935, and 1572.

   Although the instant claims use a cross-linking agent
content of about 4 molar parts to about 4000 parts per million
and the reference specified 0.5 percent to 15 percent by weight,
the higher limit of the claimed range is very close to the lower
limit of the reference range.

   Thus it would be obvious.

16.

   Claims 1 and 3-32 are rejected under 35 U.S.C. § 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention.

   The term "water-soluble monomers" makes the claims
indefinite, because some monomers are partially soluble in water.
The examiner queries about the criteria for determining whether a
monomer is water-soluble or not.

17.

   Claims 1 and 3-22 are rejected under 35 U.S.C. § 103 as
being unpatentable over Neff et al in view of Whittaker.

   In the primary reference, Neff et al disclosed crosslinked
cationic polymeric microparticles and the method of preparation,

Serial No. 803,120                          -4-
Art Unit   1505

    Whittaker taught the use of cationic, anionic, and/or
amphoteric polymeric nucriparticles as flocculating agents for
different types of dispersions (see column 7 lines 37-44 of the
secondary reference). Although the Whittaker's polymers are not
cross-linked, the same teaching can be applied to the cross-
linked polymers.

    It would be obvious to substitute anionic polymers in Neff's
microparticles to flocculating suitable types of dispersions.
18.

    This is a continuation application of applicant's earlier
application S.N. 07/535,626. All claims are drawn to the same
invention claimed in the earlier application and could have been
finally rejected on the grounds or art of record in the next
Office action if they had been entered in the earlier
application. Accordingly, THIS ACTION IS MADE FINAL even though
it is a first action in this case. See M.P.E.P. § 706.07(b).
Applicant is reminded of the extension of time policy as set
forth in 37 C.F.R. § 1.136(a).


    A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE

Serial No. 803,120                              -5-

Art Unit   1505


ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.


JOSEPH L. SCHOFER
SUPERVISORY PATENT EXAMINER
ART UNIT 155


Cheng:pla
February 05, 1992
(703)308-2351

TO SEPARATE, ... TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

| FORM PTO-892<br>(REV. 3-78) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | SERIAL NO.<br>07/803, 120 | GROUP ART UNIT<br>1505 | ATTACHMENT<br>TO<br>PAPER<br>NUMBER<br>4 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S)<br>Roderick G. Ryles, Dan S. Honig,<br>Elieth W. Harris, and Roger E. Neff | | |

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4 1 4 7 6 8 8 | 4-3-79 | Makhlouf et al. | 526 | 273 | |
| | B | 4 7 0 5 6 4 0 | 11-10-87 | Whittaker | 524 | 922 | |
| | C | 4 9 6 8 4 3 5 | 11-6-90 | Neff et al. | 524 | 922 | 12-19-88 |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT<br>SHTS./DWG | PP.<br>SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | Susan Budavari, Maryadele J. O'Neil, Ann Smith, and Patricia E. Heckelman, The Merck Index, pages 21, 935, and 1572, 1989 |
| S | |
| T | |
| U | |

| EXAMINER<br>CHENG, W. C. | DATE<br>1-31-92 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

*15 6*    *Gp 1505*

Docket No. :31,320-01

## IN THE UNITED PATENT AND TRADEMARK OFFICE

In re Application of:                    Date: April 27, 1992
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Continuation of
Serial No.: 07/803,120
Filed: July 22, 1991
For: CROSS-LINKED ANIONIC AND
     AMPHOTERIC POLYMERIC
     MICROPARTICLES

#5
5/13/92

Commissioner of Patents
 and Trademarks Office

Washington, D.C. 20231

RECEIVED
MAY 07 1992
GROUP 150

### BRIEF FOR APPELLANTS

This is a Brief in support of Appellants' appeal to the Board
of Appeals and Interferences from the decision of the Primary
Examiner dated February 10, 1992 finally rejecting Claims 1 and 3-
22.

### STATUS OF THE CLAIMS

Claims 1-22 are pending in the application. Claims 1 and 3-22
are under appeal.   Claim 2 inadvertently was not cancelled in
Appellants' Preliminary Amendment dated July 18, 1991.   The
Examiner has obviously considered the claim to be cancelled since
he did not refer thereto in his Final Rejection. Appellants agree
with such a designation and request the Honorable Board to treat
Claim 2 as cancelled.   A copy of Claims 1 and 3-22 is attached
hereto as Exhibit A.

DS20098  05/04/92  07803120        1-1300  020  119    260.00CH
  DS20170  05/13/92  07803120        01-1300  020  119    260.00CR
DS20171  05/13/92  07803120        01-1300  020  120    260.00CH

## STATUS OF AMENDMENTS

No amendments have been filed after issuance of the Final Rejection.

## SUMMARY OF THE INVENTION

The invention relates to a novel composition comprising cross-linked, anionic or amphoteric polymeric microparticles and a process for the production thereof. The microparticles have an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1 mPa.s, a cross-linking agent content of about 4 molar parts to about 4000 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about 5 mole percent.

The process of making said composition comprises admixing 1) an aqueous solution comprising at least one ethylenically unsaturated anionic monomer, alone or in admixture with a cationic monomer, and at least one cross-linking agent, and, optionally, at least one ethylemically unsaturated non-ionic monomer, 2) an oily phase comprising at least one hydrocarbon liquid and 3) an effective amount of a surfactant or surfactant mixture so as to form an inverse emulsion. The resultant admixed components are then subjected to polymerization conditions to produce the above-described composition.

Preferably, the cross-linking agent is present in amounts ranging from about 20 to 4000 molar parts per million, more preferably, about 50 to 2000 molar parts per million.

2

Preferred cross-linking agents include:

    N,N -methylenebisacrylamide,
    N,N -methylenetismethacrylamide,
    polyethyleneglycol dimethacrylate,
    polyethyleneglycol diacrylate,
    N-vinyl acrylamide,
    glycidyl acrylate,
    divinylbenzene,
    acrolein,
    glyoxal,
    diepoxy compounds,
    epichlorohydrin and mixtures thereof.

The most preferred cross-linking agent is N,N -

methylenebisacrylamide.

Preferred anionic monomers include:

    acrylic acid,
    methacrylic acid,
    ethacrylic acid,
    2-acrylamido-2-methylpropane sulfonic acid or
    salts or mixtures thereof.

Preferred cationic monomers include:

    acryloxyethyl trimethylammonium chloride,
    diallyldimethyl ammonium chloride,
    3-(meth)acrylamidopropyl trimethylammonium chloride,
    3-acrylamidopropyl    trimethylammonium-2-
    hydroxypropylacrylate methosulfate,
    1-trimethylammonium-2-hydroxypropyl methacrylate
    methosulfate,
    methacryloxyethyl trimethylammonium chloride and
    mixtures thereof.

Preferred non-ionic monomers include:

    acrylamide,
    methacrylamide,
    N,N-dialkylacrylamides,
    N-alkylacrylamides,
    N-vinylmethacetamide,
    N-vinylmethylformamide,
    N-vinyl pyrrolidone and mixtures.

The compositions of the present invention have been found to be useful in flocculating dispersions of suspended solids and especially in paper-making.

### ISSUES

The issues presented for review are:

1.    Whether or not Claims 1 and 3-22 are unpatentable over Makhlouf et al. under 35 USC 103.

2.    Whether or not Claims 1 and 3-22 are indefinite for failing to particularly point out and distinctly claim the subject matter which Appellants regard as the invention under 35 USC 112, second paragraph.

3.    Whether or not Claims 1 and 3-22 are unpatentable over Neff et al. in view of Whittaker under 35 USC 103.

### GROUPING OF THE CLAIMS

The claims under appeal stand or fall individually, especially Claims 1 and 3-13 and Claims 14-22 especially with regard to any showings made concerning distinct species.

### ARGUMENTS

The Examiner has rejected Claims 1 and 3-22 under 35 USC 103 as being unpatentable over Makhlouf et al. stating that in the Abstract of the reference there is disclosed a composition comprising cross-linked, organic polymeric microparticles having particle sizes from 0.1 to 10 microns of at least one monoethylenically unsaturated monomer and a cross-linking agent. From col. 2, line 64 to col. 3, line 6, the Examiner explains, the reference teaches the cross-linking agent to be an epoxy group-

4

containing compound like glycidyl acrylate or methacrylate and in col. 2, lines 29-63, there is mentioned that essentially any copolymerizable monoethylenic monomer may be used. The list of suitable monomers includes acrylic acid, methacrylic acid, vinyl acetate and others, the Examiner continues, and explains that such monomers are all soluble in water as indicated by the Merck Index article cited.

Although admitting that the instant claims use a cross-linking agent content of about 4 molar parts to about 4000 molar parts per million and the reference specifies 0.5% to 15%, by weight, the Examiner argues that the higher limit of the claimed range is very close to the lower limit of the reference range and thus it would be obvious.

Appellants respectfully take issue with this ground of rejection in that Makhlouf et al. does not teach, disclose or suggest the formation of a composition falling within the ambits of the instant claims. The patentees teach the formation of cross-linked particles using at least 5000 ppm of cross-linking agent and monomers comprising:

1)    70-99%, by weight, of such monomers as alkyl esters of acrylic or methacrylic acid, vinyl aromatic hydrocarbons, unsaturated esters of organic and inorganic acids, unsaturated nitriles (see col. 2, lines 41-63) and

2)    0.5-15%, by weight, of an alpha, beta-ethylenically unsaturated monocarboxylic acid (see col. 2, lines 29-40).

5

Appellants' claims require that the polymeric particles be prepared solely from water-soluble monomers of which the main component of the Makhlouf et al. particles are not. Secondly, the applied reference teaches the use of extraneous cross-linking agent, i.e. 0.5-15%, by weight. Appellants have shown in Table I of the instant specification that 10,086 ppm of cross-linking agent is too high in that when particles of polymer otherwise conforming to the limitations of the present claims are used, as shown in Example 9 and Table II, (Examples 20-22), the drainage time is no better than commercially available polymers (Example 7) and is far inferior to polymers according to the instant invention (Examples 8-19).    Thus, Appellants have clearly shown the unexpected superiority of the instant compositions produced by the claimed novel process. Therefore, since Makhlouf et al. fail to teach the necessity of using only water-soluble monomers and fail to teach the claimed, critical range of cross-linking agent, it is respectfully submitted that the rejection based thereon is erroneous and should be reversed.

The Examiner has further rejected Claims 1 and 3-22 under 35 USC 112, second paragraph, as indefinite in the term "water-soluble monomers" because some monomers are partially soluble in water and questions the criteria for determining whether a monomer is water-soluble or not.

This ground of rejection is also strenuously urged as erroneous. The term in question is well known to those skilled in the art of polymers. For example, U.S. Pat. No. 4485209, cited by

6

Appellants previously, clearly spells out such monomers at col. 2, lines 39-46 thereof.  Those monomers which are not water-soluble are described at col. 3, lines 1-7 thereof.  It is noted that many of the listed water-soluble monomers are likewise disclosed by Makhlouf et al., as discussed above.  Thus, it is respectfully submitted that the term in question is clearly understood by those skilled in the art and that this rejection is therefore erroneous and should be reversed.

Claims 1 and 3-22 have additionally been rejected under 35 USC 103 as being unpatentable over Neff et al. in view of Whittaker, the Examiner stating that Neff et al. disclose cross-linked, cationic polymeric microparticles and the method of preparation while Whittaker teaches the use of cationic, anionic and/or amphoteric polymeric microparticles as flocculating agents for different types of dispersions, citing col. 7, lines 37-44. Although Whittaker's polymers are not cross-linked, the Examiner argues that the same teaching can be applied to the cross-linked polymers and it would be obvious to substitute anionic polymers in Neff's microparticles to flocculate suitable types of dispersions.

The ground of rejection is also respectfully traversed.  Neff et al. is limited to cationic polymeric microparticles and does not teach, disclose or suggest that the cationic monomer used to make the microparticle can be replaced by an anionic monomer or used in admixture with an anionic monomer.  The Examiner clearly recognizes the above deficiencies of Neff et al. and attempts to equate the different monomers by citing Whittaker.  This reference, however,

merely teaches the mechanical degradation of high molecular weight polymers so as to render them more useful in flocculation. The Whittaker reference fails to disclose microparticles of polymer and while anionic and cationic monomers are shown, there is no teaching that they are equivalent other than that they may be degraded by the process taught therein. There is nothing in Whittaker which suggests to one skilled in the art to employ anionic monomers only or in conjunction with cationic monomers in the microparticles of Neff et al. It is only based on hindsight using information from Appellants' own disclosure that such a suggestion can be considered obvious. Furthermore, in view of Appellants' unexpected showing of superiority, discussed above, nothing in Whittaker would lead one skilled in the art to the present invention because Whittaker does not even employ a cross-linking agent. In fact, at col. 6, lines 23-26, Whittaker indicates that the polymers must be water-soluble and preferably linear, i.e. free of cross-linking. Thus Whittaker merely teaches that anionic, cationic and amphoteric polymers can be made more effective as flocculating agents by shearing them. Whittaker adds nothing to Neff et al. but the fact that anionic and amphoteric polymers can be used as flocculants. It is not clear from either of the references what effect cross-linking with 4-4000 ppm of cross-linker would have on anionic and amphoteric microparticles when they are used, for example, as retention aids in paper-making. There is nothing in either Neff et al. or Whittaker which would teach one skilled in the art that the unexpectedly superior results shown in Table I of the instant

8

specification could or would be achieved by such microparticles. Nothing in Neff et al. relates to anionic or amphoteric polymers or would lend the skilled artisan to the instant compositions especially since retention in paper-making requires the addition of far lesser amounts of additive than required in the sludge dewatering shown in Neff et al.'s examples, note the dosage in Table I of Neff et al. i.e. 11-56 lbs/ton versus that of Table II of Appellants i.e. 2 lbs/ton. Reversal of this ground of rejection is earnest solicited.

CONCLUSION

The Honorable Board of Appeals and Interferences is respectfully requested to reverse the rejections of Claims 1 and 3-22 and find said claims allowable.

Respectfully submitted,

Attorney for Applicants
Frank M. Van Riet
Registration #19933

[brief.fvr]
eg

31,320                          <u>**EXHIBIT A**</u>

<u>WE CLAIM:</u>

1.    A    composition    comprising    cross-linked    anionic    or
amphoteric polymeric microparticles derived solely from water-
soluble monomers, said microparticles having an unswollen number
average particle size diameter of less than about 0.75 micron, a
solution viscosity of at least about 1.1 mPa.s, a cross-linking
agent content of about 4 molar parts to about 4000 parts per
million, based on the monomeric units present in the polymer, and
an ionicity of at least about 5 mole percent.

2.    A composition as defined in Claim 1 wherein said
crosslinking agent content ranges from about 4 to about
6,000 molar parts per million.

3.    A composition as defined in Claim 2 wherein said
crosslinking agent content is from about 20 to about 4,000
molar parts per million.

4.    A composition as defined in Claim 2 wherein said
crosslinking agent content is from about 50 to about 2,000
molar parts per million.

5.    A composition as defined in Claim 1 wherein said
crosslinking agent is a difunctional monomer selected from
N,N'-methylenebisacrylamide, N,N'-methylenebismethacryl-
amide, polyethyleneglycol dimethacrylate, polyethyeneglycol
diacrylate, N-vinyl acrylamide, glycidyl acrylate,
divinylbenzene, acrolein, glyoxal, diepoxy
compounds, epichlorohydrin and mixtures of the foregoing.

6.    A composition as defined in Claim 5 wherein said
crosslinking agent comprises N,N'-methylenebisacrylamide.

- 20 -

7. A composition as defined in Claim 1 wherein said said unswollen diameter is less than 0.5 micron.

8. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one ethylenically unsaturated non-ionic monomer.

9. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one anionic monomer selected from acrylic acid, methylacrylic acid, ethylacrylic acid, 2-acrylamido-2-methylpropane-sulfonic acid or mixtures or salts thereof.

10. A composition as defined in Claim 9 wherein said anionic monomer comprises sodium acrylate, sodium methylacrylate, sodium ethylacrylate or sodium 2-acrylamido-2-methylpropanesulfonate.

11. A composition as defined in Claim 1 wherein the organic polymer microparticle is amphoteric and is composed of from 1% to 99% of an anionic monomer selected from acrylic acid, methacrylic acid, ethacrylic acid, 2-acrylamido-2-methylpropane sulfonic acid or salts thereof and from 99% to 1% of a cationic monomer selected from acryloxyethyltrimethylammonium chloride, 3-methyacrylamidopropyltrimethylammonium chloride, diallydimethylammonium chloride and mixtures thereof.

12. A composition as defined in Claim 8 wherein said non-ionic ethylenically unsaturated monomer is selected from acrylamide; methacrylamide;N,N-dialkylacrylamides; N-alkylacrylamides; N-vinylmethacetamide; N-vinyl methylformamide; vinyl acetate; N-vinyl pyrrolidone and mixtures thereof.

13. A composition as defined in Claim 1 wherein said organic polymer microbead is composed of sodium acrylate and acrylamide.

- 21 -

14. A process for the preparation of a composition as defined in Claim 1, said process comprising:

    (a)  admixing

        (i)  an aqueous solution comprising at least one ethylenically unsaturated anionic monomer alone or in admixture with a cationic monomer, and at least one crosslinking agent and, optionally, at least one ethylenically unsaturated non-ionic monomer;

       (ii)  an oily phase comprising at least one hydrocarbon liquid;

     (iii)  an effective amount of surfactant or surfactant mixture, so as to form an inverse emulsion; and

    (b) subjecting the inverse emulsion obtained in step (a) to polymerization conditions.

15. A process as defined in Claim 14 wherein said monomer solution of step (a)(i) comprises sodium acrylate as said anionic monomer, N,N-methylenebisacrylamide as said crosslinking agent and acrylamide as said non-ionic monomer.

16. A process as defined in Claim 14 wherein said oily phase of step (a)(ii) comprises a saturated hydrocarbon.

17. A process as defined in Claim 14 wherein said surfactant or surfactant mixture of step (a)(iii) comprises polyoxythylene sorbitol hexaoleate or a mixture thereof with sorbitan sesquioleate.

18. A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise adding a polymerization initiator.

- 22 -

19. A process as defined in Claim 18 wherein said polymerization initiator comprises sodium metabisulfite or tertiary-butyl hydroperoxide.

20. A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise subjecting said inverse emulsion to ultraviolet irradiation.

21. A process as defined in Claim 14 wherein said aqueous solution of step (a)(i) additionally contains an effective amount of a chain-transfer agent selected from an alcohol, mercaptan, phosphite, sulfite, or a mixture thereof.

22. A process as defined in Claim 14 which also includes step (c), comprising recovering the composition from the emulsion.

[REV.4Apr89/MB9-6]                          Case No. <u>31,320-01</u>
                                                        PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Roderick G. Ryles, Dan S. Honig, Elieth W. Harris, Roger E. Neff

Serial No. 07/803,120              Group No.: 1505
Filed: July 22, 1991               Examiner: W. Cheng
For: CROSS-LINKED ANIONIC AND AMPHOTERIC POLYMERIC MICROPARTICLES

                                                    #6

Commissioner of Patents and Trademarks
Washington, D.C. 20231

            NOTICE OF APPEAL FROM THE PRIMARY EXAMINER
                  TO THE BOARD OF APPEALS

      Applicant hereby appeals to the Board of Appeals from the
decision of the Primary Examiner mailed <u>February 12, 1992</u>
finally rejecting Claims <u>1 and 3-22</u>

      The items checked below are appropriate:

1.    REQUEST FOR ORAL HEARING
      [   ] An oral hearing is respectfully requested. <u>Fee $200.00</u>

2.    FEE FOR FILING NOTICE OF APPEAL
      Pursuant to 37 CFR 1.17(e), the fee for filing the Notice
      of Appeal is $240.00.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

              CERTIFICATE OF MAILING [37 CFR 1.8(a)]

I hereby certify that this paper (along with any referred to as
being attached or enclosed) is being deposited with the United
States Postal Service on the date shown below with sufficient
postage as first class mail in an envelope addressed to the:
Commissioner of Patents and Trademarks, Washington, D.C. 20231.

                   Ellen Grasso
                   _____

Date: <u>April 27, 1992</u>    _____
                              (Signature of person mailing paper)
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DS20168  05/13/92  07803120       01-1300  020  119      260.00CH

[REV.4Apr89/MB9-6]                    -2-

3.    EXTENSION OF TERM
                (complete (a) or (b) as applicable)
        The proceedings herein are for a patent application and the
        provision of 37 CFR 1.136 apply.
            (a) [    ] Applicant petitions for an extension of time for
                    the total number of months checked below:
                        [    ] One Month.    Fee in the amount of $100.00
                        [    ] Two Months.   Fee in the amount of $300.00
                        [    ] Three Months. Fee in the amount of $738.00
                        [    ] Four Months. Fee in the amount of
                $1,150.00

                                            FEE $_____
        If an additional extension of time is required, please consider
        this a petition therefor.

                (check and complete the next item, if applicable)
            [    ] An extension for ____ months has already been secured
                    and the fee paid therefor of $_____ is deducted
                    from the total fee due for the total months of
                    extension now requested.
                        Extension fee with this request $_____
                                        or
            (b)    [    ] Applicant believes that no extension of term is
                    required. However, this conditional petition is
                    being made to provide for the possibility that
                    applicant has inadvertently overlooked the need
                    for a petition and fee for extension of time.
4.    TOTAL FEE DUE
        The total fee due is:
            Notice of Appeal fee      $240.00
            Extension fee (if any)    $_____
            Oral Hearing fee          $_____
                                    TOTAL FEE DUE $240.00

[REV.4Apr89/MB9-6]                    -3-

5.    FEE PAYMENT

      [ X ] Charge Account No. 01-1300 the sum of $<u>240.00</u>.
      A duplicate of this transmittal is attached.

      [ X ] If any additional extension and/or fee is
          required, charge Account No. 01-1300.

                  AND/OR

      [    ] If any additional fee for claims is required,
          charge Account No. 01-1300.

                            _Frank M Van Riet_
                            (Signature of Attorney)

Reg. No. 19933                    Frank M. Van Riet
                            (Type name of Attorney)

Tel. No. (203) 321-2614           American Cyanamid Company
                            1937 West Main Street
                            P.O. Box 60
                            Stamford, CT 06904-0060



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/803,120 | 7/22/91 | Roderick G. Ryles | 31,320-01 |

EXAMINER
CHENG, W. C.

| ART UNIT | PAPER NUMBER |
|---|---|
| 1505 | 7 |

DATE MAILED: July 14, 1992

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Mr. Frank M. Van Riet, Attorney    (3) _____

(2) W. C. Cheng, Examiner    (4) _____

Date of interview 7-14-92

Type: ☒ Telephonic  ☐ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☒ No.  If yes, brief description: _____

Agreement ☒ was reached with respect to some or all of the claims in question.  ☐ was not reached.

Claims discussed: all

Identification of prior art discussed: _____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _The examiner pointed out the cancellation of claim 2 on page 2 of Filing under 37 CFR 1.60(b), filed on 7-22-91 under "2. Amendment,", and suggested the following changes: (1) claim 1 lines 2-3, change "water-soluble monomers" to -- an aqueous solution of anionic or amphoteric monomers -- and (2) claim 12 lines 5, delete "vinyl acetate". Mr. Van Riet authorized the deletion of "vinyl acetate" in claim 12 and the change from "water-soluble monomers" to -- the polymerization of an aqueous solution of at least one monomer -- in claim 1_

[A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.]

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1–7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

PTOL-413 (REV. 1-84)

_W. C. Cheng_
Examiner's Signature

**ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER**