# EXHIBIT 4
## Part 2



07/803120



Docket No: 31,320-01

## IN THE UNITED PATENT AND TRADEMARK OFFICE

In re Application of:              Date:  July 18, 1991
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Continuation of
Serial No.: 07/535,626
Filed:  June 11, 1990
For:   CROSS-LINKED ANIONIC AND
       AMPHOTERIC POLYMERIC
       MICROPARTICLES

*Does not belong in this case*

RECEIVED
JUL 24 1991
GROUP 150

Commissioner of Patents
 and Trademarks Office

Washington, D.C.  20231

### PRELIMINARY AMENDMENT

        Preliminary to the issuance of the first Office
Action in this continuation application, please amend the
continuation application as follows:

#### In the Specifications:

        Page 3, line 24, please cancel the words "vinyl
acetate".

        Page 5, lines 14 and 15, cancel the words
"Attorney Docket No. 31,043), filed concurrently herewith"
and substitute therefor the words --07/536,382 filed June
11, 1990, now abandoned and refiled as Serial No.
07/540,667, filed June 18, 1990 as a continuation-in-part--.

        Page 5, line 24, cancel the term "5%" and
substitute therefor --5 mole percent--.

        Page 10, line 8 please correct the spelling of
"azobisisobutyronitrile".

        Page 11, line 16, cancel the word "initialed" and
substitute therefor the word --initiated--.

HERC0076110

Page 18, line 8, cancel the word "micorbead" and substitute therefor the word --microbead--.

## In the Claims:

Please rewrite Claim 1 as follows:

1. (Amended) A composition comprising cross-linked anionic or amphoteric polymeric microparticles derived solely from ~~water-soluble -- monomers,~~ said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1. mPa.s, [and] a cross-linking agent content of [above] about 4 molar parts to about 4000 parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about [5%] 5 mole percent.

Claim 5, line 6, cancel the word "aldehydes".

Claim 10, line 2, cancel the word "cationic" and substitute therefore the word --anionic--.

## Remarks

This Amendment is being filed in response to the Office Action mailed April 11, 1991 in Applicants' parent application identified above. In said Office Action, the Examiner had:

1.  Withdrawn the restriction requirement.

2.  Indicated that the rejection of Claims 5 and 10 under 35 USC 112, first paragraph, had been overcome.

3.  Indicated that the rejection of Claims 8 and 12 under 35 USC 112, first paragraph, was withdrawn.

4.  Indicated that the rejection of Claims 1-13 under 35 USC 112, second paragraph had been overcome.

HERC0076111

The amendments made to the parent application have been repeated hereby and therefore all rejections previously made by the Examiner based on 35 USC 112 are also obviated in the instant continuation application.

In the parent application, the Examiner had rejected Claims 1-5, 7-9 and 12 under 35 USC 102(b) or under 35 USC 103 over Makhlouf etal stating that Applicants had previously argued that the polymers of Makhlouf etal contain 70-99% water-insoluble monomer however, the list of monomers in lines 41-63, col.2, of the reference includes vinyl acetate which is soluble in water. There is also a statement that essentially any copolymerizable monoethylenic monomer may be use, the Examiner concludes.

This ground of rejection has been overcome by the instant amendment whereby Claim 1 has been amended so as to indicate that the cross-linking agent content ranges from about 4 to about 4000 parts per million. This limitation clearly distinguishes the instant compositions over those of Makhlouf etal in that the patentee indicates at col. 4, lines 17-20 that the cross-linking monomer content is at least 0.5% i.e. 5000 parts per million. With regard to the listing of vinyl acetate in col. 2, lines 41-63 of Makhlouf etal., it is respectfully submitted that vinyl acetate is generally accepted as a water-insoluble monomer in that its solubility in 1000 parts of water is limited to 2 parts at $20^{o}$C. In fact, U.S. Patent No. 4,485,209, at col. 3, line 3, lists vinyl acetate in a listing of hydrophobic monomers, see attached copy. It is therefor strenuously urged that Applicants have clearly distinguished the instant claims over the Makhlouf etal reference by the limitation of the cross-linking monomer concentration to about 4-4000 ppm and the monomers to those which are water-soluble. Reconsideration of this ground of rejection is earnestly solicited.

In the Office Action of April 11, 1991 in Applicants' parent application, the Examiner had also indicated that the rejection under 35 USC 202(b) or 35 USC 103 over Durand and over Silver had also been overcome by Applicants' previous arguments and amendments.

Claims 1-13 had also been rejected under 35 USC 103 as unpatentable over Neff etal in view of Whittaker, the Examiner indicating that the primary reference discloses cross-linked, cationic, polymeric microparticles and a method for their preparation while Whittaker teaches the use of cationic, anionic, and/or amphoteric polymers as flocculating agents for different types of dispersions. It is therefore the Examiner's opinion that it would be obvious because cross-linked anionic and/or amphoteric polymeric microparticles would be expected to flocculate the type of dispersions which Whittaker's anionic and/or amphoteric polymers will flocculate.

This ground of rejection is respectfully traversed. Although the rejection does not so indicate, it is believed that the Examiner is of the opinion that because Whittaker equates anionic, cationic and/or amphoteric polymers as flocculating agents and because Neff etal teach cationic microparticles as flocculants, it would be expected that Applicants' anionic and/or amphoteric microparticles would also be useful as flocculants. It is strenuously urged that Applicants' microparticles have been shown to be superior to anionic and/amphoteric polymers made from excessive amounts of cross-linking agent, see Table 1, Example 20-22 wherein a cross-linked particle made using 10,086 ppm of methylenebisacrylamide cross-linker (Example 5) is clearly an ineffective drainage aid. Whittaker does not recognize the need to incorporate cross-linking agent into the polymer in a critical amount. Whittaker at col. 6, line 23-26 indicates that the polymer must be water-soluble

HERC0076113

and the monomers are preferably free of cross-linking agent. Thus, Whittaker merely teaches that anionic, cationic and amphoteric polymers can be made more effective as flocculating agents by shearing them. Whittaker adds nothing to Neff but the fact that anionic and amphoteric polymers can be used as flocculants. It is not clear from either of the references what effect cross-linking with 4-4000 ppm of cross-linker would have on anionic and amphoteric microparticles when they are used as retention aids in paper-making. There is nothing in either Neff etal or Whittaker which would teach one skilled in the art that the unexpectedly superior results shown in Table I of the instant specification could or would be achieved by such microparticles. Nothing in Neff etal relates to anionic or amphoteric polymers or would lend the skilled artisan to the instant compositions especially since retention in paper-making requires the addition of far lesser amounts of additive than required in the sludge dewatering shown in Neff etal's examples, note the dosage in Table I of Neff etal i.e. 11-56 lbs/ton versus that of Table II of Applicants i.e. 2 lbs/ton. Applicants agree that one skilled in the art might expect Applicants' compositions to flocculate but one skilled in the art would not expect the extraordinary drainage results shown in Table II of the instant disclosure. This is the stuff inventions are made of! Reconsideration and withdrawal of this ground of rejection is earnestly solicited.

Claims 14-22 have been rejected under 35 USC 113 as unpatentable over Neff etal in view of Durand etal, the Examiner stating that Neff etal disclose a method of preparing cross-linked, cationic, polymeric microparticles while Durand etal show that anionic monomers are polymerizable under the inverse emulsion polymerization conditions of Neff etal and thus it would be obvious.

HERC0076114

This ground of rejection is also respectfully traversed. Again the Examiner does not indicate what would be obvious but it is assumed he meant to indicate that it would be obvious to polymerize the anionic monomers of Durand etal via the process of Neff etal. It is strenuously urged that Durand etal fails to include a cross-linking agent in the process taught therein. The inclusion of such an agent materially affects the product produced. It is not apparent from Durand etal if the use of an anionic monomer with a cross-linking agent would even be possible when using the Neff etal process. Merely because a monomer acts one way alone does not mean it will act as expected with other materials such as cross-linkers. Furthermore, there is nothing in the cited references which would indicate that, even if the anionic monomer would act with a cross-linker like it did alone in Durand etal's system, the resultant polymer would be unexpectedly superior as a paper-making retention aid. Reconsideration of this ground of rejection is also strenuously urged.

In view of the above Remarks, this application is believed to be in consideration for allowance and such action is earnestly requested at an early date.

Respectfully submitted,

Frank M. Van Riet

Attorney for Applicants
Frank M. Van Riet
Registration# 19933

OC/
A-313201

HERC0076115

**4**

HERC0076116



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | RYLES FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/808,020 | 12/16/91 | R | 31-920-01 |

AMERICAN CYANAMID CO.,
1937 W. MAIN ST.,
P. O. BOX 60
STAMFORD, CT 06904-0060

| EXAMINER |
|---|
| CHENG, W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1505 | 7 |

DATE MAILED: 02/10/92

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined   ☐ Responsive to communication filed on _____   ☒ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims _1. and 3-22_ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1 and 3-22_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

EXAMINER'S ACTION

PTOL-326 (Rev. 9-89)

HERC0076117

Serial No. 803,120                           -2-

Art Unit   1505


15.

    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

    A patent may not be obtained though the invention is not
    identically disclosed or described as set forth in section
    102 of this title, if the differences between the subject
    matter sought to be patented and the prior art are such that
    the subject matter as a whole would have been obvious at the
    time the invention was made to a person having ordinary
    skill in the art to which said subject matter pertains.
    Patentability shall not be negatived by the manner in which
    the invention was made.

    Subject matter developed by another person, which qualifies
    as prior art only under subsection (f) or (g) of section 102
    of this title, shall not preclude patentability under this
    section where the subject matter and the claimed invention
    were, at the time the invention was made, owned by the same
    person or subject to an obligation of assignment to the same
    person.

    Claims 1 and 3-22 are rejected under 35 U.S.C. § 103 as

being unpatentable over Makhlouf et al (US 4,147,688).

    In the abstract of the reference, Makhlouf et al disclosed a

composition comprising cross-linked organic polymeric

microparticles having particle sizes from 0.1 to 10 microns.  At

least one monoethylenically unsaturated monomer and a

crosslinking agent were used.

    From column 2 line 64 to column 3 line 6 of the reference,

the cross-linking agent was disclosed to be an epoxy-group

containing compound like glycidyl acrylate or glycidyl

methacrylate.  In column 2 lines 29 to 63, it was mentioned that

essentially any copolymerizable monoethylenic monomer may be

HERC0076118

Serial No. 803,120                        -3-

Art Unit   1505

utilized.  The list of suitable monomers include acrylic acid,
methacrylic acid, vinyl acetate and others.  These three monomers
are soluble in water as shown in the Merck Index, 11th ed., 1989,
pages 21, 935, and 1572.

Although the instant claims use a cross-linking agent
content of about 4 molar parts to about 4000 parts per million
and the reference specified 0.5 percent to 15 percent by weight,
the higher limit of the claimed range is very close to the lower
limit of the reference range.

Thus it would be obvious.

16.

Claims 1 and 3-32 are rejected under 35 U.S.C. § 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention.

The term "water-soluble monomers" makes the claims
indefinite, because some monomers are partially soluble in water.
The examiner queries about the criteria for determining whether a
monomer is water-soluble or not.

17.

Claims 1 and 3-22 are rejected under 35 U.S.C. § 103 as
being unpatentable over Neff et al in view of Whittaker.

In the primary reference, Neff et al disclosed crosslinked
cationic polymeric microparticles and the method of preparation.

HERC0076119

Serial No. 803,120                    -4-

Art Unit   1505

    Whittaker taught the use of cationic, anionic, and/or amphoteric polymeric nucriparticles as flocculating agents for different types of dispersions (see column 7 lines 37-44 of the secondary reference). Although the Whittaker's polymers are not cross-linked, the same teaching can be applied to the cross-linked polymers.

    It would be obvious to substitute anionic polymers in Neff's microparticles to flocculating suitable types of dispersions.

18.

    This is a continuation application of applicant's earlier application S.N. 07/535,626. All claims are drawn to the same invention claimed in the earlier application and could have been finally rejected on the grounds or art of record in the next Office action if they had been entered in the earlier application. Accordingly, THIS ACTION IS MADE FINAL even though it is a first action in this case. See M.P.E.P. § 706.07(b). Applicant is reminded of the extension of time policy as set forth in 37 C.F.R. § 1.136(a).

    A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE

HERC0076120

Serial No. 803,120                    -5-

Art Unit   1505


ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.   IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.


JOSEPH L. SCHOFER
SUPERVISORY PATENT EXAMINER
ART UNIT 155


Cheng:pla
February 05, 1992
(703) 308-2351

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3–78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/803, 120 | GROUP ART UNIT 1505 | ATTACHMENT TO PAPER NUMBER 4 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) Roderick G. Ryles, Dan S. Honig, Elieth W. Harris, and Roger E. Neff. | | |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4 1 4 7 6 8 8 | 4-3-79 | Makhlouf et al. | 526 | 273 | |
| | B | 4 7 0 5 6 4 0 | 11-10-87 | Whittaker | 524 | 922 | |
| | C | 4 9 6 8 4 3 5 | 11-6-90 | Neff et al. | 524 | 922 | 12-19-88 |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | | |
|---|---|---|
| | R | Susan Budavari, Maryadele J. O'Neil, Ann Smith, and Patricia E. Heckelman, The Merck Index, pages 21, 935, and 1572, 1989 |
| | S | |
| | T | |
| | U | |

| EXAMINER CHENG, W. C. | DATE 1-31-92 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

HERC0076122

5

HERC0076123

$Gp$ 1505

Docket No. :31,320-01

IN THE UNITED PATENT AND TRADEMARK OFFICE

In re Application of:                    Date: April 27, 1992
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF
                                         #5
Continuation of                          5/13/92
Serial No.: 07/803,120
Filed: July 22, 1991
For: CROSS-LINKED ANIONIC AND
     AMPHOTERIC POLYMERIC
     MICROPARTICLES

Commissioner of Patents                  RECEIVED
 and Trademarks Office
                                         MAY 0 7 1992
Washington, D.C. 20231
                                         GROUP 150

BRIEF FOR APPELLANTS

        This is a Brief in support of Appellants' appeal to the Board
of Appeals and Interferences from the decision of the Primary
Examiner dated February 10, 1992 finally rejecting Claims 1 and 3-
22.

STATUS OF THE CLAIMS

        Claims 1-22 are pending in the application. Claims 1 and 3-22
are under appeal. Claim 2 inadvertently was not cancelled in
Appellants' Preliminary Amendment dated July 18, 1991. The
Examiner has obviously considered the claim to be cancelled since
he did not refer thereto in his Final Rejection. Appellants agree
with such a designation and request the Honorable Board to treat
Claim 2 as cancelled. A copy of Claims 1 and 3-22 is attached
hereto as Exhibit A.

| | | | | | | |
|---|---|---|---|---|---|---|
| DS20091 | 05/04/92 | 07803120 | 01-1300 | 020 | 119 | 260.00CH |
| DS20170 | 05/13/92 | 07803120 | 01-1300 | 020 | 119 | 260.00CR |
| DS20171 | 05/13/92 | 07803120 | 01-1300 | 020 | 120 | 260.00CH |

HERC0076124

## STATUS OF AMENDMENTS

No amendments have been filed after issuance of the Final Rejection.

## SUMMARY OF THE INVENTION

The invention relates to a novel composition comprising cross-linked, anionic or amphoteric polymeric microparticles and a process for the production thereof. The microparticles have an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1 mPa.s, a cross-linking agent content of about 4 molar parts to about 4000 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about 5 mole percent.

The process of making said composition comprises admixing 1) an aqueous solution comprising at least one ethylenically unsaturated anionic monomer, alone or in admixture with a cationic monomer, and at least one cross-linking agent, and, optionally, at least one ethylemically unsaturated non-ionic monomer, 2) an oily phase comprising at least one hydrocarbon liquid and 3) an effective amount of a surfactant or surfactant mixture so as to form an inverse emulsion. The resultant admixed components are then subjected to polymerization conditions to produce the above-described composition.

Preferably, the cross-linking agent is present in amounts ranging from about 20 to 4000 molar parts per million, more preferably, about 50 to 2000 molar parts per million.

2

HERC0076125

Preferred cross-linking agents include:

    N,N'-methylenebisacrylamide,
    N,N'-methylenetismethacrylamide,
    polyethyleneglycol dimethacrylate,
    polyethyleneglycol diacrylate,
    N-vinyl acrylamide,
    glycidyl acrylate,
    divinylbenzene,
    acrolein,
    glyoxal,
    diepoxy compounds,
    epichlorohydrin and mixtures thereof.

The most preferred cross-linking agent is N,N'-methylenebisacrylamide.

Preferred anionic monomers include:

    acrylic acid,
    methacrylic acid,
    ethacrylic acid,
    2-acrylamido-2-methylpropane sulfonic acid or
    salts or mixtures thereof.

Preferred cationic monomers include:

    acryloxyethyl trimethylammonium chloride,
    diallyldimethyl ammonium chloride,
    3-(meth)acrylamidopropyl trimethylammonium chloride,
    3-acrylamidopropyl  trimethylammonium-2-
    hydroxypropylacrylate methosulfate,
    1-trimethylammonium-2-hydroxypropyl methacrylate
    methosulfate,
    methacryloxyethyl trimethylammonium chloride and
    mixtures thereof.

Preferred non-ionic monomers include:

    acrylamide,
    methacrylamide,
    N,N-dialkylacrylamides,
    N-alkylacrylamides,
    N-vinylmethacetamide,
    N-vinylmethylformamide,
    N-vinyl pyrrolidone and mixtures.

3

HERC0076126

The compositions of the present invention have been found to be useful in flocculating dispersions of suspended solids and especially in paper-making.

## ISSUES

The issues presented for review are:

1.    Whether or not Claims 1 and 3-22 are unpatentable over Makhlouf et al. under 35 USC 103.

2.    Whether or not Claims 1 and 3-22 are indefinite for failing to particularly point out and distinctly claim the subject matter which Appellants regard as the invention under 35 USC 112, second paragraph.

3.    Whether or not Claims 1 and 3-22 are unpatentable over Neff et al. in view of Whittaker under 35 USC 103.

## GROUPING OF THE CLAIMS

The claims under appeal stand or fall individually, especially Claims 1 and 3-13 and Claims 14-22 especially with regard to any showings made concerning distinct species.

## ARGUMENTS

The Examiner has rejected Claims 1 and 3-22 under 35 USC 103 as being unpatentable over Makhlouf et al. stating that in the Abstract of the reference there is disclosed a composition comprising cross-linked, organic polymeric microparticles having particle sizes from 0.1 to 10 microns of at least one monoethylenically unsaturated monomer and a cross-linking agent. From col. 2, line 64 to col. 3, line 6, the Examiner explains, the reference teaches the cross-linking agent to be an epoxy group-

4

containing compound like glycidyl acrylate or methacrylate and in col. 2, lines 29-63, there is mentioned that essentially any copolymerizable monoethylenic monomer may be used.  The list of suitable monomers includes acrylic acid, methacrylic acid, vinyl acetate and others, the Examiner continues, and explains that such monomers are all soluble in water as indicated by the Merck Index article cited.

Although admitting that the instant claims use a cross-linking agent content of about 4 molar parts to about 4000 molar parts per million and the reference specifies 0.5% to 15%, by weight, the Examiner argues that the higher limit of the claimed range is very close to the lower limit of the reference range and thus it would be obvious.

Appellants respectfully take issue with this ground of rejection in that Makhlouf et al. does not teach, disclose or suggest the formation of a composition falling within the ambits of the instant claims.  The patentees teach the formation of cross-linked particles using at least 5000 ppm of cross-linking agent and monomers comprising:

1)    70-99%, by weight, of such monomers as alkyl esters of acrylic or methacrylic acid, vinyl aromatic hydrocarbons, unsaturated esters of organic and inorganic acids, unsaturated nitriles (see col. 2, lines 41-63) and

2)    0.5-15%, by weight, of an alpha, beta-ethylenically unsaturated monocarboxylic acid (see col. 2, lines 29-40).

5

HERC0076128

Appellants' claims require that the polymeric particles be prepared solely from water-soluble monomers of which the main component of the Makhlouf et al. particles are not. Secondly, the applied reference teaches the use of extraneous cross-linking agent, i.e. 0.5-15%, by weight. Appellants have shown in Table I of the instant specification that 10,086 ppm of cross-linking agent is too high in that when particles of polymer otherwise conforming to the limitations of the present claims are used, as shown in Example 9 and Table II, (Examples 20-22), the drainage time is no better than commercially available polymers (Example 7) and is far inferior to polymers according to the instant invention (Examples 8-19). Thus, Appellants have clearly shown the unexpected superiority of the instant compositions produced by the claimed novel process. Therefore, since Makhlouf et al. fail to teach the necessity of using only water-soluble monomers and fail to teach the claimed, critical range of cross-linking agent, it is respectfully submitted that the rejection based thereon is erroneous and should be reversed.

The Examiner has further rejected Claims 1 and 3-22 under 35 USC 112, second paragraph, as indefinite in the term "water-soluble monomers" because some monomers are partially soluble in water and questions the criteria for determining whether a monomer is water-soluble or not.

This ground of rejection is also strenuously urged as erroneous. The term in question is well known to those skilled in the art of polymers. For example, U.S. Pat. No. 4485209, cited by

6

HERC0076129

Appellants previously, clearly spells out such monomers at col. 2, lines 39-46 thereof. Those monomers which are not water-soluble are described at col. 3, lines 1-7 thereof. It is noted that many of the listed water-soluble monomers are likewise disclosed by Makhlouf et al., as discussed above. Thus, it is respectfully submitted that the term in question is clearly understood by those skilled in the art and that this rejection is therefore erroneous and should be reversed.

Claims 1 and 3-22 have additionally been rejected under 35 USC 103 as being unpatentable over Neff et al. in view of Whittaker, the Examiner stating that Neff et al. disclose cross-linked, cationic polymeric microparticles and the method of preparation while Whittaker teaches the use of cationic, anionic and/or amphoteric polymeric microparticles as flocculating agents for different types of dispersions, citing col. 7, lines 37-44. Although Whittaker's polymers are not cross-linked, the Examiner argues that the same teaching can be applied to the cross-linked polymers and it would be obvious to substitute anionic polymers in Neff's microparticles to flocculate suitable types of dispersions.

The ground of rejection is also respectfully traversed. Neff et al. is limited to cationic polymeric microparticles and does not teach, disclose or suggest that the cationic monomer used to make the microparticle can be replaced by an anionic monomer or used in admixture with an anionic monomer. The Examiner clearly recognizes the above deficiencies of Neff et al. and attempts to equate the different monomers by citing Whittaker. This reference, however,

7

HERC0076130

merely teaches the mechanical degradation of high molecular weight polymers so as to render them more useful in flocculation. The Whittaker reference fails to disclose microparticles of polymer and while anionic and cationic monomers are shown, there is no teaching that they are equivalent other than that they may be degraded by the process taught therein. There is nothing in Whittaker which suggests to one skilled in the art to employ anionic monomers only or in conjunction with cationic monomers in the microparticles of Neff et al. It is only based on hindsight using information from Appellants' own disclosure that such a suggestion can be considered obvious. Furthermore, in view of Appellants' unexpected showing of superiority, discussed above, nothing in Whittaker would lead one skilled in the art to the present invention because Whittaker does not even employ a cross-linking agent. In fact, at col. 6, lines 23-26, Whittaker indicates that the polymers must be water-soluble and preferably linear, i.e. free of cross-linking. Thus Whittaker merely teaches that anionic, cationic and amphoteric polymers can be made more effective as flocculating agents by shearing them. Whittaker adds nothing to Neff et al. but the fact that anionic and amphoteric polymers can be used as flocculants. It is not clear from either of the references what effect cross-linking with 4-4000 ppm of cross-linker would have on anionic and amphoteric microparticles when they are used, for example, as retention aids in paper-making. There is nothing in either Neff et al. or Whittaker which would teach one skilled in the art that the unexpectedly superior results shown in Table I of the instant

8

HERC0076131

specification could or would be achieved by such microparticles. Nothing in Neff et al. relates to anionic or amphoteric polymers or would lend the skilled artisan to the instant compositions especially since retention in paper-making requires the addition of far lesser amounts of additive than required in the sludge dewatering shown in Neff et al.'s examples, note the dosage in Table I of Neff et al. i.e. 11-56 lbs/ton versus that of Table II of Appellants i.e. 2 lbs/ton. Reversal of this ground of rejection is earnest solicited.

CONCLUSION

The Honorable Board of Appeals and Interferences is respectfully requested to reverse the rejections of Claims 1 and 3-22 and find said claims allowable.

Respectfully submitted,

Attorney for Applicants
Frank M. Van Riet
Registration #19933

[brief.fvr]
eg

9

HERC0076132

31,320                    EXHIBIT A

WE CLAIM:

1.  A  composition  comprising  cross-linked  anionic  or
amphoteric  polymeric  microparticles  derived  solely  from  water-
soluble monomers, said microparticles having an unswollen number
average particle size diameter of less than about 0.75 micron, a
solution viscosity of at least about 1.1 mPa.s, a cross-linking
agent content of about 4 molar parts to about 4000 parts per
million, based on the monomeric units present in the polymer, and
an ionicity of at least about 5 mole percent.

2.  A composition as defined in Claim 1 wherein said
crosslinking agent content ranges from about 4 to about
6,000 molar parts per million.

3.  A composition as defined in Claim 2 wherein said
crosslinking agent content is from about 20 to about 4,000
molar parts per million.

4.  A composition as defined in Claim 2 wherein said
crosslinking agent content is from about 50 to about 2,000
molar parts per million.

5.  A composition as defined in Claim 1 wherein said
crosslinking agent is a difunctional monomer selected from
N,N'-methylenebisacrylamide, N,N'-methylenebismethacryl-
amide, polyethyleneglycol dimethacrylate, polyethyeneglycol
diacrylate, N-vinyl acrylamide, glycidyl acrylate,
divinylbenzene, acrolein, glyoxal, diepoxy
compounds, epichlorohydrin and mixtures of the foregoing.

6.  A composition as defined in Claim 5 wherein said
crosslinking agent comprises N,N'-methylenebisacrylamide.

- 20 -

7. A composition as defined in Claim 1 wherein said said unswollen diameter is less than 0.5 micron.

8. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one ethylenically unsaturated non-ionic monomer.

9. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one anionic monomer selected from acrylic acid, methylacrylic acid, ethylacrylic acid, 2-acrylamido-2-methylpropane-sulfonic acid or mixtures or salts thereof.

10. A composition as defined in Claim 9 wherein said anionic  monomer comprises sodium acrylate, sodium methylacrylate, sodium ethylacrylate or sodium 2-acrylamido-2-methylpropanesulfonate.

11. A composition as defined in Claim 1 wherein the organic polymer microparticle is amphoteric and is composed of from 1% to 99% of an anionic monomer selected from acrylic acid, methacrylic acid, ethacrylic acid, 2-acrylamido-2-methylpropane sulfonic acid or salts thereof and from 99% to 1% of a cationic monomer selected from acryloxyethyltrimethylammonium chloride, 3-methacrylamidopropyltrimethylammonium chloride, diallydimethylammonium chloride and mixtures thereof.

12. A composition as defined in Claim 8 wherein said non-ionic ethylenically unsaturated monomer is selected from acrylamide; methacrylamide;N,N-dialkylacrylamides: N-alkylacrylamides; N-vinylmethacetamide; N-vinyl methylformamide; vinyl acetate; N-vinyl pyrrolidone and mixtures thereof.

13. A composition as defined in Claim 1 wherein said organic polymer microbead is composed of sodium acrylate and acrylamide.

HERC0076134

- 21 -

14. A process for the preparation of a composition as defined in Claim 1, said process comprising:

    (a) admixing

        (i) an aqueous solution comprising at least one ethylenically unsaturated anionic monomer alone or in admixture with a cationic monomer, and at least one crosslinking agent and, optionally, at least one ethylenically unsaturated non-ionic monomer;

        (ii) an oily phase comprising at least one hydrocarbon liquid;

        (iii) an effective amount of surfactant or surfactant mixture, so as to form an inverse emulsion; and

    (b) subjecting the inverse emulsion obtained in step (a) to polymerization conditions.

15. A process as defined in Claim 14 wherein said monomer solution of step (a)(i) comprises sodium acrylate as said anionic monomer, N,N-methylenebisacrylamide as said crosslinking agent and acrylamide as said non-ionic monomer.

16. A process as defined in Claim 14 wherein said oily phase of step (a)(ii) comprises a saturated hydrocarbon.

17. A process as defined in Claim 14 wherein said surfactant or surfactant mixture of step (a)(iii) comprises polyoxythylene sorbitol hexaoleate or a mixture thereof with sorbitan sesquioleate.

18. A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise adding a polymerization initiator.

HERC0076135

- 22 -

19. A process as defined in Claim 18 wherein said polymerization initiator comprises sodium metabisulfite or tertiary-butyl hydroperoxide.

20. A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise subjecting said inverse emulsion to ultraviolet irradiation.

21. A process as defined in Claim 14 wherein said aqueous solution of step (a)(i) additionally contains an effective amount of a chain-transfer agent selected from an alcohol, mercaptan, phosphite, sulfite, or a mixture thereof.

22. A process as defined in Claim 14 which also includes step (c), comprising recovering the composition from the emulsion.

HERC0076136

**6**

HERC0076137

[REV.4Apr89/MB9-6]                    Case No. 31,320-01
                                              PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
Roderick G. Ryles, Dan S. Honig, Elieth W. Harris, Roger E. Neff

Serial No. 07/803,120              Group No.: 1505
Filed: July 22, 1991              Examiner: W. Cheng
For: CROSS-LINKED ANIONIC AND AMPHOTERIC POLYMERIC MICROPARTICLES

Commissioner of Patents and Trademarks
Washington, D.C. 20231

              NOTICE OF APPEAL FROM THE PRIMARY EXAMINER
                   TO THE BOARD OF APPEALS

    Applicant hereby appeals to the Board of Appeals from the
decision of the Primary Examiner mailed _February 12, 1992_____
finally rejecting Claims _1 and 3-22_____.
    The items checked below are appropriate:
1.   REQUEST FOR ORAL HEARING
     [  ] An oral hearing is respectfully requested. _Fee $200.00_
2.   FEE FOR FILING NOTICE OF APPEAL
     Pursuant to 37 CFR 1.17(e), the fee for filing the Notice
     of Appeal is $240.00.

_____

              CERTIFICATE OF MAILING [37 CFR 1.8(a)]

I hereby certify that this paper (along with any referred to as
being attached or enclosed) is being deposited with the United
States Postal Service on the date shown below with sufficient
postage as first class mail in an envelope addressed to the:
Commissioner of Patents and Trademarks, Washington, D.C. 20231.

                     Ellen Grasso
                     _____
Date: _April 27, 1992_   _Ellen Grasso_
                     (Signature of person mailing paper)
_____
DS20168  05/13/92  07803120     01-1300  020  119    260.00CH

HERC0076138

[REV.4Apr89/MB9-6]          -2-

3.   EXTENSION OF TERM
              (complete (a) or (b) as applicable)
     The proceedings herein are for a patent application and the
     provision of 37 CFR 1.136 apply.
        (a) [   ] Applicant petitions for an extension of time for
                 the total number of months checked below:
                 [   ] One Month.    Fee in the amount of $100.00
                 [   ] Two Months.   Fee in the amount of $300.00
                 [   ] Three Months. Fee in the amount of $738.00
                 [   ] Four Months. Fee in the amount of
        $1,150.00

                                        FEE $_____
     If an additional extension of time is required, please consider
     this a petition therefor.

              (check and complete the next item, if applicable)
        [   ] An extension for ____ months has already been secured
              and the fee paid therefor of $_____ is deducted
              from the total fee due for the total months of
              extension now requested.
                      Extension fee due with this request $_____
                             or
        (b)   [   ] Applicant believes that no extension of term is
                   required. However, this conditional petition is
                   being made to provide for the possibility that
                   applicant has inadvertently overlooked the need
                   for a petition and fee for extension of time.
4.   TOTAL FEE DUE
        The total fee due is:
              Notice of Appeal fee    $240.00
              Extension fee (if any)  $_____
              Oral Hearing fee        $_____
                             TOTAL FEE DUE $240.00____

HERC0076139

[REV.4Apr89/MB9-6]          -3-


5.   FEE PAYMENT
          [ X ] Charge Account No. 01-1300 the sum of $240.00 .
          A duplicate of this transmittal is attached.
          [ X ] If any additional extension and/or fee is
               required, charge Account No. 01-1300.
                         AND/OR
          [    ] If any additional fee for claims is required,
               charge Account No. 01-1300.

                         (Signature of Attorney)

Reg. No. 19933            Frank M. Van Riet
                         (Type name of Attorney)

Tel. No. (203) 321-2614  American Cyanamid Company
                         1937 West Main Street
                         P.O. Box 60
                         Stamford, CT 06904-0060

HERC0076140

**7**

HERC0076141



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/803,120 | 7/22/91 | Roderick G. Ryles | 31,320-01 |

| EXAMINER |
|---|
| CHENG, W. C. |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1505 | 7 |

DATE MAILED: *July 14, 1992*

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) *Mr. Frank M. Van Riet, Attorney*   (3) _____

(2) *W. C. Cheng, Examiner*   (4) _____

Date of Interview   *7-14-92*

Type:  ☒ Telephonic  ☐ Personal (copy is given to ☐ applicant  ☐ applicant's representative).

Exhibit shown or demonstration conducted:  ☐ Yes  ☒ No.   If yes, brief description: _____

Agreement  ☒ was reached with respect to some or all of the claims in question.  ☐ was not reached.

Claims discussed:   *all*

Identification of prior art discussed: _____

Description of the general nature of what was agreed to if agreement was reached, or any other comments: *The examiner pointed out the cancellation of claim 2 on page 2 of Filing under 37 CFR 1.60(b), filed on 7-22-91 under "2. amendment.", and suggested the following changes; (1) claim 1 lines 2-3, change "water-soluble monomers" to — an aqueous solution of anionic or amphoteric monomers — and (2) claim 12 lines 5, delete "vinyl acetate". Mr. Van Riet authorized the deletion of "vinyl acetate" in claim 12 and the change from "water-soluble monomers" to — the polymerization of an aqueous solution of at least one monomer — in claim 1.*

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1—7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

*W.C. Cheng*
Examiner's Signature

PTOL-413 (REV. 1-84)

8

HERC0076143



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D C 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|

07/803,120    07/22/91    RYLES

R    31.320-01

EXAMINER

CHENG, W

| ART UNIT | PAPER NUMBER |
|---|---|
| 1505 | 8/C |

AMERICAN CYANAMID CO.,
1937 W. MAIN ST.,
P. O. BOX 60
STAMFORD, CT 06904-0060

DATE MAILED:    07/16/92

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☒ This communication is responsive to _4-28-92_

2. ☒ All the claims being allowable. PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not Included herewith (or previously mailed). a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent In due course.

3. ☒ The allowed claims are _1 and 3-22_

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [_] been received [_] not been received [_] been filed in parent application Serial No. _____ filed on _____

6. ☒ Note the attached Examiner's Amendment.

7. ☒ Note the attached Examiner Interview Summary Record. PTOL-413

8. ☒ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION. PTO-1449

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" Indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER

a. ☐ Drawing Informalities are indicated on the NOTICE RE PATENT DRAWINGS. PTO-948. attached hereto or to Paper No. _____ CORRECTION IS REQUIRED.

b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

c. ☐ Approved drawing corrections are described by the examiner In the attached EXAMINER S AMENDMENT. CORRECTION IS REQUIRED.

d. ☐ Formal drawings are now REQUIRED.

---

Any response to this letter should Include In the upper right hand corner. the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER

Attachments:
_ Examiner's Amendment
_ Examiner Interview Summary Record. PTOL-413
_ Reasons for Allowance
_ Notice of References Cited. PTO-892
_ Information Disclosure Citation. PTO-1449

_ Notice of Informal Application, PTO-152
_ Notice re Patent Drawings. PTO-948
_ Listing of Bonded Draftsmen
_ Other

PTOL-37 (REV. 11-83)

USCOMM-OC 89-3615

Serial No. 07/003,120                    -2-

Art Unit   1505

An Examiner's Amendment to the record appears below.  Should
the changes and/or additions be unacceptable to applicant, an
amendment may be filed as provided by 37 C.F.R. § 1.312.  To
ensure consideration of such an amendment, it MUST be submitted
no later than the payment of the Issue Fee.

Authorization for this Examiner's Amendment was given in a
telephone interview with Mr. Frank M. Van Riet on July 14, 1992.

Mr. Van Riet authorized the deletions of "vinyl acetate" in
line 5 of claim 12 and "water-soluble monomers" in lines 2-3 of
claim 1, and the addition of --the polymerization of an aqueous
solution of at least of one monomer-- in place of the latter in
lines 2-3 of claim 1.

The following is an Examiner's Statement of Reasons for
Allowance.  The change of water soluble to aqueous solution
prevents the claims from encompassing partially soluble monomers.
Although the upper end of the claimed crosslinking content would
in and of itself be obvious, based on similarity to the lower end
of the reference range, the further matching of this lower end to
the few monomers among many that may meet the claims is deemed
unobvious.

HERC0076145

Serial No. 07/803,120                          - 3 -

Art Unit   1505

    Any comments considered necessary by applicant must be submitted no later than the payment of the Issue Fee and, to avoid processing delays, should preferably accompany the Issue Fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

    Claims 1 and 3-22 are allowed.

JOSEPH L. SCHOFER
SUPERVISORY PATENT EXAMINER
ART UNIT 155

W. C. Cheng
July 15, 1992
(703)308-2351

HERC0076146

Docket No.: <u>31,320-01</u>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    Date:  September 8, 1992
RODERICK GLYN RYLES
DAN S. HONIG
ROGER E. NEFF
ELIETH W. HARRIS

Serial No. 07/803,120              Group Art Unit:  1505
Filed:  July 22, 1991
For:  CROSS-LINKED ANIONIC AND       Examiner: W. Cheng
      AMPHOTERIC POLYMERIC
      MICROPARTICLES

Commissioner of Patents
  and Trademarks

Washington, D. C.  20231


S i r :

Enclosed please find:

     Issue Fee Transmittal Forms in Duplicate

     Postcard

Please  utilize  the  following  information  regarding  the
maintenance  fees,  which  will  become  due  regarding  the
above-identified application.

Payor Number:  000142
Fee Address:   Mrs. Marge O'Connor
               Patent Law Department
               American Cyanamid Company
               1937 West Main Street
               P.O. Box 60
               <u>Stamford, CT  06904-0060</u>

                          Respectfully submitted,

                          Frank M. Van Riet Esq.
                          Attorney for Applicant
                          Reg. No. 19933

1937 West Main Street
P.O. Box 60
Stamford, CT  06904-0060
Telephone:  (203) 321-2614

HERC0076147



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address:  Box  ISSUE FEE
          COMMISSIONER OF PATENTS AND TRADEMARKS
          Washington, D.C. 20231

AMERICAN CYANAMID CO.,
1937 W. MAIN ST.,
P. O. BOX 60
STAMFORD, CT 06904-0060

**NOTICE OF ALLOWANCE**
**AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/803,120 | 07/22/91 | 021 | CHENG, N | 1505 | 07/16/92 |

First Named Applicant    RYLES,    RODERICK G.

TITLE OF INVENTION    CROSS-LINKED ANIONIC AND AMPHOTERIC POLYMERIC MICROPARTICLES

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 31,320-01 | 526-264.000 | E62 | UTILITY | NO | $1130.00 | 10/16/92 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.

THE ISSUE FEE MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED.   THIS STATUTORY PERIOD CANNOT BE EXTENDED.

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:
A. If the Status is changed, pay twice the amount of the
   FEE DUE shown above and notify the Patent and
   Trademark Office of the change in status, or
B. If the Status is the same, pay the FEE DUE shown
   above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
   payment of 1/2 the FEE DUE shown above

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees.

PATENT AND TRADEMARK OFFICE COPY

HERC0076148

PART B - ISSUE FEE TRANSMITTAL

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advanced orders and notification of maintenance fees will be mailed to addressee entries in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. See reverse for Certificate of Mailing.

| 1. CORRESPONDENCE ADDRESS | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|---|
| AMERICAN CYANAMID CO. 1937 W. MAIN ST. P. O. BOX 60 STAMFORD, CT 06904-0060 | INVENTOR'S NAME Street Address City, State and ZIP Code CO-INVENTORS NAME Street Address City, State and ZIP Code ☐ Check if additional changes are on reverse side |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/803,120 | 07/22/91 | 021 | CHENG, N | 1505 | 07/16/92 |

First Named Applicant  RYLES, RODERICK G.

TITLE OF INVENTION  CROSS-LINKED ANIONIC AND AMPHOTERIC POLYMERIC MICROPARTICLES

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 31-320 | | | UTILITY | NO | $1130.00 | 10/16/92 |

3. Further correspondence to be mailed to the following:
Frank M. Van Riet
American Cyanamid Company
1937 West Main Street
Stamford, CT  06904-0060  U.S.A.

4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed.

1  Frank M. Van Riet
2  _____
3  _____

DO NOT USE THIS SPACE

LA102B3  09/22/92  07803120     01-1300  010  142     1,130.00CH

5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type)
(1) NAME OF ASSIGNEE:
American Cyanamid Company
(2) ADDRESS: (City & State or Country)
Stamford, CT
(3) STATE OF INCORPORATION, IF ASSIGNEE IS A CORPORATION
Maine

A ☐ This application is NOT assigned.
☒ Assignment previously submitted to the Patent and Trademark Office.
☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.

PLEASE NOTE: Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

6a. The following fees are enclosed:
☐ Issue Fee  ☐ Advanced Order - # of Copies _____ (Minimum of 10)
6b. The following fees should be charged to:
DEPOSIT ACCOUNT NUMBER  01-1300
(Enclose Part C)
☒ Issue Fee  ☐ Advanced Order - # of Copies _____ (Minimum of 10)
☒ Any Deficiencies in Enclosed Fees

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.
(Signature of party in interest of record) _____  (Date) 9-8-92

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE

HERC0076149



**Grant**

# 26

SERVER1\PUBLIC\TEMPLATES\SCAN SHEET.DOC

HERC0076150

**9**

HERC0076151

PTO UTILITY GRANT
Paper Number

*The*
*United*
*States*
*of*
*America*

### The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

*Acting Commissioner of Patents and Trademarks*

*Attest*

PTO-1584

HERC0076152

 

American Cyanamid Company
Patent Law Department
1937 West Main Street
P.O. Box 60
Stamford, CT U.S.A. 06904-0060
(203) 321-2900
Fax: (203) 321-2971
Telex: 770-474-4059

Box M

PATENT & TRADEMARK
ENTERED BY KMD (14)

AUG - 4 93

PATENT MAINTENANCE
DIVISION
July 27, 1993

Commissioner
U. S. Patent and Trademark Office
Attn: Box M Fee
Washington, D.C. 20231

Dear Sirs:

Re: CHANGE OF ADDRESS

This is to inform you that we are relocating the American
Cyanamid Patent Law Department, with the exception of those
attorneys servicing its Cytec Business Unit, to Corporate
Headquarters in Wayne, NJ.

As of August 2, 1993, our address, telephone and fax numbers
will be:

> AMERICAN CYANAMID COMPANY
> PATENT LAW DEPARTMENT
> ONE CYANAMID PLAZA
> WAYNE, NJ 07470-8426
> UNITED STATES OF AMERICA

Telephone No. (201) 831-2000       Fax No. (201) 831-3305

Please send all further communication, EXCEPT THOSE relating to
the patent applications and patents identified IN THE ENCLOSED
LIST, to the above new address. The enclosed list relates to
patents of the Cytec Business Unit which will be divested from
American Cyanamid Company and become a separate legal entity by
the end of this year. Communications for those Cytec cases
should continue to be sent to "Cytec Patent Law" at the current
Stamford, address.

Sincerely yours,

Alphonse R. Noe, Manager
Patent Law Department
(201) 831-3125

ARN/u
Address:

PATENT MASTER REPORTER

CTEC · PATENTED CASES

| PATENT-NO | EXP-DT | C-CW | FILE ID | |
|-----------|--------|------|---------|---|
| 5161730 | 25AU2009 | ACCO | 31592-00 | USA |
| 5141804 | 25AU2009 | ACCO | 30946-01 | USA D |
| 5169878 | 22SE2009 | CC1 | 30701-03 | USA D |
| 5152803 | 04NO2007 | ACCO | 30736-04 | USA D |
| 5155174 | 13OC2009 | ACCO | 31057-01 | USA P |
| 5157095 | 20OC2009 | ACCO | 31079-01 | USA C |
| 5164453 | 17NO2009 | ACCO | 31391-00 | USA |
| 5167766 | 01DE2009 | ACCO | 31043-01 | USA P |
| 5171419 | 15DE2009 | ACCO | 31109-00 | USA |
| 5172180B | 15DE2009 | ACCO | 31320-01 | USA C |
| 5175201 | 29DE2009 | ACCO | 30641-00 | USA |
| 5180630 | 19JA2010 | ACCO | 30351-01 | USA D |
| 5180835 | 19JA2010 | ACCO | 31597-00 | USA |
| 5192604 | 09MR2010 | ACCO | 30351-02 | USA D |
| 5194512 | 16MR2010 | ACCO | 31055-02 | USA D |
| 5194673 | 16MR2010 | ACCO | 31716-00 | USA |
| (4708984) | 24NO2004 | ACCO | 30120-00 | USA |
| (4756235) | 05JL2005 | ACCO | 29187-00 | USA |
| (4868241) | 19SE2006 | ACCO | 30177-01 | USA C |
| (4882089) | 21NO2006 | ACCO | 28917-01 | USA D |
| (4891641) | 02JA2007 | ACCO | 29338-00 | USA |
| (4897435) | 30JA2007 | ACCO | 29279-00 | USA |
| (4917977) | 27MR2007 | ACCO | 29419-00 | USA D |
| (4942085) | 17JL2007 | ACCO | 31012-01 | USA P |
| (4942090) | 17JL2007 | ACCO | 30579-00 | USA D |
| (5092244) | 03MR2009 | ACCO | 29747-00 | USA |

HERC0076154

7.31.92

07/**803120**

PATENT APPLICATION SERIAL NO._____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

LA10505  12/11/91  07803120        01-1300  010  101        650.00CH  31,320-01

PTO-1556
(5/87)

HERC0076155

**PATENT APPLICATION FEE DETERMINATION RECORD**

Application or Docket Number: 803120

| | CLAIMS AS FILED - PART I | | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE | FEE | | RATE | FEE |
| BASIC FEE | | | | $ 315.00 | OR | | $ 630.00 |
| TOTAL CLAIMS | 21 minus 20 = | * 1 | x $10= | | OR | x $20= | 20 |
| INDEPENDENT CLAIMS | minus 3 = | * | x 30 = | | OR | x 60 = | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | + 100 = | | OR | + 200 = | |
| * If the difference in column 1 is less than zero, write "0" in column 2 | | | TOTAL | | OR | TOTAL | 650 |

| | CLAIMS AS AMENDED - PART II | | | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| | Total * | Minus ** | = | x $10= | | OR | x $20= | |
| | Independent * | Minus *** | = | x 30 = | | OR | x 60= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | + 100 = | | OR | + 200 = | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |
| **AMENDMENT B** | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| | Total * | Minus ** | = | x $10= | | OR | x $20= | |
| | Independent * | Minus *** | = | x 30 = | | OR | x 60 = | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | + 100 = | | OR | + 200 = | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |
| **AMENDMENT C** | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| | Total * | Minus ** | = | x $10= | | OR | x $20= | |
| | Independent * | Minus *** | = | x 30 = | | OR | x 60 = | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | + 100 = | | OR | + 200 = | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
Rev. 12-90

For Fees Effective Nov. 5, 1990    Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

HERC0076156



HERC0076157

Staple Issue Slip Here

| POSITION | INIT | DATE |
|---|---|---|
| CLASSIFIER | 8 | 12-13-91 |
| EXAMINER | 258 | 12/13 |
| VERIFIER | 290 | 12.17-91 |
| TYPIST | | |
| CORPS CORR. | | |
| SPEC. HAND. | | |
| FILE MAINT. | | |

## INDEX OF CLAIMS

SYMBOLS
- — ... Rejected
- = ... Allowed
- – (Through numeral) Canceled
- + ... Restricted
- N ... Non-elected
- I ... Interference
- A ... Appeal
- O ... Objected

| Final | Original | 1-31-92 | 7-74-92 | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2 | ✓ | = | | | | | | | | |
| 2 | 3 | ✓ | = | | | | | | | | |
| 3 | 4 | | | | | | | | | | |
| 4 | 5 | | | | | | | | | | |
| 5 | 6 | | | | | | | | | | |
| 6 | 7 | | | | | | | | | | |
| 7 | 8 | | | | | | | | | | |
| 8 | 9 | | | | | | | | | | |
| 9 | 10 | | | | | | | | | | |
| 10 | 11 | | | | | | | | | | |
| 11 | 12 | | | | | | | | | | |
| 12 | 13 | | | | | | | | | | |
| 13 | 14 | | | | | | | | | | |
| 14 | 15 | | | | | | | | | | |
| 15 | 16 | | | | | | | | | | |
| 16 | 17 | | | | | | | | | | |
| 17 | 18 | | | | | | | | | | |
| 18 | 19 | | | | | | | | | | |
| 19 | 20 | | | | | | | | | | |
| 20 | 21 | | | | | | | | | | |
| 21 | 22 | ✓ | = | | | | | | | | |
| | 23 | | | | | | | | | | |
| | 24 | | | | | | | | | | |
| | 25 | | | | | | | | | | |
| | 26 | | | | | | | | | | |
| | 27 | | | | | | | | | | |
| | 28 | | | | | | | | | | |
| | 29 | | | | | | | | | | |
| | 30 | | | | | | | | | | |
| | 31 | | | | | | | | | | |
| | 32 | | | | | | | | | | |
| | 33 | | | | | | | | | | |
| | 34 | | | | | | | | | | |
| | 35 | | | | | | | | | | |
| | 36 | | | | | | | | | | |
| | 37 | | | | | | | | | | |
| | 38 | | | | | | | | | | |
| | 39 | | | | | | | | | | |
| | 40 | | | | | | | | | | |
| | 41 | | | | | | | | | | |
| | 42 | | | | | | | | | | |
| | 43 | | | | | | | | | | |
| | 44 | | | | | | | | | | |
| | 45 | | | | | | | | | | |
| | 46 | | | | | | | | | | |
| | 47 | | | | | | | | | | |
| | 48 | | | | | | | | | | |
| | 49 | | | | | | | | | | |
| | 50 | | | | | | | | | | |

| Final | Original | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 51 | | | | | | | | |
| | 52 | | | | | | | | |
| | 53 | | | | | | | | |
| | 54 | | | | | | | | |
| | 55 | | | | | | | | |
| | 56 | | | | | | | | |
| | 57 | | | | | | | | |
| | 58 | | | | | | | | |
| | 59 | | | | | | | | |
| | 60 | | | | | | | | |
| | 61 | | | | | | | | |
| | 62 | | | | | | | | |
| | 63 | | | | | | | | |
| | 64 | | | | | | | | |
| | 65 | | | | | | | | |
| | 66 | | | | | | | | |
| | 67 | | | | | | | | |
| | 68 | | | | | | | | |
| | 69 | | | | | | | | |
| | 70 | | | | | | | | |
| | 71 | | | | | | | | |
| | 72 | | | | | | | | |
| | 73 | | | | | | | | |
| | 74 | | | | | | | | |
| | 75 | | | | | | | | |
| | 76 | | | | | | | | |
| | 77 | | | | | | | | |
| | 78 | | | | | | | | |
| | 79 | | | | | | | | |
| | 80 | | | | | | | | |
| | 81 | | | | | | | | |
| | 82 | | | | | | | | |
| | 83 | | | | | | | | |
| | 84 | | | | | | | | |
| | 85 | | | | | | | | |
| | 86 | | | | | | | | |
| | 87 | | | | | | | | |
| | 88 | | | | | | | | |
| | 89 | | | | | | | | |
| | 90 | | | | | | | | |
| | 91 | | | | | | | | |
| | 92 | | | | | | | | |
| | 93 | | | | | | | | |
| | 94 | | | | | | | | |
| | 95 | | | | | | | | |
| | 96 | | | | | | | | |
| | 97 | | | | | | | | |
| | 98 | | | | | | | | |
| | 99 | | | | | | | | |
| | 100 | | | | | | | | |

HERC0076158

## SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| 526 | 264 | 1-31-92 | WCC |

## SEARCH NOTES

| | Date | Exmr. |
|---|---|---|
| APS  USPAT | 7-14-92 | WCC |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| 526 | 264 | 7-14-92 | WCC |
| 526 | 303.1 | '' | '' |
| 526 | 317.1 | '' | '' |
| 526 | 207 | '' | '' |
| 526 | 213 | '' | '' |
| 525 | 107 | '' | '' |
| 525 | 193 | '' | '' |

HERC0076159