# EXHIBITS 1 - 2
# REDACTED

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CIBA SPECIALTY CHEMICALS CORPORATION, )
                                  )
          Plaintiff,           )
                                    )
          v.                       )    C. A. No. 04-293 (KAJ)
                                    )
HERCULES INCORPORATED and       )
CYTEC INDUSTRIES, INC.,          )
                                    )
          Defendants.       )

**HERCULES' RESPONSES AND OBJECTIONS TO PLAINTIFF
CIBA SPECIALTY CHEMICALS CORPORATION'S
FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1-53)**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant Hercules

Incorporated ("Hercules") hereby responds to the First Set of Requests for Admission (Nos. 1-

53) served by Plaintiff, Ciba Specialty Chemicals Corporation ("Ciba").

**GENERAL OBJECTIONS**

Hercules incorporates by reference its General Objections in its responses to Ciba's first

and second sets of document requests and first and second sets of interrogatories.

Hercules further notes that these responses are made without waiving any rights or

objections or admitting the relevance, materiality, or admissibility into evidence of the subject

matter or facts contained in any request or Hercules' responses thereto.

The following Objections apply to and are incorporated by reference in each and every

response to Plaintiff's First Set of Requests For Admission, whether or not specifically stated.

      A.      Hercules objects to Ciba's Requests and "Definitions" to the extent they attempt

to impose any obligation different from or in addition to those imposed by the Federal Rules of

Procedure or the Local Rules of the United States District Court for the District of Delaware.

B.      Hercules responds to these Requests to the best of its knowledge and only insofar as it may be deemed to have personal knowledge of information that forms the basis of any response herein. The fact that Hercules has responded to any Request in part or in full is not a waiver of any part of any objection to any Request.

C.      Hercules objects to each Request to the extent it seeks admission or denial of information not relevant to the subject matter of this action or not reasonably calculated to lead to the discovery of admissible evidence.

D.      Hercules objects to each Request to the extent that it is ambiguous, vague, or otherwise incomprehensible.

E.      Hercules objects to each Request as premature to the extent that any response would be impacted by claim construction determinations.

F.      Hercules objects to each Request to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine or otherwise privileged from disclosure.

G.      Hercules reserves the right to supplement, amend, modify, or correct its responses.

2

## HERCULES' RESPONSES

**REQUEST NO. 1**

Admit that monomers of acrylamide and acrylic acid are used in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Admitted.

**REQUEST NO. 2**

Admit that monomers of acrylamide and acrylic acid are dissolved in an aqueous solution in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Admitted.

**REQUEST NO. 3**

Admit that an aqueous solution of monomers is added to an oily phase in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Admitted.

**REQUEST NO. 4**

Admit that a chelant is added to the aqueous solution of monomers used in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Admitted.

**REQUEST NO. 5**

Admit that Versenex 80 chelant solution is added to the aqueous solution of monomers used in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Admitted.

**REQUEST NO. 6**

Admit that, in the process of manufacturing the PerForm® SP9232 product, the Versenex 80 chelant solution is added to the aqueous solution of monomers in an amount falling within the range of about 0.037 g to about 37 g per mole of total monomer(s).

**RESPONSE:**

Admitted.

**REQUEST NO. 7**

Admit that an inverse emulsion is formed in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Admitted.

**REQUEST NO. 8**

Admit that a surfactant is used in forming the inverse emulsion in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Hercules admits that the oil phase used in the manufacture of the PerForm® SP9232

product contains one or more surfactants. Hercules otherwise denies Request No. 8.

**REQUEST NO. 9**

Admit that Hypermer® B246SF polymeric surfactant is used in the process of manufacturing the PerForm® SP9232 product.

4

**RESPONSE:**

Hercules admits that the Hypermer® B246SF surfactant is used in the oil phase during the

manufacture of the PerForm® SP9232 product.  Hercules otherwise denies Request No. 9.

**REQUEST NO. 10**

Admit that, in the process of manufacturing the PerForm® SP9232 product, Hypermer® B246SF polymeric surfactant is present in an amount falling within the range of about 0.03 g to about 30 g per mole of total monomer(s).

**RESPONSE:**

Hercules admits that the Hypermer® B246SF surfactant is used in the oil phase during the

manufacture of the PerForm® SP9232 product in an amount falling within the range of about

0.03 g to about 30 g per mole of total monomers.  Hercules otherwise denies Request No. 10.

**REQUEST NO. 11**

Admit that the PerForm® SP9232 product is produced using an inverse emulsion comprising a saturated hydrocarbon.

**RESPONSE:**

Hercules admits that the manufacture of the PerForm® SP9232 product includes a water-

in-oil emulsion, and that the oil phase comprises a saturated hydrocarbon.  Hercules otherwise

denies Request No. 11.

**REQUEST NO. 12**

Admit that the PerForm® SP9232 product is produced by adding a polymerization initiator to an inverse emulsion.

**RESPONSE:**

Hercules admits that the manufacture of the PerForm® SP9232 product includes adding

an initiator to the water-in-oil emulsion.  Hercules otherwise denies Request No. 12.

5

**REQUEST NO. 13**

Admit that 2,2'-azobisisobutyronitrile (AIBN) is used as the polymerization initiator in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Hercules admits that 2,2'-azobisisobutyronitrile (AIBN) is used as the initiator in the

process of manufacturing the PerForm® SP9232 product.  Hercules otherwise denies Request No.

13.

**REQUEST NO. 14**

Admit that the 2,2'-azobisisobutyronitrile (AIBN) is added in an amount falling within the range of about 0.016 g to about 16 g per mole of total monomer(s).

**RESPONSE:**

Admitted.

**REQUEST NO. 15**

Admit that the PerForm® SP9232 product is produced by admixing (i) an aqueous solution comprising at least one ethylenically unsaturated anionic monomer and at least one crosslinking agent, (ii) an oily phase comprising at least one hydrocarbon liquid, and (iii) an effective amount of a surfactant or surfactant mixture, so as to form an inverse emulsion.

**RESPONSE:**

Denied.

**REQUEST NO. 16**

Admit that the PerForm® SP9232 product is produced by polymerizing the monomer(s) contained in the aqueous phase of an inverse emulsion comprising (i) an aqueous solution comprising at least one ethylenically unsaturated anionic monomer and at least one crosslinking agent, (ii) an oily phase comprising at least one hydrocarbon liquid, and (iii) an effective amount of a surfactant or surfactant mixture.

**RESPONSE:**

Denied.

**REQUEST NO. 17**

Admit that the number average diameter of the aqueous droplets in the inverse emulsion used to make the PerForm® SP9232 product is less than 750 nanometers.

**RESPONSE:**

Hercules has made a reasonable inquiry and the information is not known or readily

available to Hercules; accordingly, Hercules has insufficient information to admit or deny the

allegation in Request No. 17.

**REQUEST NO. 18**

Admit that a cross-linking agent is present during polymerization in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Denied.

**REQUEST NO. 19**

Admit that cross-linking occurs during polymerization of the monomer(s) in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Denied.

**REQUEST NO. 20**

Admit that the PerForm® SP9232 product is produced by recovering the polymers from an emulsion following the polymerization of the monomer(s) contained in the aqueous phase of the emulsion.

**RESPONSE:**

Denied.

**REQUEST NO. 21**

Admit that polymeric particles are formed in the process of manufacturing the PerForm®
SP9232 product.

**RESPONSE:**

Denied.

**REQUEST NO. 22**

Admit that the PerForm® SP9232 product includes anionic polymers.

**RESPONSE:**

Admitted.

**REQUEST NO. 23**

Admit that the PerForm® SP9232 product includes cross-linked polymers.

**RESPONSE:**

Denied.

**REQUEST NO. 24**

Admit that the PerForm® SP9232 product includes polymeric microbeads.

**RESPONSE:**

Denied.

**REQUEST NO. 25**

Admit that the PerForm® SP9232 product includes polymeric microparticles.

8

**RESPONSE:**

Denied.

**REQUEST NO. 26**

Admit that the monomers used in the process to make the PerForm® SP9232 product are water soluble.

**RESPONSE:**

Admitted.

**REQUEST NO. 27**

Admit that the polymeric particles of the PerForm® SP9232 product are derived solely from the polymerization of an aqueous solution of at least one monomer.

**RESPONSE:**

Denied.

**REQUEST NO. 28**

Admit that the polymeric particles of the PerForm® SP9232 product have a number average particle diameter of less than 750 nanometers.

**RESPONSE:**

Denied.

**REQUEST NO. 29**

Admit that the polymeric particles of the PerForm® SP9232 product have an unswollen number average particle diameter, as that term is defined in the patents in suit, of less than about 750 nanometers.

**RESPONSE:**

Denied.

**REQUEST NO. 30**

Admit that the polymeric particles of the PerForm® SP9232 product have a number average particle diameter of less than 500 nanometers.

**RESPONSE:**

Denied.

**REQUEST NO. 31**

Admit that the polymeric particles of the PerForm® SP9232 product have an unswollen number average particle diameter, as that term is defined in the patents in suit, of less than about 500 nanometers.

**RESPONSE:**

Denied.

**REQUEST NO. 32**

Admit that the polymeric particles of the PerForm® SP9232 product have a solution viscosity of at least about 1.1 mPa.s.

**RESPONSE:**

Denied.

**REQUEST NO. 33**

Admit that a cross-linking agent content of about 4 molar parts to 4000 parts per million, based on the monomeric units, is present during the polymerization of the monomers in the process of manufacturing the PerForm® SP9232 product.

**RESPONSE:**

Denied.

**REQUEST NO. 34**

Admit that the polymeric particles of the PerForm® SP9232 product have an ionicity of at least 1%, based on the monomeric units present in the polymer.

**RESPONSE:**

Denied.

**REQUEST NO. 35**

Admit that the polymeric particles of the PerForm® SP9232 product have an ionicity of at least 5%, based on the monomeric units present in the polymer.

**RESPONSE:**

Denied.

**REQUEST NO. 36**

Admit that the polymeric particles of the PerForm® SP9232 product include ethylenically unsaturated non-ionic monomer units.

**RESPONSE:**

Denied.

**REQUEST NO. 37**

Admit that the polymeric particles of the PerForm® SP9232 product include anionic monomer units.

**RESPONSE:**

Denied.

**REQUEST NO. 38**

Admit that the polymeric particles of the PerForm® SP9232 product include a cross-linking agent in an amount falling within the range of about 4 molar parts to about 4,000 parts per million, based on the monomeric units present in the polymer.

**RESPONSE:**

Denied.

**REQUEST NO. 39**

Admit that the PerForm® SP9232 product was marketed to and used by customers that had previously used the Polyflex® product.

**RESPONSE:**

Hercules admits that the PerForm® SP9232 product was marketed to and used by customers that had previously used the Polyflex® product as well as customers that had not previously used the Polyflex® product. Hercules otherwise denies Request No. 39.

**REQUEST NO. 40**

Admit that the PerForm® SP9232 product was marketed as a substitute for the Polyflex® product.

**RESPONSE:**

Denied.

**REQUEST NO. 41**

Admit that the Perform® SP9232 product was marketed as equivalent in performance to the Polyflex® product.

**RESPONSE:**

Denied. The PerForm® SP9232 product is superior to the Polyflex® product.

**REQUEST NO. 42**

Admit that the PerForm® SP9232 product is added to an aqueous paper furnish in an amount falling within the range of about 0.05 to about 20 pounds per ton, based on the dry weight of the paper furnish solids.

**RESPONSE:**

Denied. The customer modifies the PerForm® SP9232 product before adding it to the paper furnish.

**REQUEST NO. 43**

Admit that the PerForm® SP9232 product is used in a method of making paper in which a cationic starch is added to the paper furnish in an amount falling within the range of about 0.05 to about 20 pounds per ton, based on the dry weight of the paper furnish solids.

**RESPONSE:**

Upon information and belief, Hercules admits that the PerForm® SP9232 product may or may not be used in a method of making paper in which a cationic starch is added to the paper furnish in an amount falling within the range of about 0.05 to about 20 pounds per ton, based on the dry weight of the paper furnish solids. Hercules otherwise denies Request No. 43.

**REQUEST NO. 44**

Admit that the PerForm® SP9232 product is used in a method of making paper in which a high molecular weight, cationic polymer is added to the paper furnish in an amount falling within the range of about 0.05 to about 20 pounds per ton, based on the dry weight of the paper furnish solids.

**RESPONSE:**

Upon information and belief, Hercules admits that the PerForm® SP9232 product may or may not be used in a method of making paper in which a high molecular weight, cationic polymer is added to the paper furnish in an amount falling within the range of about 0.05 to about 20 pounds per ton, based on the dry weight of the paper furnish solids. Hercules otherwise denies Request No. 44.

**REQUEST NO. 45**

Admit that the PerForm® SP9232 product is used in a method of making paper in which an ionic polysaccharide is added to the paper furnish in an amount falling within the range of about 0.05 to about 20 pounds per ton, based on the dry weight of the paper furnish solids.

**RESPONSE:**

Upon information and belief, Hercules admits that the PerForm® SP9232 product may or may not be used in a method of making paper in which an ionic polysaccharide is added to the paper furnish in an amount falling within the range of about 0.05 to about 20 pounds per ton, based on the dry weight of the paper furnish solids. Hercules otherwise denies Request No. 45.

**REQUEST NO. 46**

Admit that the PerForm® SP9232 product is used in a method of making paper in which a cationic polysaccharide is added to the paper furnish.

**RESPONSE:**

Upon information and belief, Hercules admits that the PerForm® SP9232 product may or may not be used in a method of making paper in which a cationic polysaccharide is added to the paper furnish. Hercules otherwise denies Request No. 46.

**REQUEST NO. 47**

Admit that Cytec sold the retention and drainage aids portion of its paper chemicals business, including the Polyflex® products and the patents in suit, to Ciba for valuable consideration exceeding 20 million U.S. dollars.

**RESPONSE:**

Hercules has made reasonable inquiry and the information is not known or readily available to Hercules; accordingly, Hercules has insufficient information to admit or deny Request No. 47.

14

**REQUEST NO. 48**

Admit that Cytec transferred title in the patents in suit to Ciba.

**RESPONSE:**

Upon information and belief, Hercules admits that it is aware that Cytec Technology

Corp. transferred title to the patents-in-suit to Ciba Specialty Chemicals Water Treatment, Inc.

Hercules otherwise denies Request No. 48.

**REQUEST NO. 49**

Admit that, at the time the patents in suit were sold to Ciba, Hercules and Cytec were
under a contract with each other relating to the manufacture and sales of the Polyflex® product,
which was covered by the patents in suit.

**RESPONSE:**

Hercules objects to the phrase "under a contract with each other" as vague and

ambiguous. Hercules admits that at the time Cytec Technology Corp. transferred the patents-in-

suit, Cytec manufactured the Polyflex® product for Hercules pursuant to a nonexclusive

Distribution Agreement. Hercules otherwise denies Request No. 49.

**REQUEST NO. 50**

Admit that Hercules and Cytec were supposed to cease production of co-polymers of
acrylamide and acrylic acid that that were encompassed by the patents in suit by a specific time
after such patents were sold to Ciba.

**RESPONSE:**

Denied as to Hercules. As to Cytec, Hercules has made reasonable inquiry and the

information is not known or readily available to Hercules, therefore, denied.

15

**REQUEST NO. 51**

Admit that Hercules and Cytec continued selling co-polymers of acrylamide and acrylic acid after the specific time by which they were to cease production of co-polymer of acrylamide and acrylic acid.

**RESPONSE:**

Denied as to Hercules. As to Cytec, Hercules has made reasonable inquiry and the

information is not known or readily available to Hercules, therefore, denied.

**REQUEST NO. 52**

Admit that Hercules has agreed to indemnify Cytec against infringement of the patents in suit through Cytec's continued production of co-polymers of acrylic acid and acrylamide.

**RESPONSE:**

Hercules objects to this request for seeking an admission of facts that are not relevant to

any claim or defense in this case.

**REQUEST NO. 53**

Admit that Hercules was aware of the contemplated sale of the patents in suit to Ciba, before such sale was executed.

**RESPONSE:**

Upon information and belief, denied.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
A. Neal Seth
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

By: _____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

Dated: May 18, 2005

*Attorneys for Defendant*
*Hercules Incorporated*

682808

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 18, 2005, true and correct copies of

the within document were caused to be served on the attorney of record at the following

addresses as indicated:

### VIA HAND DELIVERY

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE  19899

### VIA FEDERAL EXPRESS

Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601-6780

Thomas L. Creel, P.C.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022


_____
David E. Moore

666520

## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS CORPORATION, )
                                      )
      Plaintiff,                    )
                                      )
      v.                            )    C. A. No. 04-293 (KAJ)
                                      )
HERCULES INCORPORATED and             )
CYTEC INDUSTRIES, INC.,               )
                                      )
      Defendants.                   )

### NOTICE OF SERVICE

The undersigned, counsel for Defendant Hercules, Inc., hereby certifies that

copies of Hercules' Responses and Objections to Plaintiff Ciba Specialty Chemicals

Corporation's First Set of Requests for Admission (Nos. 1-53) were caused to be served on

May 18, 2005 on the attorneys of record at the following addresses as indicated:

### VIA HAND DELIVERY

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE 19899

### VIA FEDERAL EXPRESS

Gordon R. Coons                    Thomas L. Creel, P.C.
Eley O. Thompson                   Marta E. Gross
Gregory C. Bays                    Goodwin Procter LLP
Leydig, Voit & Mayer, Ltd.         599 Lexington Avenue
Two Prudential Plaza, Suite 4900   New York, NY 10022
Chicago, IL 60601-6780

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
A. Neal Seth
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

By: _____

   Richard L. Horwitz (#2246)
   David E. Moore (#3983)
   Hercules Plaza, 6th Floor
   1313 N. Market Street
   P.O. Box 951
   Wilmington, DE  19899-0951
   Tel:  (302) 984-6000
   rhorwitz@potteranderson.com
   dmoore@potteranderson.com

Dated:  May 18, 2005

*Attorneys for Defendant*
*Hercules Incorporated*

682809

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 18, 2005, the attached

document was hand-delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE  19899

I hereby certify that on May 18, 2005, I have Federal Expressed the

foregoing document(s) to the following non-registered participants:

Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601-6780

Thomas L. Creel, P.C.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY  10022

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
Telephone:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

672306

# EXHIBIT 4
# REDACTED