3

X denotes O, NH or COO,

$R_1$ is a higher aliphatic, cycloaliphatic, araliphatic or aromatic hydrocarbon radical having 6–30 C atoms, and

n is an integer $\geqq 2$,

and the cationic auxiliary emulsifier being of the formula

$$R_2 \overset{R_3}{\underset{R_4}{\overset{\oplus}{N}}} R_5 \quad Y^{\ominus} \qquad (III)$$

wherein

$R_2$ and $R_3$ represent higher aliphatic or araliphatic hydrocarbon radicals having 6 to 20 C atoms,

$R_4$ and $R_5$ represent lower aliphatic hydrocarbon radicals having 1 to 6 C atoms and

$Y^{\ominus}$ represents a halide ion.

The chemically very pure terpolymer of N,N-dimethylaminoethyl(meth)acrylate, styrene and acrylonitrile is quaternised in an organic medium prior to the addition of acids. Acids are then added, and undissolved material dissolves to give aqueous solutions having a concentration of 10 to 30% by weight, preferably 15 to 25% by weight. The emulsifier solutions thus obtained can then be freed from organic solvent by distillation; however, it is not necessary to remove the organic solvent, since the solvent does not in general interfere in the further course of the reaction in the emulsion polymerisation.

For the emulsification procedure, it is sufficient if the quaternised cationic terpolymers are employed for the emulsion polymerisation without further additives. In some cases, however, it is found to be very advantageous if oligomeric non-ionic and/or low molecular weight cationic auxiliary emulsifiers are employed, in proportions of 1 to 40% by weight, preferably 3 to 20% by weight, relative to the cationic emulsifier, together with the polymeric cationic auxiliary emulsifier.

Suitable non-ionic auxiliary emulsifiers are reaction products of aliphatic, araliphatic, cycloaliphatic or aromatic carboxylic acids, alcohols, phenol derivatives or amines with epoxides, such as, for example, ethylene oxide.

Examples of these are reaction products of ethylene oxide with carboxylic acids, such as, for example, lauric acid, stearic acid, oleic acid, the carboxylic acids of castor oil, abietic acid, with relatively long-chain alcohols, such as oleyl alcohol, lauryl alcohol or stearyl alcohol, with phenol derivatives, such as, for example, substituted benzylphenols, phenylphenols or nonylphenol, and with relatively long-chain amines, such as, for example, dodecylamine and stearylamine. The reaction products with ethylene oxide are oligoethers or polyethers having degrees of polymerisation between 2 and 100, preferably from 5 to 50.

Suitable low molecular weight cationic auxiliary emulsifiers are quaternised ammonium salts, such as, for example, benzyldodecyl-dimethyl-ammonium chloride. The stated auxiliary emulsifiers effect additional emulsification of the monomer mixture and in some cases increase the stability of colloidal sizing agents. However, it is not advisable to use excessively high amounts of these auxiliary dispersants, since in such a case undesired foaming can easily occur.

Acrylates and methacrylates which are preferably employed as comonomers in the free radical emulsion copolymerisation are those compounds which, with the acrylonitrile/styrene or methacrylonitrile/styrene mixtures or with styrene alone, form copolymers having film-formation temperatures of below 100° C.

Copolymers which have higher film-formation temperatures because of the position of their glass transition temperature have an unsatisfactory sizing action. Compounds which are suitable in principle are acrylates, such as methyl, ethyl, n-butyl and 2-ethylhexyl acrylate, and methacrylates, such as methyl methacrylate and n-butyl methacrylate. They can be copolymerised individually or as mixtures with acrylonitrile/styrene, methacrylonitrile styrene or styrene alone. The content of styrene can be between 5 and 95%, preferably 10 to 80% by weight, and that of acrylonitrile or methacrylonitrile can be between 0 and 90% by weight, preferably between 0 and 70% by weight. Because of their tack, formulations containing too small an amount of styrene or (meth)acrylonitrile styrene in the copolymer can be troublesome during paper manufacture; in the case of formulations containing a very large amount of styrene or styrene/(meth)acrylonitrile, sizing of the paper is unsatisfactory.

Preferred initiators for the emulsion polymerisation are water-soluble non-ionic peroxides which donate free radicals, such as hydrogen peroxide and t-butyl hydroperoxide, and water-soluble azo compounds, as described in, for example, German Offenlegungsschrift No. 2,841,045. Other suitable initiators are redox systems which consist of peroxide initiators and reducing agents, such as amines, polyamines, thiourea, iron(II) salts etc. Other suitable initiators are water-insoluble initiators, such as azoisobutyronitrile and benzoyl peroxide. The latter are in solution virtually only in the organic phase. The stated initiators are added in amounts of 0.1 to 5% by weight, preferably 0.3 to 3.0% by weight, relative to the monomer mixture.

The molecular weights of the polymers can be regulated by using customary regulators, for example n-dodecylmercaptan, diisopropyl xanthogen disulphide, thioglycol and thioglycerol. They are added in amounts of 0.1 to 2% by weight, relative to the monomer mixture.

The emulsion polymerisation in an aqueous medium can be carried out by known polymerisation processes, both discontinuously and continuously, or by the feed method. The continuous method and the feed method are particularly preferred. In the latter method, water is initially introduced together with some or all of the emulsifier system and, if appropriate, some of the monomer mixture, under a nitrogen atmosphere, and heated to the polymerisation temperature of 20° to 150° C., preferably 50° to 100° C., and the monomer mixture and the initiator and, if appropriate, the emulsifier are added dropwise in the course of 0.5 to 10 hours, preferably 1 to 6 hours.

After some time, reactivation is effected, and the reaction is completed, the conversion reaching about 99.0% to 99.9% by weight. In this procedure, the weight ratio of emulsifier to polymer is 1:9 to 7:3, preferably 1:4 to 1:1. Residual monomers and any organic solvent still present are removed by distillation in vacuo after the emulsion copolymerisation. Thereafter, water is added until an approx. 10 to 35% strength by weight aqueous colloidal solution results. The viscosity of these dispersions, measured in a rotary viscometer at 20° C., is in general less than 50 mPa.s. The mean particle diame-

CIBA 038973

4,659,431

5

ters measured by means of laser scattering spectroscopy, are between 15 and 200 nm, preferably between 20 and 150 nm, depending on the reaction conditions. Dispersions having particle sizes smaller than 50 nm appear transparent, while those having larger particles appear cloudy. Furthermore, the stability of the dispersions having particle sizes smaller than 100 nm is better than that of the dispersions having particle sizes larger than 100 nm, and this can be shown by, for example, exposure to heat at temperatures above 50° C. In the case of relatively coarse-particled dispersions, the amount of sediment is generally substantially greater than in the case of fine-particled dispersions.

If, on the other hand, emulsion polymerisations are carried out according to German Offenlegungsschrift No. 2,814,527, using cationic dispersants in which the content of basic comonomers is not more than 20% by weight, the resulting dispersions are relatively unstable and coarse-particled and have mean particle sizes between 200 and 300 nm.

The stability of the colloidal sizing agents according to the invention is also increased as a result of some of the polymer being grafted onto the polymeric emulsifier, which is present in relatively large amounts. Such grafting reactions, which are initiated by the emulsifier by means of transfer reactions, are known in the literature (see H. Gerrens, Fortschritte der Hochpolymer-Forschung (Advances in high polymer research), Volume 1 (1959), page 300).

The paper sizing agents according to the invention can be employed by all methods customarily used for surface sizing and engine sizing in paper manufacture.

The advantages over sizing agents according to German Offenlegungsschrift No. 1,621,688, based on a relatively unstable mixture of a cationic latex with a polycation based on styrene and maleic anhydride, are the fact that the sizing action is substantially independent of pH, the low tendency to settle out in the form of sediments, and the low tendency to foam. The very stable transparent, or only slightly cloudy, colloidal solutions of the cationic paper sizing agents according to the invention can be processed without problems, in contrast to the unstable dispersions according to German Offenlegungsschrift No. 1,621,688. They guarantee absolute homogeneity of the sized paper and have a good or outstanding sizing action on virtually all papers, the sizing of aluminium sulphate-free paper being particularly singled out. In this context, the outstanding sizing of chalk-containing paper should be particularly mentioned.

The outstanding sizing of low-quality paper in comparison with the dispersions according to European Patent Specification No. 0,058,313 should be mentioned, as will be illustrated in the examples below.

### EXAMPLE 1

#### Preparation of the cationic emulsifiers

5,720 g of isopropanol are initially introduced into a 40 l stirred autoclave. The autoclave is flushed thoroughly with nitrogen and then heated to 80° C. At this temperature, the mixtures I and the solutions II in Table 1 are metered in over about 4 hours, in the absence of air. Stirring is then continued for 1 to 2 hours, after which the mixture is reactivated with III. Stirring is then continued for about 6 to 12 hours at 80° C.

When the terpolymerisation is complete, the mixture is cooled to 40° C. or to 50° C., and the amounts of quaternising agents (IV) shown in Table I are metered

6

in. Stirring is continued for 1 to 5 hours at 40° or 50° C., after which the amounts of acetic acid likewise shown in Table I are added. Approx. 63–65 l of deionised water at a temperature of approx. 60° C. are initially introduced into a 120 l stock vessel which is provided with a stirrer, and the contents of the 40 l autoclave are combined with this.

A homogeneous aqueous solution is prepared in a short time by thorough stirring. The aqueous solutions, which still contain organic solvent, possess properties which are also shown in Table I.

TABLE I

| Emulsifier | A | B | C | D |
|---|---|---|---|---|
| Polymerisation temperature (°C.) | 80 | 80 | 80 | 80 |
| Temperature during quaternisation (°C.) | 40 | 40 | 50 | 50 |
| I. N,N—Diethylaminoethyl methacrylate (g) | 3217 | 2257 | 3217 | 3217 |
| Styrene (g) | 10224 | 10608 | 10224 | 10224 |
| Acrylonitrile (g) | 2644 | 3219 | 2644 | 2644 |
| II. Azoisobutyronitrile (g) | 530 | 600 | 590 | 590 |
| Acetone (g) | 3000 | 3000 | 3000 | 3000 |
| III. Azoisobutyronitrile (g) | 75 | 75 | 70 | 70 |
| Acetone (g) | 300 | 300 | 300 | 300 |
| IV. Epichlorohydrin (g) | 1896 | 1330 | — | — |
| Ethyl-chloroacetate (g) | — | — | 1337 | — |
| Allyl chloride (g) | — | — | — | 1254 |
| V. Acetic acid (g) | 2630 | 2630 | 2370 | 2370 |
| Concentration (% by weight) | 20.2 | 20.4 | 20.7 | 20.3 |
| Viscosity at 20° C. (mPa.s)* | 70–100 | 550–820 | 250–350 | 400–550 |
| pH value | 3.5 | 3.7 | 3.0 | 3.2 |
| Conversion, relative to the monomer mixture (% by weight) | 99.5 | 99.7 | 99.6 | 99.8 |
| Appearance of the emulsifier solution | clear | clear | clear | clear |

*the viscosity is not a constant since intrinsic viscosity is present.

### EXAMPLES 2 TO 4

400 g of deionised water are initially introduced into a 2 l four-necked flask provided with a stirrer, a reflux condenser and a gas inlet and outlet. The water is then thoroughly boiled under a nitrogen atmosphere, and is cooled to 70° C. Thereafter, the emulsions I (see Table II) are added to the vessel, after which nitrogen is passed over. 0.7 g of a 35% strength hydrogen peroxide solution is then added. After approx. 15–30 minutes, the mixtures II and 8 g of a 35% strength hydrogen peroxide solution which is diluted with 100 g of deionised water are metered in simultaneously in the course of 2 to 3 hours. Stirring is then continued for a further 2 to 5 hours, after which the mixture is reactivated with 1 to 2 g of hydrogen peroxide solution (35%), and polymerisation is continued for approx. 2 to 10 hours. Thereafter, approx. 50 to 150 ml of a mixture of water, organic solvent (isopropanol and acetone) and residual monomers are distilled off in a vacuum from a waterpump, and are replaced by 50 to 150 ml of deionised water. The physicochemical properties of the colloidal solutions thus obtained are likewise shown in Table II.

CIBA 038974

4,659,431

7

### TABLE II

| Example | 2 | 3 | 4 |
|---|---|---|---|
| I. Emulsifier A (see Table 1) (g) | 500 | 500 | 500 |
| Styrene (g) | 3.0 | 5.0 | 7.0 |
| n-Butyl acrylate (g) | 7.0 | 5.0 | 3.0 |
| II. Styrene (g) | 57.0 | 95.0 | 133.0 |
| n-Butyl acrylate (g) | 133.0 | 95.0 | 57.0 |
| Concentration (% by weight) | 25.8 | 25.2 | 25.7 |
| Viscosity at 20° C. (mPa.s) | <50 | <50 | <50 |
| pH value | 4.0 | 4.1 | 4.1 |
| Conversion, relative to the monomer mixture before the distillation (% by weight) | 99.5 | 99.8 | 99.7 |
| Appearance of the colloidal solution | slightly cloudy | trans-parent | trans-parent |
| Mean particle diameter $d_z$ (nm) | 38 ± 2 | 35 ± 2 | 30 ± 2 |

### EXAMPLES 5 AND 6

The colloidal sizing agents 5 and 6 are prepared in the same way as the corresponding sizing agents 3 and 4, except that the emulsifier A is replaced by the emulsifier B (see Table I). As can be seen in Table III, the physicochemical properties of the colloidal solutions are equivalent to those of Examples 2–4.

### TABLE III

| Example | 5 | 6 |
|---|---|---|
| I. Emulsifier B (see Table 1) (g) | 500 | 500 |
| Styrene (g) | 5.0 | 7.0 |
| n-Butyl acrylate (g) | 5.0 | 3.0 |
| II. Styrene (g) | 95.0 | 133.0 |
| n-Butyl acrylate (g) | 95.0 | 57.0 |
| Concentration (% by weight) | 25.3 | 25.5 |
| Viscosity at 20° C. (mPa.s) | <50 | <50 |
| pH value | 4.0 | 4.0 |
| Conversion, relative to the monomer mixture before the distillation (% by weight) | ~99.8 | ~99.8 |
| Appearance of the colloidal solution | trans-parent | slightly cloudy |
| Mean particle diameter $d_z$ (nm) | 40 | 53 |

### EXAMPLES 7 AND 8

The colloidal sizing agents 7 and 8 are prepared in the same way as the sizing agents 2–4, the emulsifier A being retained, but some of the styrene or n-butyl acrylate being replaced by acrylonitrile. Table IV lists the compositions of the monomer mixtures and the physicochemical properties of the colloidal sizing agents.

### TABLE IV

| Example | 7 | 8 |
|---|---|---|
| I. Emulsifier A (see Table 1) (g) | 500 | 500 |
| Acrylonitrile (g) | 2.5 | 3.3 |
| Styrene (g) | 2.5 | 3.3 |
| n-Butyl acrylate (g) | 5.0 | 3.3 |
| II. Acrylonitrile (g) | 47.5 | 63.3 |
| Styrene (g) | 47.5 | 63.3 |
| n-Butyl acrylate (g) | 95.0 | 63.3 |
| pH value | 3.9 | 3.9 |
| Conversion, relative to the monomer mixture before the distillation (% by weight) | 99.7 | 99.6 |
| Appearance of the colloidal solution | trans-parent | trans-parent |
| Mean particle diameter $d_z$ (nm) | 53 | 39 |

### EXAMPLES 9 AND 10

The colloidal sizing agents 9 and 10 are prepared in the same way as sizing agents 2–4, except that emulsifier A is replaced by the emulsifiers C and D (see Table I), in the amounts indicated in Table V. Table V also lists

8

the physicochemical properties of the paper sizing agents, in addition to the monomer mixtures.

### TABLE V

| Example | 9 | 10 |
|---|---|---|
| I. Emulsifier C (g) | 500 | — |
| Emulsifier D (g) | — | 500 |
| Styrene (g) | 5.0 | 5.0 |
| n-Butyl acrylate (g) | 5.0 | 5.0 |
| II. Styrene (g) | 95.0 | 95.0 |
| n-Butyl acrylate (g) | 95.0 | 95.0 |
| Concentration (% by weight) | 25.7 | 25.5 |
| Viscosity at 20° C. (mPa.s) | <50 | <50 |
| pH value | 3.3 | 3.5 |
| Appearance of the colloidal solution | slightly cloudy | slightly cloudy |
| Mean particle diameter $d_z$ (nm) | 40 | 38 |

### EXAMPLES 11 AND 12 (WITH AUXILIARY EMULSIFIERS)

400 g of deionised water are initially introduced into a 2 l four-necked flask provided with a reflux condenser, a stirrer and a gas inlet and outlet, and are boiled thoroughly under a nitrogen atmosphere. Thereafter, the water is cooled to 70° C., and mixture I (see Table VI) is metered in. After thorough flushing with nitrogen, 0.5 g of a 35% strength by weight hydrogen peroxide solution is added. After a further 15 minutes, the mixtures II and III are metered in uniformly in the course of 2 hours. The mixture is then stirred for 3 hours at 70° C., after which 1 g of hydrogen peroxide solution (35% strength) is added, and stirring is continued for 3 hours. 50 ml of solvent and residual monomers are then distilled off in a vacuum from a waterpump, and are replaced by 50 ml of deionised water. The physicochemical data for the sizing agents are listed in Table VI.

### TABLE VI

| Example | 11 | 12 |
|---|---|---|
| I. Emulsifier A (g) | 500 | 500 |
| Auxiliary emulsifier E* (g) | 10 | — |
| Auxiliary emulsifier F** (g) | — | 10 |
| Styrene (g) | 5.0 | 5.0 |
| n-Butyl acrylate (g) | 5.0 | 5.0 |
| II. Styrene (g) | 95 | 95 |
| n-Butyl acrylate (g) | 95 | 95 |
| III. Hydrogen peroxide (35% strength) (g) | 6.0 | 6.0 |
| Deionised water (g) | 100 | 100 |
| Concentration (% by weight) | 25.5 | 25.2 |
| Viscosity at 20° C. (mPa.s) | <20 | <20 |
| pH value | 4.1 | 4.2 |
| Appearance of the colloidal solution | virtually trans-parent | virtually trans-parent |
| Mean particle diameter (nm) | 48 | 42 |

Explanation of Table VI
* Auxiliary emulsifier E: Reaction product of benzylphenylphenol with a polyether which contains hydroxyl groups and is obtained from ethylene oxide.
** Auxiliary emulsifier F: Reaction product of stearic acid with a polyether which contains hydroxyl groups and is obtained from ethylene oxide.

A solution of 5% by weight of starch (Perfectamyl® A4692 from AVEBE) and 0.20 or 0.25% by weight of the sizing agent to be tested (calculated as active substance) in 94.80 or 94.75% by weight of water is used as the sizing liquor for the surface sizing.

Sizing is carried out using a type HF laboratory size press from Werner Mathis, Zurich. In the size press, the sizing liquor is at a temperature of approx. 20° C. The paper is drawn through at a speed of 4 m/minute.

The surface-sized papers are dried on a drying cylinder in the course of approx. 45 sec of approx. 100° C.

CIBA 038975

4,659,431

9

Before the sizing test, the papers are conditioned for 2 hours at room temperature. The sizing test is carried out in accordance with DIN 53132. In this test, the water absorption in g/m$^2$ after a test time of 60 seconds (Cobb$_{60}$) is determined.

### USE EXAMPLE I

This example illustrates the high efficiency of some sizing agents on old paper, so-called low-quality paper I, the composition of which is not defined in any more detail. The comparative substance used is a sizing agent according to European Patent Specification No. 0058313 (sizing agent 2)—referred to here as M.

In the case of low-quality paper I, the pH value in the headbox is approx. 7, the water absorption in the laboratory size press is approx. 60% by weight, and the weight of the paper is 100 g/m$^2$.

#### TABLE VII

| Sizing agent from Example: | Surface sizing of low-quality paper I | |
|---|---|---|
| | Cobb$_{60}$ in g/m$^2$ when | |
| | 0.20% by weight of sizing agent (relative to pure active substance) is added to the liquor: | 0.25% by weight |
| 3 | 21.9 | 23.3 |
| 5 | 24.5 | 24.0 |
| 7 | 27.5 | 26.7 |
| 9 | 24.2 | 23.7 |
| M | 57.2 | 36.3 |

In the absence of a sizing agent, the water absorption is 137 g/m$^2$.

### USE EXAMPLE II

This example once again illustrates the high efficiency of a number of sizing agents on low-quality paper II, which has a composition similar to that of low-quality paper I.

The pH value in the headbox is 6.5, the water absorption in the laboratory size press is approx. 50% by weight, and the weight of the paper is 110 g/m$^2$.

#### TABLE VIII

| Sizing agent from Example: | Surface sizing of low-quality paper II | |
|---|---|---|
| | Cobb$_{60}$ in g/m$^2$ when | |
| | 0.20% by weight of sizing agent (relative to pure active substance) is added to the liquor: | 0.25% by weight |
| 3 | 27.4 | 26.1 |
| 5 | 28.9 | 27.3 |
| 7 | 35.2 | 32.2 |
| 9 | 26.9 | 25.8 |
| M | 48.3 | 39.5 |

In the absence of a sizing agent, the water absorption is 133 g/m$^2$.

We claim:

1. A cationic sizing agent for paper, in the form of an aqueous colloidal solution having mean particle diameters of 15 to 200 nm, wherein said sizing agent is obtained by a method in which a water-soluble cationic chemically pure terpolymer emulsifier consisting of
(a) 7–40% by weight of N,N-dimethylaminoethyl acrylate and/or methacrylate,
(b) 40–80% by weight of styrene and
(c) 4–40% by weight of acrylonitrile
is dissolved in an aqueous medium, the sum of the components (a) to (c) always being 100% by weight and at least 10% of the N,N-dimethylamino groups of the terpolymer being quaternized and the remainder being protonated, and, in the presence of 10 to 70% by

10

weight, relative to the monomer mixture below, of this emulsifier,
(d) 0 to 90% by weight of acrylonitrile and/or methacrylonitrile,
(e) 5 to 95% by weight of styrene and
(f) 5 to 95% by weight of an acrylic and/or methacrylic acid ester of a C$_1$–C$_{12}$ alcohol having 1 to 12 C atoms in the alcohol radical,
the sum of the components (d) to (f) always being 100% by weight, are emulsified, and the emulsion thus obtained is subjected to free radical-initiated emulsion polymerization at temperatures from 20° to 150° C.

2. A sizing agent for paper according to claim 1, wherein the cationic chemically pure terpolymer emulsifier consists of
(a) 8–30% by weight of N,N-dimethylaminoethyl acrylate and/or methacrylate,
(b) 40–80% by weight of styrene and
(c) 5–35% by weight of acrylonitrile,
the sum of the components (a) to (c) always being 100% by weight, and the monomer mixture consists of
(d) 0 to 70% by weight of acrylonitrile or methacrylonitrile,
(e) 10 to 80% by weight of styrene and
(f) 10 to 80% by weight of an acrylate and/or methacrylate having 1 to 12 C atoms in the alcohol radical,
the sum of the components (d) to (f) being 100% by weight.

3. A sizing agent for paper according to claim 1, wherein a cationic and/or a non-ionic auxiliary emulsifier is employed in addition to the polymeric cationic emulsifier according to claim 1, in amounts of 1 to 40% by weight, relative to the above cationic emulsifier, the non-ionic emulsifier being of the formula

$$R_1\text{—}X\text{—}(CH_2\text{—}CH_2\text{—}O)_n\text{—}H$$

wherein
X denotes O, NH or COO,
R$_1$ is a higher aliphatic, cycloaliphatic, araliphatic or aromatic hydrocarbon radical having 6–30 C atoms, and
n is an integer $\geqq 2$,
and the cationic auxiliary emulsifier being of the formula



(III)

wherein
R$_2$ and R$_3$ represent higher aliphatic or araliphatic hydrocarbon radicals having 6 to 20 C atoms
R$_4$ and R$_5$ represent lower aliphatic hydrocarbon radicals having 1 to 6 C atoms and
Y$\ominus$ represents a halide ion.

4. A sizing agent according to claim 1, wherein the weight ratio of the polymeric cationic emulsifier to the monomer mixture of (d) to (f) is 1:4 to 1:1.

5. A sizing agent according to claim 1, wherein the completely polymerised colloidal solution has a mean particle diameter between 20 and 150 nm.

6. A process for the preparation of a cationic sizing agent in the form of an aqueous colloidal solution having mean particle diameters of 15 to 200 nm, wherein a water-soluble cationic chemically pure terpolymer emulsifier consisting of

CIBA 038976

4,659,431

11

(a) 7–40% by weight of N,N-dimethylaminoethyl acrylate and/or methacrylate,

(b) 40–80% by weight of styrene and

(c) 4–40% by weight of acrylonitrile

is dissolved in an aqueous medium, the sum of the components (a) to (c) always being 100% by weight and at least 10% of the N,N-dimethylamine groups of the terpolymer being quaternized and the remainder being protonated, and, in the presence of 10 to 70% by weight, relative to the monomer mixture below, of this emulsifier

(d) 0 to 90% by weight of acrylonitrile and/or methacrylonitrile,

(e) 5 to 95% by weight of styrene and

12

(f) 5 to 95% by weight of an acrylic and/or methacrylic acid ester of a $C_1$–$C_{12}$ alcohol having 1 to 12 C atoms in the alcohol radical,

the sum of the components (d) to (f) always being 100% by weight, are emulsified, and the emulsion thus obtained is subjected to free radical-initiated emulsion polymerisation at temperatures from 20° to 150° C.

7. A process according to claim 6, wherein the emulsion polymerization is initiated with a water-soluble non-ionic peroxide and/or an azo compound which donates free radicals in amounts of 0.5 to 5% by weight, relative to the monomer mixture.

8. A process according to claim 7, wherein the polymerization is initiated with a water-soluble non-ionic peroxide and/or an azo compound which donates free radicals as a redox system.

* * * * *

CIBA 038977



RECEIVED

Docket No: 31.043-*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:    GROUP 130
DAN S. HONIG
ELIETH HARRIS

Serial No: 07/540,667          Group Art Unit: 133
Filed: June 18, 1990
For: CHARGED ORGANIC          Examiner: C. Friedman
    POLYMER MICROBEADS
    IN PAPER-MAKING PROCESS

Commissioner of Patents
  and Trademarks

Washington, D.C.  20231

## AMENDMENT

In response to the Office Action of June 26, 1991,
please amend the above-identified application as follows:

### In The Claims:

Claim 12, line 1, please cancel the numeral "10"
and substitute therefore the numeral --11--.

Please cancel Claims 12 and 15.

Please rewrite Claim 1 as follows:

--1. (Amended)   A  method  of  making  paper  which
comprises adding to an aqueous paper furnish from about 0.05
to  about  20  lbs./ton,  based  on  the  dry  weight  of  paper
furnish  solids,  of  an  ionic,  organic,  cross-linked,
polymeric microbead, the microbead being less than about 750
nanometers in diameter [if cross-linked and less than 60
nanometers  in  diameter  of  non-cross-linked  and
water-insoluble] and the ionicity of said microbead being at
least 1%, but at least 5%, if [cross-linked] anionic and
used alone--.

### Remarks

The Examiner has again required restriction to one
of the following inventions under 35 USC 121:

- 1 -

CIBA 038978

I.   Claims 1-14 and 40 drawn to a method of
making paper and classified in Class 162;
Subclass 168.3 and

II.  Claims 15-25 and 41 drawn to a composition of
matter and classified in Class 252; Subclass
351.

The inventions are distinct, each from the other,
the Examiner continues, because Inventions II and I are
related as product and process of use and the inventions are
distinct if either or both of the following can be shown: 1)
that the process for using the product, as claimed, can be
practiced with another and materially different product or
2) that the product, as claimed, can be used in a materially
different process of using that product, citing M.P.E.P.
806.05(h). In the instant case, the Examiner explains, the
product, as claimed, can be used in a materially different
process such as one that does not require papermaking, e.g.
making cement.

Because the inventions are therefore distinct and
have acquired a separate status in the art as shown by their
different classification and because of their recognized
divergent subject matter, restriction for examination
purposes is indicated as proper by the Examiner.

This requirement for restriction is again
respectfully traversed.

This requirement is respectfully submitted as
unfounded and based on speculation and conjecture. The
Examiner has cited no authority or documentation in support
of his statement that the instantly claimed products can be
used in making cement. This concept is not taught in
Applicants' disclosure or in any reference cited by the

- 2 -

CIBA 038979

Examiner and therefore the requirement is clearly erroneous. Withdrawal thereof is earnestly solicited.

Applicants, however, again affirm the previous provisional election of Group I, i.e. Claims 1-14 and 40 and respectfully request retention of the non-elected claims i.e. Claims 15-25 and 41, in the application for purposes of filing a subsequent divisional application or appeal.

Claims 12 and 37 have been rejected under 35 USC 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicants regard as the invention in that there is no antecedent basis for the word "species" as recited in Claim 12.

This ground of rejection has been overcome by the instant amendment whereby Claim 12 has been amended to render it dependent upon Claim 11 rather than Claim 10, as obviously intended. The error is sincerely regretted.

Claims 1-3,5,7,8, 10-14, 26-28, 30, 32,33, 35-40 and 42 have been rejected under 35 USC 103 as being unpatentable over Probst etal, alone, or in view of Johnson the Examiner stating that Probst teaches a cationic polymer for addition to paper as a sizing agent and that the polymers i.e. microbeads, are 20-150 nm, citing col. 5, lines 2-6. Probst does not teach if the microbead is cross-linked, the Examiner continues, however, it would have been an obvious matter of choice based on the availability, cost and effectiveness of cross-linked versus non-cross-linked microbeads. At col. 8, lines 58-62, the Examiner explains, Probst teaches mixing a solution of starch (a cationic polymer) with the sizing agent. The addition of the claimed amounts of microbeads and starch (cationic polymer) is conventional to enhance drainage and

- 3 -

CIBA 038980

retention properties, the Examiner argues, and therefore it would have been obvious for one to utilize the claimed amounts to achieve such and to add a size or strength additive to the paper furnish to increase the desirability of the final product.

To further support the above discussion, the Examiner refers to the teaching of Johnson which, the Examiner explains, teaches improving retention and dewatering properties of paper by adding 0.1-0.15% of a binder of a cationic starch (a high molecular weight ionic polymer), an anionic polymer of acrylamide and a dispersed silica to the headbox of a paper-making machine, citing col. 1, lines 15-16 and 41; col. 2, lines 15-24 and col. 3, lines 50-52. At Figures 3 and 4, the Examiner points out, Johnson teaches the use of all components within the range of the presently claimed amounts, while alum is shown to increase drainage and retention (shown, the Examiner contends, in Figure 4 as decreased turbidity). Thus, the Examiner concludes, it would have been obvious to one of ordinary skill in the art to add cationic starch and alum in the claimed amounts to the microbeads of Probst to further improve drainage and retention properties because Johnson teaches that such improves drainage.

Rejection of the method claims necessarily precludes patentability of the product-by-process claims, the Examiner explains, citing in re Thorpe 227 USPQ 964.

This ground of rejection is respectfully traversed. It is strenuously urged that Probst does not teach, disclose or suggest the instant invention especially in view of the amendment made to Claim 1 herein. Probst is directed to a sizing agent comprising an emulsion of a copolymer of 0-90% of (meth)acrylonitrile, 5-95% of styrene

- 4 -

CIBA 038981

and 5-95% of (meth)acrylates. The sizing agent is disclosed as in the form of a colloidal solution wherein the copolymer is present in the form of particles having a size between 15 and 200 nm. The reference indicates that starch may be used in a 5% solution as a sizing liquor.

Applicants' claims require that the organic, polymeric microbeads be ionic! Probst employs ionic group containing emulsifiers in order to create dispersion stability in the solution. The ionic groups remain part of the emulsifier and are not chemically bonded to the hydrophobic copolymers. The Probst product, therefore, is a nonionic hydrophobic polymer mixture stabilized by cationic surfactants.

Applicants' invention resides in the use of the polymer microbead having an ionic charge covalently bonded to the polymer, whereas, in Probst, the only ionic charge present is on a different molecule i.e. a surfactant which can dissolve out of and/or migrate from the polymer microbeads. Applicants' microbead does not require the use of an emulsifier. It is an integral unit which can be separated from any emulsifier present if made in emulsion form.

Probst indicates that for effective sizing, the polymer microbeads must be film-formers, see col. 3, line 67 to col. 4, line 8. The Examiner argues that it would be obvious to cross-link the Probst polymers, however, such is diametrically opposite that which Probst describes because cross-linking the Probst polymer would substantially reduce or even prevent its film-forming ability. That is to say, if the Probst sizing agent were to be cross-linked as the Examiner indicates, and then applied to paper, the intended performance thereof, i.e. sizing, would be reduced or

- 5 -

CIBA 038982

eliminated because of the failure of the cross-linked polymer to act as a film-former. Additionally, the stability of the Probst dispersions would be greatly reduced by cross-linking the polymer. What is generally desired in sizing is the ability of the sizing molecules to spread out on the paper surface in order to impart their maximum efficiency. Cross-linking prevents this.

In retention and drainage, however, the polymer must be strongly absorbed on a fiber, fine and/or filler surface and be able to also be strongly absorbed onto another fiber, filler of fine surface under the high shear conditions of the paper-making process. The retention and drainage aid links fiber, fines and filler suspended solids to one another. By contrast, a sizing agent is absorbed onto fiber, fines and filler but is not then absorbed onto more fiber, fines and filler so as to "cover" the agent. If it is covered, it is not able to exercise its sizing action. Retention requires adsorption strength and integrity of the aid under conditions of high shear and stress.

Thus, it can be readily appreciated that Applicants' claims, especially as newly presented wherein the microparticles must be cross-linked, are not in any way anticipated by the Probst disclosure especially since Applicants' claims require the microparticles to be added to the paper-making furnish i.e to the slurry of paper-making fibers, fines, fillers etc. which are used to form the paper sheet per se whereas all the examples of Probst show that the Probst composition is added to the paper sheet in the size press after it is already formed, although Probst does suggest engine sizing at col. 5, line 32. Thus, Probst fails to meet Applicants' claims because:

- 6 -

CIBA 038983

1.  The microbeads are preferably added to the paper rather than the furnish;

2.  The microbeads are not ionic and

3.  The microbeads are not cross-linked.

These deficiencies in the Probst disclosure are not overcome by the teachings of Johnson which is directed to a retention aid comprising a cationic starch and a dispersed silica. Johnson does not teach the use of polymeric microbeads and, as such, it is representative of the type of retention aid over which Applicants' invention is an improvement. In fact, Johnson is acknowledged in Applicants' specification at page 1, line 26. While Johnson may recognize the benefits of adding starch, anionic acrylamide and alum, the reference fails to recognize that the silica used therein can be replaced, in whole or in part, by Applicants' microbeads and, as such, the fact that Johnson teaches the amounts of these additives which may be added with a retention aid is irrelevant with respect to the instant claims. To add the additives of Johnson in their disclosed amounts to the composition of Probst will still not result in Applicants' invention because there still will be no ionic, cross-linked, organic polymeric microbeads present. For these reasons, reconsideration and withdrawal of this ground of rejection is earnestly solicited.

Claims 4,6,9,29, 31 and 34 have been rejected under 35 USC 103 as unpatentable over Probst etal, either alone or in view of Johnson as applied above, and further in view of Sinclair etal, the Examiner noting that Sinclair etal teaches starches as the cationic polymer in a process to provide paper of improved properties. Sinclair etal teaches that starch (polysaccharide) or another polymer can be used as either a cationic or anionic polymer and the acrylamide i.e. microbead, can be selected in either

- 7 -

CIBA 038984

ionicity such that the two polymers have opposite charges, the Examiner explains, and therefore it would have been obvious to the skilled artisan to use either anionic or cationic starch (high molecular weight polymer) of opposite charge in the process of Probst either alone or taken with Johnson because Sinclair etal teaches such as conventional in improving retention and dewatering properties. Further, the Examiner contends, the selection being merely a matter of choice, the skilled artisan would have found it obvious to choose the additives based on economy and availability, noting that the rejection of the paper product claims necessarily follow from the rejection of the process claims. This rejection is also respectfully traversed.

While Sinclair etal may recognize the advantage of using two oppositely charged polymers for retention and drainage during paper-making, the reference fails to teach the use of an ionic, cross-linked microbead of polymer having a size below about 750 nm. Thus, even if one used oppositely charged polymers in the process of Probst (or Probst in view of Johnson), Applicants' process would not be met because the polymer microbead would not be present and the use of such is the crux of Applicants' invention. Reconsideration of this ground of rejection also believed warranted.

In view of the above Remarks, this application is believed to be in condition for allowance and such action is earnestly requested it an early date.

Respectfully submitted,

*[signature]*

Attorney for Applicants
Frank M. Van Riet
Registration: 19933

A-310431:oc

- 8 -

CIBA 038985



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address:　COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/540,667 | 06/18/90 | HONIG | D | 31-043-01 |

| EXAMINER |
|---|
| FRIEDMAN, C |

FRANK M. VAN RIET
C/O AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

| ART UNIT | PAPER NUMBER |
|---|---|
| 1303 | 9 |

DATE MAILED:　　12/06/91

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined　☑ Responsive to communication filed on _9-23-91_ (amds C) ☑ This action is made final.

A shortened statutory period for response to this action is set to expire: _3_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.　35 U.S.C. 133

**Part I** THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:
1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II** SUMMARY OF ACTION

1. ☑ Claims _1-12, 14-37, and 39-42_ are pending in the application.
　　Of the above, claims _15-25, and 41_ are withdrawn from consideration.
2. ☑ Claims _13 and 38_ have been cancelled.
3. ☐ Claims _____ are allowed.
4. ☑ Claims _1-12, 14, 26-37, 39, 40, and 42_ are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ Claims _____ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.
8. ☐ Formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable, ☐ not acceptable (see explanation or Notice re Patent Drawing; PTO-948).
10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner, ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).
12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

CIBA 038986

Serial No. 540,667                    -2-

Art Unit    1303

Claims 15-25 and 41 are withdrawn from further consideration by the examiner, 37 C.F.R. § 1.142(b), as being drawn to a non-elected invention, the requirement having been traversed in Paper No. 8.

Applicant's election with traverse of claims 1-12, 14, 26-37, 39, 40, and 42 in Paper No. 8 is acknowledged. The traversal is on the ground(s) that the rejection is based on conjecture, i.e. there is no support that the instantly claimed products can be used in making cement. This is not found persuasive because the product as claimed can be used in a materially different process. The intended use of the product recited in the Group II claims is papermaking; however, papermaking is not the only possible use, i.e. there is nothing to prevent the product from being used in another process, e.g. making cement. Applicant has not proved or provided a convincing argument that the product cannot be used in making cement and must be used in making paper (MPEP 806.05(h)).

The requirement is still deemed proper and is therefore made FINAL.

This application contains claims 15-25 and 41 drawn to an invention non-elected with traverse in Paper No. 8. A complete response to the final rejection must include cancellation of non-elected claims or other appropriate action (37 C.F.R. § 1.144)

CIBA 038987

Serial No. 540,667                                      -3-

Art Unit   1303

M.P.E.P. § 821.01.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. § 103, the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 C.F.R. § 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of potential 35 U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

Claims 1-3, 5, 7, 8, 10-12, 14, 26-28, 30, 32, 33, 35-37, 39, 40, and 42 are rejected under 35 U.S.C. § 103 as being unpatentable over Probst et al either alone or in view of Johnson et al, as applied to claims 1-3, 5, 7, 8, 10-14, 26-28, 30, 32, 33, 35-40, and 42 in the last Office Action, Paper No. 7.

Claims 4, 6, 9, 29, 31 and 34 are rejected under 35 U.S.C.

CIBA 038988

Serial No. 540,667                                    -4-

Art Unit   1303

§ 103 as being unpatentable over Probst et al either alone or in

view of Johnson et al and further in view of Sinclair et al, as

applied to these claims in Paper No. 7.

    Applicant's arguments filed September 23, 1991, Paper No. 8

have been fully considered but they are not deemed to be

persuasive.

    It is argued that the microbeads of Probst are added to the

paper rather than to be furnish.  However, Probst teaches that the

microbeads can be used in engine sizing (column 5, line 32), which

is internal addition, i.e. adding the sizing agent to the furnish.

    It is further argued that the microbeads of Probst are not

ionic.  However, it is seen that the terpolymer, the backbone of

the microbead, is cationic (column 2, lines 27-31).  Obviously the

microbead is ionic.

    Finally, it is argued that the microbeads of Probst are not

cross-linked.      However,    the    mixture    is    quaternised    with

epichlorohydrin (column 1, lines 46-47).  Epichlohydrin is a well-

known crosslinking agent, as discussed at page 11 of the instant

specification.

    THIS ACTION IS MADE FINAL.  Applicant is reminded of the

extension of time policy as set forth in 37 C.F.R. § 1.136(a).

CIBA 038989

Serial No. 540,667                     -5-

Art Unit    1303


     A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION
IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION.  IN THE
EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING
DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED
UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD,
THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE
ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37
C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE
ADVISORY ACTION.    IN NO EVENT WILL THE STATUTORY PERIOD FOR
RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL
ACTION.

     Any inquiry concerning this communication should be directed

to Charles Friedman at telephone number (703) 308-2052.


                                        RICHARD V. FISHER
                                SUPERVISORY PATENT EXAMINER
                                       ART UNIT 1303

     Friedman/ad                          12-5-91
     November 22, 1991

CIBA 038990



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 5 40667 | | | |

| | EXAMINER |
|---|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| | 10 |

DATE MAILED:

### EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Mr. Van Riet                    (3) Mr. Friedman

(2) Mr. Dauplaise                   (4)

Date of interview 3-13-92

Type: ☐ Telephonic  ☒ Personal (copy is given to) ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☒ Yes ☐ No. If yes, brief description 1) The polymer micro bead in solution and 2) in a dried powder form

Agreement ☐ was reached with respect to some or all of the claims in question. ☒ was not reached. (however, agreed to reconsider)

Claims discussed: 1

Identification of prior art discussed: Probst, Farrar

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: Agreed that Probst could be internal additive. Agreed to reconsider based on epichlorohydrin as a quaternizing agent and in acidic solution. Said that Farrar provide documentation that epichlorohydrin in acid won't work. Farrar doesn't shear particle size merely breaks up cross links.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1–7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

Examiner's Signature

PTOL-413 (REV. 1-84)

**ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER**

CIBA 038991

OFFICIAL

[REV.4Apr89/MB11-2]                              Docket No. 31,043-01

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                         Date: March 16, 1992
DAN S. HONIG
ELIETH HARRIS

Serial No.: 07/540,667
Filed:  June 18, 1990
For:   CHARGED ORGANIC POLYMER
       MICROBEADS IN PAPER MAKING
       PROCESS

Commissioner of Patents and Trademarks
Washington, D. C.  20231

### PETITION FOR EXTENSION OF TIME (37 CFR 1.36(a))

1.   This is a petition for an extension of the time for a total
     period of _1_ month(s) to respond to the Office Letter
     mailed on _December 6, 1992_ by _filing an Amendment
     thereto._

2.   A response in connection with the matter for which this
     extension is requested:

     [ X ] is filed herewith

     [   ] has been filed
           (complete the following if applicable)

     [   ] the response is the filing of a continuation-in-part
           application having an express abandonment conditioned
           on the granting of a filing date to the continuing
           application.

------------------------------------------------------------

### CERTIFICATE OF MAILING [37 CFR 1.8(a)]

I hereby certify that this paper (along with any referred to as
being attached or enclosed) is being deposited with the United
States Postal Service on the date shown below with sufficient
postage as first class mail in an envelope addressed to the:
Commissioner of Patents and Trademarks, Washington, D.C. 20231.

                         CORNELIA CALABRESE

Date: _____
                         (Signature of person mailing paper)

------------------------------------------------------------

LA10216  03/18/92  07540667      01-1300  010  115      110.00CH

CIBA 038992

[REV.4Apr89/MB11-2]                    -2-

3.  Calculation of extension fee (37 CFR 1.17(a)-(d):
    [ X ] One Month.    Fee in the amount of $110.00
    [   ] Two Months.   Fee in the amount of $350.00
    [   ] Three Months. Fee in the amount of $810.00
    [   ] Four Months.  Fee in the amount of $1,280.00

                                    FEE $ 110.00

If an additional extension of time is required, please consider
this a petition therefor.

            (check and complete the next item, if applicable)
    [   ] An extension for ____ months has already been secured
          and the fee paid therefor of $_____ is deducted
          from the total fee due for the total months of
          extension now requested.

          Total Extension fee due with this request $ 110.00

4.  FEE PAYMENT
    [ X ] Charge fee to Account No. 01-1300 and this is a
          request to charge for any additional extension and/or
          fee required or credit for any excess fee paid. A
          duplicate of this petition is attached.


                            _____
                            (Signature of Attorney)

Reg. No. 19933              _Frank M. Van Riet_____
                            (Type name of Attorney)

Tel. No. (203) 321-2614     American Cyanamid Company
                            1937 West Main Street
                            P.O. Box 60
                            Stamford, CT 06904-0060

CIBA 038993

OFFICIAL

Docket No.: **31.043-01**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
Dan S. Honig
Elieth Harris

Serial No: 07/540,667          Group Art Unit:
Filed:  June 18, 1990
For:  Charged Organic Polymer     Examiner: C. Friedman
      Microbeads In Paper
      Making Process

Commissioner of Patents
  and Trademarks

Washington, D.C.  20231          March 16, 1992

DO NOT ENTER

OK TO ENTER

OK AS ENTERED

AMENDMENT

In response to the Office Action of December 6,
1991, please amend the instant application as follows:

IN THE CLAIMS

Please rewrite Claim 1 as follows:

--1. (Twice Amended)  A method of making paper
which comprises adding to an aqueous paper furnish from
about 0.005 to about 20 lbs/ton, based on the dry weight of
paper furnish solids, of an ionic, organic, cross-linked
polymeric microbead, the microbead [being] having an
unswollen particle diameter of less than about 750
nanometers [in diameter] and [the] an ionicity of [said
microbead having] at least 1%, but at least 5%, if anionic
and used alone--.

REMARKS

Applicants would like to take this opportunity to
thank Examiner Friedman for the interview afforded
Applicants' Attorney and representative on March 13, 1992.
The consideration and comments forwarded by the Examiner are
sincerely appreciated.

- 1 -

CIBA 038994

The finality of the requirement for restriction is acknowledged. The Examiner has withdrawn Claims 15-25 and 41 as being drawn to non-elected subject matter, however, retention of said claims in the application for the purpose of filing a subsequent divisional application or appeal is earnestly solicited.

Claims 1-3,5,7,8, 10-12, 14, 26-28, 30, 32, 33, 35-37, 39, 40 and 42 have been rejected under 35 USC 103 as unpatentable over Probst etal, alone or in view of Johnson as applied in Paper No. 7.

Claims 4,6,9,29, 31 and 34 have been rejected under 35 USC 103 as unpatentable over Probst etal, alone or in view of Johnson, and further in view of Sinclair etal, as applied in Paper No. 7.

The Examiner has indicated that Applicants' arguments have been carefully considered but are not deemed persuasive for the following reasons.

A. With regard to Applicants' argument that the microbeads of Probst are added to the paper rather than the furnish, the Examiner indicates that Probst teaches at col. 5, line 32 that the microbeads can be used in engine sizing which is internal addition, i.e. addition to the furnish.

At the above-acknowledged interview, Applicants admitted that engine sizing is internal addition, however, it was pointed out that Probst, in every example, adds the sizing composition thereof to the paper. It is urged that one skilled in the art clearly recognizes that sizing agents are predominately added to the paper per se and not the furnish because addition thereof to the furnish materially detracts from the efficiency thereof.

B. With regard to Applicants' argument that the microbeads of Probst are not ionic, the Examiner argues that

- 2 -

CIBA 038995

the terpolymer, the backbone of the microbead, is cationic, citing col. 2, lines 27-31 and that the microbead is therefore obviously ionic.

This position is respectfully urged as erroneous. Reference to the "terpolymer" at col. 2, lines 27-31 pertains to the emulsifier in the presence of which the microbead is prepared by polymerizing the "(meth) acrylonitrile, styrene and acrylates or methacrylates or mixtures of styrene and acrylates or methacrylates" as taught by Probst at col. 2, lines 23-25. It is the emulsifier which contains the cationic N,N-dimethylamino-ethyl acrylate or methacrylate monomer and not the microbead prepared in its presence. Reference to col. 2, lines 32-36 clearly shows that components (a)-(c) form the terpolymer emulsifier in the presence of which components (d) - (f), col. 2, lines 44-50, are polymerized to form the microbead. Thus, the microbead per se is not ionic as required by Applicants' claims. Thus, as previously discussed, the Probst product is a nonionic hydrophobic polymer stabilized by a cationic terpolymer emulsifier. Applicants' microbead has an ionic charge covalently bonded thereto and is an integral unit which can be separated as such. At the above-identified interview, Applicants' Attorney showed the Examiner a small bottle of white, powdery polymer which comprised such a separated, ionic product. Separation of the (d)-(f) polymer of Probst will not isolate an ionic polymer because it is only the emulsifier which is ionic in the Probst composition.

C.   With regard to Applicants' argument that the Probst microbeads are not cross-linked, the Examiner states that the Probst mixture is quaternized with epichlorohydrin,

- 3 -

CIBA 038996

citing col. 1, lines 46-47, which is a well-known cross-linking agent and also referred to as such by Applicants at page 11 of the instant specification.

Most of the discussion at the above-acknowledged interview focused on the cross-linking argument of the Examiner. It was pointed out to the Examiner that epichlorohydrin is only a cross-linking agent when reacted under certain precise conditions. In fact, Probst discloses the most important condition indirectly by virtue of its teaching at col. 1, lines 44-47. Probst indicates that quateriztion of the emulsifier portion of his composition is effected with epichlorohydrin at 80-85°C and after the mixture is <u>acidified with acetic acid</u>. It is well-recognized that the pH of the reaction media in which quaternization with epichlorohydrin is conducted is critical. It must be accomplished under acidic conditions i.e. a pH below 7, preferably below 6. Support for this position was afforded the Examiner in the form of U.S. Patent No. 3,702,799. This reference teaches, at col. 3, lines 15-60, that the reaction of a hydrogen acid salt of a basic ester (of which the N,N-dimethylaminoethyl(meth)-acrylate of Probst is an example) with epichlorohydrin must be conducted under acid conditions to "prevent undesirable side reactions", lines 54-55, i.e. cross-linking. Further, at col. 6, lines 38-47, the 3,702,799 reference teaches that "At pH values of 6 or less, the propensity for gelation attributable to the glycidyl group of IVA is inhibited (or possibly completely lacking because of absence or almost complete absence of IVA groups) whereas raising the pH to neutral or alkaline conditions results in rapid curing the

- 4 -

CIBA 038997

copolymer even at room temperature to an insoluble condition, the higher the pH and concentration of the polymer the more rapid the curing".

Thus, it is clear that Probst does not envision the production of a cross-linked microbead especially in view of the fact that in Table I his emulsifiers A and B are made with epichlorohydrin whereas emulsifiers C and D are made with ethylchloroacetate and allyl chloride,, respectively, both of which are not capable of effecting cross-linking. Therefore, since emulsifiers A,B,C and D of Probst all perform similarly, it is apparent that emulsifiers A and B are not cross-linked with the epichlorohydrin because emulsifiers C and C cannot be. If some of Probst's emulsifiers were cross-linked and others not, they would not function alike.

Furthermore, as was pointed out at said interview, in Probst it is the emulsifier which is reacted with the epichlorohydrin and not the acrylic polymer which is colloidally suspended in solution and stabilized by the emulsifier. Probst states that it is the acrylic polymer which has the 15-200 nanometer particle size at col. 5, line 2, and not the emulsifier. Therefore, it is even more evident that Probst does not prepare a cross-linked, ionic polymer bead because if anything in Probst cross-linked it would be the emulsifier and it is not in the form of a particle i.e. it forms a solution.

The Johnson reference does not overcome the deficiencies of Probst pointed out above. Johnson does not teach the formation of microbeads but merely extol the virtues of adding starch, anionic acrylamide and alum to a retention aid. To add these additives to Probst will still not result in the instant process because no ionic, cross-linked, organic polymer microbeads will exist therein.

– 5 –

CIBA 038998

Sinclair also fails to obviate the Probst deficiencies in that this reference merely teaches the use of starch and acrylamide polymer of opposite charges and fails to show the use of an ionic, cross-linked microbeads of an unswollen particle size of less than about 750nm. Again, modifying Probst as taught by Sinclair will not result in Applicants' process.

For these reasons, reconsideration and withdrawal of these grounds of rejection are earnestly requested.

Applicants have further modified Claim 1 so as to indicate that the particle size limitation refers to the unswollen particle, as specified on page 5, line 33 of the instant disclosure. This amendment is for purposes of clarification, does not require a new search, does not present a new issue and does not constitute new matter. Entrance thereof is respectfully urged.

In view of the above Remarks and the arguments presented at the above-acknowledged interview, this application is believed to be in condition for allowance and such action is earnestly requested at an early date.

This Amendment is being faxed to the Examiner at (703) 308-3718 in order to facilitate early consideration thereof. If the Examiner has any questions or desires to further limit the claims, he is requested to contact Applicants' Attorney at the number listed below at any time.

Respectfully submitted,

Frank M. Van Riet
Attorney for Applicants
Registration# 19933

1937 West Main Street
P.O. Box 60
Stamford, CT  06904-0060
(203) 321-2614

A-B-31043l:oc

- 6 -

CIBA 038999

03/17/92   12:05   ☎703 308 3718        PTO FAX CENTER 1                        ☒001

ACTIVITY REPORT

RECEPTION OK

TN #                4825
CONNECTION TEL      2033212971
CONNECTION ID            G3
START TIME          03/17 11:57
USAGE TIME          07'56
PAGES                    9

CIBA 039000

**OFFICIAL**



AMERICAN CYANAMID COMPANY
Patent Law Department
Stamford, CT 06904-0060

Telecopy No.: (203) 321-2971

TELECOPY COVER SHEET

THE INFORMATION IN THIS MESSAGE AND ENCLOSURES IS INTENDED ONLY
FOR THE USE OF THE INDIVIDUAL OR ENTITY IDENTIFIED BELOW. If you
have received this communication in error, please notify us
immediately by telephone (collect), (203) 321-              , so
that we may arrange for its return. Thank you.

TO: MR. C. FRIEDMAN — Group 130

NUMBER: 703-308-3718

FROM: F. M. VAN RIET
      AMERICAN CYANAMID Co.

DATE: 3-17-92

TOTAL NUMBER OF PAGES (INCLUDING COVER SHEET): 9

CIBA 039001



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 540667 | | | | |
| 07/540,667 | 06/18/90 | HONIG | D | 31-043-01 |

EXAMINER

FRIEDMAN, C

| ART UNIT | PAPER NUMBER |
|---|---|
| | 12 |

FRANK M. VAN RIET
C/O AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

DATE MAILED:

**EXAMINER INTERVIEW SUMMARY RECORD**

03/23/92

All participants (applicant, applicant's representative, PTO personnel):

(1) Mr. Van Riet                     (3)

(2) Mr. Friedman                     (4)

Date of interview

Type: ☑ Telephonic   ☐ Personal (copy is given to ☐ applicant  ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes  ☑ No.  If yes, brief description:

Agreement ☑ was reached with respect to some or all of the claims in question.  ☐ was not reached.

Claims discussed: 1, 15-25, and 41

Identification of prior art discussed: None

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: Agreed to cancel non-elected claims 15-25 and 41 and correct a typographical error in claim 1.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1—7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☑ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

*Charles H. Fried*

Examiner's Signature

PTOL-413 (REV. 1-84)

**ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER**

CIBA 039002

noneok



UNITED STAT···  ·PARTMENT OF COMMERCE
Patent and Tra···  ·rk Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/540,667 | 06/18/90 | HONIG | EXAMINER 043-01 |

FRANK M. VAN RIET
C/O AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

D    EXAMINER 043-01
BRIDGMAN, C    PAPER NUMBER
13/E    exl3

DATE MAILED:
1303

03/23/92

### NOTICE OF ALLOWABILITY

**PART I.**
1. ☑ This communication is responsive to 3-17-92 (Amdt D)
2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.
3. ☑ The allowed claims are 1-12, 14, 26-37 39-40, and 42
4. ☐ The drawings filed on _____ are acceptable.
5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [...] been received. [...] not been received. [...] been filed in parent application Serial No. _____, filed on _____.
6. ☑ Note the attached Examiner's Amendment.
7. ☑ Note the attached Examiner Interview Summary Record, PTOL-413.
8. ☑ Note the attached Examiner's Statement of Reasons for Allowance.
9. ☑ Note the attached NOTICE OF REFERENCES CITED, PTO-892.
10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**
A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.
2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.
   a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____. CORRECTION IS REQUIRED.
   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.
   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.
   d. ☐ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachment(s):
☑ Examiner's Amendment
☑ Examiner Interview Summary Record, PTOL-413
☑ Reasons for Allowance
☑ Notice of References Cited, PTO-892
☐ Information Disclosure Citation, PTO-1449

___ Notice of Informal Application, PTO-152
___ Notice re Patent Drawings, PTO-948
___ Listing of Bonded Draftsmen
___ Other

PTOL-37 (REV. 2-88)    USCOMM-DC 65-3744

Serial No. 07/540667                    -2--

Art Unit   133

An Examiner's Amendment to the record appears below.  Should
the changes and/or additions be unacceptable to applicant, an
amendment may be filed as provided by 37 C.F.R. § 1.312.  To
ensure consideration of such an amendment, it MUST be submitted
no later than the payment of the Issue Fee.

Authorization for this Examiner's Amendment was given in a
telephone interview with Mr. Van Riet on March 20, 1992.

In claim 1, line 3, change ".005" to --.05--.

Cancel claims 15-25 and 41.

The following is an Examiner's Statement of Reasons for
Allowance:

Neff et al teach a cationic, cross-linked particle of less
than .5 microns unswollen particle diameter size.  Neff teaches
that this particle can be added to cellulosic paper pulp
suspensions (column 1, line 19).  The instant invention is
patentable over Neff because Neff provides no indication of how
much of the microbead to add to the paper or in what part of the
papermaking process it should be added.

Any comments considered necessary by applicant must be
submitted no later than the payment of the Issue Fee and, to
avoid processing delays, should preferably accompany the Issue
Fee.  Such submissions should be clearly labeled "Comments on
Statement of Reasons for Allowance."

Any inquiry concerning this communication should be directed

CIBA 039004

Serial No. 07/540667                      -3-

Art Unit   133


to Charles Friedman at telephone number (703) 308-2052.


W. GARY JONES
PRIMARY EXAMINER
ART UNIT 1303
3/22/92

Charles Friedman
March 20, 1992

CIBA 039005

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP--APART          -ity CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 540667 | GROUP ART UNIT 1303 | ATTACHMENT TO PAPER NUMBER 13 |
|---|---|---|---|---|

**NOTICE OF REFERENCES CITED**

APPLICANT(S)    Honig  etal

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| X | A | 4968435 | 11/90 | Neff etal | 210 | 732 | |
| X | B | 3702799 | 11/72 | Lewis etal | 162 | 1684 | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER  Charles K Friedman | DATE  3-20-92 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

CIBA 039006



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

FRANK M. VAN RIET
C/O AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

| SERIES CODE/SERIAL NO. | FILING DATE | TOT CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 07/540,667 | 06/18/90 | 028 | FRIEDMAN, C          1303 | 03/23/92 |

First Named Applicant: HONIG,          DAN S.

TITLE OF INVENTION: CHARGED ORGANIC POLYMER MICROBEADS IN PAPER MAKING PROCESS

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 1 | 31-043-01 | 162-164.100 | B30 | UTILITY | NO | $1130.00 | 06/23/92 |

*THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.*
*PROSECUTION ON THE MERITS IS CLOSED.*

*THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS*
*APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.*

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

A. If the Status is changed, pay twice the amount of the
FEE DUE shown above and notify the Patent and
Trademark Office of the change in status, or

B. If the Status is the same, pay the FEE DUE shown
above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees.*

**PATENT AND TRADEMARK OFFICE COPY**

PTOL-85 (REV 12-86)(OMB Clearance is pending)

CIBA 039007

PART B - ISSUE FEE TRANSMITTAL

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advanced orders and notification of maintenance fees will be mailed to address entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. See reverse for Certificate of Mailing.

| 1. CORRESPONDENCE ADDRESS | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|---|
| 6-10 | INVENTOR'S NAME |
| | Street Address |
| | City, State and ZIP Code |
| FRANK N. VAN RIET | CO-INVENTOR'S NAME |
| C/O AMERICAN CYANAMID COMPANY | |
| 1937 WEST MAIN STREET | Street Address |
| STAMFORD, CT 06904-0060 | City, State and ZIP Code |
| | ☐ Check if additional changes are on reverse side |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/540,667 | 06/18/90 | 028 | FRIEDMAN, C. | 1303 | 03/23/92 |

First Named Applicant: HONIG,          DAN S.

TITLE OF INVENTION: CHARGED ORGANIC POLYMER MICROBEADS IN PAPER MAKING PROCESS

| ATTYS DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 31-043-01 | 162-164.100 | B30 | UTILITY | NO | $1130.00 | 06/23/92 |

| 3. Further correspondence to be mailed to the following: | 4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed. | |
|---|---|---|
| Frank M. Van Riet<br>American Cyanamid Company<br>1937 West Main Street<br>P.O. Box 60<br>Stamford, CT   06904-0060 | 1  Frank M. Van Riet | |
| | 2 _____ | |
| | 3 _____ | |

SC13044  07/06/92  07540667   DO NOT USE THIS SPACE   01-1300  130  142   1,130.00CH

| 5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type) | 6a. The following fees are enclosed: |
|---|---|
| (1) NAME OF ASSIGNEE: American Cyanamid Company | ☐ Issue Fee   ☐ Advanced Order - # of Copies _____ |
| (2) ADDRESS: (City & State or Country) Stamford, CT | 6b. The following fees should be charged to: (Minimum of 10) DEPOSIT ACCOUNT NUMBER  01-1300 (Enclose Part C) |
| (3) STATE OF INCORPORATION, IF ASSIGNEE IS A CORPORATION Maine | ☒ Issue Fee   ☐ Advanced Order - # of Copies _____ (Minimum of 10) |
| A. ☐ This application is NOT assigned. | ☐ Any Deficiencies in Enclosed Fees |
| ☒ Assignment previously submitted to the Patent and Trademark Office. | The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above. |
| ☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS. | (Signature of party in interest of record) | (Date) |
| **PLEASE NOTE:** Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment. | Frank M Van    6-10-92 |
| | NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office. |

TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE

CIBA 039008

INFORMATION DISCLOSURE(PendingApp)          Docket No. ___31,043-02___
[REV. MAR92]                                                    PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Serial No.:07/540,667                       Group No.  1303

Filed:  March 23, 1992                      Examiner:  Friedman

For:  CHARGED ORGANIC POLYMER MICROBEADS
       IN PAPER MAKING PROCESS

Commissioner of Patents and Trademarks
Washington, D.C. 20231

## INFORMATION DISCLOSURE STATEMENT

1.   **Preliminary Statements**
     In accordance with 37 CFR 1.97 and 1.98, Applicants submit
     herewith patents, publications, or other information of
     which they are aware, which they believe may be material to
     the examination of this application and in respect of which
     there may be a duty to disclose in accordance with 37 CFR
     1.56.
     This Information Disclosure Statement is not to be construed
     as a representation that:  (i) a search has been made; (ii)
     the information is material to the examination of this
     application; (iii) additional information material to the
     examination of this application does not exist; (iv) the
     information, protocols, results and the like reported by
     third parties are accurate or enabling; or (v) the
     information constitutes prior art to the subject invention.

-----------------------------------------------------------------------

### CERTIFICATE OF MAILING [37 CFR 1.8(a)]

   I hereby certify that this paper (along with any referred to as
being attached or enclosed) is being deposited with the United
States Postal Service on the date shown below with sufficient
postage as first class mail in an envelope addressed to
Commissioner of Patents and Trademarks, Washington, D.C. 20231.


   Date: _____     _____
                            (Signature of person mailing paper)
-----------------------------------------------------------------------

CIBA 039009

- 2 -

INFORMATION DISCLOSURE (Pending App)
[REV.4MAR92]

2.  Identification of Time of Filing
    This Information Disclosure Statement
    a.  [   ] is filed within three months of the filing date
            of the application.
    b.  [   ] is filed before the mailing date of a first
            Office Action on the merits.
    c.  [ X ] is filed after the period specified in 2(a) or
            2(b) above, but before the mailing date of a
            final action under 37 CFR 1.113 or a Notice of
            Allowance under 37 CFR 1.311.  This statement
            includes a certification under 37 CFR 1.97(e) or
            the fee set forth in 37 CFR 1.17(p).
    d.  [   ] is filed after the mailing date of a final
            action or Notice of Allowance but before payment
            of the issue fee.  This statement includes (i) a
            certification under 37 CFR 1.97(e), (ii) a
            petition requesting consideration of this
            information disclosure statement, and (iii) the
            petition fee under 37 CFR 1.17(i)(1).

3.  [   ] Certification under 37 CFR 1.97(e)
        The undersigned attorney certifies
    a.  [   ] that each item of information contained in the
            Information Disclosure Statement was cited in the
            communication from a foreign patent office in a
            counterpart foreign application not more than
            three months prior to the filing of the state-
            ment, or
    b.  [   ] that no item of information contained in the
            Information Disclosure Statement was cited in a
            communication from a foreign patent office in a
            counterpart foreign application or, to the know-
            ledge of the person signing the certification
            after making reasonable inquiry, was known to
            any individual designated in 37 CFR 1.56(c) more

CIBA 039010

- 3 -

INFORMATION DISCLOSURE (Pending App)
[REV.4MAR92]

than three months prior to the filing of the
statement.

4.    [ X ] Newly Cited Information
          A legible copy of the patents, publications or other
          information cited on the attached form PTO 1449 is
          enclosed, except that no copy of a pending U. S.
          application is enclosed.

5.    [   ] Previously Cited Information
          No copy of the patents, publications or other
          information cited on the attached form PTO-1440 is
          enclosed because it has been previously cited by or
          submitted to the Office in a prior application which
          is relied upon for an earlier filing date under
          35 USC 120.

          Prior application is Serial No. ____/_____,
          filed on _____ of _____
                        (date)            (inventors)
          _____, _____,
          for _____
          _____.

6.    [   ] Concise Explanation
          Documents cited above which are not in the English language
                a.    [   ]    have been explained in the
                               specification.
                b.    [   ]    have an abstract (or other concise
                               explanation) in English enclosed or if
                               readily available a translation into
                               English of the document is enclosed.

CIBA 039011

- 4 -

INFORMATION DISCLOSURE (Pending App)
[REV.4MAR92]

7.    Form PTO-1449 is enclosed in duplicate.

8.    [   ] A petition requesting consideration of this informa-
tion disclosure statement is enclosed.

9.    [   ] Fees
      a.    [   ] late filing (37 CFR 1.17(p))  Fee:  $200.00
      b.    [   ] Petition (37 CFR 1.17(i)(1))  Fee:  $130.00

      Total Fee due $_____.

10.   Method of Payment of Fees:
      Charge Deposit Account No. 01-1300 in the amount
      of $_____.
      A duplicate of this statement is enclosed.

11.   Instructions as to Overpayment/Underpayment:
      Credit any overpayment and charge any underpayment to
      Deposit Account No. 01-1300.

                                    _____
                                    (Signature of Attorney)

Reg. No. 19933                      Frank M. Van Riet
                                    (Type name of Attorney)

Tel. No. (203) 321-2614             American Cyanamid Company
                                    1937 West Main Street
                                    P.O. Box 60
                                    Stamford, CT 06904-0060

CIBA 039012

| LIST OF PATENT AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT (USE SEVERAL SHEETS IF NECESSARY) | Atty. Docket No. 31,043-01 | Serial No. 07/540,667 |
|---|---|---|
| | Applicants Dan S. Honig; Elieth S. Harris | |
| | Filing Date March 23, 1992 | Group |

APR 27 1992

### U. S. PATENT DOCUMENTS

| Examiner Initial | | Doc. No. | Date | Name | Class | Subclass | Filing Date |
|---|---|---|---|---|---|---|---|
| | AA | 4,388,150 | | | | | |
| | AB | 4,385,961 | | | | | |
| | AC | 4,643,801 | | | | | |
| | AD | 4,798,653 | | | | | |
| | AE | 4,750,974 | | | | | |
| | AF | 4,305,781 | | | | | |
| | AG | 4,753,710 | | | | | |
| | AH | 4,445,970 | | | | | |
| | AI | 4,056,501 | | | | | |
| | AJ | 4,178,205 | | | | | |
| | AK | 4,187,142 | | | | | |
| | AL | 4,189,345 | | | | | |
| | AM | 4,225,383 | | | | | |

### FOREIGN PATENT DOCUMENTS

| | Doc. No. | Date | Country | Class | Subclass | Translation Yes | No |
|---|---|---|---|---|---|---|---|
| AN | 235596/63 | | Japan | | | | |
| AO | 0273605 | | EPO | | | | |
| AP | 0202780 | | EPO | | | | |
| AQ | | | | | | | |
| AR | | | | | | | |

### OTHER ART (Including author, title, date, pertinent pages, Etc)

| | | |
|---|---|---|
| AS | | |
| AT | | |
| AU | | |

| Examiner | Date Considered |
|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609: Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Form PTO-1449

CIBA 039013



382429  0996  –00  06-14-83  29242            05-1043  141239  201473  04344150  2052

# United States Patent [19]

## Sunden et al.

[11]  **4,388,150**

[45]  **Jun. 14, 1983**

[54]  PAPERMAKING AND PRODUCTS MADE THEREBY

[75]  Inventors: Olof Sunden, Thonon, France; Per G. Batelson, Lilla Edet, Sweden; Hans E. Johansson, Kungälv, Sweden; Hans M. Larsson; Per J. Svending, both of Gothenburg, Sweden

[73]  Assignee: Eka Aktiebolag, Surte, Sweden

[21]  Appl. No.: 238,635

[22]  Filed: Feb. 26, 1981

[30]  Foreign Application Priority Data

May 28, 1980 [SE] Sweden .................................. 8003948

[51]  Int. Cl.³ ............................ D21H 3/28; D21H 3/66
[52]  U.S. Cl. ............................... 162/175; 162/181.6
[58]  Field of Search ................... 162/181.6, 175, 190

[56]  **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,647,158 | 7/1953 | Booth | 162/181.6 |
| 2,865,743 | 12/1958 | Weisgerber | 162/181.6 |
| 3,224,927 | 12/1965 | Brown et al. | 162/181.6 |
| 3,227,607 | 1/1966 | Mays et al. | 162/181.6 |
| 3,592,834 | 7/1971 | Buckman et al. | 260/448.8 A |
| 3,721,575 | 3/1973 | Jarowenko et al. | 162/175 |
| 3,737,370 | 6/1973 | Jarowenko et al. | 162/175 |
| 3,779,912 | 12/1973 | Redmore et al. | 162/190 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 2802861 | 8/1978 | Fed. Rep. of Germany . |
| 2412452 | 4/1980 | Fed. Rep. of Germany . |
| 49427 | 2/1975 | Finland . |
| 54805 | 11/1978 | Finland . |

### OTHER PUBLICATIONS

Casey, *Pulp and Paper*, vol. II, (1960), pp. 746, 846, 1014, 1178, 1179.

Norcus, "The Use of Activated Silica in the Coagulation of Highly Colored Water", TAPPI, vol. 120, No. 11, (Mar. 1945), pp. 101–103.

*Primary Examiner*—Peter Chin
*Attorney, Agent, or Firm*—Luedeka & Neely

[57]  **ABSTRACT**

In making paper from an aqueous papermaking stock a binder comprising colloidal silicic acid and cationic starch is added to the stock for improving the paper or the retention of the stock components, or is added to the white water for reducing the pollution problems or recovering values from the white water.

The cationic starch of the binder has a degree of substitution of not less than 0.01, and the weight ratio of cationic starch to SiO₂ is between 1:1 and 25:1.

37 Claims, 22 Drawing Figures

CIBA 039014

4388150    238635

**U.S. Patent**    Jun. 14, 1983    Sheet 1 of 16    **4,388,150**



FIG.1

CIBA 039015



238635

U.S. Patent    Jun. 14, 1983    Sheet 2 of 16    4,388,150

FIG. 2

CIBA 039016

238635

U.S. Patent    Jun. 14, 1983    Sheet 3 of 16    4,388,150



CONCENTRATION OF SOLIDS IN STOCK

FIG. 2A

CIBA 039017

238635



FIG. 2B

CIBA 039018

238635

U.S. Patent    Jun. 14, 1983    Sheet 5 of 16    4,388,150



FILTERING TIME FOR 500ml SAMPLE OF WHITE WATER

FIG. 2C.

CIBA 039019

238635

4388150

U.S. Patent    Jun. 14, 1983    Sheet 6 of 16    4,388,150



FIG.2D

Z-POTENTIAL IN STOCK

CIBA 039020

238635



CIBA 039021

238635



TENSILE INDEX
METHOD: SCAN P16:76

FIG. 2F

TENSILE INDEX
METHOD: SCAN P16:76

FIG. 2G

CIBA 039022



238635

**U.S. Patent**    Jun. 14, 1983    Sheet 9 of 16    4,388,150



*FIG. 2H*

CIBA 039023