- 19 -

31,320

WE CLAIM:

1. A composition comprising cross-linked anionic or amphoteric, organic polymeric microparticles, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1 mPa.s and a crosslinking agent content of above about 4 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about 5.0%.

2. A composition as defined in Claim 1 wherein said crosslinking agent content ranges from about 4 to about 6,000 molar parts per million.

2⊄. A composition as defined in Claim 1 wherein said crosslinking agent content is from about 20 to about 4,000 molar parts per million.

3⊄. A composition as defined in Claim 1 wherein said crosslinking agent content is from about 50 to about 2,000 molar parts per million.

⊄. A composition as defined in Claim 1 wherein said crosslinking agent is a difunctional monomer selected from N,N'-methylenebisacrylamide, N,N'-methylenebismethacryl-amide, polyethyleneglycol dimethacrylate, polyethyeneglycol diacrylate, N-vinyl acrylamide, glycidyl acrylate, divinylbenzene, acrolein, aldehydes, glyoxal, diepoxy compounds, epichlorohydrin and mixtures of the foregoing.

⊄. A composition as defined in Claim 1 wherein said crosslinking agent comprises N,N'-methylenebisacrylamide.

CIBA 038626

- 20 -

7. A composition as defined in Claim 1 wherein said said unswollen diameter is less than 0.5 micron.

8. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one ethylenically unsaturated non-ionic monomer.

9. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one anionic monomer selected from acrylic acid, methylacrylic acid, ethylacrylic acid, 2-acrylamido-2-methylpropane-sulfonic acid or mixtures or salts thereof.

10. A composition as defined in Claim 8 wherein said anionic monomer comprises sodium acrylate, sodium methylacrylate, sodium ethylacrylate or sodium 2-acrylamido-2-methylpropanesulfonate.

11. A composition as defined in Claim 1 wherein the organic polymer microparticle is amphoteric and is composed of from 1% to 99% of an anionic monomer selected from acrylic acid, methacrylic acid, ethacrylic acid, 2-acrylamido-2-methylpropane sulfonic acid or salts thereof and from 99% to 1% of a cationic monomer selected from acryloxyethyltrimethylammonium chloride, 3-methacrylamidopropyltrimethylammonium chloride, diallydimethylammonium chloride and mixtures thereof.

12. A composition as defined in Claim 8 wherein said non-ionic ethylenically unsaturated monomer is selected from acrylamide; methacrylamide;N,N-dialkylacrylamides; N-alkylacrylamides; N-vinylmethacetamide; N-vinyl methylformamide; vinyl acetate; N-vinyl pyrrolidone and mixtures thereof.

13. A composition as defined in Claim 1 wherein said organic polymer microbead is composed of sodium acrylate and acrylamide.

- 21 -

13
14. A process for the preparation of a composition as defined in Claim 1, said process comprising:

 (a) admixing

  (i) an aqueous solution comprising at least one ethylenically unsaturated anionic monomer alone or in admixture with a cationic monomer, and at least one crosslinking agent and, optionally, at least one ethylenically unsaturated non-ionic monomer;

  (ii) an oily phase comprising at least one hydrocarbon liquid;

  (iii) an effective amount of surfactant or surfactant mixture, so as to form an inverse emulsion; and

 (b) subjecting the inverse emulsion obtained in step (a) to polymerization conditions.

14
15. A process as defined in Claim 14 [13] wherein said monomer solution of step (a)(i) comprises sodium acrylate as said anionic monomer, N,N-methylenebisacrylamide as said crosslinking agent and acrylamide as said non-ionic monomer.

15
16. A process as defined in Claim 14 [13] wherein said oily phase of step (a)(ii) comprises a saturated hydrocarbon.

16
17. A process as defined in Claim 14 [13] wherein said surfactant or surfactant mixture of step (a)(iii) comprises polyoxythylene sorbitol hexaoleate or a mixture thereof with sorbitan sesquioleate.

17
18. A process as defined in Claim 14 [13] wherein said polymerization conditions of step (b) comprise adding a polymerization initiator.

CIBA 038628

- 22 -

18
25. A process as defined in Claim 17 wherein said polymerization initiator comprises sodium metabisulfite or tertiary-butyl hydroperoxide.

19
20. A process as defined in Claim 13 wherein said polymerization conditions of step (b) comprise subjecting said inverse emulsion to ultraviolet irradiation.

20
21. A process as defined in Claim 13 wherein said aqueous solution of step (a)(i) additionally contains an effective amount of a chain-transfer agent selected from an alcohol, mercaptan, phosphite, sulfite, or a mixture thereof.

21
22. A process as defined in Claim 13 which also includes step (c), comprising recovering the composition from the emulsion.

CIBA 038629

07/803120



## TITLE OF THE INVENTION

## CROSS-LINKED ANIONIC AND AMPHOTERIC
## POLYMERIC MICROPARTICLES

ABSTRACT OF THE ~~INVENTION~~ DISCLOSURE

Novel compositions comprising anionic and/or amphoteric organic polymeric microparticles are disclosed, along with a method for their production.  The products are useful in flocculating a wide variety of dispersions of suspended solids and in paper-making.

CIBA 038630

[REV.4Apr89/MB1-1]                          Docket No. 31,320

                                                              PATENT

### COMBINED DECLARATION AND POWER OF ATTORNEY
(Original,Design,Supplemental,Divisional,Continuation,CIP)

As the below named inventor, I hereby declare that:
### TYPE OF DECLARATION
This declaration is of the following type:

     [ X ] original
     [   ] design
     [   ] supplemental
     [   ] divisional
     [   ] continuation
     [   ] continuation-in-part (CIP)
### INVENTORSHIP IDENTIFICATION
My residence, post office address and citizenship are as stated
below next to my name, I believe I am the original, first and
sole inventor (if only one name is listed below) or an original,
first and joint inventor (if plural named are listed below) of
the subject matter which is claimed for, for which a patent is
sought on the invention entitled:
### TITLE OF INVENTION
Cross-Linked Anionic and Amphoteric Polymeric Microparticles


### SPECIFICATION IDENTIFICATION
the specification of which: (complete (a), (b), or (c))

     (a) [ X ] is attached hereto.
     (b) [   ] was filed on _____ as
              [   ] Serial Number    /
              [   ] Express Mail No., as Serial Number not
                    yet known
     (c) [   ] was described and claimed in PCT International
              Application No. _____ filed on
              _____ and as amended under PCT
              Article 19 on _____ (if any).

CIBA 038631

[REV.4Apr89/MB1-1]                    -2-

### ACKNOWLEDGEMENT OF REVIEW OF PAPERS AND DUTY OF CANDOR

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37 CFR 1.97.

### PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate or of any PCT International application(s) designating at least one country other than the United States of America listed below and have also identified below any foreign application(s) for patent or inventor's certificate of any PCT International application(s) designating at least one country other than the United States of America filed by me on the same subject matter having a filing date before that of the application(s) of which priority is claimed.

(d) [ X ] no such applications have been filed.

(e) [    ] such applications have been filed as follows. Note: Where item (c) is entered above and the International Application which designated the U.S. claimed priority check item (e), enter the details below and make the priority claim.

Earliest Foreign Application(s), if any, filed within 12 months (6 months for Design) prior to this U.S. Application

| COUNTRY | APPLICATION NUMBER | DATE OF FILING (DAY,MONTH,YEAR) | PRIORITY CLAIMED 35 USC 119 |
|---------|--------------------|--------------------------------|------------------------------|
|         |                    |                                |                              |
|         |                    |                                |                              |
|         |                    |                                |                              |
|         |                    |                                |                              |

CIBA 038632

[REV.4Apr89/MB1-1]          -3-

All Foreign Application(s), if any, Filed More Than 12 Months
(6 Months for Design) Prior to This U.S. Application

_____

_____
_____
_____

### POWER OF ATTORNEY

As a named inventor, I hereby appoint the following
attorney(s) and/or agent(s) to prosecute this application and
transact all business in the Patent and Trademark Office
connected therewith.

| Frank M. Van Riet | 19933 |
|---|---|
| (Name) | (Reg. No.) |

| Gordon L. Hart | 20191 |
|---|---|
| (Name) | (Reg. No.) |

| Roger S. Benjamin | 27025 |
|---|---|
| (Name) | (Reg. No.) |

| Michael J. Kelly | 27910 |
|---|---|
| (Name) | (Reg. No.) |

Steven H. Flynn                    29639

[   ]    Attached as part of this declaration and power of
attorney is the authorization of the above-named
attorney(s) to accept and follow instructions from my
representative(s).

-------------------------------------------------------------

SEND CORRESPONDENCE AND TELEPHONE CALLS TO:
Frank M. Van Riet
C/O American Cyanamid Company
1937 West Main Street
Stamford, CT  06904-0060
Telephone No. (203) 321-2614
-------------------------------------------------------------

CIBA 038633

[REV.4Apr89/MB1-1]           -4-

## DECLARATION

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

SIGNATURE(S)

Full name of SOLE OR FIRST INVENTOR Roderick Glynn Ryles.

Inventor's signature _Roderick Glyn Ryles_
Date _7th June 1990 ._
Country of Citizenship British
Residence 96 Wendy Road, Milford, (CT)
Post Office Address Same

Full name of SECOND JOINT INVENTOR, if any Dan S. Honig.

Inventor's signature _Dan S Honig_
Date _June 7, 1990_
Country of Citizenship United States
Residence 12 Conrad Road, New Canaan, (CT) 06840
Post Office Address Same

Full name of THIRD JOINT INVENTOR, if any Elieth W. Harris.

Inventor's signature _Elieth W Harris_
Date _June 7, 1990_
Country of Citizenship Antigua
Residence 484 Colorado Avenue, Bridgeport, (CT) 06605
Post Office Address Same

CIBA 038634

[REV.4Apr89/MB1-1]                 -5-

<u>THE FOLLOWING 'ADDED PAGES' FORM A PART OF THIS DECLARATION</u>

[ X ] Signature for fourth and subsequent joint inventors on
      ADDED PAGES.
[    ] ADDED PAGES TO COMBINED DECLARATION, POWER OF ATTORNEY
      for divisional, continuation, or continuation-in-part (CIP)
      application.
      [    ] Number of ADDED PAGES: _____
      [    ] Declaration ends with this page.

CIBA 038635

[REV.4Apr89/MB1-1]                    -6-

### ADDED PAGE TO COMBINED DECLARATION AND POWER OF ATTORNEY FOR SIGNATURE BY FOURTH AND SUBSEQUENT INVENTORS

Full name of FOURTH JOINT INVENTOR, if any  Roger E. Neff

Inventor's signature  _Roger E. Neff_
Date  _6/7/90_
Country of Citizenship  United States
Residence  66 Woodridge Drive, Stamford, (CT)
Post Office Address  _____

Full name of FIFTH JOINT INVENTOR, if any  _____

Inventor's signature  _____
Date  _____
Country of Citizenship  _____
Residence  _____
Post Office Address  _____

Full name of SIXTH JOINT INVENTOR, if any  _____

Inventor's signature  _____
Date  _____
Country of Citizenship  _____
Residence  _____
Post Office Address  _____

Full name of SEVENTH JOINT INVENTOR, if any  _____

Inventor's signature  _____
Date  _____
Country of Citizenship  _____
Residence  _____
Post Office Address  _____

CIBA 038636

[REV.4Apr89/MB16-3]                    Docket No. 31,320
                                                    PATENT

For: [ ] U.S. and/or [ ] Foreign Rights
For: [X] U.S. Application or [ ] U.S. Patent
For: [ ] Inventor(s) or [ ] Present Owner

### ASSIGNMENT OF INVENTION

    In consideration of the payment by ASSIGNEE to ASSIGNOR of
the sum of One Dollar ($1.00), the receipt of which is hereby
acknowledged, and for other good and valuable consideration,

ASSIGNOR:

(1)  Full Name of Inventor: Roderick Glynn Ryles
     Residence: 96 Wendy Road, Milford, CT
     Citizenship: British

(2)  Full Name of Inventor: Dan S. Honig
     Residence: 12 Conrad Road, New Canaan, CT  06840
     Citizenship: United States

(3)  Full Name of Inventor: Elieth W. Harris
     Residence: 484 Colorado Avenue, Bridgeport, CT  06605
     Citizenship: Antigua

(4)  Full Name of Inventor: Roger E. Neff
     Residence: 66 Woodridge Drive, Stamford, CT
     Citizenship: United States

(5)  Full Name of Inventor: _____
     Residence: _____
     Citizenship: _____

(if assignment is by person or entity to whom invention was
previously assigned and this was recorded in PTO, add the follow-
ing):

Page 1 of 4 pages

CIBA 038637

[REV.4Apr89/MB16-3]

Docket No. 31,320 _____

Recorded on _____

Reel _____

Frame _____

hereby sells, assigns and transfers to

ASSIGNEE:                  AMERICAN CYANAMID COMPANY

                           1937 WEST MAIN STREET

                           P.O. BOX 60

                           STAMFORD, CT 06904-0060

and the successors, assigns and legal representatives of the
ASSIGNEE the entire right, title and interest for the United
States and its territorial possessions and in all foreign coun-
tries, including all rights to claim priority, in and to any and
all improvements which are disclosed in the invention entitled:
Cross-Linked Anionic and Amphoteric Polymeric Microparticles

_____

          [check and complete (a), (b), (c) or (d)]
and which is found in
     (a) [ X ] U.S. patent application executed on even date
               herewith
     (b) [   ] U.S. patent application executed on _____
     (c) [   ] U.S. application Serial No.   /        filed on
               _____.
     (d) [   ] U.S. Patent No. _____ issued _____
(also check (e) if foreign application(s) is also being assigned)
     (e) [   ] and any legal equivalent thereof in a foreign
               country, including the right to claim priority
and in and to all Letters Patent to be obtained for said inven-
tion by the above application or any continuation, division,
renewal, or substitute thereof, and as to letters patent any
reissue or re-examination thereof.

     ASSIGNOR hereby covenants that no assignment, sale, agree-
ment or encumbrance has been or will be made or entered into
which would conflict with this assignment;

                    Page 2 of 4 pages

CIBA 038638

[REV.4Apr89/MB16-3]

Docket No. 31,320

ASSIGNOR authorizes ASSIGNEE to make applications for and to receive Letters Patent for said invention in any of said countries in its own name, or in my name, at its election.

ASSIGNOR covenants and agrees to execute or procure any further necessary assurance of the title to said invention and any Letters Patent which may issue therefor and to, at any time, upon the request and at the expense of ASSIGNEE deliver any testimony in any interference, litigation or proceeding related thereto and execute all papers that may be necessary or desirable to perfect the title to said invention or any Letters Patent which may be granted therefor in ASSIGNEE, its successors, assigns or other legal representatives, and that to, at any time, upon the request and at the expense of ASSIGNEE execute any continuations, continuations-in-part, divisional, renewal or substitute thereof, and as to Letters Patent and reissue or re-examination thereof, or any other additional applications for Letters Patent for said invention or any part or parts thereof, all of which applications and any Letters Patent issuing thereon are hereby assigned to ASSIGNEE, and will make all rightful oaths or declarations, and do all lawful acts requisite for procuring the same therein, without further compensation, but at the expense of ASSIGNEE, its successors, assigns or other legal representatives.

Page 3 of 4 pages

CIBA 038639

[REV.4Apr89/MB16-3]

Docket No. 31,320

    ASSIGNOR authorizes and requests the Commissioner of Patents to issue any and all Letters Patent of the United States for said invention, resulting from any of the aforesaid applications to said AMERICAN CYANAMID COMPANY, as sole ASSIGNEE.

    WITNESS my hand and seal this _7th_ day of _June_,
qs 1990.

_Roderick Glyn Ryles_ L.S.    _Elieth W Harris_ L.S. EWH
Roderick Glynn Ryles         Elieth Harris

_Dan S Honig_ L.S.    _Roger E Neff_ L.S.
Dan S. Honig         Roger E. Neff

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**ACKNOWLEDGEMENT**

State of _Connecticut_ } ss:
County of _Fairfield_ }

    On this _7th_ day of _June_, 1990, personally appeared before me <u>RODERICK GLYNN RYLES; DAN S. HONIG; ELIETH W.</u> qs <u>HARRIS AND ROGER E. NEFF</u>, to me known, and known by me to be the same person(s) described in and who executed the foregoing instrument, and acknowledged that they executed the same, of their own free will and for the purposes set forth.

_Gloria A. Shehan_
Notary Public

My Commission Expires March 31, 1995

Page 4 of 4 pages

CIBA 038640

07/803120

(Rule 60) [REV.4Apr89/MB4-3]            Docket No. 31,320-01

PATENT

*(MAIL ROOM JUL 22 1991 PATENT & TRADEMARK stamp)*

Commissioner of Patents and Trademarks
Washington, D.C. 20231

FILING UNDER 37 CFR 1.60(b)

This is a request for filing a

    [ X ] Continuation

    [    ] Divisional

application under 37 CFR 1.60, of pending application Serial
Number 07/535,626  filed on June 11, 1990 ____        of
                          (date)

Roderick Glyn Ryles; Dan S. Honig; Elieth W. Harris; ____

Roger E. Neff ____
        (inventors)

Cross-Linked Anionic and Amphoteric Polymeric Microparticles ____
        (Title)

1.  Copy of Prior Application as Filed Which is Attached

    [ X ] I hereby verify that the attached papers are a true
           copy of what is shown in my records to be the above
           identified prior application, including the
           declaration originally filed (37 CFR 1.60).

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CERTIFICATION UNDER 37 CFR 1.10

    I hereby certify that this New Application Transmittal and the
documents referred to as enclosed therein are being deposited with
the United States Postal Service on this date ____
in an envelope as "Express Mail Post Office to Addressee" Mailing
Label Number ____ addressed to the: Commissioner of
Patents and Trademarks, Washington, D.C 20231.

                       _____
                       (name of person mailing paper)

                       _____
                       (Signature of person mailing paper)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CIBA 038641

(Rule 60) [REV.4Apr89/MB4-3]   -2-

The copy of the papers of prior application as filed which
are attached are as follows:

[ X ] _18_ page(s) of specification

[ X ] _4_ page(s) of claims

[ X ] _1_ page(s) of abstract

[   ] ____ sheet(s) of drawing

[   ] ____ copy of pages of declaration and power
            of attorney showing applicant's signature

2.  Amendments

[ X  ]Cancel in this application original claims

Claim 2 _____

of the prior application before calculating the filing
fee. (At least one original independent claim is
retained for filing purposes.)

[ X ] A preliminary amendment is enclosed. (Claims added by
this amendment have been properly numbered
consecutively beginning with the number next following
with the highest numbered original claim in the prior
application.)

3.  Petition for Suspension of Prosecution for the Time Necessary
to File an Amendment

[   ] Provided herewith is a Petition To Suspend Prosecution
for the Time Necessary to File An Amendment (New
Application Filed Concurrently)

4.  Fee Calculation

| CLAIMS AS FILED | | | | |
|---|---|---|---|---|
| (1)<br><br>FOR | (2)<br><br>NUMBER FILED | (3)<br><br>NUMBER EXTRA | (4)<br><br>RATE | (5)<br><br>BASIC FEE<br>($630.00) |
| TOTAL CLAIMS | 21 - 20 = | | X $20.00 | 20.00 |
| INDEP. CLAIMS | 2 - 3 = | | X $60.00 | |
| MULTIPLE DEPENDENCY FEE | | | $ 200.00 | |
| RECORDING OF ASSIGNMENT | | | $   8.00 | |
| | | | TOTAL FILING FEE | $  650.00 |

CIBA 038642



(Rule 60) [REV.4Apr89/MB4-3]   -3-

5. Drawings
    [  ] Transfer the following sheet(s) of drawing from the
         prior application to this application:

    _____

    [  ] A copy of the amendment cancelling these sheets of
         drawing in the prior application is attached.
    [  ] New drawings are enclosed
         [  ] formal
         [  ] informal

6. Relate Back - 35 U.S.C. 120
    [ X ] Amend the specification by inserting before the first
    line the sentence:
    This is a
        [ X ] continuation
        [  ] divisional
    of co-pending application, Serial No. 07/535,626,
    filed June 11, 1990, now abandoned.

7. Inventorship Statement
    (a)   With respect to the prior copending U.S. application
          from which this application claims benefit under 35
          USC 120, the inventor(s) in this application is (are):
          [ X ] the same
          [  ] less than those named in the prior application
                and it is requested that the following
                inventor(s) identified above for the prior
                application be deleted:

          _____

    (b)   The inventorship for all the claims in this
          application are
          [ X ] the same
          [  ] not the same, and an explanation, including the
                ownership of the various claims at the time the
                last claimed invention was made, is submitted.

2

(Rule 60) [REV.4Apr89/MB4-3]    -4-

8.  Assignment
    [ X ] The prior application is assigned of record to
          American Cyanamid Company
          1937 West Main Street
          P.O. Box 60
          Stamford, CT 06904-0060
    [   ] An assignment of the invention is attached.

9.  Fee Payment being made at this time
    [ X ] filing fee                  $ 650.00
    [   ] recording assignment        $ _____
                             TOTAL  $ 650.00

10. Method of Payment of Fees:
    Charge Deposit Account No. 01-1300 in the amount of $ 650.00
    A duplicate of this transmittal is attached.

11. Instructions as to Overpayment:
    Credit any overpayment to Deposit Account No. 01-1300.

12. Power of Attorney
    [ X ] The Power of Attorney in the prior application is to

    Frank M. Van Riet                    19933
         (Attorney)                     (Reg. No.)

    Roger S. Benjamin                    27025
         (Attorney)                     (Reg. No.)

    Michael J. Kelly                     27910
         (Attorney)                     (Reg. No.)

    William H. Calnan                    29520
         (Attorney)                     (Reg. No.)

    a. [ X ] The power appears in the original papers in
             the prior application
    b. [   ] Since the power does not appear in the
             original papers, a copy of the power in the
             prior application is enclosed.
    c. [   ] A new power has been executed and is
             attached.

CIBA 038644

(Rule 60) [REV.4Apr89/MB4-3]    -5-

    d. [ X ] Address all future communications to:

        Frank M. Van Riet

        c/o American Cyanamid Company

13. Maintenance of Copendency of Prior Application

    [ X ] A petition, fee and response has been filed to extend
the term in the pending application until:
August 11, 1991    .

    [    ] A copy of the petition for extension of time in the
prior application is attached.

14. Conditional Petition for Extension of Time in Prior
Application (Complete this item and file conditional
petition in the prior application if previous item not
applicable.)

    [    ] A conditional petition for extension of time is being
filed in the pending patent application.

    [    ] A copy of the conditional petition for extension of
time in the prior application is attached.

15. [    ] A certified copy of the priority document has been
filed in Serial Number _____

                             (Signature of Attorney)

Reg. No.  19933    .    Frank M. Van Riet
                              (Type name of Attorney)

Tel. No. (203) 321-2614    American Cyanamid Company
                              1937 West Main Street
                              P.O. Box 60
                              Stamford, CT 06904-0060

Assignment recorded in PTO on December 19, 1988    .

Reel 4986    Frame 0906

CIBA 038645

07/803120





Docket No: 31.320-01

IN THE UNITED PATENT AND TRADEMARK OFFICE

In re Application of:                    Date: July 18, 1991
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Continuation of                 *Does not*
Serial No.: 07/535,626          *Belong in this case*
Filed: June 11, 1990
For:  CROSS-LINKED ANIONIC AND                    RECEIVED
      AMPHOTERIC POLYMERIC
      MICROPARTICLES                              JUL 24 1991

Commissioner of Patents                           GROUP 150
  and Trademarks Office

Washington, D.C.  20231


PRELIMINARY AMENDMENT

Preliminary to the issuance of the first Office
Action in this continuation application, please amend the
continuation application as follows:


In the Specifications:

Page 3, line 24, please cancel the words "vinyl
acetate".

Page 5, lines 14 and 15, cancel the words
"Attorney Docket No. 31,043), filed concurrently herewith"
and substitute therefor the words 07/536,382 filed June
11, 1990, now abandoned and refiled as Serial No.
07/540,667, filed June 18, 1990 as a continuation-in-part--.

Page 5, line 24, cancel the term "5%" and
substitute therefor --5 mole percent--.

Page 10, line 8 please correct the spelling of
"azobisisobutyronitrile".

Page 11, line 16, cancel the word "initialed" and
substitute therefor the word --initiated--.

CIBA 038646

Page 18, line 8, cancel the word "micorbead" and substitute therefor the word --microbead--.

### In the Claims:

Please rewrite Claim 1 as follows:

1. (Amended) A composition comprising cross-linked anionic or amphoteric polymeric microparticles derived solely from water-soluble monomers, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1. mPa.s, [and] a cross-linking agent content of [above] about 4 molar parts to about 4000 parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about [5%] 5 mole percent.

Claim 5, line 6, cancel the word "aldehydes".

Claim 10, line 2, cancel the word "cationic" and substitute therefore the word --anionic--.

### Remarks

This Amendment is being filed in response to the Office Action mailed April 11, 1991 in Applicants' parent application identified above. In said Office Action, the Examiner had:

1. Withdrawn the restriction requirement.

2. Indicated that the rejection of Claims 5 and 10 under 35 USC 112, first paragraph, had been overcome.

3. Indicated that the rejection of Claims 8 and 12 under 35 USC 112, first paragraph, was withdrawn.

4. Indicated that the rejection of Claims 1-13 under 35 USC 112, second paragraph had been overcome.

21

CIBA 038647

The amendments made to the parent application have been repeated hereby and therefore all rejections previously made by the Examiner based on 35 USC 112 are also obviated in the instant continuation application.

In the parent application, the Examiner had rejected Claims 1-5, 7-9 and 12 under 35 USC 102(b) or under 35 USC 103 over Makhlouf etal stating that Applicants had previously argued that the polymers of Makhlouf etal contain 70-99% water-insoluble monomer however, the list of monomers in lines 41-63, col.2, of the reference includes vinyl acetate which is soluble in water. There is also a statement that essentially any copolymerizable monoethylenic monomer may be use, the Examiner concludes.

This ground of rejection has been overcome by the instant amendment whereby Claim 1 has been amended so as to indicate that the cross-linking agent content ranges from about 4 to about 4000 parts per million. This limitation clearly distinguishes the instant compositions over those of Makhlouf etal in that the patentee indicates at col. 4, lines 17-20 that the cross-linking monomer content is at least 0.5% i.e. 5000 parts per million. With regard to the listing of vinyl acetate in col. 2, lines 41-63 of Makhlouf etal., it is respectfully submitted that vinyl acetate is generally accepted as a water-insoluble monomer in that its solubility in 1000 parts of water is limited to 2 parts at $20^{o}C$. In fact, U.S. Patent No. 4,485,209, at col. 3, line 3, lists vinyl acetate in a listing of hydrophobic monomers, see attached copy. It is therefor strenuously urged that Applicants have clearly distinguished the instant claims over the Makhlouf etal reference by the limitation of the cross-linking monomer concentration to about 4-4000 ppm and the monomers to those which are water-soluble. Reconsideration of this ground of rejection is earnestly solicited.

CIBA 038648

In the Office Action of April 11, 1991 in Applicants' parent application, the Examiner had also indicated that the rejection under 35 USC 202(b) or 35 USC 103 over Durand and over Silver had also been overcome by Applicants' previous arguments and amendments.

Claims 1-13 had also been rejected under 35 USC 103 as unpatentable over Neff etal in view of Whittaker, the Examiner indicating that the primary reference discloses cross-linked, cationic, polymeric microparticles and a method for their preparation while Whittaker teaches the use of cationic, anionic, and/or amphoteric polymers as flocculating agents for different types of dispersions. It is therefore the Examiner's opinion that it would be obvious because cross-linked anionic and/or amphoteric polymeric microparticles would be expected to flocculate the type of dispersions which Whittaker's anionic and/or amphoteric polymers will flocculate.

This ground of rejection is respectfully traversed. Although the rejection does not so indicate, it is believed that the Examiner is of the opinion that because Whittaker equates anionic, cationic and/or amphoteric polymers as flocculating agents and because Neff etal teach cationic microparticles as flocculants, it would be expected that Applicants' anionic and/or amphoteric microparticles would also be useful as flocculants. It is strenuously urged that Applicants' microparticles have been shown to be superior to anionic and/amphoteric polymers made from excessive amounts of cross-linking agent, see Table 1, Example 20-22 wherein a cross-linked particle made using 10,086 ppm of methylenebisacrylamide cross-linker (Example 5) is clearly an ineffective drainage aid. Whittaker does not recognize the need to incorporate cross-linking agent into the polymer in a critical amount. Whittaker at col. 6, line 23-26 indicates that the polymer must be water-soluble

CIBA 038649

and the monomers are preferably free of cross-linking agent. Thus, Whittaker merely teaches that anionic, cationic and amphoteric polymers can be made more effective as flocculating agents by shearing them. Whittaker adds nothing to Neff but the fact that anionic and amphoteric polymers can be used as flocculants. It is not clear from either of the references what effect cross-linking with 4-4000 ppm of cross-linker would have on anionic and amphoteric microparticles when they are used as retention aids in paper-making. There is nothing in either Neff etal or Whittaker which would teach one skilled in the art that the unexpectedly superior results shown in Table I of the instant specification could or would be achieved by such microparticles. Nothing in Neff etal relates to anionic or amphoteric polymers or would lend the skilled artisan to the instant compositions especially since retention in paper-making requires the addition of far lesser amounts of additive than required in the sludge dewatering shown in Neff etal's examples, note the dosage in Table I of Neff etal i.e. 11-56 lbs/ton versus that of Table II of Applicants i.e. 2 lbs/ton. Applicants agree that one skilled in the art might expect Applicants' compositions to flocculate but one skilled in the art would not expect the extraordinary drainage results shown in Table II of the instant disclosure. This is the stuff inventions are made of! Reconsideration and withdrawal of this ground of rejection is earnestly solicited.

Claims 14-22 have been rejected under 35 USC 113 as unpatentable over Neff etal in view of Durand etal, the Examiner stating that Neff etal disclose a method of preparing cross-linked, cationic, polymeric microparticles while Durand etal show that anionic monomers are polymerizable under the inverse emulsion polymerization conditions of Neff etal and thus it would be obvious.

CIBA 038650

This ground of rejection is also respectfully traversed. Again the Examiner does not indicate what would be obvious but it is assumed he meant to indicate that it would be obvious to polymerize the anionic monomers of Durand etal via the process of Neff etal. It is strenuously urged that Durand etal fails to include a cross-linking agent in the process taught therein. The inclusion of such an agent materially affects the product produced. It is not apparent from Durand etal if the use of an anionic monomer with a cross-linking agent would even be possible when using the Neff etal process. Merely because a monomer acts one way alone does not mean it will act as expected with other materials such as cross-linkers. Furthermore, there is nothing in the cited references which would indicate that, even if the anionic monomer would act with a cross-linker like it did alone in Durand etal's system, the resultant polymer would be unexpectedly superior as a paper-making retention aid. Reconsideration of this ground of rejection is also strenuously urged.

In view of the above Remarks, this application is believed to be in consideration for allowance and such action is earnestly requested at an early date.

Respectfully submitted,

Frank M. Van Riet

Attorney for Applicants
Frank M. Van Riet
Registration: 19933

oc/
A-313201

CIBA 038651

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

07/803,120    07/22/91    RYLES                R    31.320-01

AMERICAN CYANAMID CO.,                    CHENG,W
1937 W. MAIN ST.,
P. O. BOX 60
STAMFORD, CT 06904-0060                   1505         4

                                          02/10/92

☒ This application has been examined  ☐ Responsive to communication filed on _____  ☒ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.      2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.          4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.  6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims _1 and 3-22_____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1 and 3-22_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
    are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev.9-82)

CIBA 038652

Serial No. 803,120                    -2-

Art Unit   1505

15.

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.

> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

Claims 1 and 3-22 are rejected under 35 U.S.C. § 103 as

being unpatentable over Makhlouf et al (US 4,147,688).

In the abstract of the reference, Makhlouf et al disclosed a

composition comprising cross-linked organic polymeric

microparticles having particle sizes from 0.1 to 10 microns.  At

least one monoethylenically unsaturated monomer and a

crosslinking agent were used.

From column 2 line 64 to column 3 line 6 of the reference,

the cross-linking agent was disclosed to be an epoxy-group

containing compound like glycidyl acrylate or glycidyl

methacrylate.  In column 2 lines 29 to 63, it was mentioned that

essentially any copolymerizable monoethylenic monomer may be

CIBA 038653

Serial No. 803,120                    -3-

Art Unit   1505

utilized.  The list of suitable monomers include acrylic acid,
methacrylic acid, vinyl acetate and others.  These three monomers
are soluble in water as shown in the Merck Index, 11th ed., 1989,
pages 21, 935, and 1572.

Although the instant claims use a cross-linking agent
content of about 4 molar parts to about 4000 parts per million
and the reference specified 0.5 percent to 15 percent by weight,
the higher limit of the claimed range is very close to the lower
limit of the reference range.

Thus it would be obvious.

16.

Claims 1 and 3-32 are rejected under 35 U.S.C. § 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention.

The term "water-soluble monomers" makes the claims
indefinite, because some monomers are partially soluble in water.
The examiner queries about the criteria for determining whether a
monomer is water-soluble or not.

17.

Claims 1 and 3-22 are rejected under 35 U.S.C. § 103 as
being unpatentable over Neff et al in view of Whittaker.

In the primary reference, Neff et al disclosed crosslinked
cationic polymeric microparticles and the method of preparation.

CIBA 038654

Serial No. 803,120                    -4-

Art Unit   1505

Whittaker taught the use of cationic, anionic, and/or amphoteric polymeric nucriparticles as flocculating agents for different types of dispersions (see column 7 lines 37-44 of the secondary reference). Although the Whittaker's polymers are not cross-linked, the same teaching can be applied to the cross-linked polymers.

It would be obvious to substitute anionic polymers in Neff's microparticles to flocculating suitable types of dispersions.
18.

This is a continuation application of applicant's earlier application S.N. 07/535,626. All claims are drawn to the same invention claimed in the earlier application and could have been finally rejected on the grounds or art of record in the next Office action if they had been entered in the earlier application. Accordingly, THIS ACTION IS MADE FINAL even though it is a first action in this case. See M.P.E.P. § 706.07(b). Applicant is reminded of the extension of time policy as set forth in 37 C.F.R. § 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE

CIBA 038655

Serial No. 803,120                    -5-

Art Unit   1505

ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

JOSEPH L. SCHOFER
SUPERVISORY PATENT EXAMINER
ART UNIT 155

Cheng:pla
February 05, 1992
(703) 308-2351

CIBA 038656

TO SEPARATE, ▶▶▶ TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/803, 120 | GROUP ART UNIT 1505 | ATTACHMENT TO PAPER NUMBER | 4 |
|---|---|---|---|---|---|

**NOTICE OF REFERENCES CITED**

APPLICANT(S)
Roderick G. Ryles, Dan S. Honig, Elieth W. Harris, and Roger E. Neff

**U.S. PATENT DOCUMENTS**

| | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | 4 | 1 4 7 6 8 8 | 4-3-79 | Makhlouf et al. | 526 | 273 | |
| B | 4 | 7 0 5 6 4 0 | 11-10-87 | Whittaker | 524 | 922 | |
| C | 4 | 9 6 8 4 3 5 | 11-6-90 | Neff et al. | 524 | 922 | 12-19-88 |
| D | | | | | | | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. PP. DWG. SPEC. |
|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | |
| M | | | | | | | | |
| N | | | | | | | | |
| O | | | | | | | | |
| P | | | | | | | | |
| Q | | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

| R | Susan Budavari, Maryadele J. O'Neil, Ann Smith, and Patricia E. Heckelman, The Merck Index, pages 21, 935, and 1572, 1989 |
|---|---|
| S | |
| T | |
| U | |

| EXAMINER CHENG, W. C. | DATE 1-31-92 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

CIBA 038657

4/3/79        XR        4,147,688

# United States Patent [19]

Makhlouf et al.

[11]    **4,147,688**

[45]    **Apr. 3, 1979**

[54] METHOD OF PREPARING DISPERSIONS OF GELLED POLYMERIC MICROPARTICLES AND PRODUCTS PRODUCED THEREBY

[75] Inventors: Joseph M. Makhlouf, Mars; Samuel Porter, Jr., Tarentum, both of Pa.

[73] Assignee: PPG Industries, Inc., Pittsburgh, Pa.

[21] Appl. No.: 805,679

[22] Filed: Jan. 13, 1977

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 559,949, Mar. 19, 1975, abandoned.

[51] Int. Cl.² ............................................ C08K 5/01
[52] U.S. Cl. .................... 260/33.6 EP; 260/33.6 UA; 526/273; 526/279; 528/392
[58] Field of Search ............... 260/33.6 EP, 33.6 UA, 260/836, 859 R

[56] References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,317,635 | 5/1967 | Osmond et al. | 260/836 |
| 3,538,185 | 11/1970 | Davis et al. | 260/836 |
| 3,652,472 | 3/1972 | Clarke et al. | 260/33.6 UA |
| 3,666,710 | 5/1972 | Makhlouf et al. | 260/33.6 UA |
| 3,686,111 | 8/1972 | Makhlouf et al. | 260/33.6 UA |
| 3,702,836 | 11/1972 | Walbridge | 260/836 |
| 3,715,412 | 2/1973 | Nakahara et al. | 260/836 |
| 3,880,796 | 4/1975 | Christenson et al. | 260/33.6 UA |
| 3,882,945 | 6/1975 | Arndt et al. | 260/836 |
| 3,966,667 | 6/1976 | Sullivan et al. | 260/33.6 UA |

### FOREIGN PATENT DOCUMENTS

967051  8/1964  United Kingdom.

*Primary Examiner*—Harry Wong, Jr.
*Attorney, Agent, or Firm*—George D. Morris

[57]    **ABSTRACT**

Dispersions containing crosslinked acrylic polymer microparticles having a particle size of from 0.1 to 10 microns are produced in relatively high concentrations by a method comprising the free radical addition copolymerization of at least one monoethylenically unsaturated monomer with alpha, beta-ethylenically unsaturated monocarboxylic acid and crosslinking monomer selected from the group consisting of (1) epoxy group-containing compound and (2) a mixture of alkylenimine and organoalkoxysilane in the presence of a dispersion stabilizer and an aliphatic hydrocarbon dispersing liquid in which the crosslinked polymer particles are insoluble.

The crosslinked acrylic polymer microparticles are useful as additives to protective and decorative coatings.

**24 Claims, No Drawings**

CIBA 038658

4,147,688

| 1 | 2 |

**METHOD OF PREPARING DISPERSIONS OF GELLED POLYMERIC MICROPARTICLES AND PRODUCTS PRODUCED THEREBY**

**CROSS-REFERENCE TO RELATED APPLICATION**

This application is a continuation-in-part of application Ser. No. 559,949, filed Mar. 19, 1975, now abandoned.

**BACKGROUND OF THE INVENTION**

Methods of preparing crosslinked acrylic polymer microparticles commonly referred to as microgel particles are known in the art. One such method is disclosed in commonly-assigned copending application Ser. No. 296,700, filed Oct. 11, 1972, now U.S. Pat. No. 3,880,796, in the name of Roger M. Christenson et al. In this method, a non-aqueous polymer dispersion is prepared by polymerizing an ethylenically unsaturated monomer containing hydroxyl groups in the presence of (1) a dispersing liquid which is a solvent for the monomer but in which the resultant polymer is insoluble and (2) a dispersion stabilizer. The resultant non-aqueous polymer dispersion produced by this method consists of a major proportion of non-crosslinked acrylic polymer particles and a minor proportion (e.g., 10 percent by weight or less) of crosslinked acrylic polymer particles (i.e., microgel particles). Accordingly, in this method, it is necessary to separate the microgel particles from the uncrosslinked polymer particles. This is accomplished by the addition to the dispersion of an active solvent for the uncrosslinked polymer particles, thereby converting the dispersion to essentially a solution, but for the presence of the insoluble microgel particles. The microgel particles are then separated from the bulk of the polymer by conventional means such as centrifuging, filtering, and the like.

The above process, while advantageous in some respects, has several serious disadvantages. Thus, as will be apparent, the microgel particles are an incidental by-product of the non-aqueous dispersion process and therefore the yield is relatively low (e.g., 5 to 10 percent by weight or less). Moreover, because of this factor, it is necessary to separate the microgel particles from a dispersion which contains a major proportion of uncrosslinked acrylic polymer particles by dissolving the uncrosslinked polymer particles with an active solvent.

Still another method for producing microgel particles is disclosed in British Pat. No. 967,051 to Bullitt et al, dated Aug. 19, 1964. In this method, microgel particles are prepared by forming an aqueous emulsion of monoethylenic unsaturated monomer and a crosslinking monomer containing at least two ethylenic double bonds, heating the emulsion to a temperature of about 40° to 100° C. until the reaction is substantially complete to yield a microgel and during the reaction adding an agent to inhibit the formation of high molecular weight substantially uncrosslinked material. The inhibiting agent as disclosed in Bullitt et al can be an active solvent for the monomers or a chain transfer agent. This method has several disadvantages. Thus, the method utilizes conventional emulsion polymerization techniques requiring careful control of the process to prevent settling and the like. Further, the use of crosslinking monomers containing at least 2 ethylenic double bonds (e.g., divinyl and diacrylate monomers) has been found to lead to flocculation problems in relatively high

solids level (i.e., 40 percent by weight or higher) microgel particle dispersions. Finally, this method requires the additional step of adding a water-immiscible solvent or chain transfer agent to the reaction mixture.

**BRIEF SUMMARY OF THE INVENTION**

The method of the present invention overcomes essentially all of the disadvantages of the prior art. Thus, the present invention provides a method of producing crosslinked acrylic polymer microparticles in relatively high concentrations (i.e., solids levels of 20 to 60 percent by weight) by a process which comprises the free radical addition copolymerization of alpha, beta-ethylenically unsaturated monocarboxylic acid, at least one other copolymerizable monoethylenically unsaturated monomer and crosslinking monomer selected from the group consisting of (1) epoxy group-containing compound and (2) a mixture of alkylenimine and organoalkoxysilane in the presence of a polymeric dispersion stabilizer and dispersing liquid in which the cross-linked acrylic polymer particles are insoluble. The reaction is carried out at elevated temperatures such that the dispersion polymer first forms and then is crosslinked; usually the temperature should be between about 50° C. and 150° C.

**DESCRIPTION OF THE PREFERRED EMBODIMENTS**

Examples of alpha, beta-ethylenically unsaturated monocarboxylic acid which may be used are acrylic acid, methacrylic acid, ethacrylic acid, alpha-chloroacrylic acid, crotonic acid isocrotonic acid, tiglic acid and angelic acid. The preferred alpha, beta-ethylenically unsaturated monocarboxylic acids are acrylic acid and methacrylic acid. Methacrylic acid is especially preferred. The amount of alpha, beta-ethylenically unsaturated monocarboxylic acid employed in the process of the invention is usually in the range of from about 0.5 percent to about 15 percent by weight of the monomers used in the copolymerization process.

Various other monoethylenically unsaturated monomers may be copolymerized with the acid monomer in the process of this invention. Although essentially any copolymerizable monoethylenic monomer may be utilized, depending upon the properties desired, the preferred monoethylenically-unsaturated monomers are the alkyl esters of acrylic or methacrylic acid, particularly those having from about 1 to about 4 atoms in the alkyl group. Illustrative of such compounds are the alkyl acrylates, such as methyl acrylate, ethyl acrylate, propyl acrylate, and butyl acrylate and the alkyl methacrylates, such as methyl methacrylate, ethyl methacrylate, propyl methacrylate and butyl methacrylate. Other ethylenically unsaturated monomers which may advantageously be employed include, for example, the vinyl aromatic hydrocarbons, such as styrene, alpha-methyl styrene, vinyl toluene, unsaturated esters of organic and inorganic acids, such as vinyl acetate, vinyl chloride and the like, and the unsaturated nitriles, such as acrylonitrile, methacrylonitrile, ethacrylonitrile, and the like. From about 70 percent to about 99 percent by weight of such monoethylenically unsaturated monomers, based on the weight of monomer solids can be utilized.

As indicated above, the crosslinking monomer employed in the process of the invention is selected from the group consisting of (1) epoxy group-containing compound and (2) a mixture of alkylenimine and organoalkoxysilane.

CIBA 038659

4,147,688

3

A particularly preferred class of epoxy group-containing compounds which may be utilized in the practice of the invention are monoepoxide compounds which additionally contain ethylenic unsaturation. Illustrative of such preferred compounds are, for example, glycidyl acrylate and glycidyl methacrylate.

Various alkylenimines can be utilized in the practice of the invention including substituted alkylenimines. The preferred class of such amines are those of the formula:

$$R_1-C-(CH_2)_n-C-R_4$$

where $R_1$, $R_2$, $R_3$, $R_4$ and $R_5$ are each hydrogen; alkyl, such as methyl, ethyl, propyl, or the like, having, for example, up to about 20 carbon atoms; aryl, such as phenyl or the like; aralkyl, such as tolyl, xylyl or the like; or aralkyl, such as benzyl, phenethyl or the like. $R_6$ in the above formula is hydrogen or a lower alkyl radical usually having not more than about 6 carbon atoms, and n is an integer from 0 to 1.

It is intended that the groups designated by the above formula include substituted radicals of the classes indicated where the substituent groups do not adversely affect the basic nature of the imine in the reaction. Such substituents can include the groups such as cyano, halo, amino, hydroxy, alkoxy, carbalkoxy and nitrile. The substituted groups may thus be cyanoalkyl, haloalkyl, aminoalkyl, hydroxyalkyl, alkoxyalkyl, carbalkoxyalkyl, and similar substituted derivatives of acyl, alkaryl and aralkyl groups where present.

A number of specific examples of alkylenimines within the class described are as follows:

Ethylenimine (aziridine)
1,2-propylenimine (2-methyl aziridine)
1,3-propylenimine (azetidine)
1,2-dodecylenimine (2-decyl aziridine)
1,1-dimethyl ethylenimine (2,2-dimethyl aziridine)
Phenyl ethylenimine (2-phenyl aziridine)
Benzyl ethylenimine (2-phenylmethyl aziridine)
Hydroxyethyl ethylenimine (2-(2-hydroxyethyl)aziridine)
Aminoethyl ethylenimine (2-(2-aminoethyl)aziridine)
2-methyl propylenimine (2-methyl azetidine)
3-chloropropyl ethylenimine (2-(3-chloropropyl)aziridine)
Methoxyethyl ethylenimine (2-(2-methoxyethyl)aziridine)
Dodecyl aziridinyl formate (dodecyl 1-aziridinyl carboxylate)
N-ethyl ethylenimine (1-ethyl aziridine)
N-(2-aminoethyl)ethylenimine (1-(2-aminoethyl)aziridine)
N-(phenethyl)ethylenimine (1-(2-phenylethyl)aziridine)
N-(2-hydroxyethyl)ethylenimine (1-(2-hydroxyethyl)aziridine)
N-(cyanoethyl)ethylenimine (1-cyanoethyl aziridine)
N-phenyl ethylenimine (1-phenyl aziridine)
N-(p-chlorophenyl)ethylenimine (1-(4-chlorophenyl)aziridine)

Because of their availability and because they have been found to be among the most effective, the pre-

4

ferred imines are hydroxyalkyl-substituted alkylenimines, such as N-hydroxyethyl ethylenimine and N-hydroxyethyl propylenimine.

Organoalkoxysilane monomers which may advantageously be employed in the practice of this invention are the acrylatoalkoxysilanes, methacrylatoalkoxysilanes and the vinylalkoxysilanes. Illustrative of such compounds are acryloxypropyltrimethoxysilane, gamma-methacryloxypropyltrimethoxysilane, gamma-methacryloxypropyltriethoxysilane, gamma-methacryloxypropyl-tris(2-methoxyethoxy)silane, vinyltrimethoxysilane, vinyltriethoxysilane, vinyl-tris(2-methoxyethoxy)silane and the like. Of these organoalkoxysilanes, gamma-methacryloxypropyltrimethoxysilane is especially preferred.

The proportion of such crosslinking monomer employed in the process of the invention may range from 0.5 percent to 15 percent by weight of the monomers used in the copolymerization process. When the crosslinking monomer is a mixture of alkylenimine and organoalkoxysilane, the mole ratio of the alkylenimine to the alpha, beta-ethylenically unsaturated monocarboxylic acid used to prepare the polymer is generally in the range of from 0.5:1 to 1.5:1 and the mole ratio of the organoalkoxysilane to the alpha, beta-ethylenically unsaturated monocarboxylic acid used to prepare the polymer is generally in the range of from 1.5:1 to 3.5:1.

The monoethylenically-unsaturated monomer, acid monomer and cross-linking monomer are polymerized in a dispersing liquid which solubilizes the monomers but in which the resulting polymers are essentially not soluble and form dispersed polymer particles. The dispersing liquid is generally a hydrocarbon medium consisting essentially of liquid aliphatic hydrocarbons. A pure aliphatic hydrocarbon or a mixture of two or more may be employed. To the extent that any particular polymer produced is mostly insoluble in the hydrocarbon medium resulting, the essentially aliphatic hydrocarbon may be modified by the incorporation of other solvent materials such as aromatic or naphthenic hydrocarbons, and in certain instances, the amount of such non-aliphatic component may attain as high as 49 percent by weight of the entire dispersing liquid. However, the dispersing liquid preferably consists essentially of aliphatic hydrocarbons and, in general, the compositions of the present invention contain less than 25 percent by weight based on the weight of the dispersing liquid of an aromatic hydrocarbon and often none at all at this stage.

It is essential that the hydrocarbon be of liquid character, but it may have a wide boiling range from a minimum of about 30° C. (in which case high pressures may be needed in the polymerization) to a maximum which may be as high as 300° C. For most purposes, the boiling point should be from about 50° C. up to about 235° C.

Examples of dispersing liquids useful herein are pentane, hexane, heptane, octane, mixtures of the same, and the like.

Ordinarily, the polymerizable composition of monomers and dispersing liquid should contain from about 30 to about 80 percent by weight of the dispersing liquid. It is understood, however, that the monomeric solution need contain only that amount of dispersing liquid necessary to solubilize the monomers and maintain the resulting polymers in a dispersed state after polymerization.

CIBA 038660