## STATUS OF AMENDMENTS

No amendments have been filed after issuance of the Final Rejection.

## SUMMARY OF THE INVENTION

The invention relates to a novel composition comprising cross-linked, anionic or amphoteric polymeric microparticles and a process for the production thereof. The microparticles have an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1 mPa.s, a cross-linking agent content of about 4 molar parts to about 4000 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about 5 mole percent.

The process of making said composition comprises admixing 1) an aqueous solution comprising at least one ethylenically unsaturated anionic monomer, alone or in admixture with a cationic monomer, and at least one cross-linking agent, and, optionally, at least one ethylemically unsaturated non-ionic monomer, 2) an oily phase comprising at least one hydrocarbon liquid and 3) an effective amount of a surfactant or surfactant mixture so as to form an inverse emulsion. The resultant admixed components are then subjected to polymerization conditions to produce the above-described composition.

Preferably, the cross-linking agent is present in amounts ranging from about 20 to 4000 molar parts per million, more preferably, about 50 to 2000 molar parts per million.

2

CIBA 038685

Preferred cross-linking agents include:

    N,N -methylenebisacrylamide,
    N,N -methylenetismethacrylamide,
    polyethyleneglycol dimethacrylate,
    polyethyleneglycol diacrylate,
    N-vinyl acrylamide,
    glycidyl acrylate,
    divinylbenzene,
    acrolein,
    glyoxal,
    diepoxy compounds,
    epichlorohydrin and mixtures thereof.

The most preferred cross-linking agent is N,N -

methylenebisacrylamide.

    Preferred anionic monomers include:

    acrylic acid,
    methacrylic acid,
    ethacrylic acid,
    2-acrylamido-2-methylpropane sulfonic acid or
    salts or mixtures thereof.

    Preferred cationic monomers include:

    acryloxyethyl trimethylammonium chloride,
    diallyldimethyl ammonium chloride,
    3-(meth)acrylamidopropyl trimethylammonium chloride,
    3-acrylamidopropyl    trimethylammonium-2-
    hydroxypropylacrylate methosulfate,
    1-trimethylammonium-2-hydroxypropyl methacrylate
    methosulfate,
    methacryloxyethyl trimethylammonium chloride and
    mixtures thereof.

    Preferred non-ionic monomers include:

    acrylamide,
    methacrylamide,
    N,N-dialkylacrylamides,
    N-alkylacrylamides,
    N-vinylmethacetamide,
    N-vinylmethylformamide,
    N-vinyl pyrrolidone and mixtures.

3

CIBA 038686

The compositions of the present invention have been found to be useful in flocculating dispersions of suspended solids and especially in paper-making.

## ISSUES

The issues presented for review are:

1.    Whether or not Claims 1 and 3-22 are unpatentable over Makhlouf et al. under 35 USC 103.

2.    Whether or not Claims 1 and 3-22 are indefinite for failing to particularly point out and distinctly claim the subject matter which Appellants regard as the invention under 35 USC 112, second paragraph.

3.    Whether or not Claims 1 and 3-22 are unpatentable over Neff et al. in view of Whittaker under 35 USC 103.

## GROUPING OF THE CLAIMS

The claims under appeal stand or fall individually, especially Claims 1 and 3-13 and Claims 14-22 especially with regard to any showings made concerning distinct species.

## ARGUMENTS

The Examiner has rejected Claims 1 and 3-22 under 35 USC 103 as being unpatentable over Makhlouf et al. stating that in the Abstract of the reference there is disclosed a composition comprising cross-linked, organic polymeric microparticles having particle sizes from 0.1 to 10 microns of at least one monoethylenically unsaturated monomer and a cross-linking agent. From col. 2, line 64 to col. 3, line 6, the Examiner explains, the reference teaches the cross-linking agent to be an epoxy group-

4

CIBA 038687

containing compound like glycidyl acrylate or methacrylate and in col. 2, lines 29-63, there is mentioned that essentially any copolymerizable monoethylenic monomer may be used. The list of suitable monomers includes acrylic acid, methacrylic acid, vinyl acetate and others, the Examiner continues, and explains that such monomers are all soluble in water as indicated by the Merck Index article cited.

Although admitting that the instant claims use a cross-linking agent content of about 4 molar parts to about 4000 molar parts per million and the reference specifies 0.5% to 15%, by weight, the Examiner argues that the higher limit of the claimed range is very close to the lower limit of the reference range and thus it would be obvious.

Appellants respectfully take issue with this ground of rejection in that Makhlouf et al. does not teach, disclose or suggest the formation of a composition falling within the ambits of the instant claims. The patentees teach the formation of cross-linked particles using at least 5000 ppm of cross-linking agent and monomers comprising:

1)    70-99%, by weight, of such monomers as alkyl esters of acrylic or methacrylic acid, vinyl aromatic hydrocarbons, unsaturated esters of organic and inorganic acids, unsaturated nitriles (see col. 2, lines 41-63) and

2)    0.5-15%, by weight, of an alpha, beta-ethylenically unsaturated monocarboxylic acid (see col. 2, lines 29-40).

5

CIBA 038688

Appellants' claims require that the polymeric particles be prepared solely from water-soluble monomers of which the main component of the Makhlouf et al. particles are not. Secondly, the applied reference teaches the use of extraneous cross-linking agent, i.e. 0.5-15%, by weight. Appellants have shown in Table I of the instant specification that 10,086 ppm of cross-linking agent is too high in that when particles of polymer otherwise conforming to the limitations of the present claims are used, as shown in Example 9 and Table II, (Examples 20-22), the drainage time is no better than commercially available polymers (Example 7) and is far inferior to polymers according to the instant invention (Examples 8-19). Thus, Appellants have clearly shown the unexpected superiority of the instant compositions produced by the claimed novel process. Therefore, since Makhlouf et al. fail to teach the necessity of using only water-soluble monomers and fail to teach the claimed, critical range of cross-linking agent, it is respectfully submitted that the rejection based thereon is erroneous and should be reversed.

The Examiner has further rejected Claims 1 and 3-22 under 35 USC 112, second paragraph, as indefinite in the term "water-soluble monomers" because some monomers are partially soluble in water and questions the criteria for determining whether a monomer is water-soluble or not.

This ground of rejection is also strenuously urged as erroneous. The term in question is well known to those skilled in the art of polymers. For example, U.S. Pat. No. 4485209, cited by

6

CIBA 038689

Appellants previously, clearly spells out such monomers at col. 2, lines 39-46 thereof. Those monomers which are not water-soluble are described at col. 3, lines 1-7 thereof. It is noted that many of the listed water-soluble monomers are likewise disclosed by Makhlouf et al., as discussed above. Thus, it is respectfully submitted that the term in question is clearly understood by those skilled in the art and that this rejection is therefore erroneous and should be reversed.

Claims 1 and 3-22 have additionally been rejected under 35 USC 103 as being unpatentable over Neff et al. in view of Whittaker, the Examiner stating that Neff et al. disclose cross-linked, cationic polymeric microparticles and the method of preparation while Whittaker teaches the use of cationic, anionic and/or amphoteric polymeric microparticles as flocculating agents for different types of dispersions, citing col. 7, lines 37-44. Although Whittaker's polymers are not cross-linked, the Examiner argues that the same teaching can be applied to the cross-linked polymers and it would be obvious to substitute anionic polymers in Neff's microparticles to flocculate suitable types of dispersions.

The ground of rejection is also respectfully traversed. Neff et al. is limited to cationic polymeric microparticles and does not teach, disclose or suggest that the cationic monomer used to make the microparticle can be replaced by an anionic monomer or used in admixture with an anionic monomer. The Examiner clearly recognizes the above deficiencies of Neff et al. and attempts to equate the different monomers by citing Whittaker. This reference, however,

7

CIBA 038690

merely teaches the mechanical degradation of high molecular weight polymers so as to render them more useful in flocculation. The Whittaker reference fails to disclose microparticles of polymer and while anionic and cationic monomers are shown, there is no teaching that they are equivalent other than that they may be degraded by the process taught therein. There is nothing in Whittaker which suggests to one skilled in the art to employ anionic monomers only or in conjunction with cationic monomers in the microparticles of Neff et al. It is only based on hindsight using information from Appellants' own disclosure that such a suggestion can be considered obvious. Furthermore, in view of Appellants' unexpected showing of superiority, discussed above, nothing in Whittaker would lead one skilled in the art to the present invention because Whittaker does not even employ a cross-linking agent. In fact, at col. 6, lines 23-26, Whittaker indicates that the polymers must be water-soluble and preferably linear, i.e. free of cross-linking. Thus Whittaker merely teaches that anionic, cationic and amphoteric polymers can be made more effective as flocculating agents by shearing them. Whittaker adds nothing to Neff et al. but the fact that anionic and amphoteric polymers can be used as flocculants. It is not clear from either of the references what effect cross-linking with 4-4000 ppm of cross-linker would have on anionic and amphoteric microparticles when they are used, for example, as retention aids in paper-making. There is nothing in either Neff et al. or Whittaker which would teach one skilled in the art that the unexpectedly superior results shown in Table I of the instant

8

CIBA 038691

31,320                    EXHIBIT A

WE CLAIM:

    1.   A  composition  comprising  cross-linked  anionic  or
amphoteric  polymeric  microparticles  derived  solely  from  water-
soluble  monomers,  said  microparticles  having  an  unswollen  number
average  particle  size  diameter  of  less  than  about  0.75  micron,  a
solution  viscosity  of  at  least  about  1.1  mPa.s,  a  cross-linking
agent  content  of  about  4  molar  parts  to  about  4000  parts  per
million,  based  on  the  monomeric  units  present  in  the  polymer,  and
an  ionicity  of  at  least  about  5  mole  percent.

    2.   A  composition  as  defined  in  Claim  1  wherein  said
crosslinking  agent  content  ranges  from  about  4  to  about
6,000  molar  parts  per  million.

    3.   A  composition  as  defined  in  Claim  2  wherein  said
crosslinking  agent  content  is  from  about  20  to  about  4,000
molar  parts  per  million.

    4.   A  composition  as  defined  in  Claim  2  wherein  said
crosslinking  agent  content  is  from  about  50  to  about  2,000
molar  parts  per  million.

    5.   A  composition  as  defined  in  Claim  1  wherein  said
crosslinking  agent  is  a  difunctional  monomer  selected  from
N,N'-methylenebisacrylamide,  N,N'-methylenebismethacryl-
amide,  polyethyleneglycol  dimethacrylate,  polyethyeneglycol
diacrylate,  N-vinyl  acrylamide,  glycidyl  acrylate,
divinylbenzene,  acrolein,  glyoxal,  diepoxy
compounds,  epichlorohydrin  and  mixtures  of  the  foregoing.

    6.   A  composition  as  defined  in  Claim  5  wherein  said
crosslinking  agent  comprises  N,N'-methylenebisacrylamide.

CIBA 038692

- 20 -

7. A composition as defined in Claim 1 wherein said said unswollen diameter is less than 0.5 micron.

8. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one ethylenically unsaturated non-ionic monomer.

9. A composition as defined in Claim 1 wherein the organic polymer microparticle is composed of at least one anionic monomer selected from acrylic acid, methylacrylic acid, ethylacrylic acid, 2-acrylamido-2-methylpropane-sulfonic acid or mixtures or salts thereof.

10. A composition as defined in Claim 9 wherein said anionic monomer comprises sodium acrylate, sodium methylacrylate, sodium ethylacrylate or sodium 2-acrylamido-2-methylpropanesulfonate.

11. A composition as defined in Claim 1 wherein the organic polymer microparticle is amphoteric and is composed of from 1% to 99% of an anionic monomer selected from acrylic acid, methacrylic acid, ethacrylic acid, 2-acrylamido-2-methylpropane sulfonic acid or salts thereof and from 99% to 1% of a cationic monomer selected from acryloxyethyltrimethylammonium chloride, 3-methyacrylamidopropyltrimethylammonium chloride, diallydimethylammonium chloride and mixtures thereof.

12. A composition as defined in Claim 8 wherein said non-ionic ethylenically unsaturated monomer is selected from acrylamide; methacrylamide;N,N-dialkylacrylamides; N-alkylacrylamides; N-vinylmethacetamide; N-vinyl methylformamide; vinyl acetate; N-vinyl pyrrolidone and mixtures thereof.

13. A composition as defined in Claim 1 wherein said organic polymer microbead is composed of sodium acrylate and acrylamide.

CIBA 038693

- 21 -

14. A process for the preparation of a composition as defined in Claim 1, said process comprising:

    (a)  admixing

        (i)  an aqueous solution comprising at least one ethylenically unsaturated anionic monomer alone or in admixture with a cationic monomer, and at least one crosslinking agent and, optionally, at least one ethylenically unsaturated non-ionic monomer;

      (ii)  an oily phase comprising at least one hydrocarbon liquid;

    (iii)  an effective amount of surfactant or surfactant mixture, so as to form an inverse emulsion; and

    (b)  subjecting the inverse emulsion obtained in step (a) to polymerization conditions.

15. A process as defined in Claim 14 wherein said monomer solution of step (a)(i) comprises sodium acrylate as said anionic monomer, N,N-methylenebisacrylamide as said crosslinking agent and acrylamide as said non-ionic monomer.

16. A process as defined in Claim 14 wherein said oily phase of step (a)(ii) comprises a saturated hydrocarbon.

17. A process as defined in Claim 14 wherein said surfactant or surfactant mixture of step (a)(iii) comprises polyoxythylene sorbitol hexaoleate or a mixture thereof with sorbitan sesquioleate.

18. A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise adding a polymerization initiator.

CIBA 038694

– 22 –

19.  A process as defined in Claim 18 wherein said polymerization initiator comprises sodium metabisulfite or tertiary-butyl hydroperoxide.

20.  A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise subjecting said inverse emulsion to ultraviolet irradiation.

21.  A process as defined in Claim 14 wherein said aqueous solution of step (a)(i) additionally contains an effective amount of a chain-transfer agent selected from an alcohol, mercaptan, phosphite, sulfite, or a mixture thereof.

22.  A process as defined in Claim 14 which also includes step (c), comprising recovering the composition from the emulsion.

CIBA 038695

(Rule 60) [REV.4Apr89/MB4-3]   -2-

The copy of the papers of prior application as filed which
are attached are as follows:

[ X ] _18_ page(s) of specification
[ X ] _4_ page(s) of claims
[ X ] _1_ page(s) of abstract
[   ] ____ sheet(s) of drawing
[   ] ____ copy of pages of declaration and power
          of attorney showing applicant's signature

2.  Amendments
    [ X ] Cancel in this application original claims
          Claim 2 _____
          of the prior application before calculating the filing
          fee. (At least one original independent claim is
          retained for filing purposes.)
    [ X ] A preliminary amendment is enclosed. (Claims added by
          this amendment have been properly numbered
          consecutively beginning with the number next following
          with the highest numbered original claim in the prior
          application.)

3.  Petition for Suspension of Prosecution for the Time Necessary
    to File an Amendment
    [   ] Provided herewith is a Petition To Suspend Prosecution
          for the Time Necessary to File An Amendment (New
          Application Filed Concurrently)

4.  Fee Calculation

| CLAIMS AS FILED | | | | |
|---|---|---|---|---|
| (1)<br>FOR | (2)<br>NUMBER FILED | (3)<br>NUMBER EXTRA | (4)<br>RATE | (5)<br>BASIC FEE<br>($630.00) |
| TOTAL CLAIMS | 21 - 20 = | | X $20.00 | 20.00 |
| INDEP. CLAIMS | 2 - 3 = | | X $60.00 | |
| MULTIPLE DEPENDENCY FEE | | | $ 200.00 | |
| RECORDING OF ASSIGNMENT | | | $ 8.00 | |
| | | | TOTAL FILING FEE | $ 650.00 |

CIBA 038696

(Rule 60) [REV.4Apr89/MB4-3]   -3-

5. Drawings

   [   ] Transfer the following sheet(s) of drawing from the prior application to this application:

   _____

   [   ] A copy of the amendment cancelling these sheets of drawing in the prior application is attached.

   [   ] New drawings are enclosed

      [   ] formal

      [   ] informal

6. Relate Back - 35 U.S.C. 120

   [ X ] Amend the specification by inserting before the first line the sentence:

   "This is a

   [ X ] continuation

   [   ] divisional

   of co-pending application, Serial No. 07/535,626, filed June 11, 1990.

7. Inventorship Statement

   (a)  With respect to the prior copending U.S. application from which this application claims benefit under 35 USC 120, the inventor(s) in this application is (are):

      [ X ] the same

      [   ] less than those named in the prior application and it is requested that the following inventor(s) identified above for the prior application be deleted:

      _____

   (b)  The inventorship for all the claims in this application are

      [ X ] the same

      [   ] not the same, and an explanation, including the ownership of the various claims at the time the last claimed invention was made, is submitted.

CIBA 038697

(Rule 60) [REV.4Apr89/MB4-3]    -4-

8.  Assignment
    [ X ] The prior application is assigned of record to
                 American Cyanamid Company
                 1937 West Main Street
                 P.O. Box 60
                 Stamford, CT 06904-0060
    [   ] An assignment of the invention is attached.
9.  Fee Payment being made at this time
    [ X ] filing fee                        $  650.00
    [   ] recording assignment              $
                            TOTAL  $  650.00
10. Method of Payment of Fees:
    Charge Deposit Account No. 01-1300 in the amount of $ 650.00
    A duplicate of this transmittal is attached.
11. Instructions as to Overpayment:
    Credit any overpayment to Deposit Account No. 01-1300.
12. Power of Attorney
    [ X ] The Power of Attorney in the prior application is to

| Frank M. Van Riet | 19933 |
|---|---|
| (Attorney) | (Reg. No.) |
| Roger S. Benjamin | 27025 |
| (Attorney) | (Reg. No.) |
| Michael J. Kelly | 27910 |
| (Attorney) | (Reg. No.) |
| William H. Calnan | 29520 |
| (Attorney) | (Reg. No.) |

    a. [ X ] The power appears in the original papers in
             the prior application
    b. [   ] Since the power does not appear in the
             original papers, a copy of the power in the
             prior application is enclosed.
    c. [   ] A new power has been executed and is
             attached.

CIBA 038698

(Rule 60) [REV.4Apr89/MB4-3]   -5-

      d. [ X ] Address all future communications to:

         Frank M. Van Riet

         c/o American Cyanamid Company

13. Maintenance of Copendency of Prior Application

    [ X ] A petition, fee and response has been filed to extend
       the term in the pending application until:
       August 11, 1991     .

    [   ] A copy of the petition for extension of time in the
       prior application is attached.

14. Conditional Petition for Extension of Time in Prior
    Application (Complete this item and file conditional
    petition in the prior application if previous item not
    applicable.)

    [   ] A conditional petition for extension of time is being
       filed in the pending patent application.

    [   ] A copy of the conditional petition for extension of
       time in the prior application is attached.

15. [   ] A certified copy of the priority document has been
       filed in Serial Number _____

                 (Signature of Attorney)

Reg. No.  19933

Tel. No. (203) 321-2614

                 Frank M. Van Riet
                 (Type name of Attorney)

                 American Cyanamid Company
                 1937 West Main Street
                 P.O. Box 60
                 Stamford, CT 06904-0060

Assignment recorded in PTO on December 19, 1988     .

Reel 4986     Frame 0906

CIBA 038699



Docket No. :<u>31,320-01</u>

<u>IN THE UNITED PATENT AND TRADEMARK OFFICE</u>

In re Application of:                    Date: April 27, 1992
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Continuation of
Serial No.: 07/803,120
Filed: July 22, 1991
For: CROSS-LINKED ANIONIC AND
     AMPHOTERIC POLYMERIC
     MICROPARTICLES

Commissioner of Patents
 and Trademarks Office

Washington, D.C. 20231

<u>BRIEF FOR APPELLANTS</u>

This is a Brief in support of Appellants' appeal to the Board
of Appeals and Interferences from the decision of the Primary
Examiner dated February 10, 1992 finally rejecting Claims 1 and 3-
22.

<u>STATUS OF THE CLAIMS</u>

Claims 1-22 are pending in the application.  Claims 1 and 3-22
are under appeal.  Claim 2 inadvertently was not cancelled in
Appellants' Preliminary Amendment dated July 18, 1991.  The
Examiner has obviously considered the claim to be cancelled since
he did not refer thereto in his Final Rejection.  Appellants agree
with such a designation and request the Honorable Board to treat
Claim 2 as cancelled.  A copy of Claims 1 and 3-22 is attached
hereto as Exhibit A.

1

CIBA 038700

## STATUS OF AMENDMENTS

No amendments have been filed after issuance of the Final Rejection.

## SUMMARY OF THE INVENTION

The invention relates to a novel composition comprising cross-linked, anionic or amphoteric polymeric microparticles and a process for the production thereof. The microparticles have an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1 mPa.s, a cross-linking agent content of about 4 molar parts to about 4000 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about 5 mole percent.

The process of making said composition comprises admixing 1) an aqueous solution comprising at least one ethylenically unsaturated anionic monomer, alone or in admixture with a cationic monomer, and at least one cross-linking agent, and, optionally, at least one ethylemically unsaturated non-ionic monomer, 2) an oily phase comprising at least one hydrocarbon liquid and 3) an effective amount of a surfactant or surfactant mixture so as to form an inverse emulsion. The resultant admixed components are then subjected to polymerization conditions to produce the above-described composition.

Preferably, the cross-linking agent is present in amounts ranging from about 20 to 4000 molar parts per million, more preferably, about 50 to 2000 molar parts per million.

2

CIBA 038701

Preferred cross-linking agents include:

    N,N -methylenebisacrylamide,
    N,N -methylenetismethacrylamide,
    polyethyleneglycol dimethacrylate,
    polyethyleneglycol diacrylate,
    N-vinyl acrylamide,
    glycidyl acrylate,
    divinylbenzene,
    acrolein,
    glyoxal,
    diepoxy compounds,
    epichlorohydrin and mixtures thereof.

The most preferred cross-linking agent is N,N -

methylenebisacrylamide.

Preferred anionic monomers include:

    acrylic acid,
    methacrylic acid,
    ethacrylic acid,
    2-acrylamido-2-methylpropane sulfonic acid or
    salts or mixtures thereof.

Preferred cationic monomers include:

    acryloxyethyl trimethylammonium chloride,
    diallyldimethyl ammonium chloride,
    3-(meth)acrylamidopropyl trimethylammonium chloride,
    3-acrylamidopropyl   trimethylammonium-2-
    hydroxypropylacrylate methosulfate,
    1-trimethylammonium-2-hydroxypropyl methacrylate
    methosulfate,
    methacryloxyethyl trimethylammonium chloride and
    mixtures thereof.

Preferred non-ionic monomers include:

    acrylamide,
    methacrylamide,
    N,N-dialkylacrylamides,
    N-alkylacrylamides,
    N-vinylmethacetamide,
    N-vinylmethylformamide,
    N-vinyl pyrrolidone and mixtures.

3

CIBA 038702

The compositions of the present invention have been found to be useful in flocculating dispersions of suspended solids and especially in paper-making.

## ISSUES

The issues presented for review are:

1.    Whether or not Claims 1 and 3-22 are unpatentable over Makhlouf et al. under 35 USC 103.

2.    Whether or not Claims 1 and 3-22 are indefinite for failing to particularly point out and distinctly claim the subject matter which Appellants regard as the invention under 35 USC 112, second paragraph.

3.    Whether or not Claims 1 and 3-22 are unpatentable over Neff et al. in view of Whittaker under 35 USC 103.

## GROUPING OF THE CLAIMS

The claims under appeal stand or fall individually, especially Claims 1 and 3-13 and Claims 14-22 especially with regard to any showings made concerning distinct species.

## ARGUMENTS

The Examiner has rejected Claims 1 and 3-22 under 35 USC 103 as being unpatentable over Makhlouf et al. stating that in the Abstract of the reference there is disclosed a composition comprising cross-linked, organic polymeric microparticles having particle sizes from 0.1 to 10 microns of at least one monoethylenically unsaturated monomer and a cross-linking agent. From col. 2, line 64 to col. 3, line 6, the Examiner explains, the reference teaches the cross-linking agent to be an epoxy group-

4

CIBA 038703

containing compound like glycidyl acrylate or methacrylate and in col. 2, lines 29-63, there is mentioned that essentially any copolymerizable monoethylenic monomer may be used. The list of suitable monomers includes acrylic acid, methacrylic acid, vinyl acetate and others, the Examiner continues, and explains that such monomers are all soluble in water as indicated by the Merck Index article cited.

Although admitting that the instant claims use a cross-linking agent content of about 4 molar parts to about 4000 molar parts per million and the reference specifies 0.5% to 15%, by weight, the Examiner argues that the higher limit of the claimed range is very close to the lower limit of the reference range and thus it would be obvious.

Appellants respectfully take issue with this ground of rejection in that Makhlouf et al. does not teach, disclose or suggest the formation of a composition falling within the ambits of the instant claims. The patentees teach the formation of cross-linked particles using at least 5000 ppm of cross-linking agent and monomers comprising:

1) 70-99%, by weight, of such monomers as alkyl esters of acrylic or methacrylic acid, vinyl aromatic hydrocarbons, unsaturated esters of organic and inorganic acids, unsaturated nitriles (see col. 2, lines 41-63) and

2) 0.5-15%, by weight, of an alpha, beta-ethylenically unsaturated monocarboxylic acid (see col. 2, lines 29-40).

5

CIBA 038704

Appellants' claims require that the polymeric particles be prepared solely from water-soluble monomers of which the main component of the Makhlouf et al. particles are not. Secondly, the applied reference teaches the use of extraneous cross-linking agent, i.e. 0.5-15%, by weight. Appellants have shown in Table I of the instant specification that 10,086 ppm of cross-linking agent is too high in that when particles of polymer otherwise conforming to the limitations of the present claims are used, as shown in Example 9 and Table II, (Examples 20-22), the drainage time is no better than commercially available polymers (Example 7) and is far inferior to polymers according to the instant invention (Examples 8-19). Thus, Appellants have clearly shown the unexpected superiority of the instant compositions produced by the claimed novel process. Therefore, since Makhlouf et al. fail to teach the necessity of using only water-soluble monomers and fail to teach the claimed, critical range of cross-linking agent, it is respectfully submitted that the rejection based thereon is erroneous and should be reversed.

The Examiner has further rejected Claims 1 and 3-22 under 35 USC 112, second paragraph, as indefinite in the term "water-soluble monomers" because some monomers are partially soluble in water and questions the criteria for determining whether a monomer is water-soluble or not.

This ground of rejection is also strenuously urged as erroneous. The term in question is well known to those skilled in the art of polymers. For example, U.S. Pat. No. 4485209, cited by

6

CIBA 038705

Appellants previously, clearly spells out such monomers at col. 2, lines 39-46 thereof. Those monomers which are not water-soluble are described at col. 3, lines 1-7 thereof. It is noted that many of the listed water-soluble monomers are likewise disclosed by Makhlouf et al., as discussed above. Thus, it is respectfully submitted that the term in question is clearly understood by those skilled in the art and that this rejection is therefore erroneous and should be reversed.

Claims 1 and 3-22 have additionally been rejected under 35 USC 103 as being unpatentable over Neff et al. in view of Whittaker, the Examiner stating that Neff et al. disclose cross-linked, cationic polymeric microparticles and the method of preparation while Whittaker teaches the use of cationic, anionic and/or amphoteric polymeric microparticles as flocculating agents for different types of dispersions, citing col. 7, lines 37-44. Although Whittaker's polymers are not cross-linked, the Examiner argues that the same teaching can be applied to the cross-linked polymers and it would be obvious to substitute anionic polymers in Neff's microparticles to flocculate suitable types of dispersions.

The ground of rejection is also respectfully traversed. Neff et al. is limited to cationic polymeric microparticles and does not teach, disclose or suggest that the cationic monomer used to make the microparticle can be replaced by an anionic monomer or used in admixture with an anionic monomer. The Examiner clearly recognizes the above deficiencies of Neff et al. and attempts to equate the different monomers by citing Whittaker. This reference, however,

7

CIBA 038706

merely teaches the mechanical degradation of high molecular weight polymers so as to render them more useful in flocculation. The Whittaker reference fails to disclose microparticles of polymer and while anionic and cationic monomers are shown, there is no teaching that they are equivalent other than that they may be degraded by the process taught therein. There is nothing in Whittaker which suggests to one skilled in the art to employ anionic monomers only or in conjunction with cationic monomers in the microparticles of Neff et al. It is only based on hindsight using information from Appellants' own disclosure that such a suggestion can be considered obvious. Furthermore, in view of Appellants' unexpected showing of superiority, discussed above, nothing in Whittaker would lead one skilled in the art to the present invention because Whittaker does not even employ a cross-linking agent. In fact, at col. 6, lines 23-26, Whittaker indicates that the polymers must be water-soluble and preferably linear, i.e. free of cross-linking. Thus Whittaker merely teaches that anionic, cationic and amphoteric polymers can be made more effective as flocculating agents by shearing them. Whittaker adds nothing to Neff et al. but the fact that anionic and amphoteric polymers can be used as flocculants. It is not clear from either of the references what effect cross-linking with 4-4000 ppm of cross-linker would have on anionic and amphoteric microparticles when they are used, for example, as retention aids in paper-making. There is nothing in either Neff et al. or Whittaker which would teach one skilled in the art that the unexpectedly superior results shown in Table I of the instant

8

CIBA 038707

specification could or would be achieved by such microparticles. Nothing in Neff et al. relates to anionic or amphoteric polymers or would lend the skilled artisan to the instant compositions especially since retention in paper-making requires the addition of far lesser amounts of additive than required in the sludge dewatering shown in Neff et al.'s examples, note the dosage in Table I of Neff et al. i.e. 11-56 lbs/ton versus that of Table II of Appellants i.e. 2 lbs/ton. Reversal of this ground of rejection is earnest solicited.

<u>CONCLUSION</u>

The Honorable Board of Appeals and Interferences is respectfully requested to reverse the rejections of Claims 1 and 3-22 and find said claims allowable.

Respectfully submitted,

Attorney for Applicants
Frank M. Van Riet
Registration #19933

[brief.fvr]
eg

9

CIBA 038708

31,320                    EXHIBIT A

WE CLAIM:

1.    A    composition    comprising    cross-linked    anionic    or
amphoteric   polymeric   microparticles   derived   solely   from   water-
soluble monomers, said microparticles having an unswollen number
average particle size diameter of less than about 0.75 micron, a
solution viscosity of at least about 1.1 mPa.s, a cross-linking
agent content of about 4 molar parts to about 4000 parts per
million, based on the monomeric units present in the polymer, and
an ionicity of at least about 5 mole percent.

2.    A composition as defined in Claim 1 wherein said
crosslinking agent content ranges from about 4 to about
6,000 molar parts per million.

3.    A composition as defined in Claim 2 wherein said
crosslinking agent content is from about 20 to about 4,000
molar parts per million.

4.    A composition as defined in Claim 2 wherein said
crosslinking agent content is from about 50 to about 2,000
molar parts per million.

5.    A composition as defined in Claim 1 wherein said
crosslinking agent is a difunctional monomer selected from
N,N'-methylenebisacrylamide, N,N'-methylenebismethacryl-
amide, polyethyleneglycol dimethacrylate, polyethyeneglycol
diacrylate, N-vinyl acrylamide, glycidyl acrylate,
divinylbenzene, acrolein, glyoxal, diepoxy
compounds, epichlorohydrin and mixtures of the foregoing.

6.    A composition as defined in Claim 5 wherein said
crosslinking agent comprises N,N'-methylenebisacrylamide.

CIBA 038709

- 20 -

7.  A composition as defined in Claim 1 wherein said
said unswollen diameter is less than 0.5 micron.

8.  A composition as defined in Claim 1 wherein the
organic polymer microparticle is composed of at least one
ethylenically unsaturated non-ionic monomer.

9.  A composition as defined in Claim 1 wherein the
organic polymer microparticle is composed of at least one
anionic monomer selected from acrylic acid, methylacrylic
acid, ethylacrylic acid, 2-acrylamido-2-methylpropane-
sulfonic acid or mixtures or salts thereof.

10.  A composition as defined in Claim 9 wherein said
anionic monomer comprises sodium acrylate, sodium
methylacrylate, sodium ethylacrylate or sodium
2-acrylamido-2-methylpropanesulfonate.

11.  A composition as defined in Claim 1 wherein the
organic polymer microparticle is amphoteric and is composed
of from 1% to 99% of an anionic monomer selected from
acrylic acid, methacrylic acid, ethacrylic acid,
2-acrylamido-2-methylpropane sulfonic acid or salts thereof
and from 99% to 1% of a cationic monomer selected from
acryloxyethyltrimethylammonium chloride,
3-methyacrylamidopropyltrimethylammonium chloride,
diallydimethylammonium chloride and mixtures thereof.

12.  A composition as defined in Claim 8 wherein said
non-ionic ethylenically unsaturated monomer is selected from
acrylamide; methacrylamide;N,N-dialkylacrylamides:
N-alkylacrylamides; N-vinylmethacetamide; N-vinyl
methylformamide; vinyl acetate; N-vinyl pyrrolidone and
mixtures thereof.

13.  A composition as defined in Claim 1 wherein said
organic polymer microbead is composed of sodium acrylate and
acrylamide.

CIBA 038710

- 21 -

14. A process for the preparation of a composition as defined in Claim 1, said process comprising:

    (a)  admixing

        (i)  an aqueous solution comprising at least one ethylenically unsaturated anionic monomer alone or in admixture with a cationic monomer, and at least one crosslinking agent and, optionally, at least one ethylenically unsaturated non-ionic monomer;

        (ii)  an oily phase comprising at least one hydrocarbon liquid;

        (iii) an effective amount of surfactant or surfactant mixture, so as to form an inverse emulsion; and

    (b) subjecting the inverse emulsion obtained in step (a) to polymerization conditions.

15. A process as defined in Claim 14 wherein said monomer solution of step (a)(i) comprises sodium acrylate as said anionic monomer, N,N-methylenebisacrylamide as said crosslinking agent and acrylamide as said non-ionic monomer.

16. A process as defined in Claim 14 wherein said oily phase of step (a)(ii) comprises a saturated hydrocarbon.

17. A process as defined in Claim 14 wherein said surfactant or surfactant mixture of step (a)(iii) comprises polyoxythylene sorbitol hexaoleate or a mixture thereof with sorbitan sesquioleate.

18. A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise adding a polymerization initiator.

CIBA 038711

- 22 -

19.  A process as defined in Claim 18 wherein said polymerization initiator comprises sodium metabisulfite or tertiary-butyl hydroperoxide.

20.  A process as defined in Claim 14 wherein said polymerization conditions of step (b) comprise subjecting said inverse emulsion to ultraviolet irradiation.

21.  A process as defined in Claim 14 wherein said aqueous solution of step (a)(i) additionally contains an effective amount of a chain-transfer agent selected from an alcohol, mercaptan, phosphite, sulfite, or a mixture thereof.

22.  A process as defined in Claim 14 which also includes step (c), comprising recovering the composition from the emulsion.

CIBA 038712

Gp 1505

15 G

Docket No. :31,320-01

IN THE UNITED PATENT AND TRADEMARK OFFICE

In re Application of:                              Date: April 27, 1992
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

#5
5/13/92

Continuation of
Serial No.: 07/803,120
Filed: July 22, 1991
For: CROSS-LINKED ANIONIC AND
     AMPHOTERIC POLYMERIC
     MICROPARTICLES

Commissioner of Patents                    RECEIVED
 and Trademarks Office
                                           MAY 0 7 1992
Washington, D.C. 20231
                                           GROUP 150

### BRIEF FOR APPELLANTS

This is a Brief in support of Appellants' appeal to the Board
of Appeals and Interferences from the decision of the Primary
Examiner dated February 10, 1992 finally rejecting Claims 1 and 3-
22.

### STATUS OF THE CLAIMS

Claims 1-22 are pending in the application. Claims 1 and 3-22
are under appeal. Claim 2 inadvertently was not cancelled in
Appellants' Preliminary Amendment dated July 18, 1991. The
Examiner has obviously considered the claim to be cancelled since
he did not refer thereto in his Final Rejection. Appellants agree
with such a designation and request the Honorable Board to treat
Claim 2 as cancelled. A copy of Claims 1 and 3-22 is attached
hereto as Exhibit A.

| | | | | | | |
|---|---|---|---|---|---|---|
| DS20098 | 05/04/92 | 07803120 | 01-1300 | 020 | 119 | 260.00CH |
| DS20170 | 05/13/92 | 07803120 | 01-1300 | 020 | 119 | 260.00CR |
| DS20171 | 05/13/92 | 07803120 | 01-1300 | 020 | 120 | 260.00CH |

CIBA 038713