Serial No. 535,626                    -2-

Art Unit   155

15.

Restriction to one of the following inventions is required
under 35 U.S.C. § 121:

I.    Claims 1 to 13, drawn to polymers, are classified in Class
526, subclass 264.

II.   Claims 14 to 22, drawn to process, are classified in Class
522, subclass 184.

Inventions I and II are related as process of making and
product made. The inventions are distinct if either or both of
the following can be shown: (1) that the process as claimed can
be used to make other and materially different product or (2)
that the product as claimed can be made by another and materially
different process (M.P.E.P. § 806.05(f)). In the instant case
the process as claimed can be used to make a materially different
product such as polymer dispersion stabilizer.

Because these inventions are distinct for the reasons given
above and have acquired a separate status in the art as shown by
their different classification, restriction for examination
purposes as indicated is proper.

During a telephone conversation with Mr. Frank M. Van Riet
on July 30, 1990 a provisional election was made with traverse to
prosecute the invention of I, claims 1 to 13. Affirmation of
this election must be made by applicant in responding to this
Office action. Claims 14 to 22 are withdrawn from further

CIBA 000512

Serial No. 535,626                    -3-

Art Unit   155

consideration by the Examiner, 37 C.F.R. § 1.142(b), as being

drawn to a non-elected invention.

16.  The following is a quotation of the first paragraph of 35

U.S.C. § 112:

> The specification shall contain a written description of the
> invention, and of the manner and process of making and using
> it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains,
> or with which it is most nearly connected, to make and use
> the same and shall set forth the best mode contemplated by
> the inventor of carrying out his invention.

The specification is objected to under 35 U.S.C. § 112,

first paragraph, as failing to provide an adequate written

description of the invention.

Claim 5 is rejected under 35 U.S.C. § 112, first paragraph,

for the reasons set forth in the objection to the specification.

This claim contains the term "aldehydes" which is generic

and the terms "acrolein" and "glyoxal" which are species.  It is

suggested to delete the term "aldehydes", since all the other

compounds are species.

Claim 10 is rejected under 35 U.S.C. § 112, first paragraph,

for the reasons set forth in the objection to the specification.

Does this claim involve a cationic or an anionic monomer?

The compounds listed contain anionic organic monomers.

Claims 8 and 12 are rejected under 35 U.S.C. § 112, first

paragraph, for the reasons set forth in the objection to the

specification.

CIBA 000513

Serial No. 535,626                           -4-

Art Unit   155

These two claims involve non-ionic organic monomers. How can they be expected to produce polymers with ionicity of at least about 5.0%?

17.

Claims 1 to 13 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The term "ionicity" is not defined, making the claims vague and indefinite. When "percentage" is mentioned, does it mean "percentage by weight based on the total polymer or on the ionizable monomer"?

18.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. § 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless --

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

CIBA 000514

Serial No. 535,626                    -5-

Art Unit  155

 Patentability shall not be negatived by the manner in which the invention was made.

 Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

 Claims 1 to 4, 7 to 10, and 12 to 13 are rejected under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over Durand et al.

 In Example 1, Durand et al. disclosed anionic organic polymeric microparticles by polymerizing sodium acrylate (or acrylic acid plus sodium hydroxide) and acrylamide in the presence of poly-oxyethylene sorbitol hexaoleate and sorbitan sesquioleate. Since oleate contains a double bond, it is reasonable to expect these oleates functioning to some degree as a cross-linking agent in addition to being a surfactant. Example 2 reported the viscosity of the acrylamide-sodium acrylate in aqueous solution to be 1.30 $mm^2/s$. Line 67 in column 3 mentioned that particles' radius was of the order of 20-40 nanometers (or 0.02-0.04 microns). Since 20.7g of acrylic acid was used to produce 82.0g of the copolymer (i.e. 61.3g acrylamide plus 20.7g acrylic acid), the weight percentage of acrylate ion in the copolymer was about 25%.

19.

 Claims 1 to 5, 7 to 9, and 12 are rejected under 35 U.S.C.

CIBA 000515

Serial No. 535,626                         -6-

Art Unit  155

§ 102(b) as anticipated by or, in the alternative, under 35

U.S.C. § 103 as obvious over Makhlouf et al.

In the abstract, Makhlouf et al. disclosed a composition

comprising cross-linked organic polymeric micro particles having

particle sizes of from 0.1 to 10 microns.  At least one

monoethylenically unsaturated monomer and a cross-linking agent

were used.

From line 64 in column 2 to line 6 in column 3, the cross-

linking agent was disclosed to be an epoxy-group-containing

compound like glycidyl acrylate or glycidyl methacrylate.

From lines 29 to 63 in column 2, the monoethylenically

unsaturated monomers were disclosed to include acrylic acid,

methacrylic acid, ethacrylic acid, vinyl acetate, and others.

20.

Claims 1 to 4, 7, 9 to 11, and 13 are rejected under 35

U.S.C. § 102(b) as anticipated by or, in the alternative, under

35 U.S.C. § 103 as obvious over Silver.

In the abstract, Silver disclosed acrylate copolymer

microspheres.  At least one alkyl acrylate ester and one ionic

monomer or maleic anhydride were used.  From line 1 to line 40 in

column 3, ionic monomers on the list included both anionic

monomer and cationic monomers.

The lower limit of these microspheres was one micron which

was very close to (or within experimental error of) the claimed

CIBA 000516

Serial No. 535,626                    -7-

Art Unit   155

particle size of 0.75 micron.

21.

    Claim 5 is rejected under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over Leong *et al.*

    From lines 8 to 10 in the left column on page 2270, Leong et al. disclosed cross-linked polyacrylamide lattices or microgels which were prepared by using a mixture of acrylamide and methylene bisacrylamide.

    The sizes of the inverse lattices were disclosed in the abstract to be less than 500 Å in diameter.

W.C. Cheng:jp
August 09, 1990

JOSEPH L. SCHOFER
SUPERVISORY PATENT EXAMINER
ART UNIT 155

CIBA 000517

B865

TO SEPARATE, HO D TOP AND BOTTOM EDGES, SNAP–APART AND 'SCARD CARBON

h5

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | | SERIAL NO. 07/535 626 | GROUP ART UNIT 155 | ATTACHMENT TO PAPER NUMBER |
|---|---|---|---|---|---|

NOTICE OF REFERENCES CITED

APPLICANT(S)
R. G. Ryles, D. S. Honig, E. W. Harris, and R. E, Noff

### U.S. PATENT DOCUMENTS

| | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| * | A | 4 6 8 1 9 1 2 | 7-21-87 | Durand et al. | 524 | 827 | |
| | B | 4 1 4 7 6 8 8 | 4-3-79 | Makhlouf et al. | 526 | 273 | |
| | C | 3 6 9 1 1 4 0 | 9-12-72 | Silver | 524 | 815 | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT THTS. I PG SPEC. DWG |
|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | |
| | M | | | | | | | |
| | N | | | | | | | |
| | O | | | | | | | |
| | P | | | | | | | |
| | Q | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | Y. S. Leong and F. Candau, Inverse Microemulsion Polymerization, Journal of Physical Chemistry 86, 2269, 1982. |
| S | |
| T | |
| U | |

| EXAMINER CHENG, W. C, | DATE 8-6-90 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

CIBA 000518

## B866

ISC

RECEIVED

JAN 2 2 1991

GROUP 150

Gp. 155

[REV. Apr89/MB11-2]

Docket No. 31,320

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Date: January 7, 1991

#3

Serial No.: 07/535,626
Filed: February 12, 1990
For: CROSS-LINKED ANIONIC AND
     AMPHOTHERIC POLYMERIC MICRO-
     PARTICLES

Group No. 155
Examiner: W. Cheng

Commissioner of Patents and Trademarks
Washington, D. C. 20231

PETITION FOR EXTENSION OF TIME (37 CFR 1.36(a))

1.  This is a petition for an extension of the time for a total
    period of _2__ month(s) to respond to the Office Letter
    mailed on August 16, 1990  for filing an amendment  .

2.  A response in connection with the matter for which this
    extension is requested:
    [ X ] is filed herewith
    [   ] has been filed
          (complete the following if applicable)
    [   ] the response is the filing of a continuation
          application having an express abandonment conditioned
          on the granting of a filing date to the continuing
          application.

----------------------------------------------------------------

CERTIFICATE OF MAILING [37 CFR 1.8(a)]

I hereby certify that this paper (along with any referred to as
being attached or enclosed) is being deposited with the United
States Postal Service on the date shown below with sufficient
postage as first class mail in an envelope addressed to the:
Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Date:                              (Signature of person mailing paper)

CIBA 000519

B867

[REV.4Apr89/HB11-2]          -2-

3.    Calculation of extension fee (37 CFR 1.17(a)-(d)):

    [   ] One Month.    Fee in the amount of $100.00

    [ X ] Two Months.    Fee in the amount of $300.00

    [   ] Three Months.  Fee in the amount of $730.00

    [   ] Four Months.   Fee in the amount of $1,150.00

                                  FEE $ 300.00

If an additional extension of time is required, please consider this a petition therefor.

      (check and complete the next item, if applicable)

    [   ] An extension for ____ months has already been secured and the fee paid therefor of $_____ is deducted from the total fee due for the total months of extension now requested.

            Extension fee due with this request $ 300.00

4.    FEE PAYMENT

    [ X ] Charge fee to Account No. 01-1300 and this is a request to charge for any additional extension and/or fee required or credit for any excess fee paid. A duplicate of this petition is attached.

                             _____

                             (Signature of Attorney)

Reg. No. 19933          Frank M. Van Riet
                        (Type name of Attorney)

Tel. No. (203) 321-2614    American Cyanamid Company
                          1937 West Main Street
                          P.O. Box 60
                          Stamford, CT 06904-0060

CIBA 000520

RECEIVED

JAN 2 2 1991

GROUP 150

Docket No.: 31,320

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Serial No.:   07/535,626
Filed: June 11, 1990
For:   CROSS-LINKED ANIONIC
       AND AMPHOTERIC POLYMERIC
       MICROPARTICLES

Group Art Unit:  155

Examiner:  W. Cheng

Commissioner of Patents
  and Trademarks

Washington, D.C.  20231

January 4, 1991

## Amendment

In response to the Office Action of August 16, 1990,
please amend the instant application as follows:

### In the Specification

Page 5, lines 14 and 15, cancel the words "Attorney
Docket No. 31,043), filed concurrently hereiwth" and substitute
therefor the words/ --07/536,382 filed June 11, 1990, now
abandoned and refiled as Serial No. 07/540,667, filed June 18,
1990 as a continuation-in-part--.

Page 5, line 24, cancel the term "5%" and substitute
therefor --5 mole percent--.

Page 10, line 9 please correct the spelling of
"azobisisobutyronitrile".

Page 11, line 16, cancel the word "initialed" and
substitute therefor the word --initiated--.

Page 18, line 8, cancel the word "micorbead" and
substitute therefor the word --microbead--.

### In the Claims:

Please rewrite Claim 1 as follows:

- 1 -

CIBA 000521

--1. (Amended)  A composition comprising cross-linked anionic or amphoteric polymeric microparticles derived solely from water-soluble monomers, said microparticles having an unswollen number average particle size diameter of less than about 0.75 micron, a solution viscosity of at least about 1.1. mPa.s, [and] a cross-linking agent content of above about 4 molar parts per million, based on the monomeric units present in the polymer, and an ionicity of at least about [5%] 5 mole percent--.

Claim 5, line 6, cancel the word "aldehydes".

Claim 10, line 2, cancel the word "cationic" and substitute therefor the word --anionic--.

## Remarks

The Examiner has required restriction to one of the following inventions under 35 USC 121:

Group I, claims 1-13, drawn to polymers and classified in Class 526; Subclass 264.

Group II, Claims 14-22 drawn to a process and classified in Class 522; Subclass 184.

Inventions I and II are related as process of making and product made, the Examiner explains, and are distinct if either or both of the following can be shown:  (1) that the process, as claimed, can be used to make another and materially different product or (2) that the product, as claimed, can be made by another and materially different process.  In the instant case, the Examiner contends, the process, as claimed, can be used to make a materially different product such as polymer dispersion stabilizer.

Because the Inventions are therefore distinct, and have acquired a separate status in the art as shown by their different

- 2 -

CIBA 000522

B870

classification, the restriction for examination purposes has been indicated as proper.

The requirement for restriction is strenuously urged as improper. Contrary to the Examiner's contention, it is not seen how the process of Invention II can be used to make a materially different product than represented by Invention I in that the process, of necessity, must make a polymer and the polymer, of necessity, must be that of Invention I. The fact that the polymer may be a polymer dispersion stabilizer is irrelevant. It will still be the polymer represented by Claims 1-13 and thus will not be a materially different product.

Additionally, ex parte Cos 1889 CD 191 and U.S. ex rel. Steinmetz v. Allen 1904 CD 703 clearly establish that a separation of classification is not determinative of the separateness of invention. Reconsideration of the requirement for restriction is therefore earnestly solicited.

In order to comply with the requirement, however, Applicants hereby acknowledge their previous telephonic election of Invention I i.e. Claims. 1-13. Retention of non-elected Claims 14-22, withdrawn from further consideration, in the application for the purpose of filing a subsequent divisional application or appeal is respectfully requested.

The specification has been objected to under 35 USC 112, first paragraph, as failing to provide an adequate written description of the invention.

This objection is not understood in that the Examiner has not expressed any reasons why the specification is insufficient. Applicants have carefully considered the specification and find no reason why it does not contain such full, clear, concise and exact terms as to enable any person

- 3 -

CIBA 000523

skilled in the art to which it pertains to make and use the same. Clarification of this objection is respectfully requested.

Claim 5 has been rejected under 35 USC 112, first paragraph, the Examiner stating that the claim contains the term "aldehydes" which is generic to the terms "acrolein" and "glyoxal" which are species.

This rejection has been overcome by the instant amendment, as suggested by the Examiner, by cancellation of the term "aldehydes", which compounds, however, are still clearly included in the generic claims as a possible cross-linking agent.

Claim 10 has been rejected under 35 USC 112, first paragraph, the Examiner questioning whether the claim involves a cationic or an anionic monomer, the compounds listed being anionic.

This ground of rejection has been overcome by the instant amendment in that the term "cationic" has been replaced by the term --anionic--, as obviously intended. The error is regretted.

Claims 8 and 12 have also been rejected under 35 USC 112, first paragraph, in that they involve non-ionic monomers, the Examiner questioning how they can be expected to produce polymers with an ionicity of at least about 5 mole percent.

This ground of rejection is respectfully traversed. All that is required by Claims 8 and 12 is that a non-ionic monomer be present in the final polymer composition. Since Claims 8 and 12 are dependent upon Claim 1 and Claim 1 requires that the polymer composition have an ionicity of at least about 5 mole percent, it is believed to be clear that the polymer must also be additionally composed of either anionic or anionic and cationic monomer(s). Thus, Claims 8 and 12 cover anionic or

- 4 -

CIBA 000524

B872

amphoteric polymer compositions which are also produced from a non-ionic monomer, e.g. acrylamide, see Example 1 vis-a-vis Example 3. Reconsideration of this rejection is earnestly solicited.

Claims 1-13 have been rejected under 35 USC 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicants regard as the invention, the Examiner stating that the term "ionicity" is not defined, thus making the claims vague and indefinite since when "percentage" is mentioned, there is no designation of the basis therefor.

This ground of rejection has been overcome by the instant amendment whereby the ionicity of the polymer composition, both in the specification at page 5 and the claims, has been indicated as a "mole percentage". Basis for this limitation can be found in Table I, page 13, and Table III, page 17, see, for example, Example 25. Withdrawal of this ground of rejection is respectfully requested.

Claims 1-4, 7-10, 12 and 13 have been rejected under 35 USC 102(b) as anticipated by or, in the alternative, under 35 USC 103, as obvious over, Durand etal, the Examiner stating that Durand etal, in Example 1, discloses anionic, organic, polymeric microparticles by polymerizing sodium acrylate and acrylamide in the presence of polyoxyethylene sorbitol hexaoleate and sorbitan sesquioleate. Since the oleate contains a double bond, the Examiner argues that it is reasonable to expect the oleate to function to some degree as a cross-linking agent in addition to being a surfactant. Specifically, the Examiner continues, Example 2 reports the viscosity of the polymer to be 1.30 $mm^2/s$ while col. 3, line 67 mentions that particles of a radius of 20-40 nanometers result. Since 20.7g of acrylic acid was used to

- 5 -

CIBA 000525

produce 82.0g of copolymer, the Examiner indicates that the weight percent of acrylate ion was about 25%.

This ground of rejection is respectfully traversed. The Durand etal, reference has been carefully considered but is not seen to teach, disclose or suggest the instant invention. Durand etal fail to indicate the incorporation of a cross-linking agent into the polymer produced therein. Only sodium acrylate and acrylamide are used. The Examiner apparently recognizes the deficiency of Durand etal in that he points out that the oleate surfactants of Durand etal contain an unsaturated group and thus would reasonably be expected to function as a cross-linker. This assumption is erroneous in that the oleates of Durand etal are monounsaturated and if any reaction thereof with the acrylamide and/or acrylate were to occur it would occur linearly because a cross-linking agent must contain two functional groups to act as such, see page 7, lines 11-26 of the instant specification. Thus, the particulate polymer compositions produced by Durand etal clearly do not anticipate the instant claims in the sense of 35 USC 102.

Durand etal also fails to render the instant invention obvious in that the particles of Durand etal clearly would not function as do the instant compositions. In this regard, the Examiner's attention is respectfully directed to Table II of the instant specification. As can be seen, Example 7 is representative of a polymer produced in the absence of cross-linking agent i.e. it is linear, see page 16, line 2, as is that of Durand etal. The cross-linked polymer compositions, while beneficial, are clearly outclassed by the Applicants' compositions as represented by Examples 8-19. It is Applicants' position that it would not be expected from a perusal of the Durand etal application that the use of a cross-linking agent in

- 6 -

CIBA 000526

the preparation of the instant compositions would result in compositions which function in a manner unexpectedly superior to those produced in the absence of a cross-linking agent. Reconsideration of this ground of rejection is earnestly solicited.

Claims 1-5, 7-9 and 12 have been rejected under 35 USC 102(b) as anticipated by, or, in the alternative, under 35 USC 103, as obvious over, Maklhouf etal, the Examiner stating that Maklhouf etal discloses a composition comprising cross-linked, organic, polymeric microparticles having particle sizes of from 0.1-10 microns, at least one monomethylenically unsaturated monomer and a cross-linking agent being used. The cross-linking agent can be an epoxy-group containing compound like glycidyl methacrylate, the Examiner continues, and the unsaturated monomers include acrylic acid.

This ground of rejection has been overcome the instant amendment whereby Claim 1 has been rewritten to include the limitation that the polymers hereof are produced solely from water-soluble monomers. Basis for this limitation can be found in the specification at page 3, line 1 et seq. and all the Examples wherein, it can be seen, only water-soluble monomers are disclosed. The polymers of Maklhouf etal contain only 0.5-15% of water-soluble monomer, the remaining 70-99% being water-insoluble monomer, see col 2, linear 41-63. Furthermore, although Maklhouf etal disclose a particle diameter range which overlaps the maximum particle size diameter of Applicants, it is strenuously urged that Maklhouf etal do not produce particles where the number average particle size is only below 0.75 microns. The compositions of Maklhouf etal are particles of all diameters from 0.1-10 microns as is recognized in the art where this type of dispersion polymerization is used in the polymer production. All

- 7 -

CIBA 000527

B875

of Applicants' particles fall within the claimed range whereas only some of the composition of Maklhouf etal fall within said range.

Furthermore, as discussed above, the compositions of the instant invention have been shown to be unexpectedly superior to closely related compositions and thus, are clearly unobvious over the teachings of Maklhouf etal.

Claims 1-4,7, 9-11 and 13 have also been rejected under 35 USC 102(b), as anticipated by, or, in the alternative, under 35 USC 103, as obvious over, Silver, the Examiner stating that Silver discloses acrylate copolymer microspheres of at least one alkyl acrylate ester and one ionic monomer or maleic anhydride. Ionic monomers listed include both anionics and cationics, the Examiner continues, the lower limit of the particle size being one micron which is very close to, or within experimental error, of the claimed 0.75 micron maximum.

This ground of rejection has also been overcome by the instant amendment whereby Claim 1 has been limited to polymer compositions produced solely from water-soluble monomers. The arguments applied to Maklhouf etal above also apply to Silver which also fails to teach the use of water-soluble monomers alone and produces polymer particles of a range too large to fall within those claimed herein, a 25% differential in size being considered more than within experimental error. Silver, in fact, indicates that a smaller particle size is undesirable, see col 4, lines 23-27. From 90-99.5% of the Silver compositions are made from water-insoluble monomers, see col 1, lines 45-52. Additionally, no cross-linking agent is employed and no suggestion can be found that the unexpected results, shown in Table II hereof, can be achieved. Accordingly, reconsideration of this ground of rejection is also strenuously urged.

- 8 -

CIBA 000528

Claim 5 has been rejected under 35 USC 102(b), as anticipated by, or, in the alternative, under 35 USC 103, as obvious over, Leong etal, the Examiner stating that Leong etal disclose cross-linked polyacrylamide latices or microgels which are prepared using a mixture of acrylamide and ethylene bisacrylamide, the sizes of the latices being less than 500A in diameter.

This ground of rejection is also respectfully traversed. Leong etal is acknowledged in Applicants' specification as prior art over which the instant invention is a patentable improvement. Leong etal fails to include an ionic monomer in the polymerization taught therein and thus, the polymer compositions produced therein do not contain the 5 mole percent ionicity required by the instant claims. Nor are the instant claims obvious therefrom in view of the unexpectedly superior results achieved as shown in Applicants' specification. Withdrawal of this ground of rejection is also earnestly solicited.

It is noted that the Examiner failed to include Claim 6 in any of the above-discussed rejections. It is therefore assumed that Claim 6 contains allowable subject matter. Confirmation of this assumption is hereby requested from the Examiner.

In view of the above Remarks, this Application is believed to be in condition for allowance and such action is earnestly requested at an early date.

Respectfully submitted,

*Frank M. Van Riet*

Attorney for Applicants
Frank M. Van Riet
Registration# 19933

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on ___January 7, 1991___
(Date of Deposit)

OC/
AM-31320

- 9 -

FRANK M. VAN RIET

Name of Applicant, Assignee, or Registered Representative

*Frank M Van*

Signature
1-7-91
Date of Signature

CIBA 000529





**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/535.626 | 06/11/90 | RYLES | | R    31,320 |

| EXAMINER |
|---|
| CHENG, V |

| ART UNIT | PAPER NUMBER |
|---|---|
| 155 | |

FRANK H. VAN RIET
C/O AMERICAN CYANAMID CO.
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

DATE MAILED:    04/11/91

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined  ☒ Responsive to communication filed on _1-10-91_  ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _3_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.      2. ☐ Notice to Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.          4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.  6. ☐ _____

**Part II  SUMMARY OF ACTION**

1. ☒ Claims _1 - 22_ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1 - 22_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev.9-82)                    **EXAMINER'S ACTION**

CIBA 000530

( )

Serial No. 535,626                          -2-

Art Unit   155

15.

Applicants' arguments, filed on January 10, 1991, have been
carefully considered.

16.

The restriction requirement is withdrawn in view of the
arguments.

17.

The corrections in claims 5 and 10 are noted.  The rejection
under 35 U.S.C. 112, first paragraph, has been overcome.

18.

The rejection of claims 8 and 12 under 35 U.S.C. 112, first
paragraph, is withdrawn in view of arguments.

19.

The rejection of claims 1-13 under 35 U.S.C. 112, second
paragraph, has been overcome by the amendment.

20.

The rejection of claims 1-5, 7-9, and 12 under 35 U.S.C.
102(b) or under 35 U.S.C. 103 over Makhlouf et al on record is
repeated.

On page 7 of the amendment, the applicants argued that the
polymers of Markhouf et al contain 70-99% water-insoluble
monomer.  The list of monomers in lines 41-63 column 2 of the
reference included vinyl acetate which is soluble in water.

CIBA 000531

B879

Serial No. 535,626                    -3-

Art Unit    155

There is also a statement that essentially any copolymerizable

mono ethylenic monomer may be utilized.

21.

     The rejection on record of claims 1-4, 7-10, 12 and 13 under

35 U.S.C. 102(b) or 35 U.S.C. 103 is withdrawn in view of the

arguments.

22.

     The rejection on record of claims 1-4, 7, 9-11 and 13 under

35 U.S.C. 102(b) or 35 U.S.C. 103 has been overcome by the

amendment.

23.

     The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

     A patent may not be obtained though the invention is not
     identically disclosed or described as set forth in section
     102 of this title, if the differences between the subject
     matter sought to be patented and the prior art are such that
     the subject matter as a whole would have been obvious at the
     time the invention was made to a person having ordinary
     skill in the art to which said subject matter pertains.
     Patentability shall not be negatived by the manner in which
     the invention was made.

     Subject matter developed by another person, which qualifies
     as prior art only under subsection (f) or (g) of section 102
     of this title, shall not preclude patentability under this
     section where the subject matter and the claimed invention
     were, at the time the invention was made, owned by the same
     person or subject to an obligation of assignment to the same
     person.

CIBA 000532

B880

Serial No. 535,626                          -4-

Art Unit  155

Claims 1-13 are rejected under 35 U.S.C. § 103 as being unpatentable over Neff et al (U.S. 4,968,435) in view of Whittaker.

In the primary reference, Neff et al disclosed crosslinked cationic polymeric microparticles and its method of preparation.

Whittaker taught the use of cationic, anionic, and/or amphoteric polymers as flocculating agents for different types of dispersions.

Thus it would be obvious because crosslinked anionic (and/or amphoteric) polymeric microparticles would be expected to flocculate that type of dispersions which Whittaker's anionic (and/or amphoteric) polymers will flocculate.

24.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

CIBA 000533

Serial No. 535,626                           -5-

Art Unit   155

Claims 14-22 are rejected under 35 U.S.C. § 103 as being
unpatentable over Neff et al (U.S. 4,968,435) in view of Durand
et al.

Neff et al disclosed the method of preparing crosslinked
cationic polymeric microparticles.

Durand et al showed that anionic monomers are polymerizable
under the inverse emulsion polymerization conditions of Neff.
Thus it would be obvious.

25.

Applicant's amendment necessitated the new grounds of
rejection. Accordingly, THIS ACTION IS MADE FINAL. See M.P.E.P.
§ 706.07(a). Applicant is reminded of the extension of time
policy as set forth in 37 C.F.R. § 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

W. Cheng:amw
April 09, 1991
703-308-3351

April 09, 1991

JOSEPH L. SCHOFER
SUPERVISORY PATENT EXAMINER
ART UNIT 155

CIBA 000534

TO SEPARATE, H™ 3 TOP AND BOTTOM EDGES, SNAP-APART AND ™ CARD CARBON

| FORM PTO-892 (REV. 9-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/535 626 | GROUP ART UNIT 155 | ATTACHMENT TO PAPER NUMBER | 5 |
|---|---|---|---|---|---|
| NOTICE OF REFERENCES CITED | | APPLICANT(S) R. G. Ryles, D. S. Honig, E. W. Harris, and R. E. Neff | | | |

## U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| A | 4 7 0 5 6 4 0 | 11-10-87 | Whittaker | 210 | 733 | |
| B | 4 9 6 8 4 3 5 | 11-6-90 | Neff et al. | 210 | 734 | |
| C | | | (effective filing date was 12-19-88 | | | |
| D | 4 6 8 1 9 1 2 | 7-21-87 | Durand et al. | 524 | 827 | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. PG. DWG. SPEC. |
|---|---|---|---|---|---|---|---|
| L | | | | | | | |
| M | | | | | | | |
| N | | | | | | | |
| O | | | | | | | |
| P | | | | | | | |
| Q | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER CHENG, W. C. | DATE 4-4-91 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

CIBA 000535

B883

*155*

[4Apr89/MB11-2]

Docket No. 31,320-00

PATENT

*(MAIL ROOM stamp: JUL 22 1991 PATENT & TRADEMARK)*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application of:
RODERICK GLYN RYLES
DAN S. HONIG
ELIETH W. HARRIS
ROGER E. NEFF

Serial No.: 07/535,626
Filed: June 11, 1990
For:   CROSS-LINKED ANIONIC AND
       AMPHOTERIC POLYMERIC
       MICROPARTICLES;

Date: July 18, 1991

RECEIVED

JUL 2 6 1991

GROUP 150

Commissioner of Patents and Trademarks
Washington, D. C.  20231

PETITION FOR EXTENSION OF TIME (37 CFR 1.36(a))

1.   This is a petition for an extension of the time for a total
     period of _1_ month(s) to respond to the Office Letter
     mailed on _April 11, 1991_ by _filing a continuation_
     _application._

2.   A response in connection with the matter for which this
     extension is requested:   /
     [  ] is filed herewith
     [  ] has been filed
          (complete the following if applicable)
     [  ] the response is the filing of a continuation
          application having an express abandonment conditioned
          on the granting of a filing date to the continuing
          application.

CERTIFICATE OF MAILING [37 CFR 1.8(a)]

I hereby certify that this paper (along with any referred to as
being attached or enclosed) is being deposited with the United
States Postal Service on the date shown below with sufficient
postage as first class mail in an envelope addressed to the:
Commissioner of Patents and Trademarks, Washington, D.C. 20231.

DS2015S 07/24/91 07535626        01-1300 020 115      100.00CH

Date: _____
                                 _____
                                 (Signature of person mailing paper)

CIBA 000536

[REV.4Apr89/MB11-2]          -2-

3.   Calculation of extension fee (37 CFR 1.17(a)-(d):
     [ X ] One Month.    Fee in the amount of $100.00
     [   ] Two Months.   Fee in the amount of $300.00
     [   ] Three Months. Fee in the amount of $730.00
     [   ] Four Months.  Fee in the amount of $1,150.00
                                              FEE $ 100.00 ___

If an additional extension of time is required, please consider
this a petition therefor.

          (check and complete the next item, if applicable)
     [   ] An extension for ____ months has already been secured
          and the fee paid therefor of $_____ is deducted
          from the total fee due for the total months of
          extension now requested.

               Extension fee due with this request $ 100.00 ___

4.   FEE PAYMENT
     [ X ] Charge fee to Account No. 01-1300 and this is a
          request to charge for any additional extension and/or
          fee required or credit for any excess fee paid. A
          duplicate of this petition is attached.

                              _Frank M. Van Riet_____
                              (Signature of Attorney)

Reg. No. 19933                _Frank M. Van Riet_____
                              (Type name of Attorney)

Tel. No. (203) 321-2614       American Cyanamid Company
                              1937 West Main Street
                              P.O. Box 60
                              Stamford, CT 06904-0060

CIBA 000537

**B885**



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/535,626 | 06/11/90 | RYLES | R | 31,720 |

FRANK M. VAN RIET
C/O AMERICAN CYANAMID CO.
1937 WEST MAIN STREET
STAMFORD, CT 06904-0060

| EXAMINER |
|---|
| CHENG, W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1505 | |

DATE MAILED:
11/19/91

### NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ☒ Applicant's failure to respond to the Office letter, mailed ___4-11-91___

2. ☐ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138.

3. ☐ Applicant's failure to timely file the response received _____ within the period set in the Office letter.

4. ☐ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of _____ of the Notice of Allowance.

   ☐ The issue fee was received on _____ .

   ☐ The issue fee has not been received in Allowed Files Branch as of _____ .

   In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, in the amount specified by 37 C.F.R. 1.17 (l), and a verified showing as to the causes of the delay.

   If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc. v. Schuyler, 172 U.S.P.Q. 513.

5. ☐ Applicant's failure to timely correct the drawings and/or submit new or substitute formal drawings by _____ as required in the last Office action.

   ☐ The corrected and/or substitute drawings were received on _____ .

6. ☐ The reason(s) below.

EDWARD J. SMITH
PRIMARY EXAMINER
ART UNIT 1505

PTO-1432 (REV. 8-83)

**CIBA 000538**

#8

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF:          )
                               )
APPLICANT:    RYLES            )
                               )
SERIAL NO:    535,626          )
                               )
FILED:        June 11, 1991    )
                               )
                               )
                               )
                               )

POWER TO INSPECT AND MAKE COPIES

HONORABLE COMMISSIONER OF PATENTS
   AND TRADEMARKS
WASHINGTON, D.C.   20231

SIR:

        The undersigned is the attorney of record in the subject

application, and therefore grants the power to inspect and make copies

to Rita M. Stark, of Landon & Stark Associates, Inc.

                              Respectfully submitted,

                              Frank M. Van Riet
                              Registration No. 19933

DATED:  December 6, 1991

AMERICAN CYANAMID COMPANY
1937 West Main Street
P. O. BOX 60
STAMFORD,   CT  06904-0060

TEL.: (203) 348-7331

CIBA 000539

**B887**

$\frac{9}{\text{paper number}}$

### REQUEST FOR ACCESS

Date: _A-22-96_

Serial Number: _535 626_

Filing Date: _6-11-90_

Applicants: _Lylos_

Sir.

Request is hereby respectfully made for access to the file history of the following

abandoned application referred to in U.S. patent number _51,71808_ or printed

application number _____.

Respectfully submitted,

_Chris Bennett_

---

OFFICIAL USE ONLY

PROCESSED BY

APR 22 1996

FILL
initials

FILE INFORMATION UNIT

---

CIBA 000540

**B888**

_/0_
_paper number_

### REQUEST FOR ACCESS

Date: _10-9-96_

Serial Number: _535626_

Filing Date: _6-11-96_

Applicants: _Ryles et.al_

Sir.

Request is hereby respectfully made for access to the file history of the following abandoned application referred to in U.S. patent number _5171808_ or printed application number _____.

Respectfully submitted.

_Cindy Hilliard_

---

**OFFICIAL USE ONLY**

PROCESSED BY

OCT 1 0 1996

**FIU**

_initials_

_FILE INFORMATION UNIT_

---

CIBA 000541

**B889**

PTO/SB/68 (11-98)
Approved for use through 10/31/08. OMB 0651-0031
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Red.    1 Act of 1995, no persons are required to respond to a coll.    of information unless it displays a valid OMB control number.

## REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

**PROCESSED BY**

JAN 21 1999

FIII

| In re Application of | |
| --- | --- |
| Application Number | Filed |
| 535626 | Jun 11 1996 |
| Group Art Unit | Examiner |
| | R Yles chou. |
| | Paper No. #11 |

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

___ (A) referred to in United States Patent Number _____ column _____

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e.,
Application No. _____, filed _____, on page _____ of
paper number _____ .

___ (C) an application that claims the benefit of the filing date of an application that is open to public
inspection, i.e., Application No. _____, filed _____, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete
application to the public.

Please direct any correspondence concerning this request to the following address:

_____

_____

_____

| _ADRIN_ | _1-26-99._ |
| --- | --- |
| Signature | Date |

| | FOR PTO USE ONLY |
| --- | --- |
| Typed or printed name | Approved by: ___ (initials) |
| CIBA 000542 | Unit: ___ |

Burden Hour Statement: This form is estimated to take 3.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, ...

**B890**

PTO/SB/68 (04-01)
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REQUEST FOR ACCESS TO AN APPLICATION UNDER 37 CFR 1.14(e)

In re Application of

| Application Number 07-535 626 | Filed 6-11-90 |
|---|---|
| Art Unit | Examiner |

Paper No. 72

RECEIVED
OCT 3 0 2002
File Information Unit

Assistant Commissioner for Patents
Washington, DC 20231

1. ☐ I hereby request access under 37 CFR 1.14(e)(2) to the application file record of the above-identified ABANDONED Application, which is not within the file jacket of a pending Continued Prosecution Application (CPA) (37 CFR 1.53(d)) and is: (CHECK ONE)

☐ (A) referred to in:
United States Patent Application Publication No. 5171808 , page ____, line ____.
United States Patent Number _____, column ____, line ____, or
an International Application which was filed on or after November 29, 2000 and which
designates the United States, WIPO Pub. No. _____, page ____, line ____.

☐ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11(b) or
1.14(e)(2)(f), i.e., Application No. _____, paper No. ____ page ____ line ____.

2. ☐ I hereby request access under 37 CFR 1.14(e)(1) to an application in which the applicant
has filed an authorization to lay open the complete application to the public.

| Signature _N.C._ | Date 10-30-02 |
|---|---|
| Typed or printed name ADRIAN | |

OFFICE USE ONLY
Approved OCT 3 0 2002
Unit ____

Burden Hour Statement: This form is estimated to take 0.1 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

CIBA 000543

B891

5171808

| SERIAL NUMBER 07/803120 | DEC 15 1992 | PATENT NUMBER |

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 07/803,120 | 07/22/91 | 526 | 304 | 1505 | |

RODERICK G. RYLES, MILFORD, CT; DAN S. HONIG, NEW CANAAN, CT;
ELIETH W. HARRIS, BRIDGEPORT, CT; ROGER E. NEFF, STAMFORD, CT.

**CONTINUING DATA*****************
VERIFIED    THIS APPLN IS A CON OF   07/535,626 06/11/90 ABN

*WCC*

**FOREIGN/PCT APPLICATIONS***********
VERIFIED

*WCC*

FOREIGN FILING LICENSE GRANTED 12/16/91

| Foreign priority claimed ☐ yes ☒ no | STATE OR COUNTRY | SHEETS DRWG. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|
| 35 USC 119 conditions met ☐ yes ☒ no AS FILED | CT | 0 | 21 | 1 | $650.00 | 31,320-01 |

ADDRESS
AMERICAN CYANAMID COMPANY
PATENT LOAN DEPARTMENT
ONE CYANAMID PLAZA
WAYNE, NJ 07470-8426

TITLE
CROSS-LINKED ANIONIC AND ... POLYMERIC MICROPARTICLES

U.S. DEPT. of COMM.-Pat. & TM Office—PTO-436L (rev. 10-78)

| PARTS OF APPLICATION FILED SEPARATELY | PREPARED FOR ISSUE | | CLAIMS ALLOWED | |
|---|---|---|---|---|
| NOTICE OF ALLOWANCE MAILED | Wu E. Cheng Assistant Examiner | | Total Claims 21 | Print Claim 1 |
| | JOSEPH L. SCHOFER SUPERVISORY PATENT EXAMINER ART UNIT 155  Primary Examiner | | DRAWING | |
| ISSUE FEE | | | Sheets Drwg. | Figs. Drwg.  Print Fig. |
| Amount Due | Date Paid 9-15-92 | | | |
| | ISSUE CLASSIFICATION | | ISSUE BATCH NUMBER | |
| Label Area | Class 526 | Subclass 264 | | |

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-C8
Rev. 8/78

DEFENDANT'S EXHIBIT
Van Riet - 5
01/25/05  SC

**B892**

HERC0076066

30|4|
APPROVED FOR LICENSE ☐

07/803120

INITIALS 191 26

Entered
or
Counted

CONTENTS

RECEIVE

DEC 27 1991

Received
or
Mailed

GROUP 150

papers:

1. Application
2. Pre Audit 1a                                    7/22/91
3. Pre Audit 1b                                    7/22/91
4. Final Rejection                                 Feb 10 1992
5. Appeal Brief                                    Apr 28 1992
6. Notice of Appeal                                Apr 28 1992
7. Telephonic Interviews                           7/14/92
8. Ex Audit 1c                                     July 16 1992
9. PTO GRANT DEC 1 5 1992
10.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.
30.
31.
32.

**B893**

HERC0076067

1

HERC0076068

| BAR CODE LABEL | U.S. PATENT APPLICATION | | |
|---|---|---|---|
| SERIAL NUMBER 07/803,120 | FILING DATE 07/22/91 | CLASS 526 | GROUP ART UNIT 1505 |

**APPLICANT**

RODERICK G. RYLES, MILFORD, CT; DAN S. HONIG, NEW CANAAN, CT; ELIETH W. HARRIS, BRIDGEPORT, CT; ROGER E. NEFF, STAMFORD, CT.

\*\*CONTINUING DATA\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VERIFIED    THIS APPLN IS A CON OF  07/535,626 06/11/90 ABN

\*\*FOREIGN/PCT APPLICATIONS\*\*\*\*\*\*\*\*\*\*\*\*
VERIFIED

FOREIGN FILING LICENSE GRANTED 12/16/91

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| CT | 0 | 21 | 1 | $ 650.00 | 31.320-01 |

**ADDRESS**

AMERICAN CYANAMID CO.,
1937 W. MAIN ST.,
P. O. BOX 60
STAMFORD, CT 06904-0060

**TITLE**

CROSS-LINKED ANIONIC AND AMPHOTERIC POLYMERIC MICROPARTICLES

This is to certify that annexed hereto is a true copy from the records of the United States
Patent and Trademark Office of the application as originally filed which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date                                              Certifying Officer

**B895**

HERC0076069

803/20

- 1 -

31,320

## CROSS-LINKED ANIONIC AND AMPHOTERIC POLYMERIC MICROPARTICLES

The present invention relates to structured anionic and amphoteric polymeric microparticles and a method for their preparation.

## BACKGROUND OF THE INVENTION

10    Cross-linked anionic and amphoteric, organic polymeric compositions are known to those skilled in the art and are useful in a variety of solid-liquid separation applications, particularly in the flocculation of various dispersions of suspended solids, such as sewage sludge, and in the
15    thickening of cellulosic paper pulp suspensions. Modern concerns about environmental pollution and the increasing cost of materials have made it highly desirable to produce flocculating agents which cause higher degrees of separation at lower dosage levels.
20    EP 0,202,780 describes the preparation of polymeric, crosslinked, cationic acrylamide polymer beads by conventional inverse emulsion polymerization techniques. Crosslinking is accomplished by the incorporation of a difunctional monomer, such as methylenebisacrylamide, into
25    the polymer. This crosslinking technology is well known in the art. The patentee teaches that the crosslinked beads are useful as flocculants.

Typically, the particle size of polymers prepared by conventional inverse water-in-oil emulsion polymerization
30    processes are limited to a range of about 1-5 microns, since no particular advantage in reducing the particle size has hitherto been apparent. The precise particle size which is achievable in inverse emulsions is determined by the concentration and activity of the surfactant(s) employed and
35    these are customarily chosen on the basis of emulsion stability and economic factors.

3

HERC0076070

- 2 -

Leong, et al., in Inverse Microemulsion
Polymerization, J. of Phys. Chem., Vol. 86, No. 23, 6-24-82,
pp 2271-3, discloses polymerization of acrylamide in an
inverse microemulsion. The author, also discloses having
prepared crosslinked polyacrylamide latices or microgels by
using a 100:1 mixture of acrylamide-methylenebisacrylamide.
No anionic or amphoteric monomers are mentioned or is their
use as a flocculating agent or paper-making additive.

EPO 0173605 teaches the production of microbeads having
a diameter ranging from about 49-87 nm and produced from
terpolymers of vinyl acetate (84.6), ethyl acrylate (65.4)
and acrylic acid (4.5) or methacrylonitrile (85), butyl
acrylate (65) and acrylic acid (3). These polymeric beads
are disclosed as added to an LBKP pulp slurry in order to
evaluate the resultant paper for sizing degree, paper force
enhancement and disintegratability. These polymer beads
fall outside the scope of those claimed in the present
invention in that the ionic content thereof is too small to
impart any appreciable improvement during usage.

Additionally, U.S. Patent No. 4,681,912 discloses the
production of microparticles of acrylamide and acrylic acid,
for example, utilizing a microemulsion process. The patent,
however, fails to teach the cross-linking of the particles
so as to render them water-insoluble or their use in
paper-making.

SUMMARY OF THE INVENTION

According to the present invention, there are provided
compositions comprising crosslinked, anionic and/or
amphoteric, organic, polymeric, microparticles, having an
unswollen number average particle size diameter of less than
about 0.75 micron, preferably less than about 0.5 micron, a
solution viscosity of at least 1.1, preferably from about
1.1 to about 2.0, mPa.s, a crosslinking agent content of
above about 4 molar parts per million, based on the
monomeric units present in the polymer, and an ionicity of
at least about 5%.

4

HERC0076071

B897

- 3 -

The preferred anionic monomers for use in the practice of the present invention comprises acrylic acid, methacrylic acid, ethacrylic acid, 2-acrylamido-2-alkylsulfonic acids where the alkyl group contains 1 to 6 carbon atoms, such as 2-acrylamido-2-propane-sulfonic acid or mixtures of any of the foregoing and their alkaline salts. Especially preferred are the sodium salts of acrylic acid, methacrylic acid, and 2-acrylamido-2-methylpropane sulfonic acid.

The preferred amphoteric polymers for the use in the practice of the present invention comprise copolymers of one or more of the foregoing anionic monomers and one or more of the following cationic ethylenically unsaturated monomers selected from, from example, acryloxyethyltrimethylammonium chloride; diallyldimethylammonium chloride; 3-(meth)acrylamidopropyltrimethylammonium chloride; 3-acrylamidopropyl-trimethylammonium-2-hydroxypropylacrylate methosulfate; trimethylammoniumethyl methacrylate methosulfate; 1-trimethylammonium-2-hydroxypropylmethacrylate methosulfate; methacryloxyethyltrimethylammonium chloride; or mixtures of any of the foregoing.

The preferred ethylenically unsaturated non-ionic monomers for use in the practice of the present invention are selected from acrylamide; methacrylamide; N,N-dialkylacrylamides; N-alkylacrylamides; N-vinylmethacetamide; N-vinyl methylformamide; vinyl acetate; N-vinyl pyrrolidone and mixtures thereof. Especially preferred is acrylamide.

The preferred compositions encompassed by the present invention are 1) anionic monomers alone or 2) a mixture of anionic and cationic monomers, each copolymerized with the ethylenically unsaturated non-ionic monomers disclosed above. Especially preferred is acrylamide copolymerized with sodium acrylate.

Also, according to the present invention, there is provided a process for the preparation of compositions as defined above, the process comprising:

(a) admixing

HERC0076072

- 4 -

(i)   an aqueous solution comprising at least one
ethylenically unsaturated anionic monomer
alone or in admixture with a cationic monomer
and at least one crosslinking agent and,
optionally, at least one ethylenically
5        unsaturated non-ionic monomer;

(ii)  an oily phase comprising at least one
hydrocarbon liquid; and

(iii) an effective amount of surfactant
or surfactant mixture, so as to form an
10       inverse emulsion which, when subjected to
polymerization conditions, results in a
polymer having a particle size of less than
about 0.75 micron in unswollen diameter; and

(b) subjecting the inverse emulsion obtained in step
15    (a) to polymerization conditions.

A preferred feature of the present invention, comprises
a process employing an aqueous solution comprising sodium
acrylate as the anionic monomer, N,N-methylenebisacrylamide
as the crosslinking agent and acrylamide as the non-ionic
20   monomer; an oily phase comprising a saturated hydrocarbon;
and an effective amount of a surfactant mixture comprising
polyoxyethylene (20) sorbitan monooleate and polyoxyethylene
sorbitol hexaoleate, sufficient to produce particles of less
than about 0.75 micron in unswollen number average particle
25   size diameter.

Polymerization of the inverse emulsion may be carried
out by adding a polymerization initiator, such as sodium
metabisulfite or tert-butyl hydroperoxide, or by subjecting
the inverse emulsion to ultraviolet irradiation. Also
30   contemplated by the present invention is adding an effective
amount of chain-transfer agent to the aqueous solution of
the inverse emulsion, such as an alcohol, mercaptan,
phosphite, sulfite or mixture of any of the foregoing. The
process of the present invention may also comprise a step
35   for recovering the composition from the inverse emulsion.

HERC0076073

**B899**

- 5 -

The resultant organic polymeric particles are useful in
a method of making paper from an aqueous suspension of
cellulose fibers, whereby the drainage properties of the
suspension are improved by including in the suspension 0.1
5  to 20 lbs/ton, based on the dry weight of paper furnish
solids, of the anionic or amphoteric cross-linked organic
polymer microbead having an unswollen number average
particle size diameter of less than about 0.75 micron, a
solution viscosity of at least about 1.1, preferably about
10  1.1 to about 2.0 mPa·s, a cross-linking agent content of
above about 4 molar parts per million, based on the
monomeric units present in the polymer, and at least 5%
ionicity, preferably in the presence of a molecular weight
cationic polymer, as described in copending application,
15  Serial No. [Attorney Docket No. 31043], filed concurrently
herewith.

DETAILED DESCRIPTION OF THE INVENTION

Cross-linked, anionic or amphoteric, organic polymeric
microbeads having an unswollen number average particle size
20  diameter of less than about 0.75 micron, a solution
viscosity of from about 1.1 to about 1.5 mPa·s, a
crosslinking agent content of above about 4 molar parts per
million, based on the monomeric units present in the
polymer, and an ionicity of at least about 5%, are generally
25  formed by the polymerization of at least 5% of an
ethylenically unsaturated anionic monomer and, for
amphoteric microparticles, at least about 5% of one cationic
monomer, and, optionally at least one non-ionic comonomer in
the presence of a crosslinking agent in a water-in-oil
30  inverse emulsion employing an effective amount of surfactant
or surfactant mixture to produce microbeads of less than
about 0.75 micron.

The amphoteric polymers for the use in the practice of
the present invention comprise copolymers of one or more of
35  the foregoing anionic monomers and one or more of the
following cationic ethylenically unsaturated monomers

B900

HERC0076074

- 6 -

(meth)acrylates of dialkylaminoalkyl compounds, and salts and quaternaries thereof and in particular monomers of N,N-dialkylaminoalkyl(meth)acrylamides, and salts and quaternaries thereof, such as N,N-dimethylaminoethy-acrylamides; and the acid or quaternary salts thereof and the like. Cationic monomers which may be used herein are of the following general formulae:

$$( I ) \quad CH_2 = \overset{\overset{\displaystyle R_1}{|}}{C} - \overset{\overset{\displaystyle O}{||}}{C} - X - A - \overset{\overset{\displaystyle R_2}{|}}{\underset{\underset{\displaystyle R_4}{|}}{N^+}} - R_3 \quad . \quad Z^-$$

where $R_1$ is hydrogen or methyl, $R_2$ is hydrogen or lower alkyl of 1-4 carbon atoms, $R_3$ and/or $R_4$ are hydrogen, alkyl of 1-12 carbon atoms, aryl, or hydroxyethyl and $R_2$ and $R_3$, or $R_3$ and $R_4$, can combine to form a cyclic ring containing one or more hetero atoms, and Z is the conjugate base of an acid; X is oxygen or $-NR_1$, wherein $R_1$ is as defined above, and A is an alkylene group of 1-12 carbon atoms, or



$$( II )$$

where $R_5$ and $R_6$ are hydrogen or methyl, $R_7$ is hydrogen or alkyl of 1-12 carbon atoms, and $R_8$ is hydrogen, alkyl of 1-12 carbon atoms, benzyl or hydroxyethyl; and Z is as defined above.

These ethylenically unsaturated anionic, cationic and non-ionic monomers may be copolymerized to produce anionic and amphoteric copolymers. Preferably, acrylamide is copolymerized with a anionic monomer. Anionic copolymers

B901

HERC0076075

- 7 -

useful in the practice of this invention comprise from about 0 to about 95 parts, by weight of non-ionic monomer and about 5 to about 100 parts, by weight, of anionic monomer, based on the total polymer weight. Amphoteric polymers may
5  be produced from about 1-99 parts, by weight, same basis, of anionic monomer and from about 99-1 parts, by weight, of cationic monomer, optionally with from about 0-75 parts, by weight, of a non-ionic monomer, the total weight of the anionic monomer and cationic monomer being at least 5%.
10  Polymerization of the monomers is conducted in the presence of a polyfunctional crosslinking agent to form the crosslinked composition. The polyfunctional crosslinking agent comprises molecules having either at least two double bonds, a double bond and a reactive group, or two reactive groups. Illustrative of those containing at least two
15  double bonds are N,N-methylenebisacrylamide, N,N-methylenebismethacrylamide, polyethyleneglycol diacrylate, polyethyleneglycol dimethacrylate, N-vinyl acrylamide, divinylbenzene, triallylammonium salts, N-methylallylacrylamide and the like. Polyfunctional
20  branching agents containing at least one double bond and at least one reactive group include, glycidyl acrylate, acrolein, methylolacrylamide and the like. Polyfunctional branching agents containing at least two reactive groups include aldehydes such as glyoxal, diepoxy compounds,
25  epichlorohydrin and the like.

Crosslinking agents are to be used in sufficient quantities to assure a crosslinked composition. Preferably at least about 4 molar parts per million of crosslinking agent, based on the monomeric units present, are employed to
30  induce sufficient crosslinking and preferred is a crosslinking agent content of from about 4 to about 6000 molar parts per million, more preferably about 20-4000 and most preferably about 50-2000 molar parts per million.

One method of obtaining the polymeric microparticles of
35  this invention is to polymerize the monomers in a microemulsion. Polymerization in microemulsions and inverse

**B902**

HERC0076076

- 8 -

microemulsions is known to those skilled in this art. P.
Speiser reported in 1976 and 1977 a process for making
spherical "nanoparticles" with diameters less than 800Å by
(1) solubilization of polymerizable molecules, e.g.
acrylamide and methylenebisacrylamide and other materials,
e.g. drugs, in micelles and (2) polymerizing the monomers in
the micelles. J. Pharm. Sa., 65(12), 1763 (1976) and United
States Patent No. 4,021,364. Both inverse water-in-oil and
oil-in-water "nanoparticles" were prepared by this process.
While not specifically called microemulsion polymerization
by the author, this process does contain all the features
which are currently used to define microemulsion
polymerization. These reports also constitute the first
examples of polymerization or acrylamide in a microemulsion.
Since then, numerous publications reporting polymerization
of hydrophobic polymers in the oil phase of microemulsions
have appeared. See, for example, Stoffer and Bone, J.
Dispersion Sci. and Tech., 1(1), 37, 1980 and Atik and
Thomas, J. Am. Chem. Soc'y, 103(14), 4279 (1981); and GB
2161492A.

The ionic and amphoteric microemulsion polymerization
process may be conducted by (i) preparing a monomer
microemulsion by adding an aqueous solution of the monomers
to a hydrocarbon liquid containing appropriate surfactant or
surfactant mixture to form an inverse monomer microemulsion
consisting of small aqueous droplets which, when
polymerized, result in polymer particles of less than 0.75
micron in size, dispersed in the continuous oil phase and
(ii) subjecting the monomer microemulsion to free radical
polymerization.

In order to obtain an inverse microemulsion, it is
generally necessary to use particular conditions whose main
parameters are as follows: surfactant concentration, HLB of
surfactant or surfactant mixture, temperature, nature of the
organic phase and composition of the aqueous phase.

The aqueous phase comprises an aqueous mixture of the
monomers, anionic or a mixture of anionic and cationic and

*/*

B903

HERC0076077

-- 9 --

optionally non-ionic, and the crosslinking agent, as defined
above. The aqueous monomer mixture may also comprise such
conventional additives as are desired. For example, the
mixture may contain chelating agents to remove
polymerization inhibitors, pH adjusters, initiators and
5 other conventional additives.

Essential to the formation of the microemulsion, which
may be defined as a swollen, transparent and
thermodynamically stable micelle solution without agitation,
comprising two liquids insoluble in each other and a
10 surfactant, in which the micelles are much smaller than in
an emulsion, is the selection of appropriate organic phase
and surfactant.

The selection of the organic phase has a substantial
effect on the minimum surfactant concentration necessary to
15 obtain the inverse microemulsion. This organic phase may
comprise of a hydrocarbon or hydrocarbon mixture. Saturated
hydrocarbons or mixtures thereof are the most suitable in
order to obtain inexpensive formulations (lower surfactant
content) of inverse microemulsions. Typically, the organic
20 phase will comprise benzene, toluene, fuel oil, kerosene,
odorless mineral spirits and mixtures of any of the
foregoing.

The ratio by weight of the amounts of aqueous and
hydrocarbon phases is chosen as high as possible, so as to
25 obtain, after polymerization, a microemulsion of high
polymer content. Practically, this ratio may range, for
example from about 0.5 to about 3:1, and usually is about
2:1.

The one or more surfactants are selected in order to
30 obtain an HLB (Hydrophilic Lipophilic Balance) value ranging
from about 8 to about 11. In addition to the appropriate
HLB value, the concentration of surfactant must also be
optimized, i.e. sufficient to form an inverse emulsion
having the correct particle size. Typical surfactants
35 useful in the practice of this invention, in addition to
those specifically discussed above, may be anionic, cationic

/ /

B904

HERC0076078

– 10 –

or non-ionic and are selected from polyoxyethylene (20) sorbitan trioleate, sorbitan trioleate, sodium di-2-ethylhexylsulfosuccinate, oleamidopropyldimethylamine; sodium isostearyl-2-lactate and the like.

5    Polymerization of the emulsion may be carried out in any manner known to those skilled in the art. Initiation may be effected with a variety of thermal and redox free-radical initiators including azo compounds, such as azo isobutyronitrile; peroxides, such as t-butyl peroxide; organic compounds, such as potassium persulfate and redox couples, such as ferrous ammonium sulfate/ammonium persulfate. Polymerization may also be effected by photochemical irradiation processes, irradiation, or by ionizing radiation with a 60 Co source. Preparation of an aqueous product from the emulsion may be effected by inversion by adding it to water which may contain a breaker surfactant. Optionally, the polymer may be recovered from the emulsion by stripping or by adding the emulsion to a solvent which precipitates the polymer, e.g. isopropanol, filtering off the resultant solids, drying and redispersing in water.

   The product of this invention is useful in facilitating a wide range of solid-liquid separation operations. The products of this invention may be used to dewater biologically treated suspensions, such as sewage and other municipal or industrial sludges; the drainage of cellulosic suspension, such as those found in paper production, e.g. paper waste; and the settling and dewatering of various inorganic suspensions, e.g. refinery waste, coal waste, etc.

### DESCRIPTION OF THE PREFERRED EMBODIMENTS

   The following examples illustrate the present invention. They are not be construed as limitations on the present invention except as set forth in the appended claims.

HERC0076079

- 11 -

<u>Examples 1 - 5</u>
<u>Procedure for the Preparation of</u>
<u>Anionic Microemulsion</u>

The master batch of aqueous phase is made by mixing
acrylic acid (AA), as the sodium salt, 200 parts deionized

5    water, 56.5% sodium hydroxide, crystal acrylamide (AMD), 0.3
part 10% pentasodium diethylenetriaminepentaacetate, 39.0
parts additional deionized water, and 1.5 parts of 0.518%
copper sulfate pentahydrate together. To 110.2 parts of
this aqueous phase solution, 6.5 parts deionized water, 0.25

10   part 1% t-butyl hydroperoxide and N,N-methylene
bisacrylamide (MBA) are added. This aqueous phase is mixed
with an oil phase containing 77.8 parts of low odor paraffin
oil, 3.6 parts sorbitan sesquioleate and 21.4 parts
polyoxyethylene sorbitol hexaoleate.

15   This emulsion is deaerated with nitrogen for 20
minutes. The polymerization is then initiated with gaseous
SO$_2$. The polymerization is then allowed to exotherm to 40°C
and is controlled at 40°C (+ 5°C) with ice water. The ice
water is removed when cooling is no longer required. The

20   nitrogen is continued for one hours. The total
polymerization time is 2.5 hours.

If desired, the polymer may be recovered from the
emulsion by stripping or by adding the emulsion to a solvent
which precipitates the polymer, e.g. isopropanol, filtering

25   off the resultant solids, drying and redispersing in water.

At the time of use e.g. as a paper-making additive, the
recovered polymer may be dispersed in water. The emulsion,
microbeads may also be directly dispersed in water.
Depending on the surfactant and levels used in the emulsion

30   dispersion may require using high a hydrophilic lipophilic
balance (HLB) inverting surfactant such as an ethoxylated
alcohol; polyoxyethyllated sorbitol hexaoleate;
diethanolamine oleate; ethoxylated laurel sulfate etc. as in
known in the art.

35   The procedure for preparing amphoteric emulsions e.g.
15AA/60AMD/25 dimethylaminoethylacrylate (DMEA) /349 ppm

B906

HERC0076080

- 12 -

MBA, is repeated for the preparation of the anionic
emulsions with the exception that the concentration of the
individual monomers employed are adjusted accordingly.

Various monomers are polymerized in accordance with the
above procedure.  The results are set forth in Table I,
5  below.

10

15

20

25

30

35

/ 4

B907

HERC0076081

- 13 -

Table I

Preparation of Anionic Microbeads

| Example | Copolymer Compositions (Mole %) | | | MBA PPM | PS NM | SV mPa.S |
|---------|-----|-----|-------|---------|-------|----------|
|         | AMD | AA  | NaAPS |         |       |          |
| 1       | 70  | 30  | ---   | 349     | 130   | 1.19     |
| 2       | 40  | 60  | ---   | 1381    | 120   | 1.10     |
| 3       | 0   | 100 | ---   | 1985    | 80    | 1.35     |
| 4       | 70  | --- | 30    | 995     | ---   | 1.37     |
| 5       | 70  | --- | 30    | 10,086  | ---   | 1.15     |
| 6       | 70  | 30  | ---   | 1000    | 464   | ---      |
| 7       | 70  | 30  | ---   | 1000    | 149   | 1.02     |
| 8       | 70  | 30  | ---   | 1000    | 106   | 1.06     |

NaAPS = Sodium 2-Acrylamido-2-methylpropane Sulfonic Acid

PS = Number Average Particle Size in Nanometers

SV = Solution Viscosity (0.1% polymer in M NaCl, 25°C using a Brookfield UL adapter at 60 rpm

HERC0076082

- 14 -

<u>Example 9</u>

    In paper making processes it is found that the addition
of anionic microbeads, preferably with a high molecular
weight cationic polymer to a conventional paper making stock
increases the drainage rate of water from the paper.  The
5  following examples illustrate this utility but are not to be
construed to limit the invention in any manner whatsoever.

    A 70/30 hardwood/softwood bleached kraft pulp is used
containing 25% $CaCO_3$ for alkaline papermaking at a pH of 8.0
Drainage is a measure of the time required for a certain
10  volume of water to drain through the paper and is here
measured as a10X drainage.  (K. Britt, TAPPI <u>61</u>(4) p67
(1980).  Hand sheet are prepared on a Noble and Wood sheet
machine.  In the test examples, the linear cationic
copolymer is a 10 mole % of acryloxyethyltrimethylammonium
15  chloride (AETMAC) and 90 mole % of acrylamide (AMD) of
5,000,000 to 10,000,000 mol. wt. with a charge density of
1.2 meg./g. and SV-4.0 cps.  The anionic microbeads in Table
II are added separately to the thin paper stock.  The
cationic polymer is added to the test furnish in a "Vaned
20  Britt Jar" and subjected to 800 rpm stirring for 30 seconds.
The anionic microbead is then added and subjected to 800 rpm
stirring for 30 seconds and then drainage times are
measured.  The results of testing are set forth in Table II,
below.

25

30

35

B909

HERC0076083

- 15 -

Table II

Drainage Aid Test Data

| Example | Cationic Polymer | Dosage (lb/ton) | Anionic Polymer Microbead of Example No. | Dosage (lb/ton) | Drainage Time (Sec) |
|---------|------------------|-----------------|------------------------------------------|-----------------|---------------------|
| 6 | -0- | | -- | | 161.1 |
| 7 | 10 AETHAC/ 90 AMD | 2 | | | 116.9 |
| 8 | do | 2 | -1- | (0.5) | 75.8 |
| 9 | do | 2 | -1- | (1.0) | 72.1 |
| 10 | do | 2 | -1- | (2.0) | 84.3 |
| 11 | do | 2 | -2- | (0.5) | 66.3 |
| 12 | do | 2 | -2- | (1.0) | 72.4 |
| 13 | do | 2 | -2- | (2.0) | 74.7 |
| 14 | do | 2 | -3- | (0.5) | 78.8 |
| 15 | do | 2 | -3- | (1.0) | 74.1 |
| 16 | do | 2 | -3- | (2.0) | 80.2 |
| 17 | do | 2 | -4- | (0.5) | 95.0 |
| 18 | do | 2 | -4- | (1.0) | 86.6 |
| 19 | do | 2 | -4- | (2.0) | 95.5 |
| 20 | do | 2 | -5- | (0.5) | 119.7 |
| 21 | do | 2 | -5- | (1.0) | 121.8 |
| 22 | do | 2 | -5- | (2.0) | 111.4 |

B910

HERC0076084