## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C. A. No. 04-293 (KAJ) |
| v. | ) ) ) | **PUBLIC VERSION** |
| HERCULES INCORPORATED and CYTEC INDUSTRIES, INC., | ) ) ) | |
| Defendants. | ) | |

## HERCULES' REPLY BRIEF IN SUPPORT OF ITS MOTION
## FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

*Attorneys for Defendant*
*Hercules Incorporated*

Dated:  February 17, 2006
Public Version Dated:  February 27, 2006
721441

# TABLE OF CONTENTS

I.      Introduction.................................................................................................1

II.     Ciba Misdescribes The Prosecution History Of The '766 Patent ...........................1

III.    The Polymer In Perform® Is Admittedly Not An Integral Unit
        Which Can Be Separated From Any Emulsifier Present ......................................3

IV.     PerForm® SP9232 Does Not Infringe The '808 Patent
        Because It Does Not Contain A Cross-Linking Agent ........................................5

V.      Proper Construction Of "Cross-linked" And
        "Cross-linking Agent" Requires Polyfunctionality..........................................8

VI.     ███████████████████████████████████████████.......................11

VII.    Hercules PerForm® SP9232 Does Not Infringe The '808 Patent Because
        It Does Not Have The Requisite Cross-Linking Agent Content..........................12

VIII.   There Is No Genuine Material Dispute Of Fact That PerForm®
        SP9232 Does Not Have The Requisite Cross-Linking Agent Content..................14

IX.     Hercules' PerForm® SP9232 Does Not Infringe The '808 Patent Because
        It Does Not Contain A Polymeric Material Derived Solely From The
        Polymerization Of An Aqueous Solution Of At Least One Monomer .................15

X.      The Doctrine of Equivalents Is Not Applicable Here ......................................17

XI.     Conclusion ...............................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Advanced Display Systems, Inc. v. Kent State University,*
   212 F.3d 1272 (Fed. Cir. 2000) ..................................................................... 10

*Allen v. IBM Corp.,*
   No. 94-264-LON, 1997 U.S. Dist. LEXIS 8016 (D. Del. May 19, 1997) ....................... 12

*Chimie v. PPG Industries Inc.,*
   402 F.3d 1371 (Fed. Cir. 2005) ......................................................................... 4

*Cephalon, Inc. v. Barr Laboratories, Inc.,*
   389 F. Supp. 2d 602 (D. Del. 2005) ................................................................. 8-9

*Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,*
   868 F.2d 1251 (Fed. Cir. 1989) ....................................................................... 18

*Elkay Manufacturing Co. v. Ebco Manufacturing,*
   192 F.3d 973 (Fed. Cir. 1999) .......................................................................... 3

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
   344 F.3d 1359 (Fed. Cir. 2003) ................................................................. 16, 19

*Freedman Seating Co. v. American Seating Co.,*
   420 F.3d 1350 (Fed. Cir. 2005) ................................................................. 19, 20

*Gemstar-TV Guide International, Inc. v. International Trade Commission*
   383 F.3d 1352 (Fed. Cir. 2004) ......................................................................... 4

*Gentex Corp. v. Donnelly Corp.*
   69 F.3d 527 (Fed. Cir. 1995) ............................................................................ 1

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,*
   45 F.3d 1550 (Fed. Cir. 1995) ......................................................................... 15

*Graver Tank & Mfg. Co. v. Linde Air Products Co.,*
   339 U.S. 605 (1950) ...................................................................................... 18

*K-2 Corp. v. Salomon S.A.,*
   191 F.3d 1356 (Fed. Cir. 1999) ..................................................................... 3, 4

*Lighting World, Inc. v. Birchwood Lighting, Inc.,*
   382 F.3d 1354 (Fed. Cir. 2004) ....................................................................... 18

*Nestier Corp. v. Menasha,*
   739 F.2d 1576 (Fed. Cir. 1984) ....................................................................... 18

*Network Commerce, Inc. v. Microsoft Corp.,*
   422 F.3d 1353 (Fed. Cir. 2005) ....................................................................... 17

*Nystrom v. Trex Co., Inc.,*
   424 F.3d 1136 (Fed. Cir. 2005) .................................................................................. 8-9

*Omega Engineering, Inc. v. Raytec Corp.,*
   334 F.3d 1314 (Fed. Cir. 2003) .................................................................................. 4

*Phillips Petroleum Co. v. Huntsman Polymers Corp.,*
   157 F.3d 866 (Fed. Cir. 1998) .................................................................................. 11

*Southwall Technologies, Inc. v. Cardinal IG Co.,*
   54 F.3d 1570 (Fed. Cir. 1995) .................................................................................. 4

*Springs Window Fashions v. Novo Industries, L.P.,*
   323 F.3d 989 (Fed. Cir. 2003) .................................................................................. 4

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.,*
   279 F.3d 1357 (Fed. Cir. 2002) .................................................................................. 10

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,*
   520 U.S. 17 (1997) .................................................................................. 17, 19

*Zenith Laboratories, Inc. v. Bristol-Myers Squibb,*
   19 F.3d 1418 (Fed. Cir. 1994) .................................................................................. 1, 16

**Statutes**
35 U.S.C. § 112 .................................................................................. 9

I.    **Introduction**

Hercules files this Reply Brief in response to Ciba's Opposition to Hercules' Motion for Summary Judgment of Non-Infringement (D.I. 317). Ciba's Opposition Brief ("Opp. Br.") did not raise any genuine issues of material fact that would prevent granting Hercules' motion for summary judgment of non-infringement. Rather, Ciba spends most of its brief arguing claim construction issues, which are legal issues that do not raise a genuine issue of material fact. *See, e.g., Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed. Cir. 1995). At various points in its Opposition Brief, Ciba states a number of things that it considers to be disputed, often misstating or mischaracterizing the facts in an apparent attempt to bait Hercules into arguing over these contentions. However, none of the things Ciba raises are material to the basis for granting Hercules' motion. ████████████████████████████████████████ ████████████████████████████████████████ Yet the Federal Circuit has instructed that "it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment . . . ." *Zenith Labs. v. Bristol-Myers Squibb*, 19 F.3d 1418, 1423 (Fed. Cir. 1994).

II.    **Ciba Misdescribes The Prosecution History Of The '766 Patent**

Ciba misdescribes the prosecution history of the '766 patent. [Opp. Br. at 11-12] Contrary to Ciba's argument, the claims were narrowed to require that the microbead be cross-linked to overcome Probst. Original claim 1 permitted the polymeric microbead to be either cross-linked or non-cross-linked. [Herc. Ex. L[1] at HERC0075963 ("the microbead being less than about 750 nanometers in diameter if cross-linked and less than 60 nanometers in diameter if

---

[1] Throughout this brief, "Herc. Ex. __" refers to exhibits from Hercules' Opening Brief In Support Of Its Motion For Summary Judgment Of Non-Infringement (D.I. 290). Similarly "Ciba Ex. __" refers to exhibits from Ciba's Motion for a Partial Summary Judgment That the Accused PerForm® System Infringes U.S. Patent Nos. 5,167,766 and 5,171,808 (D.I. 278). Citations to "B__" refer to the Appendix of Hercules' Answering Brief In Opposition to the Motion of Ciba for Partial Summary Judgment That the Accused PerForm® System Infringes U.S. Patent Nos. 5,167,766 and 5,171,808 (D.I. 309).

non-cross-linked")]  The Examiner, however, rejected the patent application over Probst.  [*Id.* at HERC0076011]  To overcome this rejection, applicants amended the claims to delete the limitation that the microbead could be non-cross-linked.  [*Id.* at HERC0076016]  This had the effect of narrowing the claimed method to just the use of a cross-linked microbead.

Thus, ██████████████████████████████████████████████████████████
██████████████████████████████████████████████  Although the word "cross-linked" was in the '766 claims from the beginning of the prosecution, it was initially used to describe one of two kinds of permitted microbeads.  After the amendment, however, it became the only kind of permitted microbead.  Thus, the claims were narrowed to overcome Probst by limiting the claimed microbead to just a cross-linked microbead.[2]

Additionally, Ciba's summary of the applicants' arguments for distinguishing Probst is incomplete.  [Opp. Br. at 12]  Ciba fails to include the applicants' argument that "[t]he Probst product . . . is a nonionic hydrophobic polymer mixture stabilized by cationic surfactants" whereas "[a]pplicants' microbead . . . is an integral unit which can be separated from any emulsifier present if made in emulsion form."  [Herc. Ex. L at HERC0076020 (emphasis deleted); *see also id.* at HERC0076038 (repeating argument)]

Ciba argues that ██████████████████████████████████████  This argument is irrelevant to the applicants' disclaimer concerning Probst.  Whether or not Probst involved cross-linking has no bearing on the applicants' statements during prosecution that their "microbead does not require the use of an emulsifier," but "is an integral unit which can be separated from any emulsifier present." ██████████████████████████████████████
██████████████████████████████████████████  The '766 applicants amended their claims to

---

[2] ██████████████████████████████████████████████████████████  This is not so.  Rather, as the Examiner pointed out, the small size of the microbeads was taught by Probst. [Herc. Ex. L at HERC0076011 (Probst "teaches that the polymers, i.e. microbeads are 20-150 [nanometers] (column 5, lines 2-6)")]

require that the microbead be "cross-linked" and discussed ionicity as well, but the critical point here is that the applicants made repeated clear statements about their microbead being an "integral unit" and separable from emulsifiers in distinguishing their invention from the prior art. That there may have been other ways of arguing for a patentable distinction over Probst is not part of the inquiry. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("That the applicant could possibly have added terms other than 'permanently' to create a patentable distinction is simply irrelevant to our claim construction task."); *see also Elkay Mfg. Co. v. Ebco Mfg., Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999).

It is Ciba who is distorting. Hercules' claim construction simply takes into account the applicants' disclaimer of polymeric materials that are not separable "from any emulsifier present if made in emulsion form," based on the applicants' clear and repeated statements to that effect.

### III. The Polymer In PerForm® SP9232 Is Admittedly Not An Integral Unit Which Can Be Separated From Any Emulsifier Present



Rather, if Hercules' claim construction is correct, then judgment for

---

[3] Although Ciba continually refers to the applicants for the '808 and '766 patents as "Cytec applicants," this is incorrect. The American Cyanamid Company was the assignee of the patents-in-suit throughout their prosecution.

Hercules is dictated as a matter of law and summary judgment of no infringement of the '766

patent should be granted.

Recognizing its dilemma, ███████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████  The holding in *Gemstar*, however, does

not support Ciba. In the prosecution history in *Gemstar*, the applicant "stated only that the . . .

reference was incapable of performing a certain type of search, not that the scope of the claimed

invention was limited to that particular type of search." *Gemstar*, 383 F.3d at 1375. In contrast,

here applicants argued that the scope of the claimed invention was limited to a microbead that "is

an integral unit which can be separated from any emulsifier present if made in emulsion form."

[Herc. Ex. L at HERC0076020] Thus, *Gemstar* is inapposite. Rather, the cases cited in

Hercules' Opening Brief at pages 17-34 regarding prosecution history disclaimer are controlling.

See *Springs Window Fashions v. Novo Indus., L.P.*, 323 F.3d 989, 992-93 (Fed. Cir. 2003);

*Omega Eng'g, Inc. v. Raytec Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *Chimie v. PPG Indus.

Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d

1570, 1575-78 (Fed. Cir. 1995); *K-2*, 191 F.3d at 1364-65.

Ciba does not even attempt to distinguish *Omega, Chimie, Southwall*, and *K-2*. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████  To the contrary, the original '766 patent claims were broad enough to cover

use of either a cross-linked or non-cross-linked microbead. The claims were subsequently

amended to cover only the use of a cross-linked microbead. Moreover, in connection with that

amendment applicants explained that by the term "microbead" they meant "an integral unit which

can be separated from any emulsifier present," as explained above.

As the Federal Circuit explained in *Springs Window*, "[t]he public notice function of a

patent and its prosecution history requires that a patentee be held to what he declares during the

prosecution of his patent." *Springs Window*, 323 F.3d at 995. Consequently, Ciba must be held

to what the applicants declared during prosecution, i.e., that "microbead" meant "an integral unit which can be separated from any emulsifier present if made in emulsion form," ███████

████████████████████

████████████████████ Ciba then cites a number of facts that it apparently disagrees with, but none have anything to do with whether PerForm® SP9232 is an "integral unit which can be separated from any emulsifier present," as Hercules' claim construction properly requires. Thus, Ciba fails to raise any genuine issues of material fact that would prevent a grant of summary judgment that PerForm® SP9232 does not infringe the '766 patent because it is not a "cross-linked polymeric microbead" as that term was defined during prosecution of the '766 patent.

**IV.    PerForm® SP9232 Does Not Infringe The '808 Patent Because It Does Not Contain A Cross-Linking Agent**

The asserted claims of the '808 patent all require "cross-linked" microparticles having a specified "cross-linking agent content." ████████████████████

████████████ However, during prosecution of the '808 patent, the applicants successfully overcame the Examiner's rejection over the prior art Durand reference by arguing that this prior art "fail[ed] to indicate the incorporation of a cross-linking agent into the polymer produced therein." [Herc. Ex. I at CIBA000525-26] The applicants explained that the oleate surfactants referred to in Durand were not cross-linking agents, as the Examiner had suggested, because they did not "contain two functional groups," citing their own specification for the principle that a "polyfunctional crosslinking agent comprises molecules having either at least two double bonds, a double bond and a reactive group, or two reactive groups." [Id. at CIBA000526 (citing "page 7, lines 11-26 of the instant specification," i.e., CIBA000486)][4]

---

████████████████████

(continued on next page)



(continued from previous page)



Ciba urges the Court

Yet, as explained above, the applicants' assertions about the absence of polyfunctionality in the oleate surfactants was precisely how the applicants argued there was no cross-linking agent present.

Ciba then tries

This is not what happened.  Neither the applicants nor the Examiner prefaced their arguments in the manner Ciba suggests.  [*See* Herc. Ex. I at CIBA000525-26]

Also wrong is Ciba's assertion

████████████████████████████████ Ciba's argument presupposes that the

applicants were only talking about functional groups in the form of units of unsaturation. To the

contrary, in refuting the Examiner's rejection because "Durand etal fail to indicate the

incorporation of a cross-linking agent into the polymer produced therein," the applicants noted

that "a cross-linking agent must contain two functional groups to act as such," immediately

thereafter citing to their own specification for the principle that a "polyfunctional crosslinking

agent comprises molecules having either at least two double bonds, a double bond and a reactive

group, or two reactive groups." [Herc. Ex. I at CIBA000526] Thus, the applicants did not limit

their argument to only double bond functional groups (i.e., units of unsaturation).

**V.    Proper Construction Of "Cross-linked" And
        "Cross-linking Agent" Requires Polyfunctionality**

████████████████████████████████████████

████████████████████████████████ Ciba's proposed construction,

however, is inconsistent with the '766 and '808 patent specifications which explain that

"[p]olymerization of the monomers is conducted in the presence of a polyfunctional crosslinking

agent" and that "[t]he polyfunctional crosslinking agent comprises molecules having either at

least two double bonds, a double bond and a reactive group, or two reactive groups." [Herc. Ex.

A, col. 4, lines 45-50; see also, Herc. Ex. B, col. 6, lines 36-42 (using similar language)]

Contrary to Ciba's argument, this is not a discussion of just a preferred embodiment. Rather, it

comes under the heading "DETAILED DESCRIPTION OF THE INVENTION" (Herc. Ex. A,

col. 3, line 40-col. 6, line 45) and not under the heading "DESCRIPTION OF THE PREFERRED

EMBODIMENTS" (Id. at col. 6, line 46-col. 9, line 39) in the '808 patent.[6] The construction of

"cross-linked" is clearly limited by the scope of both patents here as in the *Cephalon* and *Nystrom*

---

[6] In the '766 patent specification, the two headings are combined into a single heading, but
the relevant disclosure is found in the same context as in the '808 patent specification, i.e., where
the invention is being generally described and not with the specific preferred examples. *See*
Herc. Ex. B, col. 4, line 1-col. 29, line 36.

8

cases.[7]  Ciba's proposed claim construction is also inconsistent with the applicants' '808 prosecution history argument that the oleate surfactants of Durand were not cross-linking agents because they were only monofunctional.  [Ex. 1 at CIBA000526]

Relying on

Ciba, however, neglects to mention that the quoted sentence from the European '780 patent is not part of the intrinsic record of the patents-in-suit. To the contrary, the discussion of the European '780 patent in the patents-in-suit only identifies crosslinking with a polyfunctional crosslinking agent. [Herc. Ex. B, '766 patent at col. 2, lines 47-52 ("**EP 0,202,780 describes** the preparation of cross-linked, cationic, polyacrylamide beads by conventional inverse emulsion polymerization techniques. **Crosslinking is accomplished by the incorporation of difunctional monomer**, such as [MBA], **into the polymer chain**."); Herc. Ex. A, '808 patent at col. 1, lines 22-27 ("**EP 0,202,780 describes** the preparation of polymeric, crosslinked, cationic acrylamide polymer beads by conventional inverse emulsion polymerization techniques. **Crosslinking is accomplished by the incorporation of a difunctional monomer**, such as [MBA], **into the polymer**.") (emphasis added)]  Indeed, it was crosslinking with a polyfunctional crosslinking agent that the patents-in-suit were referring to when they reported that

---

[7] *See Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1145-46 (Fed. Cir. 2005) (In the intrinsic record, "Nystrom consistently used the term 'board' to refer to wood cut from a log. . . . Nystrom, however, seeks to broaden the term 'board' to encompass relatively obscure definitions that are not supported by the written description or prosecution history. Broadening of the ordinary meaning of a term in the absence of support in the intrinsic record indicating that such a broad meaning was intended violates the principles articulated in *Phillips*"); *Cephalon, Inc. v. Barr Labs.*, 389 F. Supp. 2d 602, 606 (D. Del. 2005) ("Here, the inventors consistently referred to the present invention as teaching the formation of drug-containing lollipops through the compression of 'dry' or 'solid' powders. There is nothing in the written description or the prosecution history to suggest that they intended the disputed phrases to cover methods or articles using free liquid. Therefore, it would be improper for this Court to broaden the inventor's use of the disputed phrases and construe them to encompass the use of free liquid.").

"[t]his crosslinking technology is well known in the art." [Herc. Ex. B, col. 2, lines 52-53; Herc. Ex. A, col. 1, lines 27-28]

Contrary to Ciba's argument, the disclosure of "ionic crosslinking" in the European '780 patent was not incorporated by reference into the patents-in-suit. Rather, the PTO's Manual of Patent Examining Procedure ("MPEP") explains that in order to comply with 35 U.S.C. § 112, a patent application can only incorporate "essential material" by referring to a **United States** patent or an allowed **United States** application. [*See* MPEP § 608.01(p)(B) (Ex. 15 from Hercules' Responsive Brief on Claim Construction (D.I. 308))] The European '780 patent is neither—it is a foreign patent. Furthermore, the case law also holds that to be effective, the incorporating statement must clearly identify the specific subject that is incorporated and where it is found. *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) ("To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents."). Hence, information from the European '780 patent beyond that described in the specifications of the patents-in-suit is not available to Ciba to broaden their disclosure. Only cross-linking with a polyfunctional cross-linking agent is thus incorporated from the '780 patent.

By relying on portions of the European '780 patent that are not described in the specification and were not considered by the Examiner during prosecution, Ciba attempts to subvert the intrinsic record with inconsistent extrinsic evidence. This is improper. *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1371 n.4 (Fed. Cir. 2002).

████████████████████████████████████████ Such extrinsic evidence is at

odds with the intrinsic evidence of the specification and is entitled to no weight. *See, e.g.,*

*Phillips Petroleum Co. v. Huntsman Polymers Corp.,* 157 F.3d 866, 870 (Fed. Cir. 1998).

████████████████████████████████████████

Hercules' proposed claim constructions define a cross-linking agent as "[a] chemical

agent that is polyfunctional in that it has at least two double bonds, a double bond and a reactive

group, or two reactive groups to link polymer chains together." As explained above and in

Hercules' claim construction briefs, this definition is dictated by the intrinsic record of the

patents-in-suit.

Ciba urges that even if the patents-in-suit were so limited, "there are genuine issues of

material fact in dispute preventing summary judgment," ████████████████████████████

████████████████████████████████ However, Ciba submits no admissible evidence supporting this

assertion.

████████████████████████████████████████



Thus, Dr. Gilbert's opinion is speculative and inadmissible. *Allen v. IBM Corp.*, No. 94-264-LON, 1997 U.S. Dist. LEXIS 8016, at *133 (D. Del. May 19, 1997) (Ex. A hereto) ("an expert opinion must be based on facts, rather than premised on unsupported assumptions and speculation").

Thus, if Hercules' claim constructions are correct and a cross-linking agent must be polyfunctional, then judgment for Hercules is dictated as a matter of law for this reason as well.

## VII.    Hercules' PerForm® SP9232 Does Not Infringe The '808 Patent Because It Does Not Have The Requisite Cross-Linking Agent Content

To be complete, the claim notes that this content is "based on the monomeric units present in the polymer." Also, it is the "microparticles" which the claim refers to as "having . . . a cross-linking agent content . . . ." [Herc. Ex. A, col. 9, lines 51-60] Thus, the claim as read in its entirety plainly means that the recited amount of cross-linking agent is contained in the "polymeric microparticle," rather than the amount initially added to the aqueous monomer solution to synthesize the microparticle.

The discussion in the '808 specification of how the cross-linking monomer, MBA, becomes incorporated into the polymer chains according to well known cross-linking technology (*see id.* at col. 1, lines 26-30) likewise supports this construction, because MBA is used during

12

synthesis of all the emulsion preparations of the '808 patent (*see id.* at Tables I and III). The prosecution history also indicates that the cross-linking agent must be incorporated into the polymeric microparticle in the critical amount. In responding to the rejection over Durand where the Examiner contended that Durand's oleate surfactants contained double bonds and could act as cross-linkers, applicants argued that "Durand etal fail to indicate *the incorporation of a cross-linking agent into the polymer produced therein.*" [Herc. Ex. I at CIBA000526 (emphasis added)] As Ciba mentions, applicants later made a similar statement in distinguishing another piece of prior art, Whittaker. [Opp. Br. at 35-36] In accordance with the claim language and their specification, applicants argued that their claimed invention was distinguishable from both Whittaker and Durand because these references did not "incorporate" critical amounts of cross-linking agent "into the polymer." [Herc. Ex. H at HERC0076113]

In an effort to discount the applicants' assertions, ███████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████ At the time of the their statements, however, the applicants were trying to overcome rejections involving Durand and Whittaker based on the cross-linking agent content limitation of their claims. To say that this "was not even an issue" is wrong. The applicants' plain statements about "the need to incorporate cross-linking agent into the polymer in a critical amount" bear this out. [Herc. Ex. H, HERC0076113]

In disputing Hercules' claim construction, ███████████████████████████████
███████████████████████████████████████████████████████████ In support, Ciba takes half a sentence from the specification out of context. [*Id*] In the complete sentence, the '808 patent indicates that the amount of cross-linking agent "employed" also becomes the amount incorporated into the resulting polymer:

> Preferably at least about 4 molar parts per million of crosslinking agent, based on the monomeric units present, are employed to *induce* sufficient crosslinking and preferred is a crosslinking agent *content* of from about 4 to about 6000 molar parts per million, more preferably about 20-4000 and most preferably about 50-2000 molar parts per million.

13

(Herc. Ex. A, col. 4, line 64-col. 5, line 3 (emphasis added).)  Also contrary to Ciba's assertions, the Tables of the '808 patent discuss the "results" of the polymerization reactions and list attributes of the resulting "copolymer compositions" (*see id.* at Tables I and III), and the patent never states ███████████████████████████████████████████████

███████████████████████████████████  In short, nowhere does the specification contradict the plain claim language "said microparticles having . . . a cross-linking agent content of about 4 molar parts to about 4000 parts per million, based on the monomeric units present in the polymer." ██████

██████████████  Rather during the prosecution history, applicants merely assumed that "the proportion of cross-linking monomer employed" in Makhlouf was the same as the amount of cross-linking agent incorporated into the resulting microparticles.████████████████████

██████████████████████████  In any event, it does not change the plain meaning of the '808 patent claim that requires the "microparticles" have the requisite "cross-linking agent content."

## VIII.    There Is No Genuine Material Dispute Of Fact That PerForm® SP9232 Does Not Have The Requisite Cross-Linking Agent Content



But this

does not create a genuine dispute of material fact as to whether PerForm® SP9232 has a cross-linking agent content between 4 and 4000 ppm. Rather, to successfully oppose a motion for summary judgment, "[t]here must be sufficient substance, other than attorney argument, to show that the issue requires trial." *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995) (citations omitted). Here, Ciba's attorney argument about the alleged cross-linking agent content of Hercules' PerForm® SP9232 does not create a triable issue of fact. For this reason as well, Hercules' motion for summary judgment of no infringement should be granted.

IX.    **Hercules' PerForm® SP9232 Does Not Infringe The '808 Patent Because It Does Not Contain A Polymeric Material Derived Solely From The Polymerization Of An Aqueous Solution Of At Least One Monomer**

All the asserted claims of the '808 patent contain the limitation requiring "cross-linked . . . microparticles derived solely from the polymerization of an aqueous solution of at least of one monomer. . . ." This limitation was added to the claims to obtain allowance of the '808 patent. [Ex. H at HERC0076144-46]



Not only is this not how the claim reads, but the Examiner repeatedly rejected this construction during prosecution of the '808 patent. [Herc. Ex. I at CIBA000531-32; Herc. Ex. H at HERC0076118-19, HERC0076142]

---

[9] Because there were two phases in the '808 patent's microemulsion—water and oil—the microparticles cannot be created in the oil phase, by the plain meaning of the claim language.

Ciba is simply wrong when it states ████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

To the contrary, the limitation, "derived solely from water-soluble monomers," was added in the July 22, 1991 Preliminary Amendment. [Herc. Ex. H at HERC0076111] This amendment was not successful in distinguishing the prior art. Rather, in the next Office Action, the Examiner repeated the rejection over the prior art and added one for indefiniteness. [*Id.* at HERC0076117-20] Moreover, indefiniteness under § 112 is itself a substantive rejection that may give rise to a prosecution history estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (en banc) ("[A] narrowing amendment made to comply with any provision of the Patent Act, including § 112, may invoke an estoppel.").

To urge that the "derived solely" limitation is satisfied, █████████████████████
███████████████████████████████████████████████████ This is impermissible. *See Zenith*, 19 F.3d at 1423. Rather, "the only proper comparison is with the claims of the patent." [*Id.* (citations omitted)] Comparing PerForm® SP9232 to the claims of the patent, the "derived solely" limitation is not met. ████████████████████████████████
███████████████████████████████████████████████████████

Ciba also tries to generate a factual dispute by citing to the testimony of Hercules' witnesses. ████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████

███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

(continued on next page)

16

X. **The Doctrine of Equivalents Is Not Applicable Here**

Ciba also argues that the Defendants infringe the '808 and '766 patents under the doctrine of equivalents. Ciba does not contest that its experts did not provide in their expert reports the "particularized testimony and linking argument" required to invoke the doctrine of equivalents. *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005); *see* Hercules' Opening Brief for Summary Judgment of Non-Infringement at 34-36 (D.I. 290). Instead, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This effort flies in the face of the Supreme Court's recent reining in of the doctrine of equivalents in *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem Co.*, 520 U.S. 17, 29 (1997). To reconcile its precedent, the Court first explained that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention." *Id.* The Court stated that as a result, "the doctrine of equivalents must be applied to the **individual elements of the claim**, not to the invention as a whole." [*Id.* (emphasis added)]

Ciba's doctrine of equivalents analysis does not address the individual elements of the claims. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And there is no discussion of why there is no substantial difference between "microparticles having . . . a cross-linking agent

---

(continued from previous page)
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[11] Nor does Ciba try to analyze the doctrine of equivalents for each element of the claims under the "function-way-result" test, which also must be done on an element-by-element basis. *See Warner-Jenkinson*, 520 U.S. at 40.

content of about 4 molar parts to about 4000 parts per million" and microparticles having some other cross-linking agent content. Similarly, for the '766 patent, there is no discussion of why there is no substantial difference between the limitation "cross-linked polymeric microbead" and the non-crosslinked polymer/emulsifier combination in PerForm® SP9232. Instead, Ciba only generally discusses equivalents with respect to the accused product as a whole, a practice explicitly rejected by the Supreme Court.

This comparison between commercial products is also improper. *See Nestier Corp. v. Menasha*, 739 F.2d 1576, 1579 (Fed. Cir. 1984) ("[E]quivalence must be established with respect to the claims of the patent, not . . . for the commercial structures involved.") Ciba also fails to put forth evidence on determining equivalents from the perspective of one of ordinary skill in the art, providing another basis for granting Hercules' motion for summary judgment. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1357 (Fed. Cir. 2004) ("The defect in Lighting World's case was its failure to present evidence regarding the perspective of one of skill in the art . . . . Thus, we sustain the district court's entry of JMOL of no infringement under the doctrine of equivalents.").

However, in *Corning* the substituted element was found to perform "substantially the same function in substantially the same way to obtain the same result" as the claimed element. *Corning*, 868 F.2d at 1258 (quoting *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950)). Ciba does not attempt to make such a showing here. Rather, Ciba only cites to evidence of a similar result. This does not establish the first two prongs of the doctrine of equivalents test, i.e., that the substituted element performs substantially the same function in substantially the same way as the claimed element. *Graver Tank*, 339 U.S. at 608.



The doctrine of equivalents is also precluded for the '766 patent by the doctrine of prosecution history estoppel. Under the doctrine of prosecution history estoppel, a narrowing amendment made for a substantial reason relating to patentability precludes application of the doctrine of equivalents. *Festo*, 344 F.3d at 1366-67.

[Herc. Ex. L at HERC0076016] Thus, this was a narrowing amendment made for a substantial reason relating to patentability. Accordingly, the doctrine of prosecution history applies and infringement under the doctrine of equivalents is precluded with respect to the '766 patent's "cross-linked polymeric microbead" limitation for this reason as well.

Furthermore, under the all limitation rule, "an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citing *Warner-Jenkinson*, 520 U.S. at 29).



In response to this argument, Ciba states This is wrong. As explained above, the added language overcame both prior art and § 112 rejections. [*See supra* at pages 15-16]

Similarly, amendment (in the '766 patent) and arguments (in the '808 patent) distinguished the prior art cited by the Examiners and the claimed inventions on the basis that the prior art materials were not crosslinked. Finding that a non-crosslinked material is equivalent to the claimed cross-linked materials would thus entirely vitiate the cross-linking limitations that were so critical in obtaining allowance of the patents-in-suit. Such findings of equivalence are therefore precluded by the "all limitations rule" as well. *Freedman*, 420 F.3d at 1358.

## XI.    Conclusion

For all of the reasons stated above and in its Opening Brief, Hercules' respectfully requests that its motion for summary judgment of non-infringement be granted.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ford F. Farabow, Jr.
Joann M. Neth
Eric J. Fues
A. Neal Seth
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

Dated: February 17, 2006
Public Version Dated: February 27, 2006
721441

By:  */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant*
*Hercules Incorporated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 27, 2006, the attached

document was hand-delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

Frederick L. Cottrell, III
Jeffrey L. Moyer
Chad M. Shandler
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE 19899

I hereby certify that on February 27, 2006, I have Electronically Mailed

the foregoing document(s) to the following non-registered participants:

Gordon R. Coons
Eley O. Thompson
Gregory C. Bays
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601-6780
gcoons@leydig.com
ethompson@leydig.com
gbays@leydig.com

Thomas L. Creel, P.C.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022
tcreel@goodwinprocter.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

672306