# EXHIBIT 1

## III.    STATEMENT OF FACTS

### A.    Undisputed Facts

#### 1.    Parties

1.      Plaintiff Ciba Specialty Chemicals Corporation ("Ciba") is a Delaware corporation having a principal place of business in Tarrytown, New York.

2.      Defendant Hercules Inc. ("Hercules") is a Delaware corporation having a principal place of business in Wilmington, Delaware.

3.      Defendant Cytec Industries, Inc. ("Cytec") is a Delaware corporation having a principal place of business in West Patterson, New Jersey.

4.      Ciba, Hercules and Cytec are in the chemical business. The chemicals that are accused of infringement in this case are retention and drainage aids which are used in the papermaking industry.

#### 2.    The Patents-In-Suit

5.      On December 1, 1992, the United States Patent Office issued United States Letters Patent No. 5,167,766, entitled "Charged Organic Polymer Microbeads In Paper Making Process" ("the '766 patent") to American Cyanamid. The named inventors are Dan S. Honig and Elieth Harris.

6.      The '766 patent issued from Application No. 540,667, filed on June 18, 1990, which claims priority as a continuation-in-part to Application No. 536,382 filed on June 11, 1990.

7.      On December 15, 1992, the United States Patent Office issued United States Letters Patent No. 5,171,808, entitled "Cross-Linked Anionic And Amphoteric Microparticles" ("the '808 patent") to American Cyanamid. The named inventors are Roderick G. Ryles, Dan S. Honig, Elieth Harris and Roger E. Neff.

Exhibit 1 Page 1

RLF1-3025221-1

Statement of Undisputed Facts

8.      The '808 patent issued from Application No. 803,120, filed on June 22, 1991 which claims priority as a continuation to Application No. 535,626 filed on June 11, 1990.

9.      The inventors of the '766 and '808 patents were employed by American Cyanamid Company ("American Cyanamid"), the chemical business of which became Cytec. As used herein, Cytec refers to either the defendant Cytec Industries, Inc. or American Cyanamid or both, as appropriate in the given circumstances.

10.     At one time, Cytec was the owner of the '766 and '808 patents.

11.     Cytec has known of the '766 and '808 patents since their issuance.

12.     Hercules (through its predecessor Betz PaperChem) has known of the '766 and '808 patents since at least 1993.

### 3.      Commercial Products

13.     Beginning in around the mid-1990s, Cytec manufactured and sold retention and drainage aid products known as Polyflex® to the papermaking industry.

14.     The Polyflex® products were and still are often sold in combination with other retention and drainage aid products.

15.     At least some of the '808 patent claims cover the Polyflex® CP.3 product and at least some of the '766 patent claims cover the use of Polyflex® CP.3 in papermaking applications.

16.     Cytec appointed Hercules as a non-exclusive global distributor of Polyflex® in 1998. It also appointed Buckman as a non-exclusive global distributor of Polyflex® in 1998.

17.     Hercules commercially introduced a retention and drainage aid product known as PerForm® SP9232 in 2002.

Exhibit 1 Page 2

## Statement of Undisputed Facts

18.    The PerForm® SP9232 product is sold to papermakers often with other retention and drainage aid products.

**Exhibit 1 Page 3**

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 04-293 (KAJ) |
| | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| HERCULES, INC. and CYTEC INDUSTRIES, INC., | ) ) ) | |
| Defendants. | ) | |

## EXHIBIT 2
### CIBA'S STATEMENT OF CONTESTED ISSUES OF FACT AND EXPECTED PROOFS <u>ON ISSUES FOR WHICH CIBA HAS THE BURDEN OF PROOF</u>

## CIBA'S STATEMENT OF CONTESTED ISSUES OF FACT AND EXPECTED PROOFS ON ISSUES FOR WHICH CIBA HAS THE BURDEN OF PROOF

Ciba respectfully submits the following list of contested issues of fact and expected proofs. In addition to the items identified below, Ciba intends to prove the matters identified in its interrogatory answers, expert reports, summary judgment briefs and expert depositions. For example, the evidence Ciba anticipates offering through its experts is disclosed in their respective expert reports, which are incorporated herein by reference. Ciba also intends to offer proof on the issues of law identified in the Pretrial Order. Ciba also intends to offer proof in rebuttal to evidence offered by Hercules and Cytec. Ciba reserves the right to supplement this statement in response to issues raised by Hercules and Cytec.

### A.    Infringement

If the Court denies the parties' summary judgment motions relating to infringement, the Jury must decide whether Defendants directly infringed, contributed to or induced infringement of the '766 patent and/or the '808 patent.

#### 1.    Law of Infringement

The determination of patent infringement requires a two-step analysis. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002). First, the Court must determine as a matter of law the meaning of the patent claims. *Id.* Second, the Jury compares the properly construed claims to the accused device or method, to see whether the device or method contains all of the limitations. *Id.* "A patent is infringed if any claim is infringed…for each claim is a separate statement of the patented invention." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995) (citation omitted). An accused device cannot escape infringement by merely adding additional elements that are not in the claim. *Arnstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984). Likewise, "an accused method 'does not avoid

Exhibit 2 page 1

## Ciba's Statement of Contested Issues of Fact and Expected Proofs on
## Issues for which Ciba has the Burden of Proof

literally infringing a method claim...simply because it employs *additional* steps'". *Dow Chem.*

*Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1380 (Fed. Cir. 2001) (Court's emphasis).

"[A] product or process that does not literally infringe upon the express terms of a patent

claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the

accused product or process and the claimed elements of the patented invention." *Warner-*

*Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). The essential inquiry in

determining infringement under the doctrine of equivalents is: "Does the accused product or

process contain elements identical to or equivalent to each claimed element of the patented

invention." *Id.* at 40. The doctrine of equivalents requires an element-by-element comparison of

the accused product or process and the claim. *Id.* "An element in the accused product is

equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of

ordinary skill in the art." *Eagle Comptronics, Inc. v. Arrow Communications Labs., Inc.*, 305

F.3d 1303, 1315 (Fed. Cir. 2002). To infringe a claim under the doctrine of equivalents, an

accused device or process must include an equivalent for each literally absent claim limitation.

*Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1369 (Fed. Cir. 2001).

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35

U.S.C. § 271(b). Liability for inducing infringement requires a showing that the conduct being

induced constitutes direct infringement and that the entity inducing the infringement actively and

knowingly aided and abetted the direct infringement of the patent. *Water Techs. Corp. v. Calco*

*Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). Direct infringement may be inferred from

circumstantial proof. *See Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed.

Cir. 1986). Similarly, "[w]hile proof of intent is necessary, direct evidence is not required;

Exhibit 2 page 2

### Ciba's Statement of Contested Issues of Fact and Expected Proofs on
### Issues for which Ciba has the Burden of Proof

rather, circumstantial evidence may suffice" to show inducement. *Water Techs. Corp.*, 850 F.2d

at 668.

A method patent is literally infringed by the execution of the steps. Defendants are

jointly liable when they induce the execution of the steps of a method patent. *E. I. DuPont de*

*Nemours Co. v. Monsanto Co.*, 903 F.Supp. 680, 733–35 (D. Del. 1995), *aff'd*, 92 F.3d 1208

(Fed. Cir. 1996) (unpublished); *see also McDermott v. Omid Intern.*, 723 F. Supp. 1228 (S.D.

Ohio 1998), *aff'd*, 883 F.2d 1026 (Fed. Cir. 1989) (unpublished).

"Whoever offers to sell or sells within the United States…a material or apparatus for use

in practicing a patented process, constituting a material part of the invention, knowing the same

to be especially adapted for use in an infringement of such patent, and not a staple article or

commodity of commerce suitable for substantial noninfringing use, shall be liable as a

contributory infringer." 35 U.S.C. § 271(c). There can be no contributory infringement in the

absence of direct infringement, but direct evidence of direct infringement is not necessary. *See*

*Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 803 F.2d 1170, 1173 (Fed. Cir.

1986).

Infringement requires proof by a preponderance of the evidence. *Seal-Flex, Inc. v.*

*Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). The burden is on the

patentee. "To show infringement of a patent, a patentee must supply sufficient evidence to prove

that the accused product or process contains, either literally or under the doctrine of equivalents,

every limitation of the properly construed claims." *Id.*

In sum, after the Court construes various terms of the patents in suit, the Jury must

determine whether the disputed elements of the properly construed claims read on the accused

**Exhibit 2 page 3**

### Ciba's Statement of Contested Issues of Fact and Expected Proofs on Issues for which Ciba has the Burden of Proof

products and methods. Ciba bears the burden of proof on this issue. Ciba must meet this burden by proof amounting to a preponderance of the evidence.

### 2.    The '766 Patent

Ciba will prove that Hercules and Cytec have infringed the '766 patent as set forth below.

Ciba contends that Hercules and Cytec, jointly and severally, literally infringe claims 1, 3, 5, 9, 11, 13, 17, 21, 23 and 25 of the '766 patent through their manufacture, sale to papermakers and use in papermaking applications of the PerForm® SP 9232 product. Ciba contends that Defendants, jointly and severally, directly infringe the asserted claims of the '766 patent. For example, Ciba will offer evidence that Defendants, jointly and severally, directly infringe the asserted claims of the '766 patent by participating in execution of the patented process at papermaking facilities. Ciba intends to offer evidence that the use of the PerForm® SP9232 product in papermaking applications meets each of the limitations of the asserted claims.

Ciba further contends that Defendants, jointly and severally, indirectly infringe the asserted claims of the '766 patent by inducing others to infringe and contributing to the infringement of others. Ciba will offer evidence that Defendants induced others to infringe the asserted claims of the '766 patent by directing, showing or instructing others on how to use the PerForm® SP9232 product in a manner that infringes those claims. In this regard, Ciba will offer evidence that the Defendants offered the PerForm® SP9232 as a direct replacement for Polyflex® CP.3 in papermaking applications.

Depending upon the claim construction adopted by the Court, Ciba contends that the use of PerForm® SP9232 in papermaking applications infringes claims 1, 3, 5, 9, 11, 13, 17, 21, 23 and 25 under the doctrine of equivalents for those elements that are not literally present in the accused processes. Ciba intends to offer evidence of such infringement under the doctrine of equivalents. For example, if the Court interprets the claims of the '766 patent to require a

Exhibit 2 page 4

### Ciba's Statement of Contested Issues of Fact and Expected Proofs on Issues for which Ciba has the Burden of Proof

"covalently cross-linked" product, Ciba will offer evidence that the structure present in the PerForm® SP9232 product satisfies this element under the doctrine of equivalents.

### 3.    The '808 Patent

Ciba will prove that Hercules and Cytec have infringed the '808 patent as set forth below.

Ciba contends that Hercules and Cytec, jointly and severally, literally infringe claims 1, 6, 7, 8, 11, 13, 15, 17 and 21 of the '808 patent through their manufacture, sale and use of the PerForm® SP9232 product. Ciba intends to offer evidence showing that the accused PerForm® SP9232 product or its manufacture meets each of the limitations of the asserted claims. Ciba further contends Hercules has induced Cytec to infringe the asserted claims of the '808 patent by directing, showing or instructing Cytec relative to the manufacture of the PerForm® SP9232 product.

Depending upon the claim construction adopted by the Court, Ciba contends that the manufacture, use and sale of PerForm® SP9232 infringes claims 1, 6, 7, 8, 11, 13, 15, 17 and 21 under the doctrine of equivalents for those elements that are not literally present in the accused product. Ciba intends to offer evidence of such infringement under the doctrine of equivalents. For example, if the Court interprets the claims of the '766 patent to require a "covalently cross-linked" product, Ciba will offer evidence that the structure present in the PerForm® SP9232 product satisfies this element under the doctrine of equivalents.

### B.    Willful Infringement

The Jury must decide whether each of Defendants' infringement of the '766 and '808 patents has been willful. 35 U.S.C. § 284 authorizes the Court to "increase the damages up to three times the amount found or assessed." Willfulness, a question of fact, must be established by clear and convincing evidence. *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d

Exhibit 2 page 5

### Ciba's Statement of Contested Issues of Fact and Expected Proofs on Issues for which Ciba has the Burden of Proof

1462, 1465 (Fed. Cir. 1997). The decision to enhance damages, and the amount of any enhancement, however, is within the discretion of the Court. 35 U.S.C. § 284.

There is an affirmative duty to avoid infringement of the known patent rights of others. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004)(*en banc*). An accused infringer has "an affirmative duty to exercise due care to determine whether or not he is infringing, including the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity. *Id.* at 1343.

Cytec has admitted that it has known of the patents since their issuance. Hercules has admitted that it has known of the patents since at least 1998. Ciba will demonstrate that despite this knowledge, Hercules and Cytec incorporated the features of the inventions of the '766 and '808 patents into the PerForm® SP9232 product and did so without any reasonable, good faith belief that they were not infringing Ciba's legitimate patent rights.

### C.    Damages

The jury must determine the measure of damages Ciba has suffered as a result of Defendants' infringement. "The measurement of patent damages is a question of fact." *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2000). 35 U.S.C. § 284 provides that upon a finding of liability the patent owner shall be awarded "damages adequate to compensate for the infringement," which means full compensation for any damage the patent owner suffered as a result of the infringement. *Grain Processing Corp. v. Am. Maize Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). A damage award shall be "in no event less than a reasonable royalty," 35 U.S.C. § 284, which sets the floor below which a damage award may not fall. *See Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995). The patent owner must prove the amount of its damages by a preponderance of

Exhibit 2 page 6

Ciba's Statement of Contested Issues of Fact and Expected Proofs on
Issues for which Ciba has the Burden of Proof

the evidence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed.
Cir. 1991).

1.   **Lost Profits Damages**

Ciba is seeking to recover lost profits with respect to a portion of Defendants'
infringement of the '766 and '808 patents. The Jury must determine the amount of lost profits to
which Ciba is entitled. "To recover lost profits damages...the patent owner must show that it
would have received the additional profits 'but for' the infringement. The patent owner bears the
burden to present evidence sufficient to show a reasonable probability that it would have made
the asserted profits absent infringement." *King Instruments Corp. v. Perego*, 65 F.3d 941, 947
(Fed. Cir. 1995).

Ciba contends that it is entitled to lost profits on: (1) the sale of Polyflex® CP.3 as Ciba
would have sold additional Polyflex® CP.3 "but for" Defendants' infringement and (2) the sale
of associated products Ciba would have sold along with the lost Polyflex® CP.3 "but for"
Defendants' infringement. Ciba will demonstrate that but for Defendants' infringement Ciba
would have sold additional Polyflex® CP.3 and associated products Ciba to at least:



Ciba will offer evidence that there is a demand for products covered by the patents-in-
suit. Ciba will also offer evidence that there is a lack of acceptable non-infringing substitutes for
the patented invention. Ciba will offer evidence that Ciba had more than sufficient marketing
capacity to make its actual sales of Polyflex® CP.3 and associated products plus the claimed
additional sales.

REDACTED

Exhibit 2 page 7

**Ciba's Statement of Contested Issues of Fact and Expected Proofs on Issues for which Ciba has the Burden of Proof**

2.    **Reasonable Royalty Damages**

Ciba is seeking reasonable royalty damages on the balance of Defendants' infringing sales, or if the Jury determines that Ciba is not entitled to lost profits on any sales, then on all of Defendants' infringing sales. The Jury must determine a reasonable royalty for Defendants' use of the patents-in-suit. A reasonable royalty should be determined from "hypothetical negotiations between willing licensor and willing licensee" at the time the infringement began. *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988). "A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms length negotiation between the owners of the patent rights and the infringer, with both operating under the assumption that the negotiated patent is not invalid and is infringed...." *Johns Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 838 (D. Del. 1995); *see also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-22 (S.D.N.Y. 1970) (listing factors to consider in such hypothetical negotiations).

REDACTED

3.    **Marking And Notice**

Where a "patented article" has been produced by a patent owner, 35 U.S.C. § 287(a) provides that the amount of damages the patent owner can recover for infringement of its patent may be limited to a period beginning when the alleged infringer was notified of the infringement, either through marking of the patented article with the patent number or providing actual notice of the infringement. Depending upon the Court's decision on Hercules' motion for partial summary judgment limiting damages under 35 U.S.C. § 287(a), the Jury may need to determine whether Ciba put Defendants on actual notice of the infringement. In such a case, Ciba will

Exhibit 2 page 8

**Ciba's Statement of Contested Issues of Fact and Expected Proofs on
Issues for which Ciba has the Burden of Proof**

present evidence that Defendants were put on actual notice of the infringement at least as early as

October 24, 2002.

Exhibit 2 page 9

# EXHIBIT 3

**Exhibit 3: Hercules' and Cytec's Counterstatements of Contested Issues of Fact
and Expected Proofs on Issues for which Ciba Has the Burden of Proof**

Hercules and Cytec respectfully submit the following Counter-statement of issues

of fact and expected proofs for which Ciba has the burden of proof. Hercules and Cytec

reserve the right to modify or supplement this Counter-statement to reflect the Court's

rulings on claim construction and pending motions. Hercules and Cytec also reserve the

right to modify or supplement this Counter-statement to the extent necessary to fairly

respond to any new issues Ciba raises. Hercules incorporates the arguments and

supporting testimony and evidence set forth in Hercules' pending summary judgment

briefing regarding non-infringement and damages issues. In addition to the items

identified briefly below, Hercules and Cytec intend to prove the matters identified in its

interrogatory answers, expert reports (initial, rebuttal and any supplements), and

depositions of its experts. Should the Court determine that any issue identified as an

issue of fact is more properly considered an issue of law, it should be so considered.

**A.    Infringement**

**1.    Law of Infringement**

HERCULES' AND CYTEC'S RESPONSE: Ciba's "Law of Infringement"

section is merely a recitation of case law concerning infringement and, as such, does not

contain contested issues of fact or expected proofs which is what the Court's December

20, 2004 Trial Management Order requires of this section of the Pretrial Order. Ciba's

exposition on the law of infringement is thus inappropriate in setting forth its contested

issues of fact and expected proofs. Hercules and Cytec do not concede that Ciba's

exposition is either complete, accurate or comprehensive on the law or issues it

addresses. Accordingly, Hercules and Cytec object to this section in its entirety.

Exhibit 3 of the Pretrial Order
Page 1 of 8

## 2.    The '766 Patent

REDACTED

HERCULES' AND CYTEC'S RESPONSE:  The use of Hercules' PerForm®

SP9232 product in papermaking does not literally meet each and every limitation of any

of the asserted claims of Ciba's U. S. Patent No. 5,167,766, e.g., 1, 3, 5, 9, 11, 13, 17, 21,

23 and 25, as those claims are properly construed.  Hercules and Cytec intend to prove

that the PerForm® SP9232 product does not literally meet each and every limitation of

any of the asserted claims of the '766 patent, as those claims are properly construed,

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Hercules and Cytec contend

that they are not liable for infringement of any asserted claim of the '766 patent "by

participating in execution of the patented process at papermaking facilities" because the

PerForm® SP9232 product does not literally meet each and every limitation of the

asserted claims, as is required by law, because Ciba has no evidence of direct

infringement by papermaking facilities, and because Ciba has no evidence that

"Defendants . . . participat[ed] in execution of the patented process at papermaking

facilities."  Furthermore Hercules and Cytec contend that Ciba has no evidence that

"Defendants offered the PerForm® SP9232 as a direct replacement for Polyflex® CP.3 in

papermaking applications."  Hercules and Cytec will provide expert testimony from

Dr. Prud'homme, Mr. Greenshields and Mr. Klass, as well as factual and documentary

evidence, of non-infringement.

Hercules and Cytec object to Ciba's contention that "Hercules and Cytec, *jointly*

and severally, literally infringe" any claims of the '766 patent.  First, it is entirely unclear

Exhibit 3 of the Pretrial Order
Page 2 of 8

what Ciba means by "*jointly* and severally, literally infringe . . ." Second, the patent

statue does not contain any provision for "joint infringement"--whatever Ciba may mean

by that term.    And third, Ciba's contention that "Hercules and Cytec, jointly and

severally, literally infringe" has never been pled in this lawsuit, and thus is not a matter

before the Court.

Additionally, Hercules and Cytec contend that Ciba has failed to adequately and

appropriately proffer any admissible evidence of infringement under the doctrine of

equivalents,[1] and furthermore that Ciba would not be able to prove infringement under

the doctrine of equivalents in any event, for the additional reasons set forth in Hercules'

Motion for Summary Judgment of Non-Infringement. [D. I. 290]

Neither Hercules nor Cytec has induced or contributed to the infringement of any

asserted claim of the '766 through the manufacture, use, and sale of its PerForm® SP9232

product because there is no evidence of direct infringement and for the reasons stated

above.

Hercules further contends that it has no liability for patent infringement because

the asserted claims of the '766 patent are invalid and the '766 patent is unenforceable

---

[1] Hercules' Motion for Summary Judgment of Non-Infringement [D. I. 290] includes a
request for summary judgment of non-infringement of the patents-in-suit under the
doctrine of equivalents.    That Motion is presently pending before the Court.    Hercules
and Cytec have also filed a motion *in limine* to preclude Ciba from presenting expert
testimony concerning alleged infringement of either the '808 and '766 patents under the
doctrine of equivalents. *See Joint Hercules and Cytec Motion in Limine III: Ciba Should
be Precluded From Offering Any Argument or Evidence of Infringement of the '766
and/or '808 Patents Under the Doctrine of Equivalents and Should be Precluded From
Comparing Hercules' PerForm SP9232 Product to Ciba's Polyflex Product.*
Consequently, this issue is not specifically addressed in Hercules' and Cytec's Counter-
statement of Facts in Issue and Expected Proofs. Hercules and Cytec reserve the right to
supplement this Counter-statement should the Court deny these motions.

Exhibit 3 of the Pretrial Order
Page 3 of 8

REDACTED

based upon inequitable conduct during its prosecution. Hercules will provide factual and documentary evidence that persons owing a duty of candor to the PTO withheld from the PTO and misrepresented to the PTO highly material prior art during prosecution of the '766 patents. Such intentional acts were material to patentability under PTO Rule 1.56.

### 3.    The '808 Patent

HERCULES' AND CYTEC'S RESPONSE: Hercules' PerForm® SP9232 product does not literally meet each and every limitation of any of the asserted claims of Ciba's U.S. Patent No. 5,171,808, e.g., 1, 6-8, 11, 13, 15, 17 and 21, as those claims are properly construed, ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Hercules and Cytec will provide expert testimony from Dr. Prud'homme, Mr. Greenshields and Mr. Klass, as well as factual and documentary evidence, of non-infringement.

Hercules and Cytec contend that they are not liable for direct infringement of any asserted claim of the '808 patent by "manufacture, sale, and use of the PerForm® SP9232 product" because Hercules' PerForm® SP9232 product does not literally meet each and every limitation of the asserted claims, as is required by law. Additionally, Hercules and Cytec contend that Ciba has failed to adequately and appropriately proffer any admissible evidence of infringement under the doctrine of equivalents (see fn. 1 above), and furthermore that Ciba would not be able to prove infringement under the doctrine of

Exhibit 3 of the Pretrial Order
Page 4 of 8

equivalents in any event, for the additional reasons set forth in Hercules' Motion for Summary Judgment of Non-Infringement. [D. I. 290]

Neither Hercules nor Cytec has induced infringement of any asserted claim of the '808 patent through the manufacture, use, and sale of its PerForm® SP9232 product because there is no evidence of direct infringement, and for the reasons stated above.

Hercules and Cytec object to Ciba's contention that "Hercules and Cytec, *jointly* and severally, literally infringe" any claims of the '808 patent. First, it is entirely unclear what Ciba means by "*jointly* and severally, literally infringe . . ." Second, the patent statue does not contain any provision for "joint infringement"--whatever Ciba may mean by that term. And third, Ciba's contention that "Hercules and Cytec, jointly and severally, literally infringe" has never been pled in this lawsuit, and thus is not a matter before the Court.

Hercules further contends that it has no liability for patent infringement because the asserted claims of the '808 patent are invalid and the '808 patent is unenforceable based upon inequitable conduct during its prosecution. Hercules will provide factual and documentary evidence that persons owing a duty of candor to the PTO withheld from the PTO and misrepresented to the PTO highly material prior art during prosecution of the '808 patents. Such intentional acts were material to patentability under PTO Rule 1.56.

**B.     Willful Infringement**

HERCULES' AND CYTEC'S RESPONSE: Ciba's exposition on the law of willful infringement is inappropriate in setting forth its contested issues of fact and expected proofs. Hercules and Cytec do not concede that Ciba's exposition is either

Exhibit 3 of the Pretrial Order
Page 5 of 8

complete, accurate or comprehensive on the law or issues it addresses, and Hercules and Cytec object to this as such.

Hercules will provide evidence that its scientists were aware of the '808 and '766 patents and designed and developed PerForm® SP9232 to avoid infringement of those patents. Thus, Hercules took reasonable steps to avoid infringement of those patents and therefore did not willfully infringe those patents.

Cytec will provide evidence that its scientists were aware of the '808 and '766 patents and understood there was no infringement of those patents by the PerForm® SP9232 product. Thus, Cytec took reasonable steps to avoid infringement of those patents, and therefore did not willfully infringed those patents.

Further, Hercules and Cytec contend that enhanced damages under 35 U.S.C. § 284 are not compensatory but punitive, and thus can be awarded only in circumstances where the conduct was reprehensible or egregiously improper. *See State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 4008 (2003); *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559 (1996). As will be shown from the above evidence, neither Hercules' nor Cytec's conduct was reprehensible or egregiously improper and enhanced damages are not justified.[2]

REDACTED

Exhibit 3 of the Pretrial Order
Page 6 of 8

## C.    Damages

### 1. Lost Profits

HERCULES' AND CYTEC'S RESPONSE:  Hercules and Cytec will provide evidence showing that an award of lost profits as damages for sales of PerForm® SP9232 is not appropriate.    For example, Hercules and Cytec will provide factual and documentary evidence that upon purchase of Cytec's business, Ciba did not have an adequate sales staff to support the existing customers.  Hercules and Cytec will provide expert testimony from Mr. James Malackowski that Ciba did not put forth enough marketing effort to increase or even maintain its Polyflex CP.3 business in the various paper mills across North America.  Also, Hercules and Cytec will provide expert, factual, and documentary evidence that there were a variety of acceptable non-infringing substitutes to the patented product available.  Under these circumstances, among others, Ciba would only be entitled to an award of reasonable royalties.

In  addition, Hercules and Cytec will provide expert  testimony  from Mr. Malackowski that Hercules' sales of so-called associated products should not be included in the computation of lost profit damages, especially in light of the failure of those sales to satisfy the relevant factors in determining whether lost profits damages apply.

REDACTED

### 2. Reasonable Royalty Damages

HERCULES' AND CYTEC'S RESPONSE:  Hercules and  Cytec  will  provide evidence showing that ████████████████████████████████████ ███████████████  Hercules and Cytec will provide expert testimony from Mr. Malackowski that, if damages are due to Ciba, they should be in the form of a

Exhibit 3 of the Pretrial Order
Page 7 of 8

reasonable royalty on all revenues associated with Hercules' sales of associated products, and all revenue for Hercules' sales of PerForm® SP9232 not included in the calculation of lost profits.

### 3. Marking and Notice

HERCULES' AND CYTEC'S RESPONSE:  Hercules and Cytec will provide evidence that Ciba should be limited to an accounting period for all damages beginning on May 7, 2004, the date Ciba filed the complaint in this action, thereby providing the first actual notice of infringement.    Hercules and Cytec will provide factual and documentary evidence that Ciba failed to satisfy the marking requirements of 35 U.S.C. § 287(a), and therefore failed to provide Hercules or Cytec with constructive notice of the patents-in-suit.    Hercules and Cytec will also show that neither Hercules nor Cytec received actual notice of the patents-in-suit until the filing of the complaint in this action.

Exhibit 3 of the Pretrial Order
Page 8 of 8

# EXHIBIT 4

**Exhibit 4: Hercules' Statement of Essential Facts In Issue and Expected Proofs**

### Hercules' Brief Statement of Facts In Issue

Hercules respectfully submits the following list of issues of fact that remain to be litigated. Hercules reserves the right to modify or supplement this Statement to reflect the Court's rulings on claim construction, summary judgment motions, and *in limine* requests. Hercules also reserves the right to modify or supplement this Statement to the extent necessary to fairly respond to any new issues Ciba raises in their Statement of Facts In Issue. Should the Court determine that any issue identified in this list as an issue of fact is more properly considered an issue of law, it should be so considered.

### Issues Where Hercules Bears the Burden of Proof

**I.    Invalidity (proof by clear and convincing evidence)**

1.    Whether Hercules has proved that the claims Ciba asserts from its U.S. Patent No. 5,171,808, *e.g.* claims 1, 6-8, 11, 13, 17, and 20-21, are anticipated by the prior art?

2.    Whether Hercules has proved that the claims Ciba asserts from its U.S. Patent No. 5,167,766, *e.g.* claims 1, 3, 5, 7, 9, 11, 13, 17, 19, 21, 23, and 25, are anticipated by the prior art?

3.    What is the level of ordinary skill in the art to which the asserted claims of Ciba's U. S. Patent No. 5,171,808 pertain?

4.    What is the level of ordinary skill in the art to which the asserted claims of Ciba's U. S. Patent No. 5,167,766 pertain?

5.    What is the scope and content of the relevant prior art?

Exhibit 4 of the Pretrial Order
Page 1 of 14

6.    What are the differences, if any, between the prior art and the subject matter of the claims Ciba asserts from its U.S. Patent No. 5,171,808, *e.g.* claims 1, 6-8, 11, 13, 17, and 20-21?

7.    What are the differences, if any, between the prior art and the subject matter of the claims Ciba asserts from its U.S. Patent No. 5,167,766, *e.g.* claims 1, 3, 5, 7, 9, 11, 13, 17, 19, 21, 23, and 25?

8.    Whether Hercules has proved that the claims Ciba asserts from its U.S. Patent No. 5,171,808, *e.g.* claims 1, 6-8, 11, 13, 17, and 20-21, would have been obvious under 35 U.S.C. § 103(a)?

9.    Whether Hercules has proved that the claims Ciba asserts from its U.S. Patent No. 5,167,766, *e.g.* claims 1, 3, 5, 7, 9, 11, 13, 17, 19, 21, 23, and 25, would have been obvious under 35 U.S.C. § 103(a)?

10.    Whether Hercules has established that there are no secondary considerations of non-obviousness, and/or whether Hercules has provided requisite evidence negating any showing of non-obviousness by establishing a lack of lexus between the asserted claims of U.S. Patent No. 5,171,808 and any secondary considerations of non-obviousness relied upon by Ciba.

11.    Whether Hercules has established that there are no secondary considerations of non-obviousness, and/or whether Hercules has provided requisite evidence negating any showing of non-obviousness by establishing a lack of lexus between the asserted claims of U.S. Patent No. 5,167,766 and any secondary considerations of non-obviousness relied upon by Ciba.

**II.    Unenforceability (proof by clear and convincing evidence)**

1.    Whether Hercules has proved that material information was not provided to the patent examiner during prosecution of U.S. Patent No. 5,171,808?

Exhibit 4 of the Pretrial Order
Page 2 of 14

2.     Whether Hercules has proved that material information was not provided to the patent examiner during prosecution of U.S. Patent No. 5,167,766?

3.     Whether Hercules has proved that applicants misrepresented the teachings of EP 0,202,780 in their description of this prior art in U.S. Patent No. 5,171,808?

4.     Whether Hercules has proved that applicants misrepresented the teachings of EP 0,202,780 in their description of this prior art in U.S. Patent No. 5,167,766?

5.     Whether Hercules has proved that material information was intentionally withheld from the patent examiner during prosecution of U.S. Patent No. 5,171,808?

6.     Whether Hercules has proved that material information was intentionally withheld from the patent examiner during prosecution of U.S. Patent No. 5,167,766?

7.     Whether Hercules has proved inequitable conduct during procurement of U.S. Patent No. 5,171,808 by its proofs on items 1, 3, and 5 above.

8.     Whether Hercules has proved inequitable conduct during procurement of U.S. Patent No. 5,167,766 by its proofs on items 2, 4, and 6 above.

### Hercules' Brief Statement of Intended Proofs

Hercules respectfully submits the following list of what it intends to prove at trial. In addition to the items identified below, Hercules intends to prove the matters identified in its interrogatory answers, expert reports (initial, rebuttal and any supplements), and depositions of its experts. Hercules also intends to offer proof of the issues of fact and issues of law identified in the parties' Pretrial Order. Hercules also intends to offer proof to rebut the items on which Ciba offers proof, and Hercules reserves the right to amend and supplement this statement in

Exhibit 4 of the Pretrial Order
Page 3 of 14

response to Ciba's pretrial activities. Regarding its inequitable conduct allegations, Hercules also incorporates the factual averments in its Amended Answer and Counterclaims.

As to the issues to which Ciba has the burden of proof, Hercules reserves the right to supplement this statement after receipt of Ciba's statement of intended proofs. Regarding proofs to be presented by expert testimony, Hercules incorporates by reference the reports of its experts.

## Issues Where Hercules Bears the Burden of Proof

### I.    Invalidity

Hercules expects to prove that the asserted claims of Ciba's patents-in-suit--*e.g.* claims 1, 3, 5, 7, 9, 11, 13, 17, 19, 21, 23, and 25 of the '766 patent and claims 1, 6-8, 11, 13, 17, and 20-21 of the '808 patent--are invalid over the prior art.[1] In proving its invalidity positions, Hercules will provide expert testimony from Dr. Robert K. Prud'homme and Mr. Charles P. Klass as set forth in their expert reports, as well as documentary evidence and factual testimony.

In connection with proving its invalidity positions, Hercules will also provide evidence as to the level of ordinary skill in the art to the '766 and '808 patents pertain. Hercules will provide expert testimony from Dr. Prud'homme and Mr. Klass that relate to the level of ordinary skill in the art.

Additionally, for each prior art patent or publication Hercules relies on to prove the invalidity of the above-listed asserted claims of the '766 and '808 patents, Hercules will provide testimony from its experts, Dr. Prud'homme and Mr. Klass, explaining the scope and content of

---

[1] Ciba has thus far refused to identify a sub-set of the asserted claims of either the '766 or '808 patents for trial in this matter. Should Ciba make such an election, Hercules reserves the right to modify or supplement this statement of expected proofs.

Exhibit 4 of the Pretrial Order
Page 4 of 14

the relevant prior art, as well as the differences, if any, between the prior art and the subject matter allegedly covered in the asserted claims of the '766 and '808 patents.

## A.    The '766 Patent

Hercules will provide evidence that the asserted claims, *e.g.* claims 1, 3, 5, 7, 9, 11, 13, 17, 19, and 21 of the '766 patent are invalid as anticipated under 35 U.S.C. § 102 over European publication EP 0202780 ("EP '780") corresponding U.S. Patent No. 4,720,346 to Flesher *et al.* ("the Flesher '346 patent"). Hercules will provide expert testimony from Dr. Prud'homme and Mr. Klass that the invention(s) allegedly covered in the asserted claims, claims 1, 3, 5, 7, 9, 11, 13, 17, 19, and 21 of the '766 patent, are anticipated.

Hercules will provide evidence that claim 1 of the '766 patent is invalid as obvious under 35 U.S.C. § 103 over the prior art, EP '780 and the Flesher '346 patent, in light of European Patent EP 0126528 B1 and corresponding U.S. Patent No. 4,528,321 to Allen *et al.* ("the Allen '321 patent"). Hercules will present factual evidence regarding EP '780, the Flesher '346 patent, and the Allen '321 patent, which will establish that the invention(s) allegedly disclosed in asserted claim 1 of the '766 would have been obvious to one of ordinary skill in the art at the time of the alleged invention.

Hercules will further provide evidence that claims 3, 5, 9, 11, 13, 17, 21, 23, and 25 of the '766 patent would have been obvious under 35 U.S.C. § 103 over the prior art, EP '780 and the Flesher '346 patent, in light of prior art U.S. Patent No. 5,180,473 to Akune *et al.* ("the Akune '473 patent"). Hercules will present factual evidence regarding the Akune '473 patent, which will establish that the invention(s) allegedly disclosed in the asserted claims 3, 5, 9, 11, 13, 17, 21, 23, and 25 of the '766 would have been obvious to one of ordinary skill in the art at the time of the alleged invention.

Exhibit 4 of the Pretrial Order
Page 5 of 14

Hercules will also provide evidence that claims 23 and 25 of the '766 patent would have been obvious under 35 U.S.C. § 103 over the prior art, EP '780 and the Flesher '346 patent, in light of prior art publications and/or patents, such as Avery, L.P., <u>Evaluation of Retention Aids</u>, TAPPI 62(2) 43-46 (1979). Hercules will provide expert testimony regarding the Avery publication from Mr. Klass that the invention(s) allegedly covered in claims 23 and 25 would have been obvious to one of ordinary skill in the art at the time of the alleged invention. He will provide testimony regarding the obviousness of claims 23 and 25 as outlined in his expert reports.

To the extent that Ciba attempts to provide evidence of secondary considerations of non-obviousness, Hercules will provide evidence establishing that there are no secondary considerations of non-obviousness and/or provide evidence negating any showing of non-obviousness by establishing a lack of lexus between the asserted claims of the '766 patent and any secondary considerations of non-obviousness relied upon by Ciba.

**B.    The '808 Patent**

Hercules will provide evidence that he asserted claims, *e.g.* claims 1, 6-8, 11, 13, 15, 17, and 21 of the '808 patent, are invalid as separately anticipated under 35 U.S.C. § 102 over each of EP '780 and the Flesher '346 patent; the Allen '321 patent; and/or U.S. Patent No. 4,172,066 to Zweigle *et al.* Hercules will provide expert testimony from Dr. Prud'homme that the invention(s) allegedly covered in the asserted claims, *e.g.* claims 1, 6-8, 11, 13, 15, 17, and 21 of the '808 patent are anticipated, as outlined in his expert reports. Hercules will additionally provide factual and documentary evidence regarding these issues.

Hercules will further provide evidence that claim 20 of the '808 patent is invalid as anticipated under 35 U.S.C. § 102 over EP '780 and the Flesher '346 patent. Hercules will

Exhibit 4 of the Pretrial Order
Page 6 of 14

provide expert testimony from Dr. Prud'homme that claim 20 of the '808 patent is anticipated, as outlined in his expert reports.

Hercules also will provide evidence that claims 1, 6-8, 11, 13, 15, 17, and 20-21 of the '808 patent are invalid for obviousness under 35 U.S.C. § 103 over EP '780 or the Flesher '346 patent in view of European Patent EP 0126528 B1 and the Allen '321 patent. Hercules will provide factual testimony and documentary evidence that the invention(s) allegedly covered in claims 1, 6-8, 11, 13, 15, 17, and 20-21 of the '808 patent would have been obvious to one of ordinary skill in the art at the time of the alleged invention.

To the extent that Ciba attempts to provide evidence of secondary considerations of non-obviousness, Hercules will provide evidence establishing that there are no secondary considerations of non-obviousness and/or provide evidence negating any showing of non-obviousness by establishing a lack of lexus between the asserted claims of the '808 patent and any secondary considerations of non-obviousness relied upon by Ciba.

## II.    Unenforceability

Hercules expects to prove that the Flesher '346 patent and the Allen '321 patent anticipate and/or would have rendered obvious numerous claims of the '766 and '808 patents-in-suit, including at least claim 1 of both patents.    (*See* Discussion in Validity Section.) Additionally, Hercules expects to prove that the '766 and '808 patents-in-suit are unenforceable because persons owing a duty of candor to the U.S. Patent and Trademark Office ("PTO") during the prosecution of the patents-in-suit failed to disclose this highly material prior art to the PTO. This inequitable conduct renders unenforceable all claims of the patents-in-suit.

Hercules will provide evidence that the Flesher '346 patent and the Allen '321 patent,

Exhibit 4 of the Pretrial Order
Page 7 of 14

each alone or in combination with other prior art establish *prima facie* cases of unpatentability of the claims of the '766 and '808 patents-in-suit. Dr. Prud'homme and Mr. Klass will provide testimony regarding these matters. Hercules will also provide relevant factual testimony and evidence as to this issue.

Hercules will also provide testimony (live or by deposition) from Mr. Frank Van Riet, the attorney at American Cyanamid who prosecuted the patents-in-suit. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████ Hercules will also show that there is no evidence that the Patent Examiner had considered or cited these references.

**REDACTED**

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ Hercules will provide evidence that EP '780 was never properly cited to the PTO. Indeed, Hercules will show that none of the Flesher '346 patent, EP '780, or the Allen '321 patent are listed as "References Cited" during prosecution of the patents-in-suit.

PTO Rule 1.56 requires "[e]ach individual associated with the filing and prosecution of a patent application . . . to disclose to the Office all information known to that individual to be material to patentability as defined in this section." (37 C.F.R. § 1.56(a).) Hercules will show

Exhibit 4 of the Pretrial Order
Page 8 of 14

that effective March 16, 1992, the PTO Rules provided the following amended definition for information to be considered "material to patentability":

> (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>
> (1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or
>
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
>
> > (i) Opposing an argument of unpatantability relied on by the Office, or
> >
> > (ii) Asserting an argument of patentability.

REDACTED

(37 C.F.R. § 1.56(b).) ███████████████████████████████████████████

███████████████████████████████████

Hercules will provide evidence that during prosecution of the '766 patent, the American Cyanamid applicants argued that their claims would not have been obvious over U.S. Patent No. 4,659,431 to Probst *et al.* because this patent allegedly failed to teach (a) ionic polymeric particles, (b) that are cross-linked, and (c) that are added to the paper furnish, rather than the paper sheet itself, during the papermaking process. The Examiner accepted these arguments in allowing the '766 patent to issue. In contrast to these arguments, Hercules will provide testimony from Dr. Prud'homme that the Flesher '346 patent teaches (a) the use of ionic polymeric particles (b) that are cross-linked. Hercules will also provide testimony from Dr. Prud'homme and/or Mr. Klass that the Flesher '346 patent also teaches (c) adding ionic, cross-linked polymeric particles to the paper furnish during the papermaking process. Hercules will further provide factual testimony and evidence regarding these issues.

Hercules will provide evidence that during prosecution of the '808 patent, the American

Exhibit 4 of the Pretrial Order
Page 9 of 14

Cyanamid applicants argued that U.S. Patent No. 4,147,688 to Makhlouf *et al.* would not have rendered their claims obvious because this prior art allegedly failed to teach (a) preparing the polymeric particles solely from water-soluble monomers, and (b) using a cross-linking agent in the range of about 4 molar parts to about 4000 molar parts per million, instead of a higher range. The Examiner accepted these arguments in allowing the '808 patent to issue. In contrast to these arguments, Hercules will provide testimony from Dr. Prud'homme that the Flesher '346 patent and the Allen '321 patent both (a) contain Examples of compositions of polymeric particles prepared only from water-soluble monomers and (b) contain Examples of compositions of polymeric particles that use cross-linking agents in the claimed range of about 4 molar parts to about 4000 molar parts per million. Hercules will further provide factual testimony and evidence regarding these issues.

Hercules will provide evidence that had they been considered, the Flesher '346 patent and the Allen '321 patent would have supplied deficiencies in the other references cited during prosecution of the '766 and '808 patents. Hercules will provide further evidence that had they been considered, the Flesher '346 patent and the Allen '321 patent would have refuted arguments for patentability urged by Mr. Van Riet and the applicants during prosecution of the '766 and '808 patents. Hercules will provide further factual testimony and evidence regarding Mr. Van Riet's unsuccessful attempt to submit EP '780 for consideration by the PTO, thereby affirming the materiality of the Flesher '346 patent. **REDACTED**

Hercules will provide evidence showing that the Flesher '346 patent and the Allen '321 patent ███████████████████████████████████████ many times prior to issuance of the '766 and '808 patents. The Flesher '346 patent was cited during the prosecution of other American Cyanamid patent applications that

Exhibit 4 of the Pretrial Order
Page 10 of 14

were pending at the PTO before or during prosecution of the '766 and '808 patents. These include U.S. Application Serial Nos. 07/643,309 ("the '309 application") and 07/552,958 ("the '958 application").

████████████████████████████████████████████████████████

████████████████████████ In so doing, Hercules will provide evidence that in an appeal to the PTO Board of Patent Appeals and Interferences during prosecution of the '309 application, Mr. Van Riet argued that the Allen '321 patent disclosed that the polymeric particles of the Flesher '346 patent would have sizes in the range of 0.2 to 2.0 microns. Hercules will provide factual testimony and evidence that these arguments took place when the applications leading to the '766 and '808 patents-in-suit were still pending, and while Mr. Van Riet was arguing to the PTO that the '766 and '808 patents should be allowed because of the 0.75 micron particle size limitation and other limitations in those claims.

Hercules will provide evidence that during prosecution of the '958 and '309 applications, the PTO rejected Mr. Van Riet's contentions that the Flesher '346 patent and its reference to the Allen '321 patent's European counterpart (i.e., EP 0126528) did not disclose, obviate, and make unpatentable claims to polymeric particles having a size less than 0.1 micron. ████████████████ ████████████, he continued to argue in the applications leading to the patents-in-suit that the 0.75 micron particle size limitation made the claims patentable, even while withholding from the PTO the Flesher '346 patent and the Allen '321 patent.

Hercules will also provide evidence that Mr. Van Riet and others owing a duty of disclosure included in the specifications of the '766 and '808 patents a misrepresentation regarding the Flesher prior art. Hercules will show that the '808 patent misrepresents that EP '780 as "describ[ing] the preparation of polymeric, crosslinked, *cationic* acrylamide polymer

Exhibit 4 of the Pretrial Order
Page 11 of 14

beads by *conventional* inverse emulsion polymerization techniques." ('808 patent, col. 1, lines 23-25 (emphasis added).) The specification of the '766 patent contains a similarly misleading statement describing EP '780 as being limited to "cationic" polyacrylamide beads prepared by "conventional" polymerization techniques. (*See* '766 patent, col. 2, lines 47-49 )

Hercules will provide evidence showing that the Flesher '346 patent and EP '780 describe the preparation of polymeric, crosslinked, anionic acrylamide polymer particles in addition to cationic ones. ███████████████████████████████████████ ███████████████████ And Hercules will provide evidence showing that instead of describing polymeric particles formed by "conventional" processes, the polymeric particles of the Flesher '346 patent are ionic, organic, cross-linked particles that meet the limitations of numerous claims of these patents, including claim 1 of each of the '766 and '808 patents. REDACTED

Those owing a duty of candor to the PTO included more that just Mr. Van Riet. Hercules will provide testimony (by deposition) ███████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████

Exhibit 4 of the Pretrial Order
Page 12 of 14



Hercules will provide evidence showing that awareness of the Flesher '346 patent and EP '780 by American Cyanamid's involvement in two lawsuits. Prior to issuance of the '766 and '808 patents, Allied Colloids Ltd. sued American Cyanamid Company and Cyanamid of Great Britain for infringement of EP '780 in the United Kingdom. In addition, Allied Colloids Ltd. and its U.S. licensee, Allied Colloids Inc., sued American Cyanamid for infringement of the Flesher '346 patent in Virginia. Hercules will provide evidence showing that in its complaint, Allied Colloids averred that American Cyanamid's infringement of the Flesher '346 patent was willful and had occurred "with knowledge of" that patent. REDACTED

Hercules will provide evidence showing that Mr. Van Riet eventually cited EP '780 to the PTO, but he only did so after the PTO mailed a Notice of Allowance for the '766 patent on March 23, 1992. Mr. Van Riet then waited until April 27, 1992, to cite EP '780 to the PTO along with 15 other references. At that time, however, the PTO's Rules precluded it from considering additional references and the PTO therefore refused to consider this European counterpart to the Flesher '346 patent. Hercules will provide factual testimony from Mr. Van

Exhibit 4 of the Pretrial Order
Page 13 of 14

Riet showing that he was aware of this rule, and that his citation of these references including EP '780 was not timely.

Hercules will provide factual testimony showing that American Cyanamid and Mr. Van Riet could have withdrawn the '766 patent from issuance and properly cited the EP '780 or the Flesher '346 patent for consideration by the PTO but did not do so. By his course of conduct, Mr. Van Riet purposefully prevented the PTO from considering the most pertinent prior art, the Flesher '346 patent and the Allen '321 patent, during prosecution of the '766 and '808 patents.

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████; the high materiality of these prior art references; the misrepresentations of the teachings of EP '780 in the specifications of the patents-in-suit; ███████████████████ ██████████████████████████████ to mislead the PTO into wrongly allowing the '766 and '808 patents to issue.

# REDACTED

Exhibit 4 of the Pretrial Order
Page 14 of 14

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) | |
| | ) ) | C.A. No. 04-293 (KAJ) |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| HERCULES, INC. and CYTEC INDUSTRIES, INC., | ) ) ) | |
| Defendants. | ) | |

**EXHIBIT 5**
**CIBA'S COUNTERSTATEMENT OF CONTESTED ISSUES OF FACT
AND EXPECTED PROOFS ON ISSUES FOR WHICH
HERCULES HAS THE BURDEN OF PROOF**

## CIBA'S COUNTERSTATEMENT OF CONTESTED ISSUES OF FACT AND EXPECTED PROOFS ON ISSUES FOR WHICH HERCULES HAS THE BURDEN OF PROOF

Ciba respectfully submits the following counterstatement of contested issues of fact and expected proofs on issues for which Hercules has the burden of proof. In addition to the items identified below, Ciba intends to prove the matters identified in its interrogatory answers, expert reports, summary judgment briefs and expert depositions. For example, the evidence Ciba anticipates offering through its experts is disclosed in their respective expert reports, which are incorporated herein by reference. Ciba also intends to offer proof on the issues of law identified in the Pretrial Order. Ciba also intends to offer proof in rebuttal to evidence offered by Defendants. Ciba reserves the right to supplement this statement in response to issues raised by Defendants.

### A.    Invalidity

Hercules has asserted the affirmative defense of invalidity. A patent is presumptively valid. 35 U.S.C. § 182. The party asserting the affirmative defense of invalidity has the burden of proving that defense by clear and convincing evidence. "[W]here the challenge fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

### 1.    Anticipation

In order for a patent claim to be found invalid as anticipated under 35 U.S.C. § 102, a defendant must establish by clear and convincing evidence that each and every element of the claimed apparatus or method is disclosed in a single prior art reference. The absence of a single claimed element from the reference prevents it from anticipating the patent claim. *Scripps Clinic & Research Fndtn. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991). "[A]nticipation

Exhibit 5 page 1

**Ciba's Counterstatement of Contested Issues of Fact and Expected Proofs on
Issues for which Hercules has the Burden of Proof**

does not permit an additional reference to supply a missing claim limitation." *Teleflex, Inc. v.*

*Ficosa N. Am. Corp.*, 299 F.3d 1313, 1335 (Fed. Cir. 2002). "Although this disclosure

requirement presupposes the knowledge of one skilled in the art of the claimed invention, that

presumed knowledge does not grant a license to read into the prior art teachings that are not

there. An expert's conclusory testimony, unsupported by the documentary evidence, cannot

supplant the requirement of anticipatory disclosure in the prior art reference itself." *Motorola,*

*Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997).

The jury must determine whether Hercules has demonstrated by clear and convincing

evidence that any prior art reference introduced by Hercules anticipates the asserted claims of the

patents-in-suit, i.e. claims 1, 3, 5, 9, 11, 13, 17, 21, 23 and 25 of the '766 patent and claims 1, 6,

7, 8, 11, 13, 15, 17 and 21 of the '808 patent. Relative to the '766 patent, Hercules alleges that

European Patent EP 0202780 ("the EP '780 patent") and corresponding U.S. Patent 4,720,346

("the '346 patent") are anticipatory references. Relative to the '808 patent, Hercules alleges that

the '780 patent, the '346 patent, U.S. Patent 4,528,321 ("the '321 patent") and U.S. Patent

4,172,066 ("the '066 patent") as anticipatory references. Ciba intends to introduce evidence that

the asserted claims of the patents-in-suit were not anticipated by any of these references.

### 2.    Obviousness

"Obviousness is a legal conclusion based on underlying facts of four general types, all of

which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the

level of ordinary skill in the art; (3) the differences between the claimed invention and the prior

art; and (4) any objective indicia of nonobviousness." *Crown Operations Int'l, Ltd. v. Solutia,*

*Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002). "Throughout the obviousness determination, a patent

retains its statutory presumption of validity, see 35 U.S.C. § 282, and the movant retains the

burden to show the invalidity of the claims by clear and convincing evidence as to underlying

**Exhibit 5 page 2**

**Ciba's Counterstatement of Contested Issues of Fact and Expected Proofs on
Issues for which Hercules has the Burden of Proof**

facts." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1349 (Fed. Cir. 2001). "The

consistent criterion of a determination of obviousness is whether the prior art would have

suggested to one of ordinary skill in the art that this process should be carried out and would

have a reasonable likelihood of success, viewed in the light of the prior art." *In re Dow Chem.*

*Co.*, 837 F.2d 469, 473 (Fed. Cir. 1988).

A motivation to combine cannot come simply from the fact that the asserted prior art is

within the same field. *Winner Int'l Realty Corp. v. Wang*, 202 F. 3d 1340, 1349 (Fed. Cir. 2000).

Motivation to combine requires an appreciation of the desirability of making the combination. It

is not measured by the feasibility of making the combination. *Id.*

The jury must determine whether Hercules has demonstrated by clear and convincing

evidence: (1) the scope and content of any asserted combination of prior art; (2) the level of

ordinary skill in the art at the time of the invention of each of the patents-in-suit; (3) that there

are no differences between the asserted combination of prior art and the respective asserted

claims; and (4) that any finding of obviousness is not rebutted by objective indicia of non-

obviousness. Ciba intends to introduce evidence regarding each of these four factors. For

example, Ciba intends to offer evidence regarding difference between the asserted combinations

of prior art and the respective patent claims. Ciba also intends to offer evidence regarding

specific objective indicia of non-obviousness, including evidence of commercial success of

products covered by the patents-in-suit, a long felt need in the art which was satisfied by the

inventions of the patents-in-suit, the failure of others to make the inventions, copying of the

inventions by others in the field, unexpected results achieved by the inventions, praise of the

inventions by the infringers and others in the field, expressions of disbelief or skepticism by

**Exhibit 5 page 3**

Ciba's Counterstatement of Contested Issues of Fact and Expected Proofs on
Issues for which Hercules has the Burden of Proof

those skilled in the art upon learning of the inventions and that the inventions proceeded in a

direction contrary to the accepted wisdom of those skilled in the art.



**B.    Unenforceabilty**

Hercules alleges that the patents-in-suit are unenforceable for inequitable conduct.

Inequitable conduct is an equitable issue that is determined by the Court, not the Jury.

Inequitable conduct must established by clear and convincing evidence. *Allied Colloids,*

*Inc. v. American Cyanamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995). A three-step inquiry is

required to determine whether an alleged withholding or misrepresentation of information results

in inequitable conduct. First, the Court must decide if the conduct meets a threshold level of

materiality. *Board of Educ v. American Bioscience*, 333 F.3d 1330, 1343 (Fed. Cir. 2003).

Second, the Court must decide if there exists a threshold level of intent to mislead or deceive the

Patent Office. *Id.* Materiality and intent are distinct factual inquiries and each must be

separately established by clear and convincing evidence *Life Technologies v Clontech*

*Laboratories*, 224 F.3d 1320, 1324 (Fed. Cir. 2003). Materiality cannot presume intent, which is

Exhibit 5 page 4

**Ciba's Counterstatement of Contested Issues of Fact and Expected Proofs on
Issues for which Hercules has the Burden of Proof**

a separate and essential component of inequitable conduct. *UpJohn Co. v. Mova Pharm. Corp.,*
225 F.3d 1306, 1312 (Fed. Cir. 2000). If the threshold level of either materiality or intent is not
established by clear and convincing evidence, then the inequitable conduct determination is over.
*Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1261 (Fed. Cir. 2001).

Third and finally, if the threshold levels of materiality and intent are established, the
Court must balance the levels of materiality and intent to determine whether the applicant's
conduct is so culpable that the patents at issue should not be enforced. *Life Technologies,* 224
F.3d at 1324; *Board of Educ.,* 333 F.3d at 1343. A greater degree of one factor allows a lesser
degree of the other. *Life Technologies,* 224 F.3d at 1324.

The Court must determine whether the '766 patent or the '808 patent is unenforceable for
inequitable conduct. Ciba intends to introduce evidence that no inequitable conduct was
committed during the prosecution of either the '766 patent or the '808 patent. For example, Ciba
will introduce evidence that the '346 and '321 patents were not material prior art to either the
'766 patent or the '808 patent. Ciba will also offer evidence that no material misrepresentations
were made relative to the description of the EP '780 patent in the '766 and '808 patents. Ciba
will also introduce evidence that no material information was intentionally withheld from the
patent examiner during prosecution of either the '766 patent or the '808 patent.

Exhibit 5 page 5

# EXHIBIT 6

IV.   **Issues of Fact and Law**

   A.   **Agreed upon Issues of Law to Be Decided by the Court**

   1.   **Whether the '766 patent and/or the '808 patent is unenforceable for inequitable conduct.**

Hercules' Authority:

*Li Second Family Ltd. P'ship v. Toshiba Corp.*, 231 F.3d 1373 (Fed. Cir. 2000); *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28 (Fed. Cir. 1999); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995); *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354 (Fed. Cir. 2003); *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348 (Fed. Cir. 2005); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed. Cir. 2001); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001); 37 C.F.R. § 1.56; Manual of Patent Examining Procedure, Fifth Edition, Revision 14, Nov. 1992, Sections 2001-2002.

Ciba's Authority:

*Allied Colloids, Inc. v. American Cyanamid Co.*, 64 F.3d 1570 (Fed. Cir. 1995); *Board of Educ. v. American Bioscience*, 333 F.3d 1330 (Fed. Cir. 2003); *Life Technologies v Clontech Laboratories*, 224 F.3d 1320 (Fed. Cir. 2003); *UpJohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306 (Fed. Cir. 2000); *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253 (Fed. Cir. 2001).

   2.   **If any of the claims of the '766 patent or '808 patent are found to be infringed and not invalid or unenforceable, to what extent Hercules and Cytec and those acting in concert with them should be enjoined from further infringement pursuant to 35 U.S.C. § 283.**

Hercules' and Cytec's Authority:

35 U.S.C. § 283; *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S.___ (2006); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259 (Fed. Cir. 1999).

Ciba's Authority:

35 U.S.C. § 283; *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S.___ (2006).

Exhibit 6 of the Pretrial Order
Page 1 of 4

3.    If Hercules and/or Cytec is found to have willfully infringed a valid and enforceable claim of the '766 or '808 patents, whether Ciba's damages should be enhanced under 35 U.S.C. § 284.

Hercules' and Cytec's Authority:

35 U.S.C. § 284; *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 4008 (2003); *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559 (1996). *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448 (Fed. Cir. 1998) (en banc); *Juicy Whip, Inc. v. Orange Bang, Inc.,* 382 F.3d 1367 (Fed. Cir. 2004); *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302 (Fed. Cir. 2002); *Transclean Corp. v. Bridgewood Servs., Inc.,* 290 F.3d 1364 (Fed. Cir. 2002); *Modine Mfg. Co.. v. Allen Group Inc.,* 917 F.2d 538 (Fed. Cir. 1990); *eSpeed v. BrokerTec USA, L.L.C.,* C.A. No. 03-612 (KAJ) (D. Del.).

Ciba's Authority:

35 U.S.C. § 284; *SRI Int'l, Inc. v. Advanced* Tech. *Labs., Inc.,* 127 F.3d 1462 (Fed. Cir. 1997); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337 (Fed. Cir. 2004)(*en banc*); *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354 (Fed. Cir. 2006); *Underwater Devices, Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380 (Fed. Cir. 1983); *Read Corp. v. Portec, Inc.,* 970 F.2d 816 (Fed. Cir. 1992); *Advanced Medical Optics, Inc. v. Alcon Laboratories, Inc.,* 2005 WL 3454283 (D.Del. Dec 16, 2005)(KAJ); *see also Applera Corp. v. MJ Research, Inc.,* 372 F.Supp.2d 233 (D. Conn. 2005).

4.    If any of the claims of the '766 patent or '808 patent are found to be infringed and not invalid or unenforceable, whether Ciba is entitled to prejudgment and/or postjudgment interest, and the amount of such interest pursuant to 35 U.S.C. § 284 and 28 U.S.C. § 1961.

Hercules' and Cytec's Authority:

35 U.S.C. § 284; 28 U.S.C. § 1961; *General Motors Corp. v. Devex Corp.,* 461 U.S. 648 (1983); *Crystal Semiconductor Corp. v. Tritech Microelectronics, Int'l, Inc.,* 246 F.3d 1336 (Fed. Cir. 2001); *Goodwall Const. Co. v. Beers Const. Co.,* 991 F.2d 751 (Fed. Cir. 1993); *Transmatic, Inc. v. Gulton Indus., Inc.,* 180 F.3d 1343 (Fed. Cir. 1999).

Ciba's Authority:

35 U.S.C. § 284; 28 U.S.C. § 1961; *General Motors Corp. v. Devex Corp.,* 461 U.S. 648 (1983).

Exhibit 6 of the Pretrial Order
Page 2 of 4

5. **If any of the claims of the '766 patent or '808 patent are found to be infringed and not invalid or unenforceable, whether Ciba is entitled to attorneys' fees and costs, and the amount of such fees and cost to be awarded pursuant to 35 U.S.C. §§ 284 and 285.**

Hercules' and Cytec's Authority:

35 U.S.C. §§ 284 and 285; *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367 (Fed. Cir. 2004); *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198 (Fed. Cir. 1986).

Ciba's Authority:

35 U.S.C. §§ 284 and 285; *Automated Business Companies, In.c v. NEC Amer., Inc.*, 202 F.3d 1353 (Fed. Cir. 2000); *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1576 (Fed. Cir. 1983); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998); *Forest Labs, Inc. v. Abbott Labs.*, 339 F.3d 1324 (Fed. Cir. 2003); *Interspiro USA, Inc. v. Figgie Intern., Inc.*, 19 F.3d 927 (Fed. Cir. 1994); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926 (7th Cir. 1997).

6. **If any of the claims of the '766 patent or '808 patent are found to be not infringed, whether Hercules and/or Cytec is entitled to attorneys' fees and costs, and the amount of such fees and cost to be awarded pursuant to 35 U.S.C. §§ 284 and 285.**

Hercules' and Cytec's Authority:

35 U.S.C. §§ 284 and 285; *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990); *Automated Bus. Cos., Inc. v. NEC Am., Inc.*, 202 F.3d 1353 (Fed. Cir. 2000); *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577 (7th Cir. 1981).

Ciba's Authority:

35 U.S.C. §§ 284 and 285; *Revlon, Inc. v. Carson Products Co.*, 803 F.2d 676 (Fed. Cir. 1986); *J.P. Stevens Company, Inc. v. Lex Tex Ltd. Inc.*, 822 F.2d 1047 (Fed. Cir. 1987); *Forest Labs, Inc. v. Abbott Labs.*, 339 F.3d 1324 (Fed. Cir. 2003); *Waymark Corporation v. Porta Systems Corporation*, 334 F.3d 1358 (Fed. Cir. 2003); *Ruiz v. A.B. Chance Company*, 234 F.3d 654 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998).

7. **If any of the claims of the '766 patent or '808 patent are found to be invalid or unenforceable, whether Hercules is entitled to attorneys' fees and costs, and the amount of such fees and cost to be awarded pursuant to 35 U.S.C. §§ 284 and 285.**

Exhibit 6 of the Pretrial Order
Page 3 of 4

Hercules' and Cytec's Authority:

35 U.S.C. §§ 284 and 285; *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348 (Fed. Cir. 2005); *Fox Indus., Inc. v. Structural Preservation Sys.*, 922 F.2d 801 (Fed. Cir. 1990).

Ciba's Authority:

35 U.S.C. §§ 284 and 285; Revlon, Inc. v. Carson Products Co., 803 F.2d 676 (Fed. Cir. 1986); J.P. Stevens Company, Inc. v. Lex Tex Ltd. Inc., 822 F.2d 1047 (Fed. Cir. 1987); *Forest Labs, Inc. v. Abbott Labs.*, 339 F.3d 1324 (Fed. Cir. 2003); *Waymark Corporation v. Porta Systems Corporation*, 334 F.3d 1358 (Fed. Cir. 2003); *Ruiz v. A.B. Chance Company*, 234 F.3d 654 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998).

**B.    Disputed Issues of Law to Be Decided by the Court**

**1.    If any claims of the '766 and/or '808 patents are found to be infringed, and not invalid or unenforceable, whether Ciba is entitled to recover any damages prior to the date this action was filed because the products covered by the patents-in-suit were never marked with those patent numbers and because of Ciba's failure to give adequate legal notice of infringement to Hercules.**

Defendants contend that whether Ciba had a duty to comply with 35 U.S.C. Section 287(a) is an issue of law to be decided by the Court. *Amsted Indus. Inc. v. Buckeye Steel Casting Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994). Ciba does not agree that this is an issue of law to be decided by the Court. Compliance with the actual notice requirement is a question of fact. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

Hercules' and Cytec's Authority:

35 U.S.C. § 287; *Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523 (Fed. Cir. 1993); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178 (Fed. Cir. 1994); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 649 (D. Del. 2004); *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 2000 WL 1728351 (D. Del. Feb. 25, 2000).

Ciba's Authority:

35 U.S.C. § 287; *Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523 (Fed. Cir. 1993); *Bandag, Inc. v. Gerrard Tire Co., Inc.*, 704 F.2d 1578 (Fed. Cir. 1983); *Hanson v. Alpine Valley Ski Area, Inc.*, 718

Exhibit 6 of the Pretrial Order
Page 4 of 4

F.2d 1075, 1076 (Fed. Cir. 1983); *State Contracting & Eng'g. Corp. v. Condotte America, Inc.*, 346 F.3d 1057 (Fed. Cir. 2003).

Exhibit 6 of the Pretrial Order
Page 5 of 4

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS                    )
CORPORATION,                                )
                                            )          C.A. No. 04-293 (KAJ)
                        Plaintiff,          )
                                            )       **JURY TRIAL DEMANDED**
            v.                              )
                                            )
HERCULES INC. and CYTEC INDUSTRIES,         )
INC.,                                       )
                                            )
                        Defendants.         )
                                            )

**EXHIBIT 7**
**CIBA'S LIST OF EXPERT AND FACT WITNESSES**
**INCLUDING SUMMARIES OF ITS EXPERTS' TESTIMONY**

## Ciba's List of Expert and Fact Witnesses
## Including Summaries of Its Experts' Testimony

Ciba intends to call the following witnesses live at trial:

> Casagranda, Jacqueline - Ciba
> Gilbert, Robert G. - Expert
> Hawe, Malcolm - Ciba
> Heard, Michael - Ciba
> Honig, Daniel
> King, Clarence A. - Expert
> Satterfield, Brian - Ciba
> Song, Zhiqiang - Ciba
> Tate, Michael E. - Expert
> Tremont, Steve - Ciba
> Vaynberg, Abraham K. - Hercules
> Wagner, Norman - Expert
> Wright, Matthew - Ciba

Ciba may offer testimony of the following witnesses live or *via* designation (and/or counter designation to defendants' designations) of their depositions depending on their availability to testify live:

> Bleier, Alan - Hercules
> Brady, Richard L. - Hercules
> Bromberg, Lev - MIT
> Carey, William S. - Hercules
> Davis, James R. - Hercules
> Gelman, Robert A. - Hercules
> Greenshields, James N. - Expert
> Harrington, John C. - Hercules
> Jackson, Logan A. - Cytec
> Klass, Charles P. - Expert
> Mangano, John J. - Cytec
> McCall, Brian - Cytec
> Michalopoulos, Daniel
> Morgan, Zeb B. - Cytec
> Rosatti, Louis - Cytec
> Royce, Richard - Hercules
> Walchuk, Brian L. - Hercules
> Waterman, Paul S. - Cytec
> Zhang, Fushan - Hercules

**Exhibit 7 page 1**

## Ciba's List of Expert and Fact Witnesses
## Including Summaries of Its Experts' Testimony

Ciba reserves the right to call any additional witnesses as may be needed for rebuttal purposes. Ciba reserves the right to call any witness on Defendants' witness lists.

Expert Witnesses:

1. <u>Robert G. Gilbert, Ph.D.</u>  Dr. Gilbert is expected to testify at trial regarding the opinions set forth in his expert reports. Dr. Gilbert will offer expert testimony on the subject of polymer chemistry as it relates to the technology described in the '766 and '808 patents and the products involved in this case. Dr. Gilbert will testify about (1) whether the accused PerForm® product infringes the asserted claims of the '808 patent, literally and under the doctrine of equivalents; whether use of the accused PerForm product infringes the asserted claims of the '766 patent, literally and under the doctrine of equivalents; (3) whether the defendants have induced infringement of the asserted claims of the '766 patent; and (4) whether Hercules' claims of invalidity and unenforceability are meritorious. Dr. Gilbert may testify in rebuttal to evidence offered by defendants concerning non-infringement, invalidity and/or unenforceability of the patents-in-suit.

2. <u>Clarence A. King, Ph.D.</u>  Dr. King is expected to testify at trial regarding the opinions set forth in his expert reports. Dr. King will provide a tutorial on the commercial papermaking process in relation to the technology described in the '766 and '808 patents and employed by the defendants. Dr. King will testify about (1) whether use of the accused PerForm product infringes the asserted claims of the '766 patent, literally and under the doctrine of equivalents; (2) whether the defendants have co-infringed the asserted claims of the '766 patent; (3) whether the defendants have induced infringement of the asserted claims of the '766 patent; and (4) whether Hercules' claims of invalidity and unenforceability are meritorious. Dr. King may testify in rebuttal to evidence offered by defendants concerning non-infringement, invalidity and/or unenforceability of the patents-in-suit.

3. <u>Michael E. Tate</u>.  Mr. Tate is expected to testify at trial regarding the opinions set forth in his expert reports, and in rebuttal to any testimony or evidence introduced at trial by the defendants regarding damages. Mr. Tate will offer expert testimony on the subject of damages resulting from defendants' infringement of the patents-in-suit. His testimony will include an economic analysis of Ciba's lost profits, an economic analysis of a reasonable royalty on both the '766

**Exhibit 7 page 2**

**Ciba's List of Expert and Fact Witnesses**
**Including Summaries of Its Experts' Testimony**

patent and the '808 patent, and, if the Court requests, appropriate measures of pre-judgment interest.

4. <u>Norman Wagner, Ph.D.</u>  Dr. Wagner is expected to testify at trial regarding the opinions set forth in his expert reports.  Dr. Wagner will offer expert testimony on the subject of rheology and how rheological tests and parameters are used to characterize the structure of polymers. Dr. Wagner will offer expert testimony concerning the rheological tests conducted on the products involved in this case and what those tests indicate regarding the structure of such products.  Dr. Wagner may testify in rebuttal to evidence offered by defendants concerning non-infringement, invalidity and/or unenforceability of the patents-in-suit.

**Exhibit 7 page 3**

RLF1-3024702-1

# EXHIBIT 8

## Exhibit 8: Joint Hercules and Cytec Objections to Ciba's Witness Lists

**Expert Witnesses:**

1.  Ciba's Summary:

Robert G. Gilbert, Ph.D. Dr. Gilbert is expected to testify at trial regarding the opinions set forth in his expert reports. Dr. Gilbert will offer expert testimony on the subject of polymer chemistry as it relates to the technology described in the '766 and '808 patents and the products involved in this case. Dr. Gilbert will testify about (1) whether the accused PerForm® product infringes the asserted claims of the '808 patent, literally and under the doctrine of equivalents; whether use of the accused PerForm product infringes the asserted claims of the '766 patent, literally and under the doctrine of equivalents; (3) whether the defendants have induced infringement of the asserted claims of the '766 patent; and (4) whether Hercules' claims of invalidity and unenforceability are meritorious. Dr. Gilbert may testify in rebuttal to evidence offered by defendants concerning non-infringement, invalidity and/or unenforceability of the patents-in-suit.

*Hercules' and Cytec's Objections:*

*Hercules and Cytec object to Dr. Gilbert's testimony relating to infringement under the doctrine of equivalents for all the reasons set forth in (Joint) Motion in Limine III: Ciba Should be Precluded From Offering Any Argument or Evidence of Infringement of the '766 and/or '808 Patents Under the Doctrine of Equivalents and Should be Precluded From Comparing Hercules' PerForm SP9232 Product to Ciba's Polyflex Product (Joint Hercules and Cytec Request). To the extent Dr. Gilbert may rely on pre-suit testing of Hercules' PerForm® product that took place at Ciba's Suffolk, Virginia facility, Hercules and Cytec object to this testimony for all the reasons set forth in (Joint) Motion*

Exhibit 8 of the Pretrial Order
Page 1 of 5

*in Limine V: Ciba Should be Precluded From Offering Evidence Regarding Pre-Suit*

*Testing of PerForm in Ciba's Suffolk, Virginia Facility Due to Spoliation (Joint Hercules*

*and Cytec Request) Hercules objects to the Second Supplemental Expert Report of*

*Robert G. Gilbert, Ph.D. (May 23, 2006) as untimely and inappropriate, and objects to*

*any testimony by Dr. Gilbert offering any opinions stated therein, and any reliance for*

*those opinions by Dr. Gilbert on the exhibits referred to or referenced therein. Hercules*

*will file its Letter-Brief with the Court on May 30, 2006 asking the Court to strike this*

*untimely Second Supplemental Report by Dr. Gilbert, or otherwise preclude Dr. Gilbert*

*from relying on or offering the opinions or relying on exhibits therein. To the extent Dr.*

*Gilbert may seek to offer opinions as to any alleged joint research or development by*

*Hercules and Cytec of Hercules' PerForm® SP9232 product, Hercules objects for all of*

*the reasons stated in Hercules' Motion in Limine II: The Court Should Preclude Ciba*

*From Arguing or Introducing Evidence of any Alleged Joint Research or Development by*

*Hercules and Cytec of PerForm SP9232 (Hercules' Request). Hercules and Cytec also*

*object to Dr. Gilbert's testimony to the extent he seeks to provide opinions relating to*

*"induced infringement" because he has never addressed that issue in any expert report*

*and further that he is unqualified to give such opinions. Hercules objects to Dr. Gilbert's*

*testimony to the extent he seeks to provide opinions relating to "unenforceability"*

*because he has never addressed that issue in any expert report and further that he is*

*unqualified to give such opinions.*

2. Ciba's Summary:

<u>Clarence A. King, Ph.D.</u> Dr. King is expected to testify at trial regarding the opinions set

forth in his expert reports. Dr. King will provide a tutorial on the commercial

Exhibit 8 of the Pretrial Order
Page 2 of 5

papermaking process in relation to the technology described in the '766 and '808 patents and employed by the defendants. Dr. King will testify about (1) whether use of the accused PerForm product infringes the asserted claims of the '766 patent, literally and under the doctrine of equivalents; (2) whether the defendants have co-infringed the asserted claims of the '766 patent; (3) whether the defendants have induced infringement of the asserted claims of the '766 patent; and (4) whether Hercules' claims of invalidity and unenforceability are meritorious. Dr. King may testify in rebuttal to evidence offered by defendants concerning non-infringement, invalidity and/or unenforceability of the patents-in-suit.

*Hercules' and Cytec's Objections:*

*Hercules and Cytec object to Dr. King's testimony relating to infringement under the doctrine of equivalents for all the reasons set forth in (Joint) Motion in Limine III: Ciba Should be Precluded From Offering Any Argument or Evidence of Infringement of the '766 and/or '808 Patents Under the Doctrine of Equivalents and Should be Precluded From Comparing Hercules' PerForm SP9232 Product to Ciba's Polyflex Product (Joint Hercules and Cytec Request). Hercules and Cytec also object to Dr. Gilbert's testimony to the extent he seeks to provide opinions relating to "induced infringement" because he has never addressed that issue in any expert report and further that he is unqualified to give such opinions. Hercules objects to Dr. Gilbert's testimony to the extent he seeks to provide opinions relating to "unenforceability" because he has never addressed that issue in any expert report and further that he is unqualified to give such opinions.*

Exhibit 8 of the Pretrial Order
Page 3 of 5

3.     Ciba's Summary:

Michael F. Tate. Mr. Tate is expected to testify at trial regarding the opinions set forth in

his expert reports, and in rebuttal to any testimony or evidence introduced at trial by the

defendants regarding damages. Mr. Tate will offer expert testimony on the subject of

damages resulting from defendants' infringement of the patents-in-suit. His testimony

will include an economic analysis of Ciba's lost profits, an economic analysis of a

reasonable royalty on both the '766 patent and the '808 patent, and, if the Court requests,

appropriate measures of pre-judgment interest.

*Hercules' and Cytec's Objections:*

*Hercules objects to Mr. Tate's testimony for all the reasons set forth in Hercules' Motion*

*for Partial Summary Judgment Limiting Damages Under 35 U.S.C. §287(a). This motion*

*is pending before the Court. See D.I. 284.*

4.     Ciba's Summary:

Norman Wagner, Ph.D. Dr. Wagner is expected to testify at trial regarding the opinions

set forth in his expert reports. Dr. Wagner will offer expert testimony on the subject of

rheology and how rheological tests and parameters are used to characterize the structure

of polymers. Dr. Wagner will offer expert testimony concerning the rheological tests

conducted on the products involved in this case and what those tests indicate regarding

the structure of such products. Dr. Wagner may testify in rebuttal to evidence offered by

defendants concerning non-infringement, invalidity and/or unenforceability of the

patents-in-suit.

Exhibit 8 of the Pretrial Order
Page 4 of 5

*Hercules' and Cytec's Objections:*

*Hercules and Cytec object to Dr. Wagner's testimony to the extent it was not discussed in his expert reports for all the reasons set forth in (Partial Joint) Motion IV. Ciba Should be Precluded From Offering Norman Wagner's Testimony During its Case-in-Chief and From Offering Testimony Outside the Scope of His Reports (Hercules Request with Cytec Joining Only as to Infringement Issues). To the extent Dr. Wagner may rely on pre-suit testing of Hercules' PerForm® product that took place at Ciba's Suffolk, Virginia facility, Hercules and Cytec object to this testimony for all the reasons set forth in (Joint) Motion in Limine V. Ciba Should be Precluded From Offering Evidence Regarding Pre-Suit Testing of PerForm in Ciba's Suffolk, Virginia Facility Due to Spoliation (Joint Hercules and Cytec Request). Additionally, Hercules and Cytec object to Dr. Wagner's testimony to the extent it relates to infringement under the doctrine of equivalents for all the reasons set forth in (Joint) Motion in Limine III. Ciba Should be Precluded From Offering Any Argument or Evidence of Infringement of the '766 and/or '808 Patents Under the Doctrine of Equivalents and Should be Precluded From Comparing Hercules' PerForm SP9232 Product to Ciba's Polyflex Product (Joint Hercules and Cytec Request)*

## II.    Fact Witnesses

*Ciba's Trial Witness List contains eleven (11) witnesses Ciba says it intends to call live at trial, and nineteen others that "Ciba may offer testimony of . . . live or via depositions depending on their availability to testify live." Hercules and Cytec object to Ciba's Trial Witness List because it is impossible to tell from the way in which Ciba identifies these 19 "may offer" witnesses which, if any, Ciba actually would like to call live at trial. Nor has Ciba provided Hercules or Cytec with this information despite Hercules' and Cytec's requests for it.*

Exhibit 8 of the Pretrial Order
Page 5 of 5

# EXHIBIT 9

**Exhibit 9: List of Witnesses Hercules Expects to Call**

I.    Expert Witnesses:

    A.  James N. Greenshields (live)

**REDACTED**

    Mr. Greenshields will testify regarding the opinions set forth in his expert reports (dated August 19, 2005 and September 19, 2005) and at his deposition on October 27, 2005, and in response to any testimony offered by Ciba regarding surfactant chemistry and emulsion formation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In addition, Mr. Greenshields will testify regarding the statements made by the applicants during prosecution of the patents-in-suit regarding surfactants, surfactant chemistry, and crosslinking.

Mr. Greenshields may also testify in rebuttal regarding any testimony or evidence introduced at trial by Ciba that is within his field of expertise.

    B.    Charles P. Klass (live)

    Mr. Klass will testify regarding the opinions set forth in his expert reports (dated July 22, 2005, August 19, 2005, and September 19, 2005) and at his deposition on October 21, 2005, and in response to any testimony offered by Ciba regarding papermaking technology. Mr. Klass will testify about papermaking processes and ingredients used in those processes around 1990; the technology disclosed in the '766 patent; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Exhibit 9 of the Pretrial Order
Page 1 of 5



Consistent with the above, Mr. Klass may also testify in rebuttal to any testimony or evidence introduced by Ciba that is within his field of expertise (papermaking process and technology).

C.    James E. Malackowski (live)

Mr. Malackowski will testify based on his opinions set forth in his expert report (dated September 23, 2005) and at his deposition on October 31, 2005, and in response to any testimony offered by Ciba on issues concerning damages. His opinions relate to the subject of damages for Hercules' alleged infringement of the '808 and '766 patents. His opinions will include an economic analysis of Ciba's lost profits, an economic analysis of a reasonable royalty under the patents-in-suit, and appropriate measures of pre-judgment interest, should Hercules be found liable for infringement of either of the patents-in-suit.    Consistent with the above, Mr. Malackowski may also testify in rebuttal to any testimony or evidence introduced by Ciba

Exhibit 9 of the Pretrial Order
Page 2 of 5

that is within his field of expertise (*e.g.*, analyzing licenses and calculating reasonable royalties and lost profits).

    D.     Robert K. Prud'homme (live)        **REDACTED**

    Dr. Prud'homme will testify based on his opinions set forth in his expert reports (dated July 22, 2005, August 19, 2005, September 19, 2005, and October 31, 2005), his declaration (dated January 27, 2006), and at his deposition on October 26, 2005, and in response to any testimony offered by Ciba regarding the issues of patent validity, patent enforceabilty, and/or alleged infringement. ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████
          ██████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████ Indeed, Dr. Prud'homme will testify that Hypermer B246SF is fundamentally different from the crosslinking agents listed in the patents- in-suit. ███████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Exhibit 9 of the Pretrial Order
Page 3 of 5





Dr. Prud'homme may also testify in rebuttal regarding any testimony or evidence within his field of expertise (polymer science) introduced at trial by Ciba.

II.    Fact Witnesses:

    a.    Igor Aksman (live)

    b.    Anthony Burke (by deposition)

    c.    William Carey (live and/or by deposition)

    d.    Jackie Casagranda (live and/or by deposition)

    e.    Gordon Chen (by deposition)

    f.    James Davis (live)

    g.    William Freeman (live)

    h.    Robert Gelman (live)

    i.    Allen Grimsley (by deposition)

    j.    John Harrington (live)

    k.    Elieth Harris (by deposition)

    l.    Malcolm Hawe (by deposition)

    m.    Dan Honig (live)

    n.    Joe Kozakiewicz (live)

    o.    Ernest Laletas (live)

    p.    Daniel Michalopolous (by deposition)

    q.    Zeb Morgan (live)

    r.    Richard Royce (live)

    s.    Roderick Ryles (live)

Exhibit 9 of the Pretrial Order
Page 4 of 5

t.    Zhiqiang Song (live and/or by deposition)

u.    Stephen Tremont (by deposition)

v.    Frank Van Riet (live and/or by deposition)

w.    Brian Walchuk (live)

x.    Matthew Wright (live and/or by deposition)

Hercules reserves the right to call any person on Ciba's or Cytec's witness lists, and to call any person live where Ciba or Cytec object to the use of deposition testimony. Hercules also reserves the right to supplement its witness list for the purpose of establishing the admissibility of documents used during depositions.

Exhibit 9 of the Pretrial Order
Page 5 of 5

# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 04-293(KAJ) |
| v. | ) ) | |
| HERCULES INCORPORATED and CYTEC INDUSTRIES, INC., | ) ) ) | |
| Defendants. | ) | |

**EXHIBIT 10
CYTEC INDUSTRIES INC.'S WITNESS LIST**

Cytec Industries, Inc. may call the following witnesses live in its case at trial:

Roderick Ryles – Cytec

John Mangano – Cytec

Joseph Kozakiewicz – Cytec

Zeb Morgan – Cytec

Brian McCall – Cytec

John Harrington – Hercules

Brian Walchuk – Hercules

Jacqueline Casagranda – Ciba

Zhiqiang Song – Ciba

Matthew Wright – Ciba

Charles Klass – Expert

Robert Prud'Homme – Expert

James Malackowski – Expert

James Greenshields – Expert

Cytec reserves the right to call any person on Ciba's or Hercules' witness lists. Cytec also reserves the right to supplement its witness list for the purpose of establishing the admissibility of documents used during depositions.

Exhibit 10 page 1