# EXHIBIT 19

# Part 2

# EXHIBIT C

ABANDONED

APPEAL NO. 92-3877

| | PATENT DATE | PATENT NUMBER |
|---|---|---|

07/552958

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 07/552,958 | 07/16/90 RULE 60 | 526 | 201 | 155 | |

...GEN E. NEFF, STAMFORD, CT; RODERICK G. RYLES, MILFORD, CT.

*CONTINUING DATA*******************
VERIFIED     THIS APPLN IS A DIV OF   07/285,931  12/19/88

*FOREIGN/PCT APPLICATIONS************
VERIFIED

FOREIGN FILING LICENSE GRANTED 08/04/90

| priority claimed | ☐yes ☐no | AS FILED | STATE OR COUNTRY | SHEETS DRWGS | TOTAL CLAIMS | INDEP CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met | ☐yes ☐no | → | CT | 0 | 8 | 1 | $ 370.00 | 30 737-01 |
| Verified and Acknowledged | Examiner's Initials | | | | | | | |

FRANK M. VAN RIET
AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
P.O. BOX 60
STAMFORD, CT  06904-0060

WATER-SOLUBLE HIGHLY BRANCHED POLYMERIC MICROPARTICLES

U.S. DEPT. of COMM.-Pat. & TM Office-PTO-436L (rev. 10-78)

PARTS OF APPLICATION
FILED SEPARATELY

| NOTICE OF ALLOWANCE MAILED | PREPARED FOR ISSUE | | | CLAIMS ALLOWED | |
|---|---|---|---|---|---|
| | | | | Total Claims | Print Claim |
| | Assistant Examiner | Docket Clerk | | | |
| ISSUE FEE | | | | DRAWING | |
| | | | | Sheets Drwg. | Figs. Drwg. | Print Fig. |
| Amt Due | Date Paid | | | | |
| | | | Primary Examiner | | |
| | ISSUE CLASSIFICATION | | | ISSUE BATCH NUMBER | |
| Label Area | Class | Subclass | | | |

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

PTO-436

DEFENDANT'S EXHIBIT

HERC0076167

07/552958

**ABANDONED**

APPROVED FOR LICENSE ☐

INITIAL JUL 2 5 00 2 8

RECEIVED
AUG 1 0 1990
GROUP 150

Received
or
Mailed

Entered
or
Counted

## CONTENTS

| | | |
|---|---|---|
| 1. Application _____ papers. | | July 16, 1990 |
| 2. Rec. a | | 10/5/91   7/16 |
| 3. leg 3 mos | | 11/5/91 |
| 4. Ext. of time ① | | 5/28/91  em=5/2 |
| 5. amdt B attachments | | 5/28/91 em 5/23 |
| 6. Final Rej 3 mos | | 6-20-91  1/7 |
| 7. notice of Appeal 92-3877 | | Sept 19, 1991  Due |
| 8. appeal Brief | | Sept 19, 1991  10/1 |
| 9. Examiner's answer | | nov 9, 1991  11/4 |
| 10. affirmed  DECISION BY BOARD | MAR 17 1993 | 6/14 |
| 11. notice of appeal | | 6/17/93  6/13/97 |
| 12. payment for order | | 6/13/97 |
| 13. request for address | | 4-8-98 |
| 14. request for access | | 3-8-05 |
| 15. | | |
| 16. | | |
| 17. | | |
| 18. | | |
| 19. | | |
| 20. | | |
| 21. | | |
| 22. | | |
| 23. | | |
| 24. | | |
| 25. | | |
| 26. | | |
| 27. | | |
| 28. | | |
| 29. | | |
| 30. | | |
| 31. | | |
| 32. | | |

HERC0076168

Staple Issue Slip Here



INDEX OF CLAIMS

HERC0076169



| SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 210 | 732 | 12/13/90 | PD |
| | 733 | | |
| | 734 | | |

| SEARCH NOTES | | |
|---|---|---|
| | Date | Exmr. |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| | | | |

HERC0076170

- 25 -

CLAIMS

1. Highly branched, water-soluble, high molecular weight cationic or anionic polymeric microparticles wherein said microparticles have an average unswollen diameter of less than about 0.1 micron, a solution viscosity of at least about 1.8 mPa s, and having a branching agent content of at least about 4 molar parts per million based on the monomeric units present in the polymer, said microparticles having a solubility quotient of greater than about 30 percent.

2. Polymeric microparticles as defined in Claim 1 wherein said branching agent content ranges from about 4 to about 4000 molar parts per million based on the monomeric units present in the polymer.

3. Polymeric microparticles as defined in Claim 1 wherein said solution viscosity is at least about 2.0 mPa s.

4. Polymeric microparticles as defined in Claim 2 wherein said solution viscosity is at least about 2.2 mPa.s.

5. Polymeric microparticles as defined in Claim 3 wherein said solution viscosity is at least about 2.4 mPa.s.

6. A polymeric microparticles as defined in Claim 1 wherein said microparticles comprise an acrylamide monomer copolymerized with at least one cationic or anionic ethylenically unsaturated comonomer.

7. Polymeric microparticles as defined in Claim 6 wherein said cationic, ethylenically unsaturated comonomer is selected from N,N-dialkylaminoalkylacrylates and methacrylates and their quaternary or acid salts; diallyl-dimethylammonium

HERC0076171

- 26 -

salts, N,N-dialkylaminoalkylacrylamides and
methacrylamides and their quaternary or acid salts,
mixtures thereof and the like.

8.  Polymeric microparticles as defined in Claim 7
wherein said cationic ethylenically unsaturated,
comonomer comprises acryloxyethyltrimethylammonium
chloride.

9.  Polymeric microparticles as defined in Claim 6
wherein said anionic ethylenically unsaturated monomer
is selected from (meth)acrylic acids;
sulfoalkyl(meth)acrylic acids, sulfonated styrenes;
unsaturated dicarboxylic acids; sulfo(meth)acrylamides
and salts of said acids.

10.  Polymeric microparticles as defined in Claim 9
wherein said anionic monomer comprises salt of acrylic
acid.

11.  Polymeric microparticles as defined in Claim 2
wherein the branching agent is a difunctional monomer
selected from N,N'-methylenebisacrylamide;
N,N'-methylenebismethacrylamide; polyethyleneglycol
.dimethacrylate; N-vinyl acrylamide; polyethyleneglycol
diacrylate; glycidyl acrylate; divinylbenzene; acrolein;
glyoxal; diepoxy compounds; epichlorohydrin; and mix-
tures thereof.

12.  Polymeric microparticles as defined in Claim
11 wherein said branching agent comprises
N,N'-methylenebisacrylamide.

13.  Cationic polymeric microparticles as defined
in Claim 1 wherein said solubility quotient is greater
than about 40 percent.

14.  A process of preparing highly branched, water-
soluble, high molecular weight, anionic or cationic
polymeric microparticles as defined in Claim 1, said
process comprising:

- 27 -

(a) admixing

   (i) an aqueous solution comprising at least one ethylenically unsaturated cationic or anionic comonomer and at least 4 molar parts per million, based on the initial monomer content, of at least one branching agent;

   (ii) an oil comprising at least one hydrocarbon liquid; and

   (iii) an effective amount of surfactant or surfactant mixture, so as to form an inverse emulsion which, when subjected to polymerization conditions, results in a polymer having a particle size of less than 0.1 micron in unswollen diameter; and

(b) subjecting the inverse emulsion obtained in step (a) to copolymerization conditions.

15. A process as defined in Claim 14 wherein said aqueous solution of step (a)(i) comprises acryloxyethyl trimethylammonium chloride as said cationic comonomer and N,N'-methylenebisacrylamide as said branching agent.

16. A process as defined in Claim 14 wherein said aqueous solution of step (a)(i) comprises acrylic acid as said anionic comonomer and N,N'-methylenebisacrylamide as said branching agent.

17. A process as defined in Claim 14 wherein said hydrocarbon liquid of step (a)(ii) comprises a saturated hydrocarbon.

18. A process as defined in Claim 14 wherein said surfactant or surfactant mixture of step (a)(iii) comprises polyoxyethylene(20)sorbitan monooleate;

HERC0076173

- 28 -

polyoxyethylene sorbitol hexaoleate or a mixture there-of.

19. A process as defined in Claim 14 wherein said copolymerization of step (b) comprise adding a polymerization initiator.

20. A process as defined in Claim 20 wherein said polymerization initiator comprises sodium metabisulfite and tertiary-butyl hydroperoxide.

21. A process as defined in Claim 14 wherein said polymerization of step (b) comprise subjecting said inverse microemulsion to ultraviolet irradiation.

22. A process as defined in Claim 14 wherein the aqueous solution of step (a) (i) includes an effective amount of a chain-transfer agent.

23. Highly branched, water-soluble, high molecular weight, non-ionic, polymeric microparticles wherein said microparticles have an average unswollen diameter of less than about 0.1 micron, a solution viscosity of at least about 1.8 mPa s and a branching agent content of above about 4 molar parts per million based on the monomeric units present in the polymer.

24. Polymeric microparticles as defined in Claim 23 wherein said branching agent content ranges from about 4 to about 4000 molar parts per million, based on the monomeric units present in the polymer.

25. Polymeric microparticles as defined in Claim 23 wherein said solution viscosity is at least about 2.0 mPa s.

26. Polymeric microparticles as defined in Claim 25 wherein said solution viscosity is at least about 2.2 mPa s.

27. Polymeric microparticles as defined in Claim 26 wherein said solution viscosity is at least about 2.4 mPa·s.

HERC0076174

- 29 -

28. Polymeric microparticles as defined in Claim 23 wherein said non-ionic monomer is selected from acrylamide; methacrylamide; N-alkylacrylamides; N,N-dialkylacrylamides, N-vinylmethylformamide; N-vinyl pyrrolidone and mixtures thereof.

29. A polymeric microparticle as defined in Claim 23 comprising acrylamide homopolymer.

30. A process as defined in Claim 14 wherein the process also includes step (c), comprising recovering the polymeric microparticles from the inverse microemulsions.

31. A process of preparing highly branched, water-soluble, high molecular weight, polymeric, non-ionic, microparticles as defined in Claim 23, said process comprising:

    (a) admixing

        (i) an aqueous solution comprising at least one non-ionic monomer and at least 4 molar parts per million based on the initial monomer content of at least one branching agent;

        (ii) an oil comprising at least one hydrocarbon liquid; and

        (iii) an effective amount of surfactant or surfactant mixture, so as to form an inverse emulsion which, when subjected to polymerization conditions, results in a polymer having a particle size of less than about 0.1 micron in unswollen diameter; and

    (b) subjecting the inverse emulsion obtained in step (a) to polymerization conditions.

HERC0076175

- 30 -

32. A process as defined in Claim 31 wherein the process includes step (c), comprising recovering the polymeric microparticles from the inverse microemulsion.

33. A process as defined in Claim 31 wherein said branching agent comprises N,N'-methylenebisacrylamide.

34. A process as defined in Claim 31 wherein said oil of step (a)(ii) comprises a saturated hydrocarbon.

35. A process as defined in Claim 31 wherein said surfactant or surfactant mixture of step (a)(iii) comprises polyoxyethylene sorbitan (20) monooleate, polyoxyethylene sorbitol hexaoleate or a mixture thereof.

36. A process as defined in Claim 31 wherein said polymerization of step (b) comprises adding a polymerization initiator.

37. A process as defined in Claim 36 wherein said polymerization initiator comprises sodium metabisulfate and tertiary butyl peroxide.

38. A process as defined in Claim 31 wherein said polymerization of step (b) comprises subjecting said inverse emulsion to ultraviolet irradiation.

39. A process as defined in Claim 31 wherein the aqueous solution (i) includes an effective amount of chain-transfer agent.

40. A method of releasing water from a dispersion of suspended solids which comprises (a) adding to the dispersion from about 0.1 to about 50,000 parts per million of dispersion solids of an aqueous solution of highly branched, water-soluble, high molecular weight, polymeric microparticles, flocculant having an average unswollen diameter of less than about 0.1 micron, a solution viscosity of at least about 1.8 mPa·s, a solubility quotient of about 30 percent, and a branching

HERC0076176

- 31 -

agent content of at least about 4 molar parts per
million based on the monomeric units in the polymer, and
(b) dewatering the mixture of the dispersion of suspend-
ed solids and the polymeric flocculant.

41.  A method as defined in Claim 40 wherein the
polymeric flocculant has a solution viscosity of at
least about 2.0 mPa·s.

42.  A method as defined in Claim 40 wherein said
solution viscosity is at least about 2.2 mPa·s.

43.  A method as defined in Claim 40 wherein said
solution viscosity is at least about 2.4 mPa·s.

44.  A method as defined in Claim 40 wherein said
polymeric flocculant is a polymer formed from one or
more ethylenically unsaturated monomers selected from
acrylamide; methacrylamides; N-alkylacrylamides;
N,N-dialkylacrylamides; N-vinyl methylacetamide; N-vinyl
methylformamide; N-vinyl pyrrolidone;
dialkylaminoalkylacrylates or methacrylates and their
quaternary or acid salts,
N,N-dialkylaminoalkylacrylamides and methacrylamides and
their quaternary or acid salts or diallyl
dimethylammonium acid salts.

45.  A method as defined in Claim 44 wherein said
polymeric flocculant is a polymer formed from one or
more ethylenically unsaturated monomers selected from
acrylamide; N,N-dialkylaminoalkylacrylates and
methacrylates and their quaternary or acid salts, or
diallyl dimethylammonium acid salts.

46.  A method as defined in Claim 45 wherein said
polymeric flocculant is a polymer formed from acrylamide
in combination with at least one cationic monomer.

47.  A method as defined in Claim 46 wherein said
polymeric flocculant is a polymer formed from acrylamide
and acryloxyethyltrimethylammonium chloride.

HERC0076177

DECLARATION FOR PATENT APPLICATION

Docket No.: (30,737)

As a below-named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled: WATER-SOLUBLE, HIGHLY BRANCHED POLYMERIC MICROPARTICLES

the specification of which:

(check one)     (x)  is attached hereto

              ( )  was filed on _____
                   as Application Serial No _____

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Sec. 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, Sec. 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application (s)

_____  _____  _____   Yes  No
(Number)        (Country)     .(Day/Month/Year filed)

I hereby claim the benefit under Title 35, United States Code, Sec. 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Sec. 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Sec. 1.56(a) which occurred between the filing date of prior application and the national or PCT international filing date of this application:

_____  _____  _____
(Application Serial No.)    (Filing Date)        (Status)
                                         (patented, pending
                                          abandoned)

HERC0076178

As a named inventor, I hereby appoint the following attorneys and/or agents to prosecute this application and transact all business in the Patent and Trademark Office connected therewith:

| NAME | REG. NO. | TELEPHONE NO. |
|------|----------|---------------|
| Frank M. Van Riet | 19,933 | (203) 348-7331  Ext. 2614 |
| Gordon L. Hart | 20,191 | (203) 348-7331  Ext. 2255 |
| Roger S. Benjamin | 27,025 | (203) 348-7331  Ext. 2611 |
| Michael J. Kelly | 27,910 | (203) 348-7331  Ext. 2748 |
| William H. Calnan | 29,520 | (203) 348-7331  Ext. 2309 |

whose office address is 1937 West Main Street, P.O. Box 60, Stamford, Connecticut 06904-0060. All future communications are to be directed to ____ Frank M. Van Riet ____.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of sole or first inventor ____ Roger Edgar Neff ____

Inventor's Signature _____   12/16/88
                                                    (Date)

Residence _66 Woodridge Drive; Stamford, Connecticut_

Citizenship _United States_

Post Office Address _66 Woodridge Drive; Stamford, Connecticut_

Full name of second joint inventor _Roderick Glyn Ryles_

Inventor's Signature _____   12-16-88
                                                    (Date)

Residence _96 Wendy Road; Milford, Connecticut_

Citizenship _British_

Post Office Address _96 Wendy Road; Milford, Connecticut_

HERC0076179

30,737

# Assignment

For Good And Valuable Considerations, We, Roger Edgar Neff

of Stamford, Connecticut    Roderick Glynn Ryles

of Milford, Connecticut

of _____, and

of _____ do hereby sell, assign and transfer unto

AMERICAN CYANAMID COMPANY

a corporation organized under the laws of the State of Maine, and having an office at 1937 West Main Street, Stamford, State of Connecticut, herein sometimes called "ASSIGNEE", the entire right, title and interest, together with all rights of priority, in and to our invention for the IMPROVEMENT IN WATER-SOLUBLE, HIGHLY BRANCHED POLYMERIC MICROPARTICLES

as described and/or claimed in our application for Letters Patent of the United States of America, Serial No. _____ filed concurrently herewith and as described and/or claimed in any and all applications for Letters Patent of all foreign countries together with all Letters Patent issuing on any of the aforesaid applications for Letters Patent, the same to be held and enjoyed by ASSIGNEE, its successors, assigns or other legal representatives, to the full ends of the terms of all said Letters Patent therefor which may be granted.

And We Hereby Authorize ASSIGNEE to make applications for and to receive Letters Patent for said invention in any of said countries in its own name, or in our name, at its election.

And We Hereby Covenant And Agree that we will execute or procure any further necessary assurance of the title to said invention and any Letters Patent which may issue therefor and that we will, at any time, upon the request and at the expense of ASSIGNEE deliver any testimony in any legal proceedings and execute all papers that may be necessary or desirable to perfect the title to said invention or any Letters Patent which may be granted therefor in ASSIGNEE, its successors, assigns, or other legal representatives, and that we will, at any time, upon the request and at the expense of ASSIGNEE execute any continuations, continuations-in-part, divisional, or any other additional applications for Letters Patent for said invention or any part or parts thereof, all of which applications and any Letters Patent issuing thereon are hereby assigned to ASSIGNEE, and will make all rightful oaths, and do all lawful acts requisite for procuring the same therein, without further compensation, but at the expense of ASSIGNEE, its successors, assigns or other legal representatives.

And We Hereby Authorize And Request the Commissioner of Patents to issue any and all Letters Patent of the United States for said invention, resulting from any of the aforesaid applications to said AMERICAN CYANAMID COMPANY, as sole assignee.

Witness our hands and seals this 16th day of December
19 88

_Roger Edgar Neff_ ................ L. S.
ROGER EDGAR NEFF

_Roderick Glyn Ryles_ ............ L. S.
RODERICK GLYN RYLES

_____ L. S.

_____ L. S.

## Acknowledgment

State of Connecticut
County of Fairfield        ss:
On this 16th day of December, 19 88,
personally appeared before me Roger Edgar Neff
Roderick Glyn Ryles
and _____ to me known, and known by me to be the same persons described in and who executed the foregoing instrument, and acknowledged that they executed the same, of their own free will and for the purposes set forth.

SEAL                                    _Norma D. Mordach_
                                        Notary Public.

OOF #0130 Rev. 3-44            My Commission Expires March 31, 1991

07/552958

(Rule 60) [REV.4Apr89/MB4-3]

Docket No. 30,737-01

PATENT

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Ha
D. Gassoway
8-16-90

FILING UNDER 37 CFR 1.60(b)

This is a request for filing a
[  ] Continuation
[ X ] Divisional

application under 37 CFR 1.60, of pending application Serial
Number 07/285,931 filed on <u>December 19, 1988</u> of
                              (date)

<u>Roger Edgar Neff; and Roderick Glyn Ryles</u>
        (inventors)

<u>Water-Soluble Highly Branched Polymeric Microparticles</u>
        (Title)

1.  Copy of Prior Application as Filed Which is Attached
    [ X ] I hereby verify that the attached papers are a true
          copy of what is shown in my records to be the above
          identified prior application, including the
          declaration originally filed (37 CFR 1.60).

CERTIFICATION UNDER 37 CFR 1.10
    I hereby certify that this New Application Transmittal and the
documents referred to as enclosed therein are being deposited with
the United States Postal Service on this date _____
in an envelope as "Express Mail Post Office to Addressee" Mailing
Label Number _____ addressed to the: Commissioner of
Patents and Trademarks, Washington, D.C 20231.

_____
(name of person mailing paper)

_____
(Signature of person mailing paper)

HERC0076181

(Rule 60) [REV.4Apr89/MB4-3]   -2-

The copy of the papers of prior application as filed which
are attached are as follows:

[ X ] _24_ page(s) of specification
[ X ] _7_ page(s) of claims
[ X ] _1_ page(s) of abstract
[ ] ____ sheet(s) of drawing
[ ] ____ copy of pages of declaration and power
         of attorney showing applicant's signature

2.  Amendments
    [ X ] Cancel in this application original claims
          1-39
          of the prior application before calculating the filing
          fee. (At least one original independent claim is
          retained for filing purposes.)

    [ ] A preliminary amendment is enclosed. (Claims added by
        this amendment have been properly numbered
        consecutively beginning with the number next following
        with the highest numbered original claim in the prior
        application.)

3.  Petition for Suspension of Prosecution for the Time Necessary
    to File an Amendment
    [ ] Provided herewith is a Petition To Suspend Prosecution
        for the Time Necessary to File An Amendment (New
        Application Filed Concurrently)

4.  Fee Calculation

| CLAIMS AS FILED | | | | |
|---|---|---|---|---|
| (1) FOR | (2) NUMBER FILED | (3) NUMBER EXTRA | (4) RATE | (5) BASIC FEE ($370.00) |
| TOTAL CLAIMS | 8- 20 = | | X $12.00 | |
| INDEP. CLAIMS | 1- 3 = | | X $36.00 | |
| MULTIPLE DEPENDENCY FEE | | | $ 120.00 | |
| RECORDING OF ASSIGNMENT | | | $ 8.00 | 8.00 |
| | | | TOTAL FILING FEE | $ 378.00 |

HERC0076182

(Rule 60) [REV.4Apr89/MB4-J]   -J-

5.  Drawings
    [   ] Transfer the following sheet(s) of drawing from the
         prior application to this application:
         _____
    [   ] A copy of the amendment cancelling these sheets of
         drawing in the prior application is attached.
    [   ] New drawings are enclosed
         [   ] formal
         [   ] informal
6.  Relate Back - 35 U.S.C. 120
    [ X ] Amend the specification by inserting before the first
         line the sentence:
         "This is a
         [   ] continuation
         [ X ] divisional
         of co-pending application Serial Number 07/285,931
         filed December 19, 1988."
7.  Inventorship Statement
    (a)  With respect to the prior copending U.S. application
         from which this application claims benefit under 35
         USC 120, the inventor(s) in this application is (are):
         [ X ] the same
         [   ] less than those named in the prior application
              and it is requested that the following
              inventor(s) identified above for the prior
              application be deleted:
              _____
              _____
    (b)  The inventorship for all the claims in this
         application are
         [ X ] the same
         [   ] not the same, and an explanation, including the
              ownership of the various claims at the time the
              last claimed invention was made, is submitted.

HERC0076183

(Rule 60) [REV.4Apr89/NB4-3]    -4-

8.  Assignment
    [ X ] The prior application is assigned of record to
                    American Cyanamid Company
                    1937 West Main Street
                    P.O. Box 60
                    Stamford, CT 06904-0060
    [ X ] An assignment of the invention is attached.
9.  Fee Payment being made at this time
    [ X ] filing fee              $ 370.00
    [ X ] recording assignment    $   8.00
                        TOTAL  $ 378.00
10. Method of Payment of Fees:
    Charge Deposit Account No. 01-1300 in the amount of $ 378.00
    A duplicate of this transmittal is attached.
11. Instructions as to Overpayment:
    Credit any overpayment to Deposit Account No. 01-1300.
12. Power of Attorney
    [ X ] The Power of Attorney in the prior application is to

| | |
|---|---|
| Frank M. Van Riet | 19933 |
| (Attorney) | (Reg. No.) |
| Gordon L. Hart | 20191 |
| (Attorney) | (Reg. No.) |
| Roger S. Benjamin | 27025 |
| (Attorney) | (Reg. No.) |
| Michael J. Kelly | 27910 |
| (Attorney) | (Reg. No.) |
| William H. Calnan | 29520 |
| (Attorney) | (Reg. No.) |

    a. [ X ] The power appears in the original papers in
            the prior application
    b. [  ] Since the power does not appear in the
            original papers, a copy of the power in the
            prior application is enclosed.
    c. [  ] A new power has been executed and is
            attached.

HERC0076184

(Rule 60) [REV.4Apr89/MB4-3]    -5-

    d. [ X ] Address all future communications to:

            Frank M. Van Riet

            c/o American Cyanamid Company

13. Maintenance of Copendency of Prior Application

    [   ] A petition, fee and response has been filed to extend the term in the pending application until:

                             .

    [   ] A copy of the petition for extension of time in the prior application is attached.

14. Conditional Petition for Extension of Time in Prior Application (Complete this item and file conditional petition in the prior application if previous item not applicable.)

    [   ] A conditional petition for extension of time is being filed in the pending patent application.

    [   ] A copy of the conditional petition for extension of time in the prior application is attached.

15. [   ] A certified copy of the priority document has been filed in Serial Number _____

                                  (Signature of Attorney)

Reg. No. 19933

               Frank M. Van Riet
               (Type name of Attorney)

Tel. No. (203) 321-2614

               American Cyanamid Company
               1937 West Main Street
               P.O. Box 60
               Stamford, CT 06904-0060

Assignment recorded in PTO on _____.

Real _____ Frame _____

HERC0076185



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/552,958 | 07/16/90 | NEFF | | R    30.737-01 |

| | EXAMINER |
|---|---|
| | DELMENDO, R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 155 | 3 |

FRANK M. VAN RIET
AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
P.O. BOX 60
STANFORD, CT   06904-0060

DATE MAILED:    01/23/91

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined    ☑ Responsive to communication filed on 7-16-90    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☑ Claims _____40-47_____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☑ Claims _____1-39_____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _____40-47_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

EXAMINER'S ACTION

HERC0076186

Serial No. 552,958                    -2-

Art Unit  155

15.

The specification is objected to as failing to provide
proper antecedent basis for the claimed subject matter.  See 37
C.F.R. § 1.75(d)(1) and M.P.E.P. § 608.01(l).  Correction of the
following is required:

(a) in claim 40, the recitation "0.1 to about 50,000 parts
per million";

(b) in claim 41, the recitation "at least about 2.0 mPa.s";

(c) in claim 42, the recitation "at least about 2.2 mPa.S";
and

(d) in claim 43, the recitation "at least about 2.4 mPa.s".

16.

To insure proper consideration, applicant should provide the
examiner with a copy of the foreign art cited in the
specification because it is not readily available to the
examiner.

17.

Claims 40-47 are rejected under 35 U.S.C. § 112, first
paragraph, as the disclosure is enabling only for claims limited
to the use of polymeric flocculants having finite molecular
weights and/or solution viscosities.  See M.P.E.P. §§ 706.03(n)
and 706.03(z).

HERC0076187

Serial No. 552,958                    -3-

Art Unit  155

The instant claims include processes that employ polymers having high viscosities to the extent that the process would be inoperable. The skilled artisan would have to resort to undue experimentation in order to discover suitable process equipment which can handle such viscosities.

18.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. § 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless --
(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

HERC0076188

Serial No. 552,958                          -4-

Art Unit   155

    Claims 40-46 are rejected under 35 U.S.C. § 102(e) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over Flesher et al ('346).

    Starting at column 3, line 46, Flesher et al discloses a method for flocculating an aqueous suspension of suspended solids comprising:

    (a) adding a synthetic polymeric material to form an aqueous medium containing flocculated solids; and then

    (b) dewatering the aqueous medium after shearing.  The synthetic polymeric material has a specific viscosity frequently above 1000, a dry particle size preferably below 2 microns, and a molecular weight between 5 million to 30,000,000.  See column 6, lines 31-35, column 8, lines 62-65, column 9, lines 3-6 and column 11, lines 3-11.  Flesher et al also contemplates the addition of a crosslinking agent in an amount from 0.1 to 100 ppm (based on monomer).  See column 7, lines 64-67.

    Even though Flesher et al is silent with regard to the "solubility quotient" of the synthetic polymeric material, it appears that Flesher's et al polymer would meet this particular property limitation in view of the fact that the other properties as recited appear to be met.  Since the PTO does not have the means to conduct experiments, the burden is shifted to the applicant to show that the instant claims do not read on Flesher et al.  See In re Best, '195 USPQ 430,433 (CCPA 1977).

HERC0076189

-5-

Serial No. 552,958

Art Unit    155

Even if the applicant can show that Flesher's closest disclosure is different from the instantly claimed product, it would have been obvious to one of ordinary skill in the art to optimize various parameters such as particle size, viscosity, etc. via routine experimentation. The applicant's working examples have been considered but are not found to be persuasive to overcome the prima facie case of obviousness. More specifically, it is unclear as to whether the applicant's comparative examples include Flesher's closest disclosure. Moreover, the alleged unexpected results do not apply at certain doses. Accordingly, the improvement over Flesher et al cannot be determined on the basis of this record.

19.

Claim 47 is rejected under 35 U.S.C. § 103 as being unpatentable over Flesher et al ('346) in view of Morgan et ('037).

While disclosing the suitability of cationic monomers in general terms, Flesher (as applied above) does not specifically mention the use of acryloxyethyltrimethylammonium chloride. However, Morgan shows that acryloxyethyltrimethyl ammonium chloride is a cationic monomer which is useful in making highly effective flocculants. See column 1, line 45 to column 2, line 60. Therefore, it would have been obvious to one of ordinary skill in the art to use acryloxyethyltrimethyl chloride in

HERC0076190

Serial No. 552,958

Art Unit   155

-6-

Flesher et al since this monomer is a species of the genus described in Flesher et al and would be expected to form highly effective flocculants as shown in Morgan.

20.

Claims 40-47 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 1-5    of U.S. Patent No. 4,968,435. Although the conflicting claims are not identical, they are not patentably distinct from each other because "at least about 1.8 mPa.s" reads on "from about 1.2 to about 1.8 mPa.s" and the patented method appears to employ an aqueous solution of a polymer that appears to have the requisite solubility quotient.

The obviousness-type double patenting rejection is a judicially established doctrine based upon public policy and is primarily intended to prevent prolongation of the patent term by prohibiting claims in a second patent not patentably distinct from claims in a first patent. *In re Vogel*, 164 USPQ 619 (CCPA 1970). A timely filed terminal disclaimer in compliance with 37 C.F.R. § 1.321(b) would overcome an actual or provisional rejection on this ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 C.F.R. § 1.78(d).

*Joseph L. Schofer*

Delmendo:amw
January 16, 1991
703-308-2351

HERC0076191

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 552958 | GROUP/ART UNIT 155 | ATTACHMENT TO PAPER NUMBER 3 |
|---|---|---|---|---|

NOTICE OF REFERENCES CITED

APPLICANT(S) NEFF et al.

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 3 9 6 8 0 3 7 | 7-6-76 | Morgan et al. | 210 | 734 | |
| B | | 4 7 2 0 3 4 6 | 1-19-88 | Flesher et al. | 210 | 734 | 4-23-86 |
| C | | 4 9 6 8 4 3 5 | 11-6-90 | Neff et al | 210 | 734 | |
| D | | | | | | | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG. | PP SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER R. Delmendo | DATE 12-13-90 |
|---|---|

\* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

HERC0076192

$CP$ 155

Docket No. 30,737-01

PATENT

..4Apr89/MB11-2]

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                                    Date: May 14, 1991
ROGER EDGAR NEFF
RODERICK GLYN RYLES

Serial No.: 07/552,958                        RECEIVED
Filed:   July 16, 1990
For:  WATER-SOLUBLE HIGHLY BRANCHED            JUN 0   1991
      POLYMERS MICROPARTICLES

Commissioner of Patents and Trademarks
Washington, D. C.  20231

PETITION FOR EXTENSION OF TIME (37 CFR 1.36(a))

1.   This is a petition for an extension of the time for a total
     period of  1  month(s) to respond to the Office Letter
     mailed on January 23, 1991  by filing an amendent thereto.

2.   A response in connection with the matter for which this
     extension is requested:

     [ X ] is filed herewith

     [   ] has been filed
           (complete the following if applicable)

     [   ] the response is the filing of a continuation
           application having an express abandonment conditioned
           on the granting of a filing date to the continuing
           application.

-------------------------------------------------------------------

CERTIFICATE OF MAILING [37 CFR 1.8(a)]

I hereby certify that this paper (along with any referred to as
being attached or enclosed) is being deposited with the United
States Postal Service on the data shown below with sufficient
postage as first class mail in an envelope addressed to the:
Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Date: 5/23/91                    _____
                                 (Signature of person mailing paper)

-------------------------------------------------------------------

DF111.10  06/03/91  07552958        01-1306  110  115      100.00CH

HERC0076193

[REV.4Apr89/MB11-2]                    -2-

3.   Calculation of extension fee (37 CFR 1.17(a)-(d):
     [ X ] One Month.     Fee in the amount of $100.00
     [   ] Two Months.    Fee in the amount of $300.00
     [   ] Three Months.  Fee in the amount of $730.00
     [   ] Four Months.   Fee in the amount of $1,150.00
                                         FEE $ 100.00

If an additional extension of time is required, please consider
this a petition therefor.

           (check and complete the next item, if applicable)
     [   ] An extension for ____ months has already been secured
           and the fee paid therefor of $_____ is deducted
           from the total fee due for the total months of
           extension now requested.

           Extension fee due with this request $ 100.00

4.   FEE PAYMENT
     [ X ] Charge fee to Account No. 01-1300 and this is a
           request to charge for any additional extension and/or
           fee required or credit for any excess fee paid. A
           duplicate of this petition is attached.

                              _____
                              (Signature of Attorney)

                              Frank M. Van Riet
Reg. No. 19933               (Type name of Attorney)

Tel. No. (203) 321-2614      American Cyanamid Company
                             1937 West Main Street
                             P.O. Box 60
                             Stamford, CT 06904-0060

HERC0076194

Docket No.: 30,737-01

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
ROGER EDGAR NEFF
RODERICK GLYN RYLES

Serial No.: 07/552,958
Filed: July 16, 1990
For: WATER-SOLUBLE HIGHLY
     BRANCHED POLYMERS
     MICROPARTICLES

Commissioner of Patent
  and Trademarks

Washington, D.C. 20231

Group Art Unit:

Examiner: RECEIVED

JUN 0 5 1991

GROUP 150

Date: May 14, 1991

AMENDMENT

In response to the Office Action of January 23, 1991, please amend the instant as follows:

In the Specification:

Page 14, line 26, after the word "supensions" insert the following --The products of this invention may be added to dispersions of suspended solids in amounts ranging from about 0.1 to about 50,000 parts per million of dispersion solids.--

Page 5, line 7, after the term "about 30", insert the following, --Preferably, the solution viscosity is at least about 2.0 mPa.s, more preferably, at least about 2.2 mPa.s, and most preferably, at least about 2.4 mPa.s.--

Page 6, line 27 after the term "Serial No.", insert --07/285,933--.

Page 6, lines 27 & 28, cancel the words "(Attorney's docket number 30,729)".

Remarks

The Examiner has objected to the specification as failing to provide proper antecedent basis for the claimed

- 1 -

HERC0076195

subject matter under 37 C.F.R. 1.75(d) and M.P.E.P. 608.01(1) and requiring correction of the terms:

    a)   "0.1 to about 50,000 parts per million";

    b)   "at least about 2.0 mPa.s";

    c)   "at least about 2.2 mPa.s";

    d)   "at least about 2.4 mPa.s".

This objection has been overcome by the instant amendment whereby the terms in question have been inserted appropriately into the specification. Since these terms are part of the claims as originally filed, no new matter is presented thereby. Withdrawal of the objection is earnestly solicited.

A copy of the foreign art cited in the specification, to the extent that it is in Applicant's possession, is included herewith.

Claims 40-47 have been rejected under 35 USC 112, first paragraph, the Examiner stating that the disclosure is enabling only for claims limited to the polymers having finite molecular weights and/or solution viscosities, citing M.P.E.P. 706.03(n) and (z). The instant claims include processes that employ polymers having high viscosities to the extent that the process would be inoperable, the Examiner explains, in that the skilled artisan would have to resort to undue experimentation in order to discover suitable process equipment which can handle such viscosities.

This ground of rejection is respectfully traversed. A careful perusal of Applicants' specification clearly indicates that polymers having solution viscosities of over 1.8, 2.0, 2.2 and 2.4 are produced by the process disclosed and that these polymers provide superior water release from dispersions of suspended solids to those

- 2 -

HERC0076196

polymers of the prior art. Table I, for example, shows the production of polymers having solution viscosities ranging from 2.1-3.2, Examples 13 and 14 show 2.5 and 2.24, respectively, while Examples 15,16 & 17 show 3.05, 3.12 and 2.72, respectively. In Table II, the polymers of Examples 1-6 are compared to a commercial high molecular weight (S.V = 3.1) cationic copolymer and that of Example 1a. It can readily be seen that at dosages over about 10.0 pounds of polymer per ton of sludge, the polymers of the present invention performed in a far superior manner than those of the prior art. Thus, Table II clearly provides representative basis for the claims under rejection, especially in view of the remaining examples which teach slight modifications such as different comonomers, different chain transfer agents etc. to produce polymers of similar properties. Reconsideration and withdrawal of this ground of rejection is earnestly solicited.

Claims 40-46 have been rejected under 35 USC 102(e) as anticipated by or, in the alternative, under 35 USC 103 as obvious over, Flesher et.al., the Examiner stating that Flesher et. al. discloses a method for flocculating an aqueous suspension of suspended solids comprising:

    a)  adding a synthetic polymeric material to form
        an aqueous medium containing flocculated
        solids and then

    b)  dewatering the aqueous medium after shearing.

The synthetic polymeric material has a specific viscosity frequently above 1000, a dry particle size below 2 microns and a molecular weight between 5 and 30 million, the Examiner continues, and also contemplates the addition of a cross-linking agent at 0.1-100 ppm.

- 3 -

HERC0076197

Even though Flesher et.al. is silent with regard to the "solubility quotient" of the synthetic polymeric material, the Examiner indicates that it appears that Flesher et.al's polymer would meet this particular property limitation in view of the fact that the other properties, as recited, appear to be met. Since the PTO does not have the means to conduct experiments, the burden is shifted to Applicants to show that the instant claims do not read on Flesher et.al, the Examiner argues, citing In re Best 195 USPQ 430,433.

Even if Applicants can show that Flesher et.al's closest disclosure is different from the instantly claimed product, the Examiner takes the position that it would have been obvious to one of ordinary skill in the art to optimize various parameters such as particle size, viscosity etc. via routine experimentation. Applicants' working examples have been considered but are not found persuasive by the Examiner to overcome the prima facie case of obvious because it is unclear as to whether Applicants' comparative examples include Flesher's closest disclosure and the alleged unexpected results do not apply at certain dosages. Accordingly, the improvement over Flesher et.al. cannot be determined on the basis of the record, the Examiner concludes.

This ground of rejection is strenuously traversed. Applicants have discovered a novel process using a class of compositions comprising microparticles of an an unswollen number average diameter of less than about 0.1 micron. Additionally, the solution viscosity of the microparticles (as defined on page 16) is at least about 1.8 mPa.s; they contain at least 4 parts per million of cross-linking agent

- 4 -

HERC0076198

and have a solubility quotient (as defined on pages 9 and 10) of greater than about 30 percent.

Flesher et.al, acknowledged in Applicants' specification at page 4, line 9, is representative of the prior art over which Applicants' invention is a significant improvement. The patentee teaches the formation of flocculants comprising polymeric particles that have a dry size of below 10 microns. While the monomeric components which are employed to produce these particles may be the same as those employed by Applicants to produce their particles, the size of these particles is materially different. It is the difference in particle size, in combination with the solution viscosity and the solubility quotient, which distinguishes Applicants' invention from Flesher et.al. Flesher et.al, in the working examples, exemplify their polymer particles as having a diameter of below 2 microns, see col. 11, line 58. Thus, Flesher et.al. actually employ macroemulsion technology. The difference in the two technologies is well recognized by those skilled in the art, see Candau 4,521,317, despite the fact that many references continue to present the technologies in such a manner that certain aspects of the two technologies overlap. For instance, Flesher et.al. disclose, at col. 11, lines 34 and 35, that the particle size of the particles produced therein are below about 2.0 microns, thus suggesting that particles of sizes of an order of magnitude lower can be used. Such a statement is misleading because if the average particle size of a composition produced is, for example, 0.2 microns, it is clear that such particles fall within the microparticle size. What Flesher et.al. actually mean by their statement is that the size of some of the particles produced using macroemulsion technology may be smaller than

- 5 -

HERC0076199

2.0 microns, however, those skilled in the art, such as Candau, recognize that many different factors play a part in producing a true microemulsion, such as the emulsifier used, the quantity of emulsifier used etc. The fact that Flesher et.al. did not actually intend to include microparticles is gleaned from a perusal of Flesher's et.al's working examples, as mentioned above. Particles having a diameter of below 2 microns, without further specifically, are clearly macroparticles and are akin to those shown by Applicants in the instant specification to be inferior in solution viscosity and solubility quotient. To this end, the Examiner's attention is respectfully directed to Table I, page 17, wherein the results of particles produced in accordance with a typical macroemulsion technique, as in Flesher et.al, are compared to those produced in accordance with the instant microemulsion process. As can readily be seen, the Flesher et.al. type polymer particles (Examples 1*-6*) fail to possess the unique combination of a solution viscosity of over about 1.8 mPa.s and a CEQ of over 30%, as required by Applicants' claims. The particles represented by Claims 1-6 (see particle diameter of Example 6) all possess S.V. values of over 1.8 mPa.s and CEQs of over 30%. A comparison of the compositions used in the instant invention, Examples 7-12, versus those of the prior art, Examples 7A* and 7B*, is shown in Table 2, wherein it is evident that, at dosages above about 10.0, Applicants' compositions clearly outperform the composition of Example 1A*, produced using no methylenebisacrylamide, and Example 7A* which is a commercial product of S.V. 3.1 mPa.s, but free of methylenebisacrylamide. Thus, the unexpectedly superior results achieved using Applicants' compositions are

- 6 -

HERC0076200

strenuously urged as persuasive of the patentability of the instant process.

The Examiner indicates that it is unclear whether the instant comparative examples include Flesher's et.al's closest disclosure, however, at col. 6, lines 45-47. Flesher et.al. indicates that the desired small particle size polymers are prepared by emulsion or reverse phase polymerization. As indicated by Applicants' disclosure, the polymers of Examples 1A$^*$-6$^*$ were prepared by conventional emulsion polymerization, i.e. as advocated by Flesher et.al. Thus, it is clear that Applicants' comparative examples are representative of the products produced by the procedure advocated by Flesher et.al. and therefore must be considered in comparison to those represented by Applicants' invention. Reconsideration and withdrawal of this ground of rejection are earnestly solicited.

Claim 47 has been rejected under 35 USC 103 as being unpatentable over Flesher et.al. in view of Morgan et.al. the Examiner stating that while disclosing the suitability of cationic monomers in general terms, Flesher et.al. does not specifically mention the use of acryloxyethyltrimethyl ammonium chloride (hereinafter AETAC). However, the Examiner continues, Morgan et.al. shows that AETAC is a cationic monomer which is useful in making highly effective flocculants and therefore it would have been obvious to one of ordinary skill in the art to use AETAC in Flesher et.al. since this monomer is a species of the genus described in Flesher et.al. and would be expected to form highly effective flocculants as shown in Morgan.

This ground of rejection is also respectfully traversed. The arguments presented above with regard to Flesher et.al. apply equally to this rejection.

- 7 -

HERC0076201

Furthermore, Flesher et.al. teach that it is essential that the solution to be flocculated therein, once it contains the flocculant, must be severely sheared before satisfactory separation of solid matter is achieved. Applicants must stress that the shear applied by Flesher et.al. is not applied to the flocculant emulsion per se. It is applied after the emulsion has been broken and added to the substrate to be flocculated. Thus, the shear applied by Flesher et.al. in no way acts to reduce this flocculant particle size so as to render it of a micro size. The shear reduces the size of the flocculated flocs only.

Morgan et.al, acknowledged in Applicants' specification at page 3, teach that, in the conventional macroemulsion polymerization procedure, an improved result can be achieved in the polymerization of cationic monomers if a branching agent is employed. Thus, methylenebisacrylamide is taught to enhance the dewatering of sludge when incorporated into the macroemulsion polymerization. The teachings of Morgan are interesting however, in that, as with Flesher et.al, the particle size of the polymers produced therein will not be less than 0.1 micron in diameter as required by Applicants' claims. Evidence that Morgan et.al. produce macroemulsion can be gleaned from col. 2, lines 53-54 wherein it is stated that a semi-transparent fluid is produced by the polymerization. Reference to the Candau reference, cited above, will reveal a true microemulsion technique where a transparent emulsion is formed, see col. 5, line 29. It is therefore respectfully submitted than the combination of references applied by the Examiner does not each, disclose or suggest the instant invention. Reconsideration and withdrawal thereof is therefore again earnestly solicited.

- 8 -

HERC0076202

The Examiner's attention is respectfully directed to the following copending U.S. patent applications, Serial Nos:

| | | |
|---|---|---|
| 285,933 | filed | 12-19-89 |
| 286,015 | filed | 12-19-89 |
| 285,940 | filed | 12-19-89 |
| 285,938 | filed | 12-19-89 |

Attention is also directed to the following U.S. Patent Nos., copies attached, which were cited during the prosecution of the above-applications:

4,111,922

4,172,066

4,361,452

4,525,257

4,628,078

4,769,427

Although some of the above-cited patents teach the formation of polymeric microparticles, none include the formation of particles having the unique combination of solution viscosity and solubility quotient of the cationic and anionic compositions, or the solution viscosity of the nonionic compositions, of the instant invention.

Patent WO88/10274 is also hereby brought to the Examiner's attention, a copy thereof and an unverified translation of which is included herewith.

Claims 40-47 have been further rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over Claims 1-5 of U.S. Patent No. 498435, the Examiner stating that although the claims are not identical, they are not patentably distinct from each other because "at least about 1.8 mPa.s" reads on "from about 1.2 to about 1.8 mPa.s" and the patented method

- 9 -

HERC0076203

appears to employ an aqueous solution of a polymer that appears to have the requisite solubility quotient.

This ground of rejection is respectfully traversed. The polymers used in the process of the present invention are highly branched, water-soluble microparticles while those of Claims 1-5 of U.S. 4,968,435 are water-insoluble, cross-linked microparticles. Thus, the two polymer systems are totally different even though the solution viscosities thereof may be similar. Withdrawal of this ground of rejection is respectfully requested.

In view of the above Remarks, this application is believed to be in condition for allowance and such action is earnestly requested at an early date.

Respectfully submitted,

*Frank M Van Riet*

Attorney for Applicants
Frank M. Van Riet
Registration# 19933

oc/
A-307371

– 10 –

HERC0076204



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/552,958 | 07/16/90 | NEFF | R | 30.737-01 |

| EXAMINER |
|---|
| DELMENDO, R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 155 | 6 |

FRANK M. VAN RIET
AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
P.O. BOX 60
STAMFORD, CT 06904-0060

DATE MAILED: 06/20/91

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined  ☑ Responsive to communication filed on 5-23-91  ☑ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133.

**Part I** THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Art Cited by Applicant, PTO-1449.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.

2. ☐ Notice re Patent Drawing, PTO-948.
4. ☐ Notice of Informal Patent Application, Form PTO-152.
6. ☐

**Part II** SUMMARY OF ACTION

1. ☑ Claims _____40 - 47_____ are pending in the application.

Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____40 - 47_____ are allowed.

4. ☑ Claims _____40 - 47 stand_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

EXAMINER'S ACTION

PTOL-326 (Rev.9-87)

HERC0076205

Serial No. 552,958

Art Unit  155

-2-

15.

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

A patent may not be obtained though the invention is not
identically disclosed or described as set forth in section
102 of this title, if the differences between the subject
matter sought to be patented and the prior art are such that
the subject matter as a whole would have been obvious at the
time the invention was made to a person having ordinary
skill in the art to which said subject matter pertains.
Patentability shall not be negatived by the manner in which
the invention was made.

Subject matter developed by another person, which qualifies
as prior art only under subsection (f) or (g) of section 102
of this title, shall not preclude patentability under this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

Claims 40-46 stand rejected under 35 U.S.C. § 103 as being
unpatentable over Flesher et al.

Flesher discloses a method for flocculating an aqueous
suspension of solids comprising the steps of:

(a) adding an aqueous solution of crosslinked polymer
particles having sizes below 2 microns into sludge;

(b) subjecting the mixture to shear; and then

(c) dewatering.  See Examples 1-2.  The crosslinked polymer
particles are made by reverse phase polymerization of acrylamide,
dimethylamino ethylacrylate quaternized with methyl chloride and

HERC0076206

-3-

Serial No. 552,958

Art Unit:  155

0-25 ppm of methylene-bis-acrylamide.  The intrinsic viscosities
of the crosslinked polymer particles are reported as ranging from
about 3 to about 14.  See Table 2.

Flesher differs from the instant claims as follows:

(1)  the use of crosslinked polymer particles less than
about 0.1 micron is not expressly taught; and

(2)  it is uncertain as to whether or not the solution
viscosity and solubility quotient as recited in the claims are
met by Flesher's crosslinked polymer particles.  However, Flesher
teaches the desirability of smaller particles and discusses the
control of particle sizes by the degree of shear applied to the
monomers and the presence of emulsifier.  See column 7, lines 45-
54 and column 9, lines 7-26.  Therefore, it would have been
obvious to one of ordinary skill in the art to employ polymer
particles smaller than about 0.1 micron in Flesher's method since
such sizes fall within the disclosed range and Flesher prefers
smaller particles.

With respect to the solution viscosity and solubility
quotient values, there is a reasonable basis to believe that
Flesher's polymer particles would meet these properties because
the ingredients and polymerization process in Flesher are either
identical to or very similar to those of the instant application.
Since the PTO has no means to conduct experiments, the burden of
proof was shifted to the applicant.

HERC0076207

Serial No. 552,958                    -4-

Art Unit  155

16.

   Claim 47 stands rejected under 35 U.S.C. § 103 as being

unpatentable over Flesher et al in view of Morgan et al.

   The rejection of claim 47 is maintained for reasons as set

forth in paper no. 3 (paragraph 19).

17.

   Claims 40-47 stand rejected under the judicially created

doctrine of obviousness-type double patenting as being

unpatentable over claims 1-5, of U.S. Patent No. 4,968,435.

Although the conflicting claims are not identical, they are not

patentably distinct from each other because of the reasons as set

forth in paper no. 3 (paragraph 20).

   The obviousness-type double patenting rejection is a
judicially established doctrine based upon public policy and is
primarily intended to prevent prolongation of the patent term by
prohibiting claims in a second patent not patentably distinct
from claims in a first patent.  In re Vogel, 164 USPQ 619 (CCPA
1970).  A timely filed terminal disclaimer in compliance with 37
C.F.R. § 1.321(b) would overcome an actual or provisional
rejection on this ground provided the conflicting application or
patent is shown to be commonly owned with this application.  See
37 C.F.R. § 1.78(d).

17.

   Applicant's arguments filed on May 23, 1991, have been fully

considered but they are not deemed to be persuasive.

   The applicant argues that Flesher's disclosure is limited to

macro emulsions.  However, this is merely an unsupported

allegation because Flesher discloses the desirability of polymer

particles below 2 microns.  In fact, Flesher employs the term

HERC0076208

-5-

Serial No. 552,958

Art Unit   155

"microdispersion" at column 6, lines 26-27. Since microemulsion technology is well known to the person of ordinary skill in the art and Flesher prefers "microdispersions", one of ordinary skill in the art would have been motivated to employ microemulsions in Flesher's process.

The applicant also alleges that superiority of the polymers of the instant claims over Flesher's polymers has been demonstrated. However, there is no evidence that Examples 1"-6" are representative of Flesher's closest disclosure. In fact, Table I is incomplete insofar as the particle diameter information is concerned. It should also be noted that the solution viscosity and solubility quotient of Example 1" reads on the values recited in at least applicant's claim 40.

Finally, the applicant argues that the obviousness-type double patenting rejection is improper because the patent claims recite "water-insoluble, crosslinked microparticles". This is not persuasive because water-solubility or water-insolubility is relative. The applicant should also note that the polymerization methods disclosed in the patent and the instant application appear to be identical. Thus, it is most confusing as to how different products can be produced when identical polymerization processes are employed.

HERC0076209

Serial No. 552,958                          -6-

Art Unit  155

     THIS ACTION IS MADE FINAL.  Applicant is reminded of the

extension of time policy as set forth in 37 C.F.R. § 1.136(a).


     A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.   IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.   IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.


JOSEPH L. SCHOFER
SUPERVISORY PATENT EXAMINER
ART UNIT 155

Delmendo:amw
June 18, 1991
703-308-2351

June 18, 1991

HERC0076210