# EXHIBIT 19

# Part 3

Case No. 30,737-01
PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

ROGER EDGAR NEFF
RODERICK GLYN RYLES

RECEIVED

SEP 25 1991

GROUP 150

#7

92-3877

Serial No. 07/552,958
Filed: July 16, 1990
For: WATER-SOLUBLE HIGHLY
      POLYMERIC MICROPARTICLES

Group No.: R. Delmendo
Examiner: J. Smith

Commissioner of Patents and Trademarks
Washington, D.C. 20231

NOTICE OF APPEAL FROM THE PRIMARY EXAMINER
TO THE BOARD OF APPEALS

Applicant hereby appeals to the Board of Appeals from the decision of the Primary Examiner mailed June 20, 1991 finally rejecting Claims 40-47.

The items checked below are appropriate:

1.    REQUEST FOR ORAL HEARING
      [  ] An oral hearing is respectfully requested. Fee $200.00.

2.    FEE FOR FILING NOTICE OF APPEAL
      Pursuant to 37 CFR 1.17(e), the fee for filing the Notice of Appeal is $240.00.

---

CERTIFICATE OF MAILING [37 CFR 1.8(a)]

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

DF11022  10/03/91  07552958

Ornella Calabrese

Date: 9/16/91          (Signature of person mailing paper)

HERC0076211

[REV.4Apr89/MB9-6]          -2-

3.  EXTENSION OF TERM
        (complete (a) or (b) as applicable)
    The proceedings herein are for a patent application and the
    provision of 37 CFR 1.136 apply.
        (a) [  ] Applicant petitions for an extension of time for
            the total number of months checked below:
                [  ] One Month.    Fee in the amount of $100.00
                [  ] Two Months.   Fee in the amount of $300.00
                [  ] Three Months. Fee in the amount of $738.00
                [  ] Four Months Fee in the amount of $1,150.00
                                        FEE $_____

    If an additional extension of time is required, please consider
    this a petition therefor.

            (check and complete the next item, if applicable)
        [  ] An extension for ____ months has already been secured
            and the fee paid therefor of $_____ is deducted
            from the total fee due for the total months of
            extension now requested.
                Extension fee due with this request $_____
                            or
        (b)  [ X ] Applicant believes that no extension of term is
                required. However, this conditional petition is
                being made to provide for the possibility that
                applicant has inadvertently overlooked the need
                for a petition and fee for extension of time.

4.  TOTAL FEE DUE
        The total fee due is:
            Notice of Appeal fee      $240.00
            Extension fee (if any)    $_____
            Oral Hearing fee          $____.___
                            TOTAL FEE DUE $240.00

HERC0076212

[REV.4Apr89/MB9-6]                    -3-

5.    FEE PAYMENT
        [ X ] Charge Account No. 01-1300 the sum of $240.00 .
        A duplicate of this transmittal is attached.
        [   ] If any additional extension and/or fee is
              required, charge Account No. 01-1300.
                          AND/OR
        [   ] If any additional fee for claims is required,
              charge Account No. 01-1300.

                          _____
                          (Signature of Attorney)

                          Frank M. Van Riet
                          (Type name of Attorney)

Reg. No. 19933

Tel. No. (203) 321-2614        American Cyanamid Company
                               1937 West Main Street
                               P.O. Box 60
                               Stamford, CT 06904-0060

HERC0076213

6 of 152



Docket No.: 30,737-01

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF APPEALS AND INTERFERENCES

92-3877

SEP 25 1991

GROUP 150

RECEIVED SEP 25 1991 GROUP 150

In re Application of:
ROGER EDGAR NEFF
RODERICK GLYN RYLES

Serial No.: 07/552,958
Filed:   July 16, 1990
For:   WATER-SOLUBLE HIGHLY
        BRANCHED POLYMERS
        MICROPARTICLES

Group Art Unit:

Examiner: Delmendo

#8

16/1/91

Commissioner of Patent
and Trademarks

Washington, D.C.  20231

Date: September 13, 1991

## APPEAL BRIEF ON BEHALF OF APPELLANTS

This Brief is submitted on behalf of Appellants pursuant to the accompanying Notice of Appeal of the Final Rejection of June 20, 1991 rejecting Claims 40-47 which are the only claims persecuted in this application and are all within the purview of this appeal.

## Status of The Claims

All claims, i.e. Claims 40-47, stand as finally rejected. A copy of Claims 40-47 is appended hereto as Appendix A.

## Status of Amendments

No amendment after Final Rejection was filed.

## Summary of The Invention

The invention relates to a method of releasing water from a dispersion of suspended solids comprising adding to the dispersion an aqueous solution of highly branched, water-soluble, high molecular weight, polymeric flocculant particles which have:

a)  an unswollen diameter of less than about 0.1 micron,

CS14105  09/23/91  07552958        01-1300 140  120      240.00CH

HERC0076214

b)  a solution viscosity of at least about 1.8 mPa.s,

c)  a solubility quotient of at least about 30 percent and

d)  a branching agent content of at least about 4 molar parts per million based on the monomeric units in the polymer

and dewatering the suspended solids.

Specific flocculants have a solution viscosity of at least abut 2.0 mPa.s, at least about 2.2 mPa.s and at least about 2.4 mPa.s.

The preferred flocculant is a polymer of acrylamide and acryloxyethyltrimethylammonium chloride.

These polymer particles, because of their very small unswollen diameter i.e. less than 0.1 micron and the combined solution viscosity, solubility quotient and branching agent content have been found to be superior to particles prepared in accordance with typical macroemulsion polymerization technology wherein the unswollen particle size of the resultant particles are at least one micron or more in diameter.

### Issues

The issues to be decided in this Appeal are:

1)  Whether or not Claims 40-46 are unpatentable over Flescher etal under 35 USC 103.

2)  Whether or not Claim 47 is unpatentable over Flesher etal in view of Morgan etal under 35 USC 103.

3)  Whether or not Claims 40-47 are properly rejected under the judically created doctrine of obviousness-type double patenting as

- 2 -

HERC0076215

unpatentable over Claims 1-5 of U.S. Patent No. 4,968,435.

## Grouping of Claims

Appellants understand that Claims 40-46 stand or fall together since the only grounds of rejection apply to all the said claims. Claim 47, however, stands apart as represented a particularly effective species of polymer.

## Argument

Claims 40-46 stand rejected under 35 USC 103 as unpatentable over Flesher etal, the Examiner stating that Flesher etal discloses a method for flocculating an aqueous suspension of solids comprising the steps of:

a) adding an aqueous solution of cross-linked polymer particles having sizes below 2 microns into sludge;

b) subjecting the mixture to shear and then

c) dewatering, citing Examples 1-2.

The cross-linked polymer particles are made by reverse phase polymerization of acrylamide, dimethylaminoethylacrylate quaternized with methyl chloride and 0-15 ppm of methylenebisacrylamide, the Examiner explains, and the intrinsic viscosities are reported as ranging from about 3-14, citing Table 2.

Flesher etal differs from the instant claims, the Examiner agrees, as follows:

1. the use of cross-linked polymer particles less than 0.1 micron in diameter is not taught and

2. it is uncertain whether or not the solution viscosity and solubility quotient limitations of the claims are met by Flesher's etal's particles.

Despite these admitted deficiencies of the Flesher

- 3 -

HERC0076216

etal reference, the Examiner argues that Flesher etal teaches the desirability of smaller particles and discusses the control of particle size by the degree of shear applied to the monomers in the presence of the emulsifier, citing col. 7, lines 45-54 and col. 9, lines 7-26. It is therefore the Examiner's position that it would have been obvious to one of ordinary skill in the art to employ polymer particles smaller than 0.1 micron in Flesher etal's method since such sizes fall within the disclosed range and Flesher etal prefer smaller particles.

Regarding the solution viscosity and solubility quotient values expressed in Appellants' claims, the Examiner takes the position that there is a reasonable basis to believe that Flesher etal's polymer values would meet these properties because the ingredients and polymerization process described in Flesher etal are either identical or very similar to those of the instant application and since the PTO has no means to conduct experiments, the burden of proof is shifted to Appellants.

In response to Appellants' argument that Flesher etal is limited to macremulsions, the Examiner argues that such is merely as unsupported allegation because Flesher etal discloses the desirability of polymer particles below about 2 microns and, in fact, employs the term "microdispersion" at column 6, lines 26-27. Since microemulsion technology is well known to the person of ordinary skill in the art and Flesher etal prefers "microdisperions", one of ordinary skill in the art would have been motivated to employ microemulsions in Flesher etal's process.

With regard to Appellants' arguments regarding the superiority of the polymers of the instant claims over those

- 4 -

HERC0076217

of Flesher etal, the Examiner argues that there is no evidence that Examples 1*-6* are representative of Flesher etal's closest disclosure and, in fact, Table I is incomplete insofar as the particle diameter information is concerned. Also, the Examiner notes, the solution viscosity and solubility quotient of Example 1* reads on the values recited in at least Appellants' Claim 40.

This ground of rejection is again strenuously traversed. Appellants, as discussed above, have discovered a novel dewatering process using a class of compositions comprising microparticles of an an unswollen number average diameter of less than about 0.1 micron and, a solution viscosity (as defined on page 16) of at least about 1.8 mPa.s. They contain at least 4 parts per million of cross-linking agent and have a solubility quotient (as defined on pages 9 and 10) of greater than about 30 percent.

Flesher etal, acknowledged in Appellants' specification at page 4, line 9, is representative of the prior art over which Appellants' invention is a significant improvement. The patentee teaches the formation of flocculants comprising polymeric particles that have a dry size of below 10 microns, preferably below 2 microns. While the monomeric components which are employed to produce these particles may be the same as those employed herein to produce the instantly used particles, the size of these particles is materially different. It is the difference in particle size, in combination with the solution viscosity and the solubility quotient, which distinguishes Appellants' invention from Flesher etal. Flesher etal, in the working examples, exemplify their polymer particles as having a diameter of below 2 microns, see col. 11, line 58. Thus, Flesher etal actually employ macroemulsion technology.

- 5 -

HERC0076218

The difference in the two technologies is well recognized by those skilled in the art. Candau U.S. Patent No. 4,521,317, discusses these technologies. As has been previously discussed by Appellant, Flesher etal disclose, at col. 11, lines 34 and 35, that the particle size of the particles produced therein are below about 2.0 microns. The Examiner takes the position such a teaching suggest that particles of sizes of an order of magnitude lower can also be used. Such a position is clearly erroneous because if the average particle size of a composition produced is, for example, 0.2 microns, it is clear that such particles fall within the microparticle size. Particles of 2 micron average particle size are macroparticles. Appellants' claims require that the polymer particles be less than 0.1 micron in diameter.

The Examiner takes the position that Flesher etal expresses the desirability of using small particles. While it may be true that Flesher etal would rather use 2 micron diameter particles in lieu of 10 micron diameter particles, nothing in the reference expresses the desirability of using less than 0.1 diameter particles. The use of the term "microdispersion" by Flesher etal is fortuitous because it supports, Appellants' position that Flesher etal do not employ microparticles. That this is true can be ascertained form the fact that they then go on to explain that the term "microdispersion" means the presence of polymer particles therein of a size below 10 microns, see col. 6, lines 32-35. Particles of this size are recognized as macroparticles and not microparticles, see Candau, above. All of Flesher etal's working examples show particles having a diameter of below 2 microns, without further specificity. Such are clearly macroparticles and are akin to those shown by Appellants in the instant specification to be inferior in

- 6 -

HERC0076219

solution viscosity and solubility quotient. To this end, the Board's attention is respectfully directed to Table I, page 17, wherein the properties of particles produced in accordance with a typical macroemulsion technique, as in Flesher etal, are compared to those produced in accordance with the instant microemulsion process. As can readily be seen, the Flesher etal type polymer particles (Examples 1*-6*) fail to possess the unique combination of a solution viscosity of over about 1.8 mPa.s and a CEQ of over 30%, as required by the claims under appeal. The particles represented by Claims 1-6 (see particle diameter of Example 6) all possess S.V. values of over 1.8 mPa.s and CEQs of over 30%. Furthermore, a comparison of the compositions used in the instant invention, Examples 7-12, versus those of the prior art, Examples 7A* and 7B*, is shown in Table 2, wherein it is evident that, at dosages above about 10.0, Appellants' compositions clearly outperform the composition of Example 1A*, produced using no methylenebisacrylamide, and Example 7A* which is a commercial product of S.V. 3.1 mPa.s, but free of methylenebisacrylamide. It is indeed surprising that the Example 1A* polymer which has the correct particle size, S.V. and CEQ but contains no branching agent, still fails to function competitively with the polymers of the present invention i.e. Examples 1-6. Thus, the unexpectedly superior results achieved using the compositions specified the instant claims are strenuously urged as persuasive of the patentability of the instant process.

The Examiner again indicates that it is unclear whether the instant comparative examples include Flesher's et.al's closest disclosure, however, at col. 6; lines 45-47, Flesher etal indicate that the desired small particle size

- 7 -

HERC0076220

polymers are prepared by emulsion or reverse phase polymerization. As previously discussed, the polymers of Examples 1A*-6* were prepared by conventional emulsion polymerization, i.e. as advocated by Flesher etal. Thus, it is clear that Appellants' comparative examples are representative of the products produced by the procedure advocated by Flesher etal and therefore must be considered in comparison to those represented by the instant invention.

Further support for Appellants' position is found at col. 9, lines 21-24 of Flesher etal wherein EP No. 0126528 is disclosed as including details of the type of polymerization used in Flesher etal. As mentioned, macroemulsion technology produces polymer particles averaging about one (1) micron in diameter. Reference to U.S. Patent No. 4,528,321, copy attached, which is an equivalent of the above-identified EP patent, shows the production of polymers having an average particle size range of from 0.2-2.0, see Example 1, line 50. Thus, it is clear that the Flesher etal polymer particles, which are all above 0.2 micron and average 1.1 micron, are far larger than claimed by Appellants i.e. all are below 0.1 micron, not an average.

Reversal of this ground of rejection is therefore believed warranted and such action is earnestly solicited.

Claim 47 has been rejected under 35 USC 103 as being unpatentable over Flesher etal in view of Morgan etal for reasons specified in Paragraph 19 of Paper No. 3.

This ground of rejection is also respectfully traversed. The arguments presented above with regard to Flesher etal apply equally to this rejection. Furthermore, Flesher etal teach that it is possible to shear the polymer to increase the ionicity, however this

- 8 -

HERC0076221

shear is not disclosed as decreasing the particle size of the polymer. Additionally, the shear applied by Flesher etal to tha flocculated suspension is not applied to the flocculant emulsion per se. It is applied after the emulsion has been broken and added to the substrate to be flocculated. Thus, no shear applied by Flesher etal acts to reduce this flocculant particle size so as to render it of a micro size.

Morgan etal, also acknowledged in Appellants' specification at page 3, teach that; in the conventional macroemulsion polymerization procedure, an improved result can be achieved in the polymerization of cationic monomers if a branching agent is employed. Thus, methylenebisacrylamide is taught to enhance the dewatering of sludge when incorporated into the macroemulsion polymerization. As with Flesher etal, the particle size of the polymers produced therein will not be less than 0.1 micron in diameter as required by the appealed claims. Evidence that Morgan etal produce macroemulsions can be gleaned from col. 2, lines 53-54 wherein it is stated that a semi-transparent fluid is produced by the polymerization. Reference to the Candau reference, discussed above, will reveal a true microemulsion technique where a transparent emulsion is formed, see col. 5, line 29. It is therefore respectfully submitted than the combination of references applied by the Examiner does not each, disclose or suggest the instant invention. Reversal of this rejection is therefore earnestly solicited.

Claims 40-47 have been further rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over Claims 1-5 of U.S. Patent No. 4,968,435, the Examiner stating that although the

- 9 -

HERC0076222

claims are not identical, they are not patentably distinct from each other for reasons set forth in Paragraph 20 of Paragraph No. 3.

This rejection is again respectfully urged as erroneous. While the polymerization techniques between Patent No. 4,968,435 and the instant invention may be similar, it is strenuously submitted that the claims of the 4,968,435 patent require the use of a water-insoluble polymer while the polymer required by the instant claims is water-soluble. The Examiner attempts to support his position by indicating that water-solubility and water-insolubility are relative however, those skilled in the art clearly recognize a distinction between such polymers as evidenced by the lengthy dissertation in Flasher etal, discussed above, of water-soluble vs. water-insoluble polymers, see col. 3, line 67-col. 4, line 25; lines 36-44, et. Reversal of this ground of rejection is also respectfully solicited.

## Conclusion

In view of the above Remarks, it is strenuously urged that the Primary Examiner's final rejection of Claims 40-47 is clearly erroneous and should be reversed on all grounds. Such action is earnestly solicited.

Respectfully submitted,

Attorney for Applicants
Frank M. Van Riet
Registration# 19933

1937 West Main Steeet
P.O. Box 60
Stamford, CT 06904-0060
(203) 321-2614

A-307371.sec:oc

HERC0076223

APPENDIX A

WE CLAIM:

40. A method of releasing water from a dispersion of suspended solids which comprises (a) adding to the dispersion from about 0.1 to about 0.1 to about 50,000 parts per million of dispersion solids of an aqueous solution of highly branched, water-soluble, high molecular weight, polymeric microparticles, flocculant having an average unswollen diameter of less than about 0.1 micron, a solution viscosity of at least about 1.8 mPa.s, a solubility quotient of about 30 percent, and a branching agent content of at least about 4 molar parts per million based on the monomeric units in the polymer, (b) dewatering the mixture of the dispersion of suspended solids and the polymeric flocculant.

41. A method as defined in claim 40 wherein the polymeric flocculant has a solution viscosity of at least about 2.0 mPa.s.

42. A method as defined in Claim 40 wherein said solution viscosity is at least about 2.2 mPa.s.

43. A method as defined in Claim 40 wherein said solution viscosity is at least about 2.4 mPa.s.

44. A method as defined in Claim 40 wherein said polymeric flocculant is a polymer formed from one or more ethylenically unsaturated monomers selected from acrylamide; methacrylamides; N-alkylacrylamides; N,N-dialkylacrylamides; N-vinyl methylacetamide; N-vinylmethylforamide; N-vinyl pyrrolidone; dialkylaminoalkylacrylates or methacrylates and their quaternary or acid salts, NmN-dialkylaminoalkyl-

- 11 -

HERC0076224

acrylamides and methacrylamides and their quaternary or acid salts or diallyl dimethylammonium acid salts.

45. A method as defined in Claim 44 wherein said polymeric flocculant is a polymer formed from one or more ethylenically unsaturated monomers selected from acrylamide; N,N-dialkylaminoalkylacrylates and methacrylates and their quaternary or acid salts, or diallyl dimethylammonium acid salts.

46. A method as defined in Claim 45 wherein said polymeric flocculant is a polymer formed from acrylamide in combination with at least one cationic monomer.

47. A method as defined in Claim 46 wherein said polymeric flocculant is a polymer formed from acrylamide and acryloxyethyltrimethylammonium chloride.

- 12 -

HERC0076225



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND
COMMISSIONER OF PATENTS AND
TRADEMARKS
Washington, D.C. 20231

RECEIVED

SEP 11 1992
Paper No. 9

BOARD OF PATENT APPEALS
AND INTERFERENCES

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

Serial Number: 07/552,958
Filing Date: July 16, 1990
Appellant(s): ROGER EDGAR NEFF
RODERICK GLYN RYLES

MAILED

NOV 29 1991

GROUP 150

92-3877
Frank M. Van Riet
For Appellant

EXAMINER'S ANSWER

This is in response to appellant's brief on appeal filed
September 19, 1991.

(1) Status of claims.

The statement of the status of claims contained in the brief
is correct.

(2) Status of Amendments After Final.

The appellant's statement of the status of amendments after
final rejection contained in the brief is correct.

(3) Summary of invention.

The summary of invention contained in the brief is deficient

HERC0076226

-2-

Serial No. 07/552,958

Art Unit  1505

because  the assertion that the polymer particles used in the instantly claimed process provides superior results when compared to prior art particles prepared in accordance with macroemulsion polymerization technology, wherein said prior art particles have an unswollen particle size of at least one micron, is merely an allegation which is not supported by conclusive objective evidence.

    (4)  Issues.

    The appellant's statement of the issues in the brief is correct.

    (5)  Grouping of claims.

    Appellant's brief includes a statement that claims 40-47 do not stand or fall together and provides reasons as set forth in 37 C.F.R. § 1.192(c)(5) and (c)(6).

    (6)  Claims appealed.

    A substantially correct copy of appealed claims 40-47 appears on pages 11-12 of the Appendix to the appellants' brief. The minor errors are as follows: (i) in claim 40, line 3, "to about 0.1" should be deleted; (ii) in claim 40, line 9, "about 30 percent" should be "at least about 30 percent"; and (iii) in claim 44, line 7, "NaH-" should read as "N,H-".

HERC0076227

-3-

Serial No. 07/552,958

Art Unit    1505

(7)  Prior Art of record.

The following is a listing of the prior art of record relied upon in the rejection of claims under appeal.

| NUMBER (U.S.) | NAME | DATE |
|---|---|---|
| 4,720,346 | FLESHER ET AL. (FLESHER) | 01/1988 |
| 3,968,037 | MORGAN ET AL. (MORGAN) | 07/1976 |

The following patent was relied upon to support the obviousness-type double patenting rejection:

| NUMBER (U.S.) | NAME | DATE |
|---|---|---|
| 4,968,435 | NEFF ET AL. | 11/1990 |

The following patents have been made of record by the appellants:

| NUMBER (U.S.) | NAME | DATE |
|---|---|---|
| 4,528,321 | ALLEN ET AL. (ALLEN) | 07/1985 |
| 4,521,317 | CANDAU ET AL. (CANDAU) | 06/1985 |

The following reference is also of record:

Leong et al., "Inverse Microemulsion Polymerization", J. of Phys. Chem., Vol 86, No. 13, June 1982, pp. 2271-2273.

(8)  New prior art.

No new prior art has been applied in this examiner's answer.

(9)  Grounds of rejection.

HERC0076228

Serial No. 07/552,958

Art Unit   1505

−4−

The following ground(s) of rejection are applicable to the appealed claims.

### Rejection Under 35 U.S.C. 103

(I)  Claims 40-46 stand rejected under 35 U.S.C. 103 as being unpatentable over Flesher et al.

Flesher discloses a method for flocculating an aqueous suspension of solids comprising the steps of:

(a)  adding an aqueous solution of crosslinked polymer particles having sizes preferably below 2 microns into sludge (Note: The appellants state that these particles can have average particle sizes ranging from 0.2-2 microns.  See the first full paragraph on page 8 of the Appeal Brief.);

(b)  subjecting the mixture to shear; and then

(c)  dewatering.  See Examples 1-2.  Suitable doses for the polymeric flocculant are disclosed as being in the range of 0.01 to 3% by weight based on suspension (sludge) solids.  See column 11, lines 9-11.  In particular, Product IC of Example 2 is a flocculant which is made by reverse phase polymerization and is an acrylamide copolymer containing 5 ppm of methylene-bis-acrylamide (MBA) chain branching agent.  (Note: reverse phase polymerization is synonymous with water-in-oil emulsion

HERC0076229

Serial No. 07/552,958                    -5-

Art Unit  1505

polymerization.  See column 9, lines 7-26.)

    Flesher's disclosure may be seen as differing from appealed claim 40, the generic claim, as follows:

    (1)  it does not specifically describe the polymer particle size except to state that they are preferably below 2 microns; and

    (2)  it is uncertain as to whether or not any of Flesher's polymers as exemplified would meet the solution viscosity and solubility properties as instantly recited in the claims.

    However, polymer microemulsions obtained by reverse phase polymerization of acrylamide are well-known to those of ordinary skill in the art.  In this connection, the appellants have made of record Candau and Leong et al.  Therefore, it would have been obvious to one of ordinary skill in the art to use polymer particles having average sizes less than about 0.1 micron in Flesher's process since polymer microemulsions obtained by reverse phase polymerization is a known species of a genus described in Flesher and the person of ordinary skill in the art would expect such polymer microemulsions to work as flocculants in Flesher's method.

    With respect to the solution viscosity and solubility

HERC0076230

Serial No. 07/552,958

Art Unit   1505

-6-

quotient, there is a reasonable basis to suspect that Flesher's
Product IC would meet the limitations in view of the identity of
the monomeric reactants employed and the similarities in the
polymerization techniques described in the reference and in the
application.  In fact, Flesher's Product IC appears to be very
similar to that shown in appellants' comparative Example 1* of
Table 1 on page 17.  The polymer of appellants' Comparative
Example 1* possesses a solution viscosity of 1.81 mPa s, which
directly reads on the instantly claimed values.  In addition,
this polymer has a solubility quotient of 18% which arguably
reads on the claimed "about 30 percent" since the term "about"
has been recognized to permit latitude in determining the scope
of the claims.

      Even if 18% does not read on "about 30 percent", one would
reasonably conclude that the solubility quotient would increase
with decreasing polymer particle size.  For instance compare
appellants' Example 2 and Comparative Example 1* (Table 1).  The
appellants' examples as shown in Table 1 would indicate that
solubility quotient is merely a property which is related to the
size of the polymer particles.  Since there is motivation to
employ polymer particles having sizes less than about 0.1 micron

HERC0076231

Serial No. 07/552,958                      -7-

Art Unit   1505

in Flesher, it would appear that the claimed solubility quotient
would follow merely as an additional property of such polymers.

Since the PTO has no means to conduct experiments, the
burden of proof had been shifted to the appellants.  However, the
appellants have not provided any evidence to show that the
properties would not be met by Flesher's products or that they
would not necessarily follow from the obvious variations thereof.

Turning to secondary considerations, there are no unexpected
results shown by decreasing the polymer particle size or by
increasing the solubility quotient as compared to Flesher's
working examples.

(II)  Claim 47 stands rejected under 35 U.S.C. 103 as being
unpatentable over Flesher et al, as applied above, in view of
Morgan et al.

See Paper No. 3 (Paragraph 19).

Obviousness-Type Double Patenting Rejection

Claims 40-47 stand rejected under the judicially created
doctrine of obviousness-type double patenting as being
unpatentable over claims 1-5 of U.S. Patent No. 4,968,435.
Although the conflicting  claims are not identical, they are not
patentably distinct from each other because they overlap.  Note

HERC0076232

-8-

Serial No. 07/552,958

Art Unit  1505

that the flocculants employed in the patented process appear to
have been prepared using reactants and a polymerization technique
that are identical to those of the instant application.

(10) New ground of rejection.

This Examiner's Answer does not contain any new ground of
rejection.

(11) Response to argument.

Rejection Under 35 U.S.C. 103

The appellants argue that Flesher's disclosure is limited to
macroemulsions. However, Flesher discloses polymers less than 10
microns and prefers those below 2 microns. In view of such a
teaching, there is no reason why one of ordinary skill in the art
would not expect microemulsions, which are known in the art and
are also produced by reverse phase polymerization as in Flesher,
to work as flocculants.

It is also noted that the instant claims recite polymer
particles having an average particle size of less than about 0.1
micron. Therefore, contrary to the appellants' comments on Page 8
(first full paragraph), not all of the appellants' polymer
particles are below 0.1 micron.

The appellants allege that the polymer used in the instant

HERC0076233

-9-

Serial No. 07/552,958

Art Unit   1505

method is superior to those of Flesher in terms of solution viscosity and solubility quotient. However, it is not readily apparent as to how the claimed properties provide any unexpected results in terms of flocculation. There is no evidence that the claimed polymer size provides any unexpected results.

The appellants also contend that Examples 7-12 and Comparative Examples 7A* and 7B* as shown in Table 2 of the instant specification demonstrate the superiority of the appellants' polymers. However, these Comparative Examples do not include a branching agent. On the other hand, Flesher includes a branching agent. See column 7, lines 64-67 and Table 2 in Flesher's Example 2. Thus, it is clear that the claimed method is not compared against Flesher's closest disclosure.

Obviousness-Type Double Patenting Rejection

The appellants argue that there is no overlap between the two sets of claims because the instant claims recite "water-soluble" whereas the patent claims recite "water-insoluble". However, water-solubility is purely relative and one cannot concretely determine a difference between two solutes unless the same standard of measurement is employed. The patent claims clearly recite "aqueous solutions" of these polymers. Thus,

HERC0076234

Serial No. 07/552,958                                    -10-

Art Unit   1505

although the patentees describe their polymers to be "water-
insoluble", they may be water-soluble to the extent that their
solubility quotients can be as high as "about 30 percent".
Moreover, it is most confusing as to how the polymer of the
patent claims can be water-insoluble when it is made by the same
microemulsion polymerization technology and identical ingredients
are employed.

    For the above reasons, it is believed that the rejections
should be sustained.

                                    Respectfully submitted,


R. Delmondo:tbs
(703) 308-2351
November 15, 1991                   *Joseph L. Schofer*

Frank M. Van Riet                   SUPERV... PATENT EXAMINER
American Cyanamid Company                   ART UNIT 155
1937 West Main Street
P.O. Box 60
Stamford, CT  06904-0060

HERC0076235

Art Unit 1505                 MAILED              Paper No. 10

Appeal No. 92-3877        MAR 17 1993                    dem

ON BRIEF                   PAT & TM OFFICE
                        BOARD OF PATENT APPEALS
                           AND INTERFERENCES


UNITED STATES PATENT AND TRADEMARK OFFICE


BEFORE THE BOARD OF PATENT APPEALS
         AND INTERFERENCES

RECEIVED
MAY 2 8 1993
DIRECTOR'S OFFICE
GROUP 180

Ex parte Roger E. Neff
         and
    Roderick G. Ryles


Application for Patent filed July 16, 1990, Serial No.
07/552,958; which is a division of application Serial No.
07/285,931, filed December 19, 1988, now abandoned.  Water-
Soluble Highly Branched Polymeric Microparticles.

Frank H. Van Riet et al. for Appellants.

Primary Examiner - R. Dalmendo


Before Winters, Tarring and W. Smith, Examiners-in-Chief.

W. Smith, Examiner-in-Chief.

        This is an appeal from the final rejection of claims 40
through 47, all the claims pending in the application.

        Claim 40 is illustrative of the subject matter on
appeal and reads as follows:

        40. A method of releasing water from a dispersion of
suspended solids which comprises (a) adding to the dispersion
from about 0.1 to about 50,000 parts per million of dispersion
solids of an aqueous solution of highly branched, water-soluble,
high molecular weight, polymeric microparticles, flocculant

HERC0076236

Appeal No. 92-3877

having an average unswollen diameter of less than about 0.1 micron, a solution viscosity of at least about 1.8 mPa.s, a solubility quotient of at least about 30 percent, and a branching agent content of at least about 4 molar parts per million based on the monomeric units in the polymer, (b) dewatering the mixture of the dispersion of suspended solids and the polymeric flocculant.

The references relied upon by the examiner are:

Morgan et al. (Morgan)      3,968,037      Jul. 6, 1976
Flesher et al. (Flesher)    4,720,346      Jan. 19, 1988
Neff et al. (Neff)          4,968,435      Nov. 6, 1990

References relied upon by appellants:

Candau et al. (Candau)      4,521,317      Jun. 4, 1985
Allen et al. (Allen)        4,528,321      Jul. 9, 1985

The claims stand rejected as follows:

I.  Claims 40 through 46 under 35 U.S.C. § 103 as unpatentable over Flesher,

II.  Claim 47 under 35 U.S.C. § 103 as unpatentable over Flesher in view of Morgan, and,

III.  Claims 40 through 47 under the judicially created doctrine of obviousness-type double patenting as unpatentable over Claims 1 through 5 of Neff.

We affirm.

The claimed invention is directed to a method of releasing water from a dispersion of suspended solids which

-2-

HERC0076237

Appeal No. 92-3877

comprises adding to the dispersion water-soluble, high molecular weight, polymeric microparticles having the specified unswollen diameter, solution viscosity and solubility quotient.

Flesher discloses a similar process which involves the use of a water-soluble, high molecular weight, polymeric microparticle flocculant. The microparticles of Flesher contain a branching agent as in the present invention and are stated to have a dry size of below 10 microns, preferably below 2 microns. While the microparticles of Flesher can be water-soluble, the reference does not disclose values for solution viscosity and solubility quotient as in the claimed invention.

We agree with the examiner's determination that the water-soluble, polymeric microparticle flocculant of Flesher is generic to that called for by the claims on appeal and thus, prima facie obvious. In re Woodruff, 919 F.2d 1575, 16 USPQ2d 1934 (Fed. Cir. 1990); In re Susi, 440 F.2d 442, 169 USPQ 423 (CCPA 1971). As explained in these cases, it is appellants' burden under these circumstances to establish that the subgeneric subject matter now claimed provides some unexpected result when compared with the applied reference.

Appellants argue that Flesher does not suggest the particle size of the claimed flocculant since the smallest particle diameter disclosed in Flesher is 2 microns which is an

-3-

HERC0076238

Appeal No. 92-3877

order of magnitude higher than that claimed. Appellants first note Flesher discloses at column 9, lines 20-24 that the details of the polymerization used in that reference can be found in, inter alia, European Patent Application 0,126,528. Appellants then assert that Allen, stated to be equivalent to that European Patent Application, discloses the polymer droplets formed therein can be below 5 microns, preferably 0.3 to 3 microns. Appellants contend this disclosure is evidence that Flesher does not encompass microparticles having the claimed diameter. We disagree.

We find it significant that neither Flesher nor Allen disclose an absolute lower limit for the diameter of the microparticles formed in those references. Flesher states that the microparticles are preferably below 2 microns in diameter while Allen prefers a range of 0.3 to 3 microns. It is apparent at the time of the present invention one of ordinary skill in the art was capable of performing polymerization reactions to form so-called microemulsions or inverse microemulsion having the particle size now claimed. See the paragraph bridging pages 10-11 of the specification, citing, inter alia, Candau which is also relied upon by appellants. Given that (1) Flesher places no lower limitation on the lower end of the diameter the microparticles of that reference can have and (2) one of ordinary skill in the art was capable of forming so-called microemulsions

-4-

HERC0076239

Appeal No. 92-3877

and inverse microemulsions at the time of the present invention, one of ordinary skill in the art would have recognized the microparticles of Flesher can have a diameter within the values delineated by the claims on appeal.

We reach the same conclusion insofar as the claims on appeal recite values for solution viscosity and solubility quotient. Since these parameters define the extent the claimed microparticles are water-soluble and Flesher discloses the microparticles of that reference can be water-soluble, it is incumbent upon appellants to establish these values define a flocculant which differs in an unexpected manner from that of Flesher.

The only objective evidence of nonobviousness relied upon by appellants is the results set forth in Tables 1 and 2 of the present specification. We have carefully considered this evidence but find that it is not entitled to sufficient weight so as to outweigh the evidence of obviousness relied upon by the examiner. As pointed out by the examiner, the only examples in Table 1 which set forth the particle diameter of the microparticles used are Example 6 and Comparative Example 1A. Comparative Example 1A is not representative of Flesher since Flesher clearly discloses the use of a branching agent, e.g., methylenebisacrylamide, as used in the present invention and the flocculant of Example 6. To the extent appellants argue the

-5-

HERC0076240

Appeal No. 92-3877

Comparative Examples were formed according to a conventional emulsion polymerization and would have a particle diameter of about 1 micron, we point to their reliance upon Allen as exemplary of the techniques useful in forming the microparticles of Flesher which discloses a particle size as low as 0.3 microns. Thus, even if the comparative microparticles do have the argued diameter, they would not be representative of the closest prior art.

Turning to claim 47, we note that Morgan does disclose acryloxyethyltrimethylammonium chloride as a common monomer in cationic flocculants. Inasmuch as Flesher discloses cationic flocculants are useful in that method, we agree with the examiner's determination that one of ordinary skill in the art would have found it *prima facie* obvious to use the monomers specified in claim 47.

Turning to the obviousness-type double patenting rejection, we find that the present claims are an obvious variation of the method set forth in claims 1 through 5 of Neff. The only point of distinction argued is that the process of Neff requires the use of a water-insoluble polymeric flocculant whereas the present claims specify the flocculant is water-soluble. However, it is apparent from the specification of Neff that the water-insolubility requirement is relative.

-6-

HERC0076241

Appeal No. 92-3877

Neff discloses at column 8, lines 15-25 that the solution viscosity of the flocculants of that reference is a measurement of the water-solubility of the material. The claims of Neff require the cationic flocculant have a solution viscosity of from about 1.2 to about 1.8 mPa.s while the present claims require the flocculant to a solution viscosity of at least about 1.8 mPa.s. Thus, it is apparent that the respective flocculants have a common solution viscosity at and around 1.8 mPa.s. It is the overlap in this property which is more telling than the relative words used in the claim to describe the solubility of the flocculants. At 1.8 mPa.s, the respective flocculants would expectedly exhibit the same or similar solubility. Appellants have not demonstrated on this record through objective evidence that the additional requirement that the present flocculant have a solubility quotient of at least 30 percent represents a further limitation on the water-solubility of the flocculant such that the flocculant set forth in the claims of this application differs in an unobviousness manner from the flocculant set forth in the claims of Neff. Under these circumstances, we affirm the rejection under obviousness-type double patenting.

The decision of the examiner is affirmed.

-7-

HERC0076242

Appeal No. 92-3877

No time period for taking any subsequent action in connection with this appeal may be extended under 37 CFR 1.136(a). See the final rule notice, 54 F.R. 29548 (July 13, 1989), 1105 O.G. 5 (August 1, 1989).

AFFIRMED

Sherman D. Winters
Examiner-in-Chief                    )
                                     )
                                     )
Henry W. Tarring, II                 )    BOARD OF PATENT
Examiner-in-Chief                    )       APPEALS
                                     )         AND
                                     )    INTERFERENCES
William F. Smith                     )
Examiner-in-Chief                    )


Frank M. Van Riet
American Cyanamid Company
1937 West Main Street
P. O. Box 60
Stamford, CT  06904-0060

-8-

HERC0076243



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/553,959 | 07/16/90 | NEFF | R 30,737-01 |

```
                                    15M2/0615
FRANK M. VAN RIET
AMERICAN CYANAMID COMPANY
1937 WEST MAIN STREET
P.O. BOX 60
STAMFORD, CT  06904-0060
```

| | DEL MENDAXAMINER | |
|---|---|---|
| | ART UNIT | PAPER NUMBER |
| | 1505 | 11 |

DATE MAILED:                    06/15/93

## NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ☐ Applicant's failure to respond to the Office letter, mailed _____

2. ☐ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138.

3. ☐ Applicant's failure to timely file the response received _____ within the period set in the Office letter.

4. ☐ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of _____ of the Notice of Allowance.

   ☐ The issue fee was received on _____

   ☐ The issue fee has not been received in Allowed Files Branch as of _____

   In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, in the amount specified by 37 C.F.R. 1.17 (l), and a verified showing as to the causes of the delay.

   If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc. v. Schuyler, 172 U.S.P.Q. 513.

5. ☐ Applicant's failure to timely correct the drawings and/or submit new or substitute formal drawings by _____ as required in the last Office action.

   ☐ The corrected and/or substitute drawings were received on _____

6. ☑ The reason(s) below.

   *The time period for taking any further action in connection with the appeal has expired.*

                                    Joseph L. Schofer

                                    JOSEPH L. SCHOFER
                                    SUPERVISORY PATENT EXAMINER
                                    ART UNIT 155

PTO-1432 (REV. 8-82)

HERC0076244

PTO/SB/68 (11-96)
Approved for use through 10/31/99. OMB 0651-0031
Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

| | |
|---|---|
| | In re Application of *Neff et al.* |
| **PROCESSED BY**<br>JUN 1 2 1997<br>FIU | Application Number **555,958**    Filed **7/16/90** |
| | Group Art Unit    Examiner |
| | Paper No. **#12** |

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

___ (A) referred to in United States Patent Number **5,354,481**, column _____.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e.,
Application No. _____, filed _____, on page _____, of
paper number _____.

___ (C) an application that claims the benefit of the filing date of an application that is open to public
inspection, i.e., Application No. _____, filed _____, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete
application to the public.

Please direct any correspondence concerning this request to the following address:

_____

_____

_____

*Sarla C. Shroff*       **6/11/97**
Signature              Date

SARLA C. SHROFF
Typed or printed name

| FOR PTO USE ONLY |
|---|
| Approved by: _____ (initials) |
| Unit: _____ |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

HERC0076245

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

## REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

|  | In re Application of |  |
|---|---|---|

**PROCESSED BY**

**APR 8 1998**

**FHI**

| Application Number | Filed |
|---|---|
| 552 958 | 7-6-1990 |
| Group Art Unit    Examiner | |

Paper No. #13

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(1)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

___ (A) referred to in United States Patent Number SN - 552 958 column _____

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e.,
Application No. _____, filed _____ on page _____ of
paper number _____

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. _____ filed _____ or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

_____

_____

_____

| Darlene Jones | 4-8-98 |
|---|---|
| Signature | Date |

Darlene Jones
Typed or printed name

| FOR PTO USE ONLY |
|---|
| Approved by: _____ |
| (Initials) |
| Unit: _____ |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

HERC0076246

PTO/SB63 (07-03)
Approved for use ~rough 7/31/2003, OMB 0651-0031
U.S. Patent and Trademark Office; DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

## REQUEST FOR ACCESS TO AN ABANDONED APPLICATION UNDER 37 CFR 1.14

| | In re Application of |
|---|---|
| Bring completed form to: | |
| File Information Unit | **Application Number** |
| Crystal Plaza Three, Room 1D01 | 07/552958. |
| 2021 South Clark Place | **Filed** |
| Arlington, VA | Jul 16 1990. |
| Telephone: (703) 308-2733 | Paper No. *14* |

I hereby request access under 37 CFR 1.14(a)(1)(iv) to the application file record of the above-identified ABANDONED application, which is identified in, or to which a benefit is claimed, in the following document (as shown in the attachment):

United States Patent Application Publication No. _____, page _____, line _____

United States Patent Number 5354481, column _____, line _____, or

WIPO Pub. No. _____, page _____, line _____

---

**Related Information about Access to Pending Applications (37 CFR 1.14):**
Direct access to pending applications is not available to the public but copies may be available and may be purchased from the Office of Public Records upon payment of the appropriate fee (37 CFR 1.19(b)), as follows:
For published applications that are still pending, a member of the public may obtain a copy of:
  the file contents;
  the pending application as originally filed; or
  any document in the file of the pending application.
For unpublished applications that are still pending:
(1)  If the benefit of the pending application is claimed under 35 U.S.C. 119(e), 120, 121, or 365 in another application that has: (a) issued as a U.S. patent, or (b) published as a statutory invention registration, a U.S. patent application publication, or an international patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
  the file contents;
  the pending application as originally filed; or
  any document in the file of the pending application.
(2)  If the application is incorporated by reference or otherwise identified in a U.S. patent, a statutory invention registration, a U.S. patent application publication, or an international patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
  the pending application as originally filed.

---

| *Attia Siddiqui* | 3.3.05 |
|---|---|
| Signature | Date |
| ATTIA SIDDIQUI | |
| Typed or printed name | RECEIVED FOR PTO USE ONLY |
| | MAR 0 5 2003 |
| Registration Number, if applicable | Approved by: _____ (initials) |
| 703-521 1952 | File Information Unit |
| Telephone Number | |

This collection of information is required by 37 CFR 1.14. This information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. BRING TO: File Information Unit, Crystal Plaza Three, Room 1D01, 2021 South Clark Place, Arlington, VA.

HERC0076247

US005354481A

## United States Patent [19]

### Neff et al.

[11]   Patent Number:     5,354,481

[45]   Date of Patent:     Oct. 11, 1994

[54]   WATER-SOLUBLE HIGHLY BRANCHED
       POLYMERIC MICROPARTICLES

[75]   Inventors:  Roger E. Neff, Stamford; Roderick G.
                    Ryles, Milford, both of Conn.

[73]   Assignee:   Cytec Technology Corp., Stamford,
                    Conn.

[21]   Appl. No.:  63,793

[22]   Filed:      May 13, 1993

### Related U.S. Application Data

[60]   Continuation of Ser. No. 557,518, Jul. 16, 1990, abandoned, which is a division of Ser. No. 283,911, Dec. 13, 1988, abandoned.

[51]   Int. Cl.⁵ .................................... C08F 1/56
[52]   U.S. Cl. ........................ 210/734; 210/723
[58]   Field of Search ............ 210/732, 733, 734, 723

[56]                  References Cited
              U.S. PATENT DOCUMENTS

       2,977,143   3/1960   Gorea et al.
       3,235,490   2/1966   Gorea et al.

3,364,037   7/1976   Morgan et al. ............. 210/734
4,720,346   7/1988   Flesher et al. ............ 210/734
4,943,378   7/1990   Flesher et al. ........... 210/734
4,968,435  11/1990   Neff et al. .............. 210/734

FOREIGN PATENT DOCUMENTS

0126528  11/1984   European Pat. Off.

OTHER PUBLICATIONS

J. E. Morgan, M. A. Yorke, and J. E. Boothe How Cationic Polymer Structure Dewatering Efficiency of Activated Sludges.

Primary Examiner—Neil McCarthy
Attorney, Agent, or Firm—Frank M. Van Riet

[57]                  ABSTRACT

Water-soluble, high molecular weight, polymeric, microparticles with a high degree of branching are disclosed. A microemulsion polymerization process for preparing the microparticles is also disclosed. The microparticles give excellent results in a number of solid-liquid separation processes.

8 Claims, No Drawings

HERC0076248