# EXHIBIT 20

REDACTED

**Exhibit No. 20: Defendants' *In Limine* Requests (individually or jointly)**

I.



Exhibit 20 of the Pretrial Order
Page 1 of 22

REDACTED



<hr />

[1] The complete Northern District of California's model patent jury instructions can be downloaded from that Court's website at: http://www.cand.uscourts.gov/cand/ForAttys.nsf/

Exhibit 20 of the Pretrial Order
Page 2 of 22

REDACTED.



Exhibit 20 of the Pretrial Order
Page 3 of 22

**II.    THE COURT SHOULD PRECLUDE CIBA FROM ARGUING OR INTRODUCING EVIDENCE OF ANY ALLEGED JOINT RESEARCH OR DEVELOPMENT BY HERCULES AND CYTEC OF PERFORM SP9232 (Hercules' Request)**

Ciba should be precluded at trial from attempting to show through testimony, exhibits or argument that Hercules and Cytec jointly developed or engaged in joint research or development of PerForm® SP9232, and from otherwise attempting to suggest that Hercules and Cytec jointly developed the product.

> The Court found after the two-day Privity Bench Trial in this matter that:
>
> This was a Hercules initiative. They did the scientific work, the research work that lead ultimately to the chemical AEM 232, which was given the trade name PerForm SP232. And the testimony and documents show that although certain changes were made after Hercules approached Cytec with its formulation, this was not a situation where the involvement of Cytec was such as to warrant calling this a joint research and development project. It wasn't. This was Hercules' research and development project.

(Ex. F, Privity Bench Trial Tr. dated May 9, 2006 (D.I. 372) at 216:11-19.) The Court's ruling is now the law of the case, and Ciba may not re-litigate those issues that the Court has decided.

Notwithstanding the Court's clear ruling, Ciba apparently will seek to reargue that Cytec helped Hercules co-develop PerForm® SP232, or to suggest that Hercules chose Cytec to manufacture PerForm® SP232 for them because Cytec had special knowledge regarding Polyflex (i.e., argument that the scientists within Cytec who worked on PerForm® SP9232 were the same ones who were very knowledgeable about Polyflex, e.g., Logan Jackson), and this made it easier for Hercules to come up with a "copy" of Polyflex (i.e., PerForm® SP9232)). If Ciba were allowed to proceed along these lines, it would be using the very same (or similar) facts that the Court evaluated at the conclusion of the Privity Bench Trial, and which the Court found not to support Ciba's theory of joint development, in order to encourage the jury to reach a conclusion or draw inferences contrary to the Court's ruling.

Exhibit 20 of the Pretrial Order
Page 4 of 22

REDACTED

Ciba has included a group of exhibits on its proposed trial exhibit list that have no bearing upon any relevant issue that remains to be decided in this case. Rather, the only purpose of such exhibits appears to be an effort to re-litigate Ciba's discredited joint development theory. For example, exhibits PTX109 (PHX022), PTX191 (JHX006/PHX043), PTX125 (PHX024), PTX126 (PHX025), PTX165 (PHX 033), PTX181 (PHX036), PTX192 (PHX 42) and PTX107 (PHX049) relate to samples sent from Cytec to Hercules in late 2001-early 2002 that John Harrington of Hercules, and Lou Rosati and Logan Jackson from Cytec, testified about at the Privity Trial. (See, e.g., Tr. A174:4-A181:24 (Harrington); Tr. A162:20-A163:1 (Rosati), Tr A85:21-A93:19 (Jackson).) These samples were not PerForm® SP9232, were not Polyflex, and were unrelated to anything going on vis-a-vis PerForm® SP9232. Hercules performance-tested the samples (as Hercules does with lots of other companies' samples it receives, from companies like SNF that want to try and sell products to Hercules; see Tr. A204:6-8), but Hercules never went any further with anything regarding the samples. Hercules never did a chemical analysis on them, and thus never even learned what they were chemically. (Tr. A202:16-A205:12) Hence, these exhibits, and any others that Ciba may seek to use for a similar purpose, should be excluded from use by Ciba as evidence at trial, because they could only be used in an attempt to persuade the jury to reach a conclusion contrary to the Court's ruling that the development of PerForm® SP9232 was a "Hercules initiative", and not a "joint" project.

Ciba also has included documents on its proposed trial exhibit list relating to Hercules' licensing of Polyflex from Cytec (see PTX 45, which is the Amended & Restated Distributorship Agreement between Cytec and Hercules re: Polyflex), ███████████████

████████████████████████████████████████

███████████████████████████ Again, these documents should be excluded from

Exhibit 20 of the Pretrial Order
Page 5 of 22

evidence at trial, because they have no relevance to matters remaining in issue and would only serve to confuse the jury.

Most remarkably, Ciba has designated all of its direct testimony from the Privity Bench Trial transcript for apparent re-use at the main trial. (*See* Ciba's List of Transcript Designations served May 17, 2006 at 60-61 (Ex. G).)

"The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." *Hamilton v. Leavy*, C. A. No. 94-336 (KAJ), 2004 U.S. Dist. LEXIS 5886 (D. Del. Mar. 24, 2004) (Ex. H) (citing *Hamilton v. Leavy*, 322 F.3d at 776, 787 (3d Cir. 2003) (internal quotations omitted) ) "Reconsideration of a previously decided issue may ... be appropriate when the record contains new evidence." *Id.* "But this is so only if the new evidence differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision . . . Accordingly, if the evidence at the two stages of litigation is substantially similar, or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply." *Id.* (citations omitted).

In this instance, the evidence that Ciba seeks to introduce does not differ materially from or is identical to the evidence it introduced at the Privity Bench Trial. Indeed, Ciba seeks to designate all or most all of the direct testimony from the Privity Bench Trial for re-use at the main trial. Ciba could only use such evidence in an attempt to urge the jury improperly to come to a conclusion different from the Court's ruling. Therefore, the Court should preclude Ciba from attempting to use the Privity Bench Trial testimony in the main trial, and from otherwise trying to show that Hercules and Cytec jointly developed PerForm or to suggest that PerForm® SP9232 was other than a Hercules initiative and based entirely on Hercules' research and development. Any marginal relevance of the Privity Bench Trial

Exhibit 20 of the Pretrial Order
Page 6 of 22

testimony and documents would be substantially outweighed by the danger of unfair prejudice to Hercules, and of misleading or confusing the jury. *See* Fed. R. Evid. 403.

Exhibit 20 of the Pretrial Order
Page 7 of 22

**III.    CIBA SHOULD BE PRECLUDED FROM OFFERING ANY ARGUMENT OR EVIDENCE OF INFRINGEMENT OF THE '766 AND/OR '808 PATENTS UNDER THE DOCTRINE OF EQUIVALENTS AND SHOULD BE PRECLUDED FROM COMPARING HERCULES' PERFORM® SP9232 PRODUCT TO CIBA'S POLYFLEX PRODUCT (Joint Hercules and Cytec Request)**

Ciba's interrogatory responses (including its claim infringement charts) uniformly fail to set forth any appropriate analysis of infringement under the doctrine of equivalents. Moreover, Ciba's experts did not provide the requisite analysis of infringement under the doctrine of equivalents in their expert reports. Accordingly, Ciba and its experts should be barred from asserting a theory of infringement by equivalents at trial. Ciba should also be precluded from stating or otherwise suggesting equivalence, similarity or the like between the accused PerForm® SP9232 product and either: (a) the claims of the patents in suit; or, (b) Ciba's commercial Polyflex product, due to the likelihood of jury confusion and prejudice to Defendants.

On January 19, 2005, Hercules propounded its Interrogatory No. 3, asking Ciba to state the complete factual and legal bases for its contentions that Hercules infringed the claims of the '808 and/or '766 patent, including (*inter alia*) an identification of each allegedly infringed patent claim and "whether the act of alleged infringement was literal or under the doctrine of equivalents." (Ex. I, Hercules' First Set of Interrogatories to Ciba (Nos. 1-7).) In its response, Ciba nowhere mentions the doctrine of equivalents, nor is there any discussion of that doctrine in Ciba's claim chart or elsewhere in the response. (*See* Ex. J, Ciba's Responses to Hercules' First Set of Interrogatories (Nos. 1-7).) Ciba supplemented this interrogatory three times, but never included any discussion or analysis of the doctrine of equivalents. (*See* Ex. K, Ciba's Supplemental Response to Hercules' First Set of Interrogatories (Nos. 3 and 7).) In its supplemental answers to Interrogatory No. 3, Ciba

Exhibit 20 of the Pretrial Order
Page 8 of 22

REDACTED

merely incorporated by reference its expert reports--which also fail to contain the requisite analysis of the doctrine of equivalents.[2]



First, comparison of the two commercial products is wholly improper. *See Nestier Corp. v. Manasha,* 739 F.2d 1576, 1579 (Fed. Cir. 1984) ("[E]quivalence must be established with respect to the claims of the patent, not . . . for the commercial structures involved.").

Second, any attempt by Ciba to prove equivalence by comparing PerForm® SP9232 to the alleged inventions of the '808 and '766 patents as a whole (*see, e.g.,* Ciba's Opposition to Hercules' Motion for Summary Judgment of Non-Infringement (D.I. 317) at 4, 29-31 and 37-38) is inappropriate. The Supreme Court has expressly held that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention" and concluded that "the doctrine of equivalents ***must be applied to the individual elements of the claim,*** not to the invention as a whole." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29 (1997) (emphasis added). Nowhere has Ciba addressed the individual elements of the claims.

---

[2] Ciba's very first actual reference to infringement under the doctrine of equivalents in an interrogatory answer came after the close of discovery and in response to a different interrogatory (No. 26) not directed to infringement under the doctrine of equivalents. (*See* Ex. L, Ciba's Responses to Hercules' Fifth Set of Interrogatories (Nos. 19-50).) That reference, however, is again nothing more than a naked conclusion:

(*Id.* at 14.) There is no analysis or other discussion whatsoever, let alone the required claim element by claim element analysis, and no citation to supporting evidence of any kind.

Exhibit 20 of the Pretrial Order
Page 9 of 22

REDACTED

And, nowhere has Ciba attempted to assess each of the individual claim elements with the "function-way-result" tripartite test, or the "insubstantial/substantial differences" test (or any other test for that matter) which the Supreme Court and Federal Circuit have offered as acceptable means of demonstrating infringement by equivalents.

Because Ciba has no admissible evidence upon which it can rely to assert infringement under the doctrine of equivalents, it would be misleading and confusing to the jury and prejudicial to Defendants to permit Ciba, in its opening statement, closing statement and/or through presenting testimony, to draw comparisons of equivalence, similarity or like terms between the accused PerForm® SP9232 product and either the claims of the patents in

---

[3] Nor does Ciba try to analyze the doctrine of equivalents for each element of the claims under the "function-way-result" test, which also must be done on an element-by-element basis. *See Warner-Jenkinson*, 520 U.S. at 40.

Exhibit 20 of the Pretrial Order
Page 10 of 22

REDACTED

suit or Ciba's commercial Polyflex product. Such should be precluded under Fed. R. Evid.
403.

Ciba has also failed to meet the standard for providing expert opinion testimony on
the doctrine of equivalents and should be precluded from offering any testimony on this topic
from any of its experts at trial. Fed. R. Civ. P. 26(a)(2)(B) states that an expert's report "shall
contain a complete statement of all opinions to be expressed and the basis and reasons
therefor" and "the data or other information considered by the witness in forming the
opinions." At trial, an expert "is limited to the information contained in their expert reports."
*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 289 F. Supp 2d 493, 500 (D. Del.
2003). Thus, when particularized, element-by element analysis on the equivalence between
the claim and the accused product was not provided in a patentee's expert report(s), this
Court held that the patentee did not meet the standard for providing expert opinion testimony
on the doctrine of equivalents and precluded the expert from testifying at trial as to
equivalents. *Id.* at 499-500.[4]

Here, not one of Ciba's experts has ever even mentioned the doctrine of equivalents
in any of their expert reports, much less provided the detailed and exacting showing required
by Federal Circuit case law.[5] None of Ciba's experts have discussed in their reports whether

---

[4] *See also PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir.
2005) ("having presented the district court with only conclusory statements regarding
equivalence, without any particularized evidence and linking argument as to the
'insubstantiality of the differences' between the claimed invention and the accused device, or
with respect to the 'function, way, result' test, PC connector is now foreclosed from invoking
the substantive application of the doctrine of equivalents.")

[5] Ciba's technical experts are Drs. Gilbert, Wagner, and King. Drs. Wagner and Gilbert do
not mention and offer no opinions in their reports that could be construed as opining on the
doctrine of equivalents. Ciba's paper making expert, Dr. King, never mentions the doctrine
of equivalents but offers the conclusion in his Supplemental Expert Report, under the heading
████████████████████████████████████████  To the extent this could be construed as an

Exhibit 20 of the Pretrial Order
Page 11 of 22

or not any differences between the accused PerForm® SP9232 product and each of the '808 and '766 patent claim elements are insubstantial. Nor has even one of them analyzed whether the accused PerForm® SP9232 product performs a similar function in substantially the same way to achieve substantially the same result as each of the '808 and '766 patent claim elements. Having failed to provide any of this information in their expert reports as required by Fed. R. Civ. P. 26(a)(2)(B), Ciba's experts cannot provide it for the first time to the jury at trial. *Honeywell*, 289 F Supp 2d at 499-500; *see also Advanced Medical Optics, Inc. v. Alcon Inc.*, C.A. No. 03-1095 (KAJ), 2005 U.S. Dist. LEXIS 5803, *15 (D. Del. Apr 7, 2005) ("Dr. Olson did not disclose an opinion on infringement of either patent in his expert report, and as such he may not offer one at trial.") (Ex M).

---

*attempt* by Dr. King at opining on the doctrine of equivalents, as explained above, comparison of the accused to a commercial product is simply a wrong and improper comparison and does not qualify as appropriate expert opinion on the doctrine of equivalents. *See Nestier Corp.*, 739 F.2d at 1579. Moreover, Dr. King impermissibly ignores the individual elements of the '808 and '766 patent claims, and fails to make any comparison on an element-by-element basis under any of the tests set forth in *Warner-Jenkinson*.

Exhibit 20 of the Pretrial Order
Page 12 of 22

REDACTED

### IV. CIBA SHOULD BE PRECLUDED FROM OFFERING NORMAN WAGNER'S TESTIMONY DURING ITS CASE-IN-CHIEF AND FROM OFFERING TESTIMONY OUTSIDE THE SCOPE OF HIS REPORTS (Hercules' Request with Cytec Joining Only as to Infringement Issues)

Ciba should be precluded from offering Dr. Wagner's testimony during its case-in-chief. In derogation of the Scheduling Order (D.I. 23), Ciba did not provide on July 22, 2005 "a complete statement of all opinions to be expressed" by Dr. Wagner regarding the issue for which Ciba bore the burden of proof (*i.e.*, infringement), nor did Ciba provide "the basis and reasons" for such opinions. *See* Fed. R. Civ. P. 26(a)(2)(B).



Only later, in response to the reports by Hercules' expert Dr. Prud'homme, did Dr. Wagner provide any opinions regarding infringement issues and explain the bases and reasons for his opinions. Dr. Wagner should be limited to testifying as a rebuttal witness because Ciba chose to provide his opinions only in this manner.

#### 1. Ciba Previously Agreed to Limit Dr. Wagner's Testimony

Hercules raised the deficiencies of Dr. Wagner's initial report in a July 27, 2005 letter to the Court. (D.I. 110). There Hercules pointed out that Dr. Wagner's report failed to offer expert opinions or conclusions or describe the bases for such conclusions. (*Id.* at 2.) Hercules pointed out that, essentially, Ciba had granted itself an extension of time to file a substantive report by Dr. Wagner in violation of the Scheduling Order.

The Court held a telephone conference on August 2, 2005 (D.I. 123) where Hercules argued that Dr. Wagner's report did not satisfy Fed. R. Civ. P. 26(a)(2)(B) because it did not provide opinions or bases and reasons for such opinions. (Ex. O, Telephone Conf. Tr. dated

Exhibit 20 of the Pretrial Order
Page 13 of 22

Aug. 2, 2005 at 5-6, 8, 9, 10-11.) Hercules sought to strike Dr. Wagner's report. Ciba's

counsel urged that the report was not inadequate in any way. (*Id.* at 5-6, 7-8, 9-10.)

To resolve the dispute, Ciba reached agreement with the Court that Ciba would

confine the scope of Dr. Wagner's testimony to that offered in his initial report:

THE COURT: Are you satisfied to have your witness limited in his testimony strictly to
    what is disclosed in this report?

MR. THOMPSON: Am I? Yes. Well, he does the complete report as regards of the
    information that was available to him at the time, but as you know, Your Honor, and
    we explain, there is testimony that their witness, Dr. Gellman, you know, we only
    have one deposition. . . .

THE COURT: Well, hold on. I'm not interested in Dr. Gellman right now. I'm focused on
    the report that is in front of me. . .

    If we were in court and your witness were on the stand and he were to say I
    think they're covalently cross-linked and he were asked why, there is no detail that
    isn't already described in this report that would support that, because what I'm
    suggesting in my question is if you thought he could get up there and give some
    additional detail, I wouldn't let that happen. And would you be comfortable with
    that? Because if you wouldn't, I need to know it now.

MR. THOMPSON: Yes, within the framework of what the report is. This isn't a Q & A.

THE COURT: No, you are missing my point. . . . I'm asking for a straight up yes or no. Is it
    in this report or not? Is there something he would want to say from the stand or you
    would want to ask him to persuade a jury or to get past a motion to have his
    testimony stricken for being unsupported which isn't in this report or is it all here?
    Everything you need to make out the case, you want to make out on the stand?

MR. THOMPSON: The answer to that is yes, it is, because this report includes all his
    opinions, all the tests that he is going to rely on and it refers to the documents that he
    will testify about in Exhibit B. Yes. The answer is yes.

(*Id.* at 11-13.) Based on Ciba's representations, the Court declined to strike Dr. Wagner's

report. But the Court also indicated that when the record became better developed, it would

not prevent Hercules from again pursuing this matter. (*Id.* at 14.)

Dr. Wagner submitted a more detailed Supplemental Report on October 14, 2005

(D.I. 254.) There he stated that "[t]his report is in response to the rebuttal expert report of

Robert K. Prud'homme signed August 19, 2005, and supplemented on September 19, 2005."

Exhibit 20 of the Pretrial Order
Page 14 of 22

REDACTED

(D.I. 254 at 1.)  As such, Dr. Wagner responded to Dr. Prud'homme's reports, which in turn had contested the infringement arguments of Ciba's technical expert, Robert Gilbert.[6]  Unlike his initial report, Dr. Wagner's supplemental report actually contains opinions and his reasons for such opinions, and also unlike his initial report, it specifically referenced the documents about which Dr. Wagner was opining.  Hercules deposed Dr. Wagner 12 days later, on October 26, 2005.

### 2.    Ciba Now Seeks to Have Dr. Wagner Testify Outside the Four Corners of His Initial Report

Ciba seeks to augment the so-called opinions expressed in Dr. Wagner's initial report.  Ciba's Summary of Expert Testimony now asserts that Dr. Wagner will offer the following testimony at trial:

> Dr. Wagner is expected to testify at trial regarding the opinions set forth in his expert reports.  Dr. Wagner will offer expert testimony on the subject of rheology and how rheological tests and parameters are used to characterize the structure of polymers.  *Dr. Wagner will offer expert testimony concerning the rheological tests conducted on the products involved in this case and what those tests indicate regarding the structure of such products.*  Dr. Wagner may testify in rebuttal to evidence offered by defendants *concerning non-infringement, invalidity and/or unenforceability of the patents-in-suit.*

(Ex. P, Ciba's Summary of Expert Testimony at 1-2 (emphasis added).)  As shown above, Ciba seeks to have Dr. Wagner testify in its case-in-chief regarding "the rheological tests conducted on the products involved in this case and what those tests indicate regarding the structure of such products," even though such linking opinions are missing from his initial report.  Ciba also plans for Dr. Wagner to testify on rebuttal regarding issues of "non-infringement, invalidity and/or unenforceability of the patents-in-suit," even though neither

---

[6] Because Dr. Wagner's initial report contained no opinions, Dr. Prud'homme did not respond to that report, other than to dispute Dr. Wagner's summary conclusion ▮▮▮

Exhibit 20 of the Pretrial Order
Page 15 of 22

REDACTED

of his reports addresses invalidity or unenforceability issues, and he only very narrowly opined about infringement-related matters.

**3.     Dr. Wagner Should be Precluded from Testifying in Ciba's Case-in-Chief and Only Permitted in Rebuttal to Testify as to Issues Already Addressed in His Reports**

The Scheduling Order required Ciba to provide on July 22 its expert reports for those issues where it has the burden of proof. (D.I. 23, ¶ 3(d).) Ciba's reports were required to satisfy Fed. R. Civ. P. 26(a)(2)(B) by providing a full statement of opinions and bases and reasons for such opinions. Dr. Wagner's initial report did not meet these requirements. And after Hercules brought these deficiencies to the Court's attention, Ciba promised to confine Dr. Wagner's opinion testimony to the scope of the opinions expressed in his July 22 report. Ciba seeks to evade that promise.

Dr. Wagner's initial report merely provided a litany of tests that he may perform, but did not tie those tests to any of the products at issue in this case. ██████████████

███████████████████████████████████████████████████

███████████████████ The "opinions" expressed in Dr. Wagner's initial report amount to, at best, a tutorial for the jury regarding rheological testing. But this would be a confusing waste of time and should not be permitted under Fed. R. Evid. 403. Indeed, the jury might be confused into thinking that Dr. Wagner had conducted rheological testing of the Hercules product himself--which he has not.

Dr. Wagner should be prohibited from presenting more detailed opinion testimony during Ciba's case-in-chief because such opinions were not presented to Hercules as required under the Scheduling Order. Dr. Wagner has admitted that when he submitted his initial report, he had not reviewed *any* confidential Hercules information. (Ex. Q, Wagner Dep. 33:6-18.) Hence, he should be precluded from discussing Hercules' internal testing

Exhibit 20 of the Pretrial Order
Page 16 of 22

REDACTED

documents during Ciba's case-in-chief. Dr. Wagner's opinions should only be presented during Ciba's rebuttal case, since Ciba chose to provide them that way to Hercules.

Dr. Wagner should also be prohibited from providing opinion testimony that ventures beyond the scope of his expert reports, such as a detailed infringement analysis, or any analysis whatsoever of invalidity or unenforceability. "As noted in the case law of this jurisdiction, the testimony of expert witnesses is limited to information contained in their expert reports." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 289 F. Supp. 2d 493, 500 (D. Del. 2003) (citing *Moore No. Amer., Inc. v. Poser Business Forms, Inc.*, 2001 U.S. Dist. LEXIS 9054, at *20 (D. Del. Mar. 8, 2001) and *Arthrocare Corp. v. Nephew, Inc.*, 2003 U.S. Dist. LEXIS 6676, at *3 (D. Del. Apr. 4, 2003)). Dr. Wagner has testified that he "did not focus [his] attention on the claims of the patent [sic, patents]," and that he was "less familiar with them." (Ex. Q at 86:12-87:19.) Nor did he read the prosecution histories of the patents-in-suit (*id.* at 87:22-88:12) ███████████████████████████████████

████████████████████████  ██████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ And Ciba's Dr. Gilbert will testify regarding literal infringement issues in any event. For these reasons, in addition to Dr. Wagner never having provided a detailed infringement analysis, he should not be permitted to testify even in rebuttal as to infringement, either literal infringement or infringement under the doctrine of equivalents.

Because neither of his reports mention or even hint at patent invalidity or unenforceability, Dr. Wagner should also be precluded from testifying about those issues. *Honeywell*, 289 F. Supp. 2d at 500.

Exhibit 20 of the Pretrial Order
Page 17 of 22

REDACTED

## V. CIBA SHOULD BE PRECLUDED FROM OFFERING EVIDENCE REGARDING PRE-SUIT TESTING OF PERFORM IN CIBA'S SUFFOLK, VIRGINIA FACILITY DUE TO SPOLIATION (Joint Hercules and Cytec Request)

Ciba should be precluded from mentioning or offering any evidence at trial regarding its 2003 pre-suit testing of PerForm at its Suffolk, Virginia laboratory.

Ciba utterly disregarded its obligation to preserve this evidence.

This *in limine* request pertains to the following testing expressly relied upon by Ciba's expert Robert Gilbert in his report (D.I. 104 at ¶¶ 25, 26, and 28):



This *in limine* request also implicates the following (apparently unsuccessful) testing about which Ciba has not provided document or sample discovery:

Exhibit 20 of the Pretrial Order
Page 18 of 22

REDACTED



"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 1998); *accord In re Wechsler*, 121 F. Supp. 2d 404, 415 (D. Del. 2000). "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (quoting *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D. N.J. 2004)). A showing of spoliation can result in: "[1] dismissal of a claim or granting judgment in favor of a prejudiced party; [2] suppression of evidence; [3] an adverse inference, referred to as the spoliation inference; [4] fines; and [5] attorneys' fees and costs." *MOSAID*, 348 F. Supp. 2d at 335. The exclusion of favorable expert reports is appropriate in certain instances. *Wechsler*, 121 F. Supp. 2d at 427.

In assessing the sanction for spoliation, Third Circuit courts consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Paramount*, 234 F.R.D. at 111 (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

Exhibit 20 of the Pretrial Order
Page 19 of 22

REDACTED

## 1.  Degree of Fault

Ciba technical specialist Matthew Wright ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████    ████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████    ████████████████████████████████████    ███████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████    Hence, from at least October 2003, through Ciba's May

7, 2004 filing of its complaint against Hercules for patent infringement, and also through the

time Hercules served document requests on Ciba directed to issues such as its testing of

PerForm (*see* Ex. X, Hercules' First Set of Document Requests to Ciba (Nos. 1, 8, 9, and 14)

(served Jan. 19, 2005)), Ciba has been obligated to preserve its testing-related evidence.

Ciba failed to satisfy this duty. First, during a mid-February, 2005 move to a new

building at Ciba's Suffolk, Virginia facility, Ciba lost Mr. Wright's notebook documenting

all his PerForm-related work. (Ex. S, Wright Dep. 19:15-22; 110:18-111:1; 111:14-16.)

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

Exhibit 20 of the Pretrial Order
Page 20 of 22

REDACTED



**2. Prejudice to Hercules**

Hercules has been prejudiced by Ciba's loss and destruction of this pre-suit testing

evidence. *See Wechsler*, 121 F. Supp. 2d at 416 ("When one side is completely deprived of

the opportunity to inspect the evidence because it was destroyed after the other side had a

Exhibit 20 of the Pretrial Order
Page 21 of 22

REDACTED

chance to examine it then sanctions for spoliation are generally appropriate."). ███████



### 3. Appropriate Sanction

In fashioning an appropriate sanction, "the court should take into account the twin aims of punishing culpable conduct while at the same time deterring others from engaging in similar conduct in the future." *See Wechsler*, 121 F. Supp. 2d at 427 (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)) ███████████

Hercules has not requested the more severe sanctions of dismissal or receiving judgment in its favor (*see Wechsler*, 121 F. Supp. 2d at 429-30), but Hercules does not believe the spoliation inference adequately redresses Ciba's flagrant disregard of its obligation to preserve evidence ████████████████████████████████

Exhibit 20 of the Pretrial Order
Page 22 of 22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


CIBA SPECIALTY CHEMICALS )
CORPORATION, )
 )  C.A. No. 04-293 (KAJ)
                    Plaintiff, )
 )  **JURY TRIAL DEMANDED**
            v. )
 )
HERCULES, INC. and )
CYTEC INDUSTRIES, INC., )
 )
                    Defendants. )


**PLAINTIFF CIBA SPECIALTY CHEMICALS CORPORATION'S
RESPONSES TO DEFENDANTS' *IN LIMINE* REQUESTS TO EXCLUDE EVIDENCE**

REDACTED

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence



Exhibit 20 page 1



Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence



Exhibit 20 page 2

REDACTED

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence



Exhibit 20 page 3


Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

II.    CIBA'S RESPONSE TO *IN LIMINE* REQUEST NO. 2 SEEKING TO
       PRECLUDE EVIDENCE OF THE "JOINT RESEARCH OR DEVELOPMENT"
       OF PERFORM® SP9232 BY DEFENDANTS HERCULES AND CYTEC

The underlying evidence of the interactions between Hercules and Cytec relating to the

Perform® SP9232 product are relevant to several issues in the liability trial, including, among

others, joint infringement, non-obviousness, damages and willfulness. These issues are the

province of the jury under the Seventh Amendment. The issues do not involve privity and

assignor estoppel, which were previously decided by this Court and which, contrary to Hercules'

assertion, Ciba does not seek to re-litigate. This can be seen from Ciba's Statement of Contested

Issues of Fact and Expected Proofs in the Joint Proposed Pretrial Order, which includes neither

privity nor assignor estoppel. Indeed, Ciba submits that it would be highly improper for any

party (including Hercules) to mention this Court's determination of the privity issue. *Cf. Dean v.*

*Mitchum-Thayer, Inc.*, 450 F. Supp. 1, 4 (E.D. Tenn. 1978)(ordering a new trial and prohibiting

the parties from mentioning to the second jury the verdict or damages award from the first trial).

Ciba does, however, seek to prove joint infringement, non-obviousness, damages,

willfulness, etc. Hercules improperly attempts to use the privity/assignor estoppel determination

of this Court to exclude Ciba's evidence relating to liability issues that remain in this litigation.

As the Federal Circuit has observed, "there is a fundamental difference between *evidence* and

*issues*." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987); *cf.*

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith*, 587 F. Supp.

1112, 1117 (D. Del. 1984). Hercules confuses this distinction.

   A.    Evidence Of The Defendants' Joint Efforts Is Relevant To Liability Issues To
         Be Determined By The Jury

At trial, Ciba will present evidence that the joint efforts by Hercules and Cytec

Exhibit 20 page 4

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

The law recognizes that such joint activities result in joint and several liability as regards direct infringement under 35 U.S.C. § 271(a) and induced infringement under 35 U.S.C. § 271(b). *E. I. DuPont de Nemours Co. v. Monsanto Co.*, 903 F. Supp. 680, 733–38 (D. Del. 1995), *affd*, 92 F.3d 1208 (Fed. Cir. 1996)(unpublished). These joint activities also bear on the issue of willful infringement. *See McDermott v. Omid Int'l*, 723 F. Supp. 1228, 1236 (S.D. Oh. 1998), *affd*, 883 F.2d 1026 (Fed. Cir. 1989)(unpublished). That Defendants have worked closely together through development and commercialization also leads to joint accountability for any damages assessed by the jury. *Conopco, Inc. v. May Dept. Stores Co.*, 797 F. Supp. 740 (E.D. Mo. 1992), *damages ruling vacated*, 46 F.3d 1556 (Fed. Cir. 1994).

Ciba will offer evidence to show that Cytec's involvement made it easier for Hercules to willfully infringe the patents, including implementing Perform® as a Polyflex® substitute. *See Read Corp. v. Protech, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), *abrogated in part on other grounds, Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)(en banc), *affd*. 517 U.S. 370 (1996); *Stryker Corp. v Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996). Here, the evidence will demonstrate that Perform® was shipped in coordinated fashion with other products from Cytec so that the customers of Polyflex® never saw any disruption of the on-going business provided by Hercules/Cytec. Evidence will also show that Hercules used Cytec manufacturing expertise and experience to facilitate the infringement. Such evidence is relevant to willfulness. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, --- F.3d ---, 2006 WL 1493004, at *13 (Fed. Cir. June 1, 2006)(that "LD presented evidence that Vaughan used Behnke, a former LD employee with intimate knowledge of the Augusta tank and LD's

Exhibit 20 page 5

REDACTED

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

Jetmix system to establish a nozzle angle of its own Rotamix system" was persuasive evidence of copying and hence of willfulness.)

    B.    ████████████████████████████████████████████
████████████████████

    While Hercules indicates that its motion relates to evidence of joint research or development, it also argues that documents relating to licensing and██████████████████████
███████████████ should be excluded as well. (Hercules' *In Limine* Request No. 2 at 5–6.) These documents are clearly not "joint research and development" documents and Hercules' request for their exclusion seems to be a separate *in limine* request. Regardless, Ciba should be entitled to offer this evidence because it is clearly relevant to issues such as non-obviousness and damages.

████████████████████████████████████████████████████████████

REDACTED

    Other documents show the expected profitability of the Polyflex® technology.     In fact, counsel for Cytec admitted the relevance of the valuation documents at the September 14, 2005, hearing before the Court. (Teleconference Trans. dated September 14, 2005 at 27:4-11; D.I. 192.) The evidence relating to Hercules' Global Polyflex® Distributorship Agreement (see PTX 45; Exh. 5) and the other evidence relating to Hercules' operation under the patents-in-suit and promotion of the patented nature of Polyflex® is relevant to validity and the admitted value of the Polyflex® technology.

    C.    **Hercules Misapplies The Law Of The Case Doctrine**

    The law is clear that decisions on an equitable issue (such as privity) do not affect a jury decision on different issues, even based on the same evidence. *Gardco Mfg., Inc. v. Herst*

Exhibit 20 page 6

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

*Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987). In responding to an argument that it was

improper for the district court to try inequitable conduct before a jury trial on invalidity because

the inequitable conduct trial would resolve factual issues common with factual issues reserved

for the jury trial, the *Gardco* court explained:

> Peerless has failed to show that the factual issues relating to its legal claim for
> patent infringement [i.e., validity] were so common with those relating to
> Gardco's equitable claim [i.e., inequitable conduct] as to preclude a prior trial of
> the latter. **The argument that the same art submitted as material in a trial of
> the latter may be presented in a trial of the former is without merit, for there
> is a fundamental difference between evidence and issues.**

*Id.* (emphasis omitted and added). As the Federal Circuit further explained in *Gardco*:

> Because of the constitutional imperative [under the Seventh Amendment], the
> district court's discretion in ordering the equitable claim to be tried first is
> "narrowly limited and must, wherever possible, be exercised to preserve jury
> trial."
>
> * * *
>
> [W]here a case presents both legal and equitable issues "only under the most
> imperative circumstances ... can the right to a jury trial of legal issues be lost
> through *prior* determination of equitable claims.

*Id.* at 1212-13 (*quoting Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11

(1959)(emphasis added))

The issues of joint liability, non-obviousness, damages and willfulness are for the Jury.

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377 (1996)("there is no dispute that

infringement cases today must be tried to a jury, as their predecessors were more than two

centuries ago"); *see nCube Corp. v. Seachange Int'l, Inc.* 436 F.3d 1317, 1319 (Fed. Cir. 2006)

("[a] *jury* verdict of willfulness requires....")(emphasis added). Thus, the Court's decision on

privity cannot form a basis for excluding evidence relevant to those issues.

Exhibit 20 page 7

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

**D.    Exclusion Of The Evidence Would Be Unfairly Prejudicial to Ciba**

The evidence of Hercules' joint activities with Cytec is critical to Ciba's ability to prove

joint infringement. ████████████████████████████████████████████████

████████████████████████████████████ Such evidence shows how Hercules

and Cytec have worked together to directly, and indirectly, infringe the patents.

REDACTED

Further, the evidence of Hercules working with Cytec to commercialize Polyflex® under

the patents as a worldwide distributor shows the value Hercules derived from the patents. The

evidence concerning ████████████████████████████ similarly shows the

value Hercules placed on the Polyflex® technology.

**E.    Conclusion**

Hercules' motion *in limine* no. 2, seeking to exclude evidence of Defendants' joint

development of the infringing Perform® SP9232 product, should be denied. Such evidence is

relevant and highly probative to issues still remaining in this case, and Hercules would not be

unfairly prejudiced by the presentation of this evidence to the jury. Additionally, exclusion of

this evidence would be unfairly prejudicial to Ciba and violate Ciba's Seventh Amendment right

to a jury trial.

Exhibit 20 page 8

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

III.    CIBA'S RESPONSE TO *IN LIMINE* REQUEST NO. 3 SEEKING TO
        PRECLUDE EVIDENCE OF INFRINGEMENT UNDER THE DOCTRINE OF
        EQUIVALENTS

   A.    Defendants Improperly Seek Summary Judgment

   While Defendants nominally characterize it as an *in limine* request, Defendants' request

is really an improper motion seeking partial summary judgment that Ciba should be "barred from

asserting a theory of infringement by equivalents" and challenging the sufficiency of expert

evidence under *Daubert*. Motions *in limine* are intended to seek exclusion of irrelevant or

prejudicial evidence or to apply earlier rulings of the court. *Provident Life & Accident Ins. Co. v.*

*Adie*, 176 F.R.D. 246, 250 (E.D.Mich. 1997). They are not intended to be used to raise issues

regarding the sufficiency of evidence. *Wright and Graham*, 21 Evidence 2d §5037.18 at 818-19

(misuse of motion in limine). In denying a similar effort by Hercules in another case, the

Supreme Court of Delaware explained:

> A motion in limine typically concerns the admissibility of evidence and is a
> preliminary motion directed at establishing the "ground rules applicable at trial"
> In contrast, a "summary judgment motion is a determination by the court
> concerning a case or aspect of a case made prior to trial **that obviates the need
> for trial of the matter.**"

*Hercules, Inc. v. AIU Insurance Co.*, 784 A.2d 481, 500 (Del. 2001)(emphasis original.) The

court found Hercules' motion untimely under the case management order in that case. *Id.*;

*accord*, *Provident Life & Accident Ins. Co.* 176 F.R.D. at 250.

   Motions for summary judgment and any challenges to expert testimony pursuant to the

principles in *Daubert* were due by December 30, 2005. (D.I. 24 at ¶10 and ¶3(d).) Defendants

did not file any *Daubert*-type motions, and the date for summary judgment motions is long past.

   B.    The Foundation Of Defendants' Motion In Limine Is Flawed

   Defendants' motion is contingent on the outcome of this Court's claim construction.

Defendants' base their motion on an unduly narrow interpretation of the claims, i.e., ▪▪▪▪▪▪▪▪

Exhibit 20 page 9

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence



(See Defendants' *In Limine* Request No. 3 at 10.)

In its three supplements to Interrogatory No. 1 during discovery,

REDACTED

The simple reason is that

no matter what the claim interpretation, Hercules' witnesses admit that the interpretation is

satisfied literally under their version of the facts. For instance, relative to interpretation 2,

Relative to interpretation 3,

;

**C.    There Is Ample Evidence That The Perform® Microparticle Infringes Literally Or By Equivalents**

The question under the doctrine of equivalents is whether the Perform® microparticle is

equivalent to the claimed microparticle. "Equivalence, in patent law, is not the prisoner of

formula and is not an absolute to be considered in a vacuum." *Graver Tank & Mfg. v. Linde Air*

*Products*, 339 U.S. 605, 609 (1960). Defendants focus on the function/way/result/analysis,

which is for mechanical devices. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17,

39-40 (1997). The linguistic formula used is less important than whether the evidence is

Exhibit 20 page 10

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

probative of the essential inquiry of whether the accused Perform® microparticle is equivalent to

the claimed microparticle such that the claims are literally or equivalently met. *Id.* at 40.[1]

Relative to Defendants' assertion that the claimed microparticle should be limited to

covalent crosslinking, Ciba has identified multiple layers of evidence that the Perform®

microparticle is equivalent or literally meets the claims ███████████████████████████

██████████████████████████     Hercules' own experts rely on the fact that

REDACTED

---

[1] Hercules seems to argue in its motion that all non-expert evidence relating to infringement by equivalents is irrelevant. This is not the law: "Proof can be made in any form: through testimony of experts or others versed in technology; by documents, including texts and treatises; and, of course, by disclosures of the prior art." *Graver Tank & Mfg. v Linde Air Products*, 339 U S 605, 608 (1960).

Exhibit 20 page 11

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

REDACTED

As for the third argument concerning the interpretation of the content,

When asked by Hercules' counsel about the amount of incorporation, Dr. Gilbert explained that over 50% is incorporated. (Privity Hearing Trans. at 21; D.I. 372.)

While Hercules did not fully reveal its non-infringement positions until its motions on claim construction and summary judgment, Ciba has provided evidence all along demonstrating that the claims of the patents are met literally and by equivalents. The information presented above is part of Ciba's discovery responses, expert discovery, depositions, etc. Both Hercules

Exhibit 20 page 12

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

and Ciba amended their responses to interrogatories on doctrine of equivalents infringement to

incorporate the summary judgment and claim construction briefs. (See Ciba's Interrogatory

Responses as Supplemented and Hercules Interrogatory Responses as Supplemented (PTX 515);

Exhs. 22 and 23.) No party objected, so this supplementation is part of the case. Both parties

have had equal access to the reports and testimony of the experts and other witnesses. Since this

is not a motion for summary judgment, the sufficiency of such evidence is not at issue. As

demonstrated, the evidence is relevant and, therefore, Defendants' motion to exclude should be

denied.

**D.     Defendants' Comparison Argument Is Without Merit When Put In Context**

Defendants make a passing argument that evidence relating to equivalency of commercial

products in not the test under the doctrine of equivalents. Equivalency is applied to the claims as

broadly as the claims may properly be interpreted. Equivalency is not limited to a preferred

embodiment any more than claims are supposed to be. However, in addressing the evidence that

supports a showing of equivalence, courts may consider chemicals covered by the claims as

compared with chemicals used in the accused product. *Wesley Jessen Corp v. Bausch & Lomb,*

*Inc.*, 209 F.Supp.2d 348, 387-8 (D. Del. 2002)(McKelvie, J ); *aff'd*, 56 Fed.Appx. 503, 2003 WL

681706 (Fed. Cir. 2003)(comparing monomer covered by the claims with the accused product

relating to whether the differences are insubstantial). While the ultimate conclusion is a question

of insubstantial differences between the microparticles of the claims and the Perform®

microparticles,

Exhibit 20 page 13

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

IV.  **CIBA'S RESPONSE TO *IN LIMINE* REQUEST NO. 4 SEEKING TO EXCLUDE TESTIMONY OF DR. WAGNER**

Ciba should be allowed to offer Dr. Wagner's full testimony in its case-in-chief based upon (1) his July 22, 2005, Expert Report, (2) his October 14, 2005, Supplemental Report in Response to Hercules' Dr. Prud'homme's August 19, 2005 Rebuttal Report (Supplemented September 19, 2005), and (3) his October 26, 2005, deposition. In addition, and consistent with these materials, Dr. Wagner should be allowed as a rebuttal witness.

Defendants improperly seek to limit Dr. Wagner to testifying as a rebuttal witness by arguing that his initial report contains no opinions and that his only opinions were provided in his Supplemental Report in response to issues raised by Hercules' expert Dr. Prud'homme. The touchstone inquiry regarding exclusion of expert testimony is whether the party opposing its admission is prejudiced. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 791 (3d Cir. 1994). There is no prejudice here as Hercules deposed Dr. Wagner during the discovery period after both Reports had been provided.

A.  **Hercules Improperly Seeks to Reargue What the Court Has Already Decided**

This Court previously reviewed and approved the propriety of Dr. Wagner's initial report during an August 2, 2005, telephone conference. (Defs. MIL Exh. O; D.I. 123.) Ciba stated very clearly in response to the Court's question whether Dr. Wagner's report contains everything needed to make out Ciba's case, that "[Dr. Wagner's] report included all his opinions, all the tests that he is going to rely on and it refers to the documents that he will testify about in Exhibit B. Yes. The answer is yes." (Id. at 13.) The Court stated to the parties that, "for now under 26(b), I'm not striking these reports and you take care of your questions on cross-examination when you get that expert in a witness room; all right?" (Id. at 14.) If Hercules intended to pursue the matter further, the Court instructed Defendants to file a *Daubert* motion. (Id.)("If you think at

Exhibit 20 page 14

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

a later point, after there is a more developed record, Mr. Farabow, if you want to file some kind of a formal motion later in the case under Daubert, I'll let you do it.")  The Court did not invite Defendants to ask for reconsideration of the August 2, 2005, decision.  The Defendants were left to file a *Daubert* motion.  However, the time for filing *Daubert* motions, however, has come and gone.  According to the scheduling order, such motions should have been filed no later than the deadline for dispositive motions, i.e. December 30, 2005.  (Scheduling order dated December 20, 2004, at ¶3a.; D.I 23.)

In the present motion *in limine*, Defendants argue again that Dr. Wagner's initial report contains no opinion.

# REDACTED

The Court in *Cordis Corp. v. Boston Scientific Corp.* rejected a similar argument to that raised by Defendants relative to Dr. Wagner.  2006 WL 1305227, at *17-18 (D. Del. May 11, 2006).  In *Cordis*, plaintiff argued that defendant's expert should be excluded because defendant's expert report had "an utterly conclusive analysis" and was "so vague and sketchy" that it left the plaintiff with "no idea why" the expert thought plaintiff's product infringed. *Id.*  The Court did not strike the testimony, because the expert's testimony was "consistent with the contents of his report." *Id.*  The court also found that there was no prejudicial surprise that would merit precluding the expert, because, *inter alia*, (1) plaintiff deposed the expert and specifically questioned him about his report, and (2) plaintiff had the opportunity to rebut the testimony at trial with contrary evidence. *Id.*

Exhibit 20 page 15

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

B.    **Dr. Wagner Should Be Able to Testify in Ciba's Case-in-Chief Based Upon His Supplemental Report and His Deposition**

Hercules argues, without legal support, that "Dr. Wagner should be limited to testifying as a rebuttal witness because Ciba chose to provide his opinions only in this manner." The Third Circuit has overturned a District Court's refusal to allow an expert to testify in a case-in-chief because the expert functioned only as a rebuttal expert. *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 259 (3d Cir. 1999). In *Callahan*, defendants sought to exclude plaintiffs' expert from plaintiffs' substantive case because the expert had "functioned only as the plaintiffs' rebuttal expert to respond to the defendants' expert." *Id.* The Third Circuit rejected this argument, stating that the "Federal Rules of Civil Procedure, and Rule 26(a)(2) governing the disclosure and discovery of expert witnesses in particular, make no distinction between the permissible uses of 'regular' experts and 'rebuttal' experts." *Id.* As such, the Court ruled that the plaintiffs could use the expert in their case-in-chief. *Id.* Therefore, Dr. Wagner should not be precluded from testifying in Ciba's case-in-chief regarding the opinions in his expert reports and in his deposition.

Moreover, the possibility that supplementation of the experts reports would be needed was considered by the Court. In particular, during the July 13, 2005, teleconference with the Court set-up to discuss, among other things, the expert schedule, the Court stated: "If there has got to be supplementation based on something Hercules needs to give you, you can supplement, and I'm confident that skilled lawyers will be able to blunt any attempt to impeach an expert if the basis for supplementation is information Hercules itself gave after the initial expert report was required." (Transcript from July 13, 2005, teleconference at 9; D.I. 89.)

This is precisely what occurred here. In its second supplemental response to Ciba's Interrogatory No. 1 (relating to Defendants' non-infringement contentions), served on August 3, 2005, Hercules specifically outlined new factual information upon which they will rely at trial.

Exhibit 20 page 16

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

As one prime example, Hercules' supplemental response revealed for the first time



REDACTED

This type of testing utilizes the science of rheology, Dr. Wagner's area of expertise, and Dr. Wagner supplemented his expert report to, *inter alia*, respond to Dr. Prud'homme regarding these tests. Even further,

Dr. Wagner should not be precluded from fully testifying in Ciba's case-in-chief because defendants have had a full day of deposition testimony regarding his opinions and will have a full opportunity to rebut his testimony at trial. *See Tracinda Corp. v. DaimlerChrysler AG*, 362 F.Supp.2d 487, 506 (D. Del 2005)(quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977). The situation here is similar to *Tracinda* where the Court refused to exclude the defendant's expert, stating that the data used in the rebuttal was contained in the plaintiff's expert's report and that the plaintiff was not unfairly surprised or prejudiced. *Id.* at 509. Defendants will not be surprised by Dr. Wagner's testimony in Ciba's case-in-chief as his testimony will fall squarely within the bounds of his reports and his deposition testimony.

Defendants' motion would improperly freeze the position of the experts at a time (i.e. July 22, 2005) when essentially no discovery had taken place and before Defendants' contentions regarding infringement were fully set forth and thus should be denied. As of July 22, 2005, Hercules had only provided a single deposition to Ciba. More than 20 depositions followed.

Exhibit 20 page 17

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

V.    CIBA'S RESPONSE TO *IN LIMINE* REQUEST NO. 5 SEEKING TO
      PRECLUDE EVIDENCE REGARDING PRE-SUIT TESTING OF PERFORM®
      IN CIBA'S SUFFOLK, VIRGINIA FACILITY

Defendants' motion for the severe sanction of exclusion of highly relevant evidence is

predicated upon a legal pad that was accidentally lost and three Perform® samples that were

discarded by a Ciba researcher, Mr. Wright, in a move of his office and laboratory because the

samples were considered to be useless.

# REDACTED

Mr. Wright did not intend to destroy or suppress any "evidence" and thus

exclusion of the test results would be legally improper.

Importantly, while Defendants focus on the samples, it isn't the samples that are the

"evidence." The evidence is the results of the testing of the samples. These test results were

made available in discovery to Defendants. If Defendants believed that the test results were

incorrect because Mr. Wright did not accurately replicate the Hercules patent application

Example, then Defendants had the ability to replicate the Example themselves and redo the tests.

To Ciba's knowledge, Defendants have never done so.

Alternatively, if Defendants had raised this issue during discovery, replacement samples

could have been prepared by Ciba and retested. Mr. Wright was deposed months before

discovery closed. Yet, during discovery, Hercules was satisfied with only using this factual

situation to justify the need for certain documents. (Hercules Letter to the Court dated August

Exhibit 20 page 18

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

22, 2005; D.I. 147.)  Defendants never specifically requested or pursued any of the Perform® or other samples tested by Ciba in the course of its infringement investigation, including many samples that were tested in Ciba Water Treatments labs in the UK.

The separate factual situations alleged by Defendants are discussed below.

### Samples 2-4 From Ciba's Heard's Notebook

These samples were made by Ciba's Wright in 2003, replicating Example 12 of Hercules' patent application WO03/050152A1 (Heard 30(b)(6) DDX 4; Exh. 26.)  Mr. Wright testified extensively about the procedure he used.  (Wright Trans. at 48-63; Exh. 28.)  These samples were discarded by Mr. Wright in February 2005 at the time of a move in response to his

REDACTED

The legal pad which Ciba's Wright used for notes regarding his replication of the Hercules patent application Example in 2003 has been lost.  This loss was accidental.

Exhibit 20 page 19

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

The Third Circuit law is set forth in *Brewer v. Quaker State Oil Refining Corporation*, 72

F.3d 326 (3d Cir. 1995). It is well established that for even an adverse inference to be drawn

from the loss or destruction of documents or the like, it is essential that the evidence in question

be within the parties' control and that there have been an actual suppression or withholding of

the evidence. No unfavorable inference arises when the circumstances indicate that the

document or article in question has been lost or accidentally destroyed, or where the failure to

produce is otherwise properly accounted for. *Id.* at 334.

Accordingly, as to the legal pad that was accidentally lost, there cannot be any

unfavorable inference. It follows that the more severe sanction of suppression of the test results

due to the accidental loss of the legal pad would be inappropriate. As to the samples that were

discarded, there was no intention by Mr. Wright to destroy "evidence." These samples, more

than a year old, were considered to be useless, consistent with defendant Cytec's practice of

discarding samples of this sort after six months. Mr. Wright's understandable action in

discarding samples he considered useless is not indicative of fraud and/or a desire to suppress the

truth. *Id.* It is akin to cleaning out a medicine cabinet of old, expired medicines before a move.

Even further, there is no prejudice to Defendants. While reference is made to *In re

Wechsler*, 121 F.Supp.2d 404 (D. Del. 2000), the situation here is not one where Defendants

have been completely deprived of the opportunity to inspect the "evidence." Defendants make

some very vague claims about what they might have been able to determine from the samples,

yet they do not specifically identify any tests or analyses that could have been used to determine

such information from the separated out solid polymer sediment that comprised the samples.

(Defs. *In Limine* Request No. 5 at 22.) Indeed, Hercules' experts responded to Ciba's test results

without regard to the information which Defendants contend they needed. For example, the

Exhibit 20 page 20

Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence

REDACTED

Dr. Prud'homme did not cite the need for the samples, or anything else, to respond.

Defendants admit that Ciba has provided document discovery about the testing of these samples. (Defs. *In Limine* Request No. 5 at 18.)  Moreover, both Messrs  Wright and Heard were deposed about the results of the tests on the samples.  If Defendants had believed that the test results were incorrect because the Example replication procedure Mr. Wright described in his deposition was not performed correctly, then Hercules (or Cytec) could have duplicated the Example that Mr. Wright was replicating.  Indeed, if this issue had been raised in discovery, Mr. Wright could have again replicated the Example so new samples could have been tested.

Certainly, given this factual situation, it would be inappropriate to deprive Ciba of using the test results.

**The Additional Polymer Sample Prepared by Ciba's Mr. Wright**

Again, as was the case with the prior samples, this sample was the result of Ciba's Mr Wright's replication of Example 12 in Hercules' patent application,

Mr. Wright testified specifically

and fully about the procedure he used (Wright Trans. at 26-29; Exh. 28.)  Again, either Defendant could have replicated the Example if the test results were considered to be incorrect. There is no assertion that this is the case.

Exhibit 20 page 21

**Ciba's Responses to Defendants' *In Limine* Requests to Exclude Evidence**

event, Dr. Prud'homme never bothered to supplement his response to take into account the description of the procedure provided by Mr. Wright during his deposition.

There is no basis upon which to conclude that there was an intention to suppress the truth. Also, while Defendants contend that no document discovery was provided, this issue was neither raised during discovery, nor, even if it had, is there any evidence that there was any document extant, other than perhaps the accidentally lost legal pad.

**Two Polymer Samples Allegedly Prepared in the Second Half of 2003 and Referenced in Ciba's Mr. Heard's Deposition**

As can be seen from Mr. Heard's deposition (Defs. MIL Exh. T; Heard Trans. at 193; Exh. 30), :

# REDACTED

Also, and while Defendants again argue that document discovery has not been provided, such viscosity data is contained in Mr. Heard's notebook (PTX 340; Exh. 31), about which both he and Mr. Wright were deposed (Wright Trans. at 46 et seq.; Exh. 28; Heard Trans. at 63 et seq. and, 303 et seq.; Exh. 30.) There is no evidence that any other documents about this sample or these tests even exist, let alone have been improperly withheld or suppressed.

**The Commercial Perform® Sample**

Defendants reference a commercial Perform® sample identified as "SG9232." Defendants have not established that that sample has been used for any purpose, so the issue is moot.

There is no basis whatsoever in this record for concluding that there was any action indicative of fraud and/or a desire to suppress the truth. Defendants' motion should be denied.

Exhibit 20 page 22