# EXHIBIT 21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 04-293(KAJ) |
| v. | ) ) ) | |
| HERCULES INCORPORATED and CYTEC INDUSTRIES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

EXHIBIT 21
CYTEC INDUSTRIES, INC.'S IN LIMINE REQUEST

**THE COURT SHOULD EXCLUDE REFERENCE BY CIBA TO ANY
ALLEGED BREACH OF THE ASSET PURCHASE AGREEMENT
BETWEEN CYTEC AND CIBA (Cytec's Request)**

1.    **Introduction**

Ciba should be precluded at trial from attempting to show through testimony or exhibits that Cytec breached the ███████████████ Asset Purchase Agreement for the sale of the PolyFlex business to Ciba, and otherwise attempting to suggest in any way that Cytec breached the agreement. The Court should preclude Ciba from doing so because any reference ███████████████ is irrelevant under Fed. R. Evid. 401 and Fed. R. Evid. 402, and highly prejudicial to Cytec under Fed. R. Evid. 403, as well as confusing and a waste of time.

The Court, enforcing a forum selection clause in the Asset Purchase Agreement, has denied Ciba's motion to amend its complaint to include a breach of contract claim. *See* 10/3/05 Tr., p. 23, D. I. 226) (Ex. Y). After oral argument, the Court concluded that:

> The facts are you said we're going to resolve issues about this contract in New York. And that is where you are going to do it. And if that means there is some duplication of effort, so be it. It's the price I guess that has to be paid for your entering into that contract.
> If I thought it were such a tremendous overlap as to be a burden on the public, I might have a different view but that isn't the impression I get. There might be some overlap but not so serious as to make it a matter of public interest to consolidate the actions and therefore your private ordering of where you would resolve your dispute will have effect and you will go to New York to deal with those issues that you wanted to raise by way of amendment here.

*See* 10/3/05 Tr., p. 24, D. I. 226) (Ex. Y). The Court's ruling is now the law of the case.

2.    **Any Alleged Breach Of Contract Is Not Relevant To The Issues In The Patent Infringement Action**

Notwithstanding the Court's clear ruling, Ciba appears to seek to reargue that Cytec breached the ██████████████ Asset Purchase Agreement. Ciba has

**Exhibit 21 page 1**

designated the Asset Purchase Agreement and related documents concerning the sale of the business on its trial exhibit list. (Ex. Z, e.g. 62-71, 118). The sale of the business bears no relevance to the issues for the jury – infringement, validity and enforceability. Indeed, Ciba has proposed as part of the pre-trial order a stipulated fact that Cytec sold the related Polyflex business to Ciba, which included the two patents in suit. Cytec will work with Ciba to draft specific language making this an undisputed fact. Thus, to the extent the fact that Cytec sold the patents to Ciba is relevant, that fact will be admitted and the agreement and related documents are unnecessary and irrelevant.

Additionally, as the Court has already concluded, any alleged breach █████████ █████ is not a part of Ciba's patent infringement action. Therefore, any mention of █ ████████ alleged breach of the contract by Cytec is improper.

"The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." *Hamilton v. Leavy*, C. A. No. 94-336 (KAJ) 2004 U.S. Dist. LEXIS 5886 (D. Del. Mar. 24, 2004) (Ex. AA), *citing Hamilton v. Leavy*, 322 F.3d at 776, 787 (3d Cir. 2003) (internal quotations omitted). "Reconsideration of a previously decided issue may ... be appropriate when the record contains new evidence." *Id.* "But this is so only if the new evidence differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision .... Accordingly, if the evidence at the two stages of litigation is substantially similar, or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply." *Id.* (citations omitted).

Given this uncontested fact and the Court's previous ruling, the Asset Purchase Agreement and related documents concerning the sale of the business are of no

Exhibit 21 page 2

consequence to the determination of Ciba's patent infringement action and are irrelevant under Fed. R. Evid. 401 and Fed. R. Evid. 402.

3. **Any Reference To The Alleged Breach Of Contract Would Be Violative of Fed. R. Civ. P. 403 as Prejudicial, Confusing and a Waste of Time**

Any mention of the ███████████████ alleged breach would be highly prejudicial to Cytec and should be excluded under Fed. R. Evid. 403. While notifying the jury of the alleged breach of contract has no probative value, the danger of unfair prejudice to Cytec is substantial. Any reference by Ciba ████████████████ at trial is likely to confuse the issues – inserting facts that are not part of this litigation in an effort to mislead the jury, to mischaracterize Cytec's involvement in the toll manufacturing of PerForm SP9232 and generally attempting to portray Cytec as the party wearing the "black hat."

And if Ciba were allowed to argue breach of contract, Cytec would need to show that it indeed did not breach the contract as Ciba apparently contends, but rather that everything Cytec did was a permitted activity under the agreement. The Asset Purchase Agreement is a complex document on which Ciba and Cytec vigorously and extensively negotiated over the terms. ██████████████████████

Exhibit 21 page 3



All of this sideshow has nothing whatsoever to do with the PerForm SP9232 product or the patents-in-suit. Therefore, █████████████████████ ███████ use at trial of the Asset Purchase Agreement or documents related to the sale of the business would be highly prejudicial, confusing and a waste of time under Fed. R. Evid. 403.

4.    Conclusion

For the foregoing reasons, Cytec requests that the Court preclude Ciba from any use of documents related to the sale of the business including the Asset Purchase Agreement or any reference to any alleged breach thereof by Cytec.

Exhibit 21 page 4

EXHIBIT Y

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             IN AND FOR THE DISTRICT OF DELAWARE

 3                        - - -

 4    CIBA SPECIALTY CHEMICALS      :      CIVIL ACTION
      CORPORATION, INC.,            :
 5                                  :
              Plaintiff and         :
 6            Counter-defendant,    :
                                    :
 7         v                        :
                                    :
 8    HERCULES INC., and CYTEC      :
      INDUSTRIES INC.,              :
 9                                  :
              Defendants and        :      NO. 04-293 (KAJ)
10            Counter-claimants.    :

11                        - - -

12                    Wilmington, Delaware
              Monday, October 3, 2005 at 9:30 a.m.
13                      ORAL ARGUMENT

14                        - - -

15    BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.

16                        - - -

      APPEARANCES:
17

18         RICHARDS LAYTON & FINGER
           BY:  CHAD MICHAEL SHANDLER, ESQ.
19
                 and
20
           LEYDIG, VOIT & MAYER, LTD.
21         BY:  ELEY O. THOMPSON, ESQ., and
                GORDON R. COONS, ESQ.
22              (Chicago, Illinois)

23                    Counsel for Ciba Specialty
                      Chemicals Corporation
24
                          Brian P. Gaffigan
25                        Registered Merit Reporter
```

2

```
 1   APPEARANCES: (Continued)

 2              POTTER ANDERSON & CORROON, LLP
               BY:  RICHARD L. HORWITZ, ESQ., and
 3                  W. HARDING DRANE, JR., ESQ.

 4              and

 5         FINNEGAN HENDERSON FARABOW GARRETT & DUNLAP, LLP
           BY:  JOANN NETH, ESQ.
 6              (Washington, District of Columbia)

 7                    Counsel for Hercules Inc.

 8              and

 9         GOODWIN PROCTOR, LLP
           BY:  THOMAS L. CREEL, ESQ.
10              (New York, New York)

11                    Counsel for Cytec Industries Inc.

12

13

14                      - oOo -

15              P R O C E E D I N G S

16
                (REPORTER'S NOTE:  The following oral argument
17
     was held in open court, beginning at 9:30 a.m.)
18
                THE COURT:  Good morning.  Please be seated.
19
                MR. THOMPSON:  Good morning.
20
                THE COURT:  All right.  Why don't we go ahead
21
     and get started with some introductions.
22
                MR. SHANDLER:  Good morning, Your Honor.  Chad
23
     Shandler for the plaintiff.  With me today are Gordon Coons
24
     and Eley Thompson from Leydig Voit in Chicago.
25
```

1   briefed, and I saw that Ciba has filed another letter brief

2   with the Court.

3           I think the only point we wanted to make again

4   is Ciba seems to be able to telephone or contract whoever

5   it is within these companies in the U.K. and get whatever

6   information they feel that they need to get and then they

7   have been able to rely on it in the case.  And I think our

8   point of view is that it's just fundamentally unfair for

9   them to select and rely but not for us to be able to fully

10  discover whatever else might be there.

11          THE COURT:  All right.  Thanks.

12          Is there anything from the Ciba side?

13          MR. THOMPSON:  Your Honor, I think that we

14  disputed just what she said in our letter brief, so there is

15  not point in elaborating.

16          THE COURT:  So you did.  All right.  Thanks,

17  Mr. Thompson.

18          Okay.  I've read these things, given it some

19  thought.  I appreciate your coming down and articulating

20  things this morning.  It's not without purpose.  Obviously,

21  I come in here with the thought in mind about how I think it

22  ought to come out, but the door isn't shut to people

23  changing my mind, so it's not as if we're engaged in some

24  masque or charade here.  But for as fine a job as you all

25  did, I'm where I was after I read the papers and so let me

23

1   tell you where that is on these points, and why, briefly,

2   and then give you a word or two of encouragement on a

3   particular point. This was not any attempt to split the

4   baby, but each of you goes away with something and not with

5   something else.

6           The motion to amend I'm denying, and the reason

7   I'm denying it is that although Rule 15 is clear that -- and

8   if I'm writing on a blank slate, I'd let you amend. Rule 15

9   says let them amend freely. I'd change the schedule if we

10  had to because I do see some overlap here. However, I don't

11  see this as so overlapping or so intertwined an issue as to

12  be inextricable. I think it is extricable and I think the

13  consequence of Ciba entering into a contract is a matter of

14  great significance.

15          When you put your hand to paper after, I'm

16  sure given the size of the transaction, months of dealing

17  and you say that you irrevocably submit to the exclusive

18  jurisdiction of ... and then list the courts in New York

19  where you will do this, and you go on to say that you

20  irrevocably and unconditionally waive objection to venue, et

21  cetera, et cetera, and you unconditionally and irrevocably

22  waive and agree not to plead or claim in any court any such

23  actions to your proceeding, et cetera, et cetera, other than

24  where you have agreed in the contract to do it, you know,

25  you really have to have an enormously persuasive position

1    about injustice, et cetera, et cetera, to overcome that.

2    And you don't have it.

3              Like I said, if we weren't dealing with that,

4    I'd say, well, I may have to adjust things but there is

5    enough of an overlap here I'll let you do it. But that

6    isn't the fact. The facts are you said we're going to

7    resolve issues about this contract in New York. And that

8    is where you are going to do it. And if that means there

9    is some duplication of effort, so be it. It's the price I

10   guess that has to be paid for your entering into that

11   contract.

12             If I thought it were such a tremendous overlap

13   as to be a burden on the public, I might have a different

14   view but that isn't the impression I get. There might be

15   some overlap but not so serious as to make it a matter of

16   public interest to consolidate the actions and therefore

17   your private ordering of where you would resolve your

18   dispute will have effect and you will go to New York to

19   deal with those issues that you wanted to raise by way of

20   amendment here.

21             MR. THOMPSON:  If I may ask just one question?

22             The Court does have jurisdiction over the

23   parties and that is the venue claim that they raised.  I

24   would ask that the Court allow the amendment and then

25   transfer it under 1406, which I believe is the procedure

EXHIBIT Z

MAY 17 2006   9:14PM   LVM 312 616 5700                    NO. 1355   P. 2/42

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS CORPORATION, | ) ) | C.A. No. 04-293 (KAJ) |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| HERCULES INC. and CYTEC INDUSTRIES, INC., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

CIBA'S LIST OF TRIAL EXHIBITS

MAY 17 2006   9:16PM   LVM 312 616 5700

NO. 1355   P 7/42

| # | | | | Paper | PDX 231 Royce |
|---|---|---|---|---|---|
| 59 | HERC0070032 | HERC0070032 | 01/10/2000 | Letter from Royce to Wiseman regarding action items from meeting list | PDX 231 Royce |
| 60 | CIBA0317269 | CIBA031825 | 04/00/2000 | Cytec Paper Chemical Information Memorandum | N/A |
| 61 | HERC0072296 | HERC0072812 | 04/04/2000 | Interoffice Memo regarding HAP Products – Viscometric Characterizations and Surfactant Interaction Evaluations | PDX 123 Harrington |
| 62 | HERC0014052 | HERC0011073 | 05/02/2000 | Hercules' Presentation regarding Project Co-op | PDX 65 Davis 30(b)(6) PDX 232 Royce |
| 63 | HERC0058318 | HERC0058319; HERC0058317 | 05/05/2000 | Letter from Floyd to Strasman regarding Cytec Industries, Inc. | PDX 232 Royce |
| 64 | HERC0059106 | HERC0059106 | 07/07/2000 | Memo from Kavanaugh to Royce and Lowdermilk regarding Cytec Polyflex Distributorship | PDX 234 Royce |
| 65 | HERC0061010 | HERC0061023 | 08/04/2000 | Presentation of FPD Acquisition Proposal Project Co-Op | PDX 65 Davis |
| 66 | HERC0059311 | HERC0058312; HERC0058310 | 08/07/2000 | Letter from Floyd to Milazzo regarding Cytec Industries, Inc. | PDX 235 Royce |
| 67 | HERC0060904 | HERC0060907 | 08/17/2000 | Tables of Project Co-Op Acquisition Model | PDX 64 Davis |
| 68 | CIBA016420 | CIBA016486 | 08/21/2000 | Memo from Avrin regarding Divestiture of Cytec Paper Chemicals | PDX 105 McCall |
| 69 | CIBA005062 | CIBA005065 | 09/05/2000 | News Release – Ciba Specialty Chemicals Agrees to Purchase Segment of Cytec's Paper Chemicals Business | N/A |
| 70 | HERC0005404 | HERC0005405 | 09/08/2000 | Hercules Newsltem entitled "Information on Bayer, Ciba and Cytec" | N/A |
| 71 | CIBA016364 | CIBA016364 | 11/01/2000 | News Release – Ciba Specialty Chemicals completes purchase of segment of Cytec's paper chemicals business | N/A |
| 72 | HERC0063333 | HERC0063336 | 11/30/2000 | Hercules Program Plans | N/A |
| 73 | HERC0003423 | HERC0003441 | 12/00/2000 | Hercules Progress Report – Drainage Aid for Alkaline P&W Grades | N/A |
| 74 | HERC0066772 | HERC0066762 | 12/04/2000 | Hand-written memo from Geiman | N/A |

- 5 -

| | | | | | |
|---|---|---|---|---|---|
| 116 | HERC0064724 | HERC0064726 | 08/10/2001 | Memo from Gelman regarding ASP Project – July/August 2001 | Brady PDX 142 Hamberson |
| 117 | CIBA049568 | CIBA049579 | 08/29/2001 | Memo from Song regarding Microemulsion Polymerization for Improved Polyflex | Part of PDX 21 Head 3100(6) |
| 118 | CIBA021107 | CIBA021376 | 08/31/2001 | Asset Purchase Agreement between Cytec and Ciba – Sale of Polyflex & RDD Businesses | N/A |
| 119 | HERC0059310 | HERC0059314 | 09/05/2001 | Memo regarding Advanced Structure Polymer (ASP) | PDX 138 |
| 120 | HERC0059968 | HERC0059968 | 09/07/2001 | Brian Walczak Formulatiry Report | N/A |
| 121 | HERC0002325 | HERC0002368 | 09/07/2001 | Advanced Structured Polymers for Drainage and Retention Applications – presentation | PDX 15 Gelman |
| 122 | CYT0010006 | CYT0010008 | 09/10/2001 | Email from Stevens regarding Hercules Samples | PDX 62 Jackson |
| 123 | HERC0059240 | HERC0059248 | 09/13/2001 | Innertrax Memo from Gelman regarding Meeting Notes of September 12, 2001, "Percolator" Characterization | PDX 169 Brady |
| 124 | HERC0017944 | HERC0017946 | 09/18/2001 | Memo from Focola regarding Trial Report – Advanced ASP Evaluation at Eastern Fine Paper, Brewer, ME | N/A |
| 125 | CYT0000830 | CYT0000831 | 09/24/2001 | Email string from Kozakiewicz to Russil, et al. regarding Samples for Hercules Evaluation | PDX 33 Waterman |
| 126 | CIBA016519 | CIBA016519 | 09/25/2001 | Letter from Russil to Harrington regarding sample of anionic emulsion polymer | PDX 245 Royce |
| 127 | HERC0010005 | HERC0010005 | 09/26/2001 | Project Review meeting notes – Development of an Emulsion Based Drainage and Retention Aid for the Alkaline Padding and Writing Program | N/A |
| 128 | HERC0070427 | HERC0070427 | 09/26/2001 | Facsimile from Waterman to Royce regarding Meeting Agenda | PDX 236 Royce |
| 129 | HERC0069195 | HERC0069195 | 09/27/2001 | Hand-written note by Brady | N/A |
| 130 | CYT0009977 | CYT0009980 | 09/27/2001 | Email from Wiseman regarding Hercules | PDX 63 Jackson |
| 131 | HERC0070425 | HERC0070426 | 09/27/2001 | Hand-written notes and directions to | N/A |

# EXHIBIT AA

LEXSEE

JEROME HAMILTON, Plaintiff, v. FAITH LEAVY, PAMELA FAULKNER, WILLIAM QUEENER, FRANCES LEWIS, GEORGE M. DIXON, JACK W. STEPHENSON, DEBORAH L. GRAIG, JOANNE SMITH, DENNIS LOEBE, ELDORA C. TILLERY, FRANCIS COCKROFT, JERRY BORGA, RICHARD SHOCKLEY, Defendants.

Civil Action No. 94-336-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 5886

March 24, 2004, Decided

**SUBSEQUENT HISTORY:** Motion denied by Hamilton v. Leavy, 2004 U.S. Dist. LEXIS 7451 (D. Del., Apr. 27, 2004)

**PRIOR HISTORY:** Hamilton v. Leavy, 322 F.3d 776, 2003 U.S. App. LEXIS 3727 (3d Cir. Del., 2003)

**DISPOSITION:** [*1] Defendants' motion for summary judgment denied. Plaintiff's motion for partial summary judgment granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff inmate sued defendants, members of the correctional facility's multi-disciplinary team and central institutional classification committee, for violation of his Eighth Amendment rights. The appellate court remanded the case to the district court to reconsider whether they were entitled to quasi-judicial absolute immunity, qualified immunity, and to address the law of the case doctrine. The parties both moved for summary judgment.

**OVERVIEW:** The members of the correctional facility's multi-disciplinary team (MDT) and central institutional classification committee (CICC) were not entitled to quasi-judicial absolute immunity on the inmate's claim for violation of his Eighth Amendment rights because the members of the MDT and CICC were not hearing officers with any status independent of the prison bureaucracy, the members of the MDT and the CICC were subordinates of the warden, who could veto or change their decisions, the members of the MDT and the CICC were not independent in the quasi-judicial sense, and they did not perform a classic adjudicatory function. The members of the MDT were not entitled to summary judgment on qualified immunity grounds because the appellate court's holding that the inmate had raised a genuine issue of material fact as to whether the members of the MDT acted with deliberate indifference to the inmate's safety in violation of the Eighth Amendment was the law of the case, and the members of the MDT failed to produce evidence that a reasonable official in their positions would not have protected the inmate.

**OUTCOME:** The MDT and the CICC's renewed motion for summary judgment was denied. The inmate's cross-motion for summary judgment was granted, and the inmate's motion to strike was denied as moot.

**CORE TERMS:** protective custody, recommendation, quasi-judicial, prison, qualified immunity, inmate, absolute immunity, safeguards, discipline, immunity, genuine issue of material fact, favorable, cellmate, constitutional rights, substantial risk, recommending, subordinate, warden, administrative segregation, deliberate indifference, disciplinary committee, constitutional right, public official, decision-making, materially, discovery, initiate, prisoner

LexisNexis(R) Headnotes

*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*
*Governments > Courts > Judicial Immunity*
*Legal Ethics > General Overview*
[HN1] Quasi-judicial absolute immunity attaches when a public official's role is functionally comparable to that of a judge. The United States Supreme Court has held that a committee of prison officials who disciplined an inmate after a hearing was not entitled to quasi-absolute judicial

2004 U.S. Dist. LEXIS 5886, *

immunity. The United States Court of Appeals for the Third Circuit has pointed out, however, that the Court does not hold per se that prison officials can never receive quasi-judicial immunity. The Third Circuit has explained that the Court's holding requires that a court analyze whether the particular defendants are entitled to quasi-judicial immunity. The Third Circuit also explained that the Court has analyzed the independence and safeguards accompanying the committee's decision-making process before holding that members of a prison disciplinary committee could not receive quasi-judicial immunity.

*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*
*Governments > Courts > Judicial Precedents*
*Torts > Public Entity Liability > Immunity > Judicial Immunity*
[HN2] The United States Supreme Court has stated that the following factors are characteristic of the judicial process and are to be considered in determining the applicability of quasi-judicial absolute immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Rights Law > Immunity From Liability > General Overview*
[HN3] The United States Court of Appeals for the Third Circuit has stated that, in determining whether to grant summary judgment on qualified immunity grounds, a court must first consider whether taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right. If a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Law of the Case*
[HN4] The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation. However, reconsideration of a previously decided issue may be appropriate when the record contains new evidence. But that is so only if the new evidence differs materially from the evidence of record

when the issue was first decided and if it provides less support for that decision. Accordingly, if the evidence at the two stages of litigation is substantially similar, or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply.

*Civil Rights Law > Immunity From Liability > General Overview*
[HN5] The second prong of the qualified immunity defense is that the constitutional right must be clearly established. The question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights.

COUNSEL: For JEROME K. HAMILTON, plaintiff: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE

For FRANCES LEWIS, defendant: Stuart B. Drowos, Department of Justice, State of Delaware, Marc P Niedzielski, Department of Justice, Wilmington, DE.

For FRANCIS COCKROFT, GEORGE DIXON, JOANNE SMITH, defendants: Thomas H. Ellis, Department of Justice, Wilmington, DE.

For JERRY BORGA, RICHARD SHOCKLEY, DEBORAH CRAIG, DENNIS LOEBE, defendants: Richard W. Hubbard, Department of Justice, State of Delaware, Wilmington, DE.

JUDGES: Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Kent A. Jordan

OPINION:
   MEMORANDUM ORDER

I. Introduction

   The procedural history and the factual background of this case have been previously set forth in detail in published and unpublished [*2] opinions. n1 For present purposes, it is sufficient to state that the Third Circuit Court has remanded the case to this court to "reconsider whether the defendants are entitled to quasi-judicial absolute immunity" and to address the law of the case doctrine and whether the Defendants n2 are entitled to qualified immunity. *Hamilton v Leavy*, 322 F.3d 776, 786-787 (3d Cir 2003)

2004 U.S. Dist. LEXIS 5886, *

n1 *See Hamilton v. Leavy*, 322 F.3d 776 (3d Cir. 2003) ("Hamilton II"); *Hamilton v. Leavy*, 2001 U.S. Dist. LEXIS 10602, No Civ A 94-336-GMS, 2001 WL 848603 (D. Del. July 27, 2001); *Hamilton v Leavy*, 117 F.3d 742 (3d Cir. 1997) ("Hamilton I"); and *Hamilton v Lewis*, 1995 U.S. Dist. LEXIS 7563, No. 94-336-SLR, 1995 WL 330728 (D. Del. May 26, 1995).

n2 The "Defendants" are Faith Leavy ("Leavy"), Pamela Faulkner ("Faulkner"), William Queener ("Queener"), Frances Lewis ("Lewis"), George Dixon ("Dixon"), Jack Stephenson ("Stephenson"), Deborah Craig ("Craig"), JoAnne Smith ("Smith"), Dennis Loebe ("Loebe"), Eldora Tillery ("Tillery"), Francis Cockroft ("Cockroft"), Jerry Borga ("Borga"), and Richard Shockley ("Shockley").

[*3]

Presently before me is the Defendants' renewed motion for summary judgment (D.I. 260; the "Motion"). Also before me is Plaintiff Jerome Hamilton's ("Hamilton") cross-motion for partial summary judgment (D.I. 268; the "Cross-Motion") and Hamilton's "Motion to strike and/or for leave to file a short reply to defendants supplemental submission in support of summary judgment following remand" (the "Motion to Strike"). (D.I. 313.) For the reasons set forth herein, the Defendants' Motion (D.I. 260) will be denied, Hamilton's Cross-Motion (D.I. 268) will be granted, and Hamilton's Motion to Strike (D.I. 313) will be denied.

II. Discussion

A. Quasi-judicial absolute Immunity

[HN1] "Quasi-judicial absolute immunity attaches when a public official's role is 'functionally comparable' to that of a judge." *Hamilton II*, 322 F.3d at 785 (quoting *Butz v. Economou*, 438 U.S. 478, 513, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978)). In a Memorandum Opinion issued in July 2001, the Defendants were held not to be entitled to quasi-judicial absolute immunity because quasi-judicial immunity "generally does not extend to prison officials." (D.I. 242 at 14.) Cited in support of that conclusion [*4] was *Cleavinger v. Saxner*, 474 U.S. 193, 88 L. Ed. 2d 507, 106 S. Ct. 496 (1985), which held that a committee of prison officials who disciplined an inmate after a hearing was not entitled to quasi-absolute judicial immunity (*Id.*) The Third Circuit pointed out, however, that *Cleavinger* does not "hold *per se* that prison officials can never receive quasi-judicial immunity." *Hamilton II*, 322 F.3d at 785 (citing *Cleavinger*, 474 U.S. 193, 88 L. Ed. 2d 507, 106 S. Ct. 496). The Third Circuit explained that "*Cleavinger* requires that [a

court] analyze whether the particular defendants ... are entitled to [quasi-judicial] immunity" and this court "did not do so." *Id.* at 785. The Third Circuit also explained that in *Cleavinger*, "the Supreme Court analyzed the independence and safeguards accompanying the committee's decision-making process" before holding that members of a prison disciplinary committee could not receive quasi-judicial immunity, and, that in this case, they did "not know what facts pertaining to the committees' independence and safeguards were sufficiently proven for summary judgment purposes." *Id.* Accordingly, the Third Circuit remanded this case [*5] in order for this court to consider "whether the defendants are entitled to quasi-judicial absolute immunity." *Id.*

In *Cleavinger*, [HN2] the Supreme Court stated that the following factors are "characteristic of the judicial process" and are to be considered in determining the applicability of quasi-judicial absolute immunity:

(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process and (f) the correctability of error on appeal

474 U.S. at 202 (citing *Butz*, 438 U.S. at 511). Applying these principles to the members of a federal prison's discipline committee, which heard cases where inmates were charged with prison rules violations, the Supreme Court held that the members of this disciplinary committee were not entitled to quasi-judicial absolute immunity because they did not perform a classic adjudicatory function. *Cleavinger*, 474 U.S. at 203. [*6] "Unlike a federal or state judge," the members of the discipline committee were "not independent" because they were "not professional hearing officers, as are administrative law judges ... instead [they were] prison officials ... temporarily diverted from their usual duties." *Id.* at 203-204. The Supreme Court also found that the committee members were "employees of the Bureau of Prisons and they were the direct subordinates of the warden who reviews their decision." *Id.* at 204. Finally, the Supreme Court found that because these discipline committee members "worked with the fellow employee who lodged the charge against the inmate upon whom they sat in judgment ... [they] are under obvious pressure to resolve a

2004 U.S. Dist. LEXIS 5886, *

disciplinary dispute in favor of the institution and their fellow employee." *Id*

Furthermore, in *Cleavinger*, the Supreme Court also found that because few of the "procedural safeguards contained in the Administrative Procedure Act" were present, the members of the disciplinary committee were not entitled to absolute immunity.

> The prisoner was to be afforded neither a lawyer nor an independent nonstaff representative. There [*7] was no right to compel the attendance of witnesses or to cross-examine. There was no right to discovery. There was no cognizable burden of proof. No verbatim transcript was afforded. Information presented often was hearsay or self-serving. The committee members were not truly independent. In sum, the members had no identification with the judicial process of the kind and depth that has occasioned absolute immunity.

*Cleavinger*, 474 U.S. at 206

After further discovery upon remand, the following evidence was presented with regard to the independence and procedural safeguards utilized by the Multi-Disciplinary Team ("MDT") n3 and the Delaware Department of Corrections Central Institutional Classification Committee ("CICC"). n4 Like the members of the discipline committee in *Cleavinger*, members of the MDT and CICC are prison employees. (D.I. 267 at 16.) Similarly, MDT and CICC members are direct subordinates of the warden, who can veto or change their decisions. *Id.* Furthermore, neither the MDT nor the CICC worked under the state or federal Administrative Procedures Acts and inmates are not permitted to have legal representation before either the MDT or [*8] the CICC, inmates are not provided with lawyers, inmates are not permitted to call or cross examine witnesses, discovery is not permitted, and there is no burden of proof. (*Id.* at 17).

n3 Leavy, Faulkner, and Queener are members of the MDT. (*See* D.I. 242 at 1.)

n4 Lewis is the chairperson of the CICC. Dixon, Stephenson, Craig, Smith, Loebe, Tillery, Cockroft, Borga, and Shockley are members of the CICC. (*See* D.I. 242 at 1.)

In support of its assertion that the CICC defendants are entitled to quasi-judicial immunity, the Defendants assert that the CICC is independent. (D.I. 261 at 11) (citing *Cleavinger*). The Defendants claim that the CICC is independent because it is made up of staff members representing a cross section of bureau personnel, which ensures that decisions affecting a particular inmate are objective, and that members are limited to three year appointments and must remain off the CCIC before being re-appointed. (*Id.* at 12-13.) The Defendants further argue that the CCIC is [*9] independent because internal procedures require a CCIC member to abstain from voting on a matter where the individual has made a recommendation as a member of the MDT. (*Id.* at 13.) The Defendants also claim that there are safeguards in the CCIC's decision-making process because appeals of CICC are directed to the Office of the Classification Administrator. (*Id.*)

These arguments, however, are not well founded. Overriding the factors claimed for independence is the reality that, like the members of the discipline committee in *Cleavinger*, the members of the MDT and CICC are not hearing officers with any status independent of the prison bureaucracy; they are prison officials (D.I. 262 at A235.) The members of the MDT and the CICC, like the members of the discipline committee in *Cleavinger*, are subordinates of the warden, who can veto or change their decisions. (*Id.* at 423-424, A328-329.) Simply put, MDT and CICC members are not independent in the quasi-judicial sense; they are prison officials who are subordinate to the warden and they do not perform a classic adjudicatory function. Because neither the MDT nor the CICC was independent or subject to procedural safeguards [*10] in its decision-making process, the MDT and CICC defendants are not entitled to quasi-judicial absolute immunity.

## B. Qualified Immunity

In *Hamilton II*, [HN3] the Third Circuit stated that, "in determining whether to grant summary judgment on qualified immunity grounds, a court must first consider whether 'taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001)). 322 F.3d at 786. "If a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

The Third Circuit, in *Hamilton II*, explained that in *Hamilton I*:


We held that Hamilton had raised a genuine issue of material fact whether defendants Leavy, Faulkner, Queener and Lewis acted with deliberate indifference to Hamilton's safety in violation of the Eighth Amendment. The District Court's opinion n5 did not discuss whether a constitutional violation occurred other than to note that we held in *Hamilton I* that a genuine issue of material [*11] fact existed as to the reasonableness of the defendants' conduct. The Court then skipped ahead to address the second prong in the qualified immunity analysis. It seems to us likely that, in so doing, the Court tacitly applied the law of the case doctrine, reasoning that *Hamilton I* had conclusively resolved for summary judgment purposes the first prong of the qualified immunity analysis.

322 F.3d at 787. The Court remanded the case for this court to decide whether the law of the case doctrine applied to defendants Leavy, Faulkner, Queener (the "MDT defendants") and Lewis. *Id.* Defendants Dixon, Stephenson, Craig, Smith, Loebe, Tillery, Cookroft, Borga, and Shockley (the "CICC defendants") were added to the case since *Hamilton I*, and therefore "lacked the opportunity to argue that they had not violated Hamilton's Eighth Amendment rights." *Id.* The Third Circuit stated that "on remand, they will have the opportunity to do so." *Id.*

n5 *Hamilton v. Leavy,* 2001 U.S. Dist. LEXIS 10602, No. Civ. A. 94-336-GMS, 2001 WL 848603 (D. Del. July 27, 2001).

[*12]

### 1. The MDT Defendants and Lewis

[HN4] "The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton II,* 322 F.3d at 787. However, "reconsideration of a previously decided issue may ... be appropriate when the record contains new evidence." *Id.* "But this is so only if the new evidence differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision ... Accordingly, if the evidence at the two stages of litigation is 'substantially similar,' or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply." *Id.* (citations omitted).

The Third Circuit, in *Hamilton I,* noted that the "record indicates that the MDT defendants took no immediate action following its recommendation to the CICC that Hamilton should be placed in protective custody. It also took no action after that recommendation was rejected." 117 F.3d at 748. The Third Circuit concluded that "while it appears that the MDT defendants acted reasonably in following the internal [*13] prison procedures by recommending to the CICC that Hamilton be placed in protective custody, the reasonableness of their actions following the rejection of that recommendation remains a question." *Id.* The Third Circuit further noted that "because neither party presented conclusive evidence on [the] issue" of whether the MDT defendants could have taken additional steps beyond recommending that Hamilton be placed in protective custody, such as placing him in administrative segregation, "there remains a genuine issue of material fact regarding whether the MDT's response to the risk Hamilton faced was reasonable." *Id.* at 748. "The failure of the MDT defendants to take additional steps beyond the recommendation of protective custody could be viewed by a factfinder as the sort of deliberate indifference to inmate safety that the Constitution forbids." *Id.* at 749.

After conducting additional discovery following remand by the Third Circuit, the Defendants argue that "the undisputed record establishes that the MDT defendants had no authority other than to provide the recommendation that they did for protective custody" for Hamilton, [*14] and "accordingly, there is no basis for a constitutional claim against the ... MDT defendants." (D.I. 261 at 21.) The record is disputed, however, because Hamilton points out that the Classification Procedures Manual establishes that the MDT defendants "had the power to 'initiate[] protective custody requests' at any time" and that "the shift commander can authorize the placement of the inmate requesting protective custody on administrative transfer pending the outcome of a formal investigation." n6 (D.I. 267 at 23.) The Classification Procedures Manual also provides that the MDT defendants "have the ability to initiate protective custody reviews at any time." n7 (*Id.*) Because this evidence not only does not materially deviate from the evidence in the record when *Hamilton I* was decided, but provides additional support for the *Hamilton I* decision, I find that the law of the case doctrine applies. *See Hamilton II,* 322 F.3d at 787. Therefore, the Third Circuit's holding of *Hamilton I* that "Hamilton had raised a genuine issue of material fact whether the MDT defendants acted with deliberate indifference to Hamilton's safety in violation of the Eighth [*15] Amendment" is the law of the case. *Id.* at 786.

2004 U.S. Dist. LEXIS 5886, *

n6 The Defendants argue that the MDT does "not have the authority to place anyone in administrative segregation" and that Hamilton "was already in administrative segregation." (D.I. 261 at 21.) However, the issue is whether the MDT defendants could have taken any steps beyond its recommendation to the CICC that Hamilton be placed in protective custody, and Hamilton's evidence shows that this is a genuine issue of material fact.

n7 The Defendants assert that these protective custody reviews, or follow-up reclassifications, are every six months (D.I. 273 at 6), but the Manual says that "in cases where the MDT feels a more frequent review is appropriate, they may do so." (D.I. 262 at A340.)

The Defendants contend that with respect to defendant Lewis, the record generated after *Hamilton I* "is materially different from the record on which the Court of Appeals based its decision." (D.I. 261 at 25.) First, the Defendants assert that the Third Circuit [*16] erroneously identified more assaults in *Hamilton I* as the basis for their conclusion that Hamilton "has a long history of being assaulted throughout the Delaware prison system." 117 F.3d at 744. The Defendants also imply that the Third Circuit erroneously understood those attacks to have occurred at Gander Hill rather than at the DCC. (D.I. 261 at 25.) Second, the Defendants state that Hamilton's cellmate was not at Gander Hill until more than a month after the MDT's recommendation and the CICC's decision to take no action. (*Id.*) Third, the Defendants claim that the attack occurred after Hamilton's cellmate learned he was a "snitcher," which was more than a month after Lewis, as part of the CICC, decided to take not action. (*Id.*) Fourth, the Defendants argue that Lewis did not have knowledge of Hamilton's grievance of March 25, 1992. (*Id.*) Finally, the Defendants state that the Superior Court ordered Hamilton to remain at Gander Hill. (*Id.*)

These contentions are irrelevant to the Third Circuit's findings in *Hamilton I* that "Lewis was made aware of a substantial risk to Hamilton's safety when she reviewed the MDT's unanimous recommendation to place [*17] Hamilton in protective custody," that "Lewis had good reason to believe that the MDT's fears were well-founded since Lewis herself approved Hamilton for protective custody on two prior occasions," and that "since Lewis should be charged with knowledge of Hamilton's known cooperation with prison officials and the subsequent branding of Hamilton as a 'snitch,' ... a fact finder could infer that Lewis knew that the threat to Hamilton's safety was imminent." 117 F.3d at 747. The Third Circuit found that Lewis knew that Hamilton was at risk of an

assault based on facts known in June 1992, not of an assault specifically by his cellmate. *See Benner v McAdory*, 165 F Supp. 2d 773, 778 (D N J 2001) ("[A] failure to protect claim does not require that the plaintiff specifically identify the attacker as a threat prior to the occurrence of the attack"). Because the evidence that the Defendants cite does not differ materially from the evidence considered by the Third Circuit in *Hamilton I*, I hold that the law of the case applies to Lewis.

[HN5] The second prong of the qualified immunity defense is that the constitutional right must be clearly established. *Hamilton II*, 322 F.3d at 787 [*18] This court found that "Hamilton's right to be protected from known risks was clearly established in August 5, 1992." n8 *Id.* However, the Third Circuit explained that this was not sufficient. "The question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights." *Id.* For the MDT defendants, it is whether a reasonable person serving on the MDT would know that doing nothing beyond recommending that Hamilton be placed in protective custody would likely violate his constitutional rights. For Lewis, it is whether a reasonable CICC chairperson would know that a decision to take "no action" on the MDT recommendation violated clearly established rights.

n8 August 5, 1992 was the day that Hamilton was attacked by his cellmate

The Defendants do not argue whether a reasonable MDT member would know that doing nothing beyond merely recommending to the CICC that Hamilton be placed in protective custody, or whether a reasonable chairperson of the CICC would [*19] know that not placing Hamilton in protective custody after receiving such a recommendation by the CICC violated clearly established rights. (D.I. 261 at 28-29.) Rather, the Defendants argue that the MDT defendants and Lewis had no reason to know that Hamilton's safety was in danger (*Id.*) The Defendants' argument, however, does not meet the standard for establishing whether a public official is entitled to qualified immunity because their argument is subjective, and the standard is objective, not subjective. *See Grant v City of Pittsburgh*, 98 F 3d 116, 121 (3d Cir. 1996). Moreover, the evidence suggests that the MDT defendants and Lewis did know that Hamilton faced a "substantial risk of serious harm" if he were placed in the general prison population, and thus violated his violated his Eighth Amendment right by failing to protect him. n9 *Farmer v Brennan*, 511 US 825, 828, 128 L Ed 2d 811, 114 S. Ct 1970 (1994) Because the law of the case applies to the MDT defendants and

2004 U.S. Dist. LEXIS 5886, *

Lewis, and neither the MDT defendants nor Lewis has produced evidence that a reasonable official in their positions would not have protected Hamilton, they are not entitled to qualified [*20] immunity.

> n9 The Third Circuit stated that after considering "Hamilton's history of violent clashes throughout the Delaware prison system, and acknowledging his statement that 'protective custody concerns exist throughout the state,'" the MDT defendants "concluded, unanimously, that Hamilton was in such danger as to justify isolating him from the general population in protective custody." *Hamilton I*, 117 F.3d at 747. "The MDT's recommendation that Hamilton be placed in protective custody was evidence that 'Hamilton faced a substantial risk of serious harm.'" *Id.* The Third Circuit also stated that "the facts constitute sufficient circumstantial evidence upon which a factfinder could conclude that Lewis 'must have known' of the risk to Hamilton's safety." *Id.*

### 2. The CICC defendants

Subsequent to *Hamilton I*, Hamilton amended the complaint to add the CICC defendants. Because the Defendants never argued whether the CICC defendants violated Hamilton's Eighth Amendment rights, the [*21] Third Circuit remanded the case in order to give them the opportunity to do so. *Hamilton II*, 322 F.3d at 787.

The Defendants argue that Tillery did not violate Hamilton's Eighth Amendment right to be protected from "violence at the hands of other prisoners," *Farmer*, 511 U.S. at 833, because she was not a member of the MDT and not a member of the CICC on the date that the CICC defendants determined to take "no action" on the MDT's recommendation to place Hamilton in protective custody. (D.I. 261 at 21.) Citing to the record, Hamilton claims that at the time Hamilton was attacked by his cellmate, Tillery was a "classification officer" and her job was to "review MDT recommendations to ensure the MDT made proper recommendations based on the inmates' institutional history and individual circumstances." (D.I. 267 at 30.) Hamilton asserts that Tillery's review of the same materials reviewed by the MDT "allowed her to acquire the same knowledge of the danger to Mr. Hamilton's safety known to the MDT and to act, as permitted by [the] Classification Guidelines Manual, to protect him by initiating the protective custody procedures." (*Id.*) The Defendants [*22] do not respond to these claims. Thus, taken in a light most favorable to Hamilton, a reasonable fact finder could conclude that Tillery violated

Hamilton's Eighth Amendment right by failing to protect him.

The Defendants argue that Smith, Dixon, and Cockroft did not violate Hamilton's Eighth Amendment rights because they were not present at the CICC meeting when the "no action" decision was made with regard to the MDT's recommendation. (D.I. 261 at 21-22.) Hamilton argues that even though they were not present, Smith, Dixon, and Cockroft had the authority to initiate "protective custody procedures at any time." (D.I. 267 at 31-32.) The Defendants did not respond to these allegations (D.I. 273.) Accordingly, taken in a light most favorable to Hamilton, the facts that Hamilton has alleged are sufficient for a reasonable fact finder to conclude that Smith, Dixon, and Cockroft violated his constitutional rights.

Defendants argue that Stephenson, Craig, Loebe, Borga and Shockley, the CICC defendants that were present when the "no action" decision was taken on the MDT's recommendation, did not violate Hamilton's Eighth Amendment rights because they were not responsible for his safety [*23] and even if they were, Hamilton's "failure to cooperate with the MDT evinces a clear waiver of any Eighth Amendment claim." (D.I. 261 at 23-24.) Hamilton points to evidence in the record that the CICC was responsible for his safety (D.I. 267 at 28), and that claims that the CICC discussed his case when they decided to take "no action," and that Lewis, Stephenson, Craig, Loebe, Borga and Shockley were therefore "aware of a substantial risk to Hamilton's safety when [they] reviewed the MDT's unanimous recommendation to place Hamilton in protective custody." *Hamilton I*, 117 F.3d at 747. Because there is evidence that the CICC was responsible for Hamilton's safety, and because the Defendants do not deny Stephenson's, Craig's, Loebe's, Borga's and Shockley's knowledge of a general risk to Hamilton's safety, and because there is no basis for the Defendants allegation that Hamilton waived his constitutional rights by failing to cooperate, I hold that, taken in a light most favorable to Hamilton, a reasonable fact finder could conclude that Stephenson, Craig, Loebe, Borga and Shockley violated his constitutional rights.

As discussed above, the next question is "whether [*24] a reasonable public official would know that his or her specific conduct violated clearly established rights." *Hamilton II*, 322 F.3d at 787. On this issue, the Defendants have not submitted any evidence that a reasonable CICC member would not know that following the MDT's recommendation that Hamilton be placed in protective custody violated his Eighth Amendment right to be protected from violence at the hands of other prisoners. n10 (See D.I. 261 at 28-29.) Because a reasonable fact finder could conclude that the CICC defendants violated his Eighth Amendment rights, and the Defendants have not

2004 U.S. Dist. LEXIS 5886, *

submitted any evidence that a reasonable CICC member would not know that not acting on an MDT recommendation to protect Hamilton violated his clearly established rights, the CICC defendants are not entitled to qualified immunity. Therefore, the Defendants' Motion will be denied.

n10 "Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." *Donahue v. Gavin*, 280 F.3d 371, 378 (3d Cir 2002) "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the objective reasonableness of the defendant's belief in the lawfulness of his actions." *Id* The burden was thus on the Defendants to establish the objective reasonableness of their

belief in the lawfulness of their actions, and they have failed to provide evidence in that regard.

[*25]

C. Hamilton's motion to strike

Because the Defendants' Motion is denied, Hamilton's Motion to Strike is moot and will therefore be denied.

III. Conclusion

Accordingly, the Defendants' Motion (D.I. 260) is DENIED, Hamilton's Cross-Motion (D.I. 268) is GRANTED, and Hamilton's Motion to Strike (D.I. 313) is DENIED as moot.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

March 24, 2004
Wilmington, Delaware

# EXHIBIT BB







IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIBA SPECIALTY CHEMICALS                )
CORPORATION,                            )
                                        )       C.A. No. 04-293 (KAJ)
                        Plaintiff,      )
                                        )       **JURY TRIAL DEMANDED**
          v.                            )
                                        )
HERCULES, INC. and                      )
CYTEC INDUSTRIES, INC.,                 )
                                        )
                        Defendants.     )

**EXHIBIT 21**
PLAINTIFF CIBA SPECIALTY CHEMICALS CORPORATION'S
RESPONSE TO CYTEC'S *IN LIMINE* REQUEST TO EXCLUDE EVIDENCE

Ciba's Response to Cytec's *In Limine* Request to Exclude Evidence

## CIBA'S RESPONSE TO CYTEC'S *IN LIMINE* REQUEST SEEKING TO EXCLUDE EVIDENCE OF THE BREACH OF THE ASSET PURCHASE AGREEMENT

Cytec's motion *in limine* primarily seeks to exclude from the August trial evidence of ███ ██████████████████████ the Asset Purchase Agreement between it and Ciba. To this extent, Cytec's motion is moot. Ciba has abided, and will abide, by the Court's ruling that the breach of contract dispute between Cytec and Ciba is for the New York courts to decide.

However, after noting that Ciba has included on its trial exhibit list the Asset Purchase Agreement and related documents concerning the sale of the business, Cytec contends that the "sale of the business has no relevance to the issues for the jury – infringement, validity and unenforceability." (Cytec's *In Limine* Request at 2.) Cytec further states that it will work with Ciba to draft specific language regarding a stipulated fact Ciba has proposed regarding Cytec having sold the related Polyflex® business to Ciba.

In addition to the sale of the Polyflex® business and patents reflected in Ciba's proposed stipulated fact, Ciba is entitled, and should be allowed, to show that Hercules was willing to pay REDACTED ; and Hercules' expectations relative to the expected profitability of the Polyflex® technology in formulating its bid (PTX 67; Exh. 4.) There should be no question as to the relevance of the valuation documents to issues for the jury such as validity and damages; Cytec's counsel admitted the relevance at the September 14, 2005 Hearing. (Teleconference Tr. dated September 14, 2005 at 27:4-11, D.I. 192.)

Likewise, Defendants' prior operation under the patents is relevant to the validity and the admitted value of the Polyflex® technology. Such evidence demonstrates how much money both Hercules and Cytec made under the protection of the Polyflex® patents and puts the dispute into context. *See* FED. R. EVID. 402.

Exhibit 21 page 1

**Ciba's Response to Cytec's *In Limine* Request to Exclude Evidence**

Cytec's assertion of unfair prejudice under Federal Rule of Evidence 403 is equally unavailing. Federal Rule of Evidence 403 states that evidence may only be excluded if "its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of under delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403 (emphasis added). "Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative." *Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994)(citation and quotation omitted.) "The balance under the rule should be struck in favor of admissibility." *Id.* (citations and quotation omitted).

Here, Cytec will clearly not be unfairly prejudiced if Ciba is able to explain to the Jury how Ciba obtained the patents, ███████████████ In fact, if such evidence is excluded, it will be Ciba that is unfairly prejudiced, as Ciba will be prevented from explaining its case to the Jury. There can be no question that the story of Cytec's development of the Polyflex business with Hercules, Cytec's putting the business up for sale, ████████████ and the ultimate sale of the business to Ciba pursuant to the Asset Purchase Agreement is central to explaining to the jury how the parties got to where they are now. Moreover, REDACTED

Such terms will need to be explained to the Jury. Otherwise, the Jury will not understand why Hercules and Cytec continued to market Polyflex® after the sale of the patents to Ciba.

Other than the exclusion of evidence relating to Cytec's breach ████████████ of the Asset Purchase Agreement, Cytec's motion should be denied.

Exhibit 21 page 2