# EXHIBIT 96

# ▊HERCULES

**Hercules Incorporated**
Hercules Plaza
1313 North Market Street
Wilmington, DE 19894-0001
(302) 594-5000
www.herc.com

### LAW DEPARTMENT

**Writer's Direct Dial:** **(302) 594-7005**
**Telefax:** **(302) 594-7038**
e-mail: cmargolin@herc.com

December 16, 2002

### VIA FEDERAL EXPRESS

Mr. Mark H. Mapp
Office of the Counsel to the Water and Paper Treatment Segment
Ciba Specialty Chemicals Corporation
2301 Wilroy Road
Suffolk, VA 23434

Dear Mark:

Per your letter of December 13, 2002, enclosed is a fully executed original of the Agreement between Ciba Specialty Chemicals Corporation and Hercules Incorporated for your files. Richard Royce has intialled the change in Exhibit B.

If you have any questions, please feel free to contact me.

Best regards.

Very truly yours,

*Christy*

Christy J. Margolin
Senior Counsel

CJM/ksc
Enclosure

cc:     James R. Davis - Hercules Incorporated (w/enc.)
        Richard D. Royce - Hercules Incorporated (w/enc.)

HGR 0650

# HHX-096

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058406

AGREEMENT

BETWEEN

CIBA SPECIALTY CHEMICALS CORPORATION

AND

HERCULES INCORPORATED

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO  04-293 (KAJ)

HERC0058407

## Table of Contents

| Section Number and Title | Page |
|---|---|
| 1. Definitions | 1 |
| 2. Appointment and Acceptance | 1 |
| 3. Orders; Prices; Delivery; Payment | 3 |
| 4. Term and Termination | 5 |
| 5. Disclaimer of Warranties; Limitation of Liability | 7 |
| 6. Repackaging and Labeling Products Sold by Hercules | 9 |
| 7. Patent Indemnity | 9 |
| 8. Trade Secrets and Confidentiality | 10 |
| 9. Trademarks, Trade Names and Copyrights | 10 |
| 10. Safety and Health – Responsible Care® | 11 |
| 11. Independent Contractor | 12 |
| 12. Assignability | 12 |
| 13. Waiver; Severability | 12 |
| 14. Governing Law | 13 |
| 15. Force Majeure | 13 |
| 16. Notices | 13 |
| 17. Captions | 14 |
| 18. Execution in Counterparts | 14 |
| 19. Entire Understanding; Modification | 15 |

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058408

## AGREEMENT

This AGREEMENT ("Agreement"), dated this ____ day of November, 2002, is by and among **Ciba Specialty Chemicals Corporation**, with offices at 2301 Wilroy Road, Suffolk, VA 23434 ("Ciba"), and **Hercules Incorporated**, with offices at 1313 N. Market Street, Wilmington, DE 19894-0001 ("Hercules").

WHEREAS, Ciba distributes throughout the United States, Canada, and Mexico various chemical products and is willing to allow Hercules to provide the Products, as defined in Exhibit A herein, to the Customer, as defined in Exhibit B herein, upon the terms and conditions set forth herein; and

WHEREAS, Hercules has established a supplier relationship with the Customer and desires to act as a nonexclusive "distributor" of the Products to this mill until such time as its contract(s) with the Customer terminates or expires; and

WHEREAS, Hercules recognizes that Ciba may, at any time during or after the term of this Agreement, solicit the sale of the Products and/or other of its products directly to the Customer.

NOW, THEREFORE, the parties hereto, each in consideration of the agreements of the other contained herein, agree as follows:

1. **Definitions**

   For the purposes of this Agreement, the following terms shall have the following meanings:

   1.1 <u>Products</u>. The products set forth on Exhibit A annexed hereto, as this Exhibit may from time to time be amended upon mutual consent.

   1.2 <u>Customer</u>. The Customer is each individual customer identified in Exhibit B of this Agreement. Ciba does not intend to amend Exhibit B during the term of this Agreement.

2. **Appointment and Acceptance**

   2.1 Ciba hereby appoints Hercules, on a nonexclusive basis, to sell and promote the sale of Products to the Customer.

   2.2 Hercules accepts the appointment and agrees that it shall:

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058409

Page 2

2.2.1   Unless otherwise agreed Hercules shall take reasonable steps to not disclose the existence of this Agreement, except as may be necessary to the Customer, nor otherwise publicize this Agreement or the terms thereof, and shall take no action to lead the public, or any third party other than the Customer, to believe that Hercules is authorized by Ciba to sell the Products.

2.2.2   Sell the Products only to the Customer.

2.2.3   Provide prompt and effective technical assistance and service to the Customer.

2.2.4   Maintain an adequate sales staff and train its sales personnel in connection with the use and sale of the Products.

2.2.5   Comply with all applicable present and future federal, state, county, and local laws, ordinances, and regulations.

2.2.6   Make prompt payment of all invoices (in accordance with the terms thereof) rendered by Ciba to Hercules.

2.2.7   Exercise its commercially reasonable efforts to create, preserve, and enhance Ciba's good will and reputation.

2.2.8   Respond to all requests by Customer, and promptly report to Ciba all complaints relating to Products received by Hercules.

2.2.9   Assess the safety aspects and environmental impact of Hercules' storage, transportation, and use of the Products based on information provided by Ciba, and take appropriate steps, including, but not limited to, complying with the Responsible Care® Codes of Conduct promulgated by the American Chemistry Council, to ensure the protection of persons, property, and the environment during the storage, transportation, and use by Hercules of the Products.

2.2.10  Refuse to sell the Products for uses or applications that are known to be unsafe or otherwise improper.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058410

Page 3

    2.2.11    Permit Ciba to inspect Hercules' facility and Hercules' records relating to safety and environmental matters upon reasonable notice during normal business hours.

    2.2.12    Provide to Customer all use, handling, and safety information, and provide to the Customer prior to the sale of the Products all warranties and disclaimers thereof and limitations of liability as to the Products communicated by Ciba to Hercules.

2.3  Without in any manner prejudicing the right of Ciba to claim that any other breach or default of this Agreement by Hercules constitutes a material breach or default, it is understood and agreed that the failure of Hercules to comply with any of the provisions of Subsection 2.2 of this Agreement shall constitute a material breach and default of this Agreement by Hercules.

2.4  Hercules may sell Products at any prices Hercules desires.

3.   **Orders; Prices; Delivery; Payment**

Ciba agrees to sell Products to Hercules upon the terms and conditions herein below set forth:

3.1  In order to assist Ciba in planning its production runs for the Products, Hercules shall, at least thirty (30) days in advance of the commencement of each calendar quarter during the term of this Agreement, provide Ciba with a forecast for each of the subsequent four (4) calendar quarters of the quantities of each of the Products that Hercules estimates it will be ordering during such quarter and the approximate dates upon which it will request that deliveries of the Products be made.

3.2  Hercules shall make commercially reasonable efforts to place orders for Products in writing at least ten (10) days in advance of Hercules' requested shipment dates. Each order shall specifically refer to this Agreement and shall specify the quantity and description of each Product ordered and the requested delivery date. Each order shall include a statement acknowledging that the order is governed solely by the terms and conditions set forth in this Agreement and that no additional or different terms set forth on the order shall be applicable. The order forms shall be delivered to such location as

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058411

Page 4

Ciba designates in writing to Hercules from time to time.  The date an order shall be deemed placed (the "Order Date") shall be the earlier of (i) the date that Ciba receives the order form containing said order, or (ii) the date of receipt of the telexed or telecopied order.

3.3    Ciba shall supply the Products in response to purchase orders placed from time to time by Hercules.  Ciba shall acknowledge receipt of Hercules' order within two (2) business days after the Order Date. Delivery dates as set forth in any purchase order or confirmation thereof shall be deemed to be estimates only.  Ciba shall make reasonable efforts to meet Hercules' desired delivery dates as set forth in Hercules' orders, provided that Hercules shall endeavor not to request delivery dates less than five (5) days following the date the purchase order is transmitted to Ciba.  No purchase order shall be binding upon Ciba unless accepted by Ciba in writing or by delivery of Products in whole or partial fulfillment thereof.

3.4 . Title and risk of loss to all Products sold by Ciba to Hercules shall pass upon delivery of the Products by Ciba to the carrier.  Hercules shall be responsible to file claims with the carrier.  Ciba shall cooperate with Hercules in the filing of such claims.  Ciba shall have the right to select the method of shipment and the carrier, provided that if Ciba selects the carrier and/or the method of shipment, title and risk of loss shall pass to Hercules upon delivery to Hercules' location.

3.5    The prices payable by Hercules for the Products as of the effective date of this Agreement shall be the prices set forth in Exhibit A to this Agreement.

3.6    Hercules shall bear the cost of any taxes, levies, duties, or fees of any kind, nature, or description whatsoever applicable to the sale and transportation of any Products sold by Ciba to Hercules, and Hercules shall forthwith pay to Ciba all such sums upon demand, unless Hercules shall provide Ciba, at the time of the submission of its purchase order to Ciba, with tax exemption certificates or permits acceptable to the appropriate taxing authorities.

3.7    Hercules shall bear the cost of freight from Ciba's shipping location to Hercules' location (or the Customer's location, if shipped directly by Ciba) unless otherwise provided by Ciba's price schedule and the terms and conditions of sale in effect at the time of shipment.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058412

Page 5

3.8 Each shipment of Products to Hercules shall constitute a separate sale, obligating Hercules to pay therefor, whether said shipment be in whole or only partial fulfillment of any purchase order or confirmation issued in connection therewith.

3.9 Ciba shall have the right to cancel any purchase orders accepted by Ciba, or to delay the shipment of the Products ordered therein, if Hercules fails to meet payment schedules or other credit or financial requirements reasonably established by Ciba. Hercules agrees to provide to Ciba such publicly available statements of Hercules' financial conditions as Ciba may, from time to time, reasonably request. Ciba reserves the right with good cause and prior notice to Hercules, either generally or with respect to any specific purchase order of Hercules, to vary, change, or limit the amount or duration of credit to be allowed to Hercules.

3.10 Ciba reserves the right to change, or discontinue the sale of, any of its Products immediately in the event of health, safety, or environmental concerns regarding such Products.

3.11 Payments for Products sold hereunder shall be made by Hercules to Ciba not later than thirty (30) days after shipment of such Products by Ciba in full accordance with the terms and conditions published by Ciba or set forth on Ciba's invoices.

4.  Term and Termination

4.1 This Agreement shall commence on the date hereof and shall continue in effect until November 30, 2003, with respect to each individual Customer, if more than one, or until the earlier expiration or termination of the contractual relationship between that particular Customer and Hercules; provided, however, that either party may terminate this Agreement at any time, and without regard to cause or reason, upon the giving of not less than ninety (90) days prior written notice, in which event this Agreement shall terminate on the date set forth in such notice. For the purposes of this Section 4, the date of mailing said written notice shall be deemed the date on which notice of termination of this Agreement shall have been given. Termination in accordance with this Subsection 4.1 shall not create or contribute to liability on the part of the terminating party. In the ninety (90) day period after notice of termination, Hercules may

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO 04-293 (KAJ)

HERC0058413

Page 6

continue to purchase Products at current prevailing prices in effect at the time prior to the termination notice.

4.2 Either party may terminate this Agreement upon the giving of not less than fifteen (15) days prior written notice to the other party, if such other party has not fully complied with any of the material terms and conditions hereof and has failed to take reasonable steps to cure any such default within thirty (30) days notice of such default from the non-defaulting party; and either party may terminate this Agreement with immediate effect upon giving written notice to the other in the event of insolvency, assignment for the benefit of creditors, or bankruptcy proceedings by or against such other. In the event of termination pursuant to this Subsection 4.2, Hercules acknowledges and agrees that Ciba shall be entitled to cancel any purchase order requested for delivery after the effective date of termination, as provided by Subsection 4.1, and not be obligated to ship any Products ordered by Hercules pursuant to such purchase order.

4.3 Hercules hereby accords Ciba, upon termination or expiration of this Agreement, an option to repurchase from Hercules all but not part of Hercules' inventory of Products, except for any inventory that is under contract between distributor and another party, at the price paid by Hercules, pursuant to the following procedures:

4.3.1 Within five (5) days after the effective date of termination, Hercules shall submit to Ciba a written schedule reflecting all Products then owned by or in the possession of Hercules. Said schedule shall identify each Product and shall indicate the quantity thereof on hand.

4.3.2 Within ten (10) days after the receipt of such schedule by Ciba, Ciba shall have the right to inspect the inventory reflected on such schedule.

4.3.3 Within ten (10) days after completion of Ciba's inspection of said inventory, Ciba shall give written notice of its election to repurchase all, but not part of the inventory.

4.3.4 Upon receipt of said notice of repurchase, Hercules shall forthwith deliver such Products as may be specified therein to a carrier designated by Ciba. Payment of the repurchase price as hereinabove provided shall be made by Ciba to

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058414

Page 7

Hercules either by (1) the issuance to Hercules of a credit corresponding to the repurchase price to be applied in the reduction of any indebtedness of Hercules to Ciba, or by (2) payment of such excess to Hercules within ten (10) days after the delivery of said Products to Ciba.

4.4 Upon termination or expiration of this Agreement, Hercules shall have the right to sell, only in accordance with the provisions of this Agreement, those Products which are in its inventory on the date of such termination and which Ciba has not repurchased pursuant to the provisions of Subsection 4.3 hereof.

4.5 The termination or expiration of this Agreement shall not release Hercules from the obligation to pay any sum that may be owing to Ciba (whether then or thereafter due to Ciba) or operate to discharge any liability that had been incurred by either party prior to any such termination. Except as qualified by the preceding sentence, neither party shall, by reason of the termination of this Agreement, be liable to the other for any damages, direct, consequential, or otherwise, sustained by reason of any such termination.

5.  **Disclaimer of Warranties; Limitation of Liability**

5.1 CIBA MAKES NO WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, CONCERNING THE PRODUCTS, OR THE MERCHANTABILITY OR FITNESS THEREOF FOR ANY PURPOSE, except that the Products sold hereunder shall conform to the product specifications (then in effect). Hercules assumes all risks and liabilities whatsoever resulting from the storage and use of the Products, whether used singly or in combination with other substances.

5.2 All claims, whether for Products delivered to Hercules or dropped shipped to a Customer, for any cause whatsoever shall be deemed waived unless Ciba receives written notice of such claims within thirty (30) days after Customer's receipt of the Products, provided that as to any cause not reasonably discoverable within such thirty (30) day period, any claim shall be made by Hercules in writing and received by Ciba within sixty (60) days after Hercules learns or reasonably should have learned of the defect giving rise to such claim.

5.3 Notwithstanding any other provisions of this Agreement, Hercules agrees, if so agreed by Ciba in advance, to return, or to instruct Hercules' Customer to return, to Ciba, at Ciba's expense, any Products

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058415

Page 8

that are, or are claimed to be, damaged or defective, or otherwise to dispose of such Products as Ciba may direct.

5.4 No claim of any kind whatsoever, whether arising in contract, tort, negligence, breach of warranty, strict liability, or under any other legal theory, as to Products delivered or for non-delivery of Products shall be greater in amount than the direct costs incurred by Hercules as a result of breach of the warranty contained in this section 5, the purchase price of the Products with respect to which damages are claimed and Ciba's sole liability to Hercules, if any, and Hercules' sole remedy in respect of any such claim, shall in no event exceed such costs. Ciba may satisfy any such liability at its option either by (i) replacing such Products, or (ii) refunding to Hercules (by cash or credit) the purchase price of such Products.

5.5 UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, SPECIAL, OR INDIRECT DAMAGES.

5.6 (a) Hercules agrees to indemnify, defend, and hold harmless Ciba from all claims (including demands, suits, or actions, including attorneys' fees incurred in connection therewith) asserted against Ciba for damages arising from personal injury, wrongful death, or property damage that may be sustained by any third party occurring out of a claim that Hercules was negligent or breached this Agreement in the marketing, sale, distribution, handling, disposal, or use of the Products or its duties to support the Products as set forth in this Agreement.

(b) Ciba agrees to indemnify, defend, and hold harmless Hercules from all claims (including demands, suits, or actions, including attorneys' fees incurred in connection therewith) asserted against Hercules for damages arising from personal injury, wrongful death, or property damage that may be sustained by any third party occurring out of a claim that Ciba was negligent or breached this Agreement in the manufacture or packaging of Products, or its duties to support the Products as set forth in this Agreement, or any determination by a court of competent jurisdiction that the Products that were sold to Hercules were defective.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058416

Page 9

6.  **Repackaging and Labeling of Products Sold by Hercules**

6.1  Hercules shall not repackage any Products nor add, remove, or change any label thereon without the prior express consent of Ciba. If Ciba consents to such repackaging, Hercules shall utilize safe and otherwise proper containers for repackaging the Products, employ quality control procedures in repackaging to ensure that the Products are not altered in any way during such repackaging, apply labels that comply with all applicable laws and regulations, have all permits and licenses necessary, and otherwise conduct its repackaging operations in compliance with all federal, state, and local laws, regulations, and ordinances.

6.2  Hercules shall be fully liable for and shall indemnify and hold Ciba harmless from all claims, liabilities, and expenses (including attorneys' fees) arising out of Hercules' repackaging of the Products.

7.  **Patent Indemnity**

Ciba agrees to hold Hercules harmless from all liability, damages, costs, and expenses incurred by Hercules arising from any cause of action based on a claim against Hercules that the Products in the form sold to Hercules infringe any United States patent, including any claim that use of such Products in accordance with their labeled uses or other uses recommended by Ciba in writing infringes any United States patent, provided that: (a) Ciba is notified by Hercules in writing promptly after such claim is made; (b) Ciba is permitted to defend, control, conduct and prosecute, in Ciba's sole discretion and by counsel of Ciba's choosing, the defense of such cause of action based on such claim brought against Hercules; (c) Ciba has the right, in its sole discretion, to settle, compromise, or otherwise terminate the cause of action, and Hercules expressly agrees that Ciba may do so in Hercules' name; (d) Hercules shall refrain from settling any such cause of action without Ciba's prior written consent; (e) Hercules shall not compromise the position of Ciba by admissions, statements, or conduct in a way that could prejudice the defense, control, conduct, or prosecution of said cause of action; and (f) Hercules reasonably cooperates with Ciba in the defense, conduct, prosecution, or termination of the cause of action, including the furnishing of information and the assistance from employees of Hercules at Ciba's request and at no charge to Ciba. If the use or sale of the Products furnished hereunder become, or in the opinion of Ciba are likely to

Page 10

become, the subject of any claim of infringement of any United States
patent, or in the event an injunction or order is obtained against
Hercules' sale of the Products by reason of a judicial determination
of infringement of a valid U.S. patent by the Products, Ciba may at
its option and expense (a) obtain a license to permit sales of the
Products to, and by, Hercules in the Territory; or (b) modify or
replace such Products. Ciba shall have no liability for any
infringement of a patent arising from (a) the combination of any
Product with any other material or substance not furnished by Ciba
hereunder; or (b) the modification of any Product by Hercules; or
(c) any use or application of any Product which is not in accordance
with the Product's label, directions for use, or other Product
literature issued by Ciba applicable to the Product. This Section 7
states the exclusive liability of Ciba to Hercules and Hercules'
exclusive remedy with respect to any infringement claims of third
parties against Hercules relative to the use or sale of the Products.

8.   **Trade Secrets and Confidentiality**

Ciba may, from time to time, give Hercules valuable information of a
technical or non-technical nature that is not generally known to the
trade or public. Hercules agrees that during the period that this
Agreement is in effect and for a period of three (3) years thereafter,
it will not disclose to anyone in any manner whatsoever (except as
authorized in writing by Ciba) any such information, including,
without limitation, information relating in any way to Customer,
Products, processes, and services of Ciba, which becomes known to
Hercules during the period that this Agreement is in effect. The
obligations of this Section 8 shall not apply to information (a) that
is known to Hercules prior to its disclosure by Ciba; (b) that becomes
public information or is generally available to the public other than
by an unauthorized act or omission of Hercules; or (c) that is
received by Hercules from third parties who are in rightful possession
of such information and who are lawfully entitled to disclose such
information to Hercules.

9.   **Trademarks, Trade Names and Copyrights**

9.1   Hercules shall display, without alteration on all Products sold by
Ciba for resale by Hercules, any trademarks or trade names affixed
thereto or designated by Ciba, and all use of such trademarks or trade
names shall inure to Ciba's benefit. Hercules shall not use any

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058418

Page 11

trademarks or trade names on or in connection with such Products unless permission is granted in writing by Ciba.

9.2  Any copyright which may be created by Hercules in any article, package design, label, or the like, for use, distribution, or publication outside Hercules, bearing any trademark or trade name of Ciba shall be deemed automatically assigned to Ciba, which shall be entitled to all rights in such copyrights. Hercules agrees to provide a copy of any such article, package design, label, or the like to Ciba prior to any use, distribution or publication outside Hercules. Ciba shall have the right, in its sole reasonable discretion, to refuse to permit any such use, distribution or publication.

10.  **Safety and Health - Responsible Care®**

10.1 From time to time Ciba may provide Hercules with safety and health information, including, without limitation, warnings, material safety data sheets, precautionary safety measures, and instructions on proper care, use, and handling, storage, and disposal of the Products. Hercules agrees to observe all precautions and instructions provided by Ciba and to communicate all such environmental, safety, and health information to its employees and the Customer. Ciba warrants that information, as provided, with respect to the Products manufactured by Ciba, is and will be true and correct to the best of Ciba's knowledge at the time provided.

10.2 Hercules shall follow safe handling, storage, transportation, use, and disposal practices with respect to the Products, including, but not limited to, those required by federal, state, and local laws, regulations, and ordinances and those set forth in the American Chemistry Council's Responsible Care® Codes.

10.3 Ciba shall have the right to inspect Hercules' locations, including leased storage locations, at reasonable times and upon reasonable notice to determine Hercules' compliance with applicable laws and regulations in connection with the sale of the Product and Ciba's instruction on proper care, use, handling, storage, and disposal of the Products.

10.4 Ciba warrants that the Products will be manufactured in accordance with the requirements of Sections 6, 7, and 12 of the Fair Labor

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058419

Page 12

Standards Act of 1938, as amended, and manufactured and shipped in compliance with all other applicable governmental regulations.

11. **Independent Contractor**

Hercules is and at all times shall be an independent contractor. It is understood that this Agreement does not constitute Hercules as the agent or legal representative of Ciba for any purpose whatsoever, and that Hercules is not authorized to assume or create any obligation or responsibility, expressed or implied, on behalf or in the name of Ciba, or to bind Ciba in any manner or thing whatsoever. Hercules shall make no warranties or representations on behalf of Ciba to Customer or to the trade with respect to any of the Products, except such as may be expressly approved in writing by Ciba.

12. **Assignability**

This Agreement shall not be assignable or transferable by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, Ciba may assign or delegate any or all of its rights or duties hereunder to any of its controlled subsidiaries for so long as such entity remains a controlled subsidiary, provided Ciba shall thereafter remain fully liable for performance of such controlled subsidiary's obligations hereunder. Similarly, Hercules may assign or delegate any or all of its rights or duties hereunder, to any of its controlled subsidiaries for so as long as such entity remains a controlled subsidiary of Hercules, provided Hercules shall thereafter remain fully liable for performance of any and all of such assignees' and delegees' obligations hereunder. This Agreement shall insure to and bind each party's permitted successors and assigns.

13. **Waiver; Severability**

13.1 Each party acknowledges and agrees that any failure on the part of the other party to enforce at any time, or for any period of time, any of the provisions of this Agreement shall not be deemed or construed to be a waiver of such provisions or of the right of such other party thereafter to enforce each and every such provision.

13.2 If any provision of this Agreement is determined by any legislature, court, or administrative agency to be, in whole or in part, invalid or unenforceable, then this Agreement shall automatically terminate.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058420

Page 13

14.  **Governing Law**

This Agreement shall be governed by, and construed in accordance with, the
laws of the Commonwealth of Virginia as though made and to be fully
performed in said Commonwealth.

15.  **Force Majeure**

Ciba shall not be liable for any failure to deliver or any delay in
delivery, and Hercules shall not be liable for any failure to request
delivery or for any delay in requesting delivery when such failure or
delay shall be caused (directly or indirectly) by fire; flood; accident;
explosion; equipment or machinery breakdown; sabotage; strike or any labor
disturbance (regardless of the reasonableness of the demands of labor);
civil commotions; riots; invasions; wars (present or future); acts,
restraints, requisitions, regulations, or directions of Government;
voluntary or mandatory compliance by Ciba or Hercules with any request of
the United States Government, or any officer, department, agency, or
committee thereof for purchase of national defense; voluntary or mandatory
compliance by Ciba or Hercules with any request for material represented
to be for purposes of (directly or indirectly) producing articles for
national defense or national defense facilities; shortage of labor, fuel,
power, or raw materials; inability to obtain supplies; failures of normal
sources of supplies; inability to obtain or delays of transportation
facilities; any act of God; or any cause (whether similar or dissimilar to
the foregoing) beyond the reasonable control of Ciba or Hercules, as the
case may be, affecting the production, delivery, or consumption of the
Products.  If by reason of such causes Ciba's supply of any Products shall
be limited, Ciba shall distribute any remaining available supply among all
its distributors (including Hercules) in a fair and equitable manner. If
any such disability shall delay any shipment hereunder for more than
thirty-(30) days, said shipment may be canceled at either party's option.

16.  **Notices**

All notices required or permitted hereunder shall be given in writing and
sent by facsimile transmission, or mailed postage prepaid by first class
certified or registered mail, or sent by a nationally recognized express
courier service, or hand delivered at the following addresses:

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058421

Page 14

Ciba:          Ciba Specialty Chemicals Corporation
R-1046.3.12
CH-4002 Basel, Switzerland
Attn:  Head of Global Strategic Marketing
      Business Line Paper

With a copy to:
      Ciba Specialty Chemicals Corporation
2301 Wilroy Road
Suffolk, VA  23434
Attn:  Mark H. Mapp


Hercules:
      Hercules Incorporated
Hercules Plaza
1313 N. Market Street
Wilmington, DE  19894-0001
United States of America
Attn:  Global Director, Sizing & Retention

With a copy to:
      Hercules Incorporated
Hercules Plaza
1313 N. Market Street
Wilmington, DE  19894-0001
United States of America
Attn:  Chief Counsel, Pulp & Paper Division

Any notice, if mailed properly addressed, postage prepaid, shall be deemed made three (3) days after the date of mailing as indicated on the certified or registered mail receipt, or on the next business day if sent by express courier service, or on the date of delivery or transmission if hand delivered or sent by facsimile transmission.

17.  **Captions**

The captions of each section in this Agreement are inserted only as a matter of convenience and for reference, and in no way shall be deemed to define, limit, enlarge, or describe the scope of this Agreement and the relationship of the parties hereto, and shall not in any way affect this Agreement or the construction of any provisions herein.

18.  **Execution in Counterparts**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C A.
NO. 04-293 (KAJ)

HERC0058422

Page 15

19. **Entire Understanding; Modification**

19.1 This Agreement represents and incorporates the entire understanding between the parties hereto with respect to the subject matter of this Agreement, and each party acknowledges that there are no warranties, representations, covenants, or understandings of any kind, nature, or description whatsoever made by either party to the other, except such as are expressly hereinabove set forth, except that nothing herein contained shall be construed as intended to relieve or release Hercules from its obligation to make payment of any monies or satisfy any other obligations which Hercules may owe to Ciba under any other agreement between the parties.

19.2 Except with respect to Exhibit A, which may be amended as per terms of Section 3, this Agreement shall not be subject to change or modification, except by the execution of a writing specified to be an explicit amendment to this Agreement duly executed by both parties hereto.

19.3 Anything herein to the contrary notwithstanding, unless otherwise expressly agreed to in writing by Ciba, any shipment of Products to Hercules in whole or partial fulfillment of any purchase order placed by Hercules shall not be deemed to constitute an acceptance by Ciba of any of the terms and conditions of such purchase order, all of which are hereby objected to by Ciba, except as to the identification of the Products and the quantities involved; and all such purchase orders shall be governed exclusively by the provisions of this Agreement.

19.4 The parties recognize that, during the term of this Agreement, a purchase order, acknowledgement form, or similar routine document (collectively "Forms") may be used to implement or administer provisions of this Agreement. Therefore, the parties agree that the terms of this Agreement prevail in the event of any conflict between this Agreement and the printed provisions of such Forms, or typed provisions of Forms that add to, vary, modify, or are at conflict with the provisions of this Agreement with respect to the Products sold during the term of this Agreement.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058423

Page 16

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Ciba Specialty Chemicals Corporation

By: _____

Name Printed: _Eric Marohn_____

Title: _Vice President_____

Hercules Incorporated

By: _____

Name Printed: _____Richard D. Rose, Jr.

Title: _Business Director, Sizing & RDC_

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058424

Page 17

## Exhibit A

## Products and Price

| POLYFLEX Products Retention Products | Price* Bulk | Price* Tote |
|---|---|---|
| POLYFLEX CP.3/POLYFLEX T100 | $0.86 | $0.93 |
| POLYFLEX SC 22 | $0.86 | $0.93 |
| PERCOL E38 (Accurac 171RS) | $0.51 | $0.58 |
| PERCOL E28 (Accurac 182RS) | $0.75 | $0.82 |
| PERCOL E20 (Accurac 120) | $0.89 | $0.96 |

\*  Pricing basis is per pound (lb), in bulk, FOB Mobile AL and/or Suffolk VA.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A
NO. 04-293 (KAJ)

HERC0058425

Page 18

## Exhibit B

### Customer

**Customer**
**City**
**State/Province**

~~FINCH PRUYN & COMPANY INCORPORATED~~
~~GLENS FALLS~~      *EM RPP4*
~~NEW YORK~~

INTERFACE SOLUTIONS INC
FULTON
NEW YORK

INTERFACE SOLUTIONS INC
BEAVER FALLS
NEW YORK

INTERNATIONAL PAPER COMPANY
ROANOKE RAPIDS
NORTH CAROLINA

INTERNATIONAL PAPER COMPANY
PINE BLUFF
ARKANSAS

WILLAMETTE INDUSTRIES INC
HAWESVILLE
KENTUCKY

UPM-KYMMENE CORPORATION
MIRAMICHI
NEW BRUNSWICK

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
DIST. DELAWARE C.A.
NO. 04-293 (KAJ)

HERC0058426